IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., a Delaware corporation, INTEGRATED HEALTH SERVICES AT RIVERBEND, INC., a Delaware Corporation, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., A Delaware corporation, ALPINE MANOR, INC., a Pennsylvania corporation, INTEGRATED HEALTH GROUP, INC., a Pennsylvania corporation, SPRING CREEK OF IHS, INC., a Pennsylvania corporation, FIRELANDS OF IHS, INC., a Pennsylvania corporation, ELM CREEK OF IHS, INC., a Pennsylvania corporation, IHS LONG TERM CARE SERVICES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>THCI COMPANY LLC,<br><br>    Defendant. | Civil Action No. 04-910 |

## PLAINTIFFS' MOTION FOR LEAVE TO MAKE A DEPOSIT IN COURT

Plaintiffs, by and through their undersigned counsel, hereby move the Court for an order, pursuant to Rule 67 of the Federal Rules of Civil Procedure, allowing them to deposit into Court the rent payments in controversy in this action, and for ancillary relief. In support of the motion, plaintiffs respectfully represent as follows:

1. This action originated as an action in the Circuit Court of the State of Missouri, Platte County. It was removed to the United States District Court for the Western District of Missouri, St. Joseph Division, and subsequently transferred to this Court, on the asserted ground that it related to the jointly administered bankruptcy cases, then pending in the Bankruptcy

1

branch of this Court and now confirmed, of Integrated Health Services, Inc. (00-389 [MFW]) (hereinafter "IHS").[1] A copy of the petition ("Petition") in the Missouri action, which stands as the complaint in this action, is annexed hereto as Exhibit "A". The amended answer thereto, filed in this Court, is annexed hereto as Exhibit "B", and the reply to the counterclaims is annexed hereto as Exhibit "C".

2.  As can be seen from the pleadings, this action arises out of certain orders entered in the Bankruptcy Court in the IHS case, involving nine nursing home facilities in six States. The first nine-named plaintiffs (the "Plaintiffs") were the respective tenants in the nine facilities under nine separate leases (the "Nine Leases"). Defendant herein, THCI Company, LLC, was eventually the successor landlord under all Nine Leases ( For simplicity's sake, defendant herein and its predecessors will all be referred to as "Defendant") . The Plaintiffs' then-parent, IHS, had guaranteed such leases by nine separate guaranties (the "Guaranties"). In 1993, the Nine Leases were modified by a Lease Modification Agreement, which, among other provisions, extended the initial terms of the Nine Leases to May 31, 2001. The Guaranties by their terms expired when the respective leases expired.

3.  On February 2, 2000, Plaintiffs and IHS, together with numerous other subsidiaries of IHS, filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (the "IHS Bankruptcy") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4.  On November 21, 2000, each of the nine Plaintiffs wrote a separate letter to Defendant informing it of the respective Plaintiff's intent to renew its respective lease for an

---

[1] Plaintiffs have moved in this Court to remand, and/or to abstain. That motion is pending. This motion for a preliminary injunction is without prejudice to the motion to remand.

additional five (5) year period, pursuant to option provisions in the relevant lease of the Nine Leases. On January 31, 2001, Defendant rejected Plaintiffs' attempted exercise of their rights to extend the Nine Leases, asserting that the Nine Leases had expired. Plaintiffs subsequently moved in the Bankruptcy Court to assume some of the Nine Leases and to reject others, by motion dated on or about May 11, 2001. Defendant objected to such motion, asserting that the Nine Leases had expired by their own terms on May 31, 2001, and none could be assumed.

5. Thereafter, and in settlement of the motion, Defendant, IHS and Plaintiffs entered into a Stipulation, which was confirmed by order of the Bankruptcy Court (the "March 2002 Stipulation", Exhibit "D" hereto). The March 2002 Stipulation provided that: "In accordance with the terms set forth in this Stipulation, the Debtors reject the [lease of a tenth] Facility, and provided the [Nine Leases] are amended as hereinafter provided in paragraph 3 of this stipulation, shall assume the [Nine Leases] as amended and restated" (emphasis added) (¶ 1). Paragraph 3 of the March 2002 Stipulation stated: "Within thirty (30) days of the date of this Stipulation, or at such time thereafter as the Parties may agree, the Parties shall enter into a master lease agreement amending and restating the [Nine] Leases." The March 2002 Stipulation made no mention of the Guaranties, which had expired, along with the Nine Leases, on May 31, 2001, nor did it create any new guaranties.

6. Plaintiffs and IHS thereafter entered into negotiations to create a Master Lease, but no agreement on a Master Lease was reached. In April 2003, Defendant filed a Motion to Compel, asking the Bankruptcy Court to compel IHS to enter into a Master Lease, and to establish the terms of such Master Lease. Defendant motion did not ask the Bankruptcy Court to compel the parties to enter into a guaranty of a Master Lease, and, indeed, did not even mention

the Guaranties. A copy of Defendant's motion, exhibits thereto omitted, is annexed hereto as Exhibit "E".

