IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES<br>OF CLIFF MANOR, INC., a Delaware corporation,<br>INTEGRATED HEALTH SERVICES AT<br>RIVERBEND, INC., a Delaware Corporation,<br>INTEGRATED HEALTH SERVICES AT<br>SOMERSET VALLEY, INC., A Delaware<br>corporation, ALPINE MANOR, INC., a<br>Pennsylvania corporation, INTEGRATED<br>HEALTH GROUP, INC., a Pennsylvania<br>corporation, SPRING CREEK OF IHS, INC., a<br>Pennsylvania corporation, FIRELANDS OF IHS,<br>INC., a Pennsylvania corporation, ELM CREEK<br>OF IHS, INC., a Pennsylvania corporation, IHS<br>LONG TERM CARE SERVICES, INC., a<br>Delaware corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>THCI COMPANY LLC,<br><br>        Defendant. | Civil Action No. 04-910 |

## **PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiffs, by and through their undersigned counsel, hereby move the Court for the issuance of a temporary restraining order, pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining and, staying Defendant from effecting a default of the Nine Leases (as defined below) or pursuing any remedies arising from an event of default pending the Court's determination of Plaintiffs' Motion For Leave to Made A Deposit In Court (the "Deposit Motion").

WLM\205758 2

## Statement of Facts[1]

1.      This action originated as an action in the Circuit Court of the State of Missouri, Platte County (the "State Court Action"). It was removed to the United States District Court for the Western District of Missouri, St. Joseph Division, and subsequently transferred to this Court, on the asserted ground that it related to the jointly administered bankruptcy cases, then pending in the Bankruptcy branch of this Court and now confirmed, of Integrated Health Services, Inc. (00-389 [MFW]) (hereinafter "IHS").[2] A copy of the petition ("Petition") in the State Court Action, which stands as the complaint in this action, is annexed to the Deposit Motion as Exhibit "A". The amended answer thereto, filed in this Court, is annexed to the Deposit Motion as Exhibit "B", and the reply to the counterclaims is annexed to the Deposit Motion as Exhibit "C".

2.      As can be seen from the pleadings, this action arises out of certain orders entered in the Bankruptcy Court in the IHS case, involving nine nursing home facilities in six States. The first nine-named plaintiffs (the "Plaintiffs") were the respective tenants in the nine facilities under nine separate leases (the "Nine Leases"). Defendant herein, THCI Company, LLC, was eventually the successor landlord under all Nine Leases ( For simplicity's sake, defendant herein and its predecessors will all be referred to as "Defendant") . The Plaintiffs' then-parent, IHS, had guaranteed such leases by nine separate guaranties (the "Guaranties"). In 1993, the Nine Leases were modified by a Lease Modification Agreement, which, among other provisions,

---

[1] The Statement of Facts is primarily based upon the Deposit Motion which is being filed contemporaneously with this Motion. A true and correct copy of the Deposit Motion is attached hereto as Exhibit "A." The Exhibits referenced in this Motion are to the Exhibits attached to the Deposit Motion. A verification in support of the Petition is attached hereto as Exhibit "B."

[2] Plaintiffs have moved in this Court to remand, and/or to abstain. That motion is pending. The deposit Motion and this motion for a temporary restraining order are without prejudice to the motion to remand.

extended the initial terms of the Nine Leases to May 31, 2001. The Guaranties by their terms expired when the respective leases expired.

3. On February 2, 2000, Plaintiffs and IHS, together with numerous other subsidiaries of IHS, filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (the "IHS Bankruptcy") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4. On November 21, 2000, each of the nine Plaintiffs wrote a separate letter to Defendant informing it of the respective Plaintiff's intent to renew its respective lease for an additional five (5) year period, pursuant to option provisions in the relevant lease of the Nine Leases. On January 31, 2001, Defendant rejected Plaintiffs' attempted exercise of their rights to extend the Nine Leases, asserting that the Nine Leases had expired. Plaintiffs subsequently moved in the Bankruptcy Court to assume some of the Nine Leases and to reject others, by motion dated on or about May 11, 2001. Defendant objected to such motion, asserting that the Nine Leases had expired by their own terms on May 31, 2001, and none could be assumed.

5. Thereafter, and in settlement of the motion, Defendant, IHS and Plaintiffs entered into a Stipulation, which was confirmed by order of the Bankruptcy Court (the "March 2002 Stipulation", Exhibit "D" to the Deposit Motion). The March 2002 Stipulation provided that: "In accordance with the terms set forth in this Stipulation, the Debtors reject the [lease of a tenth] Facility, and provided the [Nine Leases] are amended as hereinafter provided in paragraph 3 of this stipulation, shall assume the [Nine Leases] as amended and restated" (emphasis added) (¶ 1). Paragraph 3 of the March 2002 Stipulation stated: "Within thirty (30) days of the date of this Stipulation, or at such time thereafter as the Parties may agree, the Parties shall enter into a master lease agreement amending and restating the [Nine] Leases." The March 2002 Stipulation

made no mention of the Guaranties, which had expired, along with the Nine Leases, on May 31, 2001, nor did it create any new guaranties.

