# EXHIBIT E

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| INTEGRATED HEALTH SERVICES, ) | |
| INC., ) | Case No. 00-389 (MFW) |
| Debtors ) | |
| ) | Objection date: 4/15/03 at 11:30 a.m. |
| | Hearing date: 4/17/03 at 11:30 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 10, 2003, THCI Company, LLC ("THCI"), filed its Motion of THCI Company, LLC to Compel Debtors' Entry into Master Lease Agreement in Compliance with Stipulation and Order (the "Motion") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that objections to the Motion must be filed with the Clerk of the Bankruptcy Court, 824 North Market Street, 5th Floor, Wilmington, DE 19801, and served so as to be received by the undersigned counsel for THCI by 11:30 a.m., Wilmington, Delaware time, on April 15, 2003. If no objections are timely filed and served to the Motion, the Bankruptcy Court may enter an order approving the Motion without further notice or a hearing. If any objections to the Motion are timely filed and served, a hearing on the Motion will be held on April 17, 2003 at 11:30 a.m. in front of the Honorable Mary F. Walrath, United States Bankruptcy Court, 824 North Market Street, 6th Floor, Wilmington, DE 19801. Only those objections that are timely filed and received will be heard at the hearing.

Dated: April _10_, 2003      GREENBERG TRAURIG, LLP

_/s/ Victoria W. Counihan_
Scott D. Cousins (No. 3079)
Victoria Watson Counihan (No. 3488)
1000 West Street, Suite 1540
Wilmington, Delaware 19801
(302) 661-7000

4/10/03
9325

and

Paul T. Fox
Nancy A. Peterman
77 West Wacker Drive
Suite 2500
Chicago, Illinois 60601
(312)456-8400

Counsel to THCI Company, LLC,
f/k/a New Meditrust Company, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| INTEGRATED HEALTH SERVICES, ) | Case No. 00-389 (MFW) |
| INC., ) | |
| Debtors. ) | Objection date: 4/15/03 at 11:30 a.m. |
| ) | Hearing date: 4/17/03 at 11:30 a.m. |

**MOTION OF THCI COMPANY, LLC TO COMPEL DEBTORS' ENTRY INTO MASTER LEASE AGREEMENT IN COMPLIANCE WITH STIPULATION AND ORDER**

THCI Company, LLC, as successor-in-interest to Meditrust Corporation, Meditrust of Alabama, Inc., Meditrust of Missouri, Inc., Meditrust of Michigan, Inc., Meditrust of Alpine, Inc., Meditrust, Meditrust of Mountainview, Inc. and Meditrust of Ohio, Inc. (collectively, "THCI"), hereby moves (the "Motion") for entry of an Order compelling Integrated Health Services, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors-in-possession (the "Debtors" or "Integrated"), to enter into a new Master Lease (as defined herein) in compliance with a Stipulation and Order approved in these cases on March 18, 2002. In support of this Motion, THCI states as follows:

### BACKGROUND

1. At the time this case was filed, the Debtors leased the following ten (10) properties from THCI for the purpose of operating healthcare facilities thereon:

   (a)  Integrated Health Services of Briarcliff, 850 N.W. 9th St., Alabaster, Alabama;

   (b)  Integrated Health Services of Kansas City at Alpine North, 4700 Cliffview Drive, Kansas City, Missouri;

   (c)  Integrated Health Services of Michigan at Riverbend, 11941 Belsay Road, Grand Blanc, Michigan;

(d)  Integrated Health Services of Erie at Bayside, 4114 Schaper Avenue, Erie, Pennsylvania;

(e)  Integrated Health Services of NJ at Somerset Valley, 1621 Route 22 West, Bound Brook, New Jersey;

(f)  Integrated Health Services of Greater Pittsburgh, 890 Weatherwood Lane, Greensburg, Pennsylvania;

(g)  Integrated Health Services of Huber Heights at Spring Creek, 5440 Charlesgate Road, Huber Heights, Ohio;

(h)  Integrated Health Services of New London at Firelands, 204 West Main Street, New London, Ohio;

(i)  Integrated Health Services of West Carrollton at Elm Creek, 115 Elmwood Circle, West Carrollton, Ohio; and

(j)  Integrated Health Services at Carriage-by-the-Lake, 1957 North Lakeman Drive, Bellbrook, Ohio.

The foregoing shall be collectively referred to as the "Leased Properties."

