## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRATED HEALTH SERVICES OF
CLIFF MANOR, INC. et al.,

                             Plaintiffs,

                        Civil Action No. 04-910

        v.

THCI COMPANY LLC,

                          Defendant.

### OBJECTION OF THCI COMPANY LLC TO PLAINTIFFS' MOTION FOR LEAVE TO MAKE A DEPOSIT IN COURT AND TO PLAINTIFFS' ACCOMPANYING REQUEST FOR A PRELIMINARY INJUNCTION

THCI Company LLC ("THCI") submits this objection, together with the accompanying DECLARATION OF KEVIN KURTZMAN (the "KURTZMAN DECLARATION") in opposition to PLAINTIFFS' MOTION FOR LEAVE TO MAKE A DEPOSIT IN COURT (the "DEPOSIT MOTION") and Plaintiffs' ancillary request for a Preliminary Injunction.[1] The DEPOSIT MOTION and the accompanying request for injunctive relief were filed by IHS Long Term Care, Inc. and nine of its subsidiaries (collectively, the "Plaintiffs").[2]

---

[1] On March 15, 2005, the Plaintiffs contemporaneously filed PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER. This Court denied Plaintiff's request for a hearing on this motion on March 15, 2005. Accordingly, THCI believes that Plaintiffs' request for a temporary restraining order is now moot. In an abundance of caution, THCI is responding to Plaintiffs' request for a preliminary injunction pending a determination of the DEPOSIT MOTION.

[2] The nine subsidiaries are Plaintiffs Integrated Health Services of Cliff Manor, Inc., Integrated Health Services of Riverbend, Inc., Integrated Health Services of Somerset Valley, Inc., Alpine Manor, Inc., Briarcliff Nursing Home, Inc., Integrated Health Group, Inc., Spring Creek of IHS, Inc., Firelands of IHS, Inc., and Elm Creek of IHS, Inc.

**SUMMARY**

Since April 23, 2003, when Bankruptcy Judge Walrath entered her order confirming the existence and terms of the Master Lease, the Plaintiffs have admitted by paying the rent their obligation to pay the current monthly base rent to THCI in exchange for their continuing tenancy in the nine nursing home facilities owned by THCI (collectively, the "Facilities").[3] Now, Plaintiffs seek to invoke Federal Rule of Civil Procedure 67 and to deposit their current monthly base rent payments with the Court, rather than continuing to pay them to THCI as the Master Lease requires. The sole basis for Plaintiffs' motion is the gratuitous assertion, <u>unsupported by any proffer of admissible evidence</u>, that THCI will not be able to satisfy a money judgment if Plaintiffs were to obtain one against THCI in this litigation.

The DEPOSIT MOTION must be denied for two reasons. First, as demonstrated in the accompanying KURTZMAN DECLARATION, THCI is well able to pay a money judgment in the unlikely event that the Court were to enter a judgment in Plaintiffs' favor that required the repayment of the current monthly base rent. Second, Plaintiffs have not -- and cannot -- make a showing that they are likely to succeed in obtaining such a judgment. Judge Walrath has already ruled that a Master Lease exists. While Plaintiffs have appealed this ruling, they have not -- and cannot -- demonstrate that they are likely to win on appeal.

While Plaintiffs assert, in both their appeal from Bankruptcy Judge

---

[3]    The background facts of this dispute are extensive and somewhat complicated. We will not repeat them here, but refer the Court to the briefing already completed on the pending appeal of Judge Walrath's Decision (case no. 03-00610, docket numbers 6, 11, and 13); the motion to dismiss the complaint filed by Plaintiffs' parent Abe Briarwood Corp. (case no. 04-00367, docket numbers 5, 7, and 12).

Walrath's orders and in their *Petition for Declaratory Judgment and Other Relief* filed in Missouri and now transferred to this Court, that there is no such Master Lease and that they are entitled to surrender the Facilities back to THCI without attendant lease damages, they have not ever identified any theory under which the amounts they have already paid in exchange for continued tenancy in the Facilities could be required to be repaid to them in whole or in part. Plaintiffs have not demonstrated any likelihood of success on obtaining a money judgment against THCI, and they have never supported any assertion that use and occupancy is much less than the Master Lease rate. Indeed, Plaintiffs have expressly stated that they are "holdover" tenants on a terminated lease, but they ignore that holdover tenants pay more than leaseholders under the Master Lease.

