IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRATED HEALTH SERVICES OF
CLIFF MANOR, INC. et al.,

                    Plaintiffs,

v.

THCI COMPANY LLC,

                    Defendant.

Civil Action No. 04-910

## DECLARATION OF KEVIN KURTZMAN

KEVIN KURTZMAN, pursuant to 28 U.S.C. §1746, declares under penalty of perjury that the following is true and correct:

1. I am the Chief Financial Officer of THCI Company LLC. I submit this Declaration in support of the OBJECTION OF THCI COMPANY LLC TO PLAINTIFFS' MOTION FOR LEAVE TO MAKE A DEPOSIT IN COURT submitted contemporaneously herewith. I am fully familiar with the facts hereinafter stated.

### A. THCI's Financial Status

2. THCI owns, directly or indirectly, twenty-three nursing homes in 11 states. THCI owns thirteen nursing homes directly, and is the 100% owner of limited liability companies which own ten more nursing homes.

3. Thirteen of the twenty-three nursing homes are leased to third parties, including the nine nursing homes at issue. Ten of the nursing homes are leased to limited liability companies of which THCI is the 100% owner.

NYC/172145.2

4. THCI collects rent from the tenants of the nursing homes leased to third parties, and receives all of the net cash flow from the properties which are operated by affiliates of THCI.

5. The appraised equity of the twenty-three nursing homes, net of debt, is over $59,000,000.

6. THCI's gross revenues from the twenty-three nursing homes are approximately $114,000,000 per year, including the rent received from the tenants in the instant litigation and from other third parties, and revenue from operations of the ten nursing homes that affiliates of THCI operate.

7. THCI's cash flow from the twenty-three nursing homes is approximately $9,500,000 per year, including the rent received from the tenants in the instant litigation and from other third parties, and cash from operations of the ten nursing homes that affiliates of THCI operate.

**B.   Mr. Straus' Lack of Involvement in THCI**

8. Care Realty, L.L.C. ("Care Realty") is the ultimate parent company to THCI. Care Realty has numerous investors. Mr. Straus is an indirect equity owner of less than 10% of Care Realty.

9. Mr. Straus is not involved in the management or operations of THCI or Care Realty in any way.

10. Upon information and belief, Mr. Straus is or was an investor in Amazing Savings, Inc. / Odd Job Stores, Inc. ("Amazing Savings"). Amazing Savings is not under common control with THCI or Care Realty.

11. Upon information and belief, other than Mr. Straus' ownership of a passive, minority equity interest in Care Realty, there is no business connection between Amazing Savings and Care Realty.

12. Upon information and belief, Mr. Straus' involvement in Amazing Savings / Odd Job has not, will not and cannot have any effect on THCI's financial status or ability to pay its liabilities.

C. **The Provisions of the Master Lease**

13. Article 19 of each of the 9 underlying leases, as incorporated by reference into the Master Lease, contain provisions describing the obligations of holdover tenants. Attached as Exhibit A is a copy of Article 19 of one of the nine leases. This provision is uniform in each of the nine underlying leases.

Executed this 19th day of April, 2005.

                                                /s/ Kevin Kurtzman
                                                KEVIN KURTZMAN

# EXHIBIT A

50

# FACILITY LEASE

# AND

# SECURITY AGREEMENT

**MEDITRUST OF OHIO, INC.**

Lessor/Secured Party

AND

**ELM CREEK OF IHS, INC.**

Lessee/Debtor

Dated December 7, 1990

For Premises Known as Elm Creek Nursing Center
Town of West Carrollton
Montgomery County, Ohio

## ARTICLE 19

### HOLDING OVER

If Lessee shall for any reason remain in possession of the Leased Property after the expiration of the Term or any earlier termination of the Term hereof, such possession shall be as a month-to-month tenant during which time Lessee shall pay as rental each month, one and one-half times the aggregate of (i) one-twelfth of the aggregate Minimum Rent and Additional Rent payable with respect to the last complete Lease Year prior to the expiration of the Term; (ii) all Additional Charges accruing during the month and (iii) all other sums, if any, payable by Lessee pursuant to the provisions of this Lease with respect to the Leased Property. During such period of month-to-month tenancy, Lessee shall be obligated to perform and observe all of the terms, covenants and conditions of this Lease, but shall have no rights hereunder other than the right, to the extent given by law to month-to-month tenants, to continue its occupancy and use of the Leased Property. Nothing contained herein shall constitute the consent, express or implied, of Lessor to the holding over of Lessee after the expiration or earlier termination of these Lease.

## ARTICLE 20

### RISK OF LOSS

During the Term of this Lease, the risk of loss or of decrease in the enjoyment and beneficial use of the Leased Property in consequence of the damage or destruction thereof by fire, the elements, casualties, thefts, riots, wars or otherwise, or in consequence of foreclosures, attachments, levies or executions (other than by Lessor and those claiming from, through or under Lessor) is assumed by Lessee and, in the absence of the gross negligence, willful misconduct or default in the performance of Lessor's obligations pursuant to Section 16, Lessor shall in no event be answerable or accountable therefor nor shall any of the events mentioned in this Section entitle Lessee to any abatement of Rent except as specifically provided in this Lease.

## ARTICLE 21

### INDEMNIFICATION AND ENVIRONMENTAL MATTERS

21.1  **General**.  Notwithstanding the existence of any insurance provided for in Article 13, and without regard to the policy limits of any such insurance, Lessee will protect, indemnify, save harmless and defend Lessor from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation,