# EXHIBIT "D"

ALPINE NORTH

7 : 122

FACILITY LEASE AND SECURITY AGREEMENT

by and between

MEDITRUST OF MISSOURI, INC.,

Lessor

and

INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC.,

Lessee

Dated as of March 24, 1988

For Premises Located At
Riverside, Platte County, Missouri

Alpine North

#122   (MO)

MEDITRUST

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| 1. | LEASED PROPERTY; TERM | 1 |
|  | 1.1 Leased Property | 1 |
|  | 1.2 Term | 2 |
| 2. | DEFINITIONS | 2 |
| 3. | RENT | 12 |
|  | 3.1 Rent for Land, Leased Improvements, Related Rights and Fixtures | 12 |
|  | 3.2 Quarterly Calculation and Payment of Additional Rent; Annual Reconciliation | 13 |
|  | 3.3 Confirmation of Additional Rent | 14 |
|  | 3.4 Additional Charges | 15 |
|  | 3.5 Equipment and Renovation Reserves | 15 |
|  | 3.6 Net Lease | 16 |
| 4. | IMPOSITIONS; TAXES; UTILITIES; INSURANCE PAYMENTS | 16 |
|  | 4.1 Payment of Impositions | 16 |
|  | 4.2 Notice of Impositions | 17 |
|  | 4.3 Adjustment of Impositions | 17 |
|  | 4.4 Utility Charges | 17 |
|  | 4.5 Insurance Premiums | 18 |
| 5. | NO LESSEE TERMINATION; ABATEMENTS OF RENT | 18 |
|  | 5.1 No Lessee Termination | 18 |
|  | 5.2 Abatement of Rent Procedures | 19 |
| 6. | OWNERSHIP OF LEASED PROPERTY AND PERSONAL PROPERTY; SECURITY INTEREST; COLLATERAL PLEDGE OF STOCK; REMOVAL AND REPLACEMENT OF PERSONAL PROPERTY; EQUIPMENT RESERVES | 19 |
|  | 6.1 Ownership of Leased Property | 19 |
|  | 6.2 Personal Property; Security Interest; Collateral Pledge of Stock; Removal and Replacement of Personal Property | 19 |
|  | 6.3 Equipment Reserves for Replacement of Personal Property | 19 |

|  |  |  | Page |
|---|---|---|---|
| 7. | CONDITION AND USE OF THE LEASED PROPERTY; MANAGEMENT AGREEMENTS.......................... | | 21 |
| | 7.1 | Condition of the Leased Property......... | 21 |
| | 7.2 | Use of the Leased Property............... | 21 |
| | | 7.2.1. Obligation to Operate............. | 21 |
| | | 7.2.2. Permitted Uses; Compliance With Insurance Requirements........ | 21 |
| | | 7.2.3. No Waste.......................... | 22 |
| | | 7.2.4. No Improvement.................... | 22 |
| | | 7.2.5 The Lessee........................ | 22 |
| | 7.3 | Management Agreements.................... | 22 |
| 8. | LEGAL REQUIREMENTS AND INSURANCE REQUIREMENTS.......................... | | 22 |
| | 8.1 | Compliance with Legal and Insurance Requirements.................... | 22 |
| | 8.2 | Legal Requirement Covenants.............. | 23 |
| | 8.3 | Permitted Contest of Certain Legal Requirements...................... | 23 |
| 9. | REPAIRS; RESTRICTIONS........................... | | 24 |
| | 9.1 | Maintenance and Repair................... | 24 |
| | 9.2 | Encroachments; Restrictions.............. | 25 |
| 10. | CAPITAL ADDITIONS............................... | | 26 |
| | 10.1 | Construction of Capital Additions........ | 26 |
| | 10.2 | Non-Capital Additions.................... | 26 |
| | 10.3 | Salvage.................................. | 26 |
| 11. | LIENS........................................... | | 26 |
| 12. | PERMITTED CONTESTS.............................. | | 27 |
| 13. | INSURANCE....................................... | | 28 |
| | 13.1 | General Insurance Requirements........... | 28 |
| | 13.2 | Replacement Cost......................... | 29 |
| | 13.3 | Additional Insurance..................... | 30 |
| | 13.4 | Waiver of Subrogation.................... | 30 |
| | 13.5 | Form of Insurance........................ | 30 |
| | 13.6 | Increase in Limits....................... | 30 |
| | 13.7 | Blanket Policy........................... | 30 |
| | 13.8 | No Separate Insurance.................... | 30 |

