on the first day of the calendar quarter beginning after the Base Period, ("Additional Rent Commencement Date"), and there shall be an annual reconciliation, as provided in Section 3.2 below.

   3.2   Quarterly Calculation and Payment of Additional Rent; Annual Reconciliation.

   (a) Lessee shall calculate and pay Additional Rent quarterly on the first day of each Fiscal Quarter for the prior Fiscal Quarter, based on one quarter of the Excess Gross Revenues for the previous Fiscal Year.

   (b) In addition, on or before the first day of the second Fiscal Quarter of each Fiscal Year, commencing with July 1, 1986, Lessee shall deliver to Lessor an Officer's Certificate reasonably acceptable to Lessor and certified by the chief financial officer of Lessee, setting forth the Gross Revenues for the immediately preceding Fiscal Year. The first annual reconciliation and adjustment of Additional Rent shall be made as of the last day of the Fiscal Year in which the Base Period ends (unless the Fiscal Year and the Base Period are coterminous, in which case the reconciliation shall be made as of the last day of the Fiscal Year following the Base Period) and will reflect the Additional Rent payable with respect to the pro rata portion of the Excess Gross Revenues for the period commencing on the Additional Rent Commencement Date and ending on the last day of that Fiscal Year.

   (c) If the Additional Rent, as finally determined for any Lease Year, exceeds the sum of the quarterly payments of Additional Rent previously paid by Lessee with respect to said Lease Year, Lessee shall, within thirty (30) days after such determination should have been made under Section 3.2(b), pay such deficit to Lessor plus interest on such deficit from the last day of the Lease Year at the Prime Rate plus two (2) percentage points.

   (d) If the Additional Rent for any year is less than the amount previously paid with respect thereto by Lessee, Lessee shall notify Lessor either (i) to pay to Lessee an amount equal to such difference, or (ii) to grant Lessee a credit against Additional Rent next coming due in the amount of such difference.

   (e) The obligation to pay Additional Rent shall survive the expiration or earlier termination of the Term, and a final reconciliation, taking into account, among other relevant adjustments, any contractual allowances which related to Gross Revenues accrued prior to such termination date but which have been determined to be not

-13-

payable after such termination date, and Lessee's good faith best estimate of the amount of any unresolved contractual allowances, shall be made not later than two (2) years after said expiration or termination date. Lessee shall advise Lessor within sixty (60) days after such expiration or termination date of Lessee's best estimate at that time of the approximate amount of such adjustments, which estimate shall not be binding on Lessee or have any legal effect whatsoever.

3.3    Confirmation of Additional Rent. Lessee shall utilize, or cause to be utilized, an accounting system for the Leased Property in accordance with its usual and customary practices and in accordance with generally accepted accounting principles which will accurately record all Gross Revenues. Lessee shall retain, for at least three (3) years after the expiration of each Lease Year, (and in any event until the final reconciliation described in Section 3.2 above has been made), reasonably adequate records conforming to such accounting system showing all Gross Revenues for such Lease Year. Lessor, at its own expense except as provided hereinbelow, shall have the right from time to time, within three (3) years after the expiration of each Lease Year to have its accountants or representatives audit the information set forth in the Officer's Certificate referred to in Section 3.2 and in connection with such audits to examine Lessee's records with respect thereto (including supporting data and sales tax returns), subject to any prohibitions or limitations on disclosure of any such data under applicable law or regulations, including without limitation, any duly enacted "Patients' Bill of Rights" or similar legislation, including such limitations as may be necessary to preserve the confidentiality of the Facility-patient relationship and the physician-patient privilege. If any such audit discloses a deficiency in the reporting of Gross Revenues, and either Lessee agrees with the result of such audit or the matter is compromised, Lessee shall forthwith pay to Lessor the amount of the deficiency in Additional Rent which would have been payable by it had such deficiency in reporting Gross Revenues not occurred, as finally agreed or determined, together with interest on the additional Additional Rent which should have been payable by it, at the Overdue Rate from the date when said payment should have been made by Lessee to the date of payment thereof; provided, however, that as to any audit that is commenced more than two (2) years after the date Gross Revenues for any Lease Year are reported by Lessee to Lessor, the deficiency, if any, with respect to Additional Rent shall bear interest as permitted herein only from the date such determination of deficiency is made, unless such deficiency is the result of gross negligence or willful misconduct on the part of Lessee. If any such audit discloses that the Gross Revenues actually received by Lessee for any Lease Year exceed

those reported by Lessee by more than 3%, Lessee shall pay the reasonable cost of such audit and examination. Any proprietary information obtained by Lessor pursuant to the provisions of this Section shall be treated as confidential, except that such information may be used in any litigation or arbitration proceedings between the parties and except, further, that Lessor may disclose such information to prospective lenders, subject in each case to appropriate confidentiality safeguards. The obligations of Lessor and Lessee contained in this Section shall survive the expiration or earlier termination of this Lease.

