Lessor in trust (subject to the provisions of Section 14.5) and shall be made available for reconstruction or repair, as the case may be, of any damage to or destruction of the Leased Property, or any portion thereof, and shall be paid out by Lessor from time to time subject to the provisions hereof for the reasonable cost of such reconstruction or repair. Any excess proceeds of insurance remaining after the completion of the restoration or reconstruction of the Leased Property (or in the event neither Lessor nor Lessee is required or elects to repair and restore, all such insurance proceeds) shall be retained by Lessor free and clear upon completion of any such repair and restoration except as otherwise specifically provided below in this Article 14. Excess proceeds of rental insurance shall be paid to Lessee. All salvage resulting from any risk covered by insurance shall belong to Lessor except that any salvage relating to Lessee's Personal Property shall belong to Lessee.

14.2    **Reconstruction in the Event of Damage or Destruction Covered by Insurance.**

14.2.1    Except as provided in Section 14.5, if during the Term, the Leased Property is totally or substantially destroyed from a risk covered by the insurance described in Article 13 and the Facility thereby is rendered Unsuitable for its Primary Intended Use, Lessee shall have the option, by giving notice to Lessor within sixty (60) days following the date of such destruction, to (a) restore the Facility to substantially the same condition as existed immediately before the damage or destruction, or (b) acquire the Leased Property from Lessor at the Fair Market Value to be determined as of the day immediately prior to such damage or destruction in which event Lessee shall be paid the insurance proceeds or (c) terminate this Lease, in which event Lessor shall be entitled to retain the insurance proceeds provided, however, that Lessee shall only have such right of termination effective upon recovery by Lessor of such insurance proceeds and, in the event such proceeds are less than the amount specified in Section 13.1.1 hereof plus the difference between Fair Market Value of the Leased Property immediately prior to such damage or casualty and said insurance proceeds (less land value). Lessee may terminate only upon payment of the amount of such shortfall in cash to Lessor at the time notice to terminate is given.

14.2.2    Except as provided in Section 14.5, if during the Term, the Leased Improvements and/or the Fixtures are totally or partially destroyed from a risk covered by the insurance described in Article 13, but the Facility is not thereby rendered Unsuitable for its Primary Intended Use, Lessee shall restore the Facility to substantially the same condition as existed immediately before the damage or destruction. Such damage or destruction shall not terminate this Lease; provided,

however, if Lessee, after exercise of diligent efforts, cannot within a reasonable time obtain all necessary governmental approvals, including building permits, licenses, conditional use permits and any certificates of need, after diligent efforts to do so, in order to be able to perform all required repair and restoration work and to operate the Facility for its Primary Intended Use in substantially the manner as immediately prior to such damage or destruction, Lessee may either (i) acquire the Leased Property from Lessor pursuant to Section 32.1 with the Fair Market Value to be determined as of immediately prior to such damage or destruction, in which event all insurance proceeds shall be assigned and payable to Lessee, or (ii) terminate this Lease in which event Lessor shall be entitled to retain the insurance proceeds; provided, however, that Lessee shall only have such right of termination effective upon recovery by Lessor of such insurance proceeds and in the event such proceeds are in an amount less than the amount specified in Section 13.1.1 hereof plus the difference between Fair Market Value of the Leased Property immediately prior to such damage or casualty and said insurance proceeds (less land value), Lessee may only terminate upon payment of the amount of such short-fall in cash to Lessor at the time notice to terminate is given.

14.2.3   If the cost of the repair or restoration exceeds the amount of proceeds received by Lessor from the insurance required under Article 13, Lessee shall be obligated to contribute any excess amount needed to restore the Facility. Such amount shall be paid by Lessee to Lessor to be held in trust together with any other insurance proceeds for application to the cost of repair and restoration.

14.3   <u>Reconstruction in the Event of Damage or Destruction Not Covered by Insurance.</u> Except as provided in Section 14.5 below, if during the Term, the Facility is totally or materially destroyed from a risk (including earthquake) not covered by the insurance described in Article 13, whether or not such damage or destruction renders the Facility Unsuitable for Its Primary Intended Use, Lessee shall restore the Facility to substantially the same condition as it was in immediately before such damage or destruction and such damage or destruction shall not terminate this Lease. Such damage or destruction shall not terminate this Lease; provided, however, if Lessee, after exercise of diligent efforts, cannot within a reasonable time obtain all necessary governmental approvals, including building permits, licenses, conditional use permits and any certificates of need, after diligent efforts to do so, in order to be able to perform all required repair and restoration work and to operate the Facility for its Primary Intended Use in substantially the manner as immediately prior to such damage or destruction, Lessee may acquire the Leased Property from Lessor pursuant to Section 32.1 with the Fair

Market Value to be determined as of immediately prior to such damage or destruction.

