# EXHIBIT "G"

1115-1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC. ) | Case No. 00-389 (MFW) |
| ET AL. ) | Jointly Administered |
| Debtors. ) | Re: Docket No. 4417 6155 |

## STIPULATION AND ORDER

This Stipulation and Order ("Stipulation") is between Integrated Health Services, Inc. and certain of its direct and indirect subsidiaries (the "Tenants"), as debtors and debtors-in-possession in the above referenced Chapter 11 cases (collectively, the "Debtors") and THCI Company LLC ("THCI") that are pending in the United States Bankruptcy Court for the District of Delaware before the Honorable Mary F. Walrath (the "Court"). The Debtors and THCI are hereafter referred to as the "Parties."

WHEREAS, the Tenants lease 10 properties (the "Leased Properties") from THCI for the purpose of operating healthcare facilities thereon, and continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the United States Bankruptcy Code;

336933-3

Whereas, on or about May 7, 2001, the Debtors filed a motion seeking authority, *inter alia*, to assume the leases for 6 of the Leased Properties, and reject the leases for 4 of the Leased Properties, which motion was amended to reclassify one of those leases commonly known as Carriage-by-the-Lake, located in Bellbrook, Ohio (the "Carriage-by-the-Lake Facility") as rejected rather than as assumed on October 8, 2001 (as amended, the "Motion");

WHEREAS, THCI objected to the relief sought in the Motion, arguing, *inter alia*, that the 10 leases that were the subject of the Motion expired by their own terms on May 31, 2001;

WHEREAS, the Motion was scheduled to be heard by the Court on March 7, 2002;

WHEREAS, the parties have reached agreement to settle their disputes with respect to the Motion.

WHEREFORE, it is hereby stipulated, agreed and ordered as follows:

1. In accordance with the terms set forth in this Stipulation, the Debtors reject the Carriage-by-the-Lake Facility, and, provided the leases are amended as hereinafter provided in paragraph 3 of this stipulation, shall assume the leases as amended and restated by the Master Lease (as hereinafter defined) for the remaining 9 Leased Properties that were the subject of the Motion. The leases shall be amended and restated pursuant to a new master lease agreement for the remaining 9 Leased Properties (the "Master Lease") as set forth in paragraph 3 of this stipulation, and at such time the leases, as amended and restated by the Master Lease, shall be assumed.

2. With respect to the Carriage-by-the-Lake Facility:

2

336931-3

(a) The Debtors are authorized to transfer the Carriage-by-the-Lake Facility to a new operator identified and approved by THCI (the "New Operator").

(b) The Debtors shall use commercially reasonable efforts to facilitate transfer of operations at the Carriage-by-the-Lake Facility to the New Operator.

(c) In furtherance of the foregoing, the Debtors and the New Operator of the Carriage-by-the-Lake Facility shall negotiate in good faith with the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services in connection with the transfer of the Medicare and Medicaid provider agreements from the Debtors to the New Operator, which transfer shall include a release by the United States of America and/or the State of Ohio of any defaults or claims against the New Operator related to or arising under the Carriage-by-the-Lake Facility's Medicare or Medicaid provider agreements or Medicare and Medicaid Statutes and Regulations. The receipt of such agreements shall not be a condition to the transfer of the Carriage-by-the-Lake Facility, provided, however, that in the event that the Debtors are unable to obtain such agreements, the Tenant shall provide THCI and the New Operator with an indemnity acceptable to THCI and the New Operator with respect to any pre-transfer defaults or claims related to or arising under the Medicare and Medicaid provider agreements or Medicare or Medicaid Statutes and Regulations.

3

136933-3

(d)     Any transfer of the Carriage-by-the-Lake Facility shall be accomplished pursuant to a mutually agreeable Operations Transfer Agreement.

(e)     The Tenant for this facility will continue to operate the Carriage-by-the-Lake Facility in accordance with all obligations under the lease until such time as the Carriage-by-the-Lake Facility is transferred to the New Operator in accordance with paragraph 2(b) of this Stipulation, or until the Facility is vacated after a Wind Down (as hereinafter defined). Notwithstanding anything to the contrary in the Carriage-by-the-Lake lease, and until a transfer, Debtors will pay use-and-occupancy at the lease rent rate at the Carriage-by-the-Lake Facility for the months of April 2002, May 2002, and June 2002. Thereafter, the use-and-occupancy will step down by 20% of the June 2002 use-and-occupancy per month until the Carriage-by-the-Lake Facility is transferred to the New Operator in accordance with paragraph 2(b) *supra*. The Debtors have the right to commence a Wind Down of the facility on or after November 1, 2002, upon 30 days' notice to THCI. Correspondingly, THCI may require the Debtors to commence a Wind Down of the facility on or after November 1, 2002, upon 30 days' notice. The Parties agree that from and after November 1, 2002, the Debtors may take any and all actions necessary or appropriate, in the Debtors' sole and absolute discretion but in accordance with State and Federal law, to wind down the operations of the Carriage-by-the-Lake Facility, including without limitation, termination of any and all employees, discharge of any or all patients, transferring of any or

4

336933-3

all patients to other facilities owned or leased by the Debtors, and ceasing to admit new patients to the Facility (the "Wind Down" of such Facility).

