## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., *et al.*, | ) ) ) |
| Plaintiffs-Counterclaim Defendants, | ) ) |
| v. | ) ) Case No. 04-910 |
| THCI COMPANY LLC, | ) ) ) |
| Defendant-Counterclaimant. | ) ) ) |

### MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION BY PLAINTIFFS FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF THE CROSS-MOTION BY THCI FOR PARTIAL SUMMARY JUDGMENT

**GREENBERG TRAURIG LLP**
Scott D. Cousins (No. 3079)
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware  19801
Tel:  (302) 661-7000

-and-

**ARENT FOX PLLC**
Robert E. Grossman
Michael S. Cryan
Beth Kibel
Igor M. Tsibelman
1675 Broadway
New York, New York  10019
Tel:  (212) 484-3900

***Attorneys for Defendant THCI Company LLC***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 3

ARGUMENT ..................................................................................................... 9

I.    SUMMARY JUDGMENT STANDARD ................................................. 9

II.   PLAINTIFFS' MOTION SHOULD BE DENIED AND THCI'S CROSS-
      MOTION SHOULD BE GRANTED ........................................................ 10

      A.    The Plain Language of the Operative  Agreements and Orders
            Binds Plaintiffs .............................................................................. 10

      B.    The Guaranties Are an Integral Part of the Leases ...................... 17

            1.    The Guaranties Form an Entire Agreement with the Leases
                  Assumed by Plaintiffs ........................................................... 17

            2.    The Guaranty Terms Are Incorporated in the Nine Leases
                  and the March 2002 Stipulation, and Were Deemed
                  Assumed and Restated .......................................................... 19

      C.    Plaintiffs' Motion Lacks Support .................................................. 20

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

Page

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)................................................................................9

Bethea v. Investors Loan Corp.,
   197 A.2d 448 (D.C. 1964) .....................................................................18

Clayton v. Howard Johnson Franchise Sys.,
   954 F.2d 645 (11th Cir. 1992) ..........................................................18, 19

Fireman's Ins. Co. v. DuFresne,
   676 F.2d 965 (3d Cir.1982).....................................................................9

Fischer v. Nat'l Indus. Servs.,
   735 S.W.2d 114 (Mo. Ct. App. 1987)....................................................18

GFL Advantage Fund, Ltd. v. Colkitt,
   272 F.3d 189 (3d Cir. 2001)....................................................................9

Grand Investment Corp. v. Connaughton, Boyd & Kenter, P.C.,
   119 S.W.3d 101 (Mo. Ct. App. 2003)...................................................21

Grease Monkey Int'l, Inc. v. Godat,
   916 S.W.2d 257 (Mo. Ct. App. 1995)...................................................18

Horowitz v. Fed. Kemper Life Assur. Co.,
   57 F.3d 300 (3d Cir. 1995)......................................................................9

In re Beare Co.,
   177 B.R. 879 (Bankr. W.D. Tenn. 1994)..............................................19

In re Café Partners/Washington 1983,
   90 B.R. 1 (Bankr. D.D.C. 1988) ...........................................................19

In re Comdisco, Inc.,
   270 B.R. 909 (Bankr. N.D. Ill. 2001) ..............................................15, 16

In re Harrison,
   117 B.R. 570 (Bankr. C.D. Cal. 1990)..................................................19

In re Mirant Corp.,
   318 B.R. 100 (N.D. Tex. 2004)..............................................................19

In re The IT Group, Inc.,
   322 B.R. 729 (Bankr. D. Del. 2005) .................................................15, 21

Interface Group-Nevada, Inc. v. TWA, Inc. (In re TWA, Inc.),
  145 F.3d 124 (3d Cir. 1998)............................................................................14

Jaffree v. Wallace,
  837 F.2d 1461 (11th Cir. 1988) ....................................................................12

Jamieson-Chippewa Inv. Co. v. McClintock,
  996 S.W.2d 84 (Mo. Ct. App. 1999)..............................................................20

Matsushita Elec. Indus. v. Zenith Radio Corp.,
  475 U.S. 574 (1986)........................................................................................9

McKnight v. Midwest Eye Inst. of Kan. City,
  799 S.W.2d 909 (Mo. Ct. App. 1990)............................................................18

Olympic Junior, Inc. v. David Crystal, Inc.,
  463 F.2d 1141 (3d Cir. 1972)........................................................................10

Phoenix Am. Life Ins. Co. v. Devan,
  308 B.R. 237 (D. Md. 2004), *aff'd sub nom In re Merry-Go-Round Enters.*,
  400 F.3d 219 (4th Cir. 2005) ........................................................................13

Pieco , Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.),
  173 B.R. 844 (S.D.N.Y. 1994)..................................................................16, 19

Sanfilippo v. Oehler,
  869 S.W.2d 159 (Mo. Ct. App. 1993).............................................................17

Shell v. Shell,
  658 S.W.2d 439 (Mo. Ct. App. 1982).............................................................18

Tripoli Co. v. Wella Corp.,
  425 F.2d 932 (3d Cir. 1970)..........................................................................10

Yates Dev., Inc. v. Old Kings Interchange, Inc. (In re Yates Dev., Inc.),
  241 B.R. 247 (Bankr. M.D. Fla. 1999), *aff'd*, 256 F.3d 1285
  (11th Cir. 2001)..............................................................................................14

## STATUTES

Fed. R. Bankr. P. 7056............................................................................................9

## PRELIMINARY STATEMENT

Defendant-Counterclaimant THCI Company LLC ("THCI") respectfully submits this memorandum of law in opposition to the motion ("Motion") by Plaintiffs-Counterclaim-Defendants IHS Long Term Care, Inc. ("LTC") and Integrated Health Services of Cliff Manor, Inc.; Integrated Health Services at Riverbend, Inc.; Integrated Health Services at Somerset Valley, Inc.; Alpine Manor, Inc.; Briarcliff Nursing Home, Inc.; Integrated Health Group, Inc.; Spring Creek of IHS, Inc.; Firelands of IHS, Inc.; and Elm Creek of IHS, Inc. (the "Nine Subsidiaries" and, collectively with LTC, the "Plaintiffs") for partial summary judgment and in support of THCI's cross-motion for partial summary judgment ("Cross-Motion").

