# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRATED HEALTH SERVICES )
OF CLIFF MANOR, INC., a Delaware corporation, )
INTEGRATED HEALTH SERVICES AT )
RIVERBEND, INC., a Delaware Corporation, )
INTEGRATED HEALTH SERVICES AT )
SOMERSET VALLEY, INC., A Delaware )
corporation, ALPINE MANOR, INC., a )
Pennsylvania corporation, INTEGRATED )
HEALTH GROUP, INC., a Pennsylvania )
corporation, SPRING CREEK OF IHS, INC., a )
Pennsylvania corporation, FIRELANDS OF IHS, )
INC., a Pennsylvania corporation, ELM CREEK )
OF IHS, INC., a Pennsylvania corporation, IHS )
LONG TERM CARE SERVICES, INC., a )
Delaware corporation, )
                                            )
                    Plaintiffs, )
                                            )
        v. )
                                            )
THCI COMPANY LLC, )
                                            )
                    Defendant. )

Civil Action No. 04-910

## REPLY DECLARATION IN SUPPORT
## OF PARTIAL SUMMARY JUDGMENT MOTION

**AMOS ALTER** declares:

1.       I am Counsel to Troutman Sanders LLP, New York co-counsel to plaintiffs herein. I was formerly Counsel to Jenkens & Gilchrist Parker Chapin LLP, attorneys for Integrated Health Services, Inc. "(IHS"), and its direct and indirect subsidiaries who were debtors and debtors-in-possession in procedurally consolidated bankruptcy proceedings in the Bankruptcy Court in this District. In that capacity, I was personally involved in some of the

transactions referred to here, in particular the stipulation of March 2002 and the motion practice leading up to it.[1]

       2.      I make this Declaration (i) in reply to the papers submitted by defendant, THCI Company, LLC ("THCI"), in opposition to plaintiffs' motion for partial summary judgment, (ii) in further support of that motion by plaintiffs; and (iii) in opposition to THCI's papers insofar as they constitute a crossmotion for summary judgment.

       3.      It is important to review certain undisputable facts and principles here, because of the attempt of THCI to confuse them. (a) It is irrelevant whether, as THCI contends, the Missouri Guaranty covered the Master Lease (The contention is also wrong, see footnote).[2] The Missouri Guaranty was a prepetition obligation. Therefore, in the absence of proof of assumption of that prepetition obligation (within the meaning of 11 U.S.C. § 365, on assumption or rejection in bankruptcy of executory prepetition contracts), there can be no continuing obligation postconfirmation (That a guaranty is not even capable of being assumed as an executory contract is discussed in the accompanying Reply Memorandum of Law). (b) IHS never issued any postpetition guaranty of the Master Lease, or a new guaranty of the old Missouri Lease. THCI has never contended otherwise.

---

[1] So much for the snide reference in plaintiff's brief (p. 3) to my "attorney's affidavit". Significantly, plaintiff's brief makes assertions as to "facts" which are not found in the accompanying Declaration of Warren Cole. It is also worth noting that Cole is careful to state his affiliation with plaintiff *now*, but not at the relevant times, and leaves his supposed familiarity with the facts to the most general allegation possible (Par. 2). In any event, insofar as he purports to recite facts beyond the history of the matter already recited in my earlier Declaration, those "facts" are irrelevant, as is demonstrated below.

[2] That the Missouri Guaranty applied to modifications of the Missouri Lease does not mean it extended to a new lease entirely, even if the new lease covered, inter alia, the same property. The Master Lease imposed by the April 2003 Order is a new lease. That it incorporates, by a general reference, terms of old leases (some contradictory with other incorporated terms) does not make it a modification of the old leases which would be covered by the old guaranties.

4.    It follows from these two undisputed and undisputable facts that any postconfirmation obligation under the Missouri Guaranty would have to follow from one of two contentions, not even fully articulated by THCI: (i) That IHS somehow in the bankruptcy directly assumed the Missouri Guaranty; or (ii) that the Missouri Guaranty was incorporated into some other document that was assented to or assumed by IHS in the course of the bankruptcy, thus making it a postpetition obligation. As will be demonstrated, neither of these two latter contentions is sustainable on the law and the face of the documents. Plaintiffs are therefore entitled to judgment as a matter of law.

