## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRATED HEALTH SERVICES OF
CLIFF MANOR, INC., *et al.*,

      Plaintiffs-Counterclaim Defendants,

v.

THCI COMPANY LLC,

      Defendant-Counterclaimant.

Case No. 04-910

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
## CROSS-MOTION BY THCI FOR PARTIAL SUMMARY JUDGMENT

**GREENBERG TRAURIG LLP**
Scott D. Cousins (No. 3079)
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
Tel:  (302) 661-7000

-and-

**ARENT FOX PLLC**
Robert E. Grossman
Michael S. Cryan
Igor M. Tsibelman
1675 Broadway
New York, New York 10019
Tel:  (212) 484-3900

***Attorneys for Defendant THCI Company
LLC***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

    A.    PLAINTIFFS ASSUMED THE LEASES AND THE
            GUARANTIES ......................................................................................... 3

            1.    The Leases Were Assumed Pursuant to Section 365 of the
                   Bankruptcy Code ............................................................................ 3

            2.    The Leases Could Only Have Been Assumed *In Toto*
                   Subject to the Guaranties ................................................................ 6

            3.    Even If There Is a New Master Lease As Plaintiffs
                   Maintain, The New Master Lease Incorporates the
                   Guaranties ....................................................................................... 9

    B.    THE MISSOURI LEASE INCORPORATES THE MISSOURI
            GUARANTY UNDER MISSOURI LAW ............................................. 11

            1.    The Guaranties Are Indivisible From the Leases ......................... 11

            2.    Plaintiffs' Authority Is Factually Distinguishable ...................... 14

    C.    PLAINTIFFS' ASSERTION THAT THE GUARANTIES WERE
            NOT "ASSUMED" AS EXECUTORY CONTRACTS
            MISREADS THE LAW AND THE FACTS........................................... 15

CONCLUSION............................................................................................................ 19

# TABLE OF AUTHORITIES

## CASES

<u>Case</u>                                                                                   <u>Page</u>

<u>Atchison, Topeka & Santa Fe Ry. Co. v. Hurley</u>,
   153 F. 503 (8th Cir. 1907), *aff'd*, 213 U.S. 126 (1909) ................................8

<u>Bethea v. Investors Loan Corp.</u>,
   197 A.2d 448 (D.C. 1964) .......................................................................13

<u>Clayton v. Howard Johnson Franchise Sys.</u>,
   954 F.2d 645 (11th Cir. 1992) .................................................................13

<u>Cottman Transmissions, Inc. v. Holland Enters. (In re Holland Enters.)</u>,
   25 B.R. 301 (E.D.N.C. 1982)..............................................................7, 8, 9

<u>Dunn Indus. Group, Inc. v. City of Sugar Creek</u>,
   112 S.W.3d 421 (Mo. 2003) ...................................................................15

<u>Fischer v. Nat'l Indus. Servs.</u>,
   735 S.W.2d 114 (Mo. Ct. App. 1987).......................................................13

<u>Gateway Frontier Props., Inc. v. Selner, Glaser, Komen, Berger and</u>
<u>Galganski, P.C.</u>,
   974 S.W.2d 566 (Mo. Ct. App. 1998).....................................11, 12, 14, 15

<u>Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C.</u>,
   119 S.W.3d 101 (Mo. Ct. App. 2003).......................................................15

<u>Grease Monkey Int'l, Inc. v. Godat</u>,
   916 S.W.2d 257 (Mo. Ct. App. 1995).......................................................13

<u>In re Beare Co.</u>,
   177 B.R. 879 (Bankr. W.D. Tenn. 1994)..............................................13, 14

<u>In re Café Partners/Washington 1983</u>,
   90 B.R. 1 (Bankr. D.D.C. 1988) ..............................................................13

<u>In re Comdisco, Inc.</u>,
   270 B.R. 909 (Bankr. N.D. Ill. 2001) .........................................................8

<u>In re Fifth Taste Concepts Las Olas, LLC</u>,
   325 B.R. 42 (Bankr. S.D. Fla. 2005).....................................................6, 18

<u>In re Grayson-Robinson Stores</u>,
   321 F.2d 500 (2d Cir. 1963)...............................................................17, 18

In re Harrison,
    117 B.R. 570 (Bankr. C.D. Cal. 1990)..........................................................................13

In re Karfakis,
    162 B.R. 719 (Bankr. E.D. Pa. 1993) .........................................................................13

In re Mimi's of Atlanta, Inc.,
    5 B.R. 623 (Bankr. N.D. Ga. 1980) ..............................................................................8

In re Mirant Corp.,
    318 B.R. 100 (N.D. Tex. 2004)...................................................................................14

In re Rovine Corp.,
    6 B.R. 661 (W.D. Tenn. 1980) ......................................................................................9

In re S.E. Nichols Inc.,
    120 B.R. 745 (Bankr. S.D.N.Y. 1990).........................................................................8

In re Storage Tech. Corp.,
    53 B.R. 471 (Bankr. D. Colo. 1985)..............................................................................9

In re Unishops, Inc.,
    422 F. Supp. 75 (S.D.N.Y. 1975), *aff'd*, 543 F.2d 1017 (2d Cir. 1976) .....................18

Jamieson-Chippewa Investment Co. v. McClintock,
    996 S.W.2d 84 (Mo. Ct. App. 1999)......................................................9, 10, 11, 14, 15

