**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., *et al.*,

Plaintiffs-Counterclaim Defendants,

v.

THCI COMPANY LLC,

Defendant-Counterclaimant.

Case No. 04-910

# MEMORANDUM OF LAW IN SUPPORT OF THCI COMPANY LLC'S MOTION FOR PRELIMINARY INJUNCTION WITH REQUEST FOR EXPEDITED CONSIDERATION AND HEARING


**GREENBERG TRAURIG LLP**
Scott D. Cousins (No. 3079)
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
Tel: (302) 661-7000

-and-

**ARENT FOX PLLC**
Robert E. Grossman
Michael S. Cryan
Igor M. Tsibelman
1675 Broadway
New York, New York 10019
Tel: (212) 484-3900

***Attorneys for Defendant-Counterclaimant THCI Company LLC***

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 1

ARGUMENT ..... 5

I. THCI IS ENTITLED TO POSSESSION OF THE FACILITIES AND EVICTION OF PLAINTIFFS ..... 6

II. PLAINTIFFS' CONTINUED STAY WILL IRREPARABLY HARM THCI ..... 8

III. INJUNCTIVE RELIEF SOUGHT HEREIN WILL NOT RESULT IN GREATER HARM TO PLAINTIFFS ..... 11

IV. PUBLIC INTEREST FAVORS EVICTION OF PLAINTIFFS AND PRELIMINARY INJUNCTION ..... 12

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Cases** **Page**

Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992) .... 11

Alvenus Shipping Co. v. Delta Petroleum Ltd., 876 F. Supp. 482 (S.D.N.Y.1994) .... 10

Ben Venue Labs., Inc. v. Novartis Pharm. Corp., 10 F. Supp. 2d 446 (D.N.J. 1998) .... 5

Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172 (3d Cir. 1990) .... 6

Dennis v. Morgan, 732 N.E.2d 391 (Ohio 2000) .... 7

Diamontiney v. Borg, 918 F.2d 793 (9th Cir. 1990) .... 9

Feit & Drexler, Inc. v. Green (In re Feit & Drexler, Inc.), 760 F.2d 406 (2d Cir.1985) .... 10

Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255 (W.D. Mo. 2001) .... 8

Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186 (3d Cir. 1990) .... 10

Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3d Cir.1989) .... 5

JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75 (2d Cir.1990) .... 10

KOS Pharms., Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004) .... 6

Kershner v. Mazurkiewicz, 670 F.2d 440 (3d Cir. 1982) .... 5

Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc., 986 F. Supp. 183 (S.D.N.Y. 1997) .... 10

Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508 (D.N.J. 1999) .... 10

NAACP v. Town of East Haven,
70 F.3d 219 (2d Cir. 1995)....8

N.J. Coal. of Auto. Retailers v. DaimlerChrysler Motors Corp.,
107 F. Supp. 2d 495 (D.N.J. 1999)....9, 10

Napa Valley Publ'g Co. v. City of Calistoga,
225 F. Supp. 2d 1176 (N.D. Cal. 2002)....5

NLRB v. Electro-Voice, Inc.,
83 F.3d 1559 (7th Cir. 1996)....11

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,
290 F.3d 578 (3d Cir. 2002)....11, 12

Oburn v. Shapp,
521 F.2d 142 (3d Cir. 1975)....5

Opticians Ass'n of Am. v. Indep. Opticians,
920 F.2d 187 (3d Cir.1990)....11

Pappan Enters. v. Hardee's Food Sys.,
143 F.3d 800 (3d Cir.1998)....11

Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs.,
144 F. Supp. 2d 241 (S.D.N.Y. 2001)....9

