replacement cost so redetermined shall forthwith, on receipt of such determination by such impartial appraiser, give written notice thereof to the other party hereto. The determination of such impartial appraiser shall be final and binding on the parties hereto, and Lessee shall forthwith increase, or may decrease, the amount of the insurance carried pursuant to this Article, as the case may be, to the amount so determined by the impartial appraiser. Each party shall pay one-half (1/2) of the fee, if any, of the impartial appraiser.

13.3   Additional Insurance.  In addition to the insurance described above, Lessee shall maintain such additional insurance as may be required from time to time by any Facility Mortgagee and shall further at all times maintain adequate worker's compensation insurance coverage for all persons employed by Lessee on the Leased Property, in accordance with the requirements of applicable local, state and federal law.

13.4   Waiver of Subrogation.  All insurance policies carried by either party covering the Leased Property including without limitation, contents, fire and casualty insurance, shall expressly waive any right of subrogation on the part of the insurer against the other party so long as the same is obtainable without extra cost, and in the event of such an extra charge the other party, at its election, may pay the same, but shall not be obligated to do so.

13.5   Form of Insurance.  All of the policies of insurance referred to herein shall be written in form reasonably satisfactory to Lessor and by insurance companies reasonably satisfactory to Lessor.  Lessor agrees that it will not unreasonably withhold its approval as to the form of the policies of insurance or as to the insurance companies selected by Lessee.  Lessee shall pay all of the premiums therefor, and deliver such policies or certificates thereof to Lessor prior to their effective date (and, with respect to any renewal policy, at least ten (10) days prior to the expiration of the existing policy) and in the event of the failure of Lessee either to effect such insurance in the names herein called for or to pay the premiums therefor or to deliver such policies or certificates thereof to Lessor at the times required, Lessor shall be entitled, but shall have no obligation, to effect such insurance and pay the premiums therefor, which premiums shall be repayable to Lessor with interest at the Overdue Rate upon written demand therefor, and failure to repay the same with interest within thirty (30) days after such demand shall constitute an Event of Default within the meaning of Section 16.1(c).  Each insurer mentioned in this Section shall agree, by endorsement on the policy or policies issued by it, or by independent instrument furnished to Lessor, that it will give to Lessor thirty (30) days' written notice before the policy or policies in question shall be altered, allowed to expire or cancelled.

13.6   Increase in Limits.  In the event that either party
shall at any time deem the limits of the personal injury or
property damage public liability insurance then carried to be
either excessive or insufficient, the parties shall endeavor to
agree on the proper and reasonable limits for such insurance to
be carried and such insurance shall thereafter be carried with
the limits thus agreed on until further change pursuant to the
provisions of this Section.  If the parties shall be unable to
agree thereon, the proper and reasonable limits for such
insurance to be carried and such insurance shall be determined
by an impartial third party selected by the parties.  Nothing
herein shall permit the amount of insurance to be reduced below
the amount or amounts required by any Facility Mortgage.

13.7   Blanket Policy.  Notwithstanding anything to the
contrary contained herein, Lessee's obligations to carry the
insurance provided for herein may be brought within the
coverage of a so-called blanket policy or policies of insurance
carried and maintained by Lessee; provided, however, that the
coverage afforded Lessor will not be reduced or diminished or
otherwise be different from that which would exist under a
separate policy meeting all other requirements of this Lease by
reason of the use of such blanket policy of insurance, and
provided further that the requirements of this Article 13 are
otherwise satisfied.

13.8   No Separate Insurance.  Lessee shall not, on Lessee's
own initiative or pursuant to the request or requirement of
any third party, take out separate insurance concurrent in form
or contributing in the event of loss with that required in this
Article to be furnished by, or which may reasonably be required
to be furnished by, Lessee, or increase the amounts of any then
existing insurance by securing an additional policy or
additional policies, unless all parties having an insurable
interest in the subject matter of the insurance, including in
all cases Lessor and all Facility Mortgagees, are included
therein as additional insureds and the loss is payable under
said insurance in the same manner as losses are required to be
payable under this Lease.  Lessee shall immediately notify
Lessor of the taking out of any such separate insurance or of
the increasing of any of the amounts of the then existing
insurance by securing an additional Policy or additional
policies.

## ARTICLE 14

## FIRE AND CASUALTY

14.1   Insurance Proceeds.  All proceeds payable by reason of
any loss or damage to the Leased Property, or any portion
thereof, and insured under any policy of insurance required by
Article 13 of this Lease shall be paid to Lessor and held by

Lessor in trust (subject to the provisions of Section 14.5) and shall be made available for reconstruction or repair, as the case may be, of any damage to or destruction of the Leased Property, or any portion thereof, and shall be paid out by Lessor from time to time subject to the provisions hereof for the reasonable cost of such reconstruction or repair. Any excess proceeds of insurance remaining after the completion of the restoration or reconstruction of the Leased Property (or in the event neither Lessor nor Lessee is required or elects to repair and restore, all such insurance proceeds) shall be retained by Lessor free and clear upon completion of any such repair and restoration except as otherwise specifically provided below in this Article 14. Excess proceeds of rental insurance shall be paid to Lessee. All salvage resulting from any risk covered by insurance shall belong to Lessor except that any salvage relating to Lessee's Personal Property shall belong to Lessee.

14.2    Reconstruction in the Event of Damage or Destruction Covered by Insurance.

14.2.1    Except as provided in Section 14.5, if during the Term, the Leased Property is totally or substantially destroyed from a risk covered by the insurance described in Article 13 and the Facility thereby is rendered Unsuitable for its Primary Intended Use, Lessee shall have the option, by giving notice to Lessor within sixty (60) days following the date of such destruction, to (a) restore the Facility to substantially the same condition as existed immediately before the damage or destruction, or (b) acquire the Leased Property from Lessor at the Fair Market Value to be determined as of the day immediately prior to such damage or destruction in which event Lessee shall be paid the insurance proceeds or (c) terminate this Lease, in which event Lessor shall be entitled to retain the insurance proceeds provided, however, that Lessee shall only have such right of termination effective upon recovery by Lessor of such insurance proceeds and, in the event such proceeds are less than the amount specified in Section 13.1.1 hereof plus the difference between Fair Market Value of the Leased Property immediately prior to such damage or casualty and said insurance proceeds (less land value), Lessee may terminate only upon payment of the amount of such shortfall in cash to Lessor at the time notice to terminate is given.

14.2.2    Except as provided in Section 14.5, if during the Term, the Leased Improvements and/or the Fixtures are totally or partially destroyed from a risk covered by the insurance described in Article 13, but the Facility is not thereby rendered Unsuitable for its Primary Intended Use, Lessee shall restore the Facility to substantially the same condition as existed immediately before the damage or destruction. Such damage or destruction shall not terminate this Lease; provided,

however, if Lessee, after exercise of diligent efforts, cannot within a reasonable time obtain all necessary governmental approvals, including building permits, licenses, conditional use permits and any certificates of need, after diligent efforts to do so, in order to be able to perform all required repair and restoration work and to operate the Facility for its Primary Intended Use in substantially the manner as immediately prior to such damage or destruction, Lessee may either (i) acquire the Leased Property from Lessor pursuant to Section 32.1 with the Fair Market Value to be determined as of immediately prior to such damage or destruction, in which event all insurance proceeds shall be assigned and payable to Lessee, or (ii) terminate this Lease in which event Lessor shall be entitled to retain the insurance proceeds; provided, however, that Lessee shall only have such right of termination effective upon recovery by Lessor of such insurance proceeds and in the event such proceeds are in an amount less than the amount specified in Section 13.1.1 hereof plus the difference between Fair Market Value of the Leased Property immediately prior to such damage or casualty and said insurance proceeds (less land value), Lessee may only terminate upon payment of the amount of such short-fall in cash to Lessor at the time notice to   .  terminate is given.

