# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

|  |  |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., *ET ALIA*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 04-6038-CV-SJ-GAF ) |
| THCI COMPANY, LLC, | ) ) |
| Defendant. | ) ) |

### ANSWER AND FIRST AMENDED COUNTERCLAIMS

The defendant THCI Company, LLC ("THCI"), by its undersigned counsel and pursuant to Federal Rule of Civil Procedure 8, files its ANSWER AND FIRST AMENDED COUNTERCLAIMS to the complaint entitled PETITION FOR DECLARATORY JUDGMENT AND OTHER RELIEF (the "Complaint") as follows:

#### GENERAL ALLEGATIONS

1.      THCI denies the allegations contained in paragraph "1" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

2.      THCI denies the allegations contained in paragraph "2" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

3.      THCI denies the allegations contained in paragraph "3" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth

LDR/115948 3

4.    THCI denies the allegations contained in paragraph "4" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

5.    THCI denies the allegations contained in paragraph "5" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

6.    THCI denies the allegations contained in paragraph "6" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

7.    THCI denies the allegations contained in paragraph "7" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

8.    THCI denies the allegations contained in paragraph "8" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

9.    THCI denies the allegations contained in paragraph "9" of the Complaint because it lacks knowledge or information sufficient to form a belief as to their truth.

10.    THCI admits the allegations contained in paragraph "10" of the Complaint.

11.    THCI admits the allegations contained in paragraph "11" of the Complaint.

12.    THCI denies that it has a principal place of business at 4700 Cliffview Drive in the city of Kansas City, in Platte County, Missouri but otherwise admits the allegations contained in paragraph "12" of the Complaint.

13.    THCI admits that it succeeded to certain of the rights and interests of Meditrust Corporation and other entities identified in paragraph "13" of the Complaint respecting the Plaintiff Subsidiaries, but otherwise denies the allegations contained in paragraph "13".

14.    THCI admits the allegations contained in the first sentence of paragraph "14" of the Complaint.  THCI admits that the Bankruptcy Court entered a Stipulation And Order on or about March 18, 2002 and avers that the Order speaks for itself.  THCI otherwise denies the allegations contained in the second sentence of paragraph "2" of the Complaint to the extent that the allegations constitute characterizations of the document that differ from its terms.  THCI denies the allegations contained in the third sentence of paragraph "14" of the Complaint.

15.    THCI denies the allegations contained in paragraph "15" of the Complaint.

16.    THCI denies the allegations contained in paragraph "16" of the Complaint.

17.    THCI admits that leases and agreements described in subparagraphs (a) through (i) of paragraph "17" of the Complaint were made.  THCI otherwise denies the allegations in paragraph "17" of the Complaint.

18.    THCI admits the allegations contained in paragraph "18" of the Complaint.

19.    THCI admits the allegations contained in paragraph "19" of the Complaint.

20.    THCI admits the allegations contained in the first sentence of paragraph "20" of the Complaint.  THCI avers that the Lease Modification Agreement speaks for itself and otherwise denies the allegations contained in the second and third sentences of paragraph "20" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

21.    THCI admits the allegations contained in paragraph "21" of the
Complaint.

22.    THCI admits the allegations contained in paragraph "22" of the
Complaint.

23.    THCI admits that the Plaintiff Subsidiaries sent letters to THCI on or
about November 21, 2000 and avers that the letters speak for themselves. THCI
otherwise denies the allegations contained in paragraph "23" of the Complaint to the
extent that they constitute characterizations of the documents that differ from their terms.

24    THCI admits that on or about January 30, 2001, THCI's predecessor
replied by letter to each of the Plaintiff Subsidiaries and avers that the letter speaks for
itself. THCI denies the remaining allegations contained in paragraph "24" of the
Complaint to the extent that they constitute characterizations of the documents that differ
from their terms.

25.    THCI admits that Guaranties were entered and avers that those Guaranties
speak for themselves. THCI denies the allegations contained in the first sentence of
paragraph "25" of the Complaint to the extent that they constitute characterizations of the
documents that differ from their terms. THCI denies the allegations contained in the
second and third sentences of paragraph "25" because they state conclusions of law to
which no response is required.

26.    THCI denies the allegations contained in paragraph "26" of the
Complaint.

27.    THCI denies the allegations contained in paragraph "27" of the
Complaint.

28.    THCI denies the allegations contained in paragraph "28" of the Complaint.

29    THCI admits that IHS and the Plaintiff Subsidiaries filed a motion on May 7, 2001 that purported to be made pursuant to the cited statutory provision and avers that the motion speaks for itself. THCI otherwise denies the allegations contained in paragraph "29" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

30.    THCI admits that it filed objections on or about September 10 and October 18, 2001 to the motion described in the preceding paragraph of this Answer and Counterclaim and avers that the objections speak for themselves. THCI otherwise denies the allegations contained in the first and second sentences of paragraph "30" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms. THCI denies the allegations contained in the third sentence of paragraph "30" of the Complaint.

