# EXHIBIT D

JS 44 (Rev 3/99)

# CIVIL COVER SHEET

04-367

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974 is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
THCI Company, LLC, a Delaware Limited Liability Company

## DEFENDANTS
Abe Briarwood Corp., a Nevada Corporation

(b) County of Residence of First Listed Plaintiff: **New Castle County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Storey County**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(C) Attorney's (Firm Name, Address, and Telephone Number)
Dennis A Meloro, 302 661-7000
Greenberg Traurig, LLP
1000 West Street, Suite 1540
Wilmington, DE 19801

Ronald L Castle  202 857-6188
Arent Fox PLLC
1050 Connecticut Avenue, NW
Washington DC 20036-5339

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
|  |  |  | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
|  |  |  | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights |  | ☐ 871 IRS-Third Party 26 USC 7609 |
|  |  | ☐ 555 Prison Condition |  |  |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 2201 - declaratory and injunctive relief

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ unknown
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE see attached   DOCKET NUMBER _____

DATE: June 9, 2004
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____




IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THCI COMPANY, LLC,<br>a Delaware limited liability company<br><br>Plaintiff,<br>v.<br><br>ABE BRIARWOOD CORP.,<br>a Nevada corporation,<br><br>Defendant | )<br>)<br>)<br>)   Civil Action No. 04-367-<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff THCI Company, LLC ("THCI"), by its undersigned counsel, alleges as follows:

### NATURE OF ACTION

1. This is an action pursuant to 28 U.S.C. § 2201 for a declaratory judgment and injunctive relief declaring that defendant Abe Briarwood Corp. ("Briarwood") is, and compelling it to perform as, the guarantor of certain leases related to nine long term care facilities (*i.e.*, nursing homes).

2. The guaranties were assigned to and assumed by IHS Long Term Care Services, Inc. ("LTC") pursuant to the confirmed plan of reorganization under Chapter 11 of the United States Bankruptcy Court in *In re Integrated Health Services, Inc.*, Case No 00-389 (MFW) (Bankr. D Del 2003) THCI asserts herein that the defendant Briarwood succeeded to and assumed the guaranty obligations of LTC by dominating and controlling LTC to such degree that LTC has at all material times been the *alter ego* of Briarwood.

JURISDICTION AND VENUE

3. This Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1334(b) because the subject matter is related to a proceeding under the United States Bankruptcy Code, specifically *In re Integrated Health Services, Inc.*, Case No. 00-389 (MFW) (Bankr. D. Del.).

4. This Court, also and independently, has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between the parties and the Complaint seeks to hold Briarwood responsible for approximately $675,000 per month in monthly lease obligations due and owing through April 2013 under the Leases and the Orders of the Bankruptcy Court in *In re Integrated Health Services, Inc.*, Case No. 00-389 (MFW) (Bankr. D. Del.), as well as for performance of non-financial obligations of the lessees and the guarantor itself under the leases and guaranties in issue.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a) or, alternatively, § 1391(a)(1) & (2).

PARTIES

6. The plaintiff THCI Company, LLC ("THCI") is a limited liability company organized under the laws of the State of Delaware and having its principal place of business in Hackensack, New Jersey. THCI is in the business of owning health care facilities, including nursing homes, and leasing them to health care facility operators.

7. Defendant Briarwood is a corporation organized under the laws of the State of Nevada. Briarwood has its principal place of business at 321 Fifth Avenue, New York, New York 10016. Briarwood is in the business of operating health care facilities.

2

## FACTUAL BACKGROUND

8. Prior to February 2000, Integrated Health Services, Inc. ("IHS") was one of the largest operators of long term care facilities in the United States. IHS generally conducted its long term care business through subsidiaries, each of which operated a single long term care facility on property leased from the property owner.

9. Among IHS's subsidiaries that leased and operated long term care facilities were ten subsidiaries that had leases (the "Leases") with Meditrust Corporation for facilities in the states of Ohio, Pennsylvania, New Jersey, Alabama, Missouri, and Michigan. As material to this Complaint, THCI succeeded to the rights and interests of Meditrust Corporation with respect to the Leases.

