```
 1               IN THE UNITED STATES DISTRICT COURT

 2               IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   INTEGRATED HEALTH SERVICES   :    Civil Action
     OF CLIFF MANOR, INC.,        :
 5   et al.,                      :
                                  :
 6              Plaintiffs,       :
                                  :
 7        v.                      :
                                  :
 8   THCI COMPANY LLC,            :
                                  :
 9              Defendant.        :    No. 04-910 (GMS)

10                            - - -

11                    Wilmington, Delaware
                    Friday, January 13, 2006
12                         11:00 a.m.
                      Telephone Conference
13
                              - - -
14
     BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
15
     APPEARANCES:
16
              MICHAEL LASTOWSKI, ESQ.
17            Duane Morris LLP
                      -and-
18            MICHAEL CRYAN, ESQ., and
              IGOT CSIDELMAN, ESQ.
19            Arent Fox LP
              (New York, New York)
20
                              Counsel for Plaintiffs
21
              VICTORIA COUNIHAN, ESQ.
22            Greenberg Traurig LLP
                      -and-
23            AMOS ALTER, ESQ.
              Troutman Sanders LLP
24            (New York, New York)

25                            Counsel for Defendant
```

```
 1              THE COURT:  Good morning.
 2              (Counsel respond "Good morning.")
 3              THE COURT:  Counsel, who is on for Integrated
 4   Health?
 5              MR. ALTER:  Amos Alter.
 6              MR. LASTOWSKI:  Your Honor, this is Michael
 7   Lastowski.  I am local counsel with Duane Morris here in
 8   Wilmington.
 9              THE COURT:  Good morning.
10              MR. CRYAN:  Your Honor, for THCI, this is
11   Michael Cryan of Arent Fox, with my colleague Igor
12   Csidelman.
13              MS. COUNIHAN:  Your Honor, for THCI is Victoria
14   Counihan from Greenberg Traurig, and I am local counsel here
15   in Delaware.
16              MR. SHERMAN:  Michael Sherman, in-house counsel
17   for THCI.
18              THE COURT:  Thanks again.  Anyone who wants to
19   jump in and correct the Court's, this summary I am going to
20   attempt to give on where I think we are, please feel free to
21   do so, because I, quite frankly, am a little uncertain and
22   perhaps am in need of having my recollection refreshed a
23   little bit.  But we have a bankruptcy appeal currently on my
24   docket at 03-610.  Is that correct?
25              UNIDENTIFIED SPEAKER:  Yes, Your Honor.
```

1    THE COURT:  As I understand, the essential
2 question before the Court in that case is the existence of a
3 master lease.  Is that correct?
4    UNIDENTIFIED SPEAKER:  That's correct.
5    THE COURT:  Then this case that we are -- then
6 this next action that we are talking about at the moment,
7 04-910, seeks to have claims or disputes among the parties
8 resolved pursuant to that master lease.  But the Court first
9 needs to determine whether the lease exists.  Right?
10    UNIDENTIFIED SPEAKER:  Correct.
11    MR. CRYAN:  For THCI.
12    It is not necessary that the appeal is
13 completely determined before the claims that are at issue in
14 the 910 action are adjudicated in the sense that there is no
15 dispute that LTC and the nine subsidiaries are occupying the
16 properties of THCI.  And we are seeking -- they have not
17 been paying rent since last June.  And we have asserted
18 claims, for example, for fraudulent conveyance against LTC
19 and the nine subsidiaries as well as for money damages.
20 Those claims have been in this lawsuit from the beginning.
21    MR. ALTER:  This is Mr. Alter.
22    I would not agree with that characterization,
23 that these claims would be viable if the appeal were decided
24 adversely to the landlord.
25    THE COURT: Okay.  Why not?

