# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INC. INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 04-910 (GMS) |
| Plaintiffs-Counterclaim Defendants, | ) ) ) |
| v. | ) ) ) |
| THCI COMPANY LLC, | ) ) **JOINT STATUS REPORT IN PREPARATION FOR CONFERENCE ON FEBRUARY 28, 2006 AT 11:45 A.M.** |
| Defendant, | ) ) |
| v. | ) ) ) |
| ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, | ) ) ) |
| Additional Counterclaim Defendants. | ) ) ) ) ) |

In accordance with Local Rule 16.2(b) and the Court's Notice of Telephonic Scheduling Conference, the undersigned attorneys hereby submit this Joint Status Report.

1392982A01022206

1.  **Jurisdiction and Service.** Does the court have subject matter jurisdiction? Are all parties subject to the court's jurisdiction? Do any remain to be served?

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), and all parties are subject to personal jurisdiction. THCI Company LLC's ("THCI") Third Amended Counterclaims include claims against John Doe defendants who are currently unidentifiable individuals and entities who THCI contends have received fraudulent transfers of assets from the plaintiffs and/or Abe Briarwood Corporation ("Briarwood"). Plaintiffs' counsel, Amos Alter, has agreed to accept service of process on behalf of Briarwood, and THCI will serve the John Doe defendants as soon as they are identified.

2.  **Substance of the Action.** What are the factual and legal bases for plaintiffs' claims and defendant's defenses?

**Plaintiffs' Contentions Regarding Their Claims:**    Plaintiffs here are (i) nine tenants (under a Master Lease or otherwise) of nine nursing home sites located in six States, of which defendant is the landlord; and (ii) the parent company, IHS Long Term Care, Inc ("LTC"). An appeal from the Bankruptcy Court to this Court (03-610, Sleet, D.J.), currently under advisement, will determine whether there is a Master Lease in effect. The complaint herein, as originally pleaded in Missouri State Court, seeks a declaratory judgment that, assuming there is a Master Lease, there is no guaranty of that lease by the parent, LTC. Defendant removed this case to Federal Court in Missouri and then transferred it to this Court, on the ground it is related to the appeal.

As to defendants' counterclaims, they have only recently been pleaded, and plaintiffs' and additional counterclaim defendants' time to respond has not yet expired. Plaintiffs believe at least some of them fail to state facts upon which relief can be granted, and plaintiffs expect to move against them.

On the merits of the counterclaims, they assume three facts, all of which plaintiffs dispute: (i) That the Master Lease is in effect (This will be determined in the related appeal). (ii) That, if there is a Master Lease, there is a guaranty in effect. Plaintiffs believe there is no factual basis for any such contention, and indeed a motion by plaintiffs for partial summary judgment to that effect is currently under advisement. (iii) If there is a Master Lease, and if there is a guaranty in effect, then the guarantor fraudulently conveyed assets defendants could recover, or alternatively, that corporate veils may be pierced. This contention, besides the fact that its premises are false, is also false, and is based on nothing but speculation and a desire to pressure plaintiffs by inquiring into the collateral business affairs of related parties.[1]

**Defendant's Contentions Regarding Its Defenses and Counterclaims:** THCI is the owner of nine nursing home facilities (the "Facilities") that currently are being occupied and operated by Integrated Health Services of Cliff Manor, Inc., Integrated Health Services at Riverbend, Inc., Integrated Health Services at Somerset Valley, Inc., Alpine Manor, Inc., Briarcliff Nursing Home, Inc., Integrated Health Group Limited Partnership, Spring Creek of IHS, Inc., Firelands of IHS, Inc., Elm Creek of IHS, Inc. (collectively, the "Nine Subsidiaries"). All of the Facilities are operating as nursing homes and are responsible providing patient care. Three of the nine Facilities are located in Ohio, two of the Facilities are located in Pennsylvania, and the remaining Facilities are located in Alabama, Michigan, Missouri, and New Jersey. LTC is the parent company to each of the Nine Subsidiaries and the guarantor of the Nine Subsidiaries' lease obligations relating to the Facilities.

