## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., SPRING CREEK OF IHS, INC. FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC. | ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 04-910

Plaintiffs,

v.

THCI COMPANY, LLC,

Defendant,

v.

ABE BRIARWOOD CORPORATION and
JOHN DOES 1-10,

Additional Counterclaim
Defendants,

## NOTICE OF MOTION

TO:    ALL PARTIES ON THE ATTACHED SERVICE LIST

Uri Kaufman ("Deponent"), by his undersigned counsel, has filed this **Motion to Quash Subpoena or in the Alternative Motion for Protective Order, Pursuant to Fed. R. Civ. P. 45(c)(2)(B) and Fed R. Civ. P. 26.** on March 13, 2006.

Responses, if any, to the Motion must be filed with the United States District Court for the District of Delaware, pursuant to the terms of the Stipulation and Order Granting Leave to File Amended Counterclaim and Third-Party Complaint [Docket No. 120].

A HEARING ON THIS MATTER WILL BE HELD **AT A TIME AND DATE TO BE DETERMINED** BEFORE THE HONORABLE GREGORY M. SLEET, UNITED STATES DISTRICT COURT JUDGE.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

**MONZACK AND MONACO, P.A.**

Rachel B. Mersky, Esquire (#2049)
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8162

Dated:  March 13, 2006

2

**Service List**
**Civil Action No. 04-910 (GMS)**

**All Parties will be served via First Class Mail unless specifically stated.**

Richard W. Riley, Esquire
Michael R. Lastowski
Duane Morris LLP
Suite 1200
Wilmington, DE 19801
*Counsel for Plaintiff and*
*Counterclaim Defendant Abe Briarwood*
*Corp.*
**VIA HAND DELIVERY**

Collins J. Seitz, Jr., Esquire
Kevin F. Brady, Esquire
Connolly Bove Lodge & Hutz
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
*Counsel for THCI Company, LLC*
**VIA HAND DELIVERY**

Amos Alter, Esquire
Troutman, Sanders, LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 19174
*Counsel for Plaintiff and*
*Counterclaim Defendant Abe Briarwood*
*Corp.*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., SPRING CREEK OF IHS, INC. FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC. | ) ) ) ) ) ) ) ) ) ) | Civil Action No. 04-910 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| THCI COMPANY, LLC, | ) ) ) | |
| Defendant, | ) ) ) | |
| v. | ) ) | |
| ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, | ) ) ) ) | |
| Additional Counterclaim Defendants, | ) ) ) ) | |

## MOTION OF URI KAUFMAN PURSUANT TO FED. R. CIV. P. 45(c)(2)(B) AND FED. R. CIV. P. 26 TO QUASH SUBPOENA OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER FROM SUBPOENA OF THCI COMPANY, LLC

Uri Kaufman ("Deponent"), by his undersigned counsel, hereby files this Motion to Quash Subpoena or in the Alternative Motion for Protective Order, pursuant to Fed. R. Civ. P. 45(c)(2)(B) and Fed R. Civ. P. 26. In support of his Motion, Deponent states as follows:

## PROCEDURAL BACKGROUND AND RELATED FACTS

1.      This case arises as a result of an action filed in the Western District of Missouri that was removed on or about July 28, 2004 to this Court. Integrated Health Services of Cliff Manor, Inc., et. al. commenced this litigation against THCI Company, LLC. The claims between the parties involve allegations concerning obligations arising if an alleged Master Lease is found to exist and whether there is a guarantee of the alleged Master Lease.

2.      Defendant's THCI, LLC filed a Third Amended Counterclaim naming Abe Briarwood Corporation as an additional counterclaim Defendant.

3.      Prior to April 2005 the proposed Deponent, Uri Kaufman, was the sole shareholder of Briarwood, who in turn was the sole shareholder of IHS Long Term Care. However, Mr. Kaufman sold all of his shares in Briarwood to an unrelated third party entity. Mr. Kaufman does not have, nor has he ever had, any direct or indirect interest in the entity that purchased Briarwood in April 2005 and, consequently, Mr. Kaufman is a nonparty with no interest or involvement in this litigation.

4.      THCI Company, LLC moved for the issuance of a subpoena through the Southern District of New York on December 14, 2005. Upon information and belief the subpoena was knowingly served on Mr. Kaufman at his home during the observance of the Jewish Sabbath, in violation of New York law (see the Affidavit of Uri Kaufman attached hereto as Exhibit "A" and incorporated herein by reference.)   The subpoena, contains a detailed, extensive list of 65 classifications of items to be produced and numerous, vague definitions identifying the scope of the 65 items requested. In addition the subpoena schedules the oral deposition of Mr. Kaufman. (A copy of the subpoena is attached as Exhibit "A" to Mr. Kaufman's Affidavit and is incorporated herein by reference)

#53053

5.    On or about January 31, 2006 a Stipulation and Order Granting Leave to File Amended Counterclaim and Third Party Complaint was entered in this action. (Docket Entry #120). Pursuant to Paragraph 4 of that Stipulation the time for non-party witnesses to move to quash or limit any subpoena was extended and is now due.

6.    None of the myriad of documents requested from Mr. Kaufman in the subpoena relates to documents owned by Uri Kaufman. As stated earlier and affirmed in the Affidavit, Uri Kaufman's status as the former sole shareholder of Briarwood ceased in April 2005 when he sold all of his shares in Briarwood to a third party entity in which he does not have, nor has he ever had any direct, or indirect, interest. Mr. Kaufman is not the owner of the documents requested and his deposition is not relevant or likely to lead to the discovery of admissible evidence.

## THE DEPONENTS OBJECTIONS

8.    The subpoena issued to Uri Kaufman by THCI imposes a very substantial burden on a non party. Federal Rule of Civil Procedure 45(c)(2)(B) authorizes the quashing of a subpoena. It tracks the provisions of rule 26(c), which empowers the issuance of a protective order, and similarly protects a non-party from undue burden.

9.    A non-party moving to quash a subpoena is treated the same as a party moving for protective order and the Court is required to apply a balancing standard of, "relevance, need, confidentiality and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Mannington Mills, Inc., v. Armstrong World Industries, Inc., 206 F.R.D. 525, 529 (D. Del. 2002) citing Micromotion Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1323 (Fed. Cir. 1990). Furthermore, "in this undue burden inquiry, the Court also is mindful of the apparent necessity of the information and the

3

#53053

absence of alternative sources." Cash Today of Texas, Inc. v. Greenberg, 2002 WL 31414138

(D. Del.)  In the present case, THCI can obtain the requested information, if otherwise

discoverable, from parties to the litigation and need not inconvenience Mr. Kaufman.

     10.    In addition, much, if not all, of the information sought far exceeds the scope of

discovery and under any circumstances the detailed listing of 67 categories of documents as

further enumerated in the definitions in the subpoena is unduly burdensome. "Even if the

information sought is relevant, discovery is not allowed when no need is shown, or when

compliance is unduly burdensome, or when the potential harm caused by production outweighs

the benefit. Mannington Mills , 206 F.R.D. at 529. In the undue burden analysis the Court

provides special protection to a nonparty. Cash Today of Texas, Inc., 2002 WL 31414138 at 4.

     11.    Finally, the underlying claim for which THCI is seeking judgment relates to rent

payments allegedly due after June 2005, when Mr. Kaufman had no interest, control or

knowledge, whatsoever of decisions related to Briarwood. (See attached Affidavit)

     **WHEREFORE,** Uri Kaufman moves this Honorable Court to Grant his Motion

To Quash Subpoena and for such other and further relief as is just and equitable.

               **MONZACK AND MONACO, P.A.**

               Rachel B. Mersky, Esquire (#2049)
               1201 N. Orange Street
               Suite 400
               Wilmington, DE 19801
               (302) 656-8162

Dated: March 13, 2006

4

# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 04-910 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| THCI COMPANY LLC, | ) ) | |
| Defendant, | ) ) ) | |
| v. | ) ) ) | |
| ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, | ) ) ) | |
| Additional Counterclaim Defendants, | ) ) ) ) | |

## AFFIDAVIT OF URI KAUFMAN IN SUPPORT OF MOTION TO QUASH SUBPOENA ADDRESSED TO HIM

STATE OF NEW YORK   :
COUNTY OF                    :

URI KAUFMAN, being duly affirmed, states:

1.     I am a non-party in the captioned action.  I make this Affidavit in support

of my motion to quash the subpoena addressed to me by defendant, THCI Company LLC

("THCI"). A copy of the subpoena, as obtained from the Court's files, is annexed hereto as Exhibit "A".

2. Preliminarily, I would note, and object to, the impropriety of serving me on a Friday evening, after the advent of the Sabbath (Aff. of Service, obtained from the Court's file, Exh. "B"). THCI well knows that I am a Sabbath Observer, as its principal himself is one. In New York, where I was served, I am advised that malicious service of process on the Sabbath of the person served is a misdemeanor,[1] and process served on the Sabbath knowing the person is a Sabbath Observer is void,[2] with the knowledge of the principal being attributed to the process server.[3]

3. The subpoena should be quashed in any event. This action arises from a controversy between plaintiff Integrated Health Services Long Term Care, Inc. ("LTC"), and defendant THCI Company LLC ("THCI"). LTC is (or at least when I knew anything about it, was) the sole shareholder of the other nine plaintiffs, which operate health care facilities, through an unrelated party, in nine sites located in six States. The sites are (or were) owned by THCI. As I understand it, there are two basic controversies between the two sides, namely (i) whether there is a Master Lease in effect between the nine operating plaintiffs, as tenants, and THCI, as landlord; and (ii) if so, whether LTC is the guarantor of the tenants' obligations under the supposed Master Lease. The first issue is the subject of an appeal now pending before this Court, from an Order of the Bankruptcy Court. The second issue is framed by the complaint in this action, which asks for a declaratory judgment that, assuming there is a Master

---

[1] New York General Business Law § 13.

[2] Martin v. Goldstein, 20 App. Div. 203, 205, 46 N.Y.S. 961 (4th Dept. 1897); Matter of Kushner, 200 A.D.2d 1, 2, 613 N.Y.S.2d 363 (1st Dept. 1994).

[3] Hirsch v. Ben Zvi, 184 Misc. 946 (Civil Ct. Kings Co. 2000).

Lease, there is no guaranty by LTC. I understand that, since service upon me of the subpoena, THCI has served, first one amended pleading and then another. The latest of these, besides seeking a declaratory judgment the other way, also asserts various fraudulent transfer and veil-piercing counterclaims against the nine operating plaintiffs, against LTC, and against additional counterclaim defendant Abe Briarwood Corp. ("Briarwood").

       4.    The only basis for my involvement in this is that I was, at one time, the sole shareholder of Briarwood. Briarwood was the sole shareholder of LTC, from the time Briarwood purchased LTC's shares, in or about August 2003, from the Bankruptcy Estate of Integrated Health Services, Inc. ("IHS"), until at least April 2005. In April 2005, I sold all the shares of Briarwood to a third-party entity in which I do not have, and never did have, any direct or indirect interest. I have had no connection whatsoever after that sale, with Briarwood, or with LTC, or with the nine operating plaintiffs, or with the defendant, THCI . I have no personal knowledge of any events or transactions concerning those entities after that date.

       5.    The principal reason this subpoena should be quashed is that there is no reason to involve me. The premise of this case, that there is a Master Lease in effect, has not yet been finally determined, and will not even be determined in this case. Even assuming that there is such a Master Lease, whether there is a guaranty by LTC has also not been determined, and I have no relevant knowledge. To the extent that such question may be fact-dependent, the facts would have arisen either before or during the bankruptcy proceedings of IHS, in transactions between IHS (pre- and post-petition) and THCI (or its predecessors). I, however, had no involvement with, or any advance or contemporaneous knowledge of, any of those transactions. I understand THCI contends that, at the time of the purchase by Briarwood of the LTC shares, there already was a guaranty in place. However, I had had no interaction

3

whatsoever with THCI at all as of that time. The THCI leases represented a very small part of the total IHS lease package, and I simply never was personally involved with that aspect.

6.    That leaves only THCI's counterclaims for veil-piercing or fraudulent transfer. These claims are viable, if at all, only if and when the two key questions in the case, whether there is a Master Lease and whether there is a guaranty, are both determined in THCI's favor. Discovery regarding such matters is more properly sought in an enforcement-of-judgment proceeding, on a judgment which THCI is several steps away from obtaining, and may well never obtain. It is, to say the least, premature for THCI to burden nonparties on these issues at this time.

7.    Furthermore, the judgment THCI is seeking to recover is based on the plaintiff "tenants" "failing" to pay rent, a condition which I am advised arose beginning with the June 2005 rent. That, however, was <u>after</u> I no longer had anything to do, directly or indirectly, with any of the parties in question. Specifically, I had nothing whatsoever to do with, and had no prior or contemporaneous knowledge of, any decision not to pay rent, which non-payment, as noted, postdates any involvement by me.

8.    The sixty-seven item Document Request of the subpoena seeks, and no doubt the oral examination  will also seek, information as to <u>all</u> my business affairs, having no connection whatsoever with the entities and transactions which remotely are relevant to this action. For instance, Item 46 seeks "All documents identifying any entity in which Uri Kaufman serves or served as an Officer, director or was/is an Affiliate thereof." The time period of the request, says Instruction 1, is January 1, 2003 to the present. Even without considering the concept of "Affiliate" (whose definition [Definition 1] is incomprehensible in

any event),[4] the Request is grossly improper. Similarly, Item 40 improperly seeks all documents concerning any transaction by and among me and fifteen other entities (counting the nine "LTC Subsidiaries" as one), "and their related persons and/or Affiliates." There is no attempt to limit this to transactions having anything to do with the subject matter of the action, even if that subject matter is construed to include the premature fraudulent transfer claims.

        9.      There has been no final determination that there is a Master Lease. Even if there had been, there has been no determination that there is a guaranty of the obligations of the Master Lease by counterclaim defendant TLC. Even if there were such a determination, there has been no determination, or even a showing, that there were transfers from TLC without consideration, nor that TLC was at any time insolvent. In the absence of such determinations and prima facie showings, there is no reason to inquire into my business affairs at all. The subpoena should be quashed as premature. If and when inquiry of me becomes relevant, a proper subpoena may issue, and I should be properly served.

                                       Uri Kaufman

Affirmed to before me this
10th day of March, 2006.

                                       Hebel P Morales     3/10/06

HEBEL P. MORALES
Notary Public, St. of N.Y.
No. 01-MO6022618
Qualified in Nassau Cty.
Comm. Exp. April 5, _____

---

[4] "'Affiliate' means a person, entity, member, partner and the like, holding directly or indirectly five percent (5%) or more of shares of stock of any class, partnership, or membership interest and the like in another entity, or an entity in which another person entity, member or, partner and the like holds directly or indirectly five percent (5%) of more of shares of stock of any class, or partnership, or membership interest and the like. The term 'Affiliates' also includes entities persons, officers, directors, members, partners and the like under common control."

# EXHIBIT "A"

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

**Issued by the**
# UNITED STATES DISTRICT COURT

|  SOUTHERN DISTRICT | DISTRICT OF | NEW YORK |
|---|---|---|

INTEGRATED HEALTH SERVICES OF
CLIFF MANOR, INC., et al.,
                                    Plaintiffs.
                          **V.**

THCI COMPANY LLC,
                                    Defendant.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]   C. A. No. 04-910 (D. Del.)

TO:   Uri Kaufman
      135 Fulton Street
      Lawrence, NY 11559-1426

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| ARENT FOX PLLC<br>1675 Broadway, 34th Floor, New York, NY 10019 | 1/20/06; 10:00am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit A.

| PLACE | DATE AND TIME |
|---|---|
| ARENT FOX PLLC<br>1675 Broadway, 34th Floor, New York, NY 10019 | 1/20/06; 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorneys for Defendant-Counterclaim Plaintiff<br>THCI Company, LLC THCI Company, LLC | 12/14/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Grossman, Esq., Michael S. Cryan, Esq.
1675 Broadway, New York, NY 10019, Tel: (212) 484-3900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
         DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)    (A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)    (A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT A**

**RIDER TO SUBPOENA**

You are directed to produce all of the following documents in accordance with the Federal Rules of Civil Procedure, including but not limited to Rule 45, and pursuant to the Definitions and Instructions provided herein:

1.   All organizational charts or their equivalents for Briarwood and all of its Affiliates.

2.   All documents identifying all shareholders, officers and directors of Briarwood and its Affiliates.

3.   All documents concerning any transfer of shares of stock of Briarwood and its Affiliates.

4.   All documents concerning real property owned, leased or operated by Briarwood or its Affiliates.

5.   All documents concerning health care facilities owned, controlled or operated by Briarwood or its Affiliates, including all documents concerning any transaction relating to such health care facilities, including name, address, Books and Records, operating agreements, and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of Briarwood, and including all documents and correspondence with state and federal agencies regulating health care facilities concerning the health care facilities owned, controlled or operated by Briarwood or its Affiliates.

6.   All Books and Records of Briarwood.

7.   All organizational charts or their equivalents for LTC and LTC Subsidiaries.

8.   All documents identifying all shareholders, officers and directors of LTC and LTC Subsidiaries.

9.    All documents concerning any transfer of shares of stock of LTC and/or any of LTC Subsidiaries.

10.    All documents concerning real property owned or leased by LTC and/or LTC Subsidiaries.

11.    All documents concerning health care facilities owned, controlled or operated by LTC and/or LTC Subsidiaries, including all documents concerning any transaction relating to such health care facilities, including name, address, Books and Records, operating agreements, and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of LTC, and including all documents and correspondence with state and federal agencies regulating health care facilities concerning the health care facilities owned, controlled or operated by LTC and/or LTC Subsidiaries.

12.    All Books and Records of LTC and LTC Subsidiaries.

13.    All documents related to any transaction between Briarwood, its Affiliates and LTC and/or LTC Subsidiaries.

14.    All organizational charts or their equivalents for National and its Affiliates.

15.    All documents identifying all shareholders, officers and directors of National and its Affiliates.

16.    All documents concerning any transfer of shares of stock of National and its Affiliates.

17.    All documents concerning real property owned, leased or operated by National or its Affiliates.

18.    All documents concerning health care facilities owned, controlled or operated by National or its Affiliates, including name, address, Books and Records, operating agreements,

2

and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of National.

19.    All organizational charts or their equivalents for Mariner and all of its Affiliates.

20.    All documents identifying all shareholders, officers and directors of Mariner and its Affiliates.

21.    All documents concerning any transfer of shares of stock of Mariner and any of its Affiliates.

22.    All documents concerning any real property owned, leased or operated by Mariner or its Affiliates.

23.    All documents concerning health care facilities owned, controlled or operated by Mariner or its Affiliates, including name, address, Books and Records, operating agreements, and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of National.

24.    All organizational charts or their equivalents for MetCap and all of its Affiliates.

25.    All documents identifying all shareholders, officers and directors of MetCap and its Affiliates.

26.    All documents concerning any transfer of shares of stock of MetCap and its Affiliates.

27.    All documents concerning any real property owned, leased or operated by MetCap or its Affiliates.

28.    All documents concerning health care facilities owned, controlled or operated by MetCap or its Affiliates, including name, address, Books and Records, operating agreements, and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of MetCap.

3

29.    All organizational charts or their equivalents for SMV and its Affiliates.

30.    All documents identifying all shareholders, officers and directors of SMV and its Affiliates.

31.    All documents concerning any transfer of shares of stock of SMV and its Affiliates.

32.    All documents concerning real property owned, leased or operated by SMV or its Affiliates.

33.    All documents concerning health care facilities owned, controlled or operated by SMV or its Affiliates, including name, address, Books and Records, operating agreements, and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of SMV.

34.    All documents concerning SMV's and/or its Affiliates' application for a portion of the financing required in connection with the merger between National and Mariner.

35.    All organizational charts or their equivalents for Tri-State and its Affiliates.

36.    All documents identifying all shareholders, officers and directors of Tri-State and its Affiliates.

37.    All documents concerning any transfer of shares of stock of Tri-State and any of its Affiliates.

38.    All documents concerning real property owned, leased or operated by Tri-State or its Affiliates.

39.    All documents concerning health care facilities owned, controlled or operated by Tri-State or its Affiliates, including name, address, Books and Records, operating agreements, and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of Tri-State.

4

40.     All documents concerning any transaction by and among Briarwood, National, Mariner, SMV, LTC, Tri-State, LTC, LTC Subsidiaries, Harry Grunstein, Leonard Grunstein, Rubin Schron, Murray Forman, Avi Klein, Uri Kaufman, Tony Gilburt, Arthur Cohen and their related persons and/or Affiliates.

41.     All documents identifying any entity in which Harry Grunstein serves or served as an officer, director or was/is an Affiliate thereof.

42.     All documents identifying any entity in which Rubin Schron serves or served as an officer, director or was/is an Affiliate thereof.

43.     All documents identifying any entity in which Murray Forman serves or served as an officer, director or was/is an Affiliate thereof.

44.     All documents identifying any entity in which Leonard Grunstein serves or served as an officer, director or was/is an Affiliate thereof.

45.     All documents identifying any entity in which Avi Klein serves or served as an officer, director or was/is an Affiliate thereof.

46.     All documents identifying any entity in which Uri Kaufman serves or served as an officer, director or was/is an Affiliate thereof.

47.     All documents identifying any entity in which Tony Gilburt serves or served as an officer, director or was/is an Affiliate thereof.

48.     All documents identifying any entity in which Arthur Cohen serves or served as an officer, director or was/is an Affiliate thereof.

49.     All documents identifying any entity, which utilizes or utilized in the past the following address: The Highlands, 920 Ridgebrook Road, Sparks, MD 21152 or similar address as its principal office or mailing address.

50.     All documents submitted or prepared for submission to any state or federal agency in connection with the healthcare services provided by Briarwood and its Affiliates, including LTC and LTC Subsidiaries, and/or Tri-State, including all such documents submitted or prepared for submission and identifying common ownership structure and relations between Briarwood and its Affiliates.

51.     All documents submitted or prepared for submission to any lender, syndicate of lenders, or any insurer or syndicate of insurers in connection with any merger, acquisition, credit facility, financing, refinancing, insuring or reinsuring for the benefit of Briarwood and/or its Affiliates, including LTC and LTC Subsidiaries, including all such documents submitted or prepared for submission and identifying common ownership structure and relations between Briarwood and its Affiliates.

53.     All documents concerning the SPA, including all communications relating to the SPA by and among Briarwood, National, Mariner, SMV, LTC, Tri-State, LTC, LTC Subsidiaries, Harry Grunstein, Leonard Grunstein, Rubin Schron, Murray Forman, Avi Klein, Uri Kaufman, Tony Gilburt, Arthur Cohen and their related persons and/or Affiliates.

59.     All documents relating to section 5.9(b) of the SPA, including all documents concerning the assets and liabilities assumed by LTC, and identifying such assets and liabilities.

62.     All documents relating to Briarwood's purchase of the shares of stock of LTC on or about August 29, 2003.

63.     All documents relating to the LTC Subsidiaries' performance under the Nine Leases, including any communications by and among the IHS Plaintiffs, Briarwood, Tri-State and any other person and/or Affiliate of the IHS Plaintiffs, Briarwood and/or Tri-State concerning the Nine Leases, and all documents concerning any transaction related to the Nine Leases, including name, address, Books and Records, operating agreements, and all documents

6

identifying all parties in interest to such transactions, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of Briarwood, National, Mariner, SMV, LTC, Tri-State, LTC, LTC Subsidiaries, Harry Grunstein, Leonard Grunstein, Rubin Schron, Murray Forman, Avi Klein, Uri Kaufman, Tony Gilburt, Arthur Cohen and their related persons and/or Affiliates, and including all documents and correspondence with state and federal agencies regulating health care facilities concerning the Nine Leases.

64.    All documents relating to any agreement concerning any assets owned, controlled or operated by LTC and/or LTC Subsidiaries, including any communications by and among the IHS Plaintiffs, Briarwood, Tri-State and any other person concerning such agreements, and all documents concerning any transaction relating to such health care facilities, including name, address, Books and Records, operating agreements, and all documents identifying all parties in interest, including landlords, tenants, managers, lenders, vendors and identifying which party is an Affiliate of LTC, and including all documents and correspondence with state and federal agencies regulating health care facilities concerning the health care facilities owned, controlled, leased or operated by LTC and/or LTC Subsidiaries.

65.    All documents relating to the LTC Subsidiaries' failure to pay the rent for the Facilities to THCI since June 2005, including all correspondence concerning the decision to cease paying the rent by and among the Briarwood, National, Mariner, SMV, LTC, Tri-State, LTC, LTC Subsidiaries, Harry Grunstein, Leonard Grunstein, Rubin Schron, Murray Forman, Avi Klein, Uri Kaufman, Tony Gilburt, Arthur Cohen and their related persons and/or Affiliates, and any other person.

66.    All documents relating to the LTC Subsidiaries' failure to pay real estate taxes in connection with the rent of the Facilities, including all correspondence concerning the decision to cease paying the taxes by and among Briarwood, National, Mariner, SMV, LTC, Tri-State, LTC,

7

LTC Subsidiaries, Harry Grunstein, Leonard Grunstein, Rubin Schron, Murray Forman, Avi

Klein, Uri Kaufman, Tony Gilburt, Arthur Cohen, their related persons and/or Affiliates and any

other person, and all documents identifying all parties in interest, and including all documents

and correspondence with state and federal agencies regulating health care facilities concerning

the real estate taxes.

     67.    All documents relating to the IHS Plaintiffs' failure to vacate the Facilities to

THCI, including all correspondence concerning the decision not to vacate the Facilities by and

among Briarwood, National, Mariner, SMV, LTC, Tri-State, LTC, LTC Subsidiaries, Harry

Grunstein, Leonard Grunstein, Rubin Schron, Murray Forman, Avi Klein, Uri Kaufman, Tony

Gilburt, Arthur Cohen, their related persons and/or Affiliates and any other person.

## DEFINITIONS

    1.    "Affiliate" means a person, entity, member, partner and the like, holding directly

or indirectly five percent (5%) or more of shares of stock of any class, partnership, or

membership interest and the like in another entity, or an entity in which another person entity,

member, partner and the like holds directly or indirectly five percent (5%) of more of shares of

stock of any class, or partnership, or membership interest and the like. The term "Affiliates" also

includes entities, persons, officers, directors, members, partners and the like under common

control.

    2.    "Alpine Manor" means Alpine Manor, Inc., and each of its officers, directors,

partners, managing agents, employees, accountants, and attorneys, and all other persons under

their control in possession of the documents called for herein.

    3.    "April 2003 Order" means the order of the Bankruptcy Court dated April 22, 2003

granting THCI's Motion to Compel.

8

4.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

5.      "Books and Records" includes articles of incorporation, by-laws, minutes of board meetings, documentation of registration and good standing, general ledgers and financial statements (including but not limited to supporting journal entries, books of account, balance sheets, income statements, cash receipts records, cash disbursements records, invoices, cancelled checks, account statements, schedules, spreadsheets, profit and loss statements, federal or state tax returns, or any other document confirming gross and net profits), business cards, time-tracking documents, schedules, appointment books, journals, diaries, and calendars, whether electronic or in hard-copy.

6.      "Briarcliff Nursing" means Briarcliff Nursing Home, Inc., and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

7.      "Briarwood" means Abe Briarwood Corporation and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

8.      "Cliff Manor" means Integrated Health Services of Cliff Manor, Inc., and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

9.      "Complaint" means the Complaint filed by the IHS Plaintiffs in the Circuit Court for Platte County, Missouri on April 5, 2004.

10.     "Communication" means the transmittal of information of any kind, in any form and by any means.

9

11.     "Concerning," "indicating," "relating," "related," or "which relates" means comprising, concerning, consisting of, evidencing, referring to, reflecting, regarding, supporting, relating to, prepared in connection with, used in preparation for, or being in any way legally, factually or logically related to the matter or document described, referred to, or discussed. A communication, document, writing, or knowledge of any given subject which "concerns," "relates," is "related to" or "which indicates" or "relates," means any document that constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

12.     "Confirmation Date" means May 12, 2003, when the Bankruptcy Court confirmed the Reorganization Plan.

13.     "Confirmation Order" means the order of the Bankruptcy Court dated May 12, 2003 confirming the Reorganization Plan.

14.     "Counterclaimant" or "THCI" means THCI and each of their officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

15.     "Counterclaim-Defendants" means Briarwood, LTC, the LTC Subsidiaries and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys.

16.     "Document" is used in its broadest sense and means any written, typed, printed, electronic, recorded or graphic matter of any kind, however produced or reproduced, and all non-identical copies thereof, whether different because of notes made thereon or otherwise, including but not limited to, and by way of example only: letters or other correspondence, messages, telegrams, telexes, electronic mail and attachments thereto, memoranda, notations, reports, analyses, summaries, charts, graphs, studies, tabulations, statements, notes, notebooks, work papers, telephone toll records, invoices, books, pamphlets, brochures, press releases, diaries,

minutes of meetings or conferences, transcripts of telephone conversations, transcripts of

testimony, cost sheets, financial reports, accountants' work papers, opinions or reports of

consultants, checks (front and back), check stubs, receipts, ledgers, purchase orders, pictures,

photographs, contracts, agreements, advertisements, motion picture films, tapes, tape recordings,

videotapes, indices, microfilm, other data compilations, including computer data, computer

diskettes or memory units containing such data from which information can be obtained or

translated into usable form, drafts of any of the foregoing, English translations or summaries of

foreign language documents and all similar documents as permissible under the Federal Rules of

Civil Procedure.

17.     "Elm Creek" means Elm Creek of IHS, Inc., and each of its officers, directors,

partners, managing agents, employees, accountants, and attorneys, and all other persons under

their control in possession of the documents called for herein.

18.     "Facilities" means the nursing homes owned by THCI and leased and/or occupied

by the LTC Subsidiaries.

19.     "Firelands" means Firelands of IHS, Inc., and each of its officers, directors,

partners, managing agents, employees, accountants, and attorneys, and all other persons under

their control in possession of the documents called for herein.

20.     "Guaranties" means the guaranties issued by IHS and referred to in Paragraph 19.

21.     "IHG" means Integrated Health Group, Inc., and each of its officers, directors,

partners, managing agents, employees, accountants, and attorneys, and all other persons under

their control in possession of the documents called for herein.

22.     "Including" and "including" means including, but not limited to, the referenced

subject.

11

23.    "Lease Modification Agreement" means the agreement dated April 30, 1993 and referred to in Paragraph 20.

24.    "LTC" means IHS Long Term Care, Inc. and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

25.    "LTC Subsidiaries" means Alpine Manor, Briarcliff Nursing, Cliff Manor, Riverbend, Somerset Valley, Spring Creek, Firelands, Elm Creek and IHG.

26.    "Mariner" means Mariner Health Care, Inc., and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

27.    "MetCap" means MetCap Securities, LLC, and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

28.    "Motion to Compel" means THCI's Motion to Compel the LTC Subsidiaries to Enter Into a Master Lease.

29.    "National" means National Senior Care, Inc. and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

30.    "Nine Leases" means the leases for the Facilities referred to in Paragraph 17.

31.    "Paragraph" means a paragraph of the Complaint.

32.    "Persons" means all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

33.    "Press Release" means Mariner's press release dated June 29, 2004, announcing that Mariner entered into a merger agreement with National.

12

34.     "Reorganization Plan" means the Amended Joint Plain of Reorganization of Integrated Health Services and its Subsidiaries under Chapter 11 of the Bankruptcy Code, confirmed by the Bankruptcy Court on or about May 12, 2003.

35.     "Riverbend" means Integrated Health Services at Riverbend, Inc., and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

36.     "Somerset Valley" means Integrated Health Services at Somerset Valley, Inc, and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

37.     "SMV" means SMV Property Holdings, LLC and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

38.     "SPA" means the stock purchase agreement referred to in Paragraph 36.

39.     "Spring Creek" means Spring Creek of IHS, Inc., and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

40.     "Tri-State" means Tri-State Health Investors, LLC, and each of its officers, directors, partners, managing agents, employees, accountants, and attorneys, and all other persons under their control in possession of the documents called for herein.

41.     "You" and "your" means the witness named in the attached Subpoena.

## INSTRUCTIONS

1.     Unless otherwise specifically indicated, the time period encompassed by these requests for production of documents (the "Requests") is from January 1, 2003 to the present.

13

2.     Each reference to a corporation, partnership, limited liability company, joint venture, unincorporated association, government agency or fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, managing members, limited members, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

3.     Each reference to a natural person shall be deemed to include that person's agents, attorneys and any other person who acted or purported to act on that person's behalf.

4.     These Requests are continuing. If, after producing the requested documents you obtain or become aware of any further documents or information responsive to these Requests up to and including the conclusion of this action, you are required to promptly produce such additional documents, or supplement your responses to the Requests. Amended answers should set forth fully such different facts, assumptions, conclusions, opinions, and/or contentions.

5.     If any Request seeks production or identification of any document or thing that is withheld or not produced on the basis of any legal objection or privilege, you shall furnish a list containing the following information for each such document or thing:

> (i)     the reason for, and the facts supporting, the withholding;
>
> (ii)    the date said document or thing was prepared;
>
> (iii)   the names, employment positions and addresses of the authors and/or preparers of said document or thing;
>
> (iv)    the names, employment positions and addresses of all addressees, including all persons who received or were shown as having received, said document or thing;
>
> (v)     a brief description of said document or thing; and
>
> (vi)    the number of the request under which said document or thing would otherwise be produced.

14

6.    If any Request requires production or identification of a document that has been destroyed or discarded, or is no longer in existence, you shall furnish a list containing the following information for each of such documents or things:

      (i)     the information called for in Instruction 5, above;

      (ii)    the date of its destruction or discard;

      (iii)   the manner and reason for its destruction or discard; and

      (iv)   the identity of the item's last custodian and of each person responsible for the item's destruction or unavailability.

7.    Where anything has been redacted or deleted from a document or thing produced in response to these Requests,

      (i)     specify the nature of the material redacted or redacted;

      (ii)    specify the reason for the redaction or deletion; and

      (iii)   identify the person responsible for the redaction or deletion.

If a document has been redacted on the basis of any legal objection or privilege, you shall also furnish a list containing information called for in Instruction No. 5 for each such document.

8.    Each paragraph and subparagraph of these Requests should be construed independently, and no other paragraph or subparagraph shall be referred to or relied on for the purpose of limiting its scope.

9.    In responding to these Requests, you must furnish all documents and information that is known to you, and to your agents, employees, and attorneys. If any of the Requests cannot be responded to in full, or if you object to some part of any Request, you must answer it to the fullest extent possible, specifying the reasons for your inability or refusal to answer the remainder, and stating whatever information, knowledge, or belief you now have concerning the unanswered portions.

15

10.     If responses to any Request are supplied upon information and belief, so state, and specifically identify and describe all sources of such information and belief. If you are unable to respond to a Request or portion thereof either by actual knowledge or upon information and belief, so state, and describe in detail the efforts made to obtain such knowledge or information.

11.     If, in responding to these Requests, you claim any ambiguity in interpreting either the Requests, or definitions or instruction applicable thereto, such claims shall not be utilized as a basis for refusing to respond, but there shall be set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

12.     If you object to all or any part of a Request, state the grounds of the objection with sufficient specificity to permit determination of the basis for and propriety of such objection, including citations where legal authority is relied upon, and provide documents to the extent that such Request is not subject to an objection.

13.     Separate responses are required to be given for each Request. Requests should not be joined together, nor should they be joined with responses to other Requests and given a common answer.

14.     In responding to these Requests, you shall not refer to documents generally in lieu of answering; if the burden upon you of deriving an answer from documents is the same as it is upon Plaintiff, you may elect to refer to documents, which are specifically identified (e.g., by bates number) from which the response may be readily obtained. Such a response constitutes a representation under oath by you and your counsel that, after reasonable investigation, those conditions have been met.

15.     The full text of the Request (or part thereof) to which any answer is intended to respond is to be restated immediately preceding such answer.

16. Wherever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular. The masculine shall be deemed to include the feminine and the feminine shall be deemed to include the masculine. The disjunctive ("or") shall be deemed to include the conjunctive ("and") and the conjunctive ("and") shall be deemed to include the disjunctive ("or") and each of the functional words "each", "every", "any", and "all" shall be deemed to include each of the other functional words.

17. If any Request requires production of a copy of a document, such as a medical or educational record, that is not in your physical custody or possession but within its legal control, you must obtain copies of the requested documents or execute authorizations allowing Defendants to obtain and examine copies of such documents.

18. If any Request requires production of a document that is no longer in your possession, custody or control, the answer or response should state when the document was recently in your possession, custody or control and where it is now.

NYC/244088.1
12/14/05 12:12 PM

# EXHIBIT "B"

AO 88 (11/91) Subpoena in a Civil Case          **CERTIFICATION OF SERVICE**

| SERVED | DATE:<br>12/16/2005 05:00PM | PLACE:<br>135 FULTON ST. LAWRENCE NY 11559 |
|---|---|---|

| SERVED ON:   **URI KAUFMAN**<br>ACCEPTED BY:   **URI KAUFMAN** | MANNER OF SERVICE: RULE 45, FEDERAL CIVIL RULE<br>SERVING: **SUBPOENA IN A CIVIL CASE, EXHIBIT A, RIDER** |
|---|---|

| SERVED BY   **MALGORZATA SLADEK** | TITLE<br>   **PROCESS SERVER** |
|---|---|

**DECLARATION OF SERVER**

Description of Person Receiving Document(s):

SEX: M    AGE: 36-50    HEIGHT: 5'4"-5'8"    WEIGHT: 131-160 LBS.    SKIN: WHITE    HAIR: GRAY    OTHER: _____

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in
this Certification of Service is true and correct.

_(signature)_ L.S.
SIGNATURE OF MALGORZATA SLADEK
GUARANTEED SUBPOENA SERVICE, INC.
2009 MORRIS AVENUE
UNION, NJ 07083

16th December 2005
Janira Santiago Velez

EXECUTED ON: 12/16/2005 05:00PM

JANIRA SANTIAGO-VELEZ
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 24, 2007

ATTORNEY:      ROBERT E. GROSSMAN, ESQ.
PLAINTIFF:       INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., ET AL
DEFENDANT:    THCI CO. LLC.
VENUE:           DISTRICT OF NY
DOCKET:         04 CV 910 (D. DEL.)

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person,

except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**MA**