## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 04-910 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| THCI COMPANY LLC, | ) ) | |
| Defendant, | ) ) ) | |
| v. | ) ) | |
| ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, | ) ) ) ) | |
| Additional Counterclaim Defendants, | ) ) ) | |

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AND QUASH

DUANE MORRIS, LLP
Michael R. Lastowski (DE I.D. 3892)
Richard W. Riley (DE I.D. 4052)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone:  (302) 657-4900 Telephone:
Facsimile:  (302) 657-4901 Facsimile:
E-mail:        mlastowski@duanemorris.com E-mail:
                  rwriley@duanemorris.com

TROUTMAN SANDERS LLP
Amos Alter, Esquire
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 704-6000
(212) 704-6288
Amos.Alter@troutmansanders.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

BACKGROUND .................................................................................................. 1

POINT I -- THE PLEADING FAILS ADEQUATELY TO ALLEGE THAT LTC IS
LIABLE ON ANY GUARANTY ............................................................................. 3

POINT II -- THE PLEADING IMPROPERLY COMBINES SEPARATE CLAIMS ................. 7

POINT III -- THE SECOND COUNTERCLAIM IS DEFECTIVE ................................... 9

POINT IV -- THE THIRD COUNTERCLAIM IS DEFECTIVE .................................... 11

POINT V -- THE FOURTH THROUGH SEVENTH COUNTERCLAIMS ARE
DEFECTIVE ..................................................................................................... 13

POINT VI -- THE SUBPOENAE SHOULD BE QUASHED ....................................... 16

CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*BP Amoco Chemical Co. v. Sun Oil Co.*, 166 F. Supp. 2d 984 (D. Del. 2001) .................15

*Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12 (1st Cir. 1998) ...........................4

*In re Chateaugay Corp.*, 102 B.R. 335 (Bankr. S.D.N.Y. 1989)........................................6

*In Re Columbia Gas System, Inc.*, 50 F.3d 233 (3d Cir. 1995)........................................5,6

*De Leys v. Keta Gas and Oil Co.*, 18 F.R.D. 353 (W.D. Pa. 1955)....................................7

*Diebold Inc. v. Positran Manufacturing, Inc.*, 2002 U.S. Dist. LEXIS 18993 (D. Del. 2002, Sleet, D.J.)..................................................................................................15

*In re Grayson-Robinson Stores, Inc.*, 321 F.2d 500 (2d Cir. 1963)....................................6

*Guth v. Texas Co.*, 155 F.2d 563 (7th Cir. 1946)..................................................................7

*Harper v. Delaware Valley Broadcasters*, 743 F. Supp. 1076 (D. Del. 1990).................15

*Heat & Control, Inc., v. Hester Industries*, 785 F.2d 1017 (Fed. Cir. 1986)....................18

*Hopkins v. Justice of the Peace Court No. 1*, 342 A.2d 243 (Del. Super. 1975)................9

*Hudson United Bank v. Pena*, 2005 U.S. Dist. LEXIS 5198 (E.D. Pa. 2005)...................14

*In Re Leibinger-Roberts, Inc.*, 105 B.R. 208 (Bankr. E.D.N.Y. 1989)...............................6

*Liafail, Inc., v. Learning 2000, Inc.*, 2002 U.S. Dist. LEXIS 22620 (D. Del. 2002, Sleet, D.J.)...............................................................................................................14

*O'Donnell v. Elgin, Joliet & Eastern Railway*, 338 U.S. 384, 70 S. Ct. 200, 94 L. Ed. 187 (1949) ............................................................................................................7

*Sharon Steel Corpu National Fuel Gas Distribution Corp.*, 872 F.2d 36 (3d Cir. 1989) ........................................................................................................................5

*Spinner v. Fulton*, 777 F. Supp. 398 (M.D.Pa. 1991), <u>aff'd.</u>, 947 F.2d 937 (3d Cir. 1991) ......................................................................................................................11

*Stevens v. Citigroup, Inc.*, 2000 U.S. Dist. LEXIS 18201 (E.D. Pa. 2000).......................14

*In re Unishops, Inc.*, 422 F. Supp. 75 (S.D.N.Y. 1975), *aff'd,* 543 F.2d 1017 (2d Cir. 1976) ..................................................................................................8

*United States v. Pisani*, 646 F.2d 83 (3d Cir.1981) ..........................................13

*Van Dyk Research Corp. v. SCM Corp. (In re VanDyk Research Corp.)*, 13 B.R. 487 (Bankr. N.J. 1981)" (..............................................................................6

*Venture Associates v. Zenith Data Systems*, 987 F.2d 429 (7th Cir. 1993) .........................4

*Weiner v. Klais and Co.*, 108 F.3d 86 (6th Cir. 1997).........................................4

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) ................................18

*Young v. Kansas City Life Insurance Co.*, 329 Mo. 130, 43 S.W.2d 1046 (1931)............11

## STATUTES

Alabama, Ala. Code § 6-6-261 ...........................................................................10

Fed. R. Civ. P Rule 8 .......................................................................................2

Fed. R. Civ. P. Rule 10(b)     .........................................................................7

Fed. R. Civ. P. Rule 12(e)     .........................................................................7

Fed. R. Civ. P. Rule 45(c)(1)   .......................................................................17

MCL § 600.5744.................................................................................................9

N.J. Stat. § 2A: 17-1...........................................................................................10

ORC Ann. § 5303.15)..........................................................................................9

Pa. R.C.P. 3255..................................................................................................10

11 U.S.C. § 365(a) .............................................................................................5

25 Del. C. § 5713 ..............................................................................................9

## MISCELLANEOUS

*Countryman, Executory Contracts in Bankruptcy, Part 1,* 57 Minn. L. Rev. 439, 460 (1973)" ..................................................................................................5

This Memorandum of Law is submitted on behalf of the plaintiffs, IHS Long Term Care Services, Inc. ("LTC"), and the nine other plaintiffs who are its subsidiaries; additional counterclaim defendant Abe Briarwood Corporation ("Briarwood"); and two nonparties, Leonard Grunstein and Rubin Schron. The Memorandum supports their motion (i) to dismiss the Second through Seventh Counterclaims of the Third Amended Counterclaims asserted by defendant THCI Company LLC ("defendant" or "THCI"), and (ii) to quash the subpoenae addressed by THCI to non-parties Grunstein and Schron, as well as to another nonparty, Uri Kaufman. Mr. Kaufman, by a parallel motion with his own counsel, also moves to quash the subpoena addressed to him.

## Background

This action arises out of the imposition by the Bankruptcy Court of this District (Walrath, B.J.), by Order entered April 22, 2003 (the "April 2003 Order"), of a Master Lease between defendant, as landlord, and the nine LTC subsidiaries, as respective tenants, of nine nursing facility properties located at nine different locations in six States. The propriety of the Order imposing that Master Lease is currently on appeal to this Court (the "Appeal").

Assuming arguendo the Master Lease is properly imposed, defendant has contended that LTC has guaranteed the obligations of its subsidiaries under the Master Lease. LTC disagrees, and commenced suit in Missouri State Court seeking a declaratory judgment accordingly. Defendant removed the action to the local Federal Court, and then transferred it to this Court, on the ground that it was related to the Appeal. A copy of the complaint is annexed to the accompanying Declaration of Leonard Grunstein as Exhibit "C". The last pleading of defendant which responds to the complaint (its more recent pleadings have contained only counterclaims), the "Answer and First Amended Counterclaims", is annexed as Exhibit "D" to the Grunstein

Declaration. The pleading denominated "Third Amended Counterclaims" is annexed to the Grunstein Declaration as Exhibit "E".

There is presently under advisement by this Court a motion by plaintiffs for partial summary judgment on their complaint seeking a declaration that there is no guaranty, and a crossmotion by defendant for partial summary judgment the other way.

## The Third Amended Counterclaims

The Third Amended Counterclaims supersede the counterclaims contained in the Answer and First Amended Counterclaims, and also the intermediate served-and-withdrawn "Second Amended Counterclaims". The Third Amended Counterclaims are twenty-three pages long, and contain 116 numbered paragraphs of allegations. Presumably defendant chose not to serve an amended answer, thereby omitting responding to the complaint, because that would have added, if the previous answer (Grunstein Dec. Exh. "D") is any guide, another fourteen pages and eighty-nine paragraphs to the pleading, making it thirty-seven pages and 225 paragraphs long![1] As is demonstrated hereinafter, the counterclaims moved against fail to state claims upon which relief may be granted. The motion to dismiss them should accordingly be in all respects granted.

---

[1] Cf. F.R.Civ.P. Rule 8, and its requirement, applicable both to defenses and counterclaims, of a "short and plain" statement, which is to be "simple, concise and direct", are of course grossly violated by these pleadings.

2

Point I

## THE PLEADING FAILS ADEQUATELY TO ALLEGE
## THAT LTC IS LIABLE ON ANY GUARANTY.

The Third Amended Counterclaim commences with sixty-five paragraphs of introductory allegations, before beginning the first of its seven counterclaims.  Insofar as these introductory allegations are relevant to a particular counterclaim, they are considered below.  Of significance here, however, is that the pleading does not even prima facie allege facts showing that LTC has guaranteed the obligations of its subsidiaries.

In seeking to allege that LTC is indeed liable, THCI is attempting to make a three-step argument:  (i) Prior to its bankruptcy proceedings, Integrated Health Services, Inc. ("IHS"), then the parent of the nine subsidiaries (and a tenth not involved in this lawsuit), issued certain prepetition guaranties of the nine subsidiaries' lease obligations to THCI or its predecessors, which guaranties the pleading defines as the "Guaranties" (Par. 9).  (ii) The postpetition entity (IHS, debtor-in-possession) somehow assumed the obligations of the prepetition debtor as to the Guaranties.  (iii) LTC assumed the obligations of IHS, debtor-in-possession.  The problem with this three-step argument, as will be shown, is that defendant has failed adequately to allege the second step, and as a matter of law it could not do so.  Without that critical second step, allegation or even proof of the first and third steps would not suffice to establish that LTC is liable on the Guaranties, and the allegations fail to state facts upon which relief may be granted.

Defendant's first mention of guaranties subsequent to the bankruptcy petition date of IHS and its subsidiaries (February 2000, according to complaint Par. 17), is the assertion of Paragraph 30 that "The assets and liabilities of IHS that were transferred to LTC pursuant to the SPA specifically included the Nine Leases and the Guaranties, each of which is identified in the SPA or the schedules to the SPA."  The "SPA" is defined (Par. 27) as a Stock Purchase

3

Agreement between Briarwood and IHS, dated January 28, 2003. What defendant is glossing over, however, is that (i) the transferor party of the SPA is IHS, debtor-in-possession, not the prepetition entity; and (ii) the Guaranties listed are those of Integrated Health Services, Inc., the prepetition entity. There is no way that the debtor-in-possession could have been meant. As at the time of this document (January 2003), the April 2003 Order imposing the Master Lease had not yet been entered, the leases had not, under any theory, been assumed, and IHS, debtor-in-possession, was not liable on the Guaranties under any theory. Furthermore, as can be seen from the SPA itself,[2] there is nothing in the SPA's recital in a schedule that there had existed a prepetition guaranty, or otherwise in the SPA, which constitutes any assumption of such an obligation by LTC.[3]

Defendant thereafter (Par. 35) quotes from the April 2003 Order, although neither the quote nor the balance of the April 2003 Order mentions guaranties of any sort. It also quotes from the Confirmation Order of May 12, 2003 (Par. 41), specifically Par. 49(b) thereof, which deals with the Master Lease and the possibility that the Order imposing it may be reversed on appeal. The Confirmation Order, too, does not mention anything about a guaranty, and, indeed, it refers to the "applicable Reorganized Debtor(s)" performing after confirmation, unless and until rejection is permitted. The nine plaintiff tenants are Reorganized Debtors, but LTC, the purported guarantor, is not.

---

[2] Relevant portions of the SPA, which THCI did not see fit to annex to its pleading, are annexed to the accompanying Declaration of Amos Alter. "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim" (Venture Associates v. Zenith Data Systems, 987 F.2d 429, 431 (7th Cir. 1993); Weiner v. Klais and Co., 108 F.3d 86, 89 (6th Cir. 1997); Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

[3] We need not be concerned with how THCI, not a party to the SPA, could possibly qualify as a third-party beneficiary of any alleged assumption. Certainly it was not an intended beneficiary!

Defendant's attempt to allege a guaranty concludes with the allegation of Paragraph 42: "Under the Confirmation Order and the SPA, LTC succeeded to, and became bound by, the obligations of IHS under the Guaranties." Again, defendant is engaging in sleight-of-hand. LTC assumed obligations of IHS, debtor-in-possession. It was, however, IHS, the prepetition debtor, which had been liable under the Guaranties.

There is not a word in the pleading which alleges, even in conclusory terms, the necessary intermediate step to defendant's argument, namely that IHS, debtor-in-possession, by some act and at some time between the beginning of its existence on the petition date and its demise on the confirmation date, somehow assumed the obligations under the Guaranties of IHS, prepetition debtor.

In any event, even if such an allegation had been made, it would have been legal nonsense. A guaranty is not capable of being assumed or rejected under the Bankruptcy Code. Section 365(a) of the Bankruptcy Code (11 U.S.C. § 365(a)) provides in relevant part that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The Third Circuit has noted that,

> "Although the Bankruptcy Code contains no definition of an executory contract, courts have generally relied on the following definition: '[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.' Countryman, *Executory Contracts in Bankruptcy, Part 1,* 57 Minn. L. Rev. 439, 460 (1973)" (Sharon Steel Corp u National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989)).

See also In Re Columbia Gas System, Inc., 50 F.3d 233, 239 (3d Cir. 1995). "In cases where the nonbankrupt party has fully performed, it makes no sense to talk about assumption or

5

DM3\347385.1

rejection" (id.).  The time for testing whether there are unperformed obligations is at the

bankruptcy petition date (id. at 240).

"[T]he Countryman definition of executory contracts excludes from the purview of § 365

of the Code those contracts where one party has completed performance, ... or where the only

performance that remains is the payment of money" (In re Chateaugay Corp., 102 B.R. 335, 348

(Bankr. S.D.N.Y. 1989))  Thus guaranties, like promissory notes, have repeatedly been held to

be non-executory:

> "A guaranty agreement is not executory because it holds no future
> benefit for the guarantor.  In re Unishops, Inc., 422 F.Supp. 75, 76
> (S.D.N.Y. 1975), aff'd, 543 F.2d 1017 (2d Cir. 1976); In re
> Grayson-Robinson Stores, Inc., 321 F.2d 500, 502 (2d Cir. 1963);
> Van Dyk Research Corp. v. SCM Corp. (In re VanDyk Research
> Corp.), 13 B.R. 487 (Bankr. N.J. 1981)" (In Re Leibinger-Roberts,
> Inc., 105 B.R. 208, 213 (Bankr. E.D.N.Y. 1989)).

In the case at bar, there was, as at the petition date, no future benefit whatsoever, absolute

or contingent, running to the benefit of the promissor/guarantor, IHS.  Looked at from the other

side, there was no further performance under the Guaranties, absolute or contingent, due by

THCI or its predecessor landlords to IHS.  As such, the Guaranties were not "executory" within

the meaning of Bankruptcy Code § 365, and accordingly were not capable of being assumed or

rejected in bankruptcy under that section.

THCI has failed even to make an adequate allegation that TLC is liable under the

Guaranties.  Insofar as its counterclaims presume that TLC is or may be liable for the obligations

of its subsidiaries, they are defective, and must be dismissed.

DM3\347385.1

Point II

## THE PLEADING IMPROPERLY COMBINES SEPARATE CLAIMS

Rule 10(b) of the Federal Rules of Civil Procedure provides in relevant part that "Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth." Rule 12(e) provides for a more definite statement if "a party cannot reasonably be required to frame a responsive pleading". Thus, claims under different laws combined in one claim for relief will be required to be set forth separately (O'Donnell v. Elgin, Joliet & Eastern Railway, 338 U.S. 384, 392, 70 S.Ct. 200, 205, 94 L.Ed. 187, 193 (1949); Guth v. Texas Co., 155 F.2d 563, 565-6 (7th Cir. 1946); De Leys v. Keta Gas and Oil Co., 18 F.R.D. 353, 354 (W.D. Pa. 1955)).

In the case at bar, the Second through Seventh Counterclaims all arise from nine different contracts, or nine different sets of facts, and arise under the laws of six different States. Thus the Second Counterclaim seeks ejectment of the Nine Subsidiaries, which will be determined under the laws of six different States. While the governing statutes may generally be similar, these proceedings dealing with landlord-tenant relationships have peculiar local twists in every jurisdiction, and cannot be handled by a one-size-fits-all complaint.[4]

The Third Counterclaim expressly assumes the Master Lease is not in effect, and seeks money damages for unjust enrichment. Again, the claims for unjust enrichment arise under the laws of six different States, and have to be stated separately, for the elements and the defenses may be different.[5]

---

[4] The Second Counterclaim is defective, and fatally so, for another reason as well. See Point III, infra.

[5] The Third Counterclaim is defective, and fatally so, for another reason as well. See Point IV, infra.

7

The Fourth Counterclaim, insofar as it seeks remedy against LTC on the "Guaranties", and the Fifth Counterclaim, which is solely against LTC on the "Guaranties", are also concerned with the laws of six States on nine different Guaranties. While plaintiffs believe here the result will ultimately be the same, namely that there are and could be no Guaranties in force (see Point I, supra), in the first instance defendant must try to make its arguments under the laws of the six different States which govern the contractual relationships here involved.

The Sixth and Seventh Counterclaims all assume that the Nine Subsidiaries, LTC and Briarwood have all engaged in fraudulent transfers, and that their corporate veils can be or should be pierced. These must be set forth as separate claims for each of the counterclaim defendants, if for no other reason than that the facts as to any transfers, and as to any circumstances relevant to a veil-piercing claim, will differ from one counterclaim defendant to another. Furthermore, the laws will differ as well. The elements of a veil-piercing claim will be dependent on the case law of the respective jurisdictions in which the respective corporations are organized, and will not be identical. In order to plead a claim as to each entity, THCI will have to plead the relevant facts under that State's standards. Its present pleading, however, is insufficient under the law of several of the particular States here involved (see Point V, infra).

The Second through Seventh Counterclaims, to the extent they are not fatally defective for other reasons (see Points I, supra, and III-V, infra), must be dismissed for failure separately to set forth commingled claims.

8

Point III

## THE SECOND COUNTERCLAIM IS DEFECTIVE.

The Second Counterclaim (Pars. 72-99) is labeled as one for "Breach of the Master Lease Against The Nine Subsidiaries – Declaratory Judgment, Injunction, and Eviction". It asserts violation of the Master Lease, thereby duplicating the First Counterclaim, and seeks eviction, claiming no adequate remedy at law.

In addition to the flaw that the counterclaim improperly combines nine different claims for eviction under six different State laws (Point II, supra), the count fails to state a claim under any of them. Despite its allegation of no adequate remedy at law, THCI of course has such remedies, namely actions in the various State Court for eviction, repossession, dispossess, summary possession, or whatever name is used in the particular State for its summary ejectment proceeding. As has been noted in Delaware, "It is clear from the history of the repossession statute that its origin lies in the common law action of ejectment" (Hopkins v. Justice of the Peace Court No. 1, 342 A.2d 243, 245 (Del. Super. 1975)). The nature of the action at law is made clear by the right to a jury trial (25 Del. C. § 5713). This is true of the States in which the various properties lie,[6] e.g., the statutorily expressed right to a jury trial in Ohio (ORC Ann. § 5303.15) or Michigan (MCL § 600.5744), or the venue in the Law Division rather than the Chancery Division in the Superior Court of New Jersey (N.J. Stat. § 2A: 17-1). That THCI apparently would prefer not to avail itself of a perfectly adequate and customary remedy at law for a claim of failure to pay rent, namely summary ejectment proceedings (by whatever name) in

---

[6] Paragraph 8 of the Third Amended Counterclaims lists the six jurisdictions. They are Ohio (three facilities), Pennsylvania (two facilities), and one each in Alabama, Michigan, Missouri and New Jersey.

the jurisdictions where the real properties are located, does not create an inadequacy in its remedy at law justifying equitable relief, in this or, for that matter, in any other Court.

Nor can THCI seek this legal remedy in this Court. An action for summary ejectment, if successful, results in a writ running to the local Sheriff (see, e.g., in Delaware, 25 Del. C. § 5715; in Missouri, R.S. Mo. § 511.280; in Pennsylvania, Pa. R.C.P. 3255; in Michigan, MCL § 600.5744; in Alabama, Ala. Code § 6-6-261; in New Jersey, N.J. Stat. § 2A: 17-1. In Ohio, the relevant officer is called a Constable). While in the case of this Court, that might translate to the United States Marshal for the District of Delaware, this Court is not authorized to issue writs under local laws to Marshals in other Districts, and certainly not to State Officers in those locales.

In short, defendant cannot resort to this (or any) Court as a Court of equity, because its remedy at law is perfectly adequate; nor may it seek its legal relief in this Court, because this Court may not deal with the local nature of the actions affecting possession of real property in other jurisdictions. The motion to dismiss this counterclaim should therefore be granted.

10

Point IV

## THE THIRD COUNTERCLAIM IS DEFECTIVE.

The Third Counterclaim (Pars. 80-83) is labeled as one for "Unjust Enrichment Against the Nine Subsidiaries". It seeks money damages for the period in which it is claimed they occupied the facilities without paying rent.

The Third Counterclaim is of course improper for combining into one count nine different claims for nine sites under six State laws (Point II, supra).[7] It is also fatally defective for another reason. Defendant simply does not understand the nature of a claim for unjust enrichment, which is wholly inapplicable here.

A claim for unjust enrichment sounds in quasi-contract, and, if successful, results in the imposition of a constructive trust upon a particular res in the possession of a defendant, compelling its conveyance, or if it is money, its payment, to the plaintiff. Here the res (or, since we are talking of many sites, the rei) would be the nine premises in question. The imposition of constructive trusts upon these rei is of course equitable relief, requiring the inadequacy of a remedy at law. Not only has defendant not pleaded such here, but it could not truthfully plead it, because it plainly has adequate remedies at law, namely summary ejectment proceedings (Point III, supra). In any event, however, the remedy under an unjust enrichment claim would not be money damages, but restitution.

---

[7] There appear to be defenses, or more precisely, THCI could not adequately allege a claim, under the laws of at least some of the relevant jurisdictions. For instance, in Pennsylvania, there needs to be a showing of "breach of a confidential relationship, or fraud, duress, undue influence or mistake" (Spinner v. Fulton, 777 F.Supp. 398, 403 (M.D.Pa. 1991), aff'd., 947 F.2d 937 (3d Cir. 1991)), facts not found here. See also, in Missouri, Young v. Kansas City Life Ins. Co., 329 Mo. 130, 136, 43 S.W.2d 1046, 1048 (1931) ["A constructive trust does not arise on a mere failure to perform an agreement. It must have its basis in fraud, either actual or constructive"]). This of course emphasizes why the claims must be separately stated, so that the relevant elements can be (or cannot be) pleaded, and the proper defenses asserted.

11

Nor may defendant recover money damages under this Counterclaim by changing the label of the relief sought. This Counterclaim assumes (Par. 81) that the premises are <u>not</u> subject to the Master Lease. Defendant nonetheless wishes to focus merely on the period that there was a "failure ... to pay rent" (Par. 82), which was, says the pleading (Par. 55), beginning in June 2005. Defendant seeks damages for the subsequent period. This, however, is not the correct period, nor the correct measure of damages, if there is no Master Lease. The relevant period is from the time plaintiffs began pay rent as if the Master Lease had been in effect, and the correct measure is the fair use and occupancy for that period, less payments plaintiffs have already made. As this Court is aware, plaintiffs maintain that the number is negative, <u>i.e.</u>, that measured by fair use and occupancy, plaintiffs have overpaid and are in fact owed money by defendant. However, whichever way the balance may ultimately lie, defendant cannot claim what it is claiming in this count, whether mislabeled as unjust enrichment or otherwise.

The Third Counterclaim is thus defective, and should be dismissed.

12

Point V

## THE FOURTH THROUGH SEVENTH
## COUNTERCLAIMS ARE DEFECTIVE

The Fourth Counterclaim insofar as pleaded against LTC, and the Fifth through Seventh

Counterclaims, assume, wrongly, that defendant has properly pleaded a guaranty by LTC of the

obligations of the nine other plaintiffs (Point I, supra). They are therefore defective, and should

be dismissed.

The Fifth through Seventh Causes of Action are also defective because they wrongly

combine numerous claims under various State laws into one. In particular, the Seventh Cause of

Action, by its allegation of domination and control (Par. 107), is attempting to assert claims

against Briarwood for piercing the corporate veil of LTC and the Nine Subsidiaries. Of course,

the facts claimed to justify piercing the respective corporate veils are going to differ from entity

to entity, requiring separate claims for relief. Furthermore, those entities are formed in different

jurisdictions, and the laws are going to be different, again requiring separate claims for relief.[8]

The Third Circuit noted the multiplicity of State law tests in United States v. Pisani, 646 F.2d 83,

87 (3d Cir.1981), where, in considering whether to pierce a corporate veil (there of a New Jersey

entity), it formulated a Federal test for cases in which the United States was the creditor. It

reason for doing so was because "[W]e believe it is undesirable to let the rights of the United

States in this area change whenever state courts issue new decisions on piercing the corporate

veil."

---

[8] The Third Amended Counterclaims do not allege the jurisdictions of incorporation of LTC or the Nine Subsidiaries, although the complaint herein (Grunstein Aff. Exh. "C") sets forth their respective jurisdictions of incorporation. Briarwood's jurisdiction of incorporation (Nevada) is alleged in the Third Amended Counterclaims (Par. 3).

13

Looking at the case law, in Federal Courts, of two of the jurisdictions here involved, Pennsylvania and Delaware, it is evident that the counterclaims here set forth have not pleaded a veil-piercing claim. "Although there is no definitive test in Pennsylvania, courts apply a totality of the circumstances test when determining whether to pierce the corporate veil" (<u>Hudson United Bank</u> v. <u>Pena</u>, 2005 U.S.Dist LEXIS 5198, *21 (E.D. Pa. 2005)). A complaint whose operative allegation was that the dominant stockholder "exercises full dominion and control" over the corporate subsidiaries whose veils were sought to be pierced "fails to allege sufficient fact to pierce the corporate veil" (<u>Stevens</u> v. <u>Citigroup, Inc.</u>, 2000 U.S. Dist. LEXIS 18201 (E.D. Pa. 2000)). These are the allegations of the Seventh Counterclaim in our action, in an attempt to impose liability upon Briarwood for its subsidiary's, and its subsidiary's subsidiaries', obligations (Par. 107, "Briarwood has dominated and continues to dominate"). For the Pennsylvania entities, the allegations of this pleading are patently insufficient.

The Delaware cases are no better for defendant here. As this Court has noted in <u>Liafail, Inc.</u>, v. <u>Learning 2000, Inc.</u>, 2002 U.S. Dist. LEXIS 22620, *34 (D. Del. 2002, Sleet, D.J.), citations and internal quotation marks omitted): "To prevail on an alter ego claim under Delaware law, [plaintiff] must first show that the parent and subsidiary operated as a single economic entity. [Plaintiff] must also demonstrate that an overall element of injustice or unfairness ... is present. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." That the subsidiary is alleged not to have paid its debts does not constitute the type of fraud that this test has in mind: "Other than the fact that he has not been paid, Harper has alleged no unfairness or inequity sufficient to persuade this court that the Delaware state courts would disregard the separate legal existences of DVBI and Lindale"

14

(<u>Harper</u> v. <u>Delaware Valley Broadcasters</u>, 743 F.Supp. 1076, 1086 (D. Del. 1990), <u>afff'd.</u>, 932
F.2d 959 (3d Cir. 1991)).

      An allegation of "direct control" is not enough (<u>BP Amoco Chemical Co.</u> v. <u>Sun Oil Co.</u>,
166 F.Supp.2d 984, 989-90 (D. Del. 2001)).  A plaintiff must plead specific factors such as
undercapitalization, or failure to observe corporate formalities, among other relevant factors, in
order to allege a claim for veil-piercing under Delaware law (<u>Diebold Inc.</u> v. <u>Positran</u>
<u>Manufacturing, Inc.</u>, 2002 U.S.Dist.LEXIS 18993, *5 (D. Del. 2002, Sleet, D.J.)).  Manifestly,
THCI here has not pleaded, under Delaware law, the necessary elements of a veil-piercing claim.

      The Fourth through Seventh Counterclaims are thus defective, and should be dismissed.

Point VI

## THE SUBPOENAE SHOULD BE QUASHED.

Each of the three subpoenae issued by defendant has a problem with service, which mandates its supression. They should, however, be quashed in any event.

There is no reason at this time to have discovery of nonparties when the discovery is aimed, at best, solely at enforcing a non-existent judgment against LTC, or, if defendant could only reach one step further, against Briarwood; and at worst, is aimed at harassing LTC, Briarwood, and nonparties. The premise of this case, that there is a Master Lease in effect, will not even be determined in this case, so any alleged issue as to it cannot justify discovery. There are thus only two areas of inquiry defendant might arguably legitimately have. One is whether there is a guaranty. However, that is not an issue upon which discovery is needed. The question instead turns upon the legal effect of undisputed documents. Indeed, plaintiffs have moved, and defendant has crossmoved, for partial summary judgment on this very issue, which motions are currently under advisement. Obviously, both sides consider it to be a question of law, not of disputed fact.

Considering that a guaranty, which is a promise to answer for the debt of another, is subject to the Statute of Frauds, it is difficult to perceive how oral testimony would be relevant in any event -- either the documents defendant proffers constitute a guaranty, or they do not. Moreover, even to the extent that the question may be disputed-fact-dependent (and there is no suggestion of that), these three witnesses had no involvement with, or contemporaneous knowledge of, any of the transactions memorialized in the undisputed documents, which all predate their involvement, as their respective affidavits attest. In particular, as defendant well knows, one of the subpoenaed parties, Leonard Grunstein, Esq., is a member of the Firm which

16

is of counsel in this action, and was involved solely in the capacity of attorney, and only at a later date.

That leaves only the counterclaims for fraudulent transfer or veil-piercing. Defendant is in effect trying to enforce judgments it is many steps away from obtaining, and may never obtain. (i) It must obtain a money judgment against the Nine Subsidiaries. (ii) It must then obtain a judgment against LTC for the obligations of the Nine Subsidiaries, which requires determinations in defendant's favor on both the existence of the Master Lease and the existence of guaranties. However, as has been demonstrated (Point I, supra), defendant has not alleged, and as a matter of law could not allege, that there exists a guaranty by LTC of its subsidiaries' obligations; (iii) It must then show fraudulent transfers by LTC to Briarwood, at least to obtain a judgment against Briarwood, or, through Briarwood, to others. There is no authority for a proposition that one may seek to enforce potential judgments that many steps removed from the present state of the judgment docket.

Defendant's discovery requests are extremely premature, and should be reserved for enforcement of judgment proceedings, should it ever get that far, which is highly to be doubted. One is strongly led to the conclusion that defendant is merely trying to harass nonparties who it believes might pressure a settlement. Requests such as "All documents identifying any entity in which [Rubin Schron/Leonard Grunstein/Uri Kaufman] serves or served as an officer, director or was/is an Affiliate thereof" (Items 42/44/48) do nothing to dispel that conclusion.

Rule 45(c)(1) of the Federal Rules of Civil Procedure provides in relevant part that "A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid  imposing undue burden or expense on a person subject to that subpoena", a duty to be enforced by the Court when necessary. To determine whether a subpoena presents an

17

undue burden, a Court reviews relevance, need by the party for the documents, the breadth of the document request, the time period covered, the particularity of the document description, and the burden imposed (Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004)). Specifically, a facially overbroad subpoena may be found unduly broad (id.). "[T]he factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship of the party subject to the subpoena" (Heat & Control, Inc., v. Hester Industries, 785 F.2d 1017, 1024 (Fed. Cir. 1986)). Manifestly, defendant's subpoenae, relevant to claims several steps removed from the present; where a critical intermediate step is not only not pleaded, but which cannot sufficiently be pleaded; and which subpoenae improperly and overbroadly pry into the business affairs of the subpoenaed parties of no demonstrable relevance to this lawsuit, place an undue burden on the parties to whom these (defectively served) subpoenae are addressed. They should accordingly be quashed.

18

## Conclusion

As has been demonstrated, the counterclaims are defective, and the subpoenae are irrelevant and unduly burdensome, and should be quashed. Plaintiffs' motion should accordingly be in all respects granted.

Respectfully submitted,

**DUANE MORRIS LLP**

Michael R. Lastowski (DE I.D. 3892)
Richard W. Riley (DE I.D. 4052)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail:      mlastowski@duanemorris.com
             cmwinter@duanemorris.com

-and-

TROUTMAN SANDERS LLP
Amos Alter, Esquire
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone:    (212) 704-6000
Facsimile:    (212) 704-6288
E-mail:       Amos.Alter@troutmansanders.com

*Attorneys for Plaintiff Integrated Health*
*Services of Cliff Manor, Inc. et al., Counterclaim*
*Defendant Abe Briarwood Corp., Leonard*
*Grunstein and Rubin Schron*

19