## EXHIBIT A

1

1         IN THE UNITED STATES DISTRICT COURT

2         IN AND FOR THE DISTRICT OF DELAWARE

3                      -   -   -

4    INTEGRATED HEALTH SERVICES    :      Civil Action
     OF CLIFF MANOR, INC.,         :
5    et al.,                       :
                                   :
6             Plaintiffs,          :
                                   :
7         v.                       :
                                   :
8    THCI COMPANY LLC,             :
                                   :
9             Defendant.           :      No. 04-910 (GMS)

10                     -   -   -

11                 Wilmington, Delaware
                Tuesday, February 28, 2006
12                    11:45 a.m.
                   Telephone Conference

13                     -   -   -

14
     BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15
     APPEARANCES:
16
             RICHARD W. RILEY, ESQ.
17           Duane Morris LLP
                   -and-
18           AMOS ALTER, ESQ.
             Troutman Sanders LLP
19           (New York, New York)

20                           Counsel for Plaintiffs

21           COLLINS J. SEITZ, JR., ESQ.
             Connolly Bove Lodge & Hutz LLP
22                   -and-
             DAVID S. SAGER, ESQ.
23           Pitney Hardin
             (New York, New York)

24                           Counsel for Defendant

25

1          THE COURT:  Good morning.  Counsel, who is on

2     the line today for Integrated?

3          MR. ALTER:  For the plaintiff, Amos Alter.

4          THE COURT:  For THCI?

5          MR. SEITZ:  Your Honor, this is C.J. Seitz.

6          THE COURT:  Good morning, counsel.

7          MR. SAGER:  Your Honor, David Sager from Pitney

8     Hardin.

9          MR. RILEY:  Richard Riley from Duane Morris is

10     local counsel with Amos Alter.

11          THE COURT:  Mr. Alter, you are lead for

12     Integrated?

13          MR. ALTER:  Yes.

14          THE COURT:  Mr. Seitz, are you lead?

15          MR. SEITZ:  Yes.  I will be speaking this

16     morning, Your Honor.

17          THE COURT:  It seems what we need to do is just

18     go ahead and schedule the 04-910 case.  I know there is the

19     master lease issue that is still awaiting my resolution.

20          UNIDENTIFIED SPEAKER:  Correct.

21          THE COURT:  Counsel agree it is appropriate at

22     this time to enter upon a schedule.

23          MR. SEITZ:  Yes, Your Honor.  May I speak to one

24     point that we wanted to surface as part of the schedule?

25          THE COURT:  Okay.

1          MR. SEITZ:  As Your Honor is probably aware, the

2    Plaintiffs 9, 10 and 2 are occupying nine nursing homes

3    under the master lease.  We are the landlords.  Delaware

4    Bankruptcy Court, in a judgment that has not been stayed,

5    ruled that the master lease is in effect unless Your Honor

6    said.  That appeal is pending before you.

7          Under the master lease, the plaintiffs are

8    obligated to pay rent and provide information to us about

9    the operation of these nursing homes.  During the pendency

10   of this appeal from the Bankruptcy Court ruling, they paid

11   rent for a time, but since last May they haven't paid any

12   rent.

13         Under the master lease, they now owe our clients

14   over 8 million dollars of back rent.  It is running at a

15   clip of about a million each month.

16         As I said before, under the master lease, they

17   are required to provide us information about the operation

18   of these nursing homes.  And they haven't been doing that,

19   either.  We recognize this Court has a crushing caseload to

20   deal with.  They are using that time to their advantage to

21   flaunt what is a valid judgment of the Bankruptcy Court,

22   which is now since stayed.  As I said, no rent since last

23   May and 8 million bucks in the hole.

24         In the scheduling order -- we know this Court

25   has an extremely busy schedule -- we would request that some

4

1   time be set aside as soon as your busy schedule permits to

2   be heard on this issue.  We think it would take no more than

3   an hour.  It just isn't right that they are using this time

4   until the Court can turn its attention to the appeal issue

5   to simply squat in these places, run them but not pay rent

6   to the landlord.

7           To the extent Your Honor is willing, we would

8   ask that something be built into the schedule to be heard on

9   this issue as soon as your schedule permits.

10          THE COURT:  Let's hear from Mr. Alter.

11          MR. ALTER:  As Your Honor will have noted in our

12  pretrial, in the joint status report in preparation for

13  this, we believe that if there is no master lease in effect,

14  we have been overpaying for quite a bit, and the

15  computations are in there.  At the moment, we are still

16  approximately a million dollars behind.

17          However, the primary reason we stopped paying

18  the landlord is not simply because we didn't like the

19  landlord.  It is because, as I think everyone will agree,

20  these properties just don't generate enough revenue to pay

21  the rent and the creditors necessary to keep the nursing

22  homes open.  We have stretched out the creditors as far as

23  we could.  And we have now, in the interim, been able to

24  basically catch up with other creditors.

25          As indicated in our schedule, we are prepared

5

1   beginning in April to begin paying rent at approximately,

2   slightly over half the amount, let's say 60 percent of the

3   amount that plaintiff would want, that would be required if

4   the master lease were in effect.  That is essentially the

5   extent that we can do without getting into trouble with our

6   other creditors again.  You have got a payroll.  You have

7   got to buy food and medical supplies for these patients.

8              The money just isn't there.  That is what we

9   propose to do until this case is resolved.

10             We simply can't do better.  Plaintiff always --

11  defendant's landlord always has its remedy if it wishes of

12  going into state court and evicting us, if that's what he

13  wants to do.  But so long as the parties seem to feel it is

14  best that we continue in operation until these matters are

15  all resolved, that's what we propose to do.

16             THE COURT:  Mr. Seitz, did you want to react to

17  that?

18             MR. SEITZ:  Yes, Your Honor.

19             What counsel is not recognizing is that there is

20  a valid judgment from the Bankruptcy Court in Delaware which

21  says they should be paying rent right now, and they are

22  flaunting that judgment.  It's just not the way our legal

23  system works.  If they don't have the money, that is an

24  issue that the legal system can address other ways.  But we

25  have a judgment that says that they should be paying the

6

1    market value rent.  It's just flaunting a judgment of this

2    Court.  And that is not the kind of proceeding that they

3    ought to be allowed to continue.

4              MR. ALTER:  Your Honor, I agree with the

5    statement that there are other remedies in the legal system.

6    As I suggested, he has his remedies.  He knows what they

7    are.  He can proceed with them if he so chooses.  He has not

8    chosen to do that.  Therefore, this is what we propose to

9    do.  If he is not happy with that, he has his remedies.  I

10   couldn't deprive him of it and don't seek to deprive him of

11   it.

12             That's where we stand on that issue.

13             MR. SEITZ:  Your Honor, one last point.  What

14   they are doing is, again, taking advantage of the courts by

15   realizing that the Court's docket is extremely busy.  And

16   they are going to continue to play this game of not paying

17   rent or offering to pay a token rent while we are awaiting

18   the decision from the Court.  And that kind of gamesmanship

19   and working the system to their advantage shouldn't be

20   countenanced by the Court.  That is why we would like to

21   present this as quickly as possible to the Court for relief.

22             THE COURT:  I am going to put you on hold for a

23   minute, counsel.

24             (Pause.)

25             THE COURT:  Counsel, apologize for the delay.

7

 1              I think that it's fairly safe for me to

 2   represent to you that within the next three weeks, if not

 3   before, I will issue a ruling on the underlying bankruptcy

 4   appeal.  So, Mr. Seitz -- I don't think I am going to

 5   require the parties to come in to argue.  If I do need the

 6   benefit of your oral discussion, I will certainly give you

 7   ample notice.

 8              MR. ALTER:  For the record, Your Honor had

 9   requested both parties to respond by today whether we wish

10   to re-brief the issues.

11              THE COURT:  One of the things I was doing was

12   checking the docket.  I see that THCI does not feel a need

13   for further briefing.

14              MR. ALTER:  We are of the same view.

15              THE COURT:  That is very good.

16              MR. ALTER:  There should be no further delay in

17   that regard.  Again, this may be somewhat presumptuous,

18   given Your Honor's heavy schedule, heavy docket, as my

19   adversary noted, which I certainly understand.  But very

20   central to this case is not only the appeal but also there

21   is, we have an under-advisement motion for partial summary

22   judgment.

23              THE COURT:  I am aware of that.  There is a

24   motion for a preliminary injunction as well.

25              When was that motion for partial summary

8

1    judgment filed?  Since the matter came here from Missouri?

2                THE COURT:  Yes.

3                THE COURT:  So this motion, do I understand

4    correctly that it addresses a feature of Missouri law?

5                MR. ALTER:  Yes.  The motion is partial in the

6    sense it is limited only to Missouri, which is one of the

7    leases involved in the case.  That is in part motivated by

8    the fact that Missouri is by far the biggest money loser and

9    the one which causes the greatest liability.  Money-wise, it

10   is far more important than simply one of nine leases.

11               THE COURT:  Mr. Seitz, did you have anything you

12   want to say on that?

13               MR. SEITZ:  No, Your Honor.  Mr. Sager is more

14   familiar with that.

15               Mr. Sager?

16               MR. SAGER:  Your Honor, the preliminary

17   injunction motion that is pending is addressed at precisely

18   the remedy Mr. Alter mentioned earlier, which is eviction.

19   Mr. Alter had objected or his client had objected to that

20   motion based on the pleadings.  We have since amended those.

21   We are happy to resubmit it.  But we have no desire to

22   burden the Court with more paper.

23               The bottom line of the motion is we want them to

24   pay rent or leave the facilities.

25               THE COURT:  I don't think you need to resubmit

9

1    it.  I think we have got it.

2              Okay.  I am wondering, counsel, in your view,

3    the determination of the -- how will the determination of

4    the bankruptcy -- will the determination of the bankruptcy

5    appeal affect this case, if so, how?

6              MR. ALTER:  You have to determine which way it

7    goes.  If affirmed and the other issues come up, which I

8    will discuss in a second, if it is reversed and remanded or

9    whatever, there is no lease in effect, then it is my

10   understanding -- I don't want to put words in

11   defendant's mouth -- it is my understanding there is no

12   argument that there is a guarantee, and then the complaint,

13   which seeks a declaratory judgment that if there is a master

14   lease there is no guarantee, has become academic.

15             A lot of the counterclaims which are based on

16   fraudulent conveyances from the alleged guarantor, alleged

17   fraudulent conveyances from the alleged guarantor, will also

18   disappear.  There will be some minimal parts of the

19   counterclaims which will still be viable.  But they are a

20   lot more handleable and, frankly, to some great degree

21   trivial.

22             If there is an affirmance on the appeal, there

23   is still left open the question is there a guarantee.  As I

24   say, that is already subject to a motion for partial summary

25   judgment, which will probably go a long way to -- whether it

10

1    is granted or denied will go a long way to resolve the rest

2    of the questions about a guarantee.

3              MR. SEITZ:  Your Honor, Mr. Sager could answer

4    this more fully, I think.

5              MR. SAGER:  Your Honor, I think there are really

6    two separate issues.  If the Court were to affirm the

7    Bankruptcy Court's existing order, then the issue left in

8    this case would simply be the guarantee issue and the

9    fraudulent transfer issue, and it would obviously simplify

10   things substantially.

11             But even if Your Honor were to conclude that the

12   Bankruptcy Court exceeded its authority, which we disagree

13   with, but even if that were the case, there is still an

14   issue that presents itself by virtue of their continued

15   occupancy and their continued failure to pay rent and their

16   continued failure to provide financial and operational

17   documents.

18             So the long-winded answer to Your Honor's

19   question is that, yes, the resolution of the appeal will

20   simplify and streamline certain aspects, but it will not

21   resolve all the aspects of the case.  There will be more

22   work for us to do.  We believe the work related to the

23   occupancy is separate and independent from that.  That is a

24   question of amount and the entitlement to continue to squat,

25   and if that exists, whether there is a lease or not, given

1    they are still at the property.

2            THE COURT:  So counsel agree it would be prudent

3    to schedule?

4            MR. ALTER:  I am sorry.  Schedule what?

5            THE COURT:  The 910 matter, this matter that is

6    on the docket for today.

7            MR. SAGER:  Yes, Your Honor.

8            THE COURT:  The 04-910 matter.

9            MR. ALTER:  I am sorry.  My lack of

10   comprehension is what do you mean by scheduling?

11           THE COURT:  Go ahead and enter upon a case

12   management order.

13           MR. ALTER:  In that regard, we do believe that

14   the issues, for the reasons I explained earlier, in part,

15   that the issues of the appeal and whether there is a master

16   lease, and the issue of whether there is a guarantee, really

17   should precede the issues of discovery as to whether the

18   alleged guarantor has made fraudulent conveyances, et

19   cetera.  We think that the defendant is trying to enforce a

20   judgment that it's several steps away from getting against

21   the alleged guarantor.

22           THE COURT:  So that's a way around Robin Hood's

23   barn of saying, no, you disagree.

24           MR. ALTER:  I disagree, yes.  Just to make it

25   formal, we do have sort of an omnibus motion which we will

12

1    be making by March 13, was the date we stipulated to, we

2    will also formally request at that time a stay of the

3    counterclaims until the appeal, which hopefully will be

4    decided perhaps by then, and the issue of at least the

5    partial summary judgment motion have been decided, I should

6    say, because then either the counterclaims will be academic

7    or alternatively they will be real.  At the moment the

8    discovery sought, for instance, is quite extensive as to

9    assets and business affairs of business partners or

10   relatives or whatever you want to call it or associates of

11   the guarantor.  And to say that the guarantor has liability

12   at this stage is at least two steps removed.

13             THE COURT:  What I am understanding, I think it

14   was Mr. Sager, from his response to my question, the appeal

15   is only going to resolve the issue of the master lease.

16             MR. SAGER:  Correct.

17             THE COURT:  There still will remain the issue of

18   the continuing presence of the plaintiff, counsel, of your

19   client in the facilities on the land.

20             MR. ALTER:  That will be true.  But again, as I

21   say, we will be paying what we compute to be fair market

22   rent.  And I will say that we are open to discussion on the

23   number.  If they disagree, we will be happy to show them our

24   calculations.

25             And ultimately, there will be the question of

13

1    the guarantee.  Then when the parties know what the legal

2    consequences are, either there is a master lease or there

3    isn't.  If there is, either there is a guarantee or there

4    isn't.  Then the parties will be much more able to deal in

5    what will then clearly be realities and not suppositions and

6    posturing, which is where we are now.

7              THE COURT:  I am trying to get guidance from

8    both parties that would enable me to make a decision that

9    would cause all of us, certainly this is in I think the

10   parties' interest, to approach this in a cost-effective

11   manner.  That is, to not cause the unnecessary expense.

12             MR. ALTER:  That is what we have suggested,

13   number one.

14             THE COURT:  On the other hand, not to waste

15   time, either.

16             MR. ALTER:  No.  This is in line with what I

17   have suggested.  We are not going to hold up the appeal by

18   seeking to re-brief it.  We would like a decision on that.

19   We would like, recognizing again Your Honor's schedule, and

20   obviously none of us --

21             THE COURT:  Let me ask Mr. Seitz and Mr. Sager

22   your view of this motion for partial summary judgment.  What

23   would its impact be?  The ruling, that is.

24             MR. SAGER:  There are nine properties, nine

25   different nursing home facilities that are ongoing.  The

1    summary judgment motion is directed only as to that facility

2    that is located in Missouri.  So I kind of refer to it as a

3    trial balloon, a test balloon, that they have floated.  It

4    will not resolve the case.  It may give the Court guidance

5    and it certainly will resolve certain issues as to the

6    Missouri property.  But it is not going to end the case.  I

7    assure the Court in our request that we be permitted to

8    proceed with discovery that we have no interest in

9    escalating needlessly either the fees or the Court's

10   involvement.  But there are certain minimum discovery tools

11   that we would like to avail ourselves of.

12            In fact, when Your Honor conferenced this case

13   in January, the call that neither Mr. Seitz nor I were on,

14   but we do have the benefit of seeing the transcript, this

15   very issue came up, and Your Honor instructed the parties to

16   go forward with discovery, which we did by simply serving a

17   document request.

18            We will not burden the Court nor will we burden

19   unnecessarily our adversaries with discovery.  But that

20   discovery is going to be necessary and appropriate to some

21   extent, and the parties can quibble over the extent, but to

22   some extent, regardless of what happens on the appeal.  And

23   therefore, it's critical to our clients that we have the

24   ability to go forward.

25            I will give you one quick example, if I may.

15

1    That is the financial information that Mr. Seitz was talking

2    about.  They won't give it to us voluntarily.  They won't

3    give it to us notwithstanding a Bankruptcy Court order.  We

4    are trying to get it now through discovery.  And I think we

5    are entitled to it.  I think the Court ultimately will

6    uphold our request.  I think that should go forward.  I

7    think it needs to go forward.

8              THE COURT:  Okay.  The Court is going to order

9    and permit discovery to move forward.  Let's go ahead and

10   schedule this matter.

11             MR. ALTER:  Recognizing that you have made this

12   ruling just now, I still would like to make my motion as

13   part of my omnibus motion.

14             THE COURT:  What motion is that, counsel?

15             MR. ALTER:  They have served some subpoenas

16   which we think are burdensome --

17             THE COURT:  When you say omnibus motion, what

18   are you talking about?  I don't have that feature in my

19   practice here.

20             MR. ALTER:  It is a motion seeking different

21   branches of relief.

22             THE COURT:  Branches of relief with regard to

23   what?  Discovery?

24             MR. ALTER:  Number one, it will seek --

25             THE COURT:  I don't need the specific subject.

16

1    Are you taking about discovery?

2              MR. ALTER:  It will deal with discovery, yes.

3              THE COURT:  I don't permit motions practice, you

4    don't have free leave to file motions seeking protection or

5    compulsion of discovery.  I will explain to you, counsel, if

6    you would wait a second, what my practice is in this regard.

7    So when you announce to me that you are going to be filing

8    an omnibus motion and you announce to me the subject of the

9    motion, I am just a little bit curious.

10              MR. ALTER:  Your Honor, we did have a

11    stipulation which Your Honor so ordered which provided we

12    would be making this motion.

13              THE COURT:  I do not have complete recall nor do

14    I have that stipulation in front of me, counsel.  But now we

15    are going to enter upon a scheduling order in this case.

16    You can refresh my recollection, if I have acceded to a

17    request previously, I will stand by that, so you need not

18    worry in that regard.

19              Counsel, how much time do you think will be

20    needed to complete discovery in this matter?

21              MR. ALTER:  If I could --

22              THE COURT:  Let me hear from the other side for

23    a moment.  Go ahead.

24              MR. SAGER:  Your Honor, we can I think do this

25    very quickly, in a matter of months, three, four months,

17

1    that we can get everything done.

2            THE COURT:  Mr. Alter, do you disagree?

3            MR. ALTER:  As I say, putting aside that aspect,

4    another aspect of this motion I tried to make is to move

5    against the sufficiency of several counts of the

6    counterclaims, in which case -- I recognize that doesn't

7    automatically stay discovery with respect to them, but I

8    think that there is a good -- if they really do state

9    claims, which I don't believe they do, some of which can be

10   cured by repleading, some of which cannot, you just can't

11   get some of the relief that they seek, I don't think they

12   should have discovery with respect that.

13           THE COURT:  Apart from that, counsel --

14           MR. SAGER:  I think the scheduling of seven

15   months is not unreasonable.

16           THE COURT:  I will give you six months, counsel.

17           Now, will there be a need for expert discovery

18   in this case?

19           MR. SAGER:  Your Honor, I would hope to do it

20   without.  But in large measure it depends what kind of

21   cooperation and documents we get from the plaintiff.  If we

22   don't, then we are going to need to put on experts to

23   demonstrate some of the facts that should be readily

24   available and documents.

25           THE COURT:  Do you concur in that view, Mr.

1  Alter?

2          MR. ALTER:  I do not foresee at this point in

3  time any need for experts.  I am not quite sure what he

4  means.  But I guess it doesn't matter.

5          THE COURT:  Mr. Seitz.

6          MR. SEITZ:  I agree, Your Honor.

7          THE COURT:  I am assuming, six months -- tell me

8  if I am wrong -- should this matter survive to go to trial,

9  it will not be able to be brought to trial until April 9th

10  of '07.  So you can see, I provide that date for you so that

11  you can see that we do have some play here.

12          MR. SEITZ:  Your Honor, I think a six-month

13  period that includes fact and expert discovery should take

14  care of it.

15          THE COURT:  Ms. Walker?

16          MS. WALKER:  August 28th.

17          THE COURT:  August 28th will be the cutoff for

18  all discovery in this matter.  That is August 28th of '06.

19          MR. ALTER:  Your Honor, you before suggested, if

20  I understood correctly, you are going to tell --

21          THE COURT:  I am, in a moment, Mr. Alter.

22          So I am going to set the cutoff for issue and

23  case-dispositive filings two weeks subsequent to the 28th.

24          MS. WALKER:  September 11th.

25          THE COURT:  September 11th.  You will brief

1   under our Local Rule.  If you need relief from the Local

2   Rule as to motions and briefing, and you arrive upon a

3   stipulation among yourselves, counsel, and you transmit that

4   stipulation, please do so with an explanation as to the

5   reason for the relief you are requesting, so as to give me

6   the opportunity to make an informed decision.

7           MR. SAGER:  Your Honor, to the extent Mr. Alter,

8   his omnibus motion came to subpoenas, I am more than happy,

9   C.J. and I are more than happy to work with him to resolve

10  the need for motions.  In fact, each of the subpoenas was

11  actually issued out of the Eastern District of New York.  I

12  am not sure any motion relating to them would be properly

13  before the Delaware Court anyway.

14          But be that as it may, we are more than happy to

15  resolve this without burdening the Court with motions that

16  counsel should be able to deal with between themselves.

17          THE COURT:  I am glad you said that, because the

18  manner in which, Mr. Alter, you raise, at least as I

19  understand it, insofar as I understand it, some of the

20  issues that you are concerned about with the Court is not

21  through motion, at least initially, but after a full

22  meet-and-confer, or several, however many it takes to come

23  to be sure that you are truly at an impasse, then you may

24  come to the Court, and only then.  And you do that by both

25  parties coming, or one or the other appointing one or the

1    other to place a telephone call.

2              You will get a date for a teleconference from my

3    staff.  My staff will tell you that 48 hours, no less than

4    48 hours in advance of that teleconference date and time, I

5    will need a letter of no more than two pages.  And that

6    letter must be nonargumentative.  And it should set forth in

7    summary fashion the nature of the disagreements that you

8    have among yourselves insofar as they affect discovery in

9    this case, and/or the schedule in the case.

10             So, no, you are not given leave to freely file

11   so-called omnibus motions, Mr. Alter.

12             MR. ALTER:  I understand.

13             THE COURT:  If we are not able to, or during the

14   teleconference, if I am unable to -- let me say this first.

15   If the parties are unable to come to an agreement, or if I

16   am feeling uncomfortable about ruling during the

17   teleconference, I will give you the opportunity and leave to

18   file letter briefs, anywhere from two to five pages.  And if

19   I feel that really the Court and the parties would benefit

20   from a fuller exposition, I will give you leave to engage in

21   full-blown motions practice.

22             That is how those matters will be addressed.

23             Now, to the extent that those comments don't

24   address anything, Mr. Alter, that you were contemplating in

25   your omnibus motion, why don't you let me know what else you

1    were thinking about.

2           MR. ALTER:  Well, I indicated that I was going

3    to move against the sufficiency.  I was going to.  If you

4    tell me that is already behind us, I won't.  I was going to

5    move for a stay of the counterclaims until determination --

6           THE COURT:  That is behind us, Mr. Alter.

7           MR. ALTER:  Fair enough.

8           MR. RILEY:  Your Honor, the only thing I would

9    add is, we will have to work with the other side, because we

10   did enter into a stipulation that set a deadline, or granted

11   us a deadline for moving against the subpoena.  I do

12   understand Your Honor's procedures.

13          THE COURT:  Well, I thought I heard someone say,

14   maybe it was Mr. Sager, say that there was a willingness to

15   discuss coming to some resolution of the subpoena issues.

16          MR. SAGER:  That is absolutely correct.  My

17   understanding of our stipulation was that there might be a

18   motion, a dispositive motion, or a motion to dismiss

19   directed to our amended pleading.  They can assert that or

20   not in compliance with the Local Rules.  I have no view one

21   way or the other at this point.

22          But on discovery issues, on the subpoena issues,

23   I, A, don't think they are before this Court, and B, even if

24   they were, I don't think this Court need be bothered with

25   them.  We will work with them to do whatever is possible to

1    eliminate that kind of dispute from taking up judicial time.

2            MR. ALTER:  I certainly welcome the opportunity

3    to work with them on the questions of the subpoenas.

4            There are three subpoenas issued to nonparties.

5    Two of them I would represent them.  The third I don't.

6            THE COURT:  Let me interrupt, counsel.  If you

7    are going to work it out, that is fine, you can work it out.

8    I don't need to hear about it.

9            Mr. Alter, to the extent that -- you indicate

10   there might be the ability to discuss amending certain of

11   the counterclaims, I think it was.

12           MR. ALTER:  Yes.

13           THE COURT:  I am going to require that counsel

14   engage that process, to see if those matters can be resolved

15   non-judicially.  To the extent that you need to file, you

16   need to file them, that is fine, if you want to challenge

17   the sufficiency of any pleading.

18           The pretrial order will be due in chambers by

19   the close of business on February 26th of '07.

20           We will convene a pretrial conference, should it

21   be necessary, on March 20th of '07, commencing at 11:00 in

22   the morning.  Keep flexible that day, counsel, because that

23   time may change.

24           UNIDENTIFIED SPEAKER:  Could you repeat that

25   date?

23

1          THE COURT:  March 20th of '07, 11:00 a.m.

2          Trial will commence on April 9th.  It is a Bench

3    trial, as I understand it.  Is that correct?

4          UNIDENTIFIED SPEAKER:  At the moment, certainly,

5    in response to the counterclaims, my guess is it will be a

6    Bench trial.

7          THE COURT:  Then do you have any sense of how

8    much time the Court should set aside, gentlemen?

9          MR. ALTER:  We have indicated in the pretrial

10   order that depends on what issues are left open depending on

11   your resolution of the appeal and of the partial summary

12   judgment motion.

13          Certainly, if the issue -- either way that the

14   appeal goes, the only thing that would be triable would be

15   the major issue, would be whether there is or is not a

16   guarantee.  I believe on the whole that is based on the

17   legal consequences of various documents and virtually no

18   testimony will be necessary perhaps to authenticate the

19   documents.

20          THE COURT:  We are talking about roughly a day?

21          MR. ALTER:  Yes, I would estimate a day.  My

22   adversary has estimated seven days.  He will speak for

23   himself.

24          THE COURT:  Counsel on the other side?

25          MR. SAGER:  Your Honor, I put that in based on,

1    Mr. Alter is correct, if we were to have to try all of the

2    issues.  If you think there is a damages component to this,

3    we would expect to take some time to put that on.  I would

4    join Mr. Alter in my hope this could be done expeditiously,

5    more likely two or three days.  But certainly we could keep

6    it within a week.

7               THE COURT:  We will set it down for three days,

8    out of an abundance of caution.

9               As I understand it, this matter did proceed

10   before a mediator, a neutral, Vince Poppiti, and the matter

11   was obviously not successfully concluded at that time.

12              So, then, is it counsel's view that it would be

13   a waste of our Magistrate Judge's time to refer this to her?

14              MR. SAGER:  Your Honor, I never like to say

15   anything that is a waste of time.  In this instance, I would

16   say it's premature and that we would not be well-served

17   quite yet to take up the Magistrate's time.

18              I would prefer to proceed with what Your Honor

19   has scheduled, and if we get to a point where we feel we are

20   making some progress but could use some help, if we could

21   have the liberty of requesting such a meeting then, I think

22   that would be most beneficial.

23              THE COURT:  The only problem with that is a

24   practical one.  That is that the Magistrate Judge's schedule

25   is so packed that failure to get on her schedule sooner

1    rather than later could moot out your ability to appear

2    before her if you later determine that were your desire.

3    She well-understands that counsel need to develop their

4    respective positions through discovery and otherwise before

5    scheduling you to come in.

6              So that shouldn't be a concern.  She would reach

7    out to you and you would have an initial teleconference and

8    discuss such things as you just raised, Mr. Sager.

9              MR. SAGER:  My primary concern is I would never

10   want settlement to delay the proceedings.  Since that is not

11   really going to be an issue, we are going to go ahead with

12   discovery, I am more than happy to, whenever the Court deems

13   it appropriate, to meet with the Magistrate or do whatever

14   the Magistrate feels is appropriate.

15             THE COURT:  I will go ahead and include a

16   paragraph referring the matter to the Magistrate Judge, to

17   Judge Thynge, and she will reach out to you in due course

18   and you will have a discussion, and she will manage that

19   process, along with the parties.  Okay?

20             MR. SAGER:  I am correct, Your Honor, that will

21   not impact or delay the schedule?

22             THE COURT:  Not at all.

23             MR. ALTER:  I certainly have no problems with

24   that.  Let me also add, the Court directed the parties

25   confer on various discovery issues.  I would add my personal

1    hope that they would also begin to discuss the possibility

2    of resolving the entire thing.

3                    THE COURT:  Absolutely.  I expect that

4    sophisticated parties such as the Court has before it should

5    be able, without facilitation, to have that kind of

6    dialogue.  Yes.  Goes without saying.

7                    MR. ALTER:  For that reason, I will even add for

8    His Honor, in person, rather than phone conversation, might

9    be a good idea.

10                   THE COURT:  Well, I was trying to accommodate --

11   don't we have counsel in other states?

12                   MR. ALTER:  Between Delaware and New York and

13   New Jersey.  It is not that far.

14                   THE COURT:  I agree.

15                   MR. ALTER:  We can do it.

16                   THE COURT:  To the extent that it would be

17   helpful, I am certainly willing to have you journey down to

18   Delaware and to meet in person.  Okay?

19                   Anything else, counsel, that we have not

20   covered?

21                   UNIDENTIFIED SPEAKER:  Your Honor, one request

22   for an interim time to be heard on the rent issue.  It won't

23   go away, necessarily, with the decision of the appeal.  If

24   Your Honor would schedule it for an hour sometime to be

25   heard on issue, it would be appreciated.

27

1          MR. ALTER:  I would say at least one, maybe two

2    of their motions under advisement already address that

3    issue.

4          THE COURT:  Is this addressed in the preliminary

5    injunction motion?

6          MR. ALTER:  They have two motions under

7    advisement.  I think it is addressed in at least one, maybe

8    both.

9          THE COURT:  Mr. Seitz?

10         MR. SEITZ:  Well, I guess the answer is yes, we

11   don't want to burden the Court with more pleadings.  We want

12   to figure out a mechanism to be heard on the issue.

13         THE COURT:  What I am asking, not very artfully,

14   is, my review of the papers that have been filed in support

15   of and in opposition to the preliminary injunction issue,

16   issuance of a preliminary injunction would help inform my

17   thinking on this.  Is that correct?

18         MR. SAGER:  I think that's right, Your Honor.

19   Mr. Alter's response to our motion for preliminary

20   injunction, which was filed by prior counsel, was

21   essentially it was not ripe because of a pleading issue.

22   When I suggested earlier that we don't want to burden the

23   Court with more paper, I could frankly see a circumstance

24   where Mr. Alter wants to put in substantive opposition now

25   that we have accommodated his concern about the pleadings

1    with an amended counterclaim.

2            All that said, I think what Mr. Seitz and I are

3    big advocates of, rather than burden the parties and the

4    Court with briefs and so forth, that the issues relating to

5    their occupancy really are quite simple and could be

6    addressed, I think, expeditiously, perhaps most

7    expeditiously with an in-person appearance, where we could

8    set forth the basic premises, and even if it would help Your

9    Honor submit five or ten-page position statements before we

10   came down, to clarify the issues.  It is our effort to be

11   expedient but also to address an issue that frankly is of

12   monumental consequences to our clients.

13           THE COURT:  Okay.  Mr. Seitz, are you asking me

14   to schedule a date right now?

15           MR. SEITZ:  I know Your Honor's schedule is a

16   disaster.  But if Your Honor would give us a time now, that

17   would be appreciated.

18           MR. ALTER:  Obviously, we will be pleased to do

19   whatever Your Honor wants.  We think you have got enough

20   submissions on the subject that you probably don't need this

21   special appearance.  If Your Honor wants us, we obviously

22   will be here.

23           THE COURT:  That is what I was trying to

24   understand.  Whether it be the preliminary injunction papers

25   or -- I am trying to get some direction from counsel as to

1    anything that has already been submitted that might help me

2    make a decision as to whether I want to hear from you or

3    need to hear from you.

4            MR. SAGER:  I can try to respond to that.  Here

5    is my concern.  Their continued occupancy without paying

6    rent is a critical issue to us.  Whether or not or

7    regardless of how Your Honor rules on the bankruptcy appeal,

8    we are trying to avoid the situation where we, A, have

9    extensive briefing over a matter of months that we feel

10   would really just rehash old issues.  But Mr. Alter may very

11   well be entitled to do that.

12           And we are really suggesting an alternative to

13   that process, the ability to come in and do in an hour what

14   I think would extend over weeks or months for the parties of

15   briefing that really is not necessary.

16           So we are trying to come up with a procedure

17   here that would give Your Honor all the information and

18   background that you need to make a reasoned decision, while

19   simultaneously avoiding the need to submit more mountains of

20   papers in a case that is already very document-intensive.

21           THE COURT:  I am all for that, Mr. Sager.  I am

22   just wanting to understand a little better how you would

23   advance the issues and focus them and join them.  Are we

24   talking about an evidentiary hearing?

25           MR. SAGER:  It would probably not need to be

1   evidentiary, although I would certainly leave open the

2   possibility that one or both parties would want to bring a

3   witness.  Essentially, what we are talking about here is a

4   determination of whether they can continue to occupy the

5   properties, and if so, whether they have to pay rent, or if

6   not, how they leave.

7           Because we are dealing with nursing homes, we

8   are not dealing with a situation where somebody can simply

9   be evicted or should be evicted on a moment's notice.  These

10  things take time in terms of licensing requirements and

11  transition for the benefit of patients.  They are real

12  people that are being impacted by this.  And one of the

13  reasons we want to proceed in this manner is to accommodate

14  those concerns.

15          Now, Mr. Alter said at the outset we could go in

16  and file eviction motions in various state courts.  I think

17  we could do that.  But I am not so sure, more importantly,

18  that this Court can't do that if we reach that point.

19          So those are the types of issues that we could

20  address, I think, between Mr. Seitz and myself, we could do

21  so very, very quickly, and not waste any more of this

22  Court's time than would be with absolutely necessary.

23          MR. ALTER:  Your Honor, they already have

24  pleadings which speak to this issue.  They have preliminary

25  injunction motions which speak to this issue.  They want to

1   do this by oral argument and get this relief.  The relief is

2   already sought in the pleading.  The relief is already

3   sought in motions.  To the extent this Court thinks it

4   appropriate to grant that ultimate relief, you know,

5   obviously, you can do it.  But that's the way to do it.

6   Either move for summary judgment on your claims, if you

7   think you can, or wait till trial, one or the other.  Or

8   move for a preliminary injunction if you think you can do

9   that.  But that's the orderly way to go about it.

10          MR. SAGER:  If Mr. Alter is satisfied with the

11   record on the preliminary injunction as it currently exists,

12   and that's something he is prepared to have Your Honor

13   decide, I would accept that representation.

14          MR. ALTER:  Frankly, I would have to go back and

15   look at that preliminary injunction record.  I don't quite

16   recall what is in it.  I believe my adversary is absolutely

17   correct that it may well have changed in light of the

18   pleadings.  But I would have to go look at it.  I can't

19   answer that question right now.

20          But the way to do it is by either motion for

21   summary judgment or by motion for preliminary injunction if

22   that is appropriate.

23          THE COURT:  I am not prepared at this moment to

24   accede to your request, Mr. Seitz, because I would rather

25   try to look a little more extensively into the record, such

32

1    as it is, that has been developed thus far, insofar as the

2    papers that have been submitted in support and in opposition

3    to the preliminary injunction.  I am not saying I won't

4    ultimately agree.

5                MR. SEITZ:  May I make a suggestion?

6                THE COURT:  Yes.

7                MR. SEITZ:  We get Your Honor's ruling on the

8    appeal, then we schedule a call with the Court.

9                THE COURT:  We can do that.  We can come back

10   with you on that.

11               MR. ALTER:  I certainly would agree with that.

12               THE COURT:  Fair enough.  What will happen is

13   that the Court will reach out to counsel either concurrent

14   with the issuance of its opinion or shortly thereafter for

15   purposes of scheduling a teleconference to further discuss

16   this matter.

17               MR. SEITZ:  Thank you very much.

18               THE COURT:  Take care.

19               (Counsel respond "Thank you.")

20               (Conference concluded at 12:40 p.m.)

21                        -  -  -

22   Reporter:  Kevin Maurer

23

24

25

**EXHIBIT B**

# PITNEY HARDIN LLP

DAVID S. SAGER

DIRECT DIAL NUMBER
973-966-8121

DSAGER@PITNEYHARDIN.COM

(MAIL TO)
P.O. BOX 1945
MORRISTOWN, NEW JERSEY 07962-1945

(DELIVERY TO)
200 CAMPUS DRIVE
FLORHAM PARK, NEW JERSEY 07932-0950
(973) 966 6300
FACSIMILE (973) 966-1015

NEW YORK, NEW YORK
(212) 297-5800
FACSIMILE (212) 916-2940

BRUSSELS, BELGIUM
32-02-514-54-19
FACSIMILE 32-02-514-16-59

March 13, 2006

VIA FACSIMILE

Amos Alter, Esq.
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174

Re:    Integrated Health Services, Inc. et al. v. THCI Company LLC
       Civil Action Nos. 03-610 and 04-910 (GMS)

Dear Amos:

During our telephone conversation on March 8, 2006, you raised concerns relating to subpoenas served on Rubin Schron and Leonard Grunstein, both of whom you represent. At that time, however, you were not prepared to advise me whether you were (a) objecting to the subpoenas in their entirety or (b) proposing a compromise, presumably based on limiting the scope of the subpoenas. Although I made clear that THCI would consider a reasonable compromise to avoid burdening the Court with this discovery issue, I understand your letter dated March 9, 2006 to indicate that neither of these witnesses intend to comply with the subpoenas for the reasons stated therein.

Your refusal to permit the requested discovery is directly contrary to the Court's instructions, during two separate telephone conference calls, that non-party discovery can and should proceed. Inasmuch as you fail to propose any compromise and, instead, choose to disregard the Court's rulings, I assume that you will request a third call with Judge Sleet (as per His Honor's instructions) to address this issue. I nevertheless reiterate my offer to work with you regarding the scope of the subpoenas should you wish to reconsider.

Very truly yours,

DAVID S. SAGER

cc:    Michael Lastowski, Esq.
       Collins J. Seitz, Esq.

1398289A01031306