7. On April 22, 2003, the Bankruptcy Court granted Defendant's Motion to Compel and stated in its order (the "April 2003 Order", Exhibit "F" hereto):

> "Within five (5) business days of the entry of this Order, the parties may execute a form of Master Lease on such terms as may be mutually agreeable by the parties, provided, however, that if within such time the parties do not execute a Master Lease on mutually agreeable terms, a Master Lease shall be deemed to exist, which Master Lease shall be deemed to incorporate the terms set forth in paragraphs 3(a), (b), (c), (d), (e), and (f) of the March 2002 Stipulation and shall further be deemed to incorporate by reference all terms of the existing Leases to the extent not inconsistent with the March 2002 Stipulation. (emphasis in original)."

The April 2003 Order also contained no reference to any guaranty.

8. Plaintiffs appealed the April 2003 Order of the Bankruptcy Court to this Court. That appeal, bearing Case No. 03-610 (GMS), was fully briefed and submitted, and has been under advisement before Hon. Gregory M. Sleet, U.S.D.J., since August 2003.

9. The Amended Joint Plan of Reorganization of IHS and its subsidiaries, including Plaintiffs, was confirmed by the Bankruptcy Court on May 12, 2003. The Confirmation Order provided for the formation of a new corporation, IHS Long Term Care Services, Inc. ("LTC", also a plaintiff herein), into which the capital stock of IHS and, inter alia, of the Plaintiffs (IHS subsidiaries) would be transferred, after which the stock of LTC would be sold to a third-party purchaser ("Briarwood") who would pay the purchase price to the IHS bankruptcy estate. The closing of the sale took place on September 13, 2003. The Plaintiffs are no longer debtors in bankruptcy, and the IHS Estate and its creditors have no further economic interest in the Plaintiffs, that interest being Briarwood's.

10.     The Confirmation Order also provided that all claims for which a proof of claim had not been filed prior to May 12, 2003, were discharged. Notwithstanding that provision, on September 24, 2003, Defendant filed a motion seeking to recover in excess of $41,667,000 for alleged administrative expenses, asserting that the Leases had been breached prior to the Confirmation Date. Since, however, under the Master Lease a claim for damages may only be filed upon termination of the Master Lease after default, Defendant's filing of the administrative expenses claim itself constituted a declaration that the Master Lease had terminated, and had the effect of terminating the Master Lease.

11.     The Bankruptcy Court ultimately denied that motion, and in its Order (1/7/2004, Exh. "G") decreed that, "With respect to any claims of Defendant against Briarwood, such claims constitute third party disputes [over] which this Court has no jurisdiction and which claims and/or defenses must be pursued in a non-Bankruptcy Court or Courts having proper jurisdiction".

12.     Plaintiffs (including LTC) thereafter (April 2004) commenced this action in State Court, and it has been removed and transferred to this Court.[2] Plaintiffs' Petition in State Court, here the complaint (Exh. "A"), contains two counts. Count I seeks a declaration that, even if Plaintiffs, on the appeal to this Court, are unsuccessful in their argument that no Master Lease was created or is in effect, nonetheless LTC, not a debtor before the Bankruptcy Court nor a party to the March 2002 Stipulation and Order or the April 2003 Order, is not liable on the Master Lease; that, by virtue of Defendant's

---

[2] In light of the Bankruptcy Court's express declination of jurisdiction and leave to the parties to proceed in non-Bankruptcy Courts, Plaintiffs contend that this action was improvidently if not improperly removed, and should be remanded. As mentioned, that contention is the subject of a motion in this Court presently under advisement.

5

assertion of an Administrative Expenses Claim for rent in the Bankrupcty case, which under the Nine Leases could only arise in case of a default, Defendant had thereby terminated the (arguendo-existing) Master Lease; that any rent paid to Defendant after such termination was paid by Plaintiffs as holdover tenants; and that there are no existing leases. The pleading continued (Par. 64), "For their protection, it is necessary that Plaintiff Subsidiaries pay their rent into an appropriate escrow account until (a) the United States District Court determines whether a Master Lease is in effect, and/or (b) this Court determines whether Defendant has terminated any such Master Lease that might be found to exist." The pleading sought a declaration, assuming Plaintiffs were unsuccessful in the appeal to this Court, as to whether nonetheless any lease or Master Lease exists, and whether Plaintiffs have to pay rent to Defendant.

13. Count II seeks a declaration that there is no guaranty in effect by plaintiff LTC of the Master Lease, because there is no Master Lease in effect, because there is no provision in it for such a guaranty, because LTC never issued or assumed any guaranty, and because of the Statute of Frauds, LTC never having signed any document providing for its guaranties of the debts of the tenants under the Nine Leases.

14. The situation precipitating the present motion is the following: Should Plaintiffs prevail, either on the appeal (meaning no Master Lease was ever created), or in this action (meaning the Master Lease was breached by Defendant), there has been no lease rent in effect all this time, and the "rent" Plaintiffs have been paying should have been merely the (substantially lower) use-and-occupancy payments as holdover tenants. Success by Plaintiffs in either matter would therefore mean Defendant owes Plaintiffs a significant refund. The initial payments under the Master Lease were at the rate of $8,500,000 per annum, with 2.5% annual escalations,

which payments have been made. If Plaintiffs prevail in either proceeding, Defendant owes Plaintiffs millions of dollars. As the period of uncertainty continues (the appeal has been under advisement since August 2003, and this action has been pending since April 2004), Plaintiffs' potential recovery has mounted. This problem has become even more serious lately, as the rental payments under the Master Lease (which payments Plaintiffs have been forced to make) have increased pursuant to the terms of the Master Lease. Furthermore, another major enterprise of a principal of Defendant, Moshael J. Straus, has recently filed for bankruptcy in the Southern District of New York (Amazing Savings, Inc./Odd JobStores, Inc., of which Mr. Straus is Chairman and co-CEO of both). The situation has reached the point where it is clear that Defendant will not be good for a money judgment in the amount to which Plaintiffs will be entitled should they prevail in either action. Defendant, which was created to own these nursing home properties, upon information and belief has no assets other than these homes, which earning no more than a market rent could not throw off the cash necessary to repay Plaintiffs.

15. Defendant has now brought the matter to a head by issuing what it terms a "Notice of Default" under the Master Lease, threatening to, inter alia, "terminate" the Master Lease if the "default" is not cured within seven days (from March 9). A copy of the Notice of Default is annexed hereto as Exhibit "H".

16. This action seeks inter alia a declaratory judgment as to the appropriate disposition of the "rental payments" it has been forced to make pursuant to the Master Lease, which plaintiff maintains need not be made. Such payments are thus an appropriate subject for deposit into Court pursuant to Rule 67 of the Federal Rules of Civil Procedure, which provides in relevant part as follows:

> "In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of any other thing capable of delivery, a party, upon

> notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing."

17. In <u>Cajun Electric Power Cooperative</u> v. <u>Riley Stoker Corp.</u>, 901 F.2d 441 (5th Cir. 1990), the plaintiff had won an arbitration award, which, by terms of the award, would earn a very high degree of interest if not paid by a date certain. The plaintiff equivocated as to whether it would challenge the award (it had claimed more), and defendant was reluctant to pay the award under those circumstances. The District Court allowed defendant to pay the award amount into Court pending determination of whether plaintiff would challenge, and the outcome thereof (plaintiff did ultimately challenge, and lost). The District Court held, with the Court of Appeals affirming, that such payment into the Court satisfied the requirement of timely tender so that no interest was due. In affirming the priority of the initial order to pay into Court, the Court of Appeals noted (at 444-5) that

> "The rule's purpose is to relieve the depositor of the responsibility for the fund in dispute while the parties hash out their differences with respect to it. ....
> "Whether Rule 67 relief should be available in any particular case is a matter committed to the sound discretion of the district court."

18. In <u>PV Small Boats</u> v. <u>International Marine Marketing Corp.</u>, 16 F.R.Serv.3d 452 (D RI 1990), the plaintiff, owner of a trademark, claimed that the defendant user was not licensed to use the mark, and sought damages, or in the alternative, if the defendant were licensed, sought royalty fees. The defendant maintained it was authorized, and that plaintiff owed it damages. The defendant tendered a royalty check, which the plaintiff did not want to accept as compromising its position that the defendant was unauthorized. The Court allowed the plaintiff to deposit the royalty check into Court under Rule 67.

19. It is respectfully submitted that in the case at bar, "rental" payments hereafter should be paid into Court, until it is determined whether the Master Lease's terms govern the

8

payments to be paid herein, or whether plaintiff is entitled to substantial monies back on previous payments, as well as a part of the future payments. A form of proposed Order, as required by Local Rule 67.2(b), in form as suggested by the Office of the Clerk, accompanies this Motion, and is also annexed as Exhibit "I".

20. No prior application for the same or similar relief has been made, to this or any other Court.

21. Moreover, the relief requested in the Motion For a Temporary Restraining Order filed contemporaneously with this Motion is vital to prevent the irreparable harm pending hearing of the motion, and the motion itself, should therefore be in all respects granted.

22. Points and authorities in support of this Motion are contained herein and the Movant therefore waives, under D. Del. LR 7.1.2., the right to file an opening brief. The Movant reserves its right to file a brief in reply or opposition to any response to this Motion.

Respectfully submitted,

_____
Michael R. Lastowski (DE I.D. 3892)
Christopher M. Winter (DE I.D. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone:   (302) 657-4900
Facsimile:    (302) 657-4901
E-mail:         mlastowski@duanemorris.com
                    cmwinter@duanemorris.com

-and-

Amos Alter, Esquire
Jenkens & Gilchrist Parket Chapin LLP
The Chrysler Building
405 Lexington Avenue
New York, NY

WLM\206388.1

Telephone:   (212) 704-3247
Facsimile:   (212) 704-6288.

*Attorneys for Plaintiff Integrated Health Services of Cliff Manor, Inc. et al.*

WLM\206388.1