6. Plaintiffs and IHS thereafter entered into negotiations to create a Master Lease, but no agreement on a Master Lease was reached. In April 2003, Defendant filed a Motion to Compel, asking the Bankruptcy Court to compel IHS to enter into a Master Lease, and to establish the terms of such Master Lease. Defendant motion did not ask the Bankruptcy Court to compel the parties to enter into a guaranty of a Master Lease, and, indeed, did not even mention the Guaranties. A copy of Defendant's motion, exhibits thereto omitted, is annexed to the Deposit Motion as Exhibit "E".

7. On April 22, 2003, the Bankruptcy Court granted Defendant's Motion to Compel and stated in its order (the "April 2003 Order", Exhibit "F" to the Deposit Motion):

> "Within five (5) business days of the entry of this Order, the parties may execute a form of Master Lease on such terms as may be mutually agreeable by the parties, <u>provided, however,</u> that if within such time the parties do not execute a Master Lease on mutually agreeable terms, a Master Lease shall be deemed to exist, which Master Lease shall be deemed to incorporate the terms set forth in paragraphs 3(a), (b), (c), (d), (e), and (f) of the March 2002 Stipulation and shall further be deemed to incorporate by reference all terms of the existing Leases to the extent not inconsistent with the March 2002 Stipulation. (emphasis in original)."

The April 2003 Order also contained no reference to any guaranty.

8. Plaintiffs appealed the April 2003 Order of the Bankruptcy Court to this Court. That appeal, bearing Case No. 03-610 (GMS), was fully briefed and submitted, and has been under advisement before Hon. Gregory M. Sleet, U.S.D.J., since August 2003.

9. The Amended Joint Plan of Reorganization of IHS and its subsidiaries, including Plaintiffs, was confirmed by the Bankruptcy Court on May 12, 2003. The Confirmation Order provided for the formation of a new corporation, IHS Long Term

4

Care Services, Inc. ("LTC", also a plaintiff herein), into which the capital stock of IHS and, inter alia, of the Plaintiffs (IHS subsidiaries) would be transferred, after which the stock of LTC would be sold to a third-party purchaser ("Briarwood") who would pay the purchase price to the IHS bankruptcy estate. The closing of the sale took place on September 13, 2003. The Plaintiffs are no longer debtors in bankruptcy, and the IHS Estate and its creditors have no further economic interest in the Plaintiffs, that interest being Briarwood's.

10. The Confirmation Order also provided that all claims for which a proof of claim had not been filed prior to May 12, 2003, were discharged. Notwithstanding that provision, on September 24, 2003, Defendant filed a motion seeking to recover in excess of $41,667,000 for alleged administrative expenses, asserting that the Leases had been breached prior to the Confirmation Date. Since, however, under the Master Lease a claim for damages may only be filed upon termination of the Master Lease after default, Defendant's filing of the administrative expenses claim itself constituted a declaration that the Master Lease had terminated, and had the effect of terminating the Master Lease.

11. The Bankruptcy Court ultimately denied that motion, and in its Order (1/7/2004, Exhibit "G" to the Deposit Motion) decreed that, "With respect to any claims of Defendant against Briarwood, such claims constitute third party disputes [over] which this Court has no jurisdiction and which claims and/or defenses must be pursued in a non-Bankruptcy Court or Courts having proper jurisdiction".

12.     Plaintiffs (including LTC) thereafter (April 2004) commenced the State Court Action, and it has been removed and transferred to this Court.[3] Plaintiffs' Petition in the State Court Action, here the complaint (Exhibit "A" to the Deposit Motion), contains two counts. Count I seeks a declaration that, even if Plaintiffs, on the appeal to this Court, are unsuccessful in their argument that no Master Lease was created or is in effect, nonetheless LTC, not a debtor before the Bankruptcy Court nor a party to the March 2002 Stipulation and Order or the April 2003 Order, is not liable on the Master Lease; that, by virtue of Defendant's assertion of an Administrative Expenses Claim for rent in the Bankrupcty case, which under the Nine Leases could only arise in case of a default, Defendant had thereby terminated the (<u>arguendo</u>-existing) Master Lease; that any rent paid to Defendant after such termination was paid by Plaintiffs as holdover tenants; and that there are no existing leases. The pleading continued (Par. 64), "For their protection, it is necessary that Plaintiff Subsidiaries pay their rent into an appropriate escrow account until (a) the United States District Court determines whether a Master Lease is in effect, and/or (b) this Court determines whether Defendant has terminated any such Master Lease that might be found to exist." The pleading sought a declaration, assuming Plaintiffs were unsuccessful in the appeal to this Court, as to whether nonetheless any lease or Master Lease exists, and whether Plaintiffs have to pay rent to Defendant.

---

[3] In light of the Bankruptcy Court's express declination of jurisdiction and leave to the parties to proceed in non-Bankruptcy Courts, Plaintiffs contend that this action was improvidently if not improperly removed, and should be remanded. As mentioned, that contention is the subject of a motion in this Court presently under advisement.

6

13. Count II seeks a declaration that there is no guaranty in effect by plaintiff LTC of the Master Lease, because there is no Master Lease in effect, because there is no provision in it for such a guaranty, because LTC never issued or assumed any guaranty, and because of the Statute of Frauds, LTC never having signed any document providing for its guaranties of the debts of the tenants under the Nine Leases.

14. Defendant removed the State Court Action to the Western District of Missouri, and Plaintiffs filed a motion to remand and/or to abstain. Thereafter, Defendant filed a motion to transfer venue of the State Court Action to the District Court of Delaware.

15. The Motion to Transfer Venue was granted, and the matter is now pending before this Court.

16. Plaintiffs' Motion to Remand and/or to Abstain is still pending before this Court. Plaintiffs file this Motion without prejudice to pursuing their Motion to Remand and/or Abstain.

**<u>The Default Notice And Plaintiffs' Motion For Leave to Make A Deposit In Court</u>**

17. On March 9, 2005, Defendant issued a purported Notice of Default, which states that the Nine Leases are in default because the tenants have failed to pay rent for March, 2005 and that, absent cure by March 17, 2005, Defendant will pursue its remedies arising as a result of the purported default. A true and correct copy of the Default Notice is attached to the Deposit Motion as Exhibit "H."

18. Contemporaneously with the filing of this Motion, the Plaintiffs have filed the Deposit Motion pursuant to which the Plaintiffs seek authority under Rule 67 of the Federal Rules of Civil Procedure to deposit with the Court the March 2005 rent and all future rent pending a determination of the matters pending before the Court.

19. Pending a determination of the Deposit Motion, Plaintiffs request a temporary restraining order or preliminary injunction enjoining and staying Defendant from effecting a

WLM\205758.2

default of the Nine Leases or pursuing any remedies allegedly arising from an event of default and granting such other relief as the Court may deem appropriate.

### Argument

20. The standards for granting injunctive relief are well-known to this Court. Under Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking an injunction must demonstrate: "(1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in greater harm to the other party; and (4) that granting relief will be in the public interest." *Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 102 (3d Cir. 1988).

### Likelihood of Success on the Merits

21. As set forth above and in the Deposit Motion, Plaintiffs are likely to succeed on the merits. The Nine Leases were terminated in the context of the IHS Bankruptcy. Further, Defendant's filing of an application for an Administrative Expense Claim either ratified the earlier termination or effected a termination in and of itself. Moreover, LTC is not a guarantor of the Master Lease because LTC never issued or assumed any guaranty and LTC never signed any document in which it agree to be a guarantor.

### Irreparable Harm

22. As set out more fully in the Deposit Motion, in the event of a "default" and a subsequent pursuit of remedies, Plaintiffs will suffer irreparable harm absent the relief requested in this Motion.

### An Injunction Will Not Harm THCI

23. An injunction will not harm Defendant. As set forth in the Deposit Motion, Plaintiffs are willing to pay the disputed amounts into Court. Upon the conclusion of this litigation, defendant will receive whatever funds to which it is entitled.

### Granting An Injunction Is In the Public Interest

24. Granting an injunction is in the Public Interest. Plaintiffs operate nursing home facilities. To the extent that Defendant is permitted to exercise remedies arising in the event of an alleged default, the exercise of such remedies will harm the operation of the nursing homes and endanger client care and welfare.

25. The movant incorporates by reference the authorities cited in the Deposit Motion. All additional points and authorities in support of this Motion are contained herein and the Movant therefore waives, under D. Del. LR 7.1.2., the right to file an opening brief.

WHEREFORE, plaintiffs respectfully request that the Court enter an Order (1) temporarily restraining Defendant from effecting a default under the Nine Leases or pursuing any remedies allegedly arising from an event of default pending a determination of the Deposit Motion and scheduling a preliminary injunction hearing; and (2) granting such additional and further relief as is just and proper.

DUANE MORRIS LLP

_____
Michael R. Lastowski (DE I.D. 3892)
Christopher M. Winter (DE I.D. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail:     mlastowski@duanemorris.com
            cmwinter@duanemorris.com

-and-

Amos Alter, Esquire
Jenkens & Gilchrist Parket Chapin LLP
The Chrysler Building
405 Lexington Avenue
New York, NY

WLM\205758.2

Telephone: (212) 704-6247
Facsimile: (212) 704-6288

*Attorneys for Plaintiff Integrated Health Services of Cliff Manor, Inc. et al.*