2.  On or about May 7, 2001, the Debtors filed a motion seeking authority, inter alia, to assume the leases for six (6) of the Leased Properties, and to reject the leases for the remaining four (4) Leased Properties. On October 8, 2001, the motion was amended to seek leave to reject, rather than assume, the lease of the facility commonly known as Carriage-by-the-Lake, located in Bellbrook, Ohio (the "Carriage-by-the-Lake Facility") (as amended, the "Assumption/Rejection Motion").

3.  THCI objected to the relief sought in the motion and the amended motion on a number of grounds including, inter alia, that the 10 leases which were the subject of the motion expired by their terms on May 31, 2001, and that the 10 leases were part of a single integrated portfolio and could not be assumed or rejected on a piecemeal basis but could only be assumed or rejected as a single integrated portfolio.

2

4.   The Court set a hearing date of March 7, 2002 to hear evidence regarding the Debtors' motion and THCI's objection.

5.   Prior to the date set for a hearing, the Debtors and THCI entered into a Stipulation and Order (the "Stipulation and Order") resolving THCI's objection to the Assumption/Rejection Motion, which Stipulation and Order was approved in an Order of this Court entered March 18, 2002 and which provided that (i) the Carriage-by-the-Lake Facility was rejected; (ii) the parties were to enter into a new master lease agreement for the remaining 9 leases (the "Master Lease"); and (iii) the balance of 9 leases were to be assumed (the "Assumed Leased Properties"). A copy of the Stipulation and Order is attached hereto as Exhibit A.

## RELIEF REQUESTED AND BASIS THEREFOR

6.   By this Motion, THCI seeks an Order from this Court compelling the Debtors to comply with the terms of the Stipulation and Order by entering into the Master Lease. THCI also requests that any outstanding issues relating to the current version of the Master Lease be submitted to the Court for consideration and disposition at the hearing on this Motion, and that the Court order the Debtors and THCI to execute the Master Lease as modified by the Court's rulings on the disputed provisions.

7.   A court has the authority to enforce a settlement agreement in connection with a case directly before it. See Fox v. Consolidated Rail Corp., 739 F.2d 929, 932 (3d Cir. 1984); Leonard v. University of Delaware, 204 F.Supp.2d 784, 787 (D. Del. 2002). Under Delaware law, settlement agreements are specifically enforceable through the entry of judgment by the Court. Read v. Baker, 438 F. Supp. 732, 735 (D. Del. 1977). Generally, courts favor settlement agreements because the parties avoid the expense and delay of litigation. See Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3d Cir. 1982); Read v. Baker, 438 F.Supp. at 735. Settlement

agreements entered into voluntarily between parties are binding agreements. Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970). Moreover, settlement agreements are contracts, and general contract law principles apply. Emerson Radio Corp. v. Stelling, 52 Fed.Appx. 173, 178 (3d Cir. 2002) (citations omitted).

8. In determining whether a contract exists, Delaware law provides that a contract arises when all of the essential terms are agreed upon by the parties. See Leonard v. University of Delaware, 204 F.Supp.2d at 787 (stating that "[u]nder Delaware law a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.'") (citations omitted).

9. Moreover, section 105(a) of the Bankruptcy Code provides, in pertinent part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105.

10. This Court has inherent (and statutory) authority to enter an order to compel performance with this Court's orders, including holding parties in interest in contempt of court for failure to comply with this Court's orders. "The majority of cases conclude that all courts, whether created pursuant to Article I or Article III of the Constitution, have inherent civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power." 2 Collier on Bankruptcy, ¶ 105.04 at 105-58 (15th ed. rev. 2000).

11.  The Third Circuit has explicitly recognized that a Bankruptcy Court has civil contempt power to enforce its own orders and to sanction attorneys. In re Stephen W. Grosse, P.C., 84 B.R. 377, 387 (Bankr. E.D. Pa. 1988), aff'd, 96 B.R. 29, 32 (E.D. Pa. 1989), aff'd mem sub nom. Dubin v. Jakobowski, 879 F.2d 856 (3rd Cir. 1989), cert. denied, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989).

12.  The Court should enforce the terms of the Stipulation and Order by compelling the parties to enter into the Master Lease. The Stipulation and Order provides at Paragraph 1 that "[t]he leases **shall** be amended and restated pursuant to a new master lease agreement for the remaining 9 Leased Properties (the "Master Lease") as set forth in paragraph 3 of this stipulation . . ." (emphasis added). Paragraph 3 of the Stipulation and Order further provides that "[w]ithin thirty (30) days of the date of this Stipulation, or at such time thereafter as the Parties may agree, the Parties **shall** enter into a master lease agreement amending and restating the Leases (the "Master Lease")." (emphasis added). Paragraph 3 continues with a recitation of the specific provisions that the parties agreed **shall** be included in the Master Lease.

13.  To date, the Debtors and THCI have not entered into the new Master Lease as required by the terms of the Stipulation and Order. The parties have exchanged numerous drafts of the Master Lease, with the most recent draft being sent by THCI to the Debtors on March 18, 2003 for finalization. THCI did not received a response from the Debtors to that draft. THCI believes that the most current draft of the Master Lease, a copy of which is attached hereto as Exhibit B, contains nothing more than the agreed upon business terms ordered by the Court in Paragraph 3 of the Stipulation and Order to be included in the Master Lease, as well as the terms that were contained in the original leases between the parties.

14. The Debtors previously indicated to THCI that their disagreements with the provisions in the Master Lease relate to the fact that they are now out of compliance with certain pre-existing financial covenants and net worth requirements from the original leases that are set forth in Sections 16.1(n), 16.1(o), 16.1(p), 16.1(q) and 16.1(r) of the current version of the Master Lease. THCI agreed to provide the Debtors with a reasonable cure period within which they can come into compliance with these financial covenants and net worth requirements.

15. On April 9, 2003, the Debtors for the first time informed THCI and announced to the Court their intention to file a motion to reject the remaining leases, despite the clear mandate in the Stipulation and Order that they enter into a Master Lease. This suggests that the parties' inability to finalize the Master Lease was not a result of the Debtors' good faith disagreement with specific provisions of the Master Lease, but was a result of the Debtors' decision to attempt to reject the remaining leases in contravention of the Stipulation and Order.

16. The terms of the Stipulation and Order clearly and unequivocally require the parties to enter into the Master Lease. Because the Debtors have not finalized and executed the Master Lease as they are required to do under the clear provisions of the Stipulation and Order and have instead announced their intention to attempt to reject the remaining leases, THCI requests by this Motion that the Court enter an order compelling the parties to comply with the terms of the Stipulation and Order by entering into the Master Lease. Although THCI does not know whether the Debtors have any remaining disputes with the current version of the Master Lease. THCI submits that any outstanding issues relating to the Master Lease should be presented to the Court for consideration and disposition at the hearing on this Motion, and that the Court should order the Debtors and THCI to execute the Master Lease as modified by the Court's rulings on the disputed provisions.

17. The parties voluntarily negotiated, entered into, and executed the Stipulation and Order. The Stipulation and Order includes the necessary material terms and evidences a clear intent of the parties to bind themselves to the terms of the Stipulation and Order. Additionally, the Stipulation and Order was approved by this Court. Having voluntarily and intelligently entered into the Stipulation and Order, the Debtors should not be able to escape their obligations therein. See Berger v. Grace Line, Inc., 343 F. Supp. 755, 756 (E.D. Pa. 1972), aff'd, 474 F.2d 1339 (3d Cir. 1973) (granting petition to enforce settlement that was voluntarily entered into by the parties).

WHEREFORE, for the foregoing reasons, THCI respectfully requests that this Court enter an order (a) resolving any outstanding issues relating to the Master Lease; (b) compelling the Debtors and THCI to comply with the terms of the Stipulation and Order by executing the Master Lease, as modified by the Court's rulings on the disputed provisions; and (c) granting THCI such other and further relief as is appropriate under the circumstances.

Dated: April 10, 2003

GREENBERG TRAURIG, LLP

_Victoria W. Counihan_
Scott D. Cousins (No. 3079)
Victoria Watson Counihan (No. 3488)
1000 West Street, Suite 1540
Wilmington, Delaware 19801
(302) 661-7000

and

Paul T. Fox
Nancy A. Peterman
77 West Wacker Drive
Suite 2500
Chicago, Illinois 60601
(312) 456-8400

Counsel to THCI Company, LLC,
f/k/a New Meditrust Company, LLC

7

# EXHIBIT A

1115 - 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| | ) |
| INTEGRATED HEALTH SERVICES, INC. | ) Case No. 00-389 (MFW) |
| ET AL. | ) Jointly Administered |
| | ) |
| | ) |
| | ) |
| Debtors | ) Re: Docket No. 4417 6875 |
| | ) |

## STIPULATION AND ORDER

This Stipulation and Order ("Stipulation") is between Integrated Health Services, Inc. and certain of its direct and indirect subsidiaries (the "Tenants"), as debtors and debtors-in-possession in the above referenced Chapter 11 cases (collectively, the "Debtors") and THCI Company LLC ("THCI") that are pending in the United States Bankruptcy Court for the District of Delaware before the Honorable Mary F. Walrath (the "Court"). The Debtors and THCI are hereafter referred to as the "Parties."

WHEREAS, the Tenants lease 10 properties (the "Leased Properties") from THCI for the purpose of operating healthcare facilities thereon, and continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the United States Bankruptcy Code;

336933-3

Whereas, on or about May 7, 2001, the Debtors filed a motion seeking authority, *inter alia*, to assume the leases for 6 of the Leased Properties, and reject the leases for 4 of the Leased Properties, which motion was amended to reclassify one of those leases commonly known as Carriage-by-the-Lake, located in Bellbrook, Ohio (the "Carriage-by-the-Lake Facility") as rejected rather than as assumed on October 8, 2001 (as amended, the "Motion");

WHEREAS, THCI objected to the relief sought in the Motion, arguing, *inter alia*, that the 10 leases that were the subject of the Motion expired by their own terms on May 31, 2001;

WHEREAS, the Motion was scheduled to be heard by the Court on March 7, 2002;

WHEREAS, the parties have reached agreement to settle their disputes with respect to the Motion.

WHEREFORE, it is hereby stipulated, agreed and ordered as follows:

1. In accordance with the terms set forth in this Stipulation, the Debtors reject the Carriage-by-the-Lake Facility, and, provided the leases are amended as hereinafter provided in paragraph 3 of this stipulation, shall assume the leases as amended and restated by the Master Lease (as hereinafter defined) for the remaining 9 Leased Properties that were the subject of the Motion. The leases shall be amended and restated pursuant to a new master lease agreement for the remaining 9 Leased Properties (the "Master Lease") as set forth in paragraph 3 of this stipulation, and at such time the leases, as amended and restated by the Master Lease, shall be assumed.

2. With respect to the Carriage-by-the-Lake Facility:

2

336933-3

(a) The Debtors are authorized to transfer the Carriage-by-the-Lake Facility to a new operator identified and approved by THCI (the "New Operator")

(b) The Debtors shall use commercially reasonable efforts to facilitate transfer of operations at the Carriage-by-the-Lake Facility to the New Operator.

(c) In furtherance of the foregoing, the Debtors and the New Operator of the Carriage-by-the-Lake Facility shall negotiate in good faith with the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services in connection with the transfer of the Medicare and Medicaid provider agreements from the Debtors to the New Operator, which transfer shall include a release by the United States of America and/or the State of Ohio of any defaults or claims against the New Operator related to or arising under the Carriage-by-the-Lake Facility's Medicare or Medicaid provider agreements or Medicare and Medicaid Statutes and Regulations. The receipt of such agreements shall not be a condition to the transfer of the Carriage-by-the-Lake Facility, provided, however, that in the event that the Debtors are unable to obtain such agreements, the Tenant shall provide THCI and the New Operator with an indemnity acceptable to THCI and the New Operator with respect to any pre-transfer defaults or claims related to or arising under the Medicare and Medicaid provider agreements or Medicare or Medicaid Statutes and Regulations.

3

(d) Any transfer of the Carriage-by-the-Lake Facility shall be accomplished pursuant to a mutually agreeable Operations Transfer Agreement

(e) The Tenant for this facility will continue to operate the Carriage-by-the-Lake Facility in accordance with all obligations under the lease until such time as the Carriage-by-the-Lake Facility is transferred to the New Operator in accordance with paragraph 2(b) of this Stipulation, or until the Facility is vacated after a Wind Down (as hereinafter defined). Notwithstanding anything to the contrary in the Carriage-by-the-Lake lease, and until a transfer, Debtors will pay use-and-occupancy at the lease rent rate at the Carriage-by-the-Lake Facility for the months of April 2002, May 2002, and June 2002. Thereafter, the use-and-occupancy will step down by 20% of the June 2002 use-and-occupancy per month until the Carriage-by-the-Lake Facility is transferred to the New Operator in accordance with paragraph 2(b) *supra*. The Debtors have the right to commence a Wind Down of the facility on or after November 1, 2002, upon 30 days' notice to THCI. Correspondingly, THCI may require the Debtors to commence a Wind Down of the facility on or after November 1, 2002, upon 30 days' notice. The Parties agree that from and after November 1, 2002, the Debtors may take any and all actions necessary or appropriate, in the Debtors' sole and absolute discretion but in accordance with State and Federal law, to wind down the operations of the Carriage-by-the-Lake Facility, including without limitation, termination of any and all employees, discharge of any or all patients, transferring of any or

4

336933-3

all patients to other facilities owned or leased by the Debtors, and ceasing to admit new patients to the Facility (the "Wind Down" of such Facility).

(f) The Debtors will be responsible for the operating losses up to the date that the facility is transferred, and may keep the profits up to the date that the facility is transferred.

(g) The Debtors understand that the Carriage-by-the-Lake Facility cannot be transferred to the New Operator until such time as the Facility is licensed in accordance with Chapter 3721 of the Ohio Revised Code and implementing regulations. The Debtors agree to reasonably cooperate with THCI and the New Operator in its license application, including, but not limited to, executing a declaration of change of ownership.

3. Within thirty (30) days of the date of this Stipulation, or at such time thereafter as the Parties may agree, the Parties shall enter into a master lease agreement amending and restating the Leases (the "Master Lease"). The parties agree that because of the related nature of the leases for the 9 Leased Properties, the parties intend to integrate the Leased Properties into a single portfolio of properties. The parties also agree that the Leased Properties must be tied together economically so that the revenue from the entire portfolio of Leased Properties will be, in the aggregate, profitable, and will be used to run each of the Leased Properties with adequate funding and staffing. The Master Lease shall:

(a) Be a single triple net lease.

(b) Provide that the base rent for all of the Leased Properties in the aggregate shall be $8,100,000 per annum.

5

336933-3

(c) Provide for escalations of 2.5% per annum.

(d) Provide that the terms of the lease for all of the Leased Properties shall be for 10 years.

(e) Provide that the Debtors shall have the right to extend the terms of the Master Lease for all of the Leased Properties for two (2) consecutive five (5) year periods, based upon a continuation of the rent, with escalations at 2.5% per annum.

(f) Tenant may not, without the prior written consent of Landlord, which consent shall be at Landlord's sole discretion, assign the Master Lease or sublet all or any part of the leased property. Transfers or issuances of a majority or more of stock or other beneficial interests in Tenant shall be deemed an assignment. Notwithstanding the foregoing, the parties acknowledge that the Tenant reserves the right and may seek to assign the Master Lease subsequently hereto to a third party prior to and separate from or, alternatively, in connection with the confirmation of the plan or plans of reorganization filed in these cases. The parties hereto agree that the Tenant's right to assign the Master Lease is hereby fully reserved and preserved under and pursuant to section 365 of the Bankruptcy Code, including but not limited to section 365(f) of the Bankruptcy Code, and the execution of the Master Lease is and shall be without prejudice to or waiver of any and all of Tenant's rights, protections, benefits and privileges to assign same provided to the Tenant under section 365 of the Bankruptcy Code, including but not limited to sections 365(e)(1) and (3) of the Bankruptcy Code; provided however that the

6

336933-3

Tenant's right to assign the Master Lease shall remain subject to section 365(f)(2)(B) of the Bankruptcy Code; and the parties also agree that the Landlord's rights under section 365 of the Bankruptcy Code, including the right to object to any proposed assignment by Tenant, are fully reserved and preserved.

4. THCI waives any claims that it may have with respect to previous years' additional rent payments for all of the Leased Properties, waives all use and occupancy charges for the Carriage-by-the-Lake Facility except as expressly provided herein, and waives rejection damages with respect to the Carriage-by-the-Lake Facility.

5. The Debtors withdraw their remaining requests for relief that were set forth in the Motion.

6. The Debtors will pay all reasonable legal fees and expenses that were incurred by THCI during the course of the Debtors' bankruptcy. The legal fees and expenses shall be paid within 30 days after this Stipulation is approved by the Bankruptcy Court.

7. The Court shall retain sole jurisdiction to interpret, enforce, and resolve any disputes regarding the terms of this Stipulation.

7

DATED: March *12*, 2002

ROBERT E. GROSSMAN
BETH N. GREEN
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
505 Park Avenue, 16th Floor
New York, NY 10021
Telephone: (212) 753-7200
Facsimile: (212) 935-1787

— and —

*/s/ Victoria W. Counihan/*
VICTORIA WATSON COUNIHAN (No. 3488)
GREENBERG TRAURIG LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
Telephone: (302) 661-7377
Facsimile: (302) 661-7360

Attorneys for THCI COMPANY, LLC

DATED: March *13* 2002

AMOS ALTER
JENKENS & GILCHRIST PARKER CHAPIN LLP
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 704-6000
Facsimile: (212) 704-6288

— and —

*/s/*
ROBERT S. BRADY (No. 2487)
EDMON L. MORTON (No. 3856)
YOUNG CONWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Attorneys for Debtors INTEGRATED HEALTH
SERVICES, INC. et al.

8

336933-3

SO ORDERED

Dated: March 18, 2002

_____
UNITED STATES BANKRUPTCY JUDGE

9

336933-3