For these reasons, Bankruptcy Judge Walrath has already confirmed, based upon her extensive involvement in the bankruptcy proceeding that underlies this dispute, that THCI is entitled to the current monthly base rental amount of $691,875 because Plaintiffs are the tenants of the Facilities. Fed. R. Civ. Proc. 67 was not intended to be, and cannot be, used in the circumstances of this case to require THCI to forego the current monthly base rent payment to which it is legally entitled each month. Plaintiffs are clearly attempting to deprive THCI of these current monthly base rental payments, while continuing to be the tenants in the Facilities, for no reason other than presumably to gain a tactical advantage in this litigation. The DEPOSIT MOTION should be denied.

Similarly, Plaintiffs' accompanying ancillary request for preliminary injunctive relief should be denied because Plaintiffs cannot meet the standards required for preliminary injunctive relief. Plaintiffs are unable to show a reasonable probability of success on the merits, and are also unable to show that they will suffer irreparable harm if

the relief is not granted.   Furthermore, Plaintiffs cannot demonstrate that granting

preliminary relief will be in the public interest.  This is a private dispute between

Plaintiffs and THCI.  Accordingly, Plaintiffs' accompanying ancillary request for

preliminary injunctive relief under Fed. R. Civ. Proc. 65 should be denied.

## ARGUMENT

### I.

### PLAINTIFFS' REQUEST TO DEPOSIT THE CURRENT MONTHLY BASE RENT PAYMENTS INTO THE REGISTRY OF THIS COURT IS NOT JUSTIFIED

**A.      THE FACTS DO NOT JUSTIFY REQUIRING A DEPOSIT UNDER RULE 67**

District Courts may grant or deny motions under Rule 67 in their discretion.

The purpose of Rule 67 is "to relieve the depositor of responsibility for a fund in dispute

while the parties hash out their differences with respect to it." *Qwest Corporation v. City*

*of Portland,* 204 F.R.D. 468, 470 (D.Or. 2001), *quoting Cajun Elec. Power Co-op, Inc. v.*

*Riley Stoker Corp.,* 901 F.2d 441 (5th Cir. 1990).

There are not "very many occasions for the application of this rule . . . [t]his

rule is designed to operate generally and to continue in effect . . . statutory provisions

such as those permitting the plaintiff in an interpleader case to get rid of money and put it

in safekeeping somewhere." *U.S. v. Balfour, Guthrie & Co.,* 192 F. Supp. 60, 61

(S.D.N.Y. 1961). *See also Wright & Miller, Federal Practice and Procedure § 2991*

(2004) ("Rule 67 is a rather unimportant rule.  Predictions made at the time it was

adopted that there are "not very many occasions for the application of this rule" have

been proven accurate . . . .")

While the cases interpreting Rule 67 are not voluminous, courts have denied

Rule 67 motions in their discretion in a variety of circumstances. *See, e.g., Qwest*

*Corporation*, 204 F.R.D. at 470 (court refused to require funds to be deposited where, *inter alia*, there was no indication that the opposing party could not satisfy a judgment against it); *Saw Mill Broadcasters, Inc. v. Moore*, 561 F. Supp. 1139 (S.D.N.Y. 1983) (court refused to allow the plaintiff to deposit rental payments with the court pending a resolution of the action where, *inter alia*, the plaintiff could not show that it was likely to prevail on the merits and did not present any evidence which would justify denying the defendant the rent payments *pendente lite*); *Dinkins v. General Aniline & Film Corp.*, 214 F. Supp. 281, 283 (S.D.N.Y. 1963) (court refused to require the plaintiff to deposit funds with the court where, *inter alia*, doing so would be to deprive plaintiff of the use of the money pending the final determination of the action); *General Pencil Co. v. George H. Kahn Co.*, 246 F. Supp. 60, 61 (S.D.N.Y. 1965) (defendant not permitted to deposit funds with the court because the defendant sought to preserve all of its rights under a contract and to avoid the risk of a breach of contract if its position turned out to be wrong). [4]

Plaintiffs fail to cite to any persuasive authority to support their request. Plaintiffs cite to only two cases, both of which are factually distinguishable from the instant matter: *PY Small Boats, Inc. v. International Marine Marketing Corp.*, 1990 WL 40924 (D.R.I. 1990) and *Cajun Elec. Power Co-op*, 901 F.2d at 441 (*see* DEPOSIT MOTION at ¶¶ 17-18).

---

[4]   In their discretion, courts have refused to grant motions to deposit funds for additional reasons, such as concerns about the imposition on the court clerks that accounting burdens would produce. *Design Ben. Plans, Inc. v. Enright*, 940 F. Supp. 200, 207 (N.D. Ill. 1996) (denying motion to deposit funds into Court where, *inter alia*, the request "could involve a substantial sum of money and could entail an ongoing series of deposits, both of which would impose an unnecessary burden on the clerk of court.")

In *PY Small Boats*, the plaintiff alleged that the defendants were using its trademark without its permission. The plaintiff moved to deposit a royalty check with the Court that it had received from the defendants, since the plaintiff's right to receive royalty payments was at issue in the litigation. The Court allowed the deposit because, *inter alia*, there would be no prejudice to the defendant. *Id. at *2.*

In *Cajun Elec. Power Co-op*, the defendant deposited the amount due under an arbitration award with the court because the plaintiff was debating whether it would move to modify or vacate the award. The defendant deposited the funds in order to avoid significant interest penalties -- if payment was not made, then the award would bear interest at the Louisiana statutory rate. The defendant made it clear that it was willing to pay the plaintiff upon confirmation of the award. *Id.* at 442.

*PY Small Boats* and *Cajun Elec. Power Co-op* are inapposite to the instant matter. Here, Plaintiffs are not moving to deposit a check that they received from THCI so that they may be "relieved of responsibility" for the funds -- they are moving to deposit funds that they are required to pay. In addition, Plaintiffs are not seeking to avoid significant penalties by depositing the funds.

There is simply no purpose to be served by the deposit of the funds. The DEPOSIT MOTION should be denied

**B.    PLAINTIFFS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING THAT THCI CANNOT SATISFY A MONEY JUDGMENT**

Without the benefit of any support, Plaintiffs allege that "it is clear that [THCI] will not be good for a money judgment in the amount to which Plaintiffs will be entitled should they prevail in either action." (*see* DEPOSIT MOTION at ¶ 14). Plaintiffs offer no more than inadmissible speculation that "upon information and belief" THCI

"has no assets other than these homes, which earning no more than a market rent could not throw off the cash necessary to repay Plaintiffs." (*see id.*)

On the contrary, THCI owns, directly or indirectly, twenty-three nursing homes in 11 states. THCI owns thirteen nursing homes directly, and is the 100% owner of limited liability companies which own ten more nursing homes. Thirteen of the twenty-three nursing homes are leased to third parties, including the nine nursing homes at issue. Ten of the nursing homes are leased to limited liability companies of which THCI is the 100% owner. THCI collects rent from the tenants of the nursing homes leased to third parties, and receives all of the net cash flow from the properties which are operated by affiliates of THCI. The appraised equity of the twenty-three nursing homes, net of debt, is over $59,000,000. THCI's gross revenues from the twenty-three nursing homes are approximately $114,000,000 per year, including the rent received from the tenants in the instant litigation and from other third parties, and revenue from operations of the ten nursing homes that affiliates of THCI operate. THCI's cash flow from the twenty-three nursing homes is approximately $9,500,000 per year, including the rent received from the tenants in the instant litigation and from other third parties, and cash from operations of the ten nursing homes that affiliates of THCI operate. (*see* KURTZMAN DECLARATION at ¶¶ 2-7).

Plaintiffs grasp at straws and assert that "another major enterprise of a principal of Defendant, Moshael J. Straus, has recently filed for bankruptcy in the Southern District of New York (Amazing Savings, Inc./Odd Job Stores, Inc., of which Mr. Straus is Chairman and co-CEO of both)." (*see* DEPOSIT MOTION at ¶ 14). Mr. Straus is not a defendant in the instant action. In any event, whether another entity has

filed for bankruptcy is simply irrelevant to the instant motion. It is a fundamental principal of corporate law that a member of a limited liability company is not responsible for its debts:

> (a) . . . the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company. *6 Del. Ch. § 18-303.*

*See also Great Lakes Chemical Corporation v. Monsanto Company, 96* F. Supp. 2d 376, 383 (D.Del. 2000). Plaintiffs' references to Mr. Straus are accordingly a desperate effort to distract the Court from the fact that Plaintiffs have put forward no evidence whatsoever to support their baseless assertion that THCI will not be able to pay a money judgment.

In any event, Care Realty, L.L.C. ("Care Realty") is the ultimate parent company to THCI. Care Realty has numerous investors. Mr. Straus is an indirect equity owner of less than 10% of Care Realty. Mr. Straus is not involved in the management or operations of THCI or Care Realty in any way. Upon information and belief, Mr. Straus is or was an investor in Amazing Savings, Inc. / Odd Job Stores, Inc. ("Amazing Savings"). Amazing Savings is not under common control with THCI or Care Realty. Upon information and belief, other than Mr. Straus' ownership of a passive, minority equity interest in Care Realty, there is no business connection between Amazing Savings and Care Realty. Upon information and belief, Mr. Straus' involvement in Amazing Savings / Odd Job has not, will not and cannot have any effect on THCI's financial status or ability to pay its liabilities. (*see* KURTZMAN DECLARATION at ¶¶ 8-12.)

Accordingly, where, as here, there is no evidence that the opposing party will not be able to satisfy a judgment, the motion to deposit funds should be denied. *See, e.g., Qwest Corporation*, 204 F.R.D. at 470 (court refused to require funds to be deposited with the court where, *inter alia*, there was no indication that the opposing party could not satisfy a judgment against it.)

### C. PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS

While a showing of a likelihood of success on the merits is not an essential element of Rule 67 relief, district courts have considered this factor and have denied relief on this ground. *See, e.g., Saw Mill Broadcasters*, 561 F. Supp. at 1141 (court refused to allow the plaintiff to deposit rental payments into the court pending a resolution of the action where, *inter alia*, the plaintiff could not show that it was likely to prevail on the merits).

Similarly, in this case, Plaintiffs have not -- and cannot -- demonstrate that they are likely to prevail on the merits. Plaintiffs not only are unable to show a likelihood of obtaining a judgment against THCI, they have not even proffered a theory under which they would be entitled to such a judgment.

Plaintiffs continue to be the tenants in the Facilities. While they have pursued litigation that requests, on its face, to permit them to surrender the Facilities -- they have never proffered a theory under which they could occupy but not pay for such occupancy as required by the Master Lease. Indeed, Plaintiffs contend that

> Should Plaintiffs prevail, either on the appeal (meaning no Master Lease was ever created or in this action (meaning the Master Lease was breached by Defendant), there has been no lease rent in effect all this time, and the "rent" Plaintiffs have been paying should have been merely the (substantially lower) use-and-

occupancy payments as holdover tenants. Success by Plaintiffs in either matter
would therefore mean Defendant owes Plaintiffs a significant refund.
(*see* DEPOSIT MOTION at ¶ 14.)

Plaintiffs have not supported their assertion that use-and-occupancy is less

than the Master Lease rate. While they have expressly stated that they are "hold-over"

tenants on a terminated lease, they ignore that holdover tenants pay more than

leaseholders. Indeed, Article 19 of the underlying nine leases, incorporated by reference

into the Master Lease, provides that holdover tenants shall pay as rent <u>one and one-half</u>

<u>times</u> the aggregate of the current monthly base rent, all Additional Charges accruing

during the month, and all other sums due and owing pursuant to the provisions of the

leases. (*see* KURTZMAN DECLARATION at Exhibit A.)

Plaintiffs also have not -- and cannot -- demonstrate that they will be harmed

in any way if the Court denies the DEPOSIT MOTION. In cases where, as here, a party

cannot demonstrate that it will be harmed, courts have denied a motion under Rule 67.

*See, e.g., Qwest Corporation,* 204 F.R.D. at 470 (court refused to require funds to be

deposited with the court where, *inter alia*, the defendants could not show that they would

be harmed if the court did not require a deposit of the funds).

In short, Plaintiffs are attempting to preserve all of their rights under the

Master Lease -- should this Court uphold Judge Walrath's decision -- while at the same

time, depriving THCI of its benefits as landlord and avoid the ramifications of a breach of

the Master Lease should their position turn out to be wrong. However, courts have not

permitted parties to use Rule 67 in this way. *See, e.g., Dinkins,* 214 F. Supp. at 283

("[t]here is nothing in the history of Rule 67 or in the decisions construing it which

suggests that it was designed to afford to a defendant an opportunity to deprive a plaintiff

both of the benefits of his contract and of a right of action for its breach"); *General*

*Pencil Co.,* 246 F. Supp. at 61 (plaintiff was denied leave to deposit monies with the

court that were allegedly due under a written contract that was the subject of litigation;

the Court noted with disfavor that "plaintiff wishes to deposit the monies with the court

so that no claim can be made by defendant that by failure to pay the same the plaintiff has

breached the contract with defendant").

# II

## PLAINTIFFS' ACCOMPANYING REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF SHOULD BE DENIED

It is well-established that at the trial level, the party seeking a preliminary

injunction bears the burden of producing evidence sufficient to convince the Court that:

> (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of the relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest.

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (citation omitted).

In PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER filed

contemporaneously with the DEPOSIT MOTION, Plaintiffs state that "[p]ending a

determination of the Deposit Motion, Plaintiffs request a temporary restraining order or

preliminary injunction enjoining and staying Defendant from effecting a default of the

Nine Leases or pursuing any remedies allegedly arising from an event of default . . . ."

(*See* motion at ¶ 19).

As demonstrated above, Plaintiffs are not entitled to this relief because they

cannot show a reasonable probability of success on the merits. In addition, they cannot

show that they will be irreparably injured if the Court denies this relief. "Establishing a

risk of irreparable harm is not enough. A plaintiff has the burden of proving a "clear showing of immediate irreparable injury." *ECRI*, 809 F.2d at 226 (citation omitted). It is well-established that "irreparable harm" is not demonstrated where the claimed injury is a loss of money since it is "a loss capable of recoupment in a proper action at law." *Id. See also In re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1146 (3d Cir. 1982).

Where, as here, the claim is based on a breach of contract, courts have held that "irreparable injury" may be found in two situations: "(1) where the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable." *See ECRI*, 809 F.2d at 226 (citations omitted). These requirements are not found in this case.

Plaintiffs also cannot demonstrate that granting preliminary relief will be in the public interest. This is a private dispute between Plaintiffs and THCI.

## CONCLUSION

Plaintiffs are attempting to deprive THCI of the timely monthly rental payment of $691,875 that is due to them under the Master Lease. For the reasons set forth herein, and in the accompanying KURTZMAN DECLARATION, THCI respectfully requests that the Court deny PLAINTIFFS' MOTION FOR LEAVE TO MAKE A DEPOSIT IN COURT, and also deny Plaintiffs' ancillary request for a preliminary injunction, and grant such other relief to THCI to which it may justly be entitled.

**GREENBERG TRAURIG LLP**

By: _____

Scott D. Cousins (No. 3079)
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware  19801
Tel:  (302) 661-7000
Fax  (302) 661-7360

-and-

**ARENT FOX PLLC**

Ronald L. Castle, Esq.
1050 Connecticut Avenue, NW
Washington, DC  20036-5339
Tel:  (202) 857-6000
Fax:  (202) 857-6395

*Attorneys for Defendant THCI Company LLC*