|  |  | Page |
|---|---|---|
| 14. | FIRE AND CASUALTY | 31 |
| | 14.1 Insurance Proceeds | 31 |
| | 14.2 Reconstruction in the Event of Damage or Destruction Covered by Insurance | 32 |
| | 14.3 Reconstruction in the Event of Damage or Destruction Not Covered by Insurance | 33 |
| | 14.4 Lessee's Property | 34 |
| | 14.5 Restoration of Lessee's Property | 34 |
| | 14.6 Abatement of Rent | 34 |
| | 14.7 Damage Near End of Term | 34 |
| | 14.8 Termination of Purchase Option | 35 |
| | 14.9 Waiver | 35 |
| 15. | CONDEMNATION | 35 |
| | 15.1 Definitions | 35 |
| | 15.2 Parties' Rights and Obligations | 35 |
| | 15.3 Total Taking | 35 |
| | 15.4 Partial Taking | 35 |
| | 15.5 Restoration | 36 |
| | 15.6 Award Distribution | 36 |
| | 15.7 Temporary Taking | 37 |
| 16. | DEFAULT | 37 |
| | 16.1 Events of Default | 37 |
| | 16.2 Certain Remedies | 40 |
| | 16.3 Damages | 41 |
| | 16.4 Waiver | 42 |
| | 16.5 Application of Funds | 43 |
| | 16.6 Failure to Conduct Business | 43 |
| | 16.7 Lessee's Obligation to Purchase | 43 |
| 17. | LESSOR'S RIGHT TO CURE | 44 |
| 18. | PURCHASE OF THE LEASED PROPERTY | 44 |
| 19. | HOLDING OVER | 45 |
| 20. | RISK OF LOSS | 45 |
| 21. | INDEMNIFICATION | 46 |
| 22. | SUBLETTING AND ASSIGNMENT | 47 |
| | 22.1 Subletting and Assignment | 47 |
| | 22.2 Attornment | 47 |

|     |     | Page |
| --- | --- | --- |
| 23. | OFFICER'S CERTIFICATES; FINANCIAL STATEMENTS AND ANNUAL BUDGETS............................ | 48 |
|     | 23.1 Officer's Certificates..................... | 48 |
|     | 23.2 Financial Statements...................... | 48 |
|     | 23.3 Licensing Information..................... | 49 |
|     | 23.4 Annual Budgets........................... | 49 |
| 24. | INSPECTION................................... | 49 |
| 25. | NO WAIVER.................................... | 49 |
| 26. | REMEDIES CUMULATIVE.......................... | 50 |
| 27. | SURRENDER OF LEASED PROPERTY; OF LEASE........ | 50 |
| 28. | NO MERGER OF TITLE........................... | 50 |
| 29. | TRANSFERS BY LESSOR.......................... | 51 |
| 30. | QUIET ENJOYMENT.............................. | 51 |
| 31. | NOTICES...................................... | 51 |
| 32. | PURCHASE RIGHTS.............................. | 53 |
|     | 32.1 Lessee's Option to Purchase the Leased Property................................ | 53 |
|     | 32.2 Lessor's Option to Purchase Lessee's Personal Property...................... | 53 |
|     | 32.3 Right of First Refusal.................. | 53 |
| 33. | EXTENDED TERMS............................... | 54 |
| 34. | APPRAISAL.................................... | 54 |
| 35. | DEFAULT BY LESSOR............................ | 56 |
| 36. | LIENS ON THE LEASED PROPERTY................. | 56 |
| 37. | SUBORDINATION AND NON-DISTURBANCE............ | 57 |
| 38. | MISCELLANEOUS................................ | 58 |
|     | 38.1 General................................. | 58 |
|     | 38.2 Transfer of Licenses.................... | 58 |
| 39. | MEMORANDUM OF LEASE.......................... | 58 |
| 40. | LIMITATION OF LIABILITY...................... | 58 |

```
                                                                    Page
SIGNATURES................................................... 60
EXHIBIT A:   Legal Description
EXHIBIT B:   Permitted Title Exceptions
```

(v)

This Facility Lease and Security Agreement (the "Lease") is dated as of the 24th day of March, 1988 and is between Meditrust of Missouri, Inc. ("Lessor"), a Delaware corporation, having an office at 15-A Walnut Street, Wellesley, Massachusetts 02181, and Integrated Health Services of Cliff Manor, Inc. ("Lessee"), a Delaware corporation, having an office at 11019 McCormick Road, Suite 400, Hunt Valley, MD 21031.

## ARTICLE 1

## LEASED PROPERTY; TERM

1.1 **Leased Property**. Upon and subject to the terms and conditions hereinafter set forth, Lessor leases to Lessee and Lessee rents from Lessor all of Lessor's rights and interest in and to the following real and personal property (collectively, the "Leased Property"):

(i) the real property located at 4700 Cliffview Drive, Riverside, Platte County, Missouri, more particularly described in Exhibit A attached hereto (the "Land"),

(ii) all buildings, structures, fixtures (as hereinafter defined) and other improvements of every kind including, but not limited to, alleyways and connecting tunnels, sidewalks, utility pipes, conduits and lines (on-site and off-site), and parking areas and roadways appurtenant to such buildings and structures presently or hereafter situated upon the Land (collectively, the "Leased Improvements"),

(iii) all easements, rights and appurtenances relating to the Land and the Leased Improvements (collectively, the "Related Rights"), and

(iv) all equipment, machinery, fixtures, and other items of real and/or personal property, including all components thereof, now and hereafter located in, on or used in connection with, and permanently affixed to or incorporated into the Leased Improvements, including, without limitation, all furnaces, boilers, heaters, electrical equipment, heating, plumbing, lighting, ventilating, refrigerating, incineration, air and water pollution control, waste disposal, air-cooling and air-conditioning systems and apparatus, sprinkler systems and fire and theft protection equipment, and built-in oxygen and vacuum systems, all of which, to the greatest extent permitted by law, are hereby deemed by the parties hereto to constitute real estate, together with all replacements, modifications, alterations and additions thereto, but specifically excluding all items included within the category of Personal Property as defined below (collectively the "Fixtures").

The Leased Property is demised in its present condition without representation or warranty by Lessor and subject to the rights of parties in possession, and to the existing state of title including all covenants, conditions, restrictions, easements and other matters of record including all applicable laws, the lien of financing instruments, mortgages, deeds of trusts and including other matters which would be disclosed by an inspection of the Leased Property or by an accurate survey thereof. The Leased Property is leased subject to all covenants, conditions, restrictions, easements and other matters set forth in Exhibit B.

1.2  **Term**.  The initial term of the Lease shall be for a fixed term (the "Term") commencing on March 21, 1988 (the "Commencement Date") and ending at the later of (1) midnight on March 25, 1998, and (2) the Extended Terms provided for in Article 33; unless this Lease is sooner terminated as hereinafter provided.

### ARTICLE 2

### DEFINITIONS

2.1  **Definitions**.  For all purposes of this Lease, except as otherwise expressly provided or unless the context otherwise requires, (i) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular, (ii) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles as at the time applicable, (iii) all references in this Lease to designated "Articles", "Sections" and other subdivisions are to the designated Articles, Sections and other subdivisions of this Lease and (iv) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Lease as a whole and not to any particular Article, Section or other subdivision:

Additional Charges:  As defined in Article 3.

Additional Rent:  As defined in Article 3.

Affiliate:  As used in this Lease the term "Affiliate" shall mean (i) any person which, directly or indirectly, controls or is controlled by or is under common control with such person, (ii) any other person that owns, beneficially, directly or indirectly, five percent (5%) of the outstanding capital stock, shares or equity interests of such person, or (iii) any officer, director, employee, general partner or trustee of such person or any person controlling, controlled by or under common control with such person (excluding trustees

-2-

and persons serving in similar capacities who are not otherwise an Affiliate of such person). The term "person" means and includes individuals, corporations, general and limited partnerships, stock companies or associations, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts, or other entities and governments and agencies and political subdivisions thereof. For the purposes of this definition, "control" (including the correlative meanings of the terms "controlled by" and "under common control with"), as used with respect to any person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person, through the ownership of voting securities, partnership interests or other equity interests.

Assumed Indebtedness: Any subsequent indebtedness resulting from Lessor's financing of, or Lessor's reimbursement of Lessee's financing of, any Capital Additions during the Term which have been approved of by Lessee, but specifically excluding any indebtedness or other obligations of Lessee not assumed by Lessor prior to or during the Term.

Award: As defined in Article 15.

Base Gross Revenues: The Gross Revenues of the Base Period annualized for a twelve (12) month period.

Base Rent: As defined in Article 3.1.

Base Period: The period beginning January 25, 1988 and ending June 30, 1988.

Business Day: Each Monday, Tuesday, Wednesday, Thursday and Friday which is not a day on which national banks in the state where the Leased Property is located are authorized, or obligated, by law or executive order, to close.

Capital Additions: One or more new buildings, or one or more additional structures annexed to any portion of any of the Leased Improvements, or the material expansion of existing improvements, which are constructed on any parcel or portion of the Land, during the Term, including the construction of a new wing or new story, or the renovation of existing improvements on the Leased Property in order to provide a functionally new facility needed to provide services not previously offered, or any expansion, construction, renovation or conversion in order to increase the bed capacity of a Facility, to change the purpose for which such beds are utilized or to improve the quality of the Facility.

Capital Additions Cost: The term "Capital Additions Cost" shall mean the cost of any Capital Addition proposed to be made by Lessee whether paid for by Lessee or Lessor. Such cost

shall include (a) the cost of construction of the Capital Additions including site preparation and improvement, materials, labor, supervision, developer and administrative fees, legal fees, and related design, engineering and architectural services, the cost of any fixtures, the cost of construction financing (including but not limited to capitalized interest) and other miscellaneous costs approved by Lessor, (b) if agreed to by Lessor in writing, in advance, the cost of any land contiguous to the Leased Property which is to become a part of the Leased Property purchased for the purpose of placing thereon the Capital Additions or any portion thereof or for providing means of access thereto, or parking facilities therefor, including the cost of surveying the same, (c) the cost of insurance, real estate taxes, water and sewage charges and other carrying charges for such Capital Additions during construction, (d) the cost of title insurance, (e) reasonable fees and expenses of legal counsel, (f) filing, registration and recording taxes and fees, (g) documentary stamp taxes, if any, and (h) all reasonable costs and expenses of Lessor and any Lending Institution which has committed to finance the Capital Additions, including, but not limited to, (i) the reasonable fees and expenses of their respective legal counsel, (ii) all printing expenses, if any, (iii) the amount of any filing, registration and recording taxes and fees, (iv) documentary stamp taxes, if any, (v) title insurance charges, appraisal fees, if any, (vi) rating agency fees, if any, and (vii) commitment fees, if any, charged by any Lending Institution advancing or offering to advance any portion of the financing for such Capital Additions.

<u>Code</u>: The Internal Revenue Code of 1986, as amended.

<u>Commencement Date</u>: As defined in Article 1.

<u>Condemnation, Condemnor</u>: As defined in Article 15.

<u>Consolidated Financials</u>: For any fiscal year or other accounting period for Lessee and/or Guarantor (as the case may be) and its consolidated subsidiaries, statements of earnings and retained earnings and of changes in financial position for such period and for the period from the beginning of the respective fiscal year to the end of such period and the related balance sheet as at the end of such period, together with the notes thereto, all in reasonable detail and setting forth in comparative form the corresponding figures for the corresponding period in the preceding fiscal year, and prepared in accordance with generally accepted accounting principles.

<u>Consolidated Net Worth</u>: At any time, the sum of the following for Lessee and its consolidated subsidiaries, on a consolidated basis determined in accordance with generally accepted accounting principles:

-4-

 (1) the amount of capital or stated capital (after deducting the cost of any treasury shares), plus

 (2) the amount of capital surplus and retained earnings (or, in the case of a capital surplus or retained earnings deficit, minus the amount of such deficit), minus

 (3) the sum of the following (without duplication of deductions in respect of items already deducted in arriving at surplus and retained earnings): (a) unamortized debt discount and expense and (b) any write-up in book value of assets resulting from a revaluation thereof subsequent to the most recent Consolidated Financials prior to the date thereof, except any net write-up in value of foreign currency in accordance with generally accepted accounting principles; any write-up resulting from a reversal of a reserve for bad debts or depreciation; and any write-up resulting from a change in methods of accounting for inventory.

<u>Cost of Living Index</u>: The Consumer Price Index, Urban Wage Earners and Clerical Workers, All Items, Base 1982-84=100, published by the Bureau of Labor Statistics, U.S. Department of Labor, for the geographical area which includes the Leased Property, or if said Index is not available, then an available index for the state in which the Leased Property is located, or if not available, for the entire United States, published by said bureau or its successor, or if none, by any other instrumentality of the United States or of the state in which the Leased Property is located, in the order mentioned.

<u>Date of Taking</u>: As defined in Article 15.

<u>Encumbrance</u>: As defined in Article 36.

<u>Event of Default</u>: As defined in Article 16.

<u>Excess Gross Revenues</u>: Gross Revenues less Base Gross Revenues.

<u>Extended Terms</u>: As defined in Article 33.

<u>Facility</u>: The existing health care facility situated on the Leased Property on the Commencement Date, comprising 186 long-term nursing home beds, as it may be modified from time to time with approval of Lessor.

<u>Facility Mortgage</u>: As defined in Article 13.

<u>Facility Mortgagee</u>: As defined in Article 13.

-5-

<u>Fair Market Value</u>: The fair market value of the Leased Property, including all Capital Additions, and (a) assuming the same is unencumbered by this Lease, (b) determined in accordance with the appraisal procedures set forth in Article 34 or in such other manner as shall be mutually acceptable to Lessor and Lessee, and (c) not taking into account any reduction in value resulting from any encumbrance to which the Leased Property is subject and which encumbrance Lessee or Lessor is otherwise required to remove at or prior to closing of the transaction. In determining such Fair Market Value the positive or negative effect on the value of the Leased Property attributable to the interest rate, amortization schedule, maturity date, prepayment penalty and other terms and conditions of any mortgage on the Leased Property which is not so required or agreed to be removed shall be taken into account in determining such Fair Market Value. The Fair Market Value shall be determined by using alternative forms of appraisal such as the "income" approach and the "bricks and mortar" approach; however, the Fair Market value shall be the higher of those values.

<u>Fair Market Added Value</u>: The Fair Market Value of the Leased Property (including all Capital Additions) less the Fair Market Value of the Leased Property determined as if no Capital Additions financed by Lessee had been constructed.

<u>Fair Market Value Purchase Price</u>: The Fair Market Value of the Leased Property less the Fair Market Added Value.

<u>Fiscal Quarter</u>: Each of the three- (3-) month periods commencing July, October, January and April.

<u>Fiscal Year</u>: The twelve- (12-) month period from July 1 to June 30.

<u>Fixtures</u>: As defined in Article 1.

<u>Gross Revenues</u>: The term "Gross Revenues" shall mean all revenues received or receivable from or by reason of the operation of the Facility (including any Capital Additions), or any other use of the Leased Property, including without limitation, all patient revenues received or receivable for the use of or otherwise by reason of all rooms, beds and other facilities provided, meals served, services performed, space or facilities subleased or goods sold on the Leased Property, including without limitation, and except as provided below, any consideration received under any subletting, licensing, or other arrangements with third parties relating to the possession or use of any portion of the Leased Property and all revenues from all ancillary services provided, however, that Gross Revenues shall not include non-operating revenues such as

interest income or gain from the sale of assets not sold in the ordinary course of business; and provided, further, that there shall be deducted from such revenues:

(i) contractual allowances (relating to any period during the Term of this Lease) for billings not paid by or received from the appropriate governmental agencies or third party providers.

(ii) allowances according to generally accepted accounting principles for uncollectible accounts.

(iii) all proper patient billing credits and adjustments according to generally accepted accounting principles relating to health care accounting.

(iv) federal, state or local sales, use, gross receipts and excise taxes and any tax based upon or measured by said Gross Revenues which is added to or made a part of the amount billed to the patient or other recipient of such services or goods, whether included in the billing or stated separately;

(v) provider discounts for hospital or other medical facility utilization contracts,

(vi) the cost of any federal, state or local governmental program imposed specially to provide or finance indigent patient care, and

(vii) revenues attributable to Capital Additions financed by Lessee as provided for in Section 10.2.

To the extent that the Leased Property is subleased by Lessee to an Affiliate, Gross Revenues shall be calculated for all purposes of this Lease by including the Gross Revenues of such sublessees with respect to the subleased property, i.e., the Gross Revenues generated from the operations conducted on such subleased portion of the Leased Property shall be included directly in the Gross Revenues for the purpose of determining Additional Rent payable under this Lease and the rent received or receivable by such Affiliate lessee from or under such subleases shall be excluded from Gross Revenues for such purpose. As to any lease of a portion of the Leased Property to a non-Affiliate of Lessee, only the rental actually received by Lessee from such non-Affiliate shall be included in Gross Revenues.

<u>Guarantor</u>: Integrated Health Services, Inc., a Delaware corporation.

<u>Guaranty</u>: The guaranty executed by Guarantor to Lessor.

Hazardous Substances: collectively, (1) any material which may be dangerous to health or the environment, either separately or in combination with any other substance, when improperly stored, treated, disposed, or otherwise managed, including without limitation, hazardous substances as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §9601, and (2) crude or refined oil, including waste oil. Hazardous Substances shall not include pharmaceuticals, insecticides, cleaning substances, office supplies and disinfectants of the types and in quantities normally stocked by health care providers similar to the Facility.

Impositions: Collectively, all taxes (including, without limitation, all capital stock and franchise taxes of Lessor, all ad valorem, sales and use, single business, gross receipts, transaction privilege, rent or similar taxes), assessments (including, without limitation, all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not to be completed within the Term), ground rents, water, sewer or other rents and charges, excises, tax levies, fees (including, without limitation , license, permit, inspection, authorization and similar fees), and all other governmental charges, in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen, of every character in respect of the Leased Property and/or the Rent (including all interest and penalties thereon due to any failure in payment by Lessee), which at any time prior to, during or in respect of the Term hereof may be assessed or imposed on or in respect of or be a lien upon (a) Lessor or Lessor's interest in the Leased Property, (b) the Leased Property or any part thereof or any rent therefrom or any estate, right, title or interest therein, or (c) any occupancy, operation, use or possession of, sales from, or activity conducted on, or in connection with, the Leased Property or the leasing or use of the Leased Property or any part thereof; provided, however, nothing contained in this Lease shall be construed to require Lessee to pay (1) any tax based on net income (whether denominated as a franchise or capital stock or other tax) imposed on Lessor or any other person or (2) any transfer or net revenue tax of Lessor or any other Person except Lessee and its successors or (3) any tax imposed with respect to the sale, exchange or other disposition by Lessor of any portion of the Leased Property or the proceeds thereof, or (4) except as expressly provided elsewhere in this Lease, any principal or interest on any Encumbrance on the Leased Property, however, the provisos set forth in this sentence shall not be applicable to the extent that any tax, assessment, tax levy or charge which Lessee is obligated to pay pursuant to the first sentence of this definition and which is in effect at any time during the Term hereof is totally or partially repealed, and a tax, assessment, tax levy or charge

-8-

set forth in clause (1) or (2) is levied, assessed or imposed expressly in lieu thereof.

**Insurance Requirements**: All terms of any insurance policy required by this Lease and all requirements of the issuer of any such Policy.

**Land**: As defined in Article 1.

**Lease**: As defined in the preamble.

**Lease Year**: A twelve- (12-) month period commencing on the Commencement Date or on each anniversary date thereof, as the case may be.

**Leased Improvements; Leased Property**: Each as defined in Article 1.

**Legal Requirements**: All federal, state, county, municipal and other governmental statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions affecting either the Leased Property or the construction, use or alteration thereof, whether now or hereafter enacted and in force, including any which may (i) require repairs, modifications or alterations in or to the Leased Property or (ii) in any way adversely affect the use and enjoyment thereof, and all permits, licenses, authorizations and regulations relating thereto, including all covenants, agreements, restrictions and encumbrances contained in any instruments, either of record or known to Lessee (other than encumbrances created by Lessor without the consent of Lessee), at any time in force affecting the Leased Property, or (iii) require clean-up of Hazardous Substances.

**Lending Institution**: Any insurance company, federally insured commercial or savings bank, national banking association, savings and loan association, employees' welfare, pension or retirement fund or system, corporate profit-sharing or pension trust, college or university, or real estate investment trust, including any corporation qualified to be treated for federal tax purposes as a real estate investment trust, having a net worth of at least $50,000,000.

**Lessee**: Integrated Health Services of Cliff Manor, Inc., a Delaware corporation.

**Lessor**: Meditrust of Missouri, a Delaware corporation, and its successors and assigns.

**Management Agreement**: Any agreement, whether written or oral, between Lessee and any other party (including but not limited to an Affiliate of Lessee) to manage or operate the Facility on behalf of Lessee.

-9-

<u>Minimum Rent</u>: As defined in Article 3.

<u>Officer's Certificate</u>: A certificate of Lessee signed by the Chairman of the Board of Directors, the President, any Vice President or the Treasurer of Lessee or another officer authorized to so sign by the Board of Directors or By-Laws of Lessee, or any other person whose power and authority to act has been authorized by delegation in writing by any of the persons holding the foregoing offices.

<u>Original Purchase Price</u>: $8,797,900..

<u>Overdue Rate</u>: On any date, a rate per annum equal to the greater of 18% or 120% of the Prime Rate, but in no event greater than the maximum rate then permitted under applicable law.

<u>Payment Date</u>: Any due date for the payment of the installments of Minimum Rent, Additional Rent or any other sums payable under this Lease.

<u>Personal Property</u>: All machinery, equipment, furniture, furnishings, movable walls or partitions, computers or trade fixtures or other personal property, and consumable inventory and supplies, used or useful in Lessee's business on the Leased Property and removable without causing material damage to the Leased Property, including without limitation all items of furniture, furnishings, equipment, vehicles, supplies and inventory, together with all replacements, modifications, alterations, and additions thereto, except items, if any, included within the definition of Fixtures.

<u>Primary Intended Use</u>: Use of the Facility as a health care facility licensed for 186 long-term nursing home beds, plus such additional uses which are permitted by Lessor from time to time.

<u>Prime Rate</u>: The annual rate publicly announced by The First National Bank of Boston to be its base rate for 90-day unsecured loans to its United States corporate borrowers of the highest credit standing, as in effect from time to time.

<u>Purchase and Sale Agreement</u>: The Agreement dated as of March 1, 1988 among Lessee and Lessor relating to the acquisition by Lessor of the Leased Property.

<u>Purchase Option Date</u>: March 30, 1998.

<u>Rent</u>: Collectively, the Minimum Rent, Additional Rent and the Additional Charges.

-10-

Rent Adjustment Date: The fifth anniversary of the Commencement Date and every fifth anniversary date thereafter during the Term.

Rent Adjustment Rate: 400 basis points over the monthly average yield to maturity for actively traded marketable United States treasury securities bearing a fixed rate of interest adjusted for a constant maturity of five (5) years as calculated by the Federal Reserve Board using the monthly average for the month preceding the Rent Adjustment Date.

State: The state or commonwealth in which the Leased Property is located.

Subsidiaries: Corporations or partnerships, of which Lessee owns, directly or indirectly, more than 50% of the voting stock (individually, a "subsidiary").

Taking: A taking or voluntary conveyance during the Term hereof of all or part of the Leased Property, or any interest therein or right accruing thereto or use thereof, as the result of, or in settlement of any Condemnation or other eminent domain proceeding affecting the Leased Property whether or not the same shall have actually been commenced.

Term: Collectively, the Fixed Term and any Extended Term, as the context may require, unless earlier terminated pursuant to the provisions hereof.

United States Treasury Securities: The uninsured treasury securities issued by the United States Federal Reserve Bank.

Unsuitable for Its Primary Intended Use: As used anywhere in this Lease, the term "Unsuitable for its Primary Intended Use" shall mean that, by reason of damage or destruction, or a partial Taking by Condemnation, in the good faith judgment of Lessee, reasonably exercised, the Facility cannot be operated on a commercially practicable basis for its Primary Intended Use, taking into account, among other relevant factors, the number of usable beds affected by such damage or destruction or partial Taking.

Unavoidable Delays: Delays due to strikes, lockouts, inability to procure materials, power failure, acts of God, governmental restrictions, enemy action, civil commotion, fire, unavoidable casualty or other causes beyond the control of the party responsible for performing an obligation hereunder, provided that lack of funds shall not be deemed a cause beyond the control of either party hereto.

## ARTICLE 3

### RENT

3.1 <u>Rent for Land, Leased Improvements, Related Rights and Fixtures</u>. Lessee will pay to Lessor, in lawful money of the United States of America, at Lessor's address set forth herein or at such other place or to such other person, firms or corporations as Lessor from time to time may designate in writing, rent for the Leased Property, as follows:

(a) <u>Minimum Rent</u>:

(i) A base rent ("Base Rent") per annum, payable in advance in equal, consecutive monthly installments due on the first day of each calendar month,

    A. For the first eighteen (18) months of the Lease Term, of $967,769, and

    B. For the period from the nineteenth (19th) to the sixtieth (60th) month of the Lease Term, inclusive, of $1,077,743.

The first monthly payment of such rent shall be payable on the Commencement Date (prorated as to any partial month at the beginning of the Term).

(ii) On the day that the Base Rent installment for the eighteenth (18th) month of the Lease Term is payable, a one-time payment of $175,958.

(iii) On each Rent Adjustment Date, the Base Rent shall be adjusted to equal the greater of (i) the current Base Rent or (ii) an amount equal to the Original Purchase Price multiplied by the Rent Adjustment Rate, and from that Rent Adjustment Date until the next Rent Adjustment Date the Base Rent shall be the Base Rent as so adjusted.

(iv) An amount equal to the monthly sum of all principal, interest and other payments of any kind payable in connection with any Assumed Indebtedness (except for any penalty or interest which may be assessed solely due to Lessor's failure to make timely payments), which portion of the Minimum Rent shall be due and payable no less than ten (10) days in advance of the due dates of such payments to the respective lender.

(b) <u>Additional Rent</u>: In addition to the Minimum Rent, Lessee shall pay to Lessor Additional Rent in an amount equal to 5% of Excess Gross Revenues. Additional Rent shall be payable quarterly during the Term commencing