3.4. **Additional Charges**. In addition to the Minimum Rent and Additional Rent, (1) Lessee will also pay and discharge as and when due and payable all Impositions and other amounts, liabilities and obligations which Lessee assumes or agrees to pay under this Lease, and (2) in the event of any failure on the part of Lessee to pay any of those items referred to in clause (1) above, Lessee will also promptly pay and discharge every fine, penalty, interest and cost which may be added for non-payment or late payment of such items (the items referred to in clauses (1) and (2) above being referred to herein collectively as the "Additional Charges"), and Lessor shall have all legal, equitable and contractual rights, powers and remedies provided in this Lease, by statute or otherwise, in the case of non-payment of the Additional Charges, as well as the Minimum Rent and Additional Rent. If any installment of Minimum Rent, Additional Rent or Additional Charges (but only as to those Additional Charges which are payable directly to Lessor) shall not be paid within five (5) Business Days after its due date, Lessee will pay Lessor on demand, as Additional Charges, a late charge (to the extent permitted by law) computed at the Overdue Rate (or at the maximum rate permitted by law, whichever is less) on the amount of such installment, from the due date of such installment to the date of payment thereof. To the extent that Lessee pays any Additional Charges to Lessor pursuant to any requirement of this Lease, Lessee shall be relieved of its obligation to pay such Additional Charges to the entity to which they would otherwise be due.

3.5 **Equipment and Renovation Reserves**. In addition to all other payments required of Lessee under this Lease, Lessee shall pay directly to the Lessor under any separate reserve or escrow agreement with Lessor or to the holder of any Assumed Indebtedness existing against the Leased Property as and when due and as its own independent obligation to the lender or Lessor, as the case may be, all sums required under the terms of such escrow or reserve agreement for equipment, renovation, refurbishment or similar reserves ("Equipment Reserves"); provided, however, that Lessee shall have the right to use such reserve funds subject to the terms of such escrow or reserve agreements so long as Lessee is not in default hereunder.

-15-

3.6  <u>Net Lease</u>.  The Rent shall be paid absolutely net to Lessor, so that this Lease shall yield to Lessor the full amount of the installments of Minimum Rent, and the payments of Additional Rent and Additional Charges throughout the Term, all as more fully set forth in Article 4, but subject to any other provisions of this Lease which expressly provide for adjustment or abatement of Rent or other charges.

## ARTICLE 4

## IMPOSITIONS; TAXES, UTILITIES, INSURANCE PAYMENTS

4.1  <u>Payment of Impositions</u>.  Subject to Article 12 relating to permitted contests, Lessee will pay or cause to be paid all Impositions before any fine, penalty, interest or cost may be added for non-payment, such payments to be made directly to the taxing authority where feasible, and Lessee will promptly furnish Lessor copies of official receipts or other satisfactory proof evidencing payment.  If Lessee has failed to make any payments required under this Article 4, or Lessee is otherwise in default under this Lease, upon Lessor's request, Lessee will pay to the Lessor monthly, together with the Minimum Rent, one twelfth (1/12) of the amount from time to time estimated by the Lessor to reflect the Impositions which are assessed or billed to the Lessor by the appropriate governmental authority or authorities, if any.  Lessee's obligation to pay such Impositions shall be deemed absolutely fixed upon the date such Impositions become a lien upon the Leased Property or any part thereof.  Lessee shall have paid such Imposition at least fifteen (15) days before the last day on which the foregoing may be due and payable to the proper authorities before any fine, penalty, interest or cost be added thereto, or be imposed by operation of law for the non-payment thereof.  If any such Imposition may, at the option of the taxpayer, lawfully be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Lessee may exercise the option to pay the same (and any accrued interest on the unpaid balance of such Imposition) in installments and, in such event, shall pay such installments during the Term hereof (subject to Lessee's right of contest pursuant to the provisions of Article 12) as the same respectively become due and before any fine, penalty, premium, further interest or cost may be added thereto. Lessor, at its expense, shall, to the extent permitted by applicable law, prepare and file all tax returns and reports as may be required by governmental authorities in respect of Lessor's net income, gross receipts, franchise taxes and taxes on its capital stock, and Lessee, at its expense, shall, to the extent permitted by applicable laws and regulations, prepare and file all other tax returns and reports in respect of any Imposition as may be required by governmental authorities.  If

no Event of Default shall have occurred hereunder and be continuing, any refund due from any taxing authority in respect of any Imposition paid by Lessee shall be paid over to or retained by Lessee. If an Event of Default shall have occurred and be continuing, such funds shall be at Lessor's option paid over to Lessor and/or retained by Lessor and applied as provided in Article 16. Lessor and Lessee shall, upon request of the other, provide such data as is maintained by the party to whom the request is made with respect to the Leased Property as may be necessary to prepare any required returns and reports. In the event governmental authorities classify any property covered by this Lease as personal property, Lessee shall file all personal property tax returns in such jurisdictions where it may legally so file. Lessor, to the extent it possesses the same, and Lessee, to the extent it possesses the same, will provide the other party, upon request, with cost and depreciation records necessary for filing returns for any property so classified as personal property. Where Lessor is legally required to file personal property tax returns, Lessee will be provided with copies of assessment notices indicating a value in excess of the reported value in sufficient time for Lessee to file a protest. Lessee may, upon giving notice to Lessor, at Lessee's option and at Lessee's sole cost and expense, protest, appeal, or institute such other proceedings as Lessee may deem appropriate to effect a reduction of real estate or personal property assessments and Lessor, at Lessee's expense as aforesaid, shall fully cooperate with Lessee in such protest, appeal, or other action. Billings for reimbursement by Lessee to Lessor of personal property taxes shall be accompanied by copies of a bill therefor and payments thereof which identify the personal property with respect to which such payments are made.

4.2  **Notice of Impositions**.  Lessor shall give prompt notice to Lessee of all Impositions payable by Lessee hereunder of which Lessor at any time has knowledge, but Lessor's failure to give any such notice shall in no way diminish Lessee's obligations hereunder to pay such Impositions, except that Lessee shall not be responsible for interest or penalties incurred solely because of the failure of Lessor to give notice to Lessee of such Impositions.

4.3  **Adjustment of Impositions**.  Impositions imposed in respect of the tax-fiscal period during which the Term terminates shall be adjusted and prorated between Lessor and Lessee, whether or not such Imposition is imposed before or after such termination, and Lessee's obligation to pay its prorated share thereof shall survive such termination.

4.4  **Utility Charges**.  Lessee will pay or cause to be paid all charges for electricity, power, gas, oil, water and other utilities used in the Leased Property during the Term.

-17-

4.5  **Insurance Premiums**. Lessor will pay or cause to be paid all premiums for the insurance coverage required to be maintained pursuant to Article 13 during the Term. At Lessor's request, if Lessee fails to make payments required under this Article 4 or if there is otherwise a default under this Lease, Lessee shall pay to Lessor monthly, together with Minimum Rent, one twelfth (1/12) of the amount from time to time estimated by Lessor to reflect the amount necessary to pay premiums for such insurance coverage.

## ARTICLE 5

## NO LESSEE TERMINATION; ABATEMENTS OF RENT

5.1  **No Lessee Termination**. Except as otherwise specifically provided in this Lease, Lessee, to the extent permitted by law, shall remain bound by this Lease in accordance with its terms and shall neither take any action without the consent of Lessor to modify, surrender or terminate the same, nor seek nor be entitled to any abatement, deduction, deferment or reduction of Rent, or set-off against the Rent, nor shall the respective obligations of Lessor and Lessee be otherwise affected by reason of (a) any damage to, or destruction of, any Leased Property or any portion thereof from whatever cause or any Taking of the Leased Property or any portion thereof, (b) the lawful or unlawful prohibition of, or restriction upon, Lessee's use of the Leased Property, or any portion thereof, or the interference with such use by any person, corporation, partnership or other entity, or by reason of eviction by paramount title; (c) any claim which Lessee has or might have against Lessor or by reason of any default or breach of any warranty by Lessor under this Lease or any other agreement between Lessor and Lessee, or to which Lessor and Lessee are parties, (d) any bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding up or other proceedings affecting Lessor or any assignee or transferee of Lessor, or (e) for any other cause whether similar or dissimilar to any of the foregoing other than a discharge of Lessee from any such obligations as a matter of law. Lessee hereby specifically waives all rights, arising from any occurrence whatsoever, which may now or hereafter be conferred upon it by law to (i) modify, surrender or terminate this Lease or quit or surrender the Leased Property or any portion thereof, or (ii) entitle Lessee to any abatement, reduction, suspension or deferment of the Rent or other sums payable by Lessee hereunder, except as otherwise specifically provided in this Lease. The obligations of Lessor and Lessee hereunder shall be separate and independent covenants and agreements and the Rent and all other sums payable by Lessee hereunder shall continue to be payable in all events unless the obligations to pay the same shall be

terminated pursuant to the express provisions of this Lease or by termination of this Lease other than by reason of an Event of Default.

5.2 **Abatement of Rent Procedures.** In the event of a partial Taking as described in Section 15.4, a temporary Taking as described in Section 15.7, or damage to or destruction of the Leased Property as described in Article 14, which Taking, damage or destruction does not render the Leased Property Unsuitable for Its Primary Intended Use, the Lease shall not terminate, but the Minimum Rent and Additional Rent shall be abated (but only after twelve (12) months, in the case of damage or destruction) to the extent that is fair, just and equitable to both Lessee and Lessor, taking into consideration all relevant factors affecting the Facility resulting from such partial Taking or damage or destruction. If Lessor and Lessee are unable to agree upon the amount of such abatement within ninety (90) days after such partial or temporary taking or within twelve (12) months after such damage or destruction, the matter shall be submitted to arbitration.

## ARTICLE 6

## OWNERSHIP OF LEASED PROPERTY AND PERSONAL PROPERTY; SECURITY INTEREST; COLLATERAL PLEDGE OF STOCK; REMOVAL AND REPLACEMENT OF PERSONAL PROPERTY

6.1 **Ownership of the Leased Property.** Lessee acknowledges that the Leased Property is the property of Lessor and that Lessee has only the right to the exclusive possession and use of the Leased Property upon the terms and conditions of this Lease.

6.2 **Personal Property; Security Interest; Collateral Pledge of Stock; Removal and Replacement of Personal Property.** After the commencement of this Lease, Lessee may, at its expense, install, affix or assemble or place on the Leased Property, any items of Personal Property, and such Personal Property and replacements thereof, shall be at all times the property of Lessee. Notwithstanding the foregoing sentence, in order to secure the payment and the performance of all of Lessee's obligations under this Lease and any obligations in any lease between Lessee and any Affiliates and Lessor, Lessee hereby grants to Lessor a security interest in (and hereby pledges and collaterally assigns to Lessor) all of Lessee's rights, title and interest in and to Lessee's Personal Property (subject to the first security interest of Fidelity Bank, National Association, et al, recorded in Chattel, January 26, 1988, as Document 36319), all whether now existing or hereafter acquired and Lessee hereby further agrees to execute and deliver to Lessor, forthwith after demand by Lessor from time to time, any security agreement in a form determined by Lessor and such additional writings and instruments, including without limitation financing statements, as may be required by Lessor

-19-

for the purpose of effectuating the intent of this sentence, and Lessee agrees that Lessor shall have with respect to all Lessee's Personal Property (in addition to all other rights hereunder), all rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to the right to use or sell Lessee's Personal Property, and Lessor shall not be required to remove any of such Personal Property from the Leased Property and in no event shall Lessor be liable to Lessee for use of such Personal Property. Pending disposition of such Personal Property by Lessor, the Lessor or its successors or assigns shall be entitled to use such Personal Property in connection with the operation (if any) of the Facility. This instrument shall be deemed to satisfy the requirements of a financing statement under the Uniform Commercial Code. Lessee shall not permit the Personal Property or Lease Property to become subject to any liens or encumbrances of any kind without first obtaining the prior written consent of Lessor. In furtherance of the foregoing security interest granted to Lessor and to further secure Lessee's obligation under this Lease, Lessee shall provide Lessor with a Collateral Pledge of Stock Agreement in form and substance satisfactory to Lessor collaterally pledging Lessee's stock to Lessor or its assigns. Lessee shall maintain during the entire Lease Term all Personal Property and shall provide at its expense all necessary replacements thereof, as may be necessary in order to operate the Facility as it is presently operated and necessary to operate the Facility in compliance with all licensure and certification requirements, in compliance with all applicable Legal Requirements and Insurance Requirements and otherwise in accordance with customary practice in the industry for the Primary Intended Use. Lessee shall in addition furnish all necessary replacements of obsolete items of the Personal Property during the term of this Lease. All of Lessee's Personal Property not removed by Lessee within ten (10) days following the expiration or earlier termination of this Lease shall be considered abandoned by Lessee and may be appropriated, sold, destroyed or otherwise disposed of by Lessor without first giving notice thereof to Lessee, without any payment to Lessee and without any obligation to account therefor. Notwithstanding the foregoing, Lessee shall have no right to remove any Personal Property from the Leased Premises except if such Personal Property is simultaneously replaced by equivalent personal property or upon termination of this Lease for reasons other than default by Lessee. Lessee will, at its expense, restore the Leased Property to the condition required by Section 9.1(a), including repair of all damage to the Leased Property caused by the removal of Lessee's Personal Property, whether effected by Lessee or Lessor. Lessor's security interest hereunder shall be subject and subordinate to purchase money financing of the Personal Property for up to eighty (80%) percent of its value for the purpose of replacing such items with those of equivalent or superior value.

6.3 **Equipment Reserves for Replacement of Personal Property.** Both Lessor and Lessee agree that, before Lessee shall incur any cost or expense for necessary replacements of the Personal Property, Lessor and Lessee shall first utilize Equipment Reserves, if any, that are available under any Facility Mortgage covering the Leased Property and/or Personal Property. To the extent that Lessor incurs any cost or expense in excess of such available reserves or escrows expended for the purchase of any replacement property, Lessee shall pay as an addition to the Minimum Rent, and on the same dates, a sum equal to the fair market rental value of the replacement property. Lessee agrees to comply with any renovation and escrow agreements with Lessor and with any equipment reserve agreement with any Facility Mortgagee.

## ARTICLE 7

### CONDITION AND USE OF LEASED PROPERTY: MANAGEMENT AGREEMENTS

7.1 **Condition of the Leased Property.** Lessee acknowledges receipt and delivery of possession of the Leased Property and that Lessee has examined and otherwise has acquired knowledge of the condition of the Leased Property prior to the execution and delivery of this Lease and has found the same to be in good order and repair and satisfactory for its purpose hereunder. Lessee is leasing the Leased Property "as is" in its present condition. Lessee waives any claim or action against Lessor in respect of the condition of the Leased Property. LESSOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, IN RESPECT OF THE LEASED PROPERTY OR ANY PART THEREOF, EITHER AS TO ITS FITNESS FOR USE, DESIGN OR CONDITION FOR ANY PARTICULAR USE OR PURPOSE OR OTHERWISE, OR AS TO DEFECTS IN QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, LATENT OR PATENT, IT BEING AGREED THAT ALL SUCH RISKS ARE TO BE BORNE BY LESSEE. LESSEE ACKNOWLEDGES THAT THE LEASED PROPERTY HAS BEEN INSPECTED BY LESSEE AND IS SATISFACTORY TO IT.

7.2 **Use of the Leased Property.**

7.2.1 **Obligation to Operate.** Lessee covenants that it will operate continuously the Leased Property in accordance with its Primary Intended Use and maintain its qualifications for licensure and accreditation as required by Legal Requirements.

7.2.2 **Permitted Uses; Compliance with Insurance Requirements.** After the Commencement Date and during the entire Term, Lessee shall use or cause to be used the Leased Property and the improvements thereon in accordance with its Primary Intended Use and for such other uses as may be necessary in connection with or incidental to such use. Lessee shall not use the Leased Property or any portion thereof for any other primary use without the prior

-21-

written consent of Lessor. No use shall be made or permitted to be made of the Leased Property and no acts shall be done which will cause the cancellation (without replacement coverage in the same amounts and under the same terms) of any insurance policy covering the Leased Property or any part thereof, nor shall Lessee sell or otherwise provide to patients therein, or permit to be kept, used or sold in or about the Leased Property any article which may be prohibited by law or by the standard form of fire insurance policies, any other insurance policies required to be carried hereunder, or fire underwriters regulations. Lessee shall, at its sole cost, comply with all of the requirements pertaining to the Leased Property or other improvements of any insurance board, association, organization or company necessary for the maintenance of the insurance, as herein provided, covering the Leased Property.

7.2.3  **No Waste**. Lessee shall not commit or suffer to be committed any waste on the Leased Property, or in the Facility, nor shall Lessee cause or permit any nuisance thereon.

7.2.4  **No Impairment**. Lessee shall neither suffer nor permit the Leased Property or any portion thereof to be used in such a manner as (i) might reasonably tend to impair Lessor's title thereto or to any portion thereof, or (ii) may reasonably make possible a claim or claims of adverse usage or adverse possession by the public, as such, or of implied dedication of the Leased Property or any portion thereof.

7.2.5  **The Lessee**. The Lessee shall be the Guarantor or a wholly-owned subsidiary of the Guarantor.

7.3  **Management Agreements**. Lessee shall not enter into any Management Agreement unless the terms thereof have been previously approved in writing by Lessor, and such approval shall be in Lessor's sole discretion. All such Management Agreements must be in writing and must state that all fees payable thereunder by Lessee are subordinated to all sums due under this Lease.

## ARTICLE 8

## LEGAL AND INSURANCE REQUIREMENTS

8.1  **Compliance with Legal and Insurance Requirements**. Lessee, at its expense, will promptly (a) comply with all Legal Requirements and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased

Property, whether or not compliance therewith shall require structural change in any of the Leased Improvements or interfere with the use and enjoyment of the Leased Property and (b) procure, maintain and comply with all licenses, qualifications, accreditation, certificates of need, provider agreements and other authorizations required for any use of the Leased Property for the Primary Intended Use or other permitted uses then being made, and for the proper erection, installation, operation and maintenance of the Leased Property or any part thereof.

8.2  **Legal Requirement Covenants**.  Lessee covenants and agrees that the Leased Property shall not be used for any unlawful purpose, and shall acquire and maintain all licenses, certificates, permits, provider agreements and other authorizations and approvals needed to operate the Leased Property in its customary manner for the Primary Intended Use and any other use conducted on the Leased Property as may be permitted from time to time hereunder.  Lessee further covenants and agrees that Lessee's use of the Leased Property and maintenance, alteration, and operation of the same, and all parts thereof, shall at all times conform in all material respects to all applicable local, state and federal laws, ordinances, rules and regulations unless the same are held by a court of competent jurisdiction to be unlawful; however Lessee shall conform in all respects to all laws, ordinances, rules and regulations concerning licensing or occupancy of the Leased Property, unless the same are held by a court of competent jurisdiction to be unlawful, and except for minor violations which shall be cured immediately and which, in the sole discretion of the Lessor, shall not affect the marketability or leaseability of the Leased Property or the reputation of the Lessor.

8.3  **Permitted Contest of Certain Legal Requirements**.  Unless there is a default under this Lease, Lessee may, upon prior written notice to Lessor, contest the legality or applicability of any law, ordinance, rule or regulation, or any licensure or notification decision related to the operation of the Leased Property for the Primary Intended Use or other uses conducted thereon which are permitted by Lessor, if Lessee maintains such action in good faith, with due diligence, without prejudice to Lessor's rights hereunder, and at Lessee's own expense.  If, by the terms of any such law, ordinance, rule or regulation, compliance therewith pending the prosecution of any such proceeding may legally be delayed without the occurrence of any lien, charge or liability of any kind against the Facility or Lessee's leasehold interest therein and without subjecting Lessee or Lessor to any liability, civil or criminal, for failure so to comply therewith, Lessee may delay compliance therewith until the final determination of such proceeding.  If any lien, charge or civil or criminal liability

-23-

would be incurred by reason of any such delay, Lessee, on obtaining the prior written consent of Lessor, may nonetheless contest as aforesaid any delay as aforesaid provided that such delay would not subject Lessor to criminal liability and Lessee both (a) furnishes to Lessor security reasonably satisfactory to Lessor against any loss or injury by reason of such contest or delay and (b) prosecutes the contest with due diligence and in good faith.

### ARTICLE 9

### REPAIRS; RESTRICTIONS

9.1  Maintenance and Repair.

(a)  Lessee, at its expense, will keep the Leased Property and all private roadways, sidewalks and curbs appurtenant thereto which are under Lessee's control in good order and repair (whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of the Leased Property or any portion thereof) and, except as otherwise provided in Articles 14 and 15, with reasonable promptness, will make all necessary and appropriate repairs thereto of every kind and nature, whether interior or exterior, structural or non-structural, ordinary or extraordinary, foreseen or unforeseen or arising by reason of a condition (concealed or otherwise) existing prior to the commencement of the Term of this Lease. Lessee shall also be obligated at its expense to make all repairs, modifications, and renovations necessary to comply with all licensing, safety, health and building codes, and regulations applicable to the Leased Property so that it can be legally operated for its Primary Intended Use. All repairs shall, to the extent reasonably achievable, be at least equivalent in quality to the original work. Lessee will not take or omit to take any action the taking or omission of which might materially impair the value or the usefulness of the Leased Property, or any part thereof for the Primary Intended Use.

(b)  Except to the extent provided in Articles 14 and 15 hereof, Lessor shall not under any circumstances be required to build or rebuild any improvements on the Leased Property, or to make any repairs, replacements, alterations, restorations, or renewals of any nature or description to the Leased Property, whether ordinary or extraordinary, structural or non-structural, foreseen or unforeseen, or to make any expenditure whatsoever with respect thereto in connection with this Lease, or to maintain the Leased Property in any way.

(c) Nothing contained in this Lease and no action or inaction by Lessor shall be construed as (i) constituting the consent or request of Lessor, express or implied, to any contractor, subcontractor, laborer, materialman or vendor to or for the performance of any labor or services for the construction, alteration, addition, repair or demolition of or to the Leased Property or any part thereof, or (ii) giving Lessee any right, power or permission to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would permit the making of any claim against Lessor in respect thereof or to make any agreement that may create, or in any way be the basis for, any right, title, interest, lien, claim or other encumbrance upon the estate of Lessor in the Leased Property or any portion thereof.

9.2 Encroachments; Restrictions. If any of the Leased Improvements shall, at any time, encroach upon any property, street or right-of-way adjacent to the Leased Property, or shall violate the agreements or conditions contained in any lawful restrictive covenant or other agreement affecting the Leased Property, or any part thereof, or shall impair the rights of others under any easement or right-of-way to which the Leased Property is subject, then promptly upon the request of Lessor, Lessee shall, at its expense, subject to its right to contest the existence of any encroachment, violation or impairment, (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation or impairment, whether the same shall affect Lessor or Lessee or (ii) make such changes in the Leased Improvements, and take such other actions, as Lessee in the good faith exercise of its judgment deems reasonably practicable, to remove such encroachment, or to end such violation or impairment, including, if necessary, the alteration of any of the Leased Improvements and in any event take all such actions as may be necessary in order to be able to continue the operation of the Leased Improvements for the Primary Intended Use substantially in the manner and to the extent the Leased Improvements were operated prior to the assertion of such violation of encroachment. Any such alteration shall be made in conformity with the applicable requirements of Article 10. Lessee's obligations under this Section 9.2 shall be in addition to and shall in no way discharge or diminish any obligation of any insurer under any policy of title or other insurance and Lessee shall be entitled to a credit for any sums recovered by Lessor under any such policy of title or other insurance.

## ARTICLE 10

## CAPITAL ADDITIONS

10.1 **Construction of Capital Additions**. Without the prior written consent of Lessor, which consent may be withheld or granted by Lessor in its sole discretion, Lessee shall make no material structural alterations to the Leased Property or Capital Addition, except as may be expressly required pursuant to Article 9 hereof, and shall not enlarge or reduce the size of the Facility.

10.2 **Non-Capital Additions**. Lessee shall have the right and obligation to make additions, modifications or improvements to the Leased Property which are not Capital Additions from time to time as it may deem to be desirable or necessary for its uses and purposes, provided that such action will not significantly alter the character or purpose or detract from the value or operating efficiency thereof and will not significantly impair the revenue-producing capability of the Leased Property or adversely affect the ability of the Lessee to comply with the provisions of this Lease. The cost of such Non-Capital Additions, modifications or improvements to the Leased Property shall be paid by Lessee, and all such Non-Capital Additions, modifications and improvements shall, without payment by Lessor at any time, be included under the terms of this Lease and upon expiration or earlier termination of this Lease shall pass to and become the property of Lessor. Lessee hereby agrees to make and complete all renovations required under any escrow or renovation agreements with Lessor or the holder of any mortgage.

10.3 **Salvage**. All materials which are scrapped or removed in connection with the making of either Capital Additions permitted by Section 10.1 or repairs required by Article 9 shall be or become the property of Lessor or Lessee depending on which party is paying for, or providing the financing for, such work.

## ARTICLE 11

## LIENS

Subject to the provisions of Article 12 relating to permitted contests, Lessee will not directly or indirectly create or allow to remain and will promptly discharge at its expense any lien, encumbrance, attachment, title retention agreement or claim upon the Leased Property resulting from actions of or failures to act by the Lessee or any attachment, levy, claim or encumbrance in respect of the Rent, not including, however, (a) this Lease, (b) the matters, if any, set forth in Exhibit B, (c) restrictions, liens and other

encumbrances which are consented to in writing by Lessor, (d) liens for those taxes of Lessor which Lessee is not required to pay hereunder, (e) subleases permitted by Article 22, (f) liens of mechanics, laborers, materialmen, suppliers or vendors for sums either disputed or not yet due, provided that (1) the payment of such sums shall not be postponed for more than sixty (60) days after the completion of the action giving rise to such lien and such reserve or other appropriate provisions as shall be required by law or generally accepted accounting principles shall have been made therefor or (2) any such liens are in the process of being contested as permitted by Article 12, (g) any liens which are the responsibility of Lessor pursuant to the provisions of Article 36 of this Lease, and (h) liens for Impositions not yet due and payable without addition of any fine or penalty or are in the process of being contested under Article 12.

### ARTICLE 12

#### PERMITTED CONTESTS

Lessee, on its own or on Lessor's behalf (or in Lessor's name), but at Lessee's expense, may contest, by appropriate legal proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any Imposition, Legal Requirement, Insurance Requirement, lien, attachment, levy, encumbrance, charge or claim not otherwise permitted by Article 11, provided that (a) in the case of an unpaid Imposition, lien, attachment, levy, encumbrance, charge or claim, the commencement and continuation of such proceedings shall suspend the collection thereof from Lessor and from the Leased Property, (b) neither the Leased Property nor any Rent therefrom nor any part thereof or interest therein would be in any immediate danger of being sold, forfeited, attached or lost, (c) in the case of a Legal Requirement, Lessor would not be n any immediate danger of civil or criminal liability for failure to comply therewith pending the outcome of such proceedings, (d) in the event that any such contest shall involve a sum of money or potential loss in excess of Fifty Thousand Dollars ($50,000), then, in any such event, Lessee shall deliver to Lessor an Officer's Certificate and opinion of counsel, if appropriate, to the effect set forth in clauses (a), (b) and (c), to the extent applicable, (e) in the case of a Legal Requirement and/or an Imposition, lien, encumbrance or charge, Lessee shall give such reasonable security as may be demanded by Lessor to insure ultimate payment of the same and to prevent any sale or forfeiture of the affected portion of the Leased Property or the Rent by reason of such non-payment or non-compliance; provided, however, the provisions of this Article 12 shall not be construed to permit Lessee to contest the payment of Rent or any other sums payable by Lessee to Lessor hereunder, (f) in

the case of an Insurance Requirement, the coverage required by Article 13 shall be maintained, and (g) if such contest be finally resolved against Lessor or Lessee, Lessee shall, as Additional Charges due hereunder, promptly pay the amount required to be paid, together with all interest and penalties accrued thereon, or comply with the applicable Legal Requirement or Insurance Requirement. Lessor, at Lessee's expense, shall execute and deliver to Lessee such authorizations and other documents as may reasonably be required in any such contest and, if reasonably requested by Lessee or if Lessor so desires, Lessor shall join as a party therein. Lessee shall indemnify and save Lessor harmless against any liability, cost or expense of any kind that may be imposed upon Lessor in connection with any such contest and any loss resulting therefrom.

## ARTICLE 13

### INSURANCE

13.1 <u>General Insurance Requirements</u>. During the Term of this Lease, Lessee shall at all times keep the Leased Property, and all property located in or on the Leased Property insured with the kinds and amounts of insurance described below. This insurance shall be written by companies authorized to do insurance business in the state in which the Leased Property is located. The policies must name Lessor as an additional insured and losses shall be payable to Lessor and/or Lessee as provided in Article 14. In addition, the policies shall name as an additional insured the holder ("Facility Mortgagee") of any mortgage, deed of trust or other security agreement securing any Encumbrance placed on the Leased Property in accordance with the provisions of Article 36 ("Facility Mortgage") by way of a standard form of mortgagee's loss payable endorsement. Any loss adjustment shall require the written consent of Lessor, Lessee and each affected Facility Mortgagee. Evidence of insurance shall be deposited with Lessor and, if requested, with any Facility Mortgagee(s). If any provision of any Facility Mortgage requires deposits for insurance premiums to be made with such Facility Mortgagee, Lessee shall either pay to Lessor monthly the amounts required and Lessor shall transfer such amounts to such Facility Mortgagee or, pursuant to written direction by Lessor, Lessee shall make such deposits directly with such Facility Mortgagee. The policies on the Leased Property shall insure against the following risks:

13.1.1 <u>All Risk Insurance</u>. Loss or damage by fire, vandalism and malicious mischief, extended coverage perils commonly known as "All Risk" and all physical loss perils, including but not limited, to sprinkler leakage in an amount not less than the greater of one hundred percent

(100%) of the then full replacement cost thereof (as defined below in Section 13.2) or in such amount which is economically feasible and which is acceptable to Lessor;

13.1.2   **Boiler Insurance.** Loss or damage by explosion of steam boilers, pressure vessels or similar apparatus, now or hereafter installed in the Facility, in such limits with respect to any one accident as may be reasonably requested by Lessor from time to time;

13.1.3   **Rental Insurance.** Loss of rental under a rental value insurance policy and/or business interruption insurance covering Lessor's risk of loss by the occurrence of any of the hazards described in Sections 13.1.1 or 13.1.2 in an amount sufficient to prevent Lessor from becoming a co-insurer and to cover Rent and Additional Rent for one (1) year;

13.1.4   **Liability Insurance.** Claims for personal injury or property damage under a policy of comprehensive general public liability insurance with amounts not less than Five Million Dollars ($5,000,000) per occurrence in respect of bodily injury and death and Three Million Dollars ($3,000,000) for property damage;

13.1.5   **Malpractice Insurance.** Claims arising out of malpractice in an amount not less than Five Million Dollars ($5,000,000) for each person and Ten Million Dollars ($10,000,000) for each occurrence;

13.1.6   **Flood Insurance.** Flood (when the Leased Property is located in whole or in part within a designated flood plain area) and such other hazards and in such amounts as may be customary for comparable properties in the area and if available from insurance companies authorized to do business in the state in which the Leased Property is located at rates which are economically practicable in relation to the risks covered.

13.2   **Replacement Cost.** The term "full replacement cost" as used herein, shall mean the actual replacement cost of the Leased Premises (including all Capital Additions regardless of who paid for such improvements) thereof from time to time, including increased cost of construction endorsement, less exclusions provided in the normal fire insurance policy. In the event either party believes that the full replacement cost has increased or decreased at any time during the Term, it shall have the right from time to time to have such full replacement cost redetermined by the fire insurance company which is then providing the largest amount of fire insurance carried on the Leased Property, hereinafter referred to as the "impartial appraiser". The party desiring to have the full

replacement cost so redetermined shall forthwith, on receipt of such determination by such impartial appraiser, give written notice thereof to the other party hereto. The determination of such impartial appraiser shall be final and binding on the parties hereto, and Lessee shall forthwith increase, or may decrease, the amount of the insurance carried pursuant to this Article, as the case may be, to the amount so determined by the impartial appraiser. Each party shall pay one-half (1/2) of the fee, if any, of the impartial appraiser.

13.3  **Additional Insurance**. In addition to the insurance described above, Lessee shall maintain such additional insurance as may be required from time to time by any Facility Mortgagee and shall further at all times maintain adequate worker's compensation insurance coverage for all persons employed by Lessee on the Leased Property, in accordance with the requirements of applicable local, state and federal law.

13.4  **Waiver of Subrogation**. All insurance policies carried by either party covering the Leased Property including without limitation, contents, fire and casualty insurance, shall expressly waive any right of subrogation on the part of the insurer against the other party so long as the same is obtainable without extra cost, and in the event of such an extra charge the other party, at its election, may pay the same, but shall not be obligated to do so.

13.5  **Form of Insurance**. All of the policies of insurance referred to herein shall be written in form reasonably satisfactory to Lessor and by insurance companies reasonably satisfactory to Lessor. Lessor agrees that it will not unreasonably withhold its approval as to the form of the policies of insurance or as to the insurance companies selected by Lessee. Lessee shall pay all of the premiums therefor, and deliver such policies or certificates thereof to Lessor prior to their effective date (and, with respect to any renewal policy, at least ten (10) days prior to the expiration of the existing policy) and in the event of the failure of Lessee either to effect such insurance in the names herein called for or to pay the premiums therefor or to deliver such policies or certificates thereof to Lessor at the times required, Lessor shall be entitled, but shall have no obligation, to effect such insurance and pay the premiums therefor, which premiums shall be repayable to Lessor with interest at the Overdue Rate upon written demand therefor, and failure to repay the same with interest within thirty (30) days after such demand shall constitute an Event of Default within the meaning of Section 16.1(c). Each insurer mentioned in this Section shall agree, by endorsement on the policy or policies issued by it, or by independent instrument furnished to Lessor, that it will give to Lessor thirty (30) days' written notice before the policy or policies in question shall be altered, allowed to expire or cancelled.

-30-

13.6  **Increase in Limits.**  In the event that either party shall at any time deem the limits of the personal injury or property damage public liability insurance then carried to be either excessive or insufficient, the parties shall endeavor to agree on the proper and reasonable limits for such insurance to be carried and such insurance shall thereafter be carried with the limits thus agreed on until further change pursuant to the provisions of this Section.  If the parties shall be unable to agree thereon, the proper and reasonable limits for such insurance to be carried and such insurance shall be determined by an impartial third party selected by the parties.  Nothing herein shall permit the amount of insurance to be reduced below the amount or amounts required by any Facility Mortgage.

13.7  **Blanket Policy.**  Notwithstanding anything to the contrary contained herein, Lessee's obligations to carry the insurance provided for herein may be brought within the coverage of a so-called blanket policy or policies of insurance carried and maintained by Lessee; provided, however, that the coverage afforded Lessor will not be reduced or diminished or otherwise be different from that which would exist under a separate policy meeting all other requirements of this Lease by reason of the use of such blanket policy of insurance, and provided further that the requirements of this Article 13 are otherwise satisfied.

13.8  **No Separate Insurance.**  Lessee shall not, on Lessee's own initiative or pursuant to the request or requirement of any third party, take out separate insurance concurrent in form or contributing in the event of loss with that required in this Article to be furnished by, or which may reasonably be required to be furnished by, Lessee, or increase the amounts of any then existing insurance by securing an additional policy or additional policies, unless all parties having an insurable interest in the subject matter of the insurance, including in all cases Lessor and all Facility Mortgagees, are included therein as additional insureds and the loss is payable under said insurance in the same manner as losses are required to be payable under this Lease.  Lessee shall immediately notify Lessor of the taking out of any such separate insurance or of the increasing of any of the amounts of the then existing insurance by securing an additional Policy or additional policies.

## ARTICLE 14

### FIRE AND CASUALTY

14.1  **Insurance Proceeds.**  All proceeds payable by reason of any loss or damage to the Leased Property, or any portion thereof, and insured under any policy of insurance required by Article 13 of this Lease shall be paid to Lessor and held by