14.4 **Lessee's Property**. All insurance proceeds payable by reason of any loss of or damage to any of Lessee's Personal Property or Capital Additions financed by Lessee shall be paid to Lessee or, if Lessee self-insures, allocated by Lessee to Lessee or any loss payee designated by Lessee, and Lessee shall hold such insurance or self-insurance proceeds in trust to pay the cost of repairing or replacing damaged Lessee's Personal Property or Capital Additions paid for or financed by Lessee.

14.5 **Restoration of Lessee's Property**. If Lessee is required or elects to restore the Facility as provided in Section 14.2 or 14.3, Lessee shall either (i) restore all alterations and improvements made by Lessee, Lessee's Personal Property and all Capital Additions paid for or financed by Lessee, or (ii) replace such alterations and improvements, Lessee's Personal Property, and/or Capital Additions with improvements or items of the same or better quality and utility in the operation of the Leased Property.

14.6 **Abatement of Rent**. This Lease shall remain in full force and effect and Lessee's obligation to make rental payments and to pay all other charges required by this Lease shall remain unabated during the first twelve (12) months of any period required for repair and restoration. Thereafter, payments of Minimum Rent shall be abated as provided in Section 5.2.

14.7 **Damage Near End of Term**. Notwithstanding any provisions of Sections 14.2 or 14.3 to the contrary, if damage to or destruction of the Facility occurs during the last twenty-four (24) months of the Term, and if such damage or destruction cannot be fully repaired and restored within six (6) months immediately following the date of loss, Lessor shall have the right to terminate this Lease by giving notice to Lessee within thirty (30) days after the date of damage or destruction in which event Lessor shall retain the insurance proceeds, and Lessee shall pay to Lessor, in the event such proceeds are less than the amount specified in Section 13.1.1 hereof, the difference between Fair Market Value of the Leased Property immediately prior to such damage or casualty and said insurance proceeds (less land value), provided however, that if Lessor exercises its option to terminate the Lease, Lessee has option to purchase the Leased Property pursuant to Article 32, provided that Lessee must exercise such option to purchase within thirty (30) days of receipt of termination notice under this Section, and the "Purchase Option Date" shall be deemed to be sixty (60) days after receipt of the termination notice under this Section.

14.8  **Termination of Purchase Option**. Any termination of this Lease pursuant to this Article 14 shall cause any purchase option under Article 32 of this Lease to be terminated and to be without further force or effect.

14.9  **Waiver**. Lessee hereby waives any statutory rights of termination which may arise by reason of any damage or destruction of the Facility which Lessee is obligated to restore or may restore under any of the provisions of this Lease.

## ARTICLE 15

### CONDEMNATION

15.1  **Definitions**.

(a) "Award" means all compensation, sums or anything of value awarded, paid or received on a total or partial Condemnation.

(b) "Condemnation" means (a) the exercise of any governmental power, whether by legal proceedings or otherwise, by a Condemnor or (b) a voluntary sale or transfer by Lessor to any Condemnor, either under threat of Condemnation or while legal proceedings for Condemnation are pending.

(c) "Condemnor" means any public or quasi-public authority, or private corporation or individual, having the power of condemnation.

(d) "Date of Taking" means the date the Condemnor has the right to possession of the property being condemned.

15.2  **Parties' Rights and Obligations**. If during the Term there is any Taking of all or any part of the Leased Property or any interest in this lease by Condemnation, the rights and obligations of the parties shall be determined by this Article 15.

15.3  **Total Taking**. If there is a Taking of all of the Leased Property by Condemnation, this Lease shall terminate on the Date of Taking.

15.4  **Partial Taking**. If there is a Taking of a portion of the Leased Property by Condemnation, this Lease shall remain in effect if the Facility is not thereby rendered Unsuitable for Its Primary Intended Use. If, however, the Facility is thereby rendered Unsuitable for Its Primary Intended Use, Lessee shall have the right (a) to restore the Facility, at its own expense, to the extent possible, to substantially the same condition as existed immediately before the partial Taking, (b) to acquire

-35-

the Leased Property from Lessor for a purchase price determined in accordance with Section 34.1, with the Fair Market Value of the Leased Property to be determined as of the day immediately prior to such partial Taking, in which event this Lease shall terminate upon payment of such purchase price, or (c) at Lessor's option, to terminate this Lease as of the date when Lessee is required to surrender possession of the portion of the Leased Property so taken. Lessee (or Lessor) shall exercise its option by giving Lessor notice thereof within sixty (60) days after Lessee receives notice of the Taking. If, as the result of any such partial Taking by Condemnation, this Lease is not terminated as provided above, Lessee shall be entitled to abatement of Rent as provided in Section 5.2, effective as of the date upon which the Leased Property is rendered Unsuitable for Its Primary Intended Use.

15.5 **Restoration.** If there is a partial Taking of the Leased Property and this Lease remains in full force and effect pursuant to Section 15.4, Lessee shall accomplish all necessary restoration. If the cost of the restoration exceeds the amount of the Award, Lessee shall be obligated to contribute any excess amount needed to restore the Facility.

15.6 **Award Distribution.** In the event Lessee purchases the Leased Property, as described in Section 15.4, the entire Award shall belong to Lessee and Lessor agrees to assign to Lessee all of its rights thereto. In any other event, the entire Award shall belong to and be paid to Lessor, except that, if this Lease is terminated, and subject to the rights of the Facility Mortgagee, Lessee shall be entitled to receive from the Award, if and to the extent such Award specifically includes such items, the following:

    (a) A sum attributable to the value, if any, of the leasehold interest of Lessee under this Lease; and

    (b) A sum attributable to the value of any personal property placed on the Leased Property by and belonging to Lessee and any reasonable removal and relocation costs included in the Award.

If Lessee is required or elects to restore the Facility, Lessor agrees that, subject to the rights of the Facility Mortgagee, its portion of the Award shall be used for such restoration and it shall hold such portion of the Award in trust, for application to the cost of the restoration.

15.7 **Temporary Taking.** The Taking of the Leased Property, or any part thereof, by military or other public authority shall constitute a Taking by Condemnation only when the use and occupancy by the Taking authority has continued for longer than six (6) months. During any such six (6) month period all the

-36-

provisions of this Lease shall remain in full force and effect except that the Minimum Rent and Additional Rent shall be abated or reduced during such period of Taking as provided in Section 5.2.

## ARTICLE 16

### DEFAULT

16.1  **Events of Default.** Any of the following events shall be an "Event of Default" hereunder, in which case Lessor shall provide the notices to Lessee set forth in this Section 16.1 with a simultaneous notice to Fidelity Bank, National Association pursuant to Article 31:

(a) an Event of Default under any other lease between Lessor or any Affiliate of Lessor and Lessee or any Affiliate of Lessee that shall be related to (i) failure to pay Rent or any other monetary sums due under such other lease which failure is not cured within applicable grace periods or (ii) any other material Event of Default under such other lease including but not limited to:

- [a] Lessee failing to operate continuously the Leased Property in accordance with its Primary Intended Use, as described in Article 7.2.1 of the Lease.

- [b] Lessee failing to use the Leased Property and improvements in accordance with its Primary Intended Use and other such uses as may be necessary in connection with or incidental to such use, in accordance with Article 7.2.2 of this Lease.

- [c] Lessee failing to maintain its qualifications for licensure and accreditation as required by its Legal Requirements in accordance with Articles 7.2.2 and Article 8.1 of this Lease if failure to do so will result in an inability to operate or result in a receivership.

- [d] Lessee shall suffer or permit the Leased Property or any portion thereof to be used in such a manner as (i) might reasonably tend to impair Lessor's title thereof or to any portion thereof, or (ii) may reasonably make possible a claim or claims of adverse possession or adverse usage in accordance with Article 7.2.4 of this Lease.

- [e] Lessee using the Leased Property for any unlawful purpose as more fully described in Article 8.2 of this Lease.

-37-

(f) Lessee failing to acquire and maintain all licenses, certificates and permits as more fully described in Article 8.3 of this Lease, if failure to do so will result in an inability to operate or result in a receivership.

(g) Lessee failing to maintain and repair the Leased Property as more fully described in Article 9.1 of this Lease.

(h) Lessee creating or allowing any liens or encumbrances, as more fully described in Article 11 of this Lease.

(i) Lessee failing to comply with the terms of Article 14.2.1 of this Lease.

which default is not cured within ninety days after notice of such default, or an Event of Default under any of Lessee's or Guarantor's major lines of credit, or

(b) Lessee shall fail to make a payment of the Rent payable by Lessee under this Lease when the same becomes due and payable and such failure is not cured by Lessee with a period of seven (7) days after receipt by Lessee of notice thereof from Lessor, or

(c) Lessee shall fail to observe or perform any other term, covenant or condition of this Lease and such failure is not cured by Lessee within a period of thirty (30) days after receipt by Lessee of notice thereof from Lessor, unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if Lessee proceeds promptly and with due diligence to cure the failure and diligently completes the curing thereof, or

(d) Lessee or Guarantor shall:

   (i)   admit in writing its inability to pay its debts generally as they become due,

   (ii)  file a petition in bankruptcy or a petition to take advantage of any insolvency act,

   (iii) make an assignment for the benefit of its creditors,

   (iv)  consent to the appointment of a receiver of itself or of the whole or any substantial part of its property, or

-38-

  (v) file a petition or answer seeking reorganization or arrangement under the federal bankruptcy laws or any other applicable law or statute of the United States of America or any state thereof, or

 (e) Lessee or Guarantor shall have a petition in bankruptcy filed against it which shall remain undismissed or unstayed for a period of sixty (60) days, or Lessee or Guarantor shall be adjudicated a bankrupt, or if a court of competent jurisdiction shall enter an order or decree appointing, without the consent of Lessee or Guarantor, as the case may be, a receiver of Lessee or Guarantor, as the case may be, of the whole or substantially all of its property, or approving a petition filed against it seeking reorganization or arrangement of Lessee or Guarantor, as the case may be, under the federal bankruptcy laws or any other applicable law or statute of the United States of America or any other state thereof;

 (f) Lessee or Guarantor shall be liquidated or dissolved, or shall begin proceedings toward such liquidation or dissolution, or Lessee shall, in any manner except as provided in Article 22 of this Lease, permit the sale or divestiture of substantially all of its assets other than in connection with a merger or consolidation of Lessee into, or a sale of Lessee or substantially all of Lessee's assets to, another corporation, provided that if the survivor of such merger or the purchaser of such assets shall assume all of Lessee's obligations under this Lease by a written instrument, in form and substance reasonably satisfactory to Lessor, accompanied by an opinion of counsel, reasonably satisfactory to Lessor and addressed to Lessor stating that such instrument of assumption is valid, binding and enforceable against the parties thereto in accordance with its terms (subject to usual bankruptcy and other creditors' rights exceptions), and provided, further, that if, immediately after giving effect to any such merger, consolidation or sale, Lessee or such other corporation (if not the Lessee) surviving the same together with the Guarantor, shall have a Consolidated Net Worth not less than the Consolidated Net Worth of Lessee and Guarantor immediately prior to such merger, consolidation or sale, all as to be set forth in an Officer's Certificate delivered to Lessor within a reasonable period of time after such merger, consolidation or sale and provide Lessor an estoppel certificate from the Guarantor recognizing full liability under the Guaranty notwithstanding the sale or merger and such sufficient other security for the obligations under this Lease as Lessor may request (including further guaranties), an Event of Default shall not be deemed to have occurred, or

 (g) the estate or interest of Lessee in the Leased Property or any part thereof shall be levied upon or attached

-39-

in any proceeding and the same shall not be vacated or discharged within the later of ninety (90) days after commencement thereof or thirty (30) days after receipt by Lessee of notice thereof from Lessor (unless Lessee shall be contesting such lien or attachment in good faith in accordance with Article 12 hereof), or

(h) except as a result of damage, destruction or a partial or complete Condemnation, Lessee voluntarily ceases operations on the Leased Property for a period in excess of two hundred seventy (270) days, or

(i) any of the representations or warranties made in Article 5 of the Agreement of Purchase and Sale proves to be untrue when made in any material respect, which circumstances materially and adversely affects Lessor, and is not cured within thirty (30) days after receipt by Lessee of notice from Lessor thereof, or

(j) Guarantor shall fail to make any payment when due under the Guaranty or if any other default shall occur under the Guaranty which is not cured within thirty (30) days after notice;

provided, however, that no Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay so long as, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2   Remedies.

(a)   If any Event of Default shall have occurred and be continuing, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' Notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease. At the same time that Lessor gives Lessee notice of such termination, Lessor also shall give Fidelity Bank, National Association, notice of such termination. Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

(b)   Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

(c) If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Paragraph (a) of this Section, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all of Lessee's Personal Property from the Leased Property subject to the rights of any residents or patients and to any requirement of law, or Lessor may claim ownership of Lessee's Personal Property as set forth in Article 32 hereof. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

(d) In addition to all of the rights and remedies of Lessor set forth in this lease, if Lessee shall fail to pay any rental due hereunder (whether denominated as Minimum Rent, Additional Rent or otherwise) within ten days after same shall have become due and payable, then and in such event the Lessee shall also pay to the Lessor a late payment service charge (in order to partially defray the Lessor's administrative and other overhead expenses) of two hundred fifty dollars ($250) plus interest on such unpaid sum per day for each day or part thereof after the Payment Date thereof during which such payment shall not have been received by Lessor at the greater of (i) 18% or (ii) the Overdue Rate, but in no event in excess of any maximum interest rate (if such sum shall be denominated as interest by any court of competent jurisdiction) permissible under applicable law, it being understood that nothing herein shall be deemed to extend the due date for payment of any sums required to be paid by Lessee hereunder or to relieve Lessee of its obligation to pay such sums at the time or times required by this Lease.

16.3 <u>Damages.</u> None of (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, or (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting. In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination. Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

-41-

(A) the sum of:

(i) the worth, on the date of the award described below, of the Rent that is due and unpaid at the time of termination,

(ii) the worth, on the date of award of the amount by which the Rent that would have been earned after termination until the date of the award exceeds the amount of such rental loss that Lessee proves could have been reasonably avoided,

(iii) the worth, on the date of the award, of the amount by which the unpaid Rent for the balance of the Term after the date of the award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided, and

(iv) any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course would be likely to result therefrom.

In making the above determinations, the worth on the date of the award shall be determined by a court having jurisdiction thereof using the lowest rate of capitalization (highest present worth) reasonably applicable at the time of such determination and allowed by applicable law and the Additional Rent shall be deemed to be the same as for the then current Fiscal Year or, if not determinable, the immediately preceding Fiscal Year, for the remainder of the Term, or such other amount as either party shall prove reasonably could have been earned during the remainder of the Term or any portion thereof;

or (B)

each installment of said Rent and other sums payable to Lessee to Lessor under this Lease as the same would have become due and payable if the Lessee's right of possession or other rights under the Lease had not been terminated, which Rent and other sums shall bear interest at the greater of 18% or the Prime Rate plus 2%, provided that in no event shall the rate be greater than the maximum annual rate permitted by the laws of the state in which the Leased Property is located from the date when due until paid, and Lessor may enforce, by action or otherwise, any other term or covenant of this Lease.

16.4 **Waiver.** If this Lease is terminated pursuant to Section 16.2, Lessee waives, to the extent permitted by

-42-

applicable law, (a) any right of redemption, re-entry or repossession, (b) any right to a trial by jury in the event of summary proceedings to enforce the remedies set forth in this Article 16, and (c) the benefit of any laws now or hereafter in force exempting property from liability for rent or for debt.

15.5  **Application of Funds**. Any payments otherwise payable to Lessee which are received by Lessor under any of the provisions of this Lease during the existence or continuance of any Event of Default shall be applied to Lessee's obligations in the order which Lessor may reasonably determine or as may be prescribed by the laws of the state in which the Facility is located.

15.6  **Failure to Conduct Business**. For the purpose of determining rental loss damages or Additional Rent, in the event Lessee fails to conduct business upon the Leased Property, exact damages or the amount of Additional Rent being unascertainable, it shall be deemed that the Additional Rent for such period would be equal to the highest annual Additional Rent during the five (5) preceding Fiscal Years or such shorter period of time as the Lease is in force.

15.7  **Lessee's Obligation to Purchase**. If an Event of Default shall have occurred and be continuing, by including such requirement in the ten- (10-) day Notice of termination of this Lease given to Lessee by Lessor pursuant to the provisions of Paragraph (a) of Section 16.2 or by separate Notice given by Lessor to Lessee at any time thereafter prior to the time such Event of Default shall be cured, Lessor may require Lessee to purchase the Leased Property on the first Payment Date occurring not less than thirty (30) days after the receipt of, or such later date that is specified in, said Notice requiring such purchase. The purchase price of the Leased Property shall be an amount equal to the higher of (i) the then current Fair Market Value Purchase Price of the Leased Property or (ii) the Original Purchase Price of the Leased Property paid by Lessor plus an adjustment increase for the increase in the Cost of Living Index since the Commencement Date of this Lease plus Fair Market Added Value, plus all Rent then due and payable (excluding the installment of Minimum Rent due on the purchase date) as of the date of purchase. In no event shall the date of such purchase by Lessee occur prior to the receipt by Lessee of all applicable governmental consents and approvals, including without limitation, licenses and approval, or a decision not to review the capital expenditure contemplated herein, by the health planning agencies having jurisdiction over the Leased Property, provided, however, that Lessee shall be required to purchase the Leased Property at the end of one (1) year following such Notice whether or not such consents and approvals have been obtained. If Lessor exercises such right, Lessor shall convey the Leased Property to Lessee on the date

-43-

fixed therefor in accordance with the provisions of Article 18 upon receipt of the purchase price therefor and this Lease shall thereupon terminate. Any purchase by Lessee of the Leased Property pursuant to this Section shall be in lieu of the damages specified in Section 15.3.

### ARTICLE 17

### LESSOR'S RIGHT TO CURE

17.1  If Lessee shall fail to make any payment, or to perform any act required to be made or performed under this Lease and to cure the same within the relevant time periods provided in Section 16.1, Lessor, after notice to and demand upon Lessee, and without waiving or releasing any obligation or Event of Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Lessee, and may, to the extent permitted by law, enter upon the Leased Property for such purpose and take all such action thereon as, in Lessor's opinion, may be necessary or appropriate therefor. No such entry shall be deemed an eviction of Lessee. All sums so paid by Lessor and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses, in each case, to the extent permitted by law) so incurred, together with a late charge thereon (to the extent permitted by law) at the Overdue Rate from the date on which such sums or expenses are paid or incurred by Lessor, shall be paid by Lessee to Lessor on demand. The obligations of Lessee and rights of Lessor contained in this Article shall survive the expiration or earlier termination of this Lease.

### ARTICLE 18

### PURCHASE OF THE LEASED PROPERTY

18.1  In the event Lessee purchases the Leased Property from Lessor pursuant to any of the terms of this Lease, Lessor shall, upon receipt from Lessee of the applicable purchase price, together with full payment of any unpaid Rent due and payable with respect to any period ending on or before the date of the purchase, deliver to Lessee an appropriate deed or other instrument of conveyance conveying the entire interest of Lessor in and to the Leased Property to Lessee subject to all encumbrances of record other than any encumbrances permitted to be imposed on the Leased Property under the provisions of Article 36 and other than encumbrances arising from judgments or attachments solely against Lessor and not from any action or inaction by Lessee or its agents, unless such encumbrances are assumable at no cost to Lessee or to which Lessee may take subject without cost to Lessee. The difference between the

-44-

applicable purchase price and the total of the encumbrances assigned or taken subject to shall be paid in cash to Lessor, or as Lessor may direct, in federal or other immediately available funds except as otherwise mutually agreed by Lessor and Lessee. The closing of any such sale shall be contingent upon and subject to Lessee's obtaining all required governmental consents and approvals for such transfer and if such sale shall fail to be consummated by reason of the inability of Lessee, after use of diligent efforts, to obtain all such approvals and consents, then this Lease shall remain in effect on a month-to-month basis until the consummation of the purchase or until Lessee's inability to obtain the approvals and consents is confirmed. All expenses of such conveyance, including, without limitation, the cost of title examination or standard coverage title insurance, attorneys' fees incurred by Lessor in connection with such conveyance, and transfer taxes, shall be paid by Lessee. Recording fees and similar charges shall be paid for by Lessee.

## ARTICLE 19

### HOLDING OVER

19.1  If Lessee shall for any reason remain in possession of the Leased Property after the expiration of the Term or any earlier termination of the Term hereof, such possession shall be as a month-to-month tenant during which time Lessee shall pay as rental each month, one and one-half times the aggregate of (i) one-twelfth of the aggregate Minimum Rent and Additional Rent payable with respect to the last complete Lease Year prior to the expiration of the Term; (ii) all Additional Charges accruing during the month and (iii) all other sums, if any, payable by Lessee pursuant to the provisions of this Lease with respect to the Leased Property. During such period of month-to-month tenancy, Lessee shall be obligated to perform and observe all of the terms, covenants and conditions of this Lease, but shall have no rights hereunder other than the right, to the extent given by law to month-to-month tenants, to continue its occupancy and use of the Leased Property. Nothing contained herein shall constitute the consent, express or implied, of Lessor to the holding over of Lessee after the expiration or earlier termination of this Lease.

## ARTICLE 20

### RISK OF LOSS

20.1  During the Term of this Lease, the risk of loss or of decrease in the enjoyment and beneficial use of the Leased Property in consequence of the damage or destruction thereof by fire, the elements, casualties, thefts, riots, wars or

-45-