(f) The Debtors will be responsible for the operating losses up to the date that the facility is transferred, and may keep the profits up to the date that the facility is transferred.

(g) The Debtors understand that the Carriage-by-the-Lake Facility cannot be transferred to the New Operator until such time as the Facility is licensed in accordance with Chapter 3721 of the Ohio Revised Code and implementing regulations. The Debtors agree to reasonably cooperate with THCI and the New Operator in its license application, including, but not limited to, executing a declaration of change of ownership.

3. Within thirty (30) days of the date of this Stipulation, or at such time thereafter as the Parties may agree, the Parties shall enter into a master lease agreement amending and restating the Leases (the "Master Lease"). The parties agree that because of the related nature of the leases for the 9 Leased Properties, the parties intend to integrate the Leased Properties into a single portfolio of properties. The parties also agree that the Leased Properties must be tied together economically so that the revenue from the entire portfolio of Leased Properties will be, in the aggregate, profitable, and will be used to run each of the Leased Properties with adequate funding and staffing. The Master Lease shall:

    (a) Be a single triple net lease.

    (b) Provide that the base rent for all of the Leased Properties in the aggregate shall be $8,100,000 per annum.

5

136033-3

(c) Provide for escalations of 2.5% per annum.

(d) Provide that the terms of the lease for all of the Leased Properties shall be for 10 years.

(e) Provide that the Debtors shall have the right to extend the terms of the Master Lease for all of the Leased Properties for two (2) consecutive five (5) year periods, based upon a continuation of the rent, with escalations at 2.5% per annum.

(f) Tenant may not, without the prior written consent of Landlord, which consent shall be at Landlord's sole discretion, assign the Master Lease or sublet all or any part of the leased property. Transfers or issuances of a majority or more of stock or other beneficial interests in Tenant shall be deemed an assignment. Notwithstanding the foregoing, the parties acknowledge that the Tenant reserves the right and may seek to assign the Master Lease subsequently hereto to a third party prior to and separate from or, alternatively, in connection with the confirmation of the plan or plans of reorganization filed in these cases. The parties hereto agree that the Tenant's right to assign the Master Lease is hereby fully reserved and preserved under and pursuant to section 365 of the Bankruptcy Code, including but not limited to section 365(f) of the Bankruptcy Code, and the execution of the Master Lease is and shall be without prejudice to or waiver of any and all of Tenant's rights, protections, benefits and privileges to assign same provided to the Tenant under section 365 of the Bankruptcy Code, including but not limited to sections 365(e)(1) and (3) of the Bankruptcy Code; provided however that the

Tenant's right to assign the Master Lease shall remain subject to section 365(f)(2)(B) of the Bankruptcy Code; and the parties also agree that the Landlord's rights, under section 365 of the Bankruptcy Code, including the right to object to any proposed assignment by Tenant, are fully reserved and preserved.

4. THCI waives any claims that it may have with respect to previous years' additional rent payments for all of the Leased Properties, waives all use and occupancy charges for the Carriage-by-the-Lake Facility except as expressly provided herein, and waives rejection damages with respect to the Carriage-by-the-Lake Facility.

5. The Debtors withdraw their remaining requests for relief that were set forth in the Motion.

6. The Debtors will pay all reasonable legal fees and expenses that were incurred by THCI during the course of the Debtors' bankruptcy. The legal fees and expenses shall be paid within 30 days after this Stipulation is approved by the Bankruptcy Court.

7. The Court shall retain sole jurisdiction to interpret, enforce, and resolve any disputes regarding the terms of this Stipulation.

DATED: March 12, 2002

ROBERT E. GROSSMAN
BETH N. GREEN
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
505 Park Avenue, 16th Floor
New York, NY 10021
Telephone: (212) 753-7200
Facsimile: (212) 935-1787

- and -

/s/ Victoria W. Counihan
VICTORIA WATSON COUNIHAN (No. 3488)
GREENBERG TRAURIG LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
Telephone: (302) 661-7377
Facsimile: (302) 661-7360

Attorneys for THCI COMPANY, LLC

DATED: March 13, 2002

AMOS ALTER
JENKENS & GILCHRIST PARKER CHAPIN LLP
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 704-6000
Facsimile: (212) 704-6288

- and -

/s/
ROBERT S. BRADY (No. 2487)
EDMON L. MORTON (No. 3856)
YOUNG CONWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Attorneys for Debtors INTEGRATED HEALTH SERVICES, INC. et al.

8

336933-3

SO ORDERED

Dated: March 18, 2002

_____
UNITED STATES BANKRUPTCY JUDGE