Plaintiffs' Motion should be denied for at least three reasons. First, the plain language of the guaranties including the Missouri guaranty ("Missouri Guaranty"), lease agreements between the parties ("Nine Leases") and orders of the Delaware Bankruptcy Court compels the finding that Integrated Health Services, Inc. ("IHS," and collectively with the Nine Subsidiaries, the "Debtors") was bound by the guaranty obligations at all times, and those obligations were passed on to LTC. The Missouri Guaranty by its express terms applies to all amendments, extensions and modifications of the underlying lease ("Missouri Lease") and is inseparable from the Missouri Lease. In fact, neither would or could have been executed or assumed without the other and the Nine Leases could not have been assumed without the Guaranties.

The Nine Leases, including the Missouri Lease, were modified by a lease modification agreement ("Lease Modification Agreement") entered into between IHS, the Nine Subsidiaries and THCI's predecessor. The Lease Modification Agreement expressly provides that IHS, in its capacity as a guarantor (the "Guarantor"),

"acknowledges and agrees that all of its obligations under the Lease Guaranties shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement." Finally, in April 2003, the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") issued an order (the "April 2003 Order") deeming the Nine Leases assumed as amended and restated by agreement of the parties, evidenced by the stipulation and order entered by the Delaware Bankruptcy Court in March 2002 (the "March 2002 Stipulation and Order").

The only reason why IHS (which was not a tenant under the Nine Leases) entered into the March 2002 Stipulation and Order, is because IHS was reconfirming its *own* obligations as the Guarantor under the Nine Leases. Indeed, IHS admitted its liability under the Missouri Guaranty and other guaranties supporting the Nine Leases (the "Guaranties") after its Chapter 11 filing and after the March 2002 Stipulation and Order by listing the Guaranties as its obligations under the stock and purchase agreement with Abe Briarwood Corporation ("Briarwood"). For these reasons, Plaintiffs' Motion should be denied and THCI's Cross-Motion should be granted, as set forth in Point II(A) below.

Second, the Guaranties are inseparable from the Nine Leases, and by entering into the March 2002 Stipulation and Order and assuming the Nine Leases, IHS and the Nine Subsidiaries assumed not only the benefits flowing from these Leases, but also the corresponding burdens, such as liability under the Guaranties. Because the Nine Leases and the Guaranties form one integrated agreement pursuant to the Lease Modification Agreement, and specifically and expressly constitute a master lease ("Master Lease") pursuant to the March 2002 Stipulation and Order, and April 2003 Order, the Nine

Subsidiaries could not have assumed the Nine Leases without IHS also being liable under the Guaranties as discussed in Point II(B) below.

Finally, Plaintiffs' Motion lacks factual or legal support. Plaintiffs stake their entire Motion on an attorney affidavit necessarily raising a host of factual issues concerning the parties' subjective intent. Plaintiffs' Motion also contains blatantly inaccurate facts and legal conclusions: contrary to their assertions, the Nine Leases were deemed assumed in the IHS bankruptcy, and the Nine Leases had not expired. IHS moved before the Delaware Bankruptcy Court to assume six leases and reject four leases. THCI opposed that motion, which was settled in a binding March 2002 Stipulation and Order under which the Debtors, including IHS, agreed to assume the Nine Leases. In addition, Plaintiffs' legal authority undermines, rather than supports, Plaintiffs' contentions as discussed in Point II(C). In sum, Plaintiffs' Motion lacks merit and should be denied.

## STATEMENT OF FACTS

Prior to February 2000, IHS was one of the largest operators of long-term care facilities in the United States. IHS conducted its operations through numerous direct and indirect subsidiaries. Generally, each subsidiary operated a single long-term care facility. Ten IHS subsidiaries, including the Nine Subsidiaries at issue here, leased facilities[1] from affiliates of Meditrust Corporation, THCI's predecessor, in the states of Ohio, Pennsylvania, New Jersey, Alabama, Michigan, and Missouri.[2] Pursuant to the Guaranties executed contemporaneously with the Nine Leases, IHS agreed to "absolutely

---

[1] The lease of a tenth facility, in Bellbrook, Ohio ("Carriage-By-The-Lake"), was later rejected by the Debtors pursuant to the March 2002 Stipulation and Order.

[2] THCI and Meditrust Corporation are hereinafter referred to as "THCI" unless otherwise noted.

and unconditionally" guaranty to THCI "the full, faithful, and punctual performance, fulfillment, observance, and payment of all of the obligations and liabilities" of the Nine Subsidiaries under the "Nine Leases." (Declaration of Warren D. Cole dated June 14, 2005 ("Cole Decl.") & Exhibit 1 attached thereto ("Ex. 1 (Missouri Guaranty)") ¶ 1). The Guaranties specifically provided that the Guarantor and its successors and assigns agreed to be bound by any "amendments, extensions and renewals" of the Leases. (Ex. 1 (Missouri Guaranty) ¶¶ 4(a), 6). The Leases explicitly incorporated the Guaranties in numerous provisions. (Ex. 2 (Missouri Lease) ¶¶ 7.2.5, 16.1, 22.1, 23.2).

In 1993, the Nine Leases were amended pursuant to the Lease Modification Agreement. (Ex. 3 (Lease Modification Agreement)). IHS (defined as "Guarantor" within each of the Nine Leases) was a party to the Lease Modification Agreement and expressly "acknowledge[d] and agree[d] that all of its obligations under the Lease Guaranties shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement." (Ex. 3 (Lease Modification Agreement) ¶ 4).

In February 2000, the Debtors filed petitions for relief under Chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code") in the Delaware Bankruptcy Court. By Orders dated April 17, 2000, October 5, 2000 and Order and Stipulation dated March 22, 2001, the Delaware Bankruptcy Court agreed to extend the time within which the Debtors could assume or reject the leases, including the Nine Leases, pursuant to Section 365 of the Bankruptcy Code to June 1, 2001. On or about November 21, 2000, the Debtors sent letters seeking to renew the Nine Leases for an additional five-year period. On May 7, 2001,[3] the Debtors filed a motion with the Delaware Bankruptcy Court seeking to assume

---

[3] The Nine Leases were set to expire, until renewed, on May 31, 2001. By the Extension Letters, the Debtors sought to renew the Nine Leases.

six leases and reject four leases ("Motion to Assume"). *See* Cole Decl. ¶ 17.

THCI objected to the Motion to Assume arguing that the Debtors could not assume or reject the Leases *selectively*, since as amended by the Lease Modification Agreement all ten leases were "linked contractually . . . to the extent that each lease has a cross-default clause . . . [and] cross-renewal clause found in the Lease Modification Agreement," and effectively constituted a single operative agreement, parts of which could not be selectively rejected. (Ex. 5 (Motion to Assume) ¶¶ 23, 24; *see* Ex. 3 (Lease Modification Agreement) ¶¶ 1(b), 1(c) & 7 (containing cross-default provisions); *id.* ¶ 4 (providing that all of IHS's "*obligations under the Lease Guarantees shall remain in full force and effect and shall hereafter apply to the Leases* as amended by this Agreement.") (emphasis added).

The Motion to Assume was resolved in its entirety with prejudice in March 2002 when THCI, IHS, and the Nine Subsidiaries entered into a settlement agreement that was approved and entered as an order by the Delaware Bankruptcy Court. (Ex. 6 (March 2002 Stipulation and Order)). *See* Cole Decl. ¶¶ 19-21. The March 2002 Stipulation and Order, in pertinent part, resolved all issues about the current validity of the Leases, including the issue of expiration, on the record before the Delaware Bankruptcy Court. The "Whereas" clauses recited the existing disputes, including the dispute over expiration, and specifically stated that "the parties have reached agreement to settle their disputes." (Ex. 6 (March 2002 Stipulation and Order) at 2). The March 2002 Stipulation and Order stated that the Plaintiffs "shall assume the [Nine] leases as amended and restated by the Master Lease..." (Ex. 6 (March 2002 Stipulation and Order) ¶ 1). The March 2002 Stipulation and Order also memorialized the parties' agreement to "reject the

Carriage-by-the-Lake Facility and, provided the leases are amended as hereinafter provided in paragraph 3 of this stipulation," to "assume the leases as amended and restated in the Master Lease . . . for the remaining 9 Leases Properties that were the subject of the Motion." (Ex. 6 (March 2002 Stipulation and Order) ¶ 1). THCI withdrew its substantial defenses to the Debtors' Motion to Assume in reliance on the March 2002 Stipulation and Order, as well as its claims for damages. Nothing in the March 2002 Stipulation and Order changed the Guaranties or operated to eliminate the obligations of IHS as the Guarantor.

In the meantime, the Nine Subsidiaries remained in possession of the premises and continued to pay rent pursuant to the Nine Leases. By early 2003, IHS had worked out a Chapter 11 Plan of Reorganization pursuant to which all of the assets and liabilities associated with its long-term care business, including the capital stock of all of its long-term care subsidiaries (including but not limited to the capital stock of the Nine Subsidiaries), would be sold in a best-and-highest bid process under the authority of Chapter 11 and the Delaware Bankruptcy Court. Ultimately, Briarwood emerged as the buyer for the IHS long-term care business.

The sale of IHS's long-term care business to Briarwood became the cornerstone of IHS's plan (the "Plan") proposed to the Delaware Bankruptcy Court for confirmation. Consistent with its proposed Plan, IHS entered into a Stock Purchase Agreement (the "SPA") with Briarwood dated January 28, 2003. The SPA contemplated that IHS would create a new subsidiary, IHS Long Term Care, Inc. ("LTC"), which would assume "all of Seller's [long-term care] assets *and liabilities* ... including without limitation the capital stock of all of the Subsidiaries that conduct Seller's long-term care businesses . . . ." (Ex.

8 (SPA) ¶ 5.9(b)) (emphasis added). Schedule 3.8(b) to the SPA sets forth a complete list

of all leases and guarantees under which IHS was liable as a Guarantor, and specifically

lists all the Guaranties, including the Missouri Guaranty. (Ex. 9 (Schedule 3.8(b)).

In April 2003, at Briarwood's direction, the Debtors filed a motion in the

Delaware Bankruptcy Court seeking to reject the Nine Leases—the very same leases that

the Debtors had agreed to assume pursuant to the March 2002 Stipulation and Order (the

"Motion to Reject"). THCI filed a cross-motion (the "Motion to Compel") in the

Delaware Bankruptcy Court seeking to compel IHS and the Nine Subsidiaries to comply

with the March 2002 Stipulation and Order, and to enter into the Master Lease called for

by the March 2002 Stipulation and Order. In April 2003, the Delaware Bankruptcy Court

entered an Order (the "April 2003 Order") granting THCI's Motion to Compel and

stating:

> Within five (5) business days of the entry of this Order, the parties may
> execute a form of Master Lease on such terms as may be mutually
> agreeable by the parties, *provided, however*, that if within such time the
> parties do not execute a Master Lease on mutually agreeable terms, *a
> Master Lease shall be deemed to exist, which Master Lease shall be
> deemed to incorporate the terms set forth in paragraphs 3(a), (b), (c), (d),
> (e) and (f) of the March 2002 Stipulation and shall further be deemed to
> incorporate by reference all terms of the existing Leases to the extent not
> inconsistent with the March 2002 Stipulation.*

(Ex. 7 (April 2003 Order) ¶ 2) (emphasis added).

Pursuant to the April 2003 Order, the Debtors were deemed bound by all terms of

the Nine Leases as modified by the Lease Modification Agreement, the March 2002

Stipulation and Order, and the April 2003 Order, without regard to whether the parties

would execute a Master Lease.[4] Nothing in the April 2003 Order relieved IHS of its

---

[4]  IHS and the Nine Subsidiaries appealed to this Court from the April 2003 Order, which appeal is
currently pending before the Court.

obligations under the Guaranties. To the contrary, the guaranty obligations became part of the amended, restated and assumed Master Lease because they were in no way inconsistent with the provisions in the 2002 Stipulation and Order, and IHS (defined as Guarantor under the Nine Leases) itself executed the 2002 Stipulation and Order—an act that IHS, not itself a tenant, was otherwise not obligated to perform in any capacity, other than as Guarantor. Thus, the March 2002 Stipulation and Order and the April 2003 Order established the Guaranties as postpetition liabilities of IHS.

By Order dated May 12, 2003 (the "Confirmation Order"), the Bankruptcy Court confirmed the Plan. The Plan memorialized and confirmed the results of, and the arrangements and agreements surrounding, the bid process in which Briarwood had been successful, and reaffirmed that the Debtors were deemed to have assumed the Leases pursuant to the March 2002 and April 2003 Orders. (Ex. 10 (Confirmation Order) ¶ 49). The effect of the March 2002 Stipulation and Order, April 2003 Order and Confirmation Order was to continue the Guaranties in full force and effect as if no bankruptcy ever took place.[5] Thus, LTC, which succeeded to the rights and obligations of IHS pursuant to the Plan and the SPA, remains responsible to THCI for, and liable to THCI under, the Nine Leases, the Lease Modification Agreement and the Guaranties as a matter of law. (Ex. 10 (Confirmation Order) ¶ 49(b)) ("IHS will contribute and assign to the LTC Subsidiary all of its [pertinent] assets ... *and postpetition liabilities*") (emphasis added)).

---

[5] IHS's obligations under the Nine Leases were subject only to "rejection" under Chapter 11 of the Bankruptcy Code if the District Court, on IHS's appeal, reversed the Delaware Bankruptcy Court's April 2003 Order that (i) denied IHS's motion to reject the Nine Leases and (ii) deemed the existence of a Master Lease that incorporated the terms of the Nine Leases.

## ARGUMENT

### I.

### SUMMARY JUDGMENT STANDARD

A party filing a motion for summary judgment bears the burden of proving that it has established all the elements of its case entitling it to judgment in its favor and that there is no genuine issue of material fact in dispute. *See, e.g., Matsushita Elec. Indus.. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10 (1986). The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Summary judgment should be granted only if, "after drawing all reasonable inferences from the record in the light most favorable to [the nonmoving party], 'there is no genuine issue as to any material fact' and [the movant] is 'entitled to a judgment as a matter of law.'" *GFL Advantage Fund, Ltd. v. Colkitt,* 272 F.3d 189, 199 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(c)). "Facts that could alter the outcome are 'material' . . . and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assur. Co.,* 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citation omitted).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that would be admissible in evidence, establishing the existence of a genuine issue of material fact for trial. Fed. R. Bankr. P. 7056. *See Fireman's Ins. Co. v.*

*DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982) ("Rule 56(e) does not allow a party resisting

the motion to rely merely upon bare assertions, conclusory allegations or suspicions");

*Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972)

("Conclusory statements, general denials, and factual allegations not based on personal

knowledge would be insufficient to avoid summary judgment"); *Tripoli Co. v. Wella*

*Corp.,* 425 F.2d 932, 935 (3d Cir. 1970) (holding that to defeat summary judgment

motion, "a party must now come forward with affidavits setting forth specific facts

showing that there is a genuine issue for trial").

## II.

## PLAINTIFFS' MOTION SHOULD BE DENIED AND THCI'S CROSS-MOTION SHOULD BE GRANTED

### A.    The Plain Language of the Operative Agreements and Orders Binds Plaintiffs

In his Declaration in Support of Partial Summary Judgment Motion, LTC's

counsel Amos Alter argues that the Leases were not amended or assumed.  (Alter Decl. ¶

13).  Instead, according to Mr. Alter, the Bankruptcy Court "imposed a new Master

Lease" upon the parties, and, since LTC never separately guaranteed the new Master

Lease, and the Bankruptcy Court imposed no guaranty requirement either, then allegedly:

> The pre-existing guarantees of their own force could not possibly apply:
> [because] (i) The Master Lease is a new lease, not a continuation of the
> old Leases, and hence the guarantees by their own terms would not apply.

Alter Decl. ¶ 14.

Counsel's argument has *no* factual or legal support, as the facts conclusively

contradict the attorney's declaration and demonstrate that the Delaware Bankruptcy Court

ordered the Nine Leases to be "deemed assumed" pursuant to the terms of the Nine

Leases, Lease Modification Agreement and March 2002 Stipulation and Order.  The

language of the Delaware Bankruptcy Court's orders leaves no space for Mr. Alter's

argument. It is undisputed that on May 7, 2001,[6] IHS filed its Motion to Assume seeking

to assume leases for six properties and reject leases for four properties pursuant to

Section 365 of the Bankruptcy Code. After THCI objected to the Motion to Assume,

negotiations ensued and ultimately led to the March 2002 Stipulation and Order of the

Delaware Bankruptcy Court, which provided that whereas

> [t]he Debtors [including IHS] reject[ed] the Carriage-by-the-Lake Facility,
> and, provided the lease are amended as hereinafter provided in paragraph
> 3 of this stipulation, shall assume the leases as amended and restated by
> the Master Lease (as hereinafter defined) for the remaining 9 Lease
> Properties that were the subject of the Motion.[7]  The leases shall be
> amended and restated pursuant to a new master lease agreement for the
> remaining 9 Leased Properties (the "Master Lease") as set forth in
> paragraph 3 of this stipulation, and at such time the leases as amended and
> restated by the Master Lease, shall be assumed.

(Ex. 6 (March 2002 Stipulation and Order) ¶ 1). The Debtors' Motion to Assume was

conclusively and fully resolved by the March 2002 Stipulation and Order on the record

before the Delaware Bankruptcy Court.

Significantly, the March 2002 Stipulation and Order defines the Debtors as

"Integrated Health Services, Inc., and certain of its direct and indirect subsidiaries (the

'Tenants'), as debtors and debtors-in-possession in the above referenced Chapter 11 cases

(collectively, the 'Debtors')." (Ex. 6 (March 2002 Stipulation and Order) at 1). The only

reason why IHS, which was not a tenant, signed the March 2002 Stipulation and Order,

---

[6]  By orders of the Delaware Bankruptcy Court dated April 17, 2000, October 5, 2000 and March 22, 2001,
the Delaware Bankruptcy Court extended the time "to assume or reject … the lease or leases involving
the Meditrust Facilities" to and including June 1, 2001. (Ex. 4 (Stipulation and Order dated March 22,
2001) ¶ C). The March 22, 2001 Stipulation and Order defined the "Meditrust Facilities" as ten leases
from new Meditrust Company LLC, a predecessor in interest to THCI. (Ex. 4 (Stipulation and Order
dated March 22, 2001) ¶ B).

[7]  IHS's Motion to Assume the Leases dated May 7, 2001.

was to reconfirm its obligations under the Guaranties. Indeed, the very assumption of the

Nine Leases would have been impossible without IHS remaining obligated under the

Guaranties as provided in the Lease Modification Agreement: "Integrated acknowledges

and agrees that all of its obligations under the Lease Guaranties shall remain in full force

and effect and shall hereafter apply to the Leases as amended by this Agreement." (Ex. 3

(Lease Modification Agreement) ¶ 4). IHS (and, by virtue of the SPA and the Plan, LTC)

is, therefore, bound by the March 2002 Stipulation and Order.

> Paragraph 3 of the March 2002 Stipulation and Order provided:

> Within thirty (30) days of the date of this Stipulation, or at such time
> thereafter as the Parties may agree, the parties shall enter into a master
> lease agreement amending and restating the Leases (the "Master Lease").
> The parties agree that because of the related nature of the leases for the 9
> Leased properties, the parties intend to integrate the Leased Properties into
> a single portfolio of properties.

(Ex. 6 (March 2002 Stipulation and Order) ¶ 3).

> In April 2003, the Bankruptcy Court entered the April 2003 Order granting

THCI's Motion to Compel. The Bankruptcy Court ruled that

> [w]ithin five (5) business days of the entry of this Order, the parties may
> execute a form of Master Lease on such terms as may be mutually
> agreeable by the parties, *provided, however*, that if within such time the
> parties do not execute a Master Lease on mutually agreeable terms, *a
> Master Lease shall be deemed to exist, which Master Lease shall be
> deemed to incorporate the terms set forth in paragraphs 3(a), (b), (c), (d),
> (e) and (f) of the March 2002 Stipulation and shall further be deemed to
> incorporate by reference all terms of the existing Leases to the extent not
> inconsistent with the March 2002 Stipulation.*

(Ex. 7 (April 2003 Order) ¶ 2) (first emphasis in original; second emphasis added).[8]

---

[8] IHS and the Nine Subsidiaries appealed to this Court from the April 2003 Order, which appeal remains
pending. However, this appeal does not have the effect of staying the Order, or affecting the law of the
case as embodied in the April 2003 Order. *See Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988)
("The established rule in the federal courts is that a final judgment retains all of its res judicata
consequences pending decision of the appeal.").

On May 12, 2003, the Bankruptcy Court confirmed (the "Confirmation Order") the Amended Joint Plan of Reorganization of Integrated Health Services, Inc., and its subsidiaries under Chapter 11 of the Bankruptcy Code (the "Plan").

The Confirmation Order provided that

[t]he Master Lease [contemplated by the March 2002 Stipulation and Order and deemed to be in existence under the April 2003 Order] shall be treated as an assumed lease pursuant to section 365 of the Bankruptcy Code, and the applicable Debtor(s)[9] party to such Master Lease shall perform the Master Lease until the Effective Date of the Plan, after which the Master Lease shall be performed by the applicable Reorganized Debtor(s) unless and until an order is entered by this Court or another court of competent jurisdiction permitting rejection of the THCI Leases . . . .

(Ex. 10 (Confirmation Order) ¶ 49(b)). *See Phoenix Am. Life Ins. Co. v. Devan,* 308 B.R. 237, 242 (D. Md. 2004) ("There is no reason to disturb that interpretation. A bankruptcy court is deemed to be in the best position to interpret its own orders, and thus a court's interpretation of its own order must be given substantial deference.") (citing *Colonial Auto Ctr. v. Tomlin (In re Tomlin),* 105 F.3d 933, 941 (4th Cir. 1997)), *aff'd sub nom. In re Merry-Go-Round Enters.,* 400 F.3d 219 (4th Cir. 2005); Ex. 6 (March 2002 Stipulation and Order) ¶ 7 ("The Court shall retain sole jurisdiction to interpret, enforce and resolve any disputes regarding the terms of this Stipulation.").

Accordingly, under the terms of the March 2002 Stipulation and Order, April 2003 Order and the Confirmation Order, the Debtors were deemed to have assumed the Nine Leases and were required to comply with, and are bound by, all of the terms of the Nine Leases and the Lease Modification Agreement to the extent not inconsistent with

---

[9] The Confirmation Order also ordered that LTC succeed to IHS's obligations under the Guaranties, as carried forward by the March 2002 and April 2003 Orders. (Ex. 10 (Confirmation Order ¶ 49(b) ("IHS will contribute and assign to the LTC Subsidiary all of its [pertinent] assets ... *and postpetition liabilities.*") (emphasis added)).

the March 2002 Stipulation and Order,[10] "as if the bankruptcy had never intervened." *See Yates Dev., Inc. v. Old Kings Interchange, Inc. (In re Yates Dev., Inc.)*, 241 B.R. 247, 253 (Bankr. M.D. Fla. 1999), *aff'd*, 256 F.3d 1285 (11th Cir. 2001); *see Interface Group-Nevada, Inc. v. TWA, Inc. (In re TWA, Inc.)*, 145 F.3d 124, 136 (3d Cir. 1998) ("If the lease is assumed . . . the debtor is entitled to receive the benefits under the lease but, at the same time, is responsible for performing its obligations thereunder.").

It is inescapable, then, that the Master Lease encompasses the Nine Leases, which were deemed assumed and modified by the March 2002 Stipulation and Order. The Master Lease also includes the guaranty obligations, because the guaranty terms are integral to the Master Lease and the Nine Leases, since these obligations are "not inconsistent" with the specified provisions of the 2002 Stipulation and Order, and the Guaranties, including the Missouri Guaranty, by their terms apply to "*all amendments, extensions and renewals* of the Lease." (Ex. 1 (Missouri Guaranty) ¶ 4 (emphasis added); Ex. 3 (Lease Modification Agreement") ¶ 4 (providing that all of IHS's "*obligations under the Lease Guarantees shall remain in full force and effect and shall hereafter apply to the Leases* as amended by this Agreement) (emphasis added); Ex. 7 (April 2003 Order) ¶ 2 ("*all* terms of the existing Leases" are incorporated and restated in the Master Lease, which was "deemed to exist") (emphasis added); Ex. 6 (March 2002 Stipulation and Order) ¶¶ 3(a), (b), (c), (d), (e) & (f)).

If IHS had not intended to continue its guaranty obligations, it would not have been a party to the March 2002 Stipulation and Order, and if the March 2002 Stipulation

---

[10] Plaintiffs could only "reject" the Nine Leases in compliance with Chapter 11 and pursuant to a ruling of the Delaware Bankruptcy Court or another court of competent jurisdiction permitting such rejection. It is undisputed that Plaintiffs have not obtained an order of any Court permitting them to reject the Nine Leases. To the contrary, they moved to assume six leases and reject four leases and then entered into the binding March 2002 Stipulation and Order by which they agreed to assume Nine Lease and reject one.

and Order was not intended to encompass the Guaranties, it would have stated as an additional term that all references to the Guaranties and the Guarantor would be removed. If the April 2003 Order had intended to remove the Guaranties from the Master Lease, it could have said that all terms of the existing Leases are incorporated *except* those relating to the Guaranties. No such language exists. In sum, the interpretation of Plaintiffs contradicts the plain language of the March 2002 Stipulation and Order and the April 2003 Order.

The *law of the case* that the Debtors are deemed to have assumed the Nine Leases binds Plaintiffs. *See, e.g., In re The IT Group, Inc.*, 322 B.R. 729, 735 (Bankr. D. Del. 2005) ("Similarly the doctrine of law of the case bars MATIS from claiming its contracts were assumed. The law of the case doctrine provides that 'once an issue has been decided, parties may not relitigate that issue in the same case.' Because the Sale Order and APA provided that the MATIS contracts were not assumed and assigned, the law of the case doctrine prevents MATIS from relitigating the assumption issue.") (quoting *Ogbudimkpa v. Ashcroft,* 342 F.3d 207, 210 n.7 (3d Cir. 2003)).

By effectively assuming the Leases and corresponding benefits flowing from this assumption, the Guaranties remained in place as well; indeed, the Debtors could not assume the Leases and without the Guaranties being in effect—this would have been a breach of the Leases, and such selective assumption is impermissible under Section 365 of the Bankruptcy Code. *See In re Comdisco, Inc.,* 270 B.R. 909, 911 (Bankr. N.D. Ill. 2001) ("A trustee or debtor in possession may not reject (*i.e.*, breach) one obligation under a contract and still enjoy the benefits of that same contract. That rule is not in the

bankruptcy code; it simply follows from the principle that a breach by one party to a contract generally excuses performance by the other.").

The rule that one may not reject an obligation under a contract and still enjoy the benefits of that contract applies with force here, given that the Missouri Lease contained numerous cross-default and guaranty provisions, and the Lease Modification Agreement provided that breaches of any Lease constituted an Event of Default under all of the Leases. *See Comdisco, Inc.,* 270 B.R. at 911. (Ex. 2 (Missouri Lease) ¶ 16.1(a); Ex. 3 (Lease Modification Agreement) ¶¶ 1(b), 1(c) & 7).

Under the same principle, a trustee or debtor in possession may not reject, and thereby breach, one contract and still enjoy the benefits of a related contract if that breach is also a breach of the related contract. *Pieco , Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 844, 849 (S.D.N.Y. 1994) ("[T]he Court notes that it is elemental that if the various instruments at issue are deemed a single contract, then Atlantic may not assume only the benefits (*i.e.*, payment) while rejecting the obligations of the bargain."). (Ex. 2 (Missouri Lease) ¶ 16.1) ("Any of the following events shall be an 'Event of Default' hereunder…(j) Guarantor shall fail to make any payment when due under the Guaranty or if any other default shall occur under the Guaranty which is not cured within thirty (30) days after notice."); *see also infra* Point II(B)(1).

Even if the April 2003 Order did create a "new lease," which the record shows was not the case, the Guaranties would still exist. The "new lease" would contain the specified terms from the March 2002 Stipulation and Order, and all other provisions of the Nine Leases including the Lease Modification Agreement which were "not inconsistent" with the March 2002 Stipulation and Order. The provisions of the Nine

Leases, including the Lease Modification Agreement terms reaffirming IHS' obligations as the Guarantor, would thus become part of this "new lease" to which IHS (in addition to the Nine Subsidiaries) would be parties.

In sum, Plaintiffs are bound by the Nine Leases, Guaranties and the Lease Modification Agreement pursuant to the March 2002 Stipulation and Order and April 2003 Order. LTC's argument that the Master Lease was a new agreement, which did not contain the Guaranties, is not supported by any facts and should fail as a matter of law.

**B.**      <u>**The Guaranties Are an Integral Part of the Leases**</u>

Plaintiffs' alternative argument that the Nine Guaranties were all "prepetition" obligations should be rejected because it lacks any factual or legal support, and raises genuine issues of material fact, which defeats Plaintiffs' Motion.

     1.      The Guaranties Form an Entire Agreement
                     <u>with the Leases Assumed by Plaintiffs</u>

The Guaranties, including the Missouri Guaranty, are indivisible from the Nine Leases as modified and restated by the Lease Modification Agreement, March 2002 Stipulation and Order, and April 2003 Order. It can be hardly disputed, and Plaintiffs fail to, that the Nine Leases, the Lease Modification Agreement and the Guaranties were executed and intended by the parties to form a single integrated agreement. Specifically, the Missouri Guaranty and the Missouri Lease were executed contemporaneously and between the same parties; both documents were replete with cross-references to each other, and the Guaranty expressly stated that "Lessor is willing to enter into the Lease . . . *only if it receives a guaranty of Guarantor* covering the Obligations of Lessee . . . to Lessor under the Lease." (Ex. 1 (Missouri Guaranty) at 1) (emphasis added); *Sanfilippo v. Oehler*, 869 S.W.2d 159, 161 (Mo. Ct. App. 1993) (a contract is "entire if a party's

-17-

duty to perform each of his promises is dependent upon the other party's performance of each of his."); *see Grease Monkey Int'l, Inc. v. Godat*, 916 S.W.2d 257, 261 (Mo. Ct. App. 1995); *Shell v. Shell*, 658 S.W.2d 439, 444 (Mo. Ct. App. 1982) (the test "as to what constitutes an entire [agreement] . . . is to inquire whether the parties assented to all the promises as a single whole so there was no agreement should any promise or set of promises be stricken."); *Bethea v. Investors Loan Corp.*, 197 A.2d 448, 450 (D.C. 1964); *Clayton v. Howard Johnson Franchise Sys.,* 954 F.2d 645, 649-50 (11th Cir. 1992); *McKnight v. Midwest Eye Inst. of Kan. City*, 799 S.W.2d 909, 918 (Mo. Ct. App. 1990).

The intent of the parties in executing the Nine Leases and the Guaranties, as modified by the Lease Modification Agreement, was to form a single integrated agreement. Plaintiffs' Motion fails at the outset by trying to single out the Missouri Guaranty and the Missouri Lease, when in fact the Nine Leases are, by virtue of the Lease Modification Agreement, one integrated agreement, and by virtue of the March 2002 Stipulation and Order, and the April 2003 Order, a Master Lease. The scope of the obligations guaranteed by IHS under the Missouri Guaranty covers each and every aspect of the Missouri Lease: "Guarantor hereby guarantees, absolutely and unconditionally, to Lessor the full, faithful and punctual performance, fulfillment, observance and payment of all of the obligations and liabilities of Lessee under the Lease." (Ex. 1 (Missouri Guaranty) ¶ 1). *See McKnight*, 799 S.W.2d at 918 ("They were part of the same exchange . . . .").

Indeed, the Missouri Guaranty obligations are inseparable from the Missouri Lease and the 1993 Lease Modification Agreement, which terms were assumed and restated (as amended by the March 2002 Stipulation and Order) pursuant to the April

-18-

2003 Order. (Ex. 3 (Lease Modification Agreement) ¶ 4) ("Integrated acknowledges and agrees that all of its obligations under the Lease Guarantees shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement."); *Fischer v. Nat'l Indus. Servs.*, 735 S.W.2d 114, 116 (Mo. Ct. App. 1987) ("Whether a contract is entire or divisible is primarily a question of intention which is to be determined from the language the parties have used and the subject matter of the agreement.").

Under similar circumstances, courts routinely find that similar agreements constitute an "entire" controlling agreement. *See Clayton v. Howard Johnson Franchise Sys.*, 954 F.2d at 650; *In re Atlantic Computer Sys.*, 173 B.R. at 850-55; *In re Café Partners/Washington 1983*, 90 B.R. 1, 7 (Bankr. D.D.C. 1988); *In re Harrison*, 117 B.R. 570, 573 (Bankr. C.D. Cal. 1990); *In re Beare Co.*, 177 B.R. 879, 882 (Bankr. W.D. Tenn. 1994); *In re Mirant Corp.*, 318 B.R. 100, 106-07 (N.D. Tex. 2004).

     2.     The Guaranty Terms Are Incorporated in the
                Nine Leases and the March 2002 Stipulation, and
                <u>Were Deemed Assumed and Restated</u>

The Nine Leases, which were incorporated into the March 2002 Stipulation and Order, are replete with references to the Guarantor and the terms of the Guaranties, and could only be assumed subject to the Guaranties. (Ex. 2 (Missouri Lease) ¶¶ 7.2.5, 16.1, 22.1, 23.2). Plaintiffs ask this Court to disregard all of IHS's guaranty obligations, despite the fact that IHS signed the March 2002 Stipulation and Order, and would only do so to confirm that it would continue to guaranty the Nine Subsidiaries' obligations under the Nine Leases. (Ex. 9 (Schedule 3.8(b)) (setting forth a complete list of all leases and guarantees under which IHS was liable as a Guarantor, and specifically listing the Lease Guaranties, including the Missouri Guaranty at issue on this Motion)).

Plaintiffs must be bound by the March 2002 Stipulation and Order, which they executed and which is the law of this case. THCI would be enormously prejudiced if Plaintiffs were permitted to reopen the issues concerning assumption and rejection of the Nine Leases now, four years after Plaintiffs moved the Delaware Bankruptcy Court to assume six leases and reject four leases, and agreed on the record to assume the Nine Leases (and reject one lease), and after THCI withdrew its substantial defenses and entered into the March 2002 Stipulation and Order.

## C.    Plaintiffs' Motion Lacks Support

Plaintiffs' Motion is not only completely bereft of any legal and factual support, but the legal authority cited by Plaintiffs actually supports THCI. Not only do Plaintiffs fail to cite to a single factually similar case, but also four of the five cases cited by Plaintiffs *upheld* the guaranty at issue.[11] The only case arguably in favor of the guarantor, *Jamieson-Chippewa Inv. Co. v. McClintock*, 996 S.W.2d 84 (Mo. Ct. App. 1999), is entirely distinguishable from the present case. The lease at issue in *McClintock* lacked *any* terms of guaranty, and there was no separate guaranty document. Instead, the officers of the tenant signed the original lease on a separate line labeled "guarantors." 996 S.W.2d at 86. The court held that, because neither the guaranty nor the lease indicated whether the guaranty was to apply in the case of a renewal, the guaranty encompassed only the original lease term. *Id.* at 89. In fact, under *McClintock*, the Master Lease, which incorporated the Lease Modification Agreement, is deemed to contain express agreement by IHS "that all of its obligations under the Lease Guaranties

---

[11] Plaintiffs motion is premised entirely upon Missouri law, but Plaintiffs' reliance is misplaced, as the Missouri Lease and the Missouri Guaranty were subject to the Lease Modification Agreement, 2002 Stipulation and Order and April 2003 Order, all of which apply to properties in additional states including Alabama, Michigan, New Jersey, Ohio and Pennsylvania.

shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement," and would constitute a valid and binding guaranty *irrespective* of the Missouri Guaranty itself. *Id.* at 89. (Ex. 3 (Lease Modification Agreement) ¶ 4).

The Missouri Guaranty at issue here is exactly the *opposite* with respect to indications of renewal than the lease at issue in *McClintock*. Here, Section 4 of the Missouri Guaranty unequivocally states that it applies "to any and all amendments, extensions and renewals of the Lease, any and all assignments, subleases and other actions that may be permitted by Lessee or Lessor, any and all other amendments, extensions and renewals." The Missouri Lease is replete with references to the Guarantor's obligations. (Ex. 2 (Missouri Lease) ¶¶ 7.2.5, 16.1, 22.1 & 23.2). Finally, IHS – the Guarantor – is a party to the March 2002 Stipulation and Order, thereby precluding the arguments raised in Plaintiffs' Motion. *In re The IT Group, Inc.*, 322 B.R. at 735.

This case is factually analogous to *Grand Investment Corp. v. Connaughton, Boyd & Kenter, P.C.*, 119 S.W.3d 101 (Mo. Ct. App. 2003), in which the Missouri Court of Appeals held that the guaranty agreements applied. Here, the Nine Leases, including the Missouri Lease, were assumed by the Debtors before the Delaware Bankruptcy Court and restated in the Master Lease. The Nine Leases and all of their terms and conditions, including the guaranty obligations, therefore remain in effect.

## CONCLUSION

For the foregoing reasons, THCI respectfully requests that the Court deny

Plaintiffs' Motion, and grant THCI's Cross-Motion in its entirety.

Dated:   June 14, 2005
          Wilmington, Delaware

**GREENBERG TRAURIG LLP**

By:_____

    Scott D. Cousins (No. 3079)
    Victoria W. Counihan (No. 3488)
    Dennis A. Meloro (No. 4435)
    The Brandywine Building
    1000 West Street, Suite 1540
    Wilmington, Delaware  19801
    Tel:  (302) 661-7000
    Fax  (302) 661-7360

        -and-

**ARENT FOX PLLC**

    Robert E. Grossman
    Michael S. Cryan
    Beth Kibel
    Igor M. Tsibelman
    1675 Broadway
    New York, New York  10019
    Tel:  (212) 484-3900
    Fax:  (212) 484-3990

*Attorneys for Defendant THCI Company LLC*

-22-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., *et al.*, | ) ) ) |
| Plaintiffs-Counterclaim Defendants, | ) ) ) |
| v. | ) ) Case No. 04-910 |
| THCI COMPANY LLC, | ) ) ) |
| Defendant-Counterclaimant. | ) ) ) |

### CERTIFICATE OF SERVICE

I, Dennis A. Meloro, being duly sworn according to law, deposes and says that I am employed by Greenberg Traurig, LLP, which is counsel for the Defendant and that on the 14th of June 2005, I caused to be served copies of the Cross-Motion by Defendant THCI Company LLC For Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 upon the parties listed below in the manner indicated:

VIA HAND DELIVERY
Christopher Winter, Esq.
Michael Lastowski, Esq.
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington DE 19801

VIA FACSIMILE & FIRST CLASS MAIL
Robert Freilich, Esq.
Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Los Angeles, California 90071-2228
Fax: 213-627-0705

Dated: June 14, 2005

Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
(302) 661-7000
(302) 661-7360 (facsimile)