5.    It is not clear whether THCI is actually making the first contention, that IHS directly assumed the Missouri Guaranty (and the other guaranties), which were prepetition obligations. If that is the contention, however, it is without question wrong. Assumption of a prepetition obligation requires Bankruptcy Court approval under § 365 of the Bankruptcy Code. However, there is not a word in the April 2003 Order about the guaranties, or, for that matter, even about assumption of the prepetition leases (The latter point is discussed in more detail below). Instead, the April 2003 Order imposed a new Master Lease. There is also not a word in the Order of Confirmation about assumption of the guaranties. In short, there is no basis for any assertion (if indeed the assertion is being made) that there was a direct assumption of the prepetition guaranties.[3]

6.    The second contention, which is indeed articulated by THCI, is in essence a two-part argument: That [a] the Missouri Guaranty was incorporated into the Missouri Lease; and [b] the Missouri Lease was assumed. The invalidity of that first part as a matter of Missouri law was established in plaintiffs' moving papers, and is further addressed in

---

[3] Again, that a prepetition guaranty is not even capable of being assumed under § 365 is discussed in the accompanying Memorandum of Law.

the accompanying Reply Memorandum of Law. As <u>both</u> parts of the proposition are necessary to THCI's argument, it is unnecessary for plaintiffs to refute the second part once the invalidity of the first part has been established. Any issue THCI may seek to raise as to the second part of the proposition, the contention that the Missouri Lease was somehow assumed, thus still could not prevent summary judgment against THCI. However, because THCI devotes such a large part of its papers on this motion to the second part of this proposition, it will briefly here be demonstrated why the second part is incorrect as well.

7. <u>First</u>: The contention that the April 2003 Order provided for assumption of the Nine Leases, although it is repeated <u>ad nauseum</u> in THCI's papers (without, however, quoting from that Order), is simply false. <u>There is no provision in the April 2003 Order for assumption of the Nine Leases</u> – and assumption under 11 U.S.C. § 365(a) is "subject to the court's approval". Instead, what the Bankruptcy Court did was to impose a new Master Lease. That the new Master Lease incorporated by a general reference terms of the old leases (in many cases contradictory to other incorporated terms, since the different leases had different treatments of the same issues) is not the same thing as assuming the old leases.

8. <u>Second</u>: The contention that THCI never consented to releasing the guaranties is irrelevant. The question is not one of release, but of obligation. Under <u>no</u> theory, prior to the April 2003 Order, was there any postpetition obligation by IHS as a guarantor of the leases. It is therefore not enough for THCI simply to deny that it intended to release a (nonexistent) obligation. It instead must show, or at least here raise a triable issue, that such a postpetition obligation was somehow <u>created</u>. This it has not done and cannot do.

9. <u>Third</u>: The assertion in THCI's brief (pp. 11-12) -- but not in its Declaration -- that IHS was a party to the March 2002 Stipulation and Order "to reconfirm its

obligations under the Guaranties" is both irrelevant and erroneous. (i) The assertion is irrelevant because the issue is the effect of the April 2003 Order which created the Master Lease, not the earlier Order – and the later Order was <u>not</u> stipulated to by IHS. Indeed, IHS was even a party to the April 2003 Order only because THCI had made it a respondent on the motion which resulted in the Order. (ii) The assertion is erroneous because IHS, as the lead debtor in these consolidated cases, as a matter of style made virtually <u>all</u> motions in its own name as well as that of its subsidiaries, even if the parent was not in fact interested in the motion.[4] As a party to the motion leading to the March 2002 Stipulation, IHS was a party to the Stipulation as well. That situation is no different from the instant motion being made in the name of all "plaintiffs", even though only LTC and possibly the plaintiff leasing the Missouri property may technically be interested in this motion. No inference may be drawn from IHS being a party to the stipulation which preceded by over a year the April 2003 Order here in issue.

      10.    <u>Fourth</u>: If inferences are to be drawn from the documents themselves, the conclusion is inescapable that the guaranties were <u>not</u> to be continued. (i) The March 2002 Stipulation made no mention of them, which it clearly should have if that were the intent. After all, the old guaranties were <u>prepetition</u> obligations, and if the intent were to continue them as <u>postpetition</u> obligations, that should have been expressed. (ii) THCI's motion which led to the April 2003 Order made no mention of the guaranties (That motion, exhibits thereto omitted, has been annexed to the moving papers herein as Exhibit "H"). (iii) The March 2002 Order contained the following provision (Par. 3):

---

[4] The qualifier "virtually" is used out of an abundance of caution. I believe it likely that <u>all</u> of the hundreds of motions made by Debtors in these procedurally consolidated cases, many of them drafted by me, were made in that form.

> "The parties agree that because of the related nature of the leases for the 9 Leased Properties, the parties intend to integrate the Leased Properties into a single portfolio of properties. The parties also agree that the Leased Properties must be tied together economically so that the revenue from the entire portfolio of Leased Properties will be, in the aggregate, profitable, and will be used to run each of the Leased Properties with adequate funding and staffing."

The integration of the properties into one lease would have been of no use to IHS, which, even in the absence of integration, always had the option of supporting one property with the revenues of another. The clause would also have been of no use to THCI, _if it were to have the guaranty of IHS as to these leases_. That is because IHS, with the assets of not only these other eight leases, but of the hundreds of others it directly or indirectly owned, would already be standing behind the obligations of any one lease. The clause, and the concept of integration into one Master Lease, had purpose only if there were to be _no_ postpetition guaranty.

11.    _Fifth_: Finally, the language of the Confirmation Order, that the Master Lease is to be "treated as an assumed lease", does nothing for THCI here. (i) The Confirmation Order said nothing whatsoever about our issue, namely the status of the old, prepetition leases. (ii) By stating that the Master Lease is to be "treated as" an assumed lease, the Order was recognizing that the Master Lease was not _in fact_ an assumed lease. That is of course correct, because the Master Lease was a new postpetition lease. Only a _prepetition_ unexpired lease is capable of being assumed (11 U.S.C. § 365[a]). (iii) What the Confirmation Order meant by saying that the Master Lease is to be "treated as" an assumed lease is made clear by the continuation of the sentence wherein the "treated as" phrase occurs, namely that, unless and until there is a reversal on appeal of the April 2003 Order creating the Master Lease, "the applicable Debtor(s) party to such Master Lease shall perform the Master Lease until the Effective Date of the Plan [of Reorganization], after which the Master Lease shall be performed

by the applicable Reorganized Debtor(s)". Nothing in the Confirmation Order supports the view that the old, prepetition leases were ever assumed.

12.    In summation, the following facts are undisputable, and in large part undisputed: (i) The Master Lease was never directly guaranteed by the postpetition IHS debtor-in-possession. (ii) The April 2003 Order did not provide for an assumption of the prepetition Missouri Lease, to say nothing of the prepetition Missouri Guaranty. The Order instead imposed a new Master Lease. (iii) There is no basis in any other document for asserting that the Missouri Lease, to say nothing of the Missouri Guaranty, was ever assumed under Bankruptcy Code § 365. (iv) As is demonstrated in the accompanying Reply Memorandum of Law, a guaranty, not being an executory contract, is not even capable of being assumed under Bankruptcy Code § 365. (v) As is demonstrated in plaintiffs' Memoranda of Law, under Missouri law the Missouri Guaranty was not incorporated into the Missouri Lease in any event.

13.    Plaintiffs' motion should therefore be in all respects granted, and the crossmotion denied.

14.    I declare, under penalty of perjury, that the foregoing is true and correct. Executed on June 21, 2005.

_____
Amos Alter