Leslie Fay Cos. v. Corporate Prop. Assocs. 3 (In re Leslie Fay Cos.),
    166 B.R. 802 (Bankr. S.D.N.Y. 1994).......................................................................8, 9

McKnight v. Midwest Eye Inst. of Kan. City,
    799 S.W.2d 909 (Mo. Ct. App. 1990).........................................................................13

NLRB v. Bildisco & Bildisco,
    465 U.S. 513 (1984) ......................................................................................................8

Pieco, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.),
    173 B.R. 844 (S.D.N.Y. 1994)..................................................................................8, 13

Richmond Leasing Co. v. Capital Bank,
    762 F.2d 1303 (5th Cir. 1985) ......................................................................................8

Sanfillippo v. Oehler,
    869 S.W.2d 159 (Mo. Ct. App. 1993).........................................................................12

Shell v. Shell,
    658 S.W.2d 439 (Mo. Ct. App. 1982).........................................................................13

Standard Meat Co. v. Taco Kid of Springfield, Inc.,
    554 S.W.2d 592 (Mo. Ct. App. 1977)..........................................................................15

**STATUTES**

11 U.S.C. § 365 (b)(1) ............................................................................... *passim*

**ARTICLES**

Vern Countryman, <u>Executory Contracts in Bankruptcy,</u> 57 Minn. L. Rev. 439, (1973) ..................................................................................................17, 18

## PRELIMINARY STATEMENT

Defendant-Counterclaimant THCI Company LLC ("THCI") respectfully submits this reply memorandum of law in further support of its Cross-Motion for Partial Summary Judgment ("Cross-Motion").

The reply to Cross-Motion ("Reply") of Plaintiffs-Counterclaim-Defendants IHS Long Term Care, Inc. ("LTC") and its nine subsidiaries[1] (the "Nine Subsidiaries" and, collectively with LTC, the "Plaintiffs") and Amos Alter's Declaration in support thereto ("Alter Reply Declaration") underscore Plaintiffs' confusion. The Reply and the Alter Reply Declaration are equally unsupported by any evidence or legal authority. The Reply misapplies Missouri law to the facts at hand, and the Alter Reply Declaration misstates the facts[2] in an effort to incorrectly apply Title 11 of the U.S. Code (the "Bankruptcy Code"). In both cases, Plaintiffs' argument continues to suffer from the same basic problem as Plaintiffs' Motion in Support for Partial Summary Judgment ("Motion")—it disregards the fundamental reality and the law of the case that pursuant to the orders of the Bankruptcy Court for the District of Delaware ("Bankruptcy Court") Plaintiffs assumed nine leases, and Plaintiffs could only assume the Leases *in toto*, including all

---

[1] Integrated Health Services of Cliff Manor, Inc.; Integrated Health Services at Riverbend, Inc.; Integrated Health Services at Somerset Valley, Inc.; Alpine Manor, Inc.; Briarcliff Nursing Home, Inc.; Integrated Health Group, Inc.; Spring Creek of IHS, Inc.; Firelands of IHS, Inc.; and Elm Creek of IHS, Inc.

[2] Labeling the Alter Reply Declaration as a declaration of facts is at the very least a misnomer. To the extent Mr. Alter attempts to offer a testimony based on his personal knowledge, this testimony constitutes a waiver of attorney-client privilege and work-product, rendering Mr. Alter a fact witness and THCI is entitled to further discovery to ascertain the veracity of Mr. Alter's account of relevant facts. While the Alter Reply Declaration contains numerous references to what Mr. Alter calls "undisputed facts," he is understandably unable to cite any document that supports his version of "undisputed facts." Indeed, Mr. Alter's version of what facts are "undisputed" is disputed by THCI—for example, Mr. Alter states that the April 2003 Order did not provide for assumption of the Leases, while THCI's position is that it effectuated the assumption. Similarly, Mr. Alter argues that the Missouri Lease was never assumed pursuant to Section 365 of the Bankruptcy Code, while THCI's position is exactly the opposite. At best, the Alter Reply Declaration is a supplemental brief in opposition to THCI's Cross-Motion for Summary Judgment, and should be stricken from the record because Plaintiffs are not entitled to submit two opposing memoranda of law.

benefits and liabilities under the Leases, such as the applicable guaranties.[3]  Plaintiffs'

argument also completely disregards the policy of Section 365, which is to preserve the

entirety of unexpired leases and put the parties back into the same position as if no

bankruptcy ever took place.  This policy prevents Plaintiffs from picking and choosing

which parts of the nine leases to assume—yet that is precisely what Plaintiffs are trying

to argue now.

Instead of dealing with this reality, Plaintiffs indulge in legal fantasy and argue

that the leases were not assumed, and instead the Bankruptcy Court created a new master

lease, which, according to Plaintiffs, did not include the guaranties.  That the Bankruptcy

Court has authority pursuant to Section 365 of the Bankruptcy Code *only* to approve

assumption or rejection of the leases, but not the authority *to create* a new master lease

escapes Plaintiffs.  Furthermore, if Plaintiffs' analysis is pursued to its logical conclusion,

then under the applicable Missouri law the new master lease still contains identical

guaranties binding upon Integrated Health Services, Inc.("IHS") and LTC as its

successor.

Plaintiffs' last set of arguments is even further removed from reality.  Plaintiffs

argue that the guaranties were not integrated into the leases.  However, the Missouri

authority on point, which Plaintiffs did not even cite, held on substantially similar facts

that the guaranty was, in fact, integrated into the lease.  Plaintiffs' final argument that the

guaranties were not executory contracts and could not, therefore, have been assumed, is a

red herring since Plaintiffs assumed the leases with the guaranties integrated therein.

---

[3] While Plaintiffs timely paid rent and performed most other obligations required under the Leases,
Plaintiffs are now in default under the Leases having failed to pay rent for June 2005, and having failed
to make other payments required under the Leases.

Having assumed the leases, Plaintiffs assumed them *in toto*, including the guaranties and other obligations under the leases.

### A.     PLAINTIFFS ASSUMED THE LEASES

### 1.     The Leases Were Assumed Pursuant to Section 365 of the Bankruptcy Code

The following key facts bear repeating as they completely defeat Plaintiffs' key contention that the applicable leases, which incorporated the guaranties, were not assumed.

In 1986-1991, ten subsidiaries ("Ten Subsidiaries") of IHS, including the Nine Subsidiaries at issue here, leased facilities[4] (each a "Lease" and collectively, the "Leases") from affiliates of Meditrust Corporation ("Meditrust"), THCI's predecessor, in the states of Ohio, Pennsylvania, New Jersey, Alabama, Michigan, and Missouri.[5]  Each Lease was executed contemporaneously with a guaranty (each a "Guaranty" and collectively, the "Guaranties"), which was issued by IHS as the parent company of the Ten Subsidiaries.  (Declaration of Warren D. Cole dated June 14, 2005 ("Cole Decl.") & Exhibit 1 attached thereto ("Ex. 1 (Missouri Guaranty)") ¶ 1).  No Guaranty would have been issued absent a Lease; and the Missouri Guaranty, like every other Guaranty, expressly acknowledges that "Lessor is willing to enter into the Lease . . . with Lessee *only if* it receives a guaranty of Guarantor covering the Obligations of Lessee (as hereinafter defined) to Lessor under the Lease." (Ex. 1 (Missouri Guaranty)) (emphasis added).  The Missouri Guaranty contains numerous cross-references to the Missouri Lease and has always been an integral part of the Missouri Lease; in fact, there would

---

[4]  The lease of a tenth facility, in Bellbrook, Ohio ("Carriage-By-The-Lake"), was later rejected by the Debtors pursuant to the March 2002 Stipulation and Order.

[5]  THCI and Meditrust Corporation are hereinafter referred to as "THCI" unless otherwise noted.

have been *no* Missouri Lease without the Missouri Guaranty, and *no* Missouri Guaranty without the Missouri Lease.

In 1993, IHS, the Ten Subsidiaries and Meditrust entered into a lease modification agreement ("Lease Modification Agreement"), which amended the Ten Leases by conforming a uniform expiration date of all Leases and by providing that the Leases could not be extended or modified selectively. The Lease Modification Agreement also *expressly* reaffirmed IHS' obligations under the Guaranties and created covenants with which the Guarantor had to comply. (Ex. 3 (Lease Modification Agreement) ¶4). The Lease Modification Agreement was executed by the Ten Subsidiaries and IHS, and combined separate independent Leases into a single integrated agreement, which also incorporated the Guaranties.

In February 2000, IHS and some of its subsidiaries, including the Nine Subsidiaries (IHS and the Nine Subsidiaries, collectively the "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code. Shortly after filing, the Debtors sought to preserve their ability to assume or reject the Leases pursuant to Section 365 of the Bankruptcy Code, and extended the time to assume or reject the Leases until June 1, 2001.[6] On or about November 21, 2000, the Debtors sent letters seeking to renew the Leases for an additional five-year period, since the Leases were set to expire by their own terms on May 31, 2001. On May 7, 2001,[7] the Debtors filed a motion with the Bankruptcy Court seeking to assume six Leases and reject four Leases ("Motion to Assume"). *See* Cole Decl. ¶ 17. THCI objected to the Motion to Assume, arguing that

---

[6] By Orders dated April 17, 2000, October 5, 2000 and Order and Stipulation dated March 22, 2001, the Bankruptcy Court extended the time within which the Debtors could assume or reject the leases, including the Leases, pursuant to Section 365 of the Bankruptcy Code to June 1, 2001.

[7] The Leases were set to expire, until renewed, on May 31, 2001. By the Extension Letters, the Debtors sought to renew the Leases.

the Debtors could not assume or reject the Leases *selectively* because the Leases as modified by the Lease Modification Agreement formed an integrated agreement, which could only be assumed or rejected altogether.

The Motion to Assume was resolved in its entirety in March 2002 by a stipulation and order entered by the Bankruptcy Court ("March 2002 Stipulation and Order"). *See* Cole Decl. ¶¶ 19-21. The March 2002 Stipulation and Order memorialized the parties' agreement to:

> *reject* the Carriage-By-The-Lake Facility, and, provided the leases are amended as hereinafter provided in paragraph 3 of this stipulation, shall *assume* the leases as amended and restated by the Master Lease (as hereinafter defined) for the remaining 9 Leased Properties that were the subject of the Motion.

(Ex. 6 (March 2002 Stipulation and Order) ¶ 1) (emphasis added).

No master lease was formally executed by April 2003, when the Debtors filed a motion seeking to reject the Leases. THCI filed a Cross-Motion to Compel Debtors' Entry into Master Lease Agreement in Compliance with [2002] Stipulation and Order ("Motion to Compel"). On April 22, 2003, the Bankruptcy Court granted THCI's Motion to Compel ("April 2003 Order" and collectively with the March 2002 Stipulation and Order, the "Assumption Orders"). (Ex. 7 (April 2003 Order) ¶ 2).

The April 2003 Order effectively finalized the assumption of the Leases pursuant to Section 365 of the Bankruptcy Code, by judicially determining the terms of the master lease. In sum, regardless of how many times Plaintiffs and Mr. Alter state in their Reply and Declaration, respectively, that the Debtors did not assume the Leases and instead entered into a new master lease, the above undisputed facts leave space for only one conclusion—the Debtors attempted to, and did, assume the Leases pursuant to Section 365 of the Bankruptcy Code. What Plaintiffs also fail to grasp is that pursuant to Section

365, the Bankruptcy Court could only approve the assumption or rejection of the Leases—and was without *any authority* to create an entirely *new* contractual relationship. It is axiomatic that:

> [t]he purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure of any defaults. The policy that favors preserving the entirety of an unexpired lease would put the parties to a lease back in the positions they would have been had no defaults occurred and no bankruptcy petition had been filed.

*In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) (emphasis in original).

Plaintiffs assumed the Leases, and the assumed Leases contained the terms of the Leases as modified by the Lease Modification Agreement and consistent with the terms of the Assumption Orders, which formed one single master lease. Indeed, IHS Liquidating LLC, an entity liquidating the assets of IHS and intimately familiar with the circumstances surrounding the assumption of the Leases, readily admits that the Leases were, in fact, assumed.[8]

### 2.    The Leases Could Only Have Been Assumed *In Toto* Subject to the Guaranties

Each of the Leases as modified by the Lease Modification Agreement contained numerous cross-default provisions to the Guaranties and was expressly made subject to the Guaranties remaining in place. The Guaranties were an integral part of each Lease from the beginning, and would not have been issued without the Leases; similarly, the original lessor would have entered into no Lease without a Guaranty in place. For this

---

[8] THCI draws the Court's attention to IHS Liquidating LLC's Fortieth Omnibus Objection filed with the Bankruptcy Court on June 27, 2005, where IHS Liquidating LLC took a position with respect to claims relating to the Leases (Claims No. 19 and 20) that "[t]he claim relates to contingent lease rejection damages in the event the leases were rejected during the case. Prior to consummation of the Debtor's Plan, the Court ordered that the Debtors had assumed the leases, and the Debtors continued to perform the leases through the Effective Date. Accordingly, the claims should be expunged." Exhibit A to IHS Liquidating LLC's Fortieth Omnibus Objection.

reason, the very absence of the Guaranties, or any event of default under the Guaranties is

an event of default under the Leases, because the Guaranties apply to any modification or

extension of the Leases.[9] It is a black letter law that pursuant to Section 365 of the

Bankruptcy Code, Plaintiffs could not assume the Leases if there was an uncured event of

default under the Lease, without curing the default and giving reasonable assurance of

future performance. *See* 11 U.S.C. § 365(b)(1).[10] Thus, Plaintiffs could only assume the

Leases in such a manner that would not cause a default under the Leases. *See* 11 U.S.C.

§ 365(b)(1).

Assumption of the Leases, which somehow did not include the Guaranties, would

have been an event of default under the Leases, and such assumption could not have been

either attempted or approved by the Bankruptcy Court as a matter of law. *Cottman*

*Transmissions, Inc. v. Holland Enters. (In re Holland Enters.*), 25 B.R. 301, 303

(E.D.N.C. 1982) ("In effect, debtor would be assuming the unexpired lease while

rejecting, as executory, one clause within that lease. In practical terms, debtor attempts to

---

[9] Ex. 3 (Lease Modification Agreement") ¶ 4 (providing that all of IHS' *"obligations under the Lease Guaranties shall remain in full force and effect and shall hereafter apply to the Leases* as amended by this Agreement.") (emphasis added); Ex. 2 (Missouri Lease) ¶16.1(j) ("Any of the following events shall be an 'Event of Default' hereunder…(j) Guarantor shall fail to make any payment when due under the Guaranty or if any other default shall occur under the Guaranty which is not cured within thirty (30) days after notice."); Ex. 7 (April 2003 Order) ¶ 2 (*"all* terms of the existing Leases to the extent not inconsistent with the March 2002 Stipulation" are incorporated and restated in the Master Lease) (emphasis added); Ex. 6 (March 2002 Stipulation and Order) ¶¶ 3(a), (b), (c), (d), (e) & (f)). Furthermore, it is undisputed that IHS' obligations under the Guaranties are "not inconsistent" with the March 2002 Stipulation and Order, and by their terms, the Guaranties apply to *"any and all amendments, extensions and renewals* of the Lease." (Ex. 1 (Missouri Guaranty) ¶ 4 (emphasis added).

[10] 11 U.S.C. § 365 (b)(1) provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—(A) cures, or provides adequate assurance that the trustee will promptly cure, such default; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

avoid the debit of the License Agreement . . . while it enjoys the credits thereof . . . This it cannot do. Debtor may not have its cake and eat it too . . . It is axiomatic that an assumed contract under section 365 is accompanied by all its provisions and conditions.") (citing *In re Mimi's of Atlanta, Inc.,* 5 B.R. 623, 629 (Bankr. N.D. Ga. 1980) and *Atchison, Topeka & Santa Fe Ry. Co. v. Hurley,* 153 F. 503 (8th Cir. 1907), *aff'd,* 213 U.S. 126 (1909)). *See* 11 U.S.C. § 365(b)(1); *In re Comdisco, Inc.,* 270 B.R. 909, 911 (Bankr. N.D. Ill. 2001).

Thus, by assuming the Leases, Plaintiffs assumed them *in toto*, and this assumption included all the burdens imposed by the Leases, such as the Guaranties and other obligations under the Leases, including the obligation to pay rent, to be licensed and to obtain acceptable insurance, to name just a few. *See Leslie Fay Cos. v. Corporate Prop. Assocs. 3 (In re Leslie Fay Cos.)*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994) ("If an executory contract is assumed, it is said to be assumed *cum onere,* with all of its benefits and burdens."); *see also NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531-32 (1984); *Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *Pieco, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.),* 173 B.R. 844, 849 (S.D.N.Y. 1994) (noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject); *In re Leslie Fay Cos.,* 166 B.R. at 808 ("An executory contract cannot be assumed in part and rejected in part."); *In re S.E. Nichols Inc.*, 120 B.R. 745, 747-48 (Bankr. S.D.N.Y. 1990) ("It is well-settled that a debtor cannot assume part of an

unexpired lease while rejecting another part; the debtor must assume the lease *in toto* with both the benefits and burdens intact."); *In re Storage Tech. Corp.,* 53 B.R. 471, 475-76 (Bankr. D. Colo. 1985) ("It is black letter law that the Bankruptcy Code requires assumption of an entire agreement. Additionally, a debtor cannot avoid the effect of this rule by construing various parts of a transaction as separate agreements when they are clearly interdependent.") (citing *In re Rovine Corp.,* 6 B.R. 661 (W.D. Tenn. 1980) and *In re Holland Enters.,* 25 B.R. 301 (E.D.N.C. 1982)).

### 3. Even If There Is a New Master Lease As Plaintiffs Maintain, The New Master Lease Incorporates the Guaranties

Even assuming (incorrectly) that instead of assuming the Leases, a new master lease ("New Master Lease") was somehow created, Plaintiffs would still be bound by the Guaranties. The New Master Lease effectively created a new guaranty in favor of THCI, because IHS executed the March 2002 Stipulation and Order and the Lease Modification Agreement (incorporated into the New Master Lease), in which IHS "acknowledges and agrees that all of its obligations under the Lease Guaranties shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement." *See Jamieson-Chippewa Investment Co. v. McClintock*, 996 S.W.2d 84, 89 (Mo. Ct. App. 1999). Again, the only reason for IHS to execute the March 2002 Stipulation and Order is the same reason why IHS executed the Lease Modification Agreement—because IHS is a Guarantor.[11]

The Missouri Court of Appeals' decision in *Jamieson-Chippewa Investment Co. v. McClintock*, 996 S.W.2d 84 (Mo. Ct. App. 1999) warrants the same conclusion. In

---

[11] Plaintiffs' argument that the fact that IHS executed the 2002 Stipulation and Order, and was also party to the 2003 April Order "as a matter of style" is nonsensical, and, most importantly, does not relieve IHS from its obligations under the 2002 Stipulation and Order, which IHS executed, and April 2003 Order to which IHS was a party.

*McClintock*, the officers of the tenant signed the original lease on behalf of the tenant and

separately as "guarantors." *McClintock*, 996 S.W.2d at 86. There were no other "words

of guarantee" in the lease. *Id.* at 86. After the lease was extended, the tenant defaulted

and the landlord sued the tenant and the guarantor for breach. *Id.* The trial court held

that, because neither the guaranty nor the lease indicated whether the guaranty was

applicable to the renewal, the guaranty encompassed only the original lease term. *Id.* at

89.

The Court of Appeals affirmed. *See McClintock*, 996 S.W.2d at 89 ("We hold as

a matter of law that the language of a lease guaranty, or else the underlying lease

agreement to which it is collateral, must expressly indicate the intention of the parties that

the guaranty continue in order to hold the guarantor liable."). Under *McClintock*, the

Lease Modification Agreement, which is undisputedly a part of the New Master Lease,

sufficiently creates a Guaranty, since it contains the words "guarantor," reaffirms IHS'

obligations under the Guaranties, and is signed by IHS. *Id.* at 89. Furthermore, IHS

executed the March 2002 Stipulation and Order and is bound by the April 2003 Order,

which incorporated into the Master Lease "all terms and conditions of the existing Leases

to the extent not inconsistent with the March 2002 Stipulation." (Ex. 7 (April 2003 Order)

¶ 2). Unlike the guaranty in *McClintock*, the Missouri Guaranty applies to all

amendments, modifications, extensions and renewals of the Missouri Lease. [12] (Ex. 1

(Missouri Guaranty) ¶¶ 4(a), 6).

Accordingly, under *McClintock*, the New Master Lease effectively created new

---

[12] Specifically, Mr. Alter argues in his Declaration that the New Master Lease was somehow imposed upon the parties, and the New Master Lease is not a modification of the Leases, to which the Guaranties, including the Missouri Guaranty, expressly applies. This argument ignores the fact that the Nine Subsidiaries continued to be in possession of the leased properties, timely paid rent, and Plaintiffs attempted to assume the Leases pursuant to Section 365 of the Bankruptcy Court, and not to create a new master lease.

Guaranties indistinguishable from the old Guaranties.

**B.    THE MISSOURI LEASE INCORPORATES THE MISSOURI GUARANTY UNDER MISSOURI LAW**

Plaintiffs' argument that the Missouri Guaranty had been either assumed or rejected separately, incorrectly presupposes that the Missouri Lease and the Missouri Guaranty can be unilaterally separated from the other Leases and the 1993 Lease Modification Agreement.  As usual, Plaintiffs cite no authority for this supposition—the Assumption Orders expressly deemed all Leases assumed pursuant to Section 365 of the Bankruptcy Code, forming a single master lease, and Plaintiffs could only assume the Leases *in toto*, including the Guaranties.

Moreover, Plaintiffs are similarly incorrect in substance, because pursuant to the Missouri Court of Appeals' decision in *Gateway Frontier Properties, Inc. v. Selner, Glaser, Komen, Berger and Galganski, P.C.,* 974 S.W.2d 566  (Mo. Ct. App. 1998), the Missouri Lease and Missouri Guaranty form a single integrated agreement.

Finally, again assuming (incorrectly) that the Missouri Lease and Missouri Guaranty can be separated from the Leases, and further assuming (incorrectly again) that Plaintiffs did not assume the Leases, but the New Master Lease was somehow created by the Assumption Orders, then under *Jamieson-Chippewa Investment Co. v. McClintock*, 996 S.W.2d 84 (Mo. Ct. App. 1999), the New Master Lease contains a new Missouri guaranty, which binds Plaintiffs to the same effect as the original Missouri Guaranty.

**1.    The Guaranties Are Indivisible From the Leases**

Under the applicable Missouri law, the Missouri Guaranty forms a single integrated agreement with the Missouri Lease.  *Gateway Frontier Prop., Inc. v. Selner, Glaser, Komen, Berger & Galganski, P.C.,* 974 S.W.2d 566, 567  (Mo. Ct. App. 1998).

*Gateway* is instructive because it squarely addresses the issue of whether the Missouri Guaranty forms a single integrated agreement with the Missouri Lease; unlike any authority cited by Plaintiffs, *Gateway* was also decided on substantially similar facts. In *Gateway*, contemporaneously with a lease, the tenant executed a guaranty in favor of the landlord. *Gateway,* 974 S.W.2d at 569. Subsequently, the landlord assigned the lease, but not the guaranty, to Gateway. *Id.* Following the tenant's dissolution, the tenant stopped paying the rent and Gateway attempted to collect the unpaid rent from the guarantors, arguing that the guaranty and the underlying lease formed a single integrated transaction, and the transfer of the lease to Gateway also made it the beneficiary of the guaranty. *Gateway,* 974 S.W.2d at 569-70. The trial court disagreed. *Id.* at 570. On appeal, the Missouri Court of Appeals reversed, agreeing with Gateway that "a guaranty and the underlying obligation[s] [were] executed together as part of one integrated transaction . . . are considered to be one document, such that the transfer on the obligation transfers the guaranty and no express assignment . . . was required." *Id.* at 571.

Here, as in *Gateway*, the intent of the parties in executing the Missouri Lease and Missouri Guaranty was to form a single integrated agreement, because the Missouri Guaranty covers each and every aspect of the Missouri Lease, and is inseparable and mutually interconnected with the Missouri Lease; in fact, one would not have existed without the other. *Gateway,* 974 S.W.2d at 567 ("[W]hen a guaranty and the underlying obligation are executed together as part of one integrated transaction, they are considered to be one document such that the transfer of the obligation transfers the guaranty."); *see Sanfillippo v. Oehler*, 869 S.W.2d 159, 161 (Mo. Ct. App. 1993) ("A contract is entire if a party's duty to perform each of his promises is dependent upon the other party's

-12-

performance of each of his."); *Grease Monkey Int'l, Inc. v. Godat*, 916 S.W.2d 257, 261

(Mo. Ct. App. 1995); *Shell v. Shell*, 658 S.W.2d 439, 444 (Mo. Ct. App. 1982) ("The test

[as to what constitutes an entire agreement] is to inquire whether the parties assented to

all the promises as a single whole so there was no agreement should any promise or set of

promises be stricken."); *In re Karfakis*, 162 B.R. 719, 725 (Bankr. E.D. Pa. 1993) ("As in

the instant case, where debtors have attempted to assume related contracts post-petition

pursuant to § 365, other bankruptcy courts have recognized the concept that certain

agreements are indivisible.  The Court is persuaded by this body of law which suggests

that two contracts which are essentially inseparable can be, and should be, viewed as a

single, indivisible agreement between the parties. . . .  In the instant case, the evidence

established that the Franchise Agreement and the Lease are inextricably interwoven and

for all practical purposes comprise a single contractual relationship.  Aside from being

coterminous and containing cross default provisions, it is readily apparent that one

agreement is of no utility without the other." (citations omitted)).  *See also McKnight v.*

*Midwest Eye Inst. of Kan. City*, 799 S.W.2d 909, 918 (Mo. Ct. App. 1990) ("They were

part of the same exchange . . . ."); *Clayton v. Howard Johnson Franchise Sys.,* 954 F.2d

645, 649-50 (11th Cir. 1992); *Bethea v. Investors Loan Corp.*, 197 A.2d 448, 450 (D.C.

1964); *Fischer v. Nat'l Indus. Servs.*, 735 S.W.2d 114, 116 (Mo. Ct. App. 1987)

("Whether a contract is entire or divisible is primarily a question of intention which is to

be determined from the language the parties have used and the subject matter of the

agreement."); *In re Atlantic Computer Sys.*, 173 B.R. at 850-55; *In re Café*

*Partners/Washington 1983*, 90 B.R. 1, 7 (Bankr. D.D.C. 1988); *In re Harrison*, 117 B.R.

570, 573 (Bankr. C.D. Cal. 1990); *In re Beare Co.*, 177 B.R. 879, 882 (Bankr. W.D.

Tenn. 1994); *In re Mirant Corp.*, 318 B.R. 100, 106-07 (N.D. Tex. 2004). (Ex. 1 (Missouri Guaranty) ¶ 1; Ex. 3 (Lease Modification Agreement) ¶4).

Thus, the intent of the parties was to form a single integrated agreement, which contained the Missouri Lease and the Missouri Guaranty. This intent was further demonstrated by the Lease Modification Agreement, which bound all the Leases by cross-default provisions, made it impossible to extend the Leases selectively, and reaffirmed IHS' obligations under the Guaranties, including the Missouri Guaranty. (Ex. 3 (Lease Modification Agreement) ¶4). In addition, IHS executed the March 2002 Stipulation and Order and is bound by the April 2003 Order, which incorporated into the Master Lease "all terms and conditions of the existing Leases to the extent not inconsistent with the March 2002 Stipulation," which included a uniform expiration date for all Leases, the provision that the Leases could not be extended or modified selectively, covenants with which the Guarantor had to comply, and *expressly* reaffirmed IHS' obligations under the Guaranties. Plaintiffs' Reply offers *no* authority to the contrary, other than abstract propositions of law taken out of context, as discussed *infra*.

### 2.    Plaintiffs Authority Is Factually Distinguishable

Plaintiffs' authority cited in their Motion is factually distinguishable and in fact supports THCI.

First, Plaintiffs fail to cite to *Gateway*, which construed a guaranty in connection with a lease and held that the guaranty formed an integrated agreement with the lease under facts closely resembling the case at bar. *Gateway,* 974 S.W.2d at 569-72.

Second, Plaintiffs' reliance on *Jamieson-Chippewa Investment Co. v. McClintock*, 996 S.W.2d 84 (Mo. Ct. App. 1999) and its progeny is misplaced. As discussed *supra*, *McClintock* defeats Plaintiffs' arguments. Furthermore, none of the cases cited by

Plaintiffs involved factual scenario even remotely resembling the circumstances of the case at bar, and in *none* of these cases did Missouri courts address the issue of whether the guaranty formed a single integrated agreement with the underlying obligation. *See Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. 2003); *Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C.*, 119 S.W.3d 101 (Mo. Ct. App. 2003); *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo. Ct. App. 1977). In *all* cases cited by Plaintiffs, Missouri courts restated *McClintock*'s generic proposition that a guaranty is generally a separate obligation from the underlying contract, and in *all* cases cited by Plaintiffs Missouri courts concluded that when read together with the underlying document, the guaranty bound the guarantor. *Dunn*, 112 S.W.3d at 435; *Grand Inv. Corp.*, 119 S.W.3d at 101; *Standard Meat Co.,* 554 S.W.2d at 595. The only Missouri case addressing the issue of whether a guaranty forms a single integrated document with the underlying lease is *Gateway*, and as discussed *supra*, the *Gateway* court held that it did on facts indistinguishable from the case at bar. *Gateway*, 974 S.W.2d at 569-72.

### C.     PLAINTIFFS ASSERTION THAT THE GUARANTIES WERE NOT "ASSUMED" AS EXECUTORY CONTRACTS MISREADS THE LAW AND THE FACTS

Plaintiffs make a novel argument that the Missouri Guaranty could not have been assumed under Section 365 of the Bankruptcy Code because it was not an executory contract. Plaintiffs' argument is a red herring aimed to distract the Court from the circumstances of the case, and is otherwise defective in substance as discussed *infra*. Most importantly, however, this argument is made out of context. The context and circumstances under which Plaintiffs assumed the Leases, though, are more crucial for the analysis than the defects of Plaintiffs' arguments.

-15-

Apart from being made out of context, Plaintiffs' entire argument fails because it ignores the law of the case and is contingent upon two equally unsubstantiated assumptions. The first assumption is that Plaintiffs did not assume the Leases, and this assumption fails as discussed *supra*. Plaintiffs' second assumption is that the Guaranties were somehow separate and distinct from the Leases. As discussed *supra*, this assumption similarly fails, because the Guaranties formed a single integrated agreement with the Leases and were also integrated into the Lease Modification Agreement, and therefore remained in effect as part of the Leases after the Leases were assumed.

Plaintiffs' argument fails even if considered in isolation and out-of-context, because it is meaningless in the context of the case at bar. Upon information and belief, at the time of the assumption, the nine Facilities were profitable, creating significant streams of revenue not only for the particular IHS Subsidiary, but also for IHS itself. For this reason, IHS as the parent company of the Nine Subsidiaries, remained interested in continuing to operate the leased properties, because each leased property was making money for IHS, bankrupt or not. This was the reason why IHS caused its Subsidiaries to enter into the Leases in the first place, and this was the reason why IHS guaranteed their obligations under the Leases.

The Debtors' bankruptcy did not alter IHS' rationale for issuing the Guaranties— IHS remained similarly interested in financial benefits flowing from continuous operation of the leased properties by its Subsidiaries. To continue receiving these financial benefits, however, IHS had to continue being a guarantor under the Leases, since the Leases incorporated the Guaranties, and could not have been assumed without the

Guaranties in place, which is exactly why IHS entered into, and executed, the March 2002 Stipulation and Order, which reaffirmed IHS' obligations as a Guarantor.

Plaintiffs' argument that the Guaranties were not executory agreements is, therefore, largely academic given Plaintiffs' inability to present any evidence that the Leases were not assumed, or that the Guaranties were somehow separated from the Leases. Plaintiffs argue that the Missouri Guaranty was not executory because allegedly there was no future benefit to IHS and no future performance under the Missouri Guaranty "due" THCI. In support, Plaintiffs rely on Professor Countryman's definition of an "executory contract" and on *In re Grayson-Robinson Stores*, 321 F.2d 500 (2d Cir. 1963) and its progeny. In *Grayson-Robinson*, the Second Circuit concluded that the guaranty at issue was not an executory contract because:

> [a] guarantor of a lease has no interest in the lessor's future performance. Such an agreement of guaranty is not in itself any part of a bargain for future performance. Rather than having any interest in the lessor's performance, the guarantor's interest would be better served by non-performance, since in that event the guarantor would be released from the obligation which he has undertaken.

321 F.2d at 502.

The context and the circumstances of the case at bar, however, warrant a departure from *Grayson-Robinson*. Unlike the interests of the guarantor in *Grayson-Robinson*, IHS' interests were "better served" by performance, rather than non-performance under the Missouri Guaranty, since IHS was set to *lose* money if the Leases were not assumed—and this is the position of Professor Countryman, who firmly *rejected* the holding of *Grayson-Robinson* for precisely these reasons:

> In my judgment, the [*Grayson-Robinson*] court's approach constitutes an application of the right rule to the wrong case due to faulty analysis of the contractual relationship of lessor-creditor and surety. It may be correct to say that the surety or guarantor, "by the lessor's execution of the lease,

-17-

has received all of the consideration for which he bargained with the lessor." But he also has a sufficient interest in the lessor's continuing obligations to the lessee so that, while the lessor's default would not give him a claim for damages, the lessor's material default would, as the court recognizes, release the surety or guarantor as well as the lessee. Therefore these are not contracts under which the lessor has yet rendered the full performance to which the bankrupt surety is entitled. These are contracts which the trustee of the surety might in some cases properly want to assume, depending on the surety's relationship to the lessee, and are contracts which he should in other cases be able to reject.

. . . [I]n most, if not all cases, the relationship of surety and lessor is mutually executory for the term of the lease.

Vern Countryman, *Executory Contracts in Bankruptcy*, 57 MINN. L. REV. 439, 453

(1973).

The Court should consider the Missouri Guaranty in the context of the totality of circumstances in this case and adopt the reasoning of Professor Countryman and Judge Roy Babbitt, and tailor *Grayson-Robinson*'s general rule to circumstances where continued performance of the guaranteed obligations is in the interest of the guarantor:

An examination of the facts at bar demonstrates the extent to which *Grayson-Robinson*, ignoring this focus, effectuates a result at war with settled principles of equity . . . The guaranteed lease here is clearly an asset of the subsidiary lessee. It cannot be less an asset of the parent-guarantor. The parent surely has an interest in the future performance by the claimant, the lessor of the subsidiary's lease. . . . It would be far more equitable to concede the parent-guarantor's interest in the future performance by the claimant lessor of its promises in the lease with the subsidiary. The guaranty should clearly be an executory contract within the meaning of Section 313(1) of the Act and in effect, until disaffirmed.

*In re Unishops, Inc.*, 422 F. Supp. 75, 80 (S.D.N.Y. 1975) (Babbitt, B.J) (citing

Countryman, *supra*, 57 MINN. L. REV. at 452-54), *aff'd*, 543 F.2d 1017 (2d Cir. 1976).

*See* 11 U.S.C. § 365; *In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. at 49 ("The

purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon

assumption and cure of any defaults. The policy that favors preserving the entirety of an

-18-

unexpired lease would put the parties to a lease back in the positions they would have been had no defaults occurred and no bankruptcy petition had been filed.") (emphasis in original).

**CONCLUSION**

For the foregoing reasons, THCI respectfully requests that the Court deny Plaintiffs' Motion, and grant THCI's Cross-Motion in its entirety.

Dated:    June 29, 2005          **GREENBERG TRAURIG LLP**
       Wilmington, Delaware


By: /s/ Dennis A. Meloro
    Scott D. Cousins (No. 3079)
    Victoria W. Counihan (No. 3488)
    Dennis A. Meloro (No. 4435)
    The Brandywine Building
    1000 West Street, Suite 1540
    Wilmington, Delaware 19801
    Tel:  (302) 661-7000
    Fax  (302) 661-7360

          -and-

**ARENT FOX PLLC**

    Robert E. Grossman
    Michael S. Cryan
    Igor M. Tsibelman
    1675 Broadway
    New York, New York 10019
    Tel:  (212) 484-3900
    Fax:  (212) 484-3990

    *Attorneys for Defendant THCI Company LLC*