Republic of Philippines v. Marcos,
806 F.2d 344 (2d Cir.1986)....10

Reuters Ltd. v. United Press Int'l, Inc.,
903 F.2d 904 (2d Cir. 1990)....8

Schlesinger v. Brown,
282 A.2d 790 (N.J. Dist. Ct. 1971)....7

Seide v. Crest Color, Inc.,
835 F. Supp. 732 (S.D.N.Y. 1993)....10

Sierra Club v. U.S. Army Corps of Engineers,
732 F.2d 253 (2d Cir. 1984)....5

Spartacus, Inc. v. Borough of McKees Rocks,
694 F.2d 947 (3d Cir. 1982)....5

U.S. v. Imperial Irrigation Dist.,
799 F. Supp. 1052 (S.D. Cal. 1992)....8

Williams v. Curtiss-Wright Corp., 681 F.2d 161 (3d Cir. 1982)....6

**STATUTES**

Ala. Code § 35-9-5 (2005)....7

Mich. Comp. Laws Ann. § 600.5714(1) (West 2005)....8

Mo. Ann. Stat. § 441.060 (West 2005)....7

Mo. Ann. Stat. § 535.010 (West 2005)....7

N.J. Stat. Ann. § 2A:18-51 (West 2005)....7

N.J. Stat. Ann. § 2A:18-53 (West 2005)....7

Ohio Rev. Code Ann. § 1923.02(A) (West 2005)....7

68 Pa. Cons. Stat. Ann. § 250.501(a-b) (West 2005)....8

**ADDITIONAL REFERENCES**

11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2948 at 437-38 (1973)....9

## PRELIMINARY STATEMENT

Defendant-Counterclaimant THCI Company LLC ("THCI" or "Defendant") respectfully submits this memorandum of law in support of its motion for an order directing Plaintiffs-Counterclaim-Defendants Integrated Health Services of Cliff Manor, Inc. and eight other subsidiaries[1] ("Plaintiffs") of IHS Long-Term Care, Inc. ("LTC") to vacate nine nursing homes ("Facilities") currently leased from THCI, and enjoining Plaintiffs from making any payments or distributions to LTC or any other related entities pending surrender of the Facilities and resolution of this case.

Plaintiffs now owe THCI approximately $2 million in unpaid rent and taxes. Plaintiffs' obligation to pay rent is fundamental and undisputed; their refusal to pay rent and vacate the Facilities is inexcusable. Furthermore, Plaintiffs' failures to pay rent and to pay state agencies and vendors, when coupled with their continued receipt of funds from operations of the Facilities and distribution of these funds to LTC and other related parties, irreparably harms THCI, because Plaintiffs will have no assets of their own to satisfy the judgment that THCI will ultimately obtain against them. No sound public policy is served by allowing Plaintiffs to continue reaping the benefit of using THCI's property, while evading liability for breaching their fundamental obligation to pay rent.

## STATEMENT OF FACTS

Plaintiffs lease the Facilities from THCI pursuant to a master lease ("Master Lease"), as ordered by the United States Bankruptcy Court for the District of Delaware

---

[1] Integrated Health Services at Riverbend, Inc.; Integrated Health Services at Somerset Valley, Inc.; Alpine Manor, Inc.; Briarcliff Nursing Home, Inc.; Integrated Health Group, Inc.; Spring Creek of IHS, Inc.; Firelands of IHS, Inc.; and Elm Creek of IHS, Inc.

("Bankruptcy Court") on April 22, 2003 ("April 2003 Order").[2] Plaintiffs and LTC have appealed the April 2003 Order, but there is no stay pending appeal; in the meantime, Plaintiffs continued to operate the Facilities, while indicating their desire to surrender the Facilities to THCI.[3] Although Plaintiffs failed to provide THCI with the financial and operational information that Plaintiffs were obligated to provide under the Master Lease, Plaintiffs paid the monthly rent[4] and made other payments required under the Master Lease, such as the payment of real estate taxes directly to the taxing authorities, until March 2005.

In March 2005, Plaintiffs failed to timely pay base rent in the then-current amount of $691,875.00. THCI also discovered at this time that Plaintiffs had failed to pay real estate taxes in the approximate amount of $637,000.00 directly to the taxing authorities

---

[2] The April 2003 Order stated: "...a Master Lease shall be deemed to exist, which Master Lease shall be deemed to incorporate the terms set forth in paragraphs 3(a), (b), (c), (d), (e) and (f) of the March 2002 Stipulation and shall further be deemed to incorporate by reference all terms of the existing Leases to the extent not inconsistent with the March 2002 Stipulation." The March 2002 Stipulation states, in pertinent part: "...The Master Lease shall: (a) Be a single triple net lease; (b) Provide that the base rent for all of the Leased Properties in the aggregate shall be $8,100,000.00 per annum; (c) Provide for escalations of 2.5% per annum; (d) Provide that the terms of the lease for all of the Leased Properties shall be for 10 years; and (e) Provide that the Debtors shall have the right to extend the terms of the Master Lease for all of the Leased Properties for two (2) consecutive five (5) year periods, based upon a continuation of the rent, with escalations at 2.5% per annum."

[3] *See* Ex. 9 (Missouri Complaint) ¶ 61 ("Since there are no existing leases covering any of the Nursing Home Properties, Plaintiff Subsidiaries as holdover tenants may surrender the Nursing Home Properties to Defendant.").

[4] The schedule of base rent payments under the Master Lease for May 1, 2003 through May 31, 2006 is as follows:

| Lease year | | Base rent | |
|---|---|---|---|
| **Begin** | **End** | **Annual** | **Monthly** |
| May 1, 2003 | May 31, 2004 | $8,100,000.00 | $675,000.00 |
| May 1, 2004 | May 31, 2005 | $8,302,500.00 | $691,875.00 |
| May 1, 2005 | May 31, 2006 | $8,510,062.50 | $709,171.88 |

as required by the Master Lease.[5] Moreover, upon information and belief, Plaintiffs are also substantially in arrears to state agencies[6] and vendors of health care products and services. THCI provided a written notice of these defaults to Plaintiffs on March 9, 2005. (Affidavit of Igor M. Tsibelman dated July 13, 2005 and Exhibit 1 attached thereto ("Ex. 1 (March 2005 Default Letter)").

On March 15, 2005, Plaintiffs and LTC moved this Court for 1) a Leave to Make a Deposit in Court and 2) a Temporary Restraining Order (collectively, "Plaintiffs' Motions"), seeking, *inter alia*, the Court's permission to deposit the rent due under the Master Lease with the Court pending the outcome of their appeal and the disposition of this action, and to enjoin THCI from pursuing its remedies under the Master Lease. Plaintiffs' Motions have been fully briefed but this Court has not yet ruled upon them. Implicit in Plaintiffs' Motions was recognition that absent relief, Plaintiffs were obligated to pay rent to THCI as required by the Master Lease.

While Plaintiffs' Motions were pending, Plaintiffs paid March rent on or about March 16, 2005, although they did not cure other defaults identified in the March 2005 Default Letter (including continued failure to pay real estate taxes and to provide required operational and financial information). In each of April and May 2005, Plaintiffs failed

---

[5] Payment of real estate taxes is an explicit obligation of the Leases, and the 2003 Order specifically incorporates section 3(a) of the 2002 Stipulation which explicitly states that the Master Lease shall be a triple net lease – which means that the tenant is responsible for all expenses of the Facilities including but not limited to real estate taxes.

[6] For example, in Ohio, as of April 20, 2005, three of the Nine Subsidiaries owe Franchise Permit Fee Assessments (commonly known as "bed tax") in the estimated total amount of $431,027.57. Certain of the delinquencies, to our knowledge, have been "certified" by the Ohio Department of Job and Family Services ("ODJFS") to the Ohio Attorney General's office, in which case the Attorney General adds penalties, a nine (9) percent collection fee and interest which is compounded daily. An additional $96,750.00 was due on May 15, 2005. Another $270,000 is due in Michigan for a similar bed tax.

to timely pay base rent to THCI; THCI sent default letters and Plaintiffs paid the rent within the cure period. (Ex. 2 (April 2005 Default Letter); Ex. 3 (May 2005 Default Letter)).

Plaintiffs, however, failed to pay rent for June of 2005 in the amount of $709,171.88 and the time to cure expired on June 10, 2005. (Ex. 4 (June 2005 Default Letter). Plaintiffs also failed to pay rent for July 2005 in the amount of $709,171.88; the time to cure this default expired on July 13, 2005. (Ex. 5 (July 2005 Default Letter)). Plaintiffs have not responded to THCI's default letters regarding non-payment of June and July 2005 rent, and their representatives have not returned phone calls either. As of this date, Plaintiffs' monetary defaults under the Master Lease approach $2,000,000.00 and increase daily.

Plaintiffs' failure to pay rent and taxes forced THCI to evaluate its available options and take preliminary steps to obtain necessary state licenses to take over the management of the Facilities. THCI took these precautionary steps due to Plaintiffs' numerous defaults to ensure that THCI would be ready to take over management of the Facilities in case it became necessary for THCI to do so. In response, Plaintiffs contacted representatives of state licensing authorities in Pennsylvania, protesting against THCI's attempt to obtain licenses to operate the Facilities located in Pennsylvania. In addition, on May 27, 2005, one of the Plaintiffs wrote a letter to counsel for THCI in Michigan, seeking to intimidate counsel from continuing to prosecute THCI's license application.

(Ex. 8 (Riverbend Letter)).[7]

On July 11, 2005, THCI demanded that Plaintiffs vacate the Facilities. (Ex. 6 (Termination Letter)). Plaintiffs have failed to either respond to this demand or to articulate any reason why they should remain in possession of the Facilities, continuing to collect the funds from operations thereof, while not paying rent.

## ARGUMENT

"A preliminary injunction is a 'provisional remedy,'" *Napa Valley Publ'g Co. v. City of Calistoga,* 225 F. Supp. 2d 1176, 1180 (N.D. Cal. 2002) (Chen, Mag. J.), "which should be granted only in limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989). A party seeking an injunction need not show that its "right to a final decision after trial [is] wholly without doubt," *Oburn v. Shapp,* 521 F.2d 142, 150 (3d Cir. 1975); all that is required is a "reasonable probability of eventual success in the litigation . . . " *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir. 1982). The purpose of preliminary relief is to preserve the status quo during the litigation. *See Sierra Club v. U.S. Army Corps of Eng'rs,* 732 F.2d 253, 256 (2d Cir. 1984); *Ben Venue Labs., Inc. v. Novartis Pharm. Corp.*, 10 F. Supp. 2d 446 (D.N.J. 1998). A preliminary injunction is not a matter of right, but rather is committed to the sound discretion of the court. *Spartacus, Inc. v. Borough of McKees Rocks,* 694 F.2d 947, 949 (3d Cir. 1982). A party seeking a preliminary injunction must demonstrate "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater

[7] Specifically, the unnamed representative of Integrated Health Service of Riverbend, Inc. stated in this letter that "[y]ou cannot unilaterally decide that we are in default of our lease," and threatened counsel to

harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). In addition, a preliminary injunction can be entered or denied without a hearing when there are no relevant facts in dispute. *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982); *see Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990).

## I. THCI IS ENTITLED TO POSSESSION OF THE FACILITIES AND EVICTION OF PLAINTIFFS

THCI is entitled to a writ of eviction and preliminary injunctive relief in order to prevent irreparable harm to THCI. The relevant facts are not in dispute—Plaintiffs are obligated to pay rent, have failed to pay rent when due, have failed to cure their defaults despite repeated demands by THCI, and have refused to surrender the Facilities voluntarily. Plaintiffs simply have no right to continue operating the Facilities without paying rent, while distributing the funds received from operations of the Facilities to LTC or other related parties. Thus, Plaintiffs should vacate the Facilities.

Pursuant to the Master Lease, a failure to pay rent when due, which remains uncured within seven days, constitutes an event of default; if an event of default has occurred and is continuing, Plaintiffs must surrender the Facilities:

> [i]f any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Paragraph (a) of this Section, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceeding, ejectment or otherwise, and may remove Lessee and all other persons and any and all of Lessee's Personal Property from the Leased Property subject to the rights of any residents or patients and to

---

THCI that "[i]f necessary, any tortuous [sic] interference lawsuit will also name your law firm and you personally as defendants." (Ex. 8 (Riverbend Letter)).

> any requirement of law, or Lessor may claim ownership of Lessee's Personal property as set forth in Article 32 hereof.

(Ex. 7 (Missouri Lease) ¶ 16.2(c)).[8]

Even under the alternative landlord-tenant theories that Plaintiffs have espoused in this litigation—that they are holdover tenants, or there is a "new" master lease—Plaintiffs are still obligated to pay rent, and their failure to pay rent warrants immediate eviction of Plaintiffs under the laws of every state in which Facilities are located.[9]

---

[8] *See also* (Ex. 7 (Missouri Lease) ¶ 27.1) ("Unless Lessor shall convey any of the Leased Property to Lessee, Lessee will, upon the expiration or prior termination of the Term, vacate and surrender the Leased Property to Lessor in the condition in which the Leased Property was originally received from Lessor."); ¶ 38.2 ("Upon the expiration or earlier termination of the Term, Lessee shall use its best efforts to transfer to Lessor or Lessor's nominee all licenses, operating permits and other governmental authorizations and all contracts, including contracts with governmental or quasi-governmental entities which may be necessary or useful in the operation of the Facility."). Each of the remaining eight Leases contains similar provisions.

[9] *See* Mo. Ann. Stat. § 535.010 (West 2005) (In Missouri, "[i]n all cases in which lands and tenements are or shall be rented or leased, and default shall be made in the payment of the rents at the time or times agreed upon by the parties, it shall be lawful for the landlord to dispossess the tenant and all subtenants and recover possession of the premises rented or leased, in the manner herein provided."); *id.,* § 441.060 (1) ("A tenancy at will or by sufferance, or for less than one year, may be terminated by the person entitled to the possession by giving one month's notice, in writing, to the person in possession, requiring the person in possession to vacate the premises."); *Dennis v. Morgan*, 732 N.E.2d 391, 393 (Ohio 2000) ("Pursuant to R.C. 1923.02(A)(9), a forcible entry and detainer proceeding can be had against 'tenants who have breached an obligation imposed upon them by a written rental agreement.' The statute empowers landlords to regain possession of their property upon a tenant's breach of the rental agreement."); Ohio Rev. Code Ann. § 1923.02(A) (West 2005) ("Persons subject to forcible entry and detainer action. (A) Proceedings under this chapter may be had as follows: (1) Against tenants or manufactured home park residents holding over their terms;... (9) Against tenants who have breached an obligation imposed upon them by a written rental agreement . . . ."); *Schlesinger v. Brown*, 282 A.2d 790, 791 (N.J. Dist. Ct. 1971); (applying N.J. Stat. Ann. § 2A:18-51 and holding that "a landlord's power to dispossess his tenant by summary proceedings is entirely the creation of statute."); N.J. Stat. Ann. § 2A:18-51 (West 2005) ("The owner or his duly authorized agent, assignee or grantee may institute and maintain proceedings to recover the possession or the rentals thereof in their own names or in the name of the former agent, in the same manner and with the same effect as though the real estate had been leased in their own names."); *id.*, § 2A:18-53 ("Except for residential lessees and tenants included in section 2 of this act, any lessee or tenant at will or at sufferance, or for a part of a year, or for 1 or more years, of any houses, buildings, lands or tenements, and the assigns, undertenants or legal representatives of such tenant or lessee, may be removed from such premises by the Superior Court, Law Division, Special Civil Part in an action in the following cases: a. Where such person holds over and continues in possession of all or any part of the demised premises after the expiration of his term, and after demand made and written notice given by the landlord or his agent, for delivery of possession thereof.... b. Where such person shall hold over after a default in the payment of rent, pursuant to the agreement under which the premises are held."); Ala. Code § 35-9-5 (2005) ("In all cases of tenancy by the month or for any other term less than one year, where the tenant holds over without special agreement, the landlord shall have the right to terminate the tenancy by giving the tenant 10 days' notice in writing of such termination, and the landlord upon giving said notice for said time shall be authorized without further notice to the tenant to recover possession of the rented premises in an action of unlawful

Accordingly, Plaintiffs must be ordered to surrender the Facilities, be enjoined from making payments or distributions to LTC and ordered to cooperate with THCI during the transitional period. *See Fletcher v. Conoco Pipe Line Co.*, 129 F. Supp. 2d 1255, 1263 (W.D. Mo. 2001) (under Missouri law, ejectment is recognized as a means of allowing a landowner to recover possession of property to which he is legally entitled); *U.S. v. Imperial Irrigation Dist.*, 799 F. Supp. 1052, 1068 (S.D. Cal. 1992) ("[E]jectment has historically been a discrete cause of action available to a plaintiff who cannot sue for trespass because he or she is not in possession of the land.").

## II. PLAINTIFFS' CONTINUED STAY WILL IRREPARABLY HARM THCI

THCI would be irreparably harmed unless Plaintiffs are evicted and enjoined from making any payments or distributions to LTC or other related parties pending their eviction and resolution of this litigation. To establish irreparable harm, "[a] moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *NAACP v. Town of East Haven,* 70 F.3d 219, 224 (2d Cir. 1995) (citing *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990)). The harm caused to THCI by Plaintiffs' continued operation of the Facilities pending the resolution of this case is imminent and irreparable, and cannot be remedied by any monetary damages awarded to

---

detainer."); Mich. Comp. Laws Ann. § 600.5714 (1) (West 2005) ("A person entitled to premises may recover possession of the premises by summary proceedings in the following circumstances: (a) When a person holds over premises after failing or refusing to pay rent due under the lease or agreement by which the person holds the premises within 7 days from the service of a written demand for possession for nonpayment of the rent due.... (c) When a person holds over premises in 1 or more of the following circumstances: (i) After termination of the lease, pursuant to a power to terminate provided in the lease or implied by law."); 68 Pa. Cons. Stat. Ann. § 250.501(a-b) (West 2005) ("A landlord desirous of repossessing real property from a tenant . . . may notify, in writing, the tenant to remove from the same at the expiration of the time specified in the notice under the following circumstances, namely, (1) Upon the termination of a term of the tenant, (2) or upon forfeiture of the lease for breach of its conditions, (3) or upon the failure of the tenant, upon demand, to satisfy any rent reserved and due.").

THCI, since absent the injunctive relief sought herein, THCI would be unable to collect any monetary damages from Plaintiffs.

Plaintiffs are special purpose entities created for the sole purpose of leasing and operating the Facilities; Plaintiffs have no assets other than their rights under the Master Lease. Plaintiffs' delinquencies on their obligations to the state agencies and independent vendors further underscore Plaintiffs' precarious financial position. If the funds received by Plaintiffs from "rent-free" operation of the Facilities are distributed to LTC or related parties, Plaintiffs will have no assets of their own to satisfy the judgment that THCI will ultimately obtain against them.[10] *See Diamontiney v. Borg,* 918 F.2d 793, 795 (9th Cir. 1990) (holding that the movant need not establish an actual injury or the certainty of an injury occurring; it is sufficient to show "a strong threat of irreparable injury before trial.") (quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948 at 437-38 (1973)).

Under these circumstances, THCI would be irreparably harmed absent a writ of eviction and injunctive relief ordering Plaintiffs not to make any distributions or payments to LTC or other related entities pending the resolution of this case. *See Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs.*, 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) (granting preliminary injunction and observing that "where 'but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied,' . . . [p]reliminary injunctions are therefore appropriate to thwart a defendant from making a judgment uncollectible.") (citations omitted); *N.J. Coal. of Auto. Retailers*

[10] THCI submits that the outcome of this motion is not dependent on the parties' motion and cross-motion for partial summary judgment dealing with validity of the guaranties issued by LTC.

*v. DaimlerChrysler Motors Corp.*, 107 F. Supp. 2d 495, 500 (D.N.J. 1999) ("In the Third Circuit, the unsatisfiability of a money judgment may constitute irreparable harm in extraordinary cases.") (citing *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990)); *Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc.*, 986 F. Supp. 183, 186 (S.D.N.Y. 1997) ("Generally, an irreparable injury 'is one that cannot be redressed through a monetary award.' Therefore, courts should avoid issuing preliminary injunctions in cases where money damages would be adequate compensation. However, an exception to this rule exists when it is shown that satisfaction of a money judgment will be impossible without an injunction.") (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990) and citing *Alvenus Shipping Co. v. Delta Petroleum Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y.1994)); *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 531 (D.N.J. 1999) ("In this regard, a money judgment which is uncollectible is not an adequate remedy at law. The fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury.' This Circuit has recognized that 'unsatisfiability of a money judgment can constitute irreparable injury.'") (citations and cross-references omitted); *Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 735 (S.D.N.Y. 1993) ("As courts have made clear, while 'as a general rule ... a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied by an award of money damages, . . . preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible.'") (quoting *Feit & Drexler, Inc. v. Green (In re Feit & Drexler, Inc.),* 760 F.2d 406, 416 (2d Cir.1985) and *Republic of Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir.1986)).

## III. INJUNCTIVE RELIEF SOUGHT HEREIN WILL NOT RESULT IN GREATER HARM TO PLAINTIFFS

A writ of eviction and an injunction against distributions and payments to LTC and other related parties will not result in greater harm to Plaintiffs than to THCI. Indeed, any harm to Plaintiffs caused by their eviction from the Facilities and prohibition against distributing any funds to LTC or other related entities is self-imposed by Plaintiffs' breach of the Master Lease and failure to honor the fundamental obligation of every tenant—to pay rent. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("As we have previously ruled, the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself.") (citing *Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 806 (3d Cir.1998) ("The self-inflicted nature of any harm suffered by [the party opposing the injunction] also weighs in favor of granting preliminary injunctive relief.") and *Opticians Ass'n of Am. v. Indep. Opticians,* 920 F.2d 187, 197 (3d Cir.1990) ("By virtue of this recalcitrant behavior, the [party opposing the injunction] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself.")).

Furthermore, given the undisputed nature of Plaintiffs' breach, and THCI's likelihood of success on the merits, the balance of harm needs not weigh heavily in THCI's favor to warrant an injunction here. *See Novartis*, 290 F.3d at 597 ("Novartis has demonstrated a likelihood of success on the merits. As other circuits have observed, '[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor.'") (quoting *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1568 (7th Cir. 1996) and citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

## IV. PUBLIC INTEREST FAVORS EVICTION OF PLAINTIFFS AND PRELIMINARY INJUNCTION

Public interest favors eviction of non-paying tenants, such as Plaintiffs, and other injunctive relief sought by THCI. As discussed *supra*, Plaintiffs are absolutely obligated to pay rent and, having failed to do so, must surrender possession under the Master Lease and applicable state law. In fact, no public policy is served if non-paying tenants, such as Plaintiffs, are allowed to continue to occupy the Facilities without paying rent. *See Novartis*, 290 F.3d at 597 ("Moreover, we believe that where the plaintiff has demonstrated a likelihood of success on the merits, the public interest leans even more toward granting the injunction.").

## CONCLUSION

For the foregoing reasons, THCI respectfully requests that the Court grant THCI's Motion in its entirety.

Dated: July 13, 2005
Wilmington, Delaware

**GREENBERG TRAURIG LLP**

By:________________________

Scott D. Cousins (No. 3079)
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
Tel: (302) 661-7000
Fax (302) 661-7360

-and-

**ARENT FOX PLLC**

Robert E. Grossman
Michael S. Cryan
Igor M. Tsibelman
1675 Broadway
New York, New York 10019
Tel: (212) 484-3900
Fax: (212) 484-3990

*Attorneys for Defendant-Counterclaimant THCI Company LLC*