14.2.3    If the cost of the repair or restoration exceeds the amount of proceeds received by Lessor from the insurance required under Article 13, Lessee shall be obligated to contribute any excess amount needed to restore the Facility. Such amount shall be paid by Lessee to Lessor to be held in trust together with any other insurance proceeds for application to the cost of repair and restoration.

14.3    <u>Reconstruction in the Event of Damage or Destruction Not Covered by Insurance.</u>  Except as provided in Section 14.5 below, if during the Term, the Facility is totally or materially destroyed from a risk (including earthquake) not covered by the insurance described in Article 13, whether or not such damage or destruction renders the Facility Unsuitable for Its Primary Intended Use, Lessee shall restore the Facility to substantially the same condition as it was in immediately before such damage or destruction and such damage or destruction shall not terminate this Lease.  Such damage or destruction shall not terminate this Lease; provided, however, if Lessee, after exercise of diligent efforts, cannot within a reasonable time obtain all necessary governmental approvals, including building permits, licenses, conditional use permits and any certificates of need, after diligent efforts to do so, in order to be able to perform all required repair and restoration work and to operate the Facility for its Primary Intended Use in substantially the manner as immediately prior to such damage or destruction, Lessee may acquire the Leased Property from Lessor pursuant to Section 32.1 with the Fair

Market Value to be determined as of immediately prior to such damage or destruction.

14.4   **Lessee's Property.**  All insurance proceeds payable by reason of any loss of or damage to any of Lessee's Personal Property or Capital Additions financed by Lessee shall be paid to Lessee or, if Lessee self-insures, allocated by Lessee to Lessee or any loss payee designated by Lessee, and Lessee shall hold such insurance or self-insurance proceeds in trust to pay the cost of repairing or replacing damaged Lessee's Personal Property or Capital Additions paid for or financed by Lessee.

14.5   **Restoration of Lessee's Property.**  If Lessee is required or elects to restore the Facility as provided in Section 14.2 or 14.3, Lessee shall either (i) restore all alterations and improvements made by Lessee, Lessee's Personal Property and all Capital Additions paid for or financed by Lessee, or (ii) replace such alterations and improvements, Lessee's Personal Property, and/or Capital Additions with improvements or items of the same or better quality and utility in the operation of the Leased Property.

14.6   **Abatement of Rent.**  This Lease shall.remain in full force and effect and Lessee's obligation to make rental payments and to pay all other charges required by this Lease shall remain unabated during the first twelve (12) months of any period required for repair and restoration.  Thereafter, payments of Minimum Rent shall be abated as provided in Section 5.2.

14.7   **Damage Near End of Term.**  Notwithstanding any provisions of Sections 14.2 or 14.3 to the contrary, if damage to or destruction of the Facility occurs during the last twenty-four (24) months of the Term, and if such damage or destruction cannot be fully repaired and restored within six (6) months immediately following the date of loss, Lessor shall have the right to terminate this Lease by giving notice to Lessee within thirty (30) days after the date of damage or destruction in which event Lessor shall retain the insurance proceeds, and Lessee shall pay to Lessor, in the event such proceeds are less than the amount specified in Section 13.1.1 hereof, the difference between Fair Market Value of the Leased Property immediately prior to such damage or casualty and said insurance proceeds (less land value), provided however, that if Lessor exercises its option to terminate the Lease, Lessee has option to purchase the Leased Property pursuant to Article 32, provided that Lessee must exercise such option to purchase within thirty (30) days of receipt of termination notice under this Section, and the "Purchase Option Date" shall be deemed to be sixty (60) days after receipt of the termination notice under this Section.

-34-

14.8    Termination of Purchase Option.   Any termination of this Lease pursuant to this Article 14 shall cause any purchase option under Article 32 of this Lease to be terminated and to be without further force or effect.

14.9    Waiver.   Lessee hereby waives any statutory rights of termination which may arise by reason of any damage or destruction of the Facility which Lessee is obligated to restore or may restore under any of the provisions of this Lease.

## ARTICLE 15

## CONDEMNATION

15.1    Definitions.

(a)   "Award" means all compensation, sums or anything of value awarded, paid or received on a total or partial Condemnation.

(b)   "Condemnation" means (a) the exercise of any governmental power, whether by legal proceedings or otherwise, by a Condemnor or (b) a voluntary sale or transfer by Lessor to any Condemnor, either under threat of Condemnation or while legal proceedings for Condemnation are pending.

(c)   "Condemnor" means any public or quasi-public authority, or private corporation or individual, having the power of condemnation.

(d)   "Date of Taking" means the date the Condemnor has the right to possession of the property being condemned.

15.2    Parties' Rights and Obligations.   If during the Term there is any Taking of all or any part of the Leased Property or any interest in this lease by Condemnation, the rights and obligations of the parties shall be determined by this Article 15.

15.3    Total Taking.   If there is a Taking of all of the Leased Property by Condemnation, this Lease shall terminate on the Date of Taking.

15.4    Partial Taking.   If there is a Taking of a portion of the Leased Property by Condemnation, this Lease shall remain in effect if the Facility is not thereby rendered Unsuitable for Its Primary Intended Use.   If, however, the Facility is thereby rendered Unsuitable for Its Primary Intended Use, Lessee shall have the right (a) to restore the Facility, at its own expense, to the extent possible, to substantially the same condition as existed immediately before the partial Taking, (b) to acquire

the Leased Property from Lessor for a purchase price determined
in accordance with Section 34.1, with the Fair Market Value of
the Leased Property to be determined as of the day immediately
prior to such partial Taking. In which event this Lease shall
terminate upon payment of such purchase price, or (c) at
Lessor's option, to terminate this Lease as of the date when
Lessee is required to surrender possession of the portion of
the Leased Property so taken. Lessee (or Lessor) shall
exercise its option by giving Lessor notice thereof within
sixty (60) days after Lessee receives notice of the Taking.
If, as the result of any such partial Taking by Condemnation,
this Lease is not terminated as provided above, Lessee shall be
entitled to abatement of Rent as provided in Section 5.2,
effective as of the date upon which the Leased Property is
rendered Unsuitable for its Primary Intended Use.

15.5    Restoration.  If there is a partial Taking of the
Leased Property and this Lease remains in full force and effect
pursuant to Section 15.4, Lessee shall accomplish all necessary
restoration. If the cost of the restoration exceeds the amount
of the Award, Lessee shall be obligated to contribute any
excess amount needed to restore the Facility.

15.6    Award Distribution.  In the event Lessee purchases the
Leased Property, as described in Section 15.4, the entire Award
shall belong to Lessee and Lessor agrees to assign to Lessee
all of its rights thereto. In any other event, the entire
Award shall belong to and be paid to Lessor, except that, if
this Lease is terminated, and subject to the rights of the
Facility Mortgages, Lessee shall be entitled to receive from
the Award, if and to the extent such Award specifically
includes such items, the following:

        (a)  A sum attributable to the value, if any, of the
leasehold interest of Lessee under this Lease; and

        (b)  A sum attributable to the value of any personal
property placed on the Leased Property by and belonging to
Lessee and any reasonable removal and relocation costs included
in the Award.

        If Lessee is required or elects to restore the Facility,
Lessor agrees that, subject to the rights of the Facility
Mortgagee, its portion of the Award shall be used for such
restoration and it shall hold such portion of the Award in
trust, for application to the cost of the restoration.

15.7    Temporary Taking.  The Taking of the Leased Property,
or any part thereof, by military or other public authority
shall constitute a Taking by Condemnation only when the use and
occupancy by the Taking authority has continued for longer than
six (6) months. During any such six (6) month period all the

provisions of this **Lease** shall remain in full force and effect
except that the Minimum Rent and Additional Rent shall be
abated or reduced during such period of Taking as provided in
Section 5.2.

## ARTICLE 16

### DEFAULT

16.1    Events of Default.  Any of the following events shall
be an "Event of Default" hereunder, in which case Lessor shall
provide the notices to Lessee set forth in this Section 16.1
with a simultaneous notice to Fidelity Bank, National
Association pursuant to Article 31:

(a)  An Event of Default under any other lease between
Lessor or any Affiliate of Lessor and Lessee or any Affiliate
of Lessee that shall be related to (i) failure to pay Rent or
any other monetary sums due under such other lease which
failure is not cured within applicable grace periods or (ii)
any other material Event of Default under such other lease
including but not limited to:

(a)    **Lessee** failing to operate continuously the Leased
Property in accordance with its Primary Intended Use,
as described in Article 7.2.1 of the Lease.

(b)    **Lessee** failing to use the Leased Property and
improvements in accordance with its Primary Intended
Use and other such uses as may be necessary in
connection with or incidental to such use, in
accordance with Article 7.2.2 of this Lease.

(c)    **Lessee** failing to maintain its qualifications for
licensure and accreditation as required by its Legal
Requirements in accordance with Articles 7.2.2 and
Article 8.1 of this Lease if failure to do so will
result in an inability to operate or result in a
receivership.

(d)    **Lessee** shall suffer or permit the Leased Property or
any portion thereof to be used in such a manner as
(i) might reasonably tend to impair Lessor's title
thereof or to any portion thereof, or (ii) may
reasonably make possible a claim or claims of adverse
possession or adverse usage in accordance with Article
7.2.4 of this Lease.

(e)    **Lessee** using the Leased Property for any unlawful
purpose as more fully described in Article 8.2 of this
Lease.

(f)  Lessee failing to acquire and maintain all licenses, certificates and permits as more fully described in Article 8.3 of this Lease, if failure to do so will result in an inability to operate or result in a receivership.

(g)  Lessee failing to maintain and repair the Leased Property as more fully described in Article 9.1 of this Lease.

(h)  Lessee creating or allowing any liens or encumbrances, as more fully described in Article 11 of this Lease.

(i)  Lessee failing to comply with the terms of Article 14.2.1 of this Lease.

which default is not cured within ninety days after notice of such default, or an Event of Default under any of Lessee's or Guarantor's major lines of credit, or

(b)  Lessee shall fail to make a payment of the Rent payable by Lessee under this Lease when the same becomes due and payable and such failure is not cured by Lessee with a period of seven (7) days after receipt by Lessee of notice thereof from Lessor, or

(c)  Lessee shall fail to observe or perform any other term, covenant or condition of this Lease and such failure is not cured by Lessee within a period of thirty (30) days after receipt by Lessee of notice thereof from Lessor, unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if Lessee proceeds promptly and with due diligence to cure the failure and diligently completes the curing thereof, or

(d)  Lessee or Guarantor shall:

    (i)  admit in writing its inability to pay its debts generally as they become due,

    (ii)  file a petition in bankruptcy or a petition to take advantage of any insolvency act,

    (iii)  make an assignment for the benefit of its creditors,

    (iv)  consent to the appointment of a receiver of itself or of the whole or any substantial part of its property, or

(v)    file a petition or answer seeking reorganization
or arrangement under the federal bankruptcy laws
or any other applicable law or statute of the
United States of America or any state thereof, or

(e)    Lessee or Guarantor shall have a petition in
bankruptcy filed against it which shall remain undismissed or
unstayed for a period of sixty (60) days, or Lessee or
Guarantor shall be adjudicated a bankrupt, or if a court of
competent jurisdiction shall enter an order or decree
appointing, without the consent of Lessee or Guarantor, as the
case may be, a receiver of Lessee or Guarantor, as the case may
be, of the whole or substantially all of its property, or
approving a petition filed against it seeking reorganization or
arrangement of Lessee or Guarantor, as the case may be, under
the federal bankruptcy laws or any other applicable law or
statute of the United States of America or any other state
thereof;

(f)    Lessee or Guarantor shall be liquidated or dissolved,
or shall begin proceedings toward such liquidation or
dissolution, or Lessee shall, in any manner except as provided
in Article 22 of this Lease, permit the sale or divestiture of
substantially all of its assets other than in connection with a
merger or consolidation of Lessee into, or a sale of Lessee or
substantially all of Lessee's assets to, another corporation,
provided that if the survivor of such merger or the purchaser
of such assets shall assume all of Lessee's obligations under
this Lease by a written instrument, in form and substance
reasonably satisfactory to Lessor, accompanied by an opinion of
counsel, reasonably satisfactory to Lessor and addressed to
Lessor stating that such instrument of assumption is valid,
binding and enforceable against the parties thereto in
accordance with its terms (subject to usual bankruptcy and
other creditors' rights exceptions), and provided, further,
that if, immediately after giving effect to any such merger,
consolidation or sale, Lessee or such other corporation (if not
the Lessee) surviving the same together with the Guarantor,
shall have a Consolidated Net Worth not less than the
Consolidated Net Worth of Lessee and Guarantor immediately
prior to such merger, consolidation of sale, all as to be set
forth in an Officer's Certificate delivered to Lessor within a
reasonable period of time after such merger, consolidation or
sale and provide Lessor an estoppel certificate from the
Guarantor recognizing full liability under the Guaranty
notwithstanding the sale or merger and such sufficient other
security for the obligations under this Lease as Lessor may
request (including further guaranties), an Event of Default
shall not be deemed to have occurred, or

(g)    the estate or interest of Lessee in the Leased
Property or any part thereof shall be levied upon or attached

in any proceeding and the same shall not be vacated or discharged within the later of ninety (90) days after commencement thereof or thirty (30) days after receipt by Lessee of notice thereof from Lessor (unless Lessee shall be contesting such lien or attachment in good faith in accordance with Article 12 hereof), or

(h)   except as a result of damage, destruction or a partial or complete Condemnation, Lessee voluntarily ceases operations on the Leased Property for a period in excess of two hundred seventy (270) days, or

(i)   any of the representations or warranties made in Article 5 of the Agreement of Purchase and Sale proves to be untrue when made in any material respect, which circumstances materially and adversely affects Lessor, and is not cured within thirty (30) days after receipt by Lessee of notice from Lessor thereof, or

(j)   Guarantor shall fail to make any payment when due under the Guaranty or if any other default shall occur under the Guaranty which is not cured within thirty (30) days after notice;

provided, however, that no Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay so long as, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2    Remedies.

(a)   If any Event of Default shall have occurred and be continuing, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' Notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  At the same time that Lessor gives Lessee notice of such termination, Lessor also shall give Fidelity Bank, National Association, notice of such termination.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

(b)   Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

(c)  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Paragraph (a) of this Section, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all of Lessee's Personal Property from the Leased Property subject to the rights of any residents or patients and to any requirement of law, or Lessor may claim ownership of Lessee's Personal Property as set forth in Article 32 hereof.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

(d)  In addition to all of the rights and remedies of Lessor set forth in this lease, if Lessee shall fail to pay any rental due hereunder (whether denominated as Minimum Rent, Additional Rent or otherwise) within ten days after same shall have become due and payable, then and in such event the Lessee shall also pay to the Lessor a late payment service charge (in order to partially defray the Lessor's administrative and other overhead expenses) of two hundred fifty dollars ($250) plus interest on such unpaid sum per day for each day or part thereof after the Payment Date thereof during which such payment shall not have been received by Lessor at the greater of (i) 18% or (ii) the Overdue Rate, but in no event in excess of any maximum interest rate (if such sum shall be denominated as interest by any court or competent jurisdiction) permissible under applicable law, it being understood that nothing herein shall be deemed to extend the due date for payment of any sums required to be paid by Lessee hereunder or to relieve Lessee of its obligation to pay such sums at the time or times required by this Lease.

16.3  Damages.  None of (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, or (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting.  In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination.  Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

(A)   the sum of:

(i)   the worth, on the date of the award described below, of the Rent that is due and unpaid at the time of termination,

(ii)   the worth, on the date of award of the amount by which the Rent that would have been earned after termination until the date of the award exceeds the amount of such rental loss that Lessee proves could have been reasonably avoided,

(iii) the worth, on the date of the award, of the amount by which the unpaid Rent for the balance of the Term after the date of the award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided, and

(iv)   any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course would be likely to result therefrom.

In making the above determinations, the worth on the date of the award shall be determined by a court having jurisdiction thereof using the lowest rate of capitalization (highest present worth) reasonably applicable at the time of such determination and allowed by applicable law and the Additional Rent shall be deemed to be the same as for the then current Fiscal Year or, if not determinable, the immediately preceding Fiscal Year, for the remainder of the Term, or such other amount as either party shall prove reasonably could have been earned during the remainder of the Term or any portion thereof;

or (B)

each installment of said Rent and other sums payable to Lessee to Lessor under this Lease as the same would have become due and payable if the Lessee's right of possession or other rights under the Lease had not been terminated, which Rent and other sums shall bear interest at the greater of 18% or the Prime Rate plus 2%, provided that in no event shall the rate be greater than the maximum annual rate permitted by the laws of the state in which the Leased Property is located from the date when due until paid, and Lessor may enforce, by action or otherwise, any other term or covenant of this Lease.

16.4   Waiver.  If this Lease is terminated pursuant to Section 16.2, Lessee waives, to the extent permitted by

applicable law, (a) any right of redemption, re-entry or repossession, (b) any right to a trial by jury in the event of summary proceedings to enforce the remedies set forth in this Article 16, and (c) the benefit of any laws now or hereafter in force exempting property from liability for rent or for debt.

15.5   Application of Funds.   Any payments otherwise payable to Lessee which are received by Lessor under any of the provisions of this Lease during the existence or continuance of any Event of Default shall be applied to Lessee's obligations in the order which Lessor may reasonably determine or as may be prescribed by the laws of the state in which the Facility is located.

15.6   Failure to Conduct Business.   For the purpose of determining rental loss damages or Additional Rent, in the event Lessee fails to conduct business upon the Leased Property, exact damages or the amount of Additional Rent being unascertainable, it shall be deemed that the Additional Rent for such period would be equal to the highest annual Additional Rent during the five (5) preceding Fiscal Years or such shorter period of time as the Lease is in force.

16.7   Lessee's Obligation to Purchase.   If an Event of Default shall have occurred and be continuing, by including such requirement in the ten- (10-) day Notice of termination of this Lease given to Lessee by Lessor pursuant to the provisions of Paragraph (a) of Section 16.2 or by separate Notice given by Lessor to Lessee at any time thereafter prior to the time such Event of Default shall be cured, Lessor may require Lessee to purchase the Leased Property on the first Payment Date occurring not less than thirty (30) days after the receipt of, or such later date that is specified in, said Notice requiring such purchase.  The purchase price of the Leased Property shall be an amount equal to the higher of (i) the then current Fair Market Value Purchase Price of the Leased Property or (ii) the Original Purchase Price of the Leased Property paid by Lessor plus an adjustment increase for the increase in the Cost of Living Index since the Commencement Date of this Lease plus Fair Market Added Value, plus all Rent then due and payable (excluding the installment of Minimum Rent due on the purchase date) as of the date of purchase.  In no event shall the date of such purchase by Lessee occur prior to the receipt by Lessee of all applicable governmental consents and approvals, including without limitation, licenses and approval, or a decision not to review the capital expenditure contemplated herein, by the health planning agencies having jurisdiction over the Leased Property, provided, however, that Lessee shall be required to purchase the Leased Property at the end of one (1) year following such Notice whether or not such consents and approvals have been obtained.  If Lessor exercises such right, Lessor shall convey the Leased Property to Lessee on the date

fixed therefor in accordance with the provisions of Article 18 upon receipt of the purchase price therefor and this Lease shall thereupon terminate. Any purchase by Lessee of the Leased Property pursuant to this Section shall be in lieu of the damages specified in Section 16.1.

## ARTICLE 17

### LESSOR'S RIGHT TO CURE

17.1    If Lessee shall fail to make any payment, or to perform any act required to be made or performed under this Lease and to cure the same within the relevant time periods provided in Section 16.1, Lessor, after notice to and demand upon Lessee, and without waiving or releasing any obligation or Event of Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Lessee, and may, to the extent permitted by law, enter upon the Leased Property for such purpose and take all such action thereon as, in Lessor's opinion, may be necessary or appropriate therefor. No such entry shall be deemed an eviction of Lessee. All sums so paid by Lessor and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses, in each case, to the extent permitted by law) so incurred, together with a late charge thereon (to the extent permitted by law) at the Overdue Rate from the date on which such sums or expenses are paid or incurred by Lessor, shall be paid by Lessee to Lessor on demand. The obligations of Lessee and rights of Lessor contained in this Article shall survive the expiration or earlier termination of this Lease.

## ARTICLE 18

### PURCHASE OF THE LEASED PROPERTY

18.1    In the event Lessee purchases the Leased Property from Lessor pursuant to any of the terms of this Lease, Lessor shall, upon receipt from Lessee of the applicable purchase price, together with full payment of any unpaid Rent due and payable with respect to any period ending on or before the date of the purchase, deliver to Lessee an appropriate deed or other instrument of conveyance conveying the entire interest of Lessor in and to the Leased Property to Lessee subject to all encumbrances of record other than any encumbrances permitted to be imposed on the Leased Property under the provisions of Article 36 and other than encumbrances arising from judgments or attachments solely against Lessor and not from any action or inaction by Lessee or its agents, unless such encumbrances are assumable at no cost to Lessee or to which Lessee may take subject without cost to Lessee. The difference between the

-44-

applicable purchase price and the total of the encumbrances
assigned or taken subject to shall be paid in cash to Lessor,
or as Lessor may direct, in federal or other immediately
available funds except as otherwise mutually agreed by Lessor
and Lessee.  The closing of any such sale shall be contingent
upon and subject to Lessee's obtaining all required
governmental consents and approvals for such transfer and if
such sale shall fail to be consummated by reason of the
inability of Lessee, after use of diligent efforts, to obtain
all such approvals and consents, then this Lease shall remain
in effect on a month-to-month basis until the consummation of
the purchase or until Lessee's inability to obtain the
approvals and consents is confirmed.  All expenses of such
conveyance, including, without limitation, the cost of title
examination or standard coverage title insurance, attorneys'
fees incurred by Lessor in connection with such conveyance, and
transfer taxes, shall be paid by Lessee.  Recording fees and
similar charges shall be paid for by Lessee.

## ARTICLE 19

### HOLDING OVER

19.1    If Lessee shall for any reason remain in possession of
the Leased Property after the expiration of the Term or any
earlier termination of the Term hereof, such possession shall
be as a month-to-month tenant during which time Lessee shall
pay as rental each month, one and one-half times the aggregate
of (i) one-twelfth of the aggregate Minimum Rent and Additional
Rent payable with respect to the last complete Lease Year prior
to the expiration of the Term; (ii) all Additional Charges
accruing during the month and (iii) all other sums, if any,
payable by Lessee pursuant to the provisions of this Lease with
respect to the Leased Property.   During such period of
month-to-month tenancy, Lessee shall be obligated to perform
and observe all of the terms, covenants and conditions of this
Lease, but shall have no rights hereunder other than the right,
to the extent given by law to month-to-month tenants, to
continue its occupancy and use of the Leased Property.  Nothing
contained herein shall constitute the consent, express or
implied, of Lessor to the holding over of Lessee after the
expiration or earlier termination of this Lease.

## ARTICLE 20

### RISK OF LOSS

20.1    During the Term of this Lease, the risk of loss or of
decrease in the enjoyment and beneficial use of the Leased
Property in consequence of the damage or destruction thereof by
fire, the elements, casualties, thefts, riots, wars or

-45-

otherwise, or in consequence of foreclosures, attachments, levies or executions (other than by Lessor and those claiming from, through or under Lessor) is assumed by Lessee and, in the absence of the negligence, willful misconduct or default in the performance of its obligations pursuant to Section 16. Lessor shall in no event be answerable or accountable therefor nor shall any of the events mentioned in this Section entitle Lessee to any abatement of Rent except as specifically provided in this Lease.

## ARTICLE 21

## INDEMNIFICATION

21.1    Notwithstanding the existence of any insurance provided for in Article 13, and without regard to the policy limits of any such insurance, Lessee will protect, indemnify, save harmless and defend Lessor from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses), to the extent permitted by law, imposed upon or incurred by or asserted against Lessor by reason of: (a) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Leased Property or adjoining sidewalks, including without limitation any claims of malpractice, (b) any use, misuse, non-use, condition, maintenance or repair by Lessee of the Leased Property, (c) any Impositions (which are the obligations of Lessee to pay pursuant to the applicable provisions of this Lease), (d) any failure on the part of Lessee to perform or comply with any of the terms of this Lease, (e) the nonperformance of any of the terms and provisions of any and all existing and future subleases of the Leased Property to be performed by the landlord (Lessee) thereunder and (f) any presence, storage, release or removal of Hazardous Substances from or on the Leased Property related to activities on the Leased Property which is in violation of any law, ordinance, regulation, rule or order of local, state or federal authorities.  Any amounts which become payable by Lessee under this Section shall be paid within ten (10) days after liability therefor on the part of Lessor is determined by litigation or otherwise, and if not timely paid, shall bear a late charge (to the extent permitted by law) at the Overdue Rate from the date of such determination to the date of Payment.  Lessee, at its expense, shall contest, resist and defend any such claim, action or proceeding asserted or instituted against Lessor or may compromise or otherwise dispose of the same as Lessee sees fit.  Nothing herein shall be construed as indemnifying Lessor against its own gross negligence or willful misconduct or a default of Lessor in its performance of its obligations hereunder.

-46-

Lessor shall indemnify, save harmless and defend Lessee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including attorneys' fees and expenses) imposed upon or incurred by or asserted against Lessee as a result of the gross negligence or willful misconduct of Lessor.

Lessee's or Lessor's liability for a breach of the provisions of this Article arising during the Term hereof shall survive any termination of this Lease.

## ARTICLE 22

## SUBLETTING AND ASSIGNMENT

22.1    Subletting and Assignment.    Lessee may not, without the prior written consent of Lessor, which consent shall be at Lessor's sole discretion, assign this Lease or sublet all or any part of the Leased Property.  For purposes of this Section 22.1, the term "assign" shall be deemed to include any one or more sales, pledges or other transfers hereafter of an aggregate of twenty-five percent (25%) or more of the capital stock of any class of Lessee or of Guarantor, or of any such sales, pledges or other transfers of the capital, assets or income interest in Lessee or Guarantor, and such sale, pledge, or other transfer results in a change in the day-to-day management and administration of the Facility.  The term "assign" shall not be deemed to include any public offering of Guarantor's stock.

22.2    Attornment.    Lessee shall insert in each sublease permitted under Section 22.1, provisions to the effect that (a) such sublease is subject and subordinate to all of the terms and provisions of this Lease and to the rights of Lessor hereunder, (b) in the event this Lease shall terminate before the expiration of such sublease, the sublessee thereunder will, at Lessor's option, attorn to Lessor and waive any right the sublessee may have to terminate the sublease or to surrender possession thereunder, as a result of the termination of this Lease and (c) in the event the sublessee receives a written notice from Lessor or Lessor's assignees, if any, stating that Lessee is in default under this Lease, the sublessee shall thereafter be obligated to pay all rentals accruing under said sublease directly to the party giving such notice or as such party may direct.  All rentals received from the sublessee by Lessor or Lessor's assignees, if any, as the case may be, shall be credited against the amounts owing by Lessee under this Lease.

## ARTICLE 23

## OFFICER'S CERTIFICATES; FINANCIAL STATEMENTS
## AND ANNUAL BUDGETS.

### 23.1   Officer's Certificates.

At any time and from time to time upon Lessee's receipt of not less than twenty (20) days' prior written request by Lessor, Lessee will furnish to Lessor an Officer's Certificate certifying that this Lease is unmodified and in full force and effect (or that this Lease is in full force and effect as modified and setting forth the modifications) and the dates to which the Rent has been paid. Any such Officer's Certificate furnished pursuant to this Section shall be addressed to such prospective purchaser or mortgagee of the Leased Property as Lessor may request and may be relied upon by Lessor and any such prospective purchaser or mortgagee of the Leased Property.

### 23.2   Financial Statements.

Lessee will furnish and cause Guarantor to furnish the following statements to Lessor:

(i)      within ninety (90) days after the end of each of Lessee's fiscal years, a copy of the Consolidated Financials for the preceding fiscal year certified by an independent certified public accountant and an Officer's Certificate stating that to the best of the signer's knowledge and belief after making due inquiry, Lessee is not in default in the performance or observance of any of the terms of this Lease or, if Lessee shall be in default to its knowledge, specifying all such defaults, the nature thereof and the steps being taken to remedy the same;

(ii)     within twenty (20) days after the end of each calendar month during the Term, Lessee shall deliver to Lessor a statement certified as correct by Lessee's chief financial officer, which statement shall set forth Gross Revenues of the Facility for the immediately preceding month, the Additional Rent calculation for each month, and an income and expense report for the Facility which shall include operating statements and occupancy statistics;

(iii)    within twenty (20) days after the end of each of Lessee's fiscal quarters, Lessee shall provide Lessor with Consolidated Financial Statements for Lessee certified as correct by Lessee's chief financial officer;

(iv)    with reasonable promptness, such other
information respecting the financial condition and
affairs of Lessee as Lessor may reasonably request
from time to time; and

(v)    Consolidated Financial Statements of
Guarantor certified by the chief financial officer of
Guarantor within forty-five (45) days after each
Fiscal Quarter (and within ninety (90) days after a
final quarter in any Fiscal Year).

23.3    Licensing Information.  Lessee shall promptly furnish
to Lessor complete copies of all surveys, examinations,
inspections, compliance certificates and other similar reports
of any kind issued to Lessee by any governmental agencies or
authority having jurisdiction over the licensing of the
operation of the Facility.

23.4    Annual Budgets.  Lessor, in its sole discretion, shall
from time to time have the right to review Lessee's proposed
annual budgets with respect to the Facility.  Lessor shall have
the right to reasonably object to any line items in such budget
and in such case Lessee shall resolve Lessor's objection within
sixty (60) days after notice of such objection or Lessee shall
be deemed in default under this Lease.

## ARTICLE 24

## INSPECTION

24.1    Lessee shall permit Lessor and its authorized
representatives to inspect the Leased Property and to make any
on-site surveys including soil testing, structural testing,
etc. during usual business hours subject to any security,
health, safety or confidentiality requirements of Lessee, any
governmental agency, any Insurance Requirements relating to the
Leased Property, or imposed by law or applicable regulations.

## ARTICLE 25

## NO WAIVER

25.1    No failure by Lessor or Lessee to insist upon the
strict performance of any term hereof or to exercise any right,
power or remedy consequent upon a breach thereof, and no
acceptance of full or partial payment of Rent during the
continuance of any such breach, shall constitute a waiver of
any such breach or any such term.  To the extent permitted by
law, no waiver of any breach shall affect or alter this Lease,
which shall continue in full force and effect with respect to
any other then existing or subsequent breach.

## ARTICLE 26

### REMEDIES CUMULATIVE

26.1    To the extent permitted by law, each legal, equitable
or contractual right, power and remedy of Lessor or Lessee now
or hereafter provided either in this Lease or by statute or
otherwise shall be cumulative and concurrent and shall be in
addition to every other right, power and remedy and the
exercise or beginning of the exercise by Lessor or Lessee of
any one or more of such rights, powers and remedies shall not
preclude the simultaneous or subsequent exercise by Lessor or
Lessee of any or all of such other rights, powers and remedies.

## ARTICLE 27

### SURRENDER OF LEASED PROPERTY: OF LEASE

27.1    (i)  Unless Lessor shall convey any of the Leased
Property to Lessee, Lessee will, upon the expiration or prior
termination of the Term, vacate and surrender the Leased
Property to Lessor in the condition in which the Leased
Property was originally received from Lessor, except as
repaired, rebuilt, restored, altered or added to as permitted
or required by the provisions of this Lease and/except for
ordinary wear and tear (subject to the obligation of Lessee to
maintain the Leased Property in good order and repair during
the entire Term of the Lease), damage caused by the gross
negligence or willful acts of Lessor and damage or destruction
described in Article 14 or resulting from a Taking described in
Article 15 which Lessee is not required by the terms of this
Lease to repair or restore, and Lessee shall use its best
efforts to transfer and assign to Lessor or its designee, or
assist Lessor or its designee in obtaining, any contracts,
licenses, and certificates required for the then operation of
the Facility.

(ii) Except at the termination of the Term in the
ordinary course, no surrender to Lessor of this Lease or of the
Leased Property or any part of any thereof, or of any interest
therein, shall be valid or effective unless agreed to and
accepted in writing by Lessor and no act by Lessor or any
representative or agent of Lessor, other than such a written
acceptance by Lessor, shall constitute an acceptance of any
such surrender.

## ARTICLE 28

### NO MERGER OF TITLE

28.1    There shall be no merger of this Lease or of the
leasehold estate created hereby by reason of the fact that the

same person, firm, corporation or other entity may acquire, own
or hold, directly or indirectly, (a) this Lease or the
leasehold estate created hereby or any interest in this Lease
or such leasehold estate and (b) the fee estate in the Leased
Property.

## ARTICLE 29

### TRANSFERS BY LESSOR

29.1   If Lessor or any successor owner of the Leased
Property shall convey the Leased Property in accordance with
the terms hereof, other than as security for a debt, and the
grantee or transferee of the Leased Property shall expressly
assume all obligations of Lessor hereunder arising or accruing
from and after the date of such conveyance or transfer, and
shall be reasonably capable of performing the obligations of
Lessor hereunder. Lessor or such successor owner, as the case
may be, shall thereupon be released from all future liabilities
and obligations of the Lessor under this Lease arising or
accruing from and after the date of such conveyance or other
transfer as to the Leased Property and all such future
liabilities and obligations shall thereupon be binding upon the
new owner.

## ARTICLE 30

### QUIET ENJOYMENT

30.1   So long as Lessee shall pay all Rent as the same
becomes due and shall fully comply with all of the terms of
this Lease and fully perform its obligations hereunder, Lessee
shall peaceably and quietly have, hold and enjoy the Leased
Property for the Term hereof, free of any claim or other action
by Lessor or anyone claiming by, through or under Lessor, but
subject to all liens and encumbrances of record as of the date
hereof or hereafter consented to by Lessee. No failure by
Lessor to comply with the foregoing covenant shall give Lessee
any right to cancel or terminate this Lease, or to fail to
perform any other sum payable under this Lease, or to fail to
perform any other obligation of Lessee hereunder.
Notwithstanding the foregoing, Lessee shall have the right by
separate and independent action to pursue any claim it may have
against Lessor as a result of a breach by Lessor of the
covenant of quiet enjoyment contained in this Article.

## ARTICLE 31

### NOTICES

31.1   All notices, demands, requests, consents, approvals
and other communications hereunder shall be in writing and

-51-

delivered or mailed (by registered or certified mail, return receipt requested and postage prepaid), or delivered by reputable overnight delivery service, addressed to the respective parties, as follows:

    (a)  if to Lessee:

        Integrated Health Services of Cliff Manor, Inc.
        11019 McCormick Road, Suite 400
        Hunt Valley, MD  21031
        Attn:  William Krystopowicz

    with a copy to:

        Duane, Morris & Heckscher
        One Franklin Place, Suite 1500
        Philadelphia, PA  19102
        Attn:  Brian Siegel, Esquire

    (b)  if to Lessor:

        Meditrust of Missouri, Inc.
        15-A Walnut Street
        Wellesley, MA  02181
        Attn:  Jonathan S. Sherwin

    with a copy to:

        Hutter, McClennen & Fish
        One International Place
        Boston, MA 02110-2699
        Attn:  Michael J. Bohnen, Esquire

    if to Fidelity Bank, National Association (pursuant to
Sections 16.1 and 16.2):

        Broad and Walnut Streets
        Philadelphia, PA 19109
        Attn:  Douglas D. Dimmig, Vice President

    with a copy to:

        Charles C. Freyer, Esq.
        Saul Ewing Remick & Saul
        3800 Centre Square West
        1500 Market Street
        Philadelphia, PA 19102

or to such other address as either party may hereafter designate, and shall be effective upon receipt.

## ARTICLE 32

### PURCHASE RIGHTS

32.1    **Lessee's Option to Purchase the Leased Property**. If this Lease is in full force and effect and there exists no Event of Default which has not been cured within any applicable grace period, then Lessee shall have the option exercisable on not less than six (6) months' nor more than twenty-four (24) months' notice to purchase the Leased Property on the Purchase Option Date at the greater of the Fair Market Value Purchase Price of the Leased Property as of such Purchase Option Date or the Original Purchase Price of the Leased Premises paid by Lessor plus an adjustment increase for the increase in the Cost of Living Index from the Commencement Date plus the Fair Market Added Value as of such Purchase Option Date. If the Lessor and Lessee cannot agree on the purchase price, then the Appraisal Method set forth in Article 34 shall be used. The Lessor shall have the right in its sole discretion to extend the Purchase Option Date to any date less than one year after the Purchase Option Date by written notice to the Lessee, and there may be more than one such extension during the one-year period.

32.2    **Lessor's Option to Purchase Lessee's Personal Property**. Upon termination of this Lease, whether by expiration of the Term or otherwise, Lessor shall have the option to purchase all or any portion of Lessee's Personal Property, if any, at the expiration or termination of this Lease, for an amount equal to the then net market value thereof (current replacement cost as determined by appraisal less accumulated depreciation on the books of Lessee pertaining thereto), subject to, and with appropriate price adjustments for, all equipment leases, conditional sale contracts, UCC-1 financing statements and other encumbrances to which such Lessee's Personal Property is subject. Notwithstanding the foregoing, if Lessee is in default under this Lease, at Lessor's option, all Lessee's Personal Property may be used by Lessor pursuant to the terms of Article 6 of this Lease.

32.3    **Right of First Refusal**. During the Term of this Lease (provided that Lessee is not then in default hereunder), Lessee shall have a first refusal option to purchase the Leased Property upon the same terms and conditions as Lessor, or its successors and assigns, shall propose to sell Leased Property, or shall have received an offer from a third party to purchase the Leased Property which Lessor intends to accept (or has accepted subject to Lessee's right of first refusal herein). A sale of the Leased Property shall not include any transfers of stock by Lessor, any refinancings of the Leased Property, or any foreclosure sales or mortgagee sales in lieu of foreclosure. If, during the Term, Lessor reaches such agreement with a third party or proposes to offer the Leased

Property for sale, Lessor shall promptly notify Lessee of the
purchase price and all other material terms and conditions of
such agreement or proposed sale and Lessee shall have thirty
(30) days after receipt of such notice from Lessor within which
time to exercise Lessee's option to purchase.  If Lessee
exercises its option, then such transaction shall be
consummated, in accordance with the terms and conditions set
forth therein and in accordance with the provisions of Article
18 hereof.  This right of first refusal shall terminate upon
termination for whatever reason of this Lease.

## ARTICLE 33

### EXTENDED TERMS

33.1   If no Event of Default shall have occurred and be
continuing, Lessee is hereby granted the right to extend the
Term of this Lease for three (3) additional five- (5-) year
periods ("Extended Terms") for a maximum Term if all such
options are exercised of fifteen (15) years after the
expiration of the Fixed Term, upon giving written notice to
Lessor of each such extension at least one hundred eighty (180)
days, but not more than three hundred sixty (360) days, prior
to the termination of the then current Term or Extended Term,
subject, however, to the provisions of Section 16.7 hereof.
Lessee may not exercise its option for more than one Extended
Term at a time.  During each Extended Term, all of the terms
and conditions of this Lease shall continue in full force and
effect, except that the Minimum Rent for each such Extended
Term shall be an amount equal to the greater of (a) the then
fair market rental value of the Leased Premises, which unless
mutually agreed to by Lessor and Lessee shall be determined by
appraisal pursuant to Article 34, or (b) the Rent Adjustment
Rate using a Rent Adjustment Date of the calendar month prior
to the start of the Extended Term (but in any event an amount
no less than the Minimum Rent for the last Lease Year of the
Term or the Extended Term, as the case may be) plus a lease
renewal fee equal to one (1) percent of the Original Purchase
Price payable on the date of Lessee's notice to Lessor
requesting an extension to this Lease.

## ARTICLE 34

### APPRAISAL

34.1   In the event that it becomes necessary to determine
the Fair Market Value of the Leased Property for any purpose of
this Lease, the party required or permitted to give notice of
such required determination shall include in the notice the
name of a person selected to act as appraiser on its behalf.
Within ten (10) days after receipt of any such notice, Lessor
(or Lessee, as the case may be) shall by notice to Lessee (or

Lessor, as the case may be) appoint a second person as appraiser on its behalf. The appraisers thus appointed, each of whom must be a member of the American Institute of Real Estate Appraisers (or any successor organization thereto), shall, within 45 days after the date of the notice appointing the first appraiser, proceed to appraise the Leased Property to determine the Fair Market Value thereof as of the relevant date (giving effect to the impact, if any, of inflation from the date of their decision to the relevant date); provided, however, that if only one appraiser shall have been so appointed, or if two appraisers shall have been so appointed but only one such appraiser shall have made such determination within 50 days after the making of Lessee's or Lessor's request, then the determination of such appraiser shall be final and binding upon the parties. To the extent consistent with sound appraisal, such appraisal shall be made on a basis consistent with the basis on which the Leased Property was appraised for purposes of determining its Fair Market Value at the time the Leased Property was acquired by Lessor. If two appraisers shall have been appointed and shall have made their determinations within the respective requisite periods set forth above and if the difference between the amounts so determined shall not exceed ten per cent (10%) of the lesser of such amounts, then the Fair Market Value shall be an amount equal to 50% of the sum of the amounts so determined. If the difference between the amounts so determined shall exceed ten percent (10%) of the lesser of such amounts, then such two appraisers shall have 20 days to appoint a third appraiser, but if such appraisers fail to do so, then either party may request the American Arbitration Association or any successor organization thereto to appoint an appraiser within 20 days of such request, and both parties shall be bound by any appointment so made within such 20 day period. If no such appraiser shall have been appointed within such 20 days or within 90 days of the original request for a determination of Fair Market Value, whichever is earlier, either Lessor or Lessee may apply to any court having jurisdiction to have such appointment made by such court. Any appraiser appointed by the original appraisers, by the American Arbitration Association or by such court shall be instructed to determine the Fair Market Value within 30 days after appointment of such Appraiser. The determination of the appraiser which differs most in terms of dollar amount from the determinations of the other two appraisers shall be excluded, and 50% of the sum of the remaining two determinations shall be final and binding upon Lessor and Lessee as the Fair Market Value for such interest. This provision for determination by appraisal shall be specifically enforceable to the extent such remedy is available under applicable law, and any determination hereunder shall be final and binding upon the parties except as otherwise provided by applicable law. Lessor and Lessee shall each pay the fees and expenses of the appraiser appointed by it and each shall

pay one-half of the fees and expenses of the third appraiser and one-half of all other cost and expenses incurred in connection with each appraisal.

## ARTICLE 35

## DEFAULT BY LESSOR

35.1    Lessor shall be in default of its obligations under this Lease if Lessor shall fail to observe or perform any term, covenant or condition of this Lease on its part to be performed and such failure shall continue for a period of thirty (30) days after notice thereof from Lessee (or such shorter time as may be necessary in order to protect the health or welfare of any patients of the Facility), unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if Lessor, within said thirty (30) day period, proceeds promptly and with due diligence to cure the failure and diligently completes the curing thereof.  The time within which Lessor shall be obligated to cure any such failure shall also be subject to extension of time due to the occurrence of any Unavoidable Delay.

## ARTICLE 36

## LIENS ON THE LEASED PROPERTY

36.1    Lessor May Grant Liens.  Without the consent of Lessee, Lessor may, subject to the terms and conditions set forth below in this Section 36.1, from time to time, directly of indirectly, create or otherwise cause to exist any lien, encumbrance or title retention agreement ("Encumbrance") upon the Leased Property, or any portion thereof or interest therein, whether to secure any borrowing or other means of financing or refinancing.  Any such Encumbrance shall contain the right to prepay (whether or not subject to a prepayment penalty) and shall provide that it is subject to the rights of Lessee under this Lease, including the rights of Lessee to acquire the Leased Property pursuant to the applicable provisions of this Lease, except that Lessee's right of option to purchase the Leased Property shall not be applicable upon a foreclosure sale or transfer in lieu thereof; provided, however, that any such purchaser or transferee (a) shall take title subject to Lessee's rights to acquire the Leased Property pursuant to Article 32, (b) shall agree to give Lessee the same notice, if any, given to Lessor of any default or acceleration of any obligation underlying any such mortgage or any sale in foreclosure under such mortgage, and (c) shall agree to permit Lessee to appear by its representative and to bid at any sale in foreclosure made with respect to any such mortgage.  Upon the reasonable request of Lessor, Lessee shall subordinate this

Lease to the lien of a new mortgage on the Leased Property, on
the condition that the proposed mortgagee executes a
non-disturbance agreement in conformity to Section 37.1
recognizing this Lease and agreeing, for itself and its
successors and assigns, to comply with the provisions of this
Article 36, including all other options, preemption,
substitution and other rights of Lessee under this Lease.

## ARTICLE 37

### SUBORDINATION AND NON-DISTURBANCE

37.1    Upon Lessee's request, Lessor will use reasonable
efforts to obtain and deliver to Lessee agreements by the
holder of any Encumbrances entered into after the date hereof
which (a) consent to this Lease and agree that, notwithstanding
any such overlease, mortgage, deed of trust, right, title or
interest of any other Encumbrance, or any default, expiration,
termination, foreclosure, sale, entry or other act or omission
under, pursuant to or affecting any of the foregoing, Lessee
shall not be disturbed in peaceful enjoyment of the Leased
Property nor shall this Lease be terminated or cancelled at any
time, except in the event Lessor shall have the right to
terminate this Lease under the terms and provisions expressly
set forth herein; (b) agreeing that for any period while it may
be Lessor hereunder, it will perform, fulfill and observe all
of Lessor's representations, warranties and agreements set
forth herein; and (c) agreeing that all proceeds of the
casualty insurance described in Article 14 of this Lease and
all Awards described in Article 15 will be made available to
Lessee for restoration of the Leased Property as and to the
extent required by this Lease, subject only to reasonable
regulation regarding the disbursement and application thereof;
provided, however, that Lessee delivers an agreement of the
type described in the following paragraph if so requested by
the holder of an Encumbrance.

At the request from time to time by one or more holders of
any Encumbrance that may hereafter be placed upon the Leased
Property or any part thereof by Lessor, and any and all
renewals, replacements, modifications, consolidations,
spreaders and extensions thereof, Lessee will subordinate this
Lease and all of Lessee's rights and estate hereunder to each
such Encumbrance and agree with each such holder that Lessee
will attorn to and recognize such holder or the purchaser at
any foreclosure sale or any sale under a power of sale
contained in any such Encumbrance as Lessor under this Lease
for the balance of the Term then remaining, subject to all of
the terms and provisions of this Lease; provided, however, that
each such holder simultaneously executes, delivers and records
a written agreement as provided in the preceding paragraph.

## ARTICLE 38

### MISCELLANEOUS

38.1   General.   Anything contained in this Lease to the contrary notwithstanding, all claims against, and liabilities of, Lessee or Lessor arising prior to any date of termination of this Lease shall survive such termination.  If any term or provision of this Lease or any application thereof shall be invalid or unenforceable, the remainder of this Lease and any other application of such term or provision shall not be affected thereby.  If any late charges provided for in any provision of this Lease are based upon a rate in excess of the maximum rate permitted by applicable law, the parties agree that such charges shall be fixed at the maximum permissible rate.  Neither this Lease nor any provision hereof may be changed, waived, discharged or terminated except by an instrument in writing and in recordable form signed by Lessor and Lessee.  All the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  The headings in this Lease are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.  This Lease shall be governed by and construed in accordance with the laws of the state in which Leased Property is located.  Lessee waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance and waives all notices of the existence, creation, or incurring of new or additional obligations, except as expressly granted herein.

38.2   Transfer of Licenses.   Upon the expiration or earlier termination of the Term, Lessee shall use its best efforts to transfer to Lessor or Lessor's nominee all licenses, operating permits and other governmental authorizations and all contracts, including contracts with governmental or quasi-governmental entities which may be necessary or useful in the operation of the Facility.

## ARTICLE 39

### MEMORANDUM OF LEASE

39.1   Lessor and Lessee shall, promptly upon the request of either, enter into a short form memorandum of this Lease, in form suitable for recording under the laws of the state in which the Leased Property is located, in which reference to this Lease, and all options contained herein, shall be made.

## ARTICLE 40

### LIMITATION OF LIABILITY

The Declaration of Trust establishing MEDITRUST, a Massachusetts business trust and 100% owner of Lessor, dated

August 6, 1985, a copy of which, together with all amendments
thereto (the "Declaration"), is duly filed in the office of the
Secretary of State of the Commonwealth of Massachusetts,
provides that the name "MEDITRUST" refers to the trustees under
the Declaration collectively as Trustees, but not individually
or personally.  Lessee specifically agrees that no trustee,
officer, shareholder, employee or agent of MEDITRUST or its
subsidiaries shall be held to any personal liability, jointly
or severally, for any obligation of, or claim against MEDITRUST
or Lessor, Lessee agreeing to look solely to Lessor's equity
interest in the Leased Property for recovery of any judgment
from MEDITRUST or Lessor.  The provisions contained in the
foregoing sentence are not intended to, and shall not, limit
any right that Lessee might otherwise have to obtain injunctive
relief against Lessor or Lessor's successors in interest, or
any action not involving the personal liability of Lessor
(original or successor).  In no event shall Lessor (original or
successor) be required to respond in monetary damages from
Lessor's assets other than Lessor's equity interest aforesaid
in said properties, including the Leased Property.
Furthermore, except as otherwise expressly provided herein, in
no event shall Lessor (original or successor) ever be liable to
Lessee for any indirect or consequential damages suffered by
Lessee from whatever cause.



EXHIBIT A

All of Tract C, and part of Tract D, CLIFF MANOR, a subdivision of
land in the City of Riverside, Platte County, Missouri, according to
the recorded plat thereof, and all of a tract of land described by
Quit Claim Deed in Document No. 24232 in the Platte County Recorders
Office, lying in the Southwest Quarter of Section 4, Township 50,
Range 33, Platte County, Missouri, all being bounded and described as
follows:  Beginning at the Northeast corner of said Tract C; thence
South 30 degrees 51 minutes 40 seconds East along the Easterly line
of said Tract C, 252.84 feet; thence South 2 degrees 43 minutes 00
seconds East along said Easterly line, 30.01 feet; thence South 33
degrees 28 minutes 41 seconds West along said Easterly line, 211.54
feet to the Southeast corner of said Tract C; thence North 87 degrees
03 minutes 00 seconds West along the South line of said Tract C, 169.71
feet; thence Westerly on a curve to the right, having a radius of
982.00 feet, an arc distance of 111.64 feet; thence South 86 degrees
27 minutes 23 seconds West along a line not tangent to the last de-
scribed curve, 72.70 feet to a point on the West line of the afore-
mentioned Tract D, being also a point on the East right of way line
of Interstate Route 635, as now established; thence North 17 degrees
32 minutes 41 seconds West along said East line, 113.56 feet to the
Southeast corner of the tract described in the aforementioned Quit
Claim Deed; thence South 72 degrees 27 minutes 19 seconds West, 6.50
feet to the Southwest corner of said tract; thence North 17 degrees
32 minutes 41 seconds West, 66.00 feet to the Northwest corner of
said tract; thence North 72 degrees  27 minutes 19 seconds East,
6.50 feet to the Northeast corner of said tract; thence North 17 de-
grees 32 minutes 41 seconds West along said East right of way line,
206.88 feet to the Northwest corner of said Tract C; thence North 72
degrees 27 minutes 19 seconds East along the Northerly line of said
Tract C, 196.11 feet to a point on the South right of way line to Cliff
View Drive, as now established; thence Southerly and Easterly along
said right of way line on a curve to the left, having a radius of
164.74 feet, an arc distance of 228.55 feet; thence North 59 degrees
08 minutes 20 seconds East along said Right of Way line, tangent to
the last described curve, 70.00 feet to the point of beginning.

IHSq Erie of Bayside

July 20, 1989

## ALPINE ERIE LEASE

Lessor: Meditrust at Alpine, Inc.

Lessee: Alpine Manor, Inc.

Date of lease:  Original - December 30, 1987
Amendment - March 23, 1989
Amended to relect $375,000 funded by Meditrust
for a 20 bed alzheimer's unit).

Term:  December 30, 1987 - December 30, 1997
Three 5-year renewal options

Rent:  Minimum rent -

a.  Base rent - $53,000/month      12/30/87 - 3/22/89
56,984/month      3/23/89 - 12/30/92

b.  Rent adjustment evaluation on 12/30/92
New base rent will be greater of

1.  The current base rate
2.  Original purchase price plus $375,000 both
multiplied by a rent adjustment rate equal to
350 basis points over the 5 year treasury
rate.

Additional Rent -

a.  Calculated quarterly

b.  5% of increase in gross revenues over the base
period gross revenues

c.  Base period: 7/1/87 - 6/30/88

d.  Gross revenues excludes revenues attributed to
capital additions (financed by lessee) which would
add beds or services or improve the quality of the
facility

Rent during renewal periods:  Rend for renewal periods shall be
the current fair market rental
mutually agreed to by lessor and
lessee or by an appraisal
(additional rent calculation does
not apply).

Alpine Erie Lease
Page 2

**Renovations:**      **Lessee must complete renovations totaling $500,000 as specified in escrow agreement**

Purchase Option:      June 30, 2000
Six to twenty four month notice
Purchase price would be greater of

a.   Fair market value of facility as if no capital additions financed by lessee had been constructed less total mortgage debt

b.   Original purchase price ($5,088,000) less total mortgage debt + increase in cost of living index based on CPI + fair market added value (calculated as FMV of facility less FMV of facility without capital additions) + $375,000 adjusted for cost of living increase.

Right of First Refusal:   Lessee has right of first refusal at same terms lessor offers to third party