31.    THCI admits that on or about March 22, 2002, IHS, the Plaintiff Subsidiaries, and THCI entered into the March 2002 Stipulation and Order and avers that the Stipulation And Order speaks for itself. THCI otherwise denies the allegations contained in paragraph "31" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

32.    THCI avers that the Stipulation And Order speaks for itself and denies the allegations contained in paragraph "32" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

33.    THCI avers that the Stipulation And Order speaks for itself and denies the allegations contained in paragraph "33" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

34    THCI avers that the Stipulation And Order speaks for itself and denies the allegations contained in paragraph "34" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

35.    THCI denies the allegations contained in paragraph "35" of the Complaint.

36    THCI admits that on or about January 28, 2003, Briarwood and Integrated entered into the Stock Purchase Agreement and avers that the Stock Purchase Agreement speaks for itself. THCI otherwise denies the allegations contained in paragraph "36" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

37.    THCI admits the allegations contained in paragraph "37" of the Complaint.

38.    THCI admits that on or about April 22, 2003, the Bankruptcy Court entered an order granting THCI's Motion to Compel and avers that the Order speaks for itself. THCI otherwise denies the allegations contained in paragraph "38" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

39    THCI avers that the April 2003 Order speaks for itself and denies the allegations contained in paragraph "39" of the Complaint to the extent that they constitute characterizations of the April 2003 Order that differ from its terms.

40.    THCI avers that the April 2003 Order speaks for itself and denies the allegations contained in paragraph "40" of the Complaint to the extent that they constitute characterizations of the April 2003 Order that differ from its terms.

41.    THCI avers that the April 2003 Order speaks for itself and denies the allegations contained in paragraph "41" of the Complaint to the extent that they constitute characterizations of the April 2003 Order that differ from its terms.

42.    THCI admits that Integrated and the Plaintiff Subsidiaries have appealed from the April 2003 Order of the Bankruptcy Court to the United States District Court of Delaware and avers that the appeals and related documents speak for themselves. THCI otherwise denies the allegations contained in paragraph "42" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

43.    THCI admits the allegations contained in the first sentence of paragraph "43" of the Complaint and avers that the documents described in the first sentence of paragraph "43" of the Complaint speak for themselves. THCI otherwise denies the allegations contained in paragraph "43" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

44    THCI avers that the Reorganization Plan and the Confirmation Order speak for themselves and otherwise denies the allegations contained in paragraph "44" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

45.    THCI admits the allegations contained in paragraph "45" of the Complaint.

46.    THCI admits that on or about September 24, 2003, it filed a MOTION OF THCI COMPANY LLC FOR ENTRY OF ORDER GRANTING ITS ADMINISTRATIVE EXPENSE CLAIMS AND AUTHORIZING IMMEDIATE AND DIRECT PAYMENT OF SUCH CLAIMS OR, IN THE ALTERNATIVE, ESTABLISHING A DISPUTED CLAIMS RESERVE UNDER THE PLAN. THCI avers that the document identified in the preceding sentence speaks for itself. THCI otherwise denies the allegations contained in paragraph "46" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

47.    THCI admits that on or about January 7, 2004, the Bankruptcy Court entered an order denying the motion described in paragraph "46" of this Answer And Counterclaim and avers that the Order speaks for itself. THCI otherwise denies the allegations contained in paragraph "47" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

48.    THCI denies the allegations contained in paragraph "48" of the Complaint.

COUNT I

49.    THCI repeats and incorporates by reference its responses to Paragraphs 1 through 48 of the Complaint as if fully restated herein

50.    THCI denies the allegations contained in paragraph "50" of the Complaint.

51.    THCI admits that the Bankruptcy Court issued the April 2003 Order and avers that the Order speaks for itself. THCI otherwise denies the allegations contained in

paragraph "51" of the Complaint to the extent that they constitute characterizations of the Order that differ from its terms.

52.    THCI admits that the Plaintiffs appealed the April 2003 Order and avers that the appeal documents speak for themselves. THCI otherwise denies the allegations contained in paragraph "52" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

53.    THCI denies the allegations contained in paragraph "53" of the Complaint because they constitute conclusions of law to which no response is required.

54.    THCI denies the allegations contained in paragraph "54" of the Complaint because they constitute conclusions of law to which no response is required.

55.    THCI admits that a Stock Purchase Agreement was entered and avers that the document speaks for itself. THCI otherwise denies the allegations contained in paragraph "55" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

56.    THCI admits that a Stock Purchase Agreement was entered and avers that the document speaks for itself. THCI otherwise denies the allegations contained in paragraph "56" of the Complaint to the extent that they constitute characterizations of the document that differ from its terms.

57.    THCI admits that the Nine Leases were entered and avers that the documents speak for themselves. THCI otherwise denies the allegations contained in paragraph "57" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

58.    THCI admits that the Nine Leases were entered into and avers that the documents speak for themselves. THCI otherwise denies the allegations contained in paragraph "58" of the Complaint to the extent that they constitute characterizations of the documents that differ from their terms.

59.    THCI denies the allegations contained in paragraph "59" of the Complaint because they constitute conclusions of law to which no response is required.

60.    THCI denies the allegations contained in paragraph "60" of the Complaint because they constitute conclusions of law to which no response is required.

61.    THCI denies the allegations contained in paragraph "61" of the Complaint because they constitute conclusions of law to which no response is required.

62.    THCI denies the allegations contained in paragraph "62" of the Complaint.

63.    THCI denies the allegations contained in paragraph "63" of the Complaint because they constitute conclusions of law to which no response is required.

64.    THCI denies the allegations contained in paragraph "64" of the Complaint.

65.    THCI denies the allegations contained in paragraph "65" of the Complaint because they constitute conclusions of law to which no response is required.

66.    THCI denies the allegations contained in paragraph "66" of the Complaint.

THCI avers that no response is required to the "WHEREFORE" clause of Count I of the Complaint. However, to the extent that a response is necessary, THCI denies that Plaintiffs are entitled to any of the relief requested therein.

## COUNT II

67.     THCI repeats and incorporates by reference its responses to paragraphs 1 through 66 of the Complaint as if fully restated herein.

68.     THCI admits that on or about September 24, 2003, it filed a MOTION OF THCI COMPANY LLC FOR ENTRY OF ORDER GRANTING ITS ADMINISTRATIVE EXPENSE CLAIMS AND AUTHORIZING IMMEDIATE AND DIRECT PAYMENT OF SUCH CLAIMS OR, IN THE ALTERNATIVE, ESTABLISHING A DISPUTED CLAIMS RESERVE UNDER THE PLAN. THCI avers that the document identified in the first sentence of this paragraph "68" speaks for itself. THCI otherwise denies the allegations contained in paragraph "68" of the Complaint to the extent that they constitute characterizations of the document that differs from its terms.

69.     THCI admits the allegations contained in paragraph "69" of the Complaint.

70.     THCI admits the allegations contained in paragraph "70" of the Complaint.

71.     THCI denies the allegations contained in paragraph "71" of the Complaint.

72.     THCI denies the allegations contained in paragraph "72" of the Complaint.

73.     THCI denies the allegations contained in paragraph "73" of the Complaint.

74.     THCI denies the allegations contained in paragraph "74" of the Complaint.

75.    THCI denies the allegations contained in paragraph "75" of the
Complaint.

76.    THCI denies the allegations contained in paragraph "76" of the Complaint
because they state only conclusions of law to which no response is required.

77.    THCI denies the allegations contained in paragraph "77" of the
Complaint.

78.    THCI denies the allegations contained in paragraph "78" of the
Complaint.

79.    THCI denies the allegations contained in paragraph "79" of the
Complaint.

80.    THCI denies the allegations contained in paragraph "80" of the
Complaint.

81.    THCI denies the allegations contained in paragraph "81" of the
Complaint.

82.    THCI denies the allegations contained in paragraph "82" of the Complaint
because they constitute conclusions of law to which no response is required.

83.    THCI denies the allegations contained in paragraph "83" of the Complaint
because they constitute conclusions of law to which no response is required.

THCI avers that no response is required to the "WHEREFORE" clause of Count
II of the Complaint; however, to the extent that a response is necessary, THCI denies that
Plaintiffs are entitled to any of the relief requested therein.

## AFFIRMATIVE DEFENSES

FOR FURTHER AND SEPARATE AFFIRMATIVE DEFENSES to the claims asserted in the Complaint, THCI alleges as follows:

### FIRST DEFENSE

84.    The Complaint fails to state a claim against THCI on which relief may be granted.

### SECOND DEFENSE

85.    Plaintiffs' claims are barred by the doctrines of *res judicata* and claim preclusion.

### THIRD DEFENSE

86.    Plaintiffs' claims are barred by the terms of the Stipulation And Order by and between Integrated Health Services Inc. and certain of its subsidiaries and THCI that was "so-ordered" by Judge Mary Walrath of the United States Bankruptcy Court for the District of Delaware on March 18, 2002.

### FOURTH DEFENSE

87.    Plaintiffs' claims are barred by the terms of the AMENDED JOINT PLAN OF REORGANIZATION OF INTEGRATED HEALTH SERVICES, INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.

FIFTH DEFENSE

88.    Plaintiffs' claims are barred by the terms of the FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER UNDER 11 U.S.C. § 1129(A) AND (B) AND FED.R. BANKR.P. 3020 CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION OF INTEGRATED HEALTH SERVICES, INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE that was "so ordered" by Judge Mary Walrath of the United States Bankruptcy Court for the District of Delaware.

SIXTH DEFENSE

89.    Plaintiffs' claims are barred by the Order of Judge Mary Walrath of the United States Bankruptcy Court for the District of Delaware dated April 22, 2003.

### FIRST AMENDED COUNTERCLAIMS

AS AND FOR ITS FIRST AMENDED COUNTERCLAIMS against plaintiff IHS Long Term Care Services, Inc. ("LTC") and plaintiffs Integrated Health Services of Cliff Manor, Inc.; Integrated Health Services at Riverbend, Inc.; Integrated Health Services at Somerset Valley, Inc.; Alpine Manor, Inc.; Briarcliff Nursing Home, Inc.; Integrated Health Group, Inc.; Spring Creek of IHS, Inc ; Firelands of IHS, Inc.; and Elm Creek of IHS, Inc. (the "Nine Subsidiaries"), THCI alleges as follows:

BACKGROUND

1.    Prior to February 2000, Integrated Health Services, Inc. ("IHS") was one of the largest operators of long term care facilities in the United States. IHS conducted

its operations through numerous direct and indirect subsidiaries. Generally, each subsidiary operated a single long term care facility.

2.     Among IHS's subsidiaries that leased and operated long term care facilities were the Nine Subsidiaries that leased facilities from Meditrust Corporation or its subsidiaries.

3.     The Nine Subsidiaries leased from Meditrust and operated facilities in the states of Ohio, Pennsylvania, New Jersey, Alabama, Michigan, and Missouri.

4.     IHS itself was bound to ten guaranty agreements (the "Guaranties") pursuant to which IHS guaranteed "absolutely and unconditionally" in favor of Meditrust "the full, faithful, and punctual performance, fulfillment, observance, and payment of all of the obligations and liabilities" of the Nine Subsidiaries under their leases with Meditrust (the "Nine Leases").

5.     The Guaranties provided that "[e]ach reference . . . . to Guarantor . . . shall be deemed to include the . . . successors . . . of Guarantor . . . who[] shall be bound by the provisions of this guaranty."

6.     In 1993, the Nine Leases were amended pursuant to a Lease Modification Agreement. IHS was a party to the Lease Modification Agreement and expressly "acknowledge[d] and agree[d] that all of its obligations under the Lease Guaranties shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement."

7.     In February 2000, IHS and virtually all of its subsidiaries, including the Nine Subsidiaries, filed petitions for relief under Chapter 11 of the Bankruptcy Code in

Case 1:04-cv-00910-GMS    Document 60-3    Filed 03/15/2005    Page 17 of 30

the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").

      8.     During the Chapter 11 proceeding, THCI succeeded to rights and interests of Meditrust with respect to the Nine Leases, the Lease Modification Agreement, and the Guaranties.

      9.     Subsequently, but during the Chapter 11 proceeding, IHS proposed to reject certain of the Nine Leases and a dispute arose between IHS and THCI over whether, and upon what terms and conditions, IHS might be permitted under the Bankruptcy Code to assume or reject selectively the Nine Leases.

      10.    The dispute was litigated extensively in the Delaware Bankruptcy Court. In the course of the litigation, the parties presented, and the litigation came to encompass and subsume, multiple issues concerning, for example but not limited to, whether the Nine Leases were currently valid, whether they had previously terminated or expired, and whether they were susceptible to assumption presuming that IHS were authorized under Chapter 11 to assume them.

      11.    The dispute in its entirety was resolved in March 2002 when THCI, IHS, and the Nine Subsidiaries entered into a settlement agreement that was approved and entered as an order by the Delaware Bankruptcy Court (the "March 2002 Order").

      12.    The March 2002 Order, in pertinent part, resolved all issues about the current validity of the Leases. The Order deemed IHS and the Nine Subsidiaries to have assumed the Nine Leases, but also deemed IHS to have rejected the lease for a tenth facility in Bellbrook, Ohio ("Carriage-By-The-Lake") that was operated and leased from THCI.

13.   The March 2002 Order also provided for the modification of certain of the terms and conditions of the Nine Leases. The March 2002 Order restated the Nine Leases, except insofar as specific provisions of the March 2002 Order superceded terms of the Nine Leases.

14.   Nothing in the March 2002 Order affected the Guaranties. Indeed, the March 2002 Order restated the terms of the Lease Modification Agreement in which IHS reaffirmed its Guaranties of the Nine Leases.

15.   The effect of the March 2002 Order was to continue the Guaranties in full force and effect as postpetition liabilities of IHS.

16.   The March 2002 Order also directed IHS, the Nine Subsidiaries, and THCI to enter into a "Master Lease" that would "amend and restate" the Nine Leases into a single document collating the terms of the Nine Leases, the Lease Modification Agreement, the March 2002 Order, and such other terms as to which the parties might agree mutually in the course of reviewing and restating these documents into a unified master lease.

17.   IHS, the Nine Subsidiaries, and THCI did not agree upon or execute the "Master Lease" contemplated by the March 2002 Order.

18.   By early 2003, IHS had worked out a Chapter 11 plan of reorganization pursuant to which all of the assets and liabilities associated with its long term care business, including the capital stock of all of its long term care subsidiaries (including but not limited to the capital stock of the Nine Subsidiaries), would be sold in a best-and-highest bid process under the authority of Chapter 11 and the Delaware Bankruptcy Court.

19.    Abe Briarwood Corp. ("Briarwood") was the successful bidder for the IHS long term care business, including the Nine Subsidiaries.

20.    The sale of IHS's long term care business to Briarwood became the cornerstone of IHS's plan of reorganization proposed to the Delaware Bankruptcy Court for confirmation.

21.    Consistent with its proposed plan of reorganization, IHS entered into a Stock Purchase Agreement (the "SPA") with Briarwood dated January 28, 2003.

22.    Under § 5.9 of the SPA, but contingent on ultimate confirmation of the proposed plan of reorganization by the Delaware Bankruptcy Court, IHS was required to create a new subsidiary, IHS Long Term Care Services, Inc. ("LTC").

23.    Under § 5.9(b) of the SPA,

> Seller [IHS] shall assign, and the LTC Subsidiary shall assume . . . all of Seller's assets and liabilities . . . including without limitation the capital stock of all of the Subsidiaries that conduct Seller's long-term care businesses . . .

(Emphasis added.)

24    Under § 2 1 of the SPA, Briarwood was required to purchase the stock of LTC for a designated price.

25.    LTC was created by IHS and Briarwood as the vehicle for transferring to Briarwood (i) the rights, assets, liabilities, and obligations of the IHS long term care subsidiaries, including but not limited to the Nine Subsidiaries, and also (ii) the rights, assets, and liabilities of IHS related to those subsidiaries.

26.    Notwithstanding its commitments under the SPA, Briarwood advised IHS in or about March 2003 that it would not accept transfer of the stock of the Nine

Subsidiaries to LTC and caused and directed IHS to file a motion with the Delaware Bankruptcy Court seeking to escape the March 2002 Order.

27.     In April 2003, at Briarwood's direction, IHS and the Nine Subsidiaries filed a motion in the Delaware Bankruptcy Court to reject the Nine Leases -- the very same leases that they had agreed to assume and had been ordered to assume in the March 2002 Order (the "IHS Motion to Reject").

28.     In the IHS Motion to Reject, IHS and the Nine Subsidiaries adopted the position that the March 2002 Order made its assumption of the Nine Leases contingent upon the execution of a single Master Lease and that, because such Master Lease had not been executed, IHS and the Nine Subsidiaries were free of obligations under the March 2002 Order and therefore free to reject the Nine Leases.

29.     THCI filed a crossing motion in the Delaware Bankruptcy Court to compel IHS and the Nine Subsidiaries to comply with the March 2002 Order and to enter into the single Master Lease called for by that Order (the "Motion to Compel"). In addition, THCI filed an objection to IHS's proposed plan of reorganization.

30.     In April 2003, the Delaware Bankruptcy Court entered an Order (the "April 2003 Order") granting THCI's Motion to Compel. The Bankruptcy Court continued the IHS Motion to Reject so as not to preclude a later rejection if the April 2003 Order was reconsidered by the Bankruptcy Court or it was later reversed on appeal.

31.     In the April 2003 Order, the Delaware Bankruptcy Court addressed the proper construction and interpretation of the March 2002 Order, in which the Court had finally resolved and decided all issues related to the viability and validity of the Nine Leases.

32.    In the April 2003 Order at ¶ 2, the Delaware Bankruptcy Court ruled that:

> Within five (5) business days of the entry of this Order, the parties
> may execute a form of Master Lease on such terms as may be
> mutually agreeable by the parties, provided, however, that if within
> such time the parties do not execute a Master Lease on mutually
> agreeable terms, a Master Lease shall be deemed to exist, which
> Master Lease shall be deemed to incorporate the terms set forth in
> paragraphs 3(a), (b), (c) (d), (e) and (f) of the March 2002
> Stipulation and shall further be deemed to incorporate by reference
> all terms of the existing Leases to the extent not inconsistent with
> the March 2002 Stipulation.

(Emphasis added.)

33.    Pursuant to the April 2003 Order, IHS and the Nine Subsidiaries were
required to comply with, and were bound by, all terms of the Nine Leases except those as
to which the March 2002 Order specifically established a superseding term, without
regard to whether they might be able to agree upon a codifying, single-source Master
Lease.

34.    Nothing in the April 2003 Order affected IHS's obligations under the
Guaranties.

35.    The April 2003 Order continue the Nine Leases, and their incorporated
Guaranties, in full force and effect as post-petition liabilities of IHS and the Nine
Subsidiaries.

36.    IHS and the Nine Subsidiaries appealed to the Delaware District Court
from the April 2003 Order. The appeal remains pending for decision by Judge Gregory
M. Sleet of the Delaware District Court.

37.    By Order dated May 12, 2003 (the "Confirmation Order"), the Bankruptcy
Court confirmed the AMENDED JOINT PLAN OF REORGANIZATION OF INTEGRATED HEALTH
SERVICES, INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

(the "Plan"). The Plan memorialized and confirmed the results of, and the arrangements and agreements surrounding, the bid process in which Briarwood had been successful.

38.    The Confirmation Order specifically addressed the status of the Nine Subsidiaries and the Nine Leases, and of the March 2002 and April 2003 Orders, in its ¶ 49(b).

39.    Paragraph 49(b) of the Confirmation Order directed, in approval and implementation of the SPA, that "IHS will contribute and assign to the LTC Subsidiary all of its [pertinent] assets . . . and postpetition liabilities." (Emphasis added.) The Confirmation Order thus ordered that LTC succeed to IHS's obligations under the Guaranties, as carried forward by the March 2002 and April 2003 Orders.

40.    Specifically addressing the March 2002 and April 2003 Orders, the Confirmation Order first recited in ¶ 49(b) that:

> On April 23, 2003, the Court entered an Order [the April 2003 Order] on the Motion to Compel which provided . . . that pursuant to the [March 2002 Order], a master lease agreement was deemed to exist between the parties effective May 1, 2003 . . . .

41.    The Confirmation Order then further provided in ¶ 49(b) that:

> [T]he Master Lease [contemplated by the March 2002 Order and deemed to be in existence under the April 2003 Order] shall be treated as an assumed lease pursuant to section 365 of the Bankruptcy Code, and the applicable Debtor(s) party to such Master Lease shall perform the Master Lease until the Effective Date of the Plan, after which the Master Lease shall be performed by the applicable Reorganized Debtor(s) unless and until an order is entered by this Court or another court of competent jurisdiction permitting rejection of the THCI Leases . . . .

(Emphasis added.)

42.    Under the terms of the Confirmation Order, IHS and the Nine Subsidiaries were treated as having assumed the Nine Leases and were required to comply with and were bound by all of the terms of the Nine Leases to the extent not inconsistent with the March 2002 Order, subject only to being permitted to "reject" the Nine Leases in compliance with Chapter 11

43.    "Rejection", as contemplated by the Confirmation Order, could only be authorized by the Delaware Bankruptcy Court, by another United States bankruptcy court (*e.g.*, in a subsequent Chapter 11 proceeding), or by the Delaware District Court on IHS's appeal from the Delaware Bankruptcy Court's April 2003 Order.

44.    Recognizing specifically the latter alternative, the Confirmation Order in § 49(b) preserved all parties' rights to pursue the appeal and expressly provided that only the outcome of the appeal would affect the status of the Nine Leases.  Thus, the Confirmation Order provided that, if the District Court on appeal issued an order

> nullifying or invalidating the Master Lease [deemed to be in existence by the April 2003 Order] . . . nothing contained in this Order shall be deemed to have effected an assumption of the Master Lease or the THCI Leases.

45    Correspondingly, with respect to THCI, the Confirmation Order provided that

> [n]othing in the Plan [of Reorganization being confirmed] shall be deemed to provide for the rejection of the Master Lease or the THCI Leases.

(Emphasis added.)

46.    The effect of the Confirmation Order was to continue the Guaranties in full force and effect as post-petition obligations of LTC.  These obligations were subject only to "rejection" under Chapter 11 of the Bankruptcy Code if the District Court, on

IHS's appeal, reversed the Delaware Bankruptcy Court's April 2003 Order that (i) denied

IHS's motion to reject the Nine Leases and (ii) deemed the existence of a Master Lease

that incorporated the terms of the Nine Leases.

47.     Under the Plan and the SPA, LTC succeeded to and became bound by the

Guaranties, formerly binding on IHS, for the performance by the Nine Subsidiaries under

the Nine Leases.

48.     In addition, LTC has stated and asserted that it is not bound by the

Guaranties and that it will not comply with its obligations under them, and has filed a

Complaint against THCI in the Circuit Court for Platte County, Missouri in which it

seeks a declaratory judgment that it is not liable or responsible under the Guaranties

**FIRST COUNTERCLAIM**

**(DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AGAINST LTC)**

49.     THCI repeats and incorporates by reference the allegations contained in

paragraphs 1 through 48 above as if fully restated herein.

50      The Guaranties were a part of the Nine Leases assumed by IHS and the

Nine Subsidiaries in the IHS Chapter 11 proceeding in the Delaware Bankruptcy Court.

51.     The March 2002 Order, and the Delaware Bankruptcy Court's April 2003

Order construing, interpreting, and enforcing it, restated the Nine Leases and the

Guaranties incorporated in them, as post-petition obligations of IHS.

52.     Nothing in the Plan, the Confirmation Order, or any act or event in the

IHS Chapter 11 proceeding deleted or amended the Guaranties as obligations under the

Nine Leases, nor excused or relieved IHS of its obligations under the Guaranties.

Case 1:04-cv-00910-GMS    Document 60-3    Filed 03/15/2005    Page 25 of 30

53.    By virtue of IHS's assignment to LTC, and LTC's assumption, under the Stock Purchase Agreement of IHS's assets and liabilities, including the capital stock of the Nine Subsidiaries, LTC succeeded to the rights and obligations of the Nine Subsidiaries and of IHS as related to the Nine Subsidiaries. LTC accordingly became, and remains, responsible to THCI for and liable to THCI under, the Nine Leases and the Guaranties incorporated therein.

54.    A clear and concrete dispute exists between LTC and THCI with respect to whether LTC is and remains obligated under the Guaranties for the performance of the Nine Subsidiaries of their obligations under the Nine Leases, the March 2002 Order, and the April 2003 Order.

SECOND COUNTERCLAIM

(SPECIFIC PERFORMANCE AGAINST LTC AND THE NINE SUBSIDIARIES)

55.    THCI repeats and incorporates by reference the allegations contained in paragraphs 1 through 48 above as if fully restated herein.

56.    The leases for the Properties require the Nine Subsidiaries to provide financial and other operational information ("Required Information") on a monthly basis to THCI about each of the tenants' operations, including but not limited to monthly statements setting forth the gross revenues of each of the Properties, which is necessary to THCI's own operations as owner of the facilities subject to the Nine Leases.

57.    The Guaranties required IHS, and thus require LTC, to provide current financial statements to THCI on no less than a monthly basis and to provide information concerning the financial performance of the Nine Subsidiaries. IHS did, in fact, regularly

and consistently provide this information (also "Required Information"), which is necessary to THCI's own operations as owner of the facilities subject to the Nine Leases.

58.    THCI has repeatedly asked the Nine Subsidiaries for Required Information, but the Nine Subsidiaries have failed and refused to provide the Required Information to THCI.

59.    THCI has repeatedly asked LTC for Required Information, but LTC has failed and refused to provide Required Information to THCI.

60.    THCI is entitled to Required Information.

61.    Accordingly, THCI asks this Court for an Order against LTC and the Nine Subsidiaries enjoining and ordering them to provide the Required Information.

### THIRD COUNTERCLAIM
#### (AGAINST LTC FOR FRAUDULENT CONVEYANCE)

62.    THCI repeats and incorporates by reference the allegations contained in paragraphs 1 through 48 above as if fully restated herein.

63.    The SPA in § 5.9(b) provides that LTC "shall assume all of IHS's assets and liabilities . . . including without limitation the capital stock of all the Subsidiaries that conduct [IHS's] long-term care business."

64.    Upon closing on the SPA, LTC held assets that encompassed substantially more than, and greatly exceeded in value, the capital stock of the Nine Subsidiaries.

65.    In a recent required disclosure, LTC stated that its assets today consist solely of the stock of the Nine Subsidiaries.

66.    Upon information and belief predicated in part on the disclosure identified in paragraph 65 of the First Amended Counterclaims, LTC transferred virtually all of its

assets other than the stock of the Nine Subsidiaries to alleged third parties following the closing on the SPA for the purpose of hindering or defrauding existing creditors, including THCI.

67.   Upon information and belief predicated in part on the disclosure identified in paragraph 65 of the First Amended Counterclaims, LTC received less than fair or reasonably equivalent value from the alleged third parties for the transfer of its assets other than the capital stock of the Nine Subsidiaries.

68.   At the time of the transfer of assets described in paragraph 66 of this ANSWER AND FIRST AMENDED COUNTERCLAIMS, LTC intended to incur, or believed or reasonably should have believed that it would incur, debts exceeding its ability to pay as they became due.

69.   LTC was rendered insolvent as a result of the transfer of its assets described in paragraph 66 of this ANSWER AND FIRST AMENDED COUNTERCLAIMS.

70.   Accordingly, THCI asks this Court for an order enjoining LTC against further disposition of its assets to third parties, and avoiding transactions by which LTC has conveyed and will convey its assets to third parties.

### FOURTH COUNTERCLAIM
#### (IN THE ALTERNATIVE AGAINST THE NINE SUBSIDIARIES FOR MONEY DAMAGES)

71.   THCI repeats and incorporates by reference the allegations contained in paragraphs 1 through 48 above as if fully restated herein.

72.   In their Complaint, the Nine Subsidiaries assert that there are no existing leases covering any of the Properties, and that any rent paid or owed to THCI has been

paid or will be owed by the Nine Subsidiaries to THCI as holdover tenants. THCI has denied the Nine Subsidiaries' assertions in that regard.

73.    If the Court were to uphold the Nine Subsidiaries' allegations described in ¶72, however, then THCI pleads in the alternative that the Nine Leases provide that, if the Nine Subsidiaries become holdover tenants, they are required to pay one and one-half times (150%) of the otherwise applicable monthly lease rate plus additional charges.

74.    If the Court does determine that the Nine Subsidiaries are holdover tenants, then as an alternative claim for relief THCI demands judgment for the amount of additional rent that the Nine Subsidiaries owe to THCI under the holdover provisions of the leases, retroactive to the date that the Court determines that the Nine Subsidiaries became holdover tenants.

WHEREFORE, THCI prays that the Court enter judgment:

(A)    Dismissing the Complaint in its entirety with prejudice;

(B)    On the First Counterclaim against the defendant LTC, declaring and decreeing that LTC succeeded to the obligations of IHS under the Guaranties and that LTC is responsible and liable to THCI for the Nine Subsidiaries' performance of obligations under the Nine Leases, the March 2002 Order, and the April 2003 Order;

(C)    On the Second Counterclaim against the defendant LTC and the Nine Subsidiaries, enjoining and ordering them to provide the Required Information;

(D)    On the Third Counterclaim against the defendant LTC, enjoining LTC against further disposition of its assets to third parties, and avoiding transactions by which LTC has conveyed and will convey its assets to third parties;

(E)    On the Fourth Counterclaim, pled in the alternative, a judgment for money damages against the Nine Subsidiaries in the amount of additional rent that the Nine Subsidiaries would owe to THCI under the holdover provisions of the nine leases, retroactive to the date that the Court determines that the Nine Subsidiaries became holdover tenants; and

(F)    Awarding to THCI and against all the Plaintiffs and Counterclaim Defendants costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: June 9, 2004

McDOWELL, RICE, SMITH & BUCHANAN, P.C.

By: /s/ Greg T. Spies
    Greg T. Spies  MO Bar #31145
    Stuart E. Bodker, MO Bar #29194
    605 West 47th Street, Suite
    Kansas City, Missouri 64112-1905
    Tel: (816) 753-5400
    Fax: (816) 753-9996

Of Counsel:

Ronald L. Castle
Arent Fox PLLC
1050 Connecticut Avenue, NW
Washington DC  20036-5339
Tel: (202) 857-6000
Fax: (202) 857-6395
ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

I certify that on this 9th day of June, 2004 a true and correct copy of the above and foregoing was sent via Electronic Court Filing to:

Robin Ann Kramer
4435 Main Street
Kansas City, Missouri 64106.

\s\: Greg T. Spies