10. IHS itself was bound to guaranty agreements (the "Guaranties") pursuant to which IHS guaranteed "absolutely and unconditionally" in favor of THCI "the full, faithful, and punctual performance, fulfillment, observance, and payment of all of the obligations and liabilities" of its lessee subsidiaries under the Leases.

11. The Guaranties provided that "[e]ach reference . . . to Guarantor . . . shall be deemed to include the . . . successors . . . of Guarantor . . . who[] shall be bound by the provisions of this guaranty."

12. In 1993, the Leases were amended pursuant to a Lease Modification Agreement. IHS was a party to the Lease Modification Agreement and expressly "acknowledge[d] and agree[d] that all of its obligations under the [Guaranties] shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement."

3

13. In February 2000, IHS and virtually all of its subsidiaries, including the ten subsidiaries that were party to the Leases, filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

14. Subsequently, but during the Chapter 11 proceeding, IHS proposed to reject certain of the Leases and a dispute arose between IHS and THCI over whether, and upon what terms and conditions, IHS might be permitted under the Bankruptcy Code selectively to assume or reject the Leases.

15. The dispute was litigated extensively in the Bankruptcy Court. In the course of the litigation, the parties presented, and the litigation came to encompass and subsume, multiple issues concerning, for example but not limited to, whether the Leases were currently valid, whether they had terminated or expired before IHS sought to assume them, and whether they were susceptible to assumption presuming that IHS was authorized under Chapter 11 to assume them.

16. The dispute in its entirety was resolved in March 2002 when THCI, IHS, and its subsidiaries entered into a settlement agreement that was approved and entered as an Order by the Bankruptcy Court (the "March 2002 Order").

17. The March 2002 Order resolved all issues about the current validity of the Leases. The Order established that IHS and nine of its subsidiaries (the "Nine Subsidiaries") assumed their respective leases (the "Nine Leases"), but also established that IHS rejected the Lease for the tenth facility in Bellbrook, Ohio ("Bellbrook").

18. The March 2002 Order restated the Nine Leases, except insofar as specific provisions of the March 2002 Order superseded terms of the Nine Leases.

4

19. Nothing in the March 2002 Order affected the Guaranties. Indeed, the March 2002 Order restated the terms of the Lease Modification Agreement in which IHS reaffirmed its Guaranties of the Nine Leases.

20. The effect of the March 2002 Order was to continue the Guaranties in full force and effect as post-petition liabilities of IHS.

21. The March 2002 Order also directed IHS, the Nine Subsidiaries, and THCI to enter into a "Master Lease" that would "amend and restate" the Nine Leases into a single document collating the terms of the Nine Leases, the Lease Modification Agreement, and the March 2002 Order, and such other terms as to which the parties might agree mutually in the course of reviewing and restating these documents into a unified master lease.

22. IHS, the Nine Subsidiaries, and THCI did not agree upon or execute the "Master Lease" contemplated by the March 2002 Order.

23. By early 2003, IHS had worked out a Chapter 11 plan of reorganization pursuant to which all of the assets and liabilities associated with its long term care business, including the capital stock of its remaining long term care subsidiaries (including but not limited to the capital stock of the Nine Subsidiaries) would be sold in a best-and-highest bid process under the authority of Chapter 11 and the Bankruptcy Court

24. Briarwood was the successful bidder for the IHS long term care business, including the Nine Subsidiaries that were lessees under the Leases.

25 The sale of IHS's long term care business to Briarwood became the cornerstone of IHS's plan of reorganization that was eventually proposed to the Bankruptcy Court for confirmation.

5

26. Consistent with its proposed plan of reorganization, IHS entered into a Stock Purchase Agreement (the "SPA") with Briarwood dated January 28, 2003.

27. Under § 5.9 of the SPA, but contingent on ultimate confirmation of the proposed plan of reorganization by the Bankruptcy Court, IHS was required to create a new subsidiary, LTC.

28. Under § 5.9(b) of the SPA,

> Seller [IHS] shall assign, and the LTC Subsidiary shall assume . . . all of Seller's assets and liabilities . . . including without limitation the capital stock of all of the Subsidiaries that conduct Seller's long-term care businesses . . . .

29. Under § 2.1 of the SPA, Briarwood was required to purchase the stock of LTC for a designated price.

30. LTC was created by IHS and Briarwood solely to serve as the vehicle for transferring to Briarwood (i) the rights, assets, liabilities, and obligations of the IHS long term care subsidiaries, including but not limited to the Nine Subsidiaries, and also (ii) the rights, assets, and liabilities of IHS related to those Nine Subsidiaries.

31. Notwithstanding its commitments under the SPA, Briarwood advised IHS in or about March 2003 that it would not accept transfer of the stock of the Nine Subsidiaries on the terms reflected in the Nine Leases and the related Orders of the Bankruptcy Court and caused IHS and the Nine Subsidiaries to file a motion with the Bankruptcy Court seeking to escape the March 2002 Order.

32. In April 2003, at Briarwood's direction, IHS and the Nine Subsidiaries filed a motion in the Bankruptcy Court to reject the Nine Leases -- the very same leases that they agreed to assume and had been ordered to assume in the March 2002 Order (the "IHS Motion to Reject")

6

33. In the IHS Motion to Reject, IHS and the Nine Subsidiaries adopted the position that the March 2002 Order made their assumption of the Nine Leases contingent upon the execution of a Master Lease and that, because such Master Lease had not been executed, IHS and the Nine Subsidiaries were free of obligations under the March 2002 Order and therefore free to reject the Nine Leases.

34. THCI filed a crossing motion in the Bankruptcy Court to compel IHS and the Nine Subsidiaries to comply with the March 2002 Order and to enter into the Master Lease called for by that Order (the "Motion to Compel"). In addition, THCI filed an Objection to IHS's proposed plan of reorganization.

35. In April 2003, the Bankruptcy Court entered an Order (the "April 2003 Order") granting THCI's Motion to Compel. The Bankruptcy Court continued the IHS Motion to Reject so as not to preclude a later rejection if the April 2003 Order was reconsidered by the Bankruptcy Court or it was later reversed on appeal.

36. In the April 2003 Order, the Bankruptcy Court addressed the proper construction and interpretation of the March 2002 Order, in which the Court had finally resolved and decided all issues related to the viability and validity of the Nine Leases.

37. In the April 2003 Order at ¶ 2, the Bankruptcy Court ruled that:

> Within five (5) business days of the entry of this Order, the parties may execute a form of Master Lease on such terms as may be mutually agreeable by the parties, provided, however, that if within such time the parties do not execute a Master Lease on mutually agreeable terms, a Master Lease shall be deemed to exist, which Master Lease shall be deemed to incorporate the terms set forth in paragraphs 3(a), (b), (c) (d), (e) and (f) of the March 2002 Stipulation and shall further be deemed to incorporate by reference all terms of the existing Leases to the extent not inconsistent with the March 2002 Stipulation.

7

38. Pursuant to the April 2003 Order, IHS and the Nine Subsidiaries were required to comply with, and were bound by, all terms of the Nine Leases except those as to which the March 2002 Order specifically established a superseding term, without regard to whether IHS, the Nine Subsidiaries, and THCI might be able to agree upon a single-source Master Lease

39. Nothing in the April 2003 Order affected IHS's obligations under the Guaranties.

40. The April 2003 Order continued the Nine Leases, and their incorporated Guaranties, in full force and effect as post-petition liabilities of IHS and the Nine Subsidiaries.

41. IHS and the Nine Subsidiaries appealed to this Court from the April 2003 Order. The appeal remains pending for decision by Judge Gregory M. Sleet in *Integrated Health Services, Inc. et al. v. THCI Company, LLC*, Civil Action No. 03-610 (D. Del.).

42. By Order dated May 12, 2003 (the "Confirmation Order"), the Bankruptcy Court confirmed the AMENDED JOINT PLAN OF REORGANIZATION OF INTEGRATED HEALTH SERVICES, INC AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (the "Plan"). The Plan memorialized and confirmed the results of, and the arrangements and agreements surrounding, the bid process in which Briarwood had been successful.

43. The Confirmation Order, at ¶ 49(b), specifically addressed the status of the Nine Subsidiaries and the Nine Leases, and of the March 2002 and April 2003 Orders

44. Paragraph 49(b) of the Confirmation Order directed, in approval and implementation of the SPA, that "IHS will contribute and assign to the LTC Subsidiary all of its [pertinent] assets . . . and postpetition liabilities." The Confirmation Order thus

8

ordered that LTC succeed to IHS's obligations under the Guaranties, as carried forward by the March 2002 and April 2003 Orders.

45. Specifically addressing the March 2002 and April 2003 Orders, the Confirmation Order first recited in ¶ 49(b) that:

> On April 23, 2003, the Court entered an Order [the April 2003 Order] on the Motion to Compel which provided . . . that pursuant to the [March 2002 Order], a master lease agreement was deemed to exist between the parties effective May 1, 2003 . . . .

46. The Confirmation Order then further provided in ¶ 49(b) that:

> [T]he Master Lease [contemplated by the March 2002 Order and deemed to be in existence under the April 2003 Order] shall be treated as an <u>assumed</u> lease pursuant to section 365 of the Bankruptcy Code, and the applicable Debtor(s) party to such Master Lease shall perform the Master Lease until the Effective Date of the Plan, after which the Master Lease shall be performed by the applicable Reorganized Debtor(s) <u>unless and until an order is entered by this Court or another court of competent jurisdiction permitting rejection</u> of the THCI Leases . . . .

(Emphasis added.)

47. Under the terms of the Confirmation Order, IHS and the Nine Subsidiaries were treated as having assumed the Nine Leases and were required to comply with and be bound by all of the terms of the Nine Leases to the extent not inconsistent with the March 2002 Order, subject only to being permitted to "reject" the Nine Leases in compliance with Chapter 11.

48. "Rejection", as contemplated by the Confirmation Order, could only be authorized by the Bankruptcy Court, by another United States bankruptcy court (e.g., in a subsequent Chapter 11 proceeding), or by this Court on IHS's appeal from the Bankruptcy Court's April 2003 Order.

9

49    Recognizing specifically the latter alternative, the Confirmation Order in § 49(b) preserved all parties' rights to pursue the appeal and expressly provided that only the outcome of the appeal would affect the status of the Nine Leases. Thus, the Confirmation Order provided that, if this Court on appeal issued an order

> nullifying or invalidating the Master Lease [deemed to be in existence by the April 2003 Order] ... nothing contained in this Order shall be deemed to have effected an assumption of the Master Lease or the THCI Leases.

50.    Correspondingly, with respect to THCI, the Confirmation Order provided that

> [n]othing in the Plan [of Reorganization being confirmed] shall be deemed to provide for the rejection of the Master Lease or the THCI Leases

(Emphasis added.)

51.    The effect of the Confirmation Order was to continue the Guaranties in full force and effect as post-petition obligations of LTC. These obligations were subject only to "rejection" under Chapter 11 of the Bankruptcy Code if the District Court, on IHS's appeal, reversed the Bankruptcy Court's April 2003 Order that deemed the existence of a Master Lease that incorporated the terms of the Nine Leases.

52.    Under the Plan and the SPA, LTC succeeded to and became bound by the Guaranties, formerly binding on IHS, for the performance by the Nine Subsidiaries under the Nine Leases.

53.    In July 2003, IHS and Briarwood entered into an additional agreement intended (i) to accommodate the decisions of the Bankruptcy Court construing the March 2002 Order and (ii) to resolve issues between them in order to proceed to closing on the SPA. Under this additional agreement, IHS formally ceded to Briarwood the "sole right

10

and authority to prosecute" the appeal that IHS had filed on Briarwood's behalf with respect to the April 2003 Order and Briarwood confirmed its obligation to compensate IHS for all its costs from and after the Confirmation Order for pursuing that appeal, and further to compensate IHS for all its costs incurred in "cooperating" with Briarwood's conduct of litigation designed to attack that Order.

54. Briarwood closed on the sale of LTC to Briarwood on August 29, 2003, with full knowledge of the March 2002 and the April 2003 Orders.

55. The Nine Leases, in provisions not affected by the March 2002 Order and therefore treated as restated, require the Nine Subsidiaries to provide financial and other operational information ("Required Facility Information"), including but not limited to monthly statements setting forth the gross revenues of each of the Nine Subsidiaries' facility operations, on a monthly basis to THCI.

56. The Guaranties require the guarantor to cause and ensure that the Nine Subsidiaries comply with their duty to provide Required Facility Information to THCI.

57. The Guaranties also require the guarantor to provide current financial statements for itself and its subsidiary operations (the "Required Financial Information") on no less than a monthly basis to THCI.

58. Prior to the closing with Briarwood on the SPA, IHS and the Nine Subsidiaries did, in fact, regularly and consistently provide both Required Facility Information and Required Financial Information to THCI.

59. Subsequent to the closing on the SPA, THCI has repeatedly demanded that the Nine Subsidiaries, LTC, and Briarwood comply with their obligations to provide Required Facility and Financial Information.

11

60. Representatives of the Nine Subsidiaries and LTC have declined to provide, and in fact have not provided, Required Facility or Required Financial Information, and have asserted that Briarwood has directed them not to provide such information.

61. The Leases and Guaranties require LTC, as the successor to IHS's post-petition liabilities associated with IHS's nursing home operations, to maintain certain levels of assets and net worth. Upon the closing on the SPA, LTC held significant assets in addition to its interests in the Nine Subsidiaries.

62. Subsequent to the closing on the SPA, THCI has repeatedly demanded that Briarwood comply with its obligations as guarantor under the Leases and Guaranties to provide Required Facility Information and Required Financial Information, but Briarwood has refused to do so, contending that its guaranty obligations under the Leases and Guaranties did not survive the Confirmation Order.

63. Upon information and belief predicated in part on admissions made by LTC and Briarwood in the litigation described in paragraph 64 of this Complaint, subsequent to closing on the SPA, Briarwood has initiated and caused a pattern of transfers of (i) LTC's ownership of assets to alleged third parties and (ii) Briarwood's equity ownership of LTC and other assets for the purpose of effectuating evasions of obligations under the Guaranties and in violation of various state fraudulent conveyance laws that prohibit the transfer of corporate assets for less than fair value when the corporation is insolvent.

64. On or about April 14, 2004, Briarwood, upon information and belief, caused the Nine Subsidiaries and LTC to file a complaint against THCI in the Circuit

12

Court for Platte County, Missouri in which Briarwood sought a declaratory judgment that LTC is not liable or responsible under the Guaranties.

65. As of the filing of this Complaint, THCI had removed the complaint described in paragraph 64 to the United States District Court for the Western District of Missouri, where it was pending under the caption *Integrated Health Services Of Cliff Manor, Inc. et alia*, Case No. 04-6038-CV-SJ-GAF (W.D. Mo.).

66. On May 21, 2004, THCI moved to transfer the Complaint identified in paragraph 64, and THCI's Counterclaims thereto, to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a). As of the filing of this Complaint, the United States District Court for the Western District of Missouri had not ruled on THCI's motion to transfer venue.

67. Since the entry into the SPA in January 2003, Briarwood caused the formation of LTC and thereafter dominated and controlled the affairs of LTC, including but not limited to the affairs and decisions contested under this Complaint.

## COUNT I
### (DECLARATORY JUDGMENT AND SPECIFIC PERFORMANCE)

68. THCI repeats and incorporates by reference the allegations contained in paragraphs 1 through 67 as if fully restated herein.

69. Briarwood has dominated, and is dominating, the formation, affairs and conduct of LTC entirely for its own interests and has used and manipulated LTC as its *alter ego* for all purposes related to the Leases and Guaranties.

70. Briarwood is responsible and liable to THCI as the guarantor under the Leases and Guaranties, and is responsible and liable to THCI for violations by Briarwood

13

and LTC of applicable state fraudulent conveyance laws to which they are subject by virtue of being the guarantor under the Leases and Guaranties.

71. Briarwood has refused, and is refusing to comply with its obligations as the *alter ego* of LTC, and as the guarantor under the Leases and Guaranties.

72. There is an actual controversy between THCI and Briarwood about whether Briarwood is required to comply, and to cause LTC to comply, with the obligations of the guarantor under the Leases, and Guaranties, and under the March 2002 and April 2003 Orders, and the Confirmation Order of the Bankruptcy Court.

73. THCI has no adequate relief available to it at law for Briarwood's refusal to comply with its obligations as guarantor under the Leases and Guaranties, and under the March 2002 and April 2003 Orders, and the Confirmation Order.

## COUNT II
### (TORTIOUS INTERFERENCE WITH CONTRACT)

74. THCI repeats and incorporates by reference the allegations contained in paragraphs 1 through 67 as if fully set forth herein.

75. Briarwood has intentionally, without legitimate reason, and entirely in its own interests, induced and caused the Nine Subsidiaries and LTC to refuse to perform and to violate their obligations to provide Required Facility Information and Required Financial Information under the Leases and Guaranties, and under the March 2002 and April 2003 Orders, and the Confirmation Order.

76. Briarwood has intentionally, without legitimate reason, and entirely in its own interests, induced and caused LTC to violate its obligations under the Guaranties to maintain certain levels of assets and net worth as required under the Leases and

14

Guaranties, and under the March 2002 and April 2003 Orders, and the Confirmation Order.

WHEREFORE, THCI prays that the Court enter judgment:

(A) Declaring and decreeing that Briarwood is the *alter ego* of LTC and is accordingly responsible and liable for obligations as the guarantor under the Leases and Guaranties, as construed and applied in the March 2002 and April 2003 Orders, including but not limited to obligations under state fraudulent conveyance laws;

(B) Enjoining Briarwood, as the guarantor under the Guaranties, to provide the Required Financial Information about Briarwood to THCI;

(C) Enjoining Briarwood, as the guarantor under the Leases and Guaranties, to cause and direct the Nine Subsidiaries timely to provide the Required Facility Information to THCI and otherwise to perform the Nine Subsidiaries' obligations under the March 2002 and April 2003 Orders;

(D) Enjoining Briarwood, as the guarantor under the Leases and Guaranties, to cease and reverse transactions by which it has conveyed and will convey assets to third parties, and has caused or will cause LTC to convey assets to third parties, in violation of the obligations of the Guaranties and of applicable state fraudulent conveyance laws;

(E) Awarding damages to THCI in an amount to be proven at trial representing THCI's loss from Briarwood's unlawful interference with the Nine Subsidiaries' and LTC's compliance with their obligations to provide Required Facility Information and Required Financial Information; and

15

(F) Awarding to THCI and against Briarwood all costs, disbursements, and attorneys' fees reasonably incurred by THCI in the prosecution of this litigation, and such other and further relief as the Court deems just and proper.

Dated: June 9, 2004

GREENBERG TRAURIG, LLP

By: /s/ Dennis A. Meloro
Scott D. Cousins (No. 3079)
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
(302) 661-7000
(302) 661-7360 (facsimile)

-and-

ARENT FOX PLLC

Ronald L. Castle
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
Tel: (202) 857-6000
Fax: (202) 857-6395 (facsimile)

*Attorneys for Plaintiff THCI Company, LLC*