1           MR. ALTER: Because most of them, the obligation
2  to pay rent as opposed to say use and occupancy is based
3  solely on the existence of the lease. And fraudulent
4  conveyance would not be relevant unless he got a money
5  judgment, again which is dependent upon the existence of a
6  lease.
7           THE COURT: So at least in your view, Mr. Alter,
8  it would be prudent for the Court to resolve the bankruptcy
9  appeal before permitting the 04-910 matter to proceed
10 forward.
11          MR. ALTER: Absolutely.
12          THE COURT: Mr. Cryan, you take a different
13 view.
14          MR. CRYAN: Yes. Really, there is no dispute
15 that they are occupying the premises. And they will not
16 leave the premises.
17          So either they are under a lease or they are
18 holdover tenants. Under the law of any jurisdiction, you
19 can't simply occupy property and not pay any rent. In fact,
20 they recognized this principle, because last year, they
21 filed a motion in the 910 action that is before Your Honor
22 to pay rent into court. So they recognized that there is an
23 ongoing obligation to pay rent into court, regardless of
24 whether the appeal is decided.
25          THE COURT: Let me ask you, just to interrupt

1    for a second, I will let you continue, was that motion
2    withdrawn or is it still outstanding?
3             UNIDENTIFIED SPEAKER:  That was withdrawn.
4             THE COURT:  Go ahead.
5             UNIDENTIFIED SPEAKER:  Your Honor, what happened
6    was, in June of last year, they exercised self-help and just
7    simply stopped paying all rent.  So there has been no rent
8    paid since June of 2005.  The amount due is approaching 7
9    million dollars.  So that's why we filed the eviction motion
10   seeking immediate possession of the properties.  And there
11   is no reason to put a delay or a stay on discovery in the
12   910 action because every day that passes we are losing the
13   trail of the money that we contend is being fraudulently
14   transferred and conveyed out of these nine subsidiaries to
15   other persons and entities.
16            So there is no pending motion, even, that
17   impacts those claims.  Those claims are viable and relevant
18   and they are existing in the 910 action.  So there is no
19   good cause for or any other reason to enter a stay of
20   discovery right now, given that we are speaking about
21   discovery of claims that are pending in this case.
22            MR. ALTER:  Whether the claims are pending is
23   dependent on something I will get into in a second.  But
24   even assuming they are, how one determines them is dependent
25   upon whether or not a lease exists.

```
 1                THE COURT:  Let me interrupt for a second.
 2   Essentially, what Mr. Cryan says is that you can't -- not
 3   you, but your client can't continue to, as it were, squat on
 4   this property without -- I think squatting implies that
 5   there is no rent being paid or no compensation forthcoming
 6   to the owners, the rightful owners of the property.
 7                UNIDENTIFIED SPEAKER:  Your Honor, the basic
 8   reason is the following.  We believe, based on a fair use
 9   and occupancy test, we have been overpaying for some 20
10   months.  We have paid like 12 million dollars, 15 million
11   dollars rent already.  We believe we have been overpaying.
12   He says we have resorted to self-help.  That is correct in
13   that we believe we have recovered maybe 50 percent of that
14   which we have overpaid so far.
15                Now, we don't believe that the long run will
16   prove that we owe them money.  We think the long run will
17   prove precisely the opposite.
18                THE COURT:  That matter is clearly in dispute.
19   Right?
20                UNIDENTIFIED SPEAKER:  Yes, agreed.
21                THE COURT:  So what can be done in the view of
22   all parties to at least not lose, as has been characterized,
23   lose the trail, Mr. Cryan, are you also saying the ability
24   of the plaintiff to pay rent?
25                MR. CRYAN:  Yes, Your Honor, precisely.
```

```
 1              MR. ALTER:  I think we have that problem right
 2   now.  These properties are losers.  And unless the tenants
 3   are willing to kick in money from other sources, the
 4   properties are not paying rent -- are not generating enough
 5   money to pay the rent.  That is correct.
 6              But we have the same problem that they claim to
 7   have, which is, we believe that if we are entitled to money
 8   back from them, as I indicated earlier, we don't trust their
 9   creditworthiness, either.  And we have got a serious problem
10   and we think at this point we are throwing good money after
11   bad.
12              THE COURT:  Was that the reason that you filed
13   the motion to pay rent into court?
14              UNIDENTIFIED SPEAKER:  That was the initial
15   reason that we did file a motion to pay rent into court,
16   yes.
17              THE COURT:  Was there an effort prior to the
18   filing of that motion to negotiate some compromise that
19   would somehow preserve both parties' abilities to pay in?
20              UNIDENTIFIED SPEAKER:  I am not fully cognizant
21   of the negotiations.  I think in general terms, the answer
22   to your question would be in the affirmative.  But I really
23   can't give details.  I will add that the parties have been
24   trying to resolve this.  We had a full-day mediation before
25   Judge Poppiti just last week.  That unfortunately --
```

1  obviously, I am not going to go into details, but that did
2  not reach a satisfactory conclusion.
3          THE COURT:  That was on the 03-610 action.
4          UNIDENTIFIED SPEAKER:  Yes, it was on the
5  appeal.  As all parties recognized, to resolve the appeal we
6  have to resolve all questions which are open between the
7  parties.  There was an attempt, I think in good faith by
8  both sides at that mediation, to resolve it.  But, you know,
9  it takes more than good faith.  Sometimes you have to
10 actually reach an agreement, which we were unable to do.
11         Judge Poppiti has I believe reported to you that
12 the mediation is concluded.  The parties have had some talks
13 since then, which I cannot say -- certainly have not reached
14 agreement yet and I cannot promise will, but we are
15 absolutely willing and we hope to continue negotiations with
16 them.  And we would not be adverse, frankly, to continuation
17 of the mediation or a new mediation.
18         But that is where we are today.
19         MR. CRYAN:  Your Honor, they will do anything
20 and everything to delay this matter and remain in the
21 property.  We are aware of that.
22         But your order of September 25th, 2005 granted
23 THCI the ability to reinstate claims against an entity named
24 Briarwood as part of this action, the 910 action, which is
25 also called the Missouri action, because it originated in

1  Missouri.  And we reinstated those claims against Briarwood
2  in the second amended counterclaim.  And there has been a
3  motion to dismiss filed that simply ignores the direction in
4  your order.
5           So beyond the motion to dismiss, the discovery
6  that we are seeking concerns claims that are absolutely at
7  issue in the lawsuit regardless of the outcome of that
8  motion.  And there is no reason to stay discovery preventing
9  us from finding out what's going on with the fraudulent
10 transfers.
11          The leases require them to provide us with
12 financial information every month, and for more than a year
13 they have also failed and refused to provide any financial
14 information as required.
15          So we are simply left with absolutely no
16 information that we are entitled to.  I don't think there is
17 any basis here -- if Your Honor would like some case law
18 cited --
19          THE COURT:  Not at this point.  Let me find out
20 from the other side, is the basis for the alleged refusal to
21 respond to discovery requests in the 910 action, is that
22 based upon your view that the Court has first to resolve the
23 03-610 action?
24          UNIDENTIFIED SPEAKER:  Only in part.  I would
25 say the primary reason is the following.  The claims, Your

```
 1    Honor, dismissed in that other action, there were two
 2    counterclaims -- pardon me, two claims.  There were four
 3    counterclaims proposed in the first amended counterclaims in
 4    this action.  Four months -- a number of months after Your
 5    Honor's order, they simply served without asking us for
 6    leave of Court with what they labeled second amended
 7    counterclaims, which goes on for some hundreds of pages,
 8    literally hundreds of pages, and contains 13 counterclaims.
 9    So the claim that they have simply added the two claims to
10    the four claims rings a little false, considering there are
11    13 counterclaims interposed.
12                 THE COURT:  Are you saying that new claims
13    beyond the period that one might file them as a matter of
14    right were added in this case?
15                 UNIDENTIFIED SPEAKER:  Absolutely.  Absolutely.
16    I just received their answering papers on my motion to
17    dismiss.  They concede that.  They say that they are new
18    claims.
19                 We have made a motion against that.  That motion
20    is not fully briefed yet.  It is probably a little premature
21    to argue the merits of that before Your Honor.  In one
22    sentence, let me just say we have serious 12(b)(6) problems
23    with a lot of their proposed claims.  To say that these
24    claims are in the action is a little --
25                 THE COURT:  Premature in your view.
```

1          UNIDENTIFIED SPEAKER:  A little premature

2    considering new parties added, new additional counterclaim

3    defendants added who haven't even answered.  It is

4    definitely premature.  The subpoenas that we are talking

5    about, if Your Honor doesn't feel that it should be rejected

6    out of hand at least as premature, the subpoena I would like

7    to move against contains a schedule containing 67 items, 67,

8    is it, categories of items that they want produced.  It is

9    also exceedingly burdensome and basically irrelevant.  They

10   are not only assuming that the motion to amend their

11   pleading has been granted, a motion, by the way, they never

12   made, they are not only assuming that it has been granted,

13   but they are going even further, where some of their claims

14   sought to pierce the corporate veil.

15          This discovery device seems to be looking to

16   pierce the corporate veil of the entities to whom they are

17   seeking to pierce the corporate veil, if I am making myself

18   clear.

19          It is just beyond all reason.

20          THE COURT:  Okay.

21          UNIDENTIFIED SPEAKER:  Your Honor, the

22   discovery --

23          THE COURT:  Mr. Cryan?

24          UNIDENTIFIED SPEAKER:  -- that have been in this

25   case since the beginning of the case (inaudible) before.  It

1  is not solely pertaining to claims that are in the second
2  amended counterclaim.
3          THE COURT:  Let's see if we could parse that.
4  Mr. Alter, you have just heard what Mr. Cryan said.  To the
5  extent that the discovery requests we are talking about,
6  let's try to focus on them, if we can, those that have been
7  extant in the case apart from these counterclaims that you
8  have just talked about, are we able to agree that -- or
9  identify them and agree on what they are, the discovery
10 requests?
11         MR. ALTER:  I think I could identify them.  I
12 think my adversary could identify them as well.  I am sure
13 our lists will not be the same.
14         THE COURT:  Why don't you try in a further
15 meet-and-confer post this conference to agree upon what they
16 are.  I am going to order that you respond to those.  I am
17 not going to order at this juncture that you respond to
18 discovery requests, at least at this point, I haven't heard
19 any statement in opposition to your observations that are
20 not yet, quite frankly, in the case.
21         UNIDENTIFIED SPEAKER:  By the way, these
22 subpoenas are addressed to third parties.  They are not
23 addressed to the plaintiff.
24         UNIDENTIFIED SPEAKER:  That's right.
25         Your Honor, that is fine.  We will take

```
 1   discovery.  As I say, the existing claims for fraudulent
 2   transfers and in the alternative for money damages against
 3   the nine subsidiaries focused precisely on transfers out of
 4   these existing parties to other persons.  And we will
 5   proceed to take discovery on that issue.  And those claims
 6   are already in the case.  We certainly will agree with that.
 7                THE COURT:  All right.  It should be easy enough
 8   for counsel to identify the claims that are already in the
 9   case and therefore identify the related discovery.
10                UNIDENTIFIED SPEAKER:  I would add, by the way,
11   that of these three subpoenas anyway, at least two seem not
12   to have been properly served, and the third we know that
13   they claim to have served it because they served a notice of
14   deposition upon us, the party himself has no knowledge of
15   the subpoena at all.
16                THE COURT:  I am not going to practice law for
17   anyone here.  So that's another matter, and certainly one
18   for which there is a remedy.
19                So as far as the discovery dispute is concerned,
20   does that assist the parties in the resolution of it at
21   least to this point?
22                UNIDENTIFIED SPEAKER:  Yes, Your Honor.
23                MR. CRYAN:  I think what makes most sense is for
24   us to go ahead and serve discovery on the plaintiffs that is
25   focused on the claims that are in the case, so that we can
```

1  obtain the information that we need for the existing claims.
2              THE COURT:  That's fine.  Now, if there are
3  deficiencies -- this is addressed to the defendants --
4  insofar as these counterclaims are concerned, what I am
5  speaking about is Mr. Alter's contention that these were
6  improvidently filed, and you recognize that, you agree
7  and/or recognize that he is correct, then you should make
8  efforts to correct whatever deficiencies exist.
9              MR. CRYAN:  Your Honor's September 25th, 2005
10  order was in another case.  It was a case against Briarwood
11  specifically.  And in that order dismissing that case -- we
12  had sought to join the cases, and Your Honor said, instead
13  of joining the cases, you are dismissing that case but
14  granting us the, quote, ability to reinstate those claims in
15  this present 910 action.
16              So we have joined Briarwood in the 910 action.
17  And we have asserted those claims.
18              Now, we did add additional detail -- we have
19  learned pertinent facts during the intervening months while
20  the motion was initially pending that we just sought to
21  clarify the nature of the claims.
22              THE COURT:  Hold on.
23              UNIDENTIFIED SPEAKER:  But there is no prejudice
24  to LTC or Briarwood.  They have known that we are seeking to
25  make sure that our rent is paid and the taxes are paid and

1   all of the other items.  There are remedies under the law
2   for either breach of a lease or for a holdover tenant.
3              THE COURT:  Mr. Cryan and Mr. Alter, hold on a
4   second.  It would appear from what has just been said that
5   the Court may, correctly or incorrectly, have placed its
6   imprimatur on the filing of these counterclaims.  Hold on
7   just a second.
8              MR. CRYAN:  Yes.  In fact, that is how we
9   interpreted Your Honor's order.  I have just filed a
10  counterclaim.  To the extent that a motion for leave to
11  amend was required, we also requested that by way of our
12  papers, Your Honor.
13             THE COURT:  All right.  Mr. Alter --
14             MR. CRYAN:  All these cases are before Your
15  Honor.
16             UNIDENTIFIED SPEAKER:  Your Honor, on the
17  so-called motion to amend in opposition to my motion to
18  dismiss, they say, by the way, please treat this as a motion
19  to amend.  As I said in my papers, if all they had done was
20  take the two claims from the other action and added it to
21  the four counterclaims in this action, I wouldn't have stood
22  on formality.
23             The point is they have 13 claims.  A lot of them
24  are no good.  They have sought to add additional
25  counterclaim defendants, John Does 1 through X, Joan Does,

```
 1   John Roes one through Y.  They have attempted to convert all
 2   the counterclaim defendants into plaintiffs, which I don't
 3   think they have the authority to do.  A lot of their
 4   counterclaims have serious 12(b)(6) problems.  And to claim
 5   I am not prejudiced by this is nonsense.
 6              THE COURT:  Hold on a second.  I am going to put
 7   you on hold for a moment.  I am going to hit a mute button
 8   here.  I can still hear your conversation.  You won't be
 9   able to hear mine.
10              (Pause.)
11              THE COURT:  Counsel, in trying to reconstruct
12   the history of what happened here in chambers, I am reminded
13   that it was the Court's intention to permit the two, what
14   would have been compulsory counterclaims -- I think they are
15   two in number.
16              UNIDENTIFIED SPEAKER:  I have no problems with
17   that.
18              THE COURT:  That's you, Mr. Alter?
19              MR. ALTER:  That's Mr. Alter.  I have no
20   problems with that.
21              THE COURT:  As I was about to continue, that was
22   the Court's intent, Mr. Cryan.  It was not to grant leave to
23   go beyond that, not without a motion, not without a proper
24   motion, giving the other side the opportunity to respond.
25              UNIDENTIFIED SPEAKER:  That is fine, Your Honor.
```

```
 1    What happened here is that in the intervening months, they
 2    simply stopped paying rent.  They completely altered the
 3    status quo.
 4              THE COURT:  I understand that.  I understand
 5    that that is your position and those may be the facts.  In
 6    terms of process here, that was the Court's intention as to
 7    process.
 8              So I am not prepared today to go beyond that.
 9              So you will need, I don't know what -- we may do
10    something administratively here with regard to those
11    additional claims or you may need to file a motion to amend.
12              UNIDENTIFIED SPEAKER:  Yes, Your Honor.
13              THE COURT:  But the other side needs to be given
14    an opportunity to respond to that motion.  Okay?
15              UNIDENTIFIED SPEAKER:  So, Your Honor, the
16    claims against Briarwood itself are deemed to be added.
17              THE COURT:  Yes.  Whatever those are, what we
18    viewed as compulsory counterclaims, yes.
19              UNIDENTIFIED SPEAKER:  That were in the original
20    pleadings.
21              THE COURT:  Right.  They are deemed to be added.
22              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
23    And we can proceed on discovery forthwith.
24              THE COURT:  Yes.
25              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
```

1  UNIDENTIFIED SPEAKER: Even against third
2  parties?
3  UNIDENTIFIED SPEAKER: There is no reason not to
4  include third parties.
5  THE COURT: Why would you -- who was that? Mr.
6  Alter?
7  MR. ALTER: Yes.
8  THE COURT: Why not?
9  MR. ALTER: Well, for one thing it is customary
10 to have discovery of the parties first. Number two, this is
11 to a great degree very burdensome.
12 THE COURT: The third parties can make that
13 assertion.
14 MR. ALTER: I recognize it is for them to make
15 that assertion.
16 THE COURT: I am not in the habit, nor am I
17 going to get in the habit, of micromanaging counsel's
18 independent discovery efforts. Okay?
19 UNIDENTIFIED SPEAKER: Thank you, Your Honor.
20 THE COURT: Anything else, counsel?
21 UNIDENTIFIED SPEAKER: No, Your Honor.
22 THE COURT: Take care.
23 (Teleconference concluded at 11:25 a.m.)
24                    - - -
25 Reporter: Kevin Maurer