---

[1] To be sure, even in the absence of a guaranty, defendant claims fraudulent conveyances by the tenant plaintiffs (as opposed to the parent purported guarantor). That claim is also disputed. These defendants never had any assets other than the particular leaseholds. They have not upstreamed cash, because there is none to upstream. The fundamental problem here is that the properties are substantial money-losers, and cannot meet their expenses, including rent, if the Master Lease is in effect.

Prior to becoming wholly-owned subsidiaries of LTC, the Nine Subsidiaries were subsidiaries of Integrated Health Services, Inc. ("IHS"). In February 2000, IHS and virtually all of its subsidiaries, including the Nine Subsidiaries, filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). During the Chapter 11 proceeding, a dispute arose between IHS and THCI regarding whether IHS had the right to assume certain leases and to reject others. The dispute was litigated and the Bankruptcy Court entered an Order dated April 22, 2003, pursuant to which one lease was rejected and a Master Lease covering the Facilities was deemed to exist (the "Master Lease"). Plaintiffs have appealed the Bankruptcy Court's April 2003 Order, and that appeal is pending before this Court, but there is no dispute that the Bankruptcy Court's April 2003 Order is a final and enforceable judgment.

Despite the Bankruptcy Court's Order, the Nine Subsidiaries have not made a single rent payment relating to any of the Facilities since May 2005, and the Nine Subsidiaries and LTC currently owe more than $8,000,000 in back rent. These amounts continue to increase at the rate of approximately $1,000,000 each month. In addition, the Nine Subsidiaries and LTC have failed to provide THCI with financial and operational information concerning the Facilities. Plaintiffs are required to provide this information to THCI, and their failure to do so is harming THCI. THCI also contends that since September 2003, the Nine Subsidiaries and LTC have been fraudulently conveying assets for the purpose of diminishing or eliminating the ability of THCI to recover amounts due under the Master Lease and the guaranty.

3.    **Identification of Issues.** What factual and legal issues are genuinely in dispute?:

**Plaintiffs' Issues:** Whether there is a Master Lease in effect, which will be determined in the related appeal and not in this action, is a fundamental disputed issue. If plaintiffs prevail on that issue, virtually this entire lawsuit, claim and counterclaims, becomes academic. The second fundamental disputed issue is whether there is a guaranty in force, assuming there is a Master Lease. A negative decision on this issue makes a substantial part of the counterclaims academic, and the balance trivial. Plaintiffs believe the fraudulent conveyance and veil-piercing claims, to the extent they are even sufficiently pleaded, are at best premature, are at this point in time not pleaded in good faith, and are in any event without merit.

**THCI's Issues:** THCI contends that the primary issues in dispute relate to the extent of the Nine Subsidiaries obligation to pay rent under the Master Lease, the obligations of LTC and Briarwood (as LTC's alter ego) as guarantors of the Master Lease, and the extent to which the plaintiffs have fraudulently conveyed assets. The Bankruptcy Court has already determined that the Master Lease exists, yet the Nine Subsidiaries are occupying the Facilities without paying rent or providing financial and operational information in breach of the Master Lease.

4.    **Narrowing of Issues.** Can the issues in litigation be narrowed by agreement or by motions? Are there dispositive or partially dispositive issues appropriate for decision or motion?

**Plaintiffs' Contentions:** Plaintiffs believe that issues in this case almost certainly would be significantly narrowed by decisions on the appeal and on motions all currently under advisement. Besides the appeal, there are three motions in this action currently under advisement. In the order they were made, they are (i) by defendant for a temporary restraining order; (ii) by plaintiffs for partial summary judgment; and (iii) by defendant for a preliminary injunction.

**THCI's Contentions:** THCI wishes to discuss an appropriate mechanism to address on an expedited basis the plaintiffs' failure to pay rent and the plaintiffs' failure to provide financial and operational information to THCI. Plaintiffs' breaches are damaging THCI in the amount of approximately $1,000,000 per month, and these breaches also are irreparably harming THCI because of, among other things, THCI's inability to properly monitor its property and its inability to provide its lenders with financial and operational information from the Facilities.

5. **Relief.** What specific relief does plaintiff seek? What is the amount of damages sought and generally how is it computed?

**Plaintiffs' Requested Relief:** Plaintiffs seek declaratory relief, namely that, assuming the Master Lease is in effect, then there is no guaranty in effect. No money damages are sought under the present pleading.

**THCI's Requested Relief:** THCI seeks judgment which, among other things, would include all amounts due and owing under the Master Lease and Guaranties (currently in excess of $8 million), require plaintiffs to pay rent for the remainder of the term of the Master Lease, or, if plaintiffs vacate the premises, compensatory and consequential damages due to their premature termination of the Master Lease, together with interest, attorneys' fees, and costs of suit. THCI also seeks an order requiring plaintiffs to provide THCI with all of the financial and operational information required under the Master Lease and the guaranties and setting aside the fraudulent transfers by the Nine Subsidiaries and LTC to third parties, including Briarwood and other, unidentified parties.

6.    **Amendment of Pleadings?**

**Plaintiffs:** If the issue of the Master Lease is resolved in plaintiffs' favor, defendant has been overpaid, and plaintiffs will at that time seek to amend to recover the overpayments.

**THCI:** THCI intends to amend its counterclaims when, through discovery, it learns the identity of the John Doe Defendants.

7.    **Joinder of Parties?** THCI intends to amend its counterclaims when, through discovery, it learns the identity of the John Doe Defendants.

8.    **Discovery.** Discovery contemplated by each party and the amount of time it may take to complete discovery? Can discovery be limited? Are less costly and time-consuming methods available to obtain necessary information?

**Plaintiffs:** Plaintiffs believe discovery on the veil-piercing and fraudulent conveyance counterclaims, even if they had been asserted in good faith, are premature, as defendant has to prevail both on the Master Lease issue and on the guaranty issue for claims against non-tenants to be meaningful. Plaintiffs believe discovery on those counterclaims should be limited at this time. It should be noted that defendant has subpoenaed three non-party witnesses with broad-brush subpoena directed to the veil-piercing and fraudulent conveyance claims, which burdensomely inquire into their business affairs. It is anticipated that these witnesses, as well as plaintiffs, will be moving to quash or modify the subpoena.

**THCI:** THCI served its First Request for Production of Documents upon Plaintiffs on February 17, 2006, and intends to serve its Initial Interrogatories shortly. THCI also intends to begin noticing depositions and serving subpoenas. Although plaintiffs have resisted THCI's attempts to proceed with discovery, the Court recently instructed the parties that discovery is to

proceed notwithstanding the pending appeal of the Bankruptcy Court's Order.  The Court's instructions were quite clear and are confirmed by the transcript from that proceeding.

9.      **Estimated Trial Length.** Is it feasible or desirable to bifurcate issues for trial?  Is it possible to reduce the **length** of the trial by stipulations, use of summaries or statements, or other expedited means of presenting evidence?

**Plaintiffs:** Plaintiffs believe the trial should be bifurcated, with the issue of whether there is a guaranty, which is determinative of plaintiffs' claim, to be tried first.  As noted, resolution of that issue may well also make a substantial part of the counterclaims academic, and the rest trivial.  Plaintiffs believe that portion of the case could be tried in a day.  Since, under the Statute of Frauds, defendants either can or cannot point to a signed writing constituting a guaranty, this case may well be one which can be determined on the basis of the documentary evidence, requiring little testimony.

**THCI:** THCI believes it would be feasible and desirable to expedite consideration of the issues relating to plaintiffs' failure to pay rent and provide financial information because this conduct is causing extensive damages to and is irreparably harming THCI.

10.     **Jury Trial?** Not requested.

11.     **Settlement.** Have there been settlement discussions?  What are the prospects for settlement?  Is referral to the Magistrate for mediation or other ADR mechanism appropriate?

The parties participated in mediation before Judge Vincent J. Poppiti in connection with the pending bankruptcy appeal, Civil Action No. 03-610.  That mediation was unsuccessful.

12.     Such other matters as counsel considers conducive to the just, speedy and inexpensive determination of this action.

Plaintiffs:[2]  (a) Defendant has been, and pending determination of this action will be, paid fair market value for the use and occupancy of the nine sites, and accordingly has been and will be fairly compensated and can make no claim of irreparable harm. The fair market rent of these properties, based on the third-party payor reimbursement rates for the patients at the facilities, is, on an annualized basis, $4.76 million, or, for the last 30 months [including this coming March], $11.9 million. If one throws in the real estate taxes defendant has demanded that plaintiffs pay (in addition to those already paid), the liability would be for another $1.8 million, or a total of $13.7 million for the past thirty months. Plaintiffs had already paid $700M a month for twenty-one months, or $14.7 million, before ceasing further payments to landlord. This cessation was necessitated not only as a matter of equity, but because there was a limit as to how far plaintiffs could stretch out other creditors. Other creditors have now been substantially brought current, and plaintiffs are now prepared, come April, to resume payments at the fair market value of $4.76 million annually, until this lawsuit is resolved. Any greater payments would again mean that other creditors could not be paid. There just is not enough money being generated by these facilities to pay the exorbitant and far-above-market rate defendant demands.

(b) As far as defendant's request for equitable relief to compel payment of rent is concerned, defendant's wrongful conduct leaves it with unclean hands, precluding equitable relief even if otherwise justified (which plaintiffs deny). At a time when plaintiffs were still paying the exorbitant rents defendant was demanding, defendant, without notice to plaintiffs, formed operating companies to replace the plaintiff tenants, falsely informed State authorities that they would be taking over the respective premises, and sought to divert payments away from the plaintiff tenants to its new entities. It was only when plaintiffs discovered the plot, and threatened defendant with suit for wrongful interference with plaintiffs' contracts, that defendant ceased such activity.

---

[2] All numbers in this paragraph are approximate.

Furthermore, again beginning at a time when plaintiffs were still paying the exorbitant rents, defendants have refused to supply plaintiffs with documentation allowing plaintiffs to collect $500M from the State of Michigan. This has necessitated an otherwise entirely unnecessary separate lawsuit.

**THCI:** As noted, THCI seeks expedited resolution of the Nine Subsidiaries' continued occupancy of the Facilities without paying rent and without providing any of the required financial or operational information regarding the Facilities.

13. The parties have conferred by telephone and by e-mail regarding this Joint Status Report. Amos Alter participated on behalf of Plaintiffs, and C.J. Seitz and David S. Sager participated on behalf of THCI.

Dated: February 22, 2006

**DUANE MORRIS LLP**

Michael Lastowski (No. 3892)
Christopher M. Winter (No. 4163)
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801-1246
Tel.: (302) 657-4900
Fax: (302) 657-4901

-and-

**TROUTMAN SANDERS LLP**
Amos Alter
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 704-6000
Fax: (212) 704-6288

Attorneys for Plaintiffs

**CONNOLLY BOVE LODGE & HUTZ LLP**

/s/ CJ Seitz (CMW by perm.)
Collins J. Seitz, Jr. (No. 2237)
1007 North Orange Street
Wilmington, DE 19801
Tel: (302) 658-9141
Fax: (302) 658-5614

-and-

**PITNEY HARDIN LLP**
David S. Sager
Paul R. Marino
P.O. Box 1945
Morristown, NJ 07962
Tel: (973) 966-6300
Fax: (973) 966-1015

Attorneys for THCI Company LLC

- 10 -