**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | |
|  | ) | Civil Action No. 04-910 (GMS) |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| THCI COMPANY LLC, | ) ) | |
| Defendant, | ) ) ) | |
| v. | ) ) ) | |
| ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, | ) ) ) ) | |
| Additional Counterclaim Defendants. | ) ) ) | |

**DEFENDANT'S BRIEF IN OPPOSITION**
**TO MOTION TO DISMISS AND QUASH**

OF COUNSEL:
PITNEY HARDIN LLP
David S. Sager
P.O. Box 1945
Morristown, NJ 07962-1945
(973) 966-6300


DATED: March 27, 2006

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Kevin F. Brady (Bar No. 2248)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendant*
*THCI Company LLC*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF FACTS ............................................................ 3

ARGUMENT ...................................................................... 5

I.    PLAINTIFFS' AND BRIARWOOD'S MOTION TO DISMISS THCI'S
      COUNTERCLAIMS SHOULD BE DENIED ........................................ 5

      A.    The Fourth And Fifth Counterclaims State Claims Against LTC
            For Breach Of The Guaranties .................................... 6

      B.    The Counterclaims Do Not Improperly Combine Separate Claims ...... 8

      C.    The Second Counterclaim States A Claim For Ejectment ........... 10

      D.    The Third Counterclaim States A Claim For Unjust Enrichment .... 11

      E.    The Seventh Counterclaim States A Claim Against Briarwood ...... 11

II.   THE MOTION TO QUASH SHOULD BE DENIED ................................ 13

CONCLUSION ................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Allstate Ins. Co. v. Davidson Med. Group*,
No. 01-5938, 2004 WL 2357797 (E.D. Pa. Oct. 18, 2004) ................................. 11

*Angelastro v. Prudential-Bache Sec., Inc.*,
764 F.2d 939 (3d Cir. 1985) ........................................................................... 5

*Bennett v. Schmidt*,
153 F.3d 516 (7th Cir. 1998) ......................................................................... 9

*Colburn v. Upper Darby Tp.*,
838 F.2d 663 (3d Cir. 1988) ........................................................................... 6

*Combs v. Chambers*,
283 F. Supp. 295 (N.D. Okla. 1968) ............................................................. 14

*In re Comdisco, Inc.*,
270 B.R. 909 (Bankr. N.D. Ill. 2001) ........................................................... 6

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................ 6

*De Leys v. Keta Gas and Oil Co.*,
18 F.R.D. 353 (W.D. Pa. 1955) ..................................................................... 8

*Diebold Inc. v. Positran Mfg., Inc.*,
No. 02-374 (GMS), 2002 U.S. Dist. LEXIS 18993 (D. Del. Oct. 4, 2002) ...... 5, 12

*Enzo Life Sciences, Inc. v. Digene Corp.*,
295 F. Supp. 2d 424 (D. Del. 2003) ............................................................... 6, 9

*Foman v. Davis*,
371 U.S. 178 (1962) ...................................................................................... 9

*Graff v. Nieberg*,
233 F.2d 860 (7th Cir. 1956) ......................................................................... 14

*Guth v. Texas Co.*,
155 F.2d 563 (7th Cir. 1946) ......................................................................... 8

*Marion v. Benistar, Ltd.*,
No. 03-4700, 2005 WL 563698 (E.D. Pa. Mar. 10, 2005) ................................. 11

*Menkowitz v. Pottstown Mem'l Medial Ctr.*,
   154 F.3d 113 (3d Cir. 1998).................................................................................. 8

*Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*,
   721 F. Supp. 281 (S.D. Ala. 1989)....................................................................... 10

*Stevens v. Citigroup, Inc.*, No. 00-3815,
   U.S. Dist. LEXIS 18201 (E.D. Pa. Dec. 15, 2000) ............................................. 12

*O'Donnell v. Elgin, Joliet & Eastern Railway Co.*,
   338 U.S. 384 (1949).................................................................................................. 8

*Phillips v. Girdich*,
   408 F.3d 124 (2d Cir. 2005)..................................................................................... 9

*Pieco, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer System)*,
   173 B.R. 844 (S.D.N.Y. 1994)................................................................................. 6

*Ransom v. Marrazzo*,
   848 F.2d 398 (3d Cir. 1988)..................................................................................... 6

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000)................................................................................... 10

*Weston v. Pennsylvania*,
   251 F.3d 420 (3d Cir. 2001)..................................................................................... 9

## STATUTES

Fed. R. Civ. P. 8(a) ..................................................................................................... 9

Fed. R. Civ. P. 10(b) ................................................................................................... 8

Fed. R. Civ. P. 26(b) ................................................................................................. 14

## PRELIMINARY STATEMENT

THCI Company LLC ("THCI") submits this brief in opposition to the Motion to Dismiss and Quash filed by IHS Long Term Care Services, Inc. ("LTC"), the nine other plaintiffs who are subsidiaries of LTC (the "Nine Subsidiaries" and, with LTC, "Plaintiffs"), Abe Briarwood Corporation ("Briarwood"), and non-party witnesses Leonard Grunstein and Rubin Schron. Plaintiffs and Briarwood seek to dismiss six of the seven counterclaims asserted in THCI's Third Amended Counterclaims (the "Counterclaims"), and Messrs. Grunstein and Schron, ignoring the Court's practices and prior instructions, seek to quash two subpoenas.

The facts of this case, as alleged in the Counterclaims, are neither complicated nor susceptible to legitimate dispute. The Nine Subsidiaries occupy nine heath care facilities – nursing homes – located in Ohio, Pennsylvania, Alabama, Michigan, Missouri, and New Jersey, but Plaintiffs have failed to pay any rent to THCI since May 2005. Plaintiffs also have breached a master lease by failing to pay real estate taxes, penalties, and other charges, and Plaintiffs have failed to provide THCI with financial and operational information. Finally, on information and belief, Plaintiffs and Briarwood have engaged and continue to engage in a concerted effort to transfer assets to avoid their liabilities. Quite simply, Plaintiffs are squatting on THCI's property, and their conduct is causing damages (currently over $9 million) and irreparable harm to THCI.

Broadly stated, THCI's Counterclaims seek to recover for and enjoin Plaintiffs' ongoing failure to pay rent or provide financial or operational information and to recover for and enjoin alleged fraudulent transfers involving Plaintiffs and Briarwood. The Motion to Dismiss seeks to dismiss all but one of THCI's Counterclaims (the First Counterclaim), but the general lack of authority and internal inconsistencies suggest that the Motion is yet another attempt at

delay.  For example, LTC argues that THCI has failed to state a claim arising under guaranties, ignoring the obvious fact that Plaintiffs commenced this action seeking a declaratory judgment as to whether such guaranties exist.    Plaintiffs also are critical of the length of THCI's Counterclaim, yet they argue that THCI was required to plead separate claims for each of the nine facilities.  Plaintiffs and Briarwood do not, however, demonstrate that the Counterclaims are deficient.  At no point do they identify the elements necessary to allege a particular claim or demonstrate that THCI has failed to adequately allege the claim, arguing instead that the Counterclaims improperly combine claims under the laws of several different states.    THCI properly alleged each of its claims, and the Motion to Dismiss should be denied in its entirety.

The Motion to Quash filed by Messrs. Grunstein and Schron also is deficient and, more fundamentally, ignores the Court's prior rulings and violates the Court's practices.  During a conference on February 28, 2006, the Court heard argument on whether discovery should proceed and whether counsel was permitted to file an "omnibus" motion, including a motion to stay discovery and quash the subpoenas.  The Court rejected counsel's request for leave to file such a motion and ordered that discovery proceed.  The Court further instructed the parties that discovery issues should be addressed in a meet and confer among counsel and, if such efforts were unsuccessful, the parties could raise the issue in a letter rather than a motion.  Consistent with the Court's instructions and local practice, THCI offered to compromise by limiting the scope of the subpoenas, but Messrs. Grunstein and Schron rejected that offer and refused to respond to any discovery.  Messrs. Grunstein's and Schron's refusal to comply with the Court's practices and to respect the Court's instructions warrant the denial of their motion to quash.

## STATEMENT OF FACTS

This action involves nine health care facilities located in Ohio, Pennsylvania, New Jersey, Alabama, Michigan, and Missouri (the "Facilities"). (Counterclaims at ¶ 8). In or about 1988, the Nine Subsidiaries leased the Facilities pursuant to long-term leases, and Integrated Health Services, Inc. ("IHS"), formerly the parent company to each of the Nine Subsidiaries, guaranteed the Nine Subsidiaries' obligations under each lease (the "Guaranties"). (Counterclaims at ¶ 9). Pursuant to the Guaranties, IHS "absolutely and unconditionally" guaranteed "the full, faithful, and punctual performance, fulfillment, observance, and payment of all of the obligations and liabilities" of the Nine Subsidiaries under their leases. (Counterclaims at ¶¶ 9-11). The Guaranties specifically provide that IHS and its successors and assigns would be bound thereby. IHS reaffirmed its Guaranties in a 1993 Lease Modification Agreement (the "Lease Modification Agreement"), in which IHS acknowledged that "all of its obligations under the Lease Guaranties shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement." (Counterclaims at ¶¶ 13-14).

In February 2000, IHS and its subsidiaries, including the Nine Subsidiaries (collectively, the "Debtors"), filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (Counterclaims at ¶ 17). During the course of the bankruptcy, the Debtors sought to assume the leases for certain of the Facilities and to reject others. (Counterclaims at ¶19). THCI opposed the Debtors' motion, and the parties subsequently reached a settlement that was approved by and entered as an Order of the Bankruptcy Court (the "March 2002 Stipulation and Order"). (Counterclaims at ¶ 21). The March 2002 Stipulation and Order directed IHS, the Nine Subsidiaries, and THCI to enter into a "Master Lease" that would "amend and restate" the leases, the Lease Modification Agreement,

3

the March 2002 Stipulation and Order, and such other terms as to which the parties might agree in a single document. (Counterclaims at ¶ 23).

By early 2003, IHS had prepared a Chapter 11 plan of reorganization pursuant to which all of the assets and liabilities associated with its long term care business, including the capital stock of all of its long term care subsidiaries (including the Nine Subsidiaries), would be sold in a bid process. (Counterclaims at ¶ 26). Briarwood was the successful bidder for the IHS long-term care business, and Briarwood and IHS entered into a Stock Purchase Agreement dated January 28, 2003 (the "SPA"). (Counterclaims at ¶ 27). In accordance with section 5.9 of the SPA, IHS created a new subsidiary – LTC – to which IHS assigned its "assets and liabilities . . . including without limitation the capital stock of all of the Subsidiaries that conduct Seller's long-term care businesses . . ." The assets and liabilities of IHS that were transferred to LTC pursuant to the SPA included the Nine Leases and the Guaranties, each of which is identified in the SPA or the schedules to the SPA. (Counterclaims at ¶¶ 28-30).

Despite the March 2002 Stipulation and Order, Plaintiffs did not execute the "Master Lease." (Counterclaims at ¶ 31). Instead, at Briarwood's direction, IHS and the Nine Subsidiaries filed a motion to reject the nine leases. (Counterclaims at ¶ 32). In April 2003, the Bankruptcy Court determined that the Master Lease existed between THCI and the Nine Subsidiaries (the "April 2003 Order"). (Counterclaims at ¶¶ 34-35). The Bankruptcy Court subsequently confirmed IHS' plan of reorganization, which memorialized and confirmed the agreements resulting from Briarwood's successful bid and reaffirmed that the Debtors assumed the Leases pursuant to the March 2002 and April 2003 Orders. (Counterclaims at 39-41). Under the plan and the SPA, LTC succeeded to and became bound by the Guaranties, thus guaranteeing performance by the Nine Subsidiaries under the leases. (Counterclaims at ¶ 42). Indeed, as even

Plaintiffs acknowledge in their Petition for Declaratory Judgment, at the very least "a controversy exists as to whether the Guaranties exists with respect to the Master Lease, and whether the obligations of IHS, as guarantor, apply to Plaintiff LTC." (Petition (Docket No. 1) at ¶ 82). By Order dated March 21, 2006, the Court affirmed the April 2003 Order and, thereby, the existence of the Master Lease.

The Nine Subsidiaries, as controlled by Briarwood, continue to occupy the Facilities without paying rent, real estate taxes, or complying with any other obligations incident to their tenancy and the Master Lease. (Counterclaims at ¶¶ 55-59). Indeed, Plaintiffs have not made a single payment relating to any of the Facilities since May 2005, and they currently owe THCI more than $9,000,000 in back rent, which increases by approximately $1,000,000 each month. (Counterclaims at ¶ 55). Despite the fact that they never sought or obtained a stay of the April 2003 Order, Plaintiffs stopped paying rent based solely on their contention that, if their appeal was successful, they may not have owed the full amount required by the Master Lease. Given that the April 2003 Order has been affirmed, Plaintiffs' only defense no longer exists.

## ARGUMENT

I.    PLAINTIFFS' AND BRIARWOOD'S MOTION TO DISMISS THCI'S COUNTERCLAIMS SHOULD BE DENIED.

In ruling on a motion to dismiss, a court must assume the truth of the allegations and draw all reasonable inferences in favor of the non-moving party. *See Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). The Court must consider "'whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer.'" *Diebold Inc. v. Positran Mfg., Inc.*, No. 02-374 (GMS), 2002 U.S. Dist. Lexis 18993, *3 (D. Del. Oct. 4, 2002) (quoting

*Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir. 1988)).  A motion to dismiss should be granted only if it appears beyond a doubt that the non-moving party can prove no set of facts that will entitle it to relief on the claims alleged.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988); *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 426 (D. Del. 2003).

A.    The Fourth And Fifth Counterclaims State Claims Against LTC
      For Breach Of The Guaranties.

Despite its pending request for declaratory relief and the express allegations in the Counterclaims, LTC contends that THCI has failed to allege the existence of the Guaranties. Indeed, the Guaranties are a critical issue to Plaintiffs insofar as their strategy seems to be to occupy the Facilities while passing available assets that could satisfy their obligations to THCI upstream to LTC, Briarwood, and certain unidentified individuals and entities that may include Messrs. Grunstein and Schron.  As noted, this action commenced upon Plaintiffs' filing of a Petition for Declaratory Judgment and Other Relief, in which LTC acknowledged at least a controversy as to the existence of the Guaranties, and that issue is pending before the Court in cross-motions for summary judgment.[1]

Paragraphs 6 through 30 of THCI's Counterclaims set forth the mechanism by which IHS assumed the guaranty obligations of IHS and transferred those obligations to LTC.

---

[1]  Additional legal arguments refuting Plaintiffs' assertion that the Guaranties were not transferred to LTC have already been set forth at length in THCI's Memorandum of Law in Opposition to The Motion by Plaintiffs for Partial Summary Judgment and In support of the Cross-Motion by THCI for Partial Summary Judgment (the "Opposition") (Docket No. 75), which is currently pending before this Court.  For example, in its Opposition, THCI argues, *inter alia*, that the Guaranties form a single integrated agreement with the Master Lease and that the Debtors could not possibly have assumed the Master Lease without assuming the Guaranties.  (Opposition at 14-15 (citing to *In re Comdisco, Inc.*, 270 B.R. 909, 911 (Bankr. N.D. Ill. 2001); *Pieco, Inc. v. Atlantic Computer Sys.* (In re Atlantic Computer Sys.), 173 B.R. 844, 849 (S.D.N.Y. 1994)).  At the very least, the issue of whether the parties intended the Master Lease and Guaranties to form one integrated contract is a question of fact upon which the parties are entitled to discovery.  (Opposition at 17).  To avoid burdening the Court with unnecessary repetition of the arguments set forth in the Opposition, THCI hereby incorporates those arguments by reference.

Specifically, the Counterclaims allege as follows:  (1) IHS was the guarantor of the nine leases (Counterclaims at ¶¶ 7-10); (2) IHS agreed that successors and assigns of IHS would be bound by the Guaranties and that the Guaranties would survive IHS's bankruptcy (Counterclaims at ¶ 11); (3) IHS acknowledged that its obligations under the Guaranties remained in full force and effect in the Lease Modification Agreement (Counterclaims at ¶¶ 13-15); (4) IHS assumed the leases and the Guaranties during its bankruptcy in the March 2002 Stipulation and Order and the April 2003 Order (Counterclaims at ¶¶ 21-25, 34-36); and (5) the liabilities of IHS, including the Guaranties, were assigned to and assumed by LTC pursuant to the SPA and IHS's plan of reorganization (Counterclaims at ¶¶ 30, 40-42).   The Counterclaims clearly allege that the Guaranties were a liability of IHS, that they were an integral part of the leases, and that they were assigned by IHS and assumed by LTC pursuant to the SPA.

In addition to the allegations in the Counterclaims, the terms of the SPA demonstrate that the Guaranties were, in fact, transferred to LTC.  Section 3.9(b) of the SPA states that "except as set forth on Schedule 3.9(b), other than Permitted Encumbrances and Encumbrances that will be released or discharged pursuant to the Confirmation Order, neither [IHS] nor any of the Subsidiaries is a guarantor or otherwise is liable for any liability or obligation . . . of any other Person." Schedule 3.9(b) of the SPA refers back to Schedule 3.8(b), which expressly lists IHS as the guarantor of the leases incorporated into the Master Lease. (Alter Declaration, Exhibit A (SPA at § 3.9)).  The SPA (Schedule III) also lists excluded liabilities, but that list does not identify the leases or the Guaranties.  Thus, contrary to LTC's argument, the Counterclaims do allege that the Guaranties were a liability of IHS that was assigned to LTC pursuant to the SPA, and THCI certainly can clarify these allegations if there is any doubt as to the sufficiency of its pleading.

B.     The Counterclaims Do Not Improperly Combine Separate Claims.

Plaintiffs also challenge THCI's Counterclaims because certain claims may arise under the laws of six different states (the six states in which the nine Facilities are located) and "the elements and the defenses *may* be different." (Plaintiffs' Memo. at 6 (emphasis added)). For example, Plaintiffs state that THCI's claims against Briarwood should be dismissed because the laws relating to piercing the corporate veil of the different states "are going to be different, again requiring separate claims for relief," but Plaintiffs do not explain how those laws are different or why such unidentified differences should impact THCI's pleadings. (Plaintiffs' Memo. at 13).

Rule 10(b) of the Federal Rules of Civil Procedure requires that "[e]ach claim founded upon a separate transaction or occurrence . . . be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b). Not surprisingly, none of the cases cited by Plaintiffs and Briarwood stand for the proposition that a claim arising from the same facts against different defendants must be set forth separately. Instead, the cited cases stand for the rather unremarkable proposition that different claims (*i.e.*, negligence as opposed to fraud) should be pleaded separately. *See, e.g., O'Donnell v. Elgin, Joliet & Eastern Railway Co.*, 338 U.S. 384 (1949) (claim for negligence should be pleaded separately from claim under Federal Safety Appliance Act); *Guth v. Texas Co.*, 155 F.2d 563, 564 (7th Cir. 1946) (claims for negligence and accounting should be pleaded separately); *De Leys v. Keta Gas and Oil Co.*, 18 F.R.D. 353, 354 (W.D. Pa. 1955) (claims for defamation of title and interference with business relations should be pleaded separately).

Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain" statement of claims. *See Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir.

1998) ("a pleading generally need not *explicitly* allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recover"); *Enzo Life Sciences*, 295 F. Supp. 2d at 427. The Federal Rules of Civil Procedure contemplate that discovery will "flesh out the claims and issues in dispute." *Enzo Life Sciences*, 295 F. Supp. 2d at 429; *see also Phillips v. Girdich*, 408 F. 3d 124, 127 (2d Cir. 2005) ("[a]ll complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory"). Furthermore, Rule 8(a) requires only that a pleading provide notice of the claims being asserted. *See Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001) ("[c]omplaints need not plead law or match facts to every element of a legal theory" (internal quotations omitted)); *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("having stated a discrimination claim the complaint need not offer specifics about which rules of law, state or federal, racial discrimination offends"). In this case, the Facilities are located in six different states, but all are subject to the Master Lease. The Facilities' breaches of the Master Lease, and LTC's breaches of the Guaranty, all arise from the same set of facts (*i.e.*, Plaintiffs' failure to pay base rent and other charges and Plaintiffs' failure to provide THCI with financial and operational information). The Counterclaims clearly and efficiently state THCI's claims in accordance with Fed. R. Civ. P. 8(a).

Once again, Plaintiffs' real goal appears to be delay. Even if Plaintiffs were correct (they are not) that THCI's Counterclaims must be broken down by state, the remedy would be leave to file amended counterclaims. *See Foman v. Davis*, 371 U.S. 178 (1962) (holding that leave to amend should be granted and stating that "[i]t is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decision on the merits to be avoided on the

9

basis of mere . . . technicalities. . . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Such an amendment is unnecessary in this case, however, and the motion to dismiss on behalf of Plaintiffs and Briarwood based on joining various state law claims in one count should be denied.

        C.      <u>The Second Counterclaim States A Claim For Ejectment.</u>

Without offering any applicable legal authority, Plaintiffs contend that THCI's claim seeking eviction should be dismissed because "this Court may not deal with the local nature of the actions affecting possession of real property in other jurisdictions." (Plaintiffs' Memo. at 10). Plaintiffs do not provide any authority for the notion that state courts are vested with exclusive jurisdiction over ejectment claims and federal courts lack concurrent jurisdiction. To the contrary, federal courts have jurisdiction to hear claims for ejectment. *Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*, 721 F. Supp. 281, 282 (S.D. Ala. 1989) ("the rule has been firmly established that when the jurisdictional prerequisites provided by the Constitution and laws of the United States are present a state statute cannot place a limitation upon this jurisdiction . . . . A state court's jurisdiction to hear an unlawful detainer action has never been held to be exclusive." (citations and internal quotations omitted)).

Plaintiffs also assert that THCI's claim for eviction is improper because THCI has an adequate remedy at law, "namely summary ejectment proceedings" in state court. (Plaintiffs' Memo. at 9-10). The fact that THCI could have sought to eject each of the tenants in state court does nothing to divest THCI of its right to seek ejectment before this Court. *See id.* ("[t]his Court is not required to remand this action, because of specific state procedural rules"). As noted, although the Facilities are located in six different states, all are subject to the Master

Lease. Judicial efficiency and economy warrant disposition of THCI's claim for ejectment of all of the tenants pursuant to that Master Lease in this Court. *See, e.g., id.* at 282 (consolidating two eviction cases arising out of the same alleged breach of a commercial lease in order to prevent needless repetition or delay and promote judicial economy).

    D.  The Third Counterclaim States A Claim For Unjust Enrichment.

   In seeking to dismiss THCI's alternative claim for unjust enrichment, Plaintiffs seem to confuse the *remedy* of constructive trust, with the *claim* of unjust enrichment. A constructive trust is an equitable remedy which a court may grant if the court determines that a party has been unjustly enriched, but not all claims for unjust enrichment seek a constructive trust. *See Marion v. Benistar, Ltd.*, No. 03-4700, 2005 WL 563698, *1 (E.D. Pa. Mar. 10, 2005) ("A constructive trust is a remedy, not an independent cause of action."). In order to plead a claim for unjust enrichment in the six states in which the Facilities are located, a party must allege the knowing receipt of a benefit conferred by the party, the retention of which would be unjust unless payment for such benefit is made. *See, e.g., Allstate Ins. Co. v. Davidson Med. Group*, No. 01-5938, 2004 WL 2357797, *3 (E.D. Pa. Oct. 18, 2004). The Counterclaims allege that the Nine Subsidiaries have used and occupied the Facilities owned by THCI without paying base rent or other charges since at least May 2005. (Counterclaims at ¶¶ 55-61, 82). Thus, THCI has stated an alternative claim for unjust enrichment.

    E.  The Seventh Counterclaim States A Claim Against Briarwood.

   Finally, Briarwood argues that THCI's Seventh Counterclaim fails to state a claim because "the counterclaims here set forth have not pleaded a veil-piercing claim." (Plaintiffs' Memo. at 14). Even assuming that the substantive law of Delaware or Pennsylvania were to

govern THCI's claim, the cases relied upon by Briarwood do not support dismissal. In *Stevens v.
Citigroup, Inc.*, the court identified the following factors in determining whether to pierce the
corporate veil:  (i) gross undercapitalization of the relevant entity; (ii) failure to observe
corporate formalities, (iii) non-payment of dividends, (iv) siphoning of funds of the corporation
by the dominant stockholder, (v) non-functioning of other officers or directors, (vi) absence of
corporate records, and (vii) the fact that the corporation is merely a facade.  No. 00-3815, U.S.
Dist. Lexis 18201, at *14 (E.D. Pa. Dec. 15, 2000).  The court dismissed plaintiff's claim
because plaintiff failed to allege *any* of the above factors *and* failed to respond to the relevant
portion of defendants' motion to dismiss. *Id.* at *15-16.  In this case, THCI has alleged, among
other things, that Briarwood caused LTC and the Nine Subsidiaries to "transfer their assets and
funds to entities affiliated with Briarwood, thus leaving the Nine Subsidiaries and LTC
undercapitalized."  (Counterclaims at ¶¶ 111-13).  THCI also alleges that Briarwood has
commingled the property of the Nine Subsidiaries and LTC to further its own interests and that
neither LTC nor any of the Nine Subsidiaries maintain an independent corporate existence,
manage any properties, or actively conduct any business." (Counterclaim at ¶¶ 109-10).

Briarwood also relies on *Diebold Inc. v. Positran Mfg., Inc.*, 2002 U.S. Dist. Lexis
18993 at *5, for the proposition that "a plaintiff must plead specific factors such as
undercapitalization, or failure to observe corporate formalities, among other relevant factors, in
order to allege a claim for veil-piercing under Delaware Law." (Plaintiffs' Memo. at 15). The
Court's decision in *Diebold* does not stand for that proposition.  To the contrary, this Court listed
a number of factors (similar to those identified in *Stevens*) that a court should consider in
determining whether to pierce a corporate veil, but stated that the list of factors "is not
conjunctive, nor is it an exclusive list." *Diebold*, 2002 U.S. Dist. Lexis 18993 at *5.  Indeed, this

Court denied defendants' motion to dismiss in *Diebold* based upon allegations of only some of the seven factors. *Id.* at *5-6. As discussed, THCI has pleaded nearly all of the factors listed in *Stevens* and *Diebold*. Accordingly, Counterclaim-Defendants' Motion should be denied.

II.    THE MOTION TO QUASH SHOULD BE DENIED.

During a conference on February 28, 2006, this Court heard argument from counsel for Messrs. Schron and Grunstein (who also represents Plaintiffs and Briarwood) concerning whether discovery should proceed and whether counsel was permitted to file an "omnibus" motion including a motion to stay and quash subpoenas. (A copy of the transcript from that conference is attached as Exhibit A to the letter to the Court from Mr. Seitz dated March 14, 2006 (Docket No. 137)). This Court rejected Plaintiffs' request and stated, consistent with its instructions during an earlier conference on January 13, 2006, that it would "order and permit discovery to move forward." (Transcript at 15). The Court further advised counsel that the Court does not permit motions practice on discovery issues, explaining that "you don't have free leave to file motions seeking protection or compulsion of discovery." (Transcript at 15-16). After considering additional argument, the Court reiterated that Counterclaim-Defendants and Messrs. Schron and Grunstein "are not given leave to freely file so-called omnibus motions . . . ." (Transcript at 20).

Consistent with the Court's instructions and local practice, counsel for THCI expressed THCI's willingness to consider a reasonable compromise relating to the scope of the subpoenas directed to Messrs. Schron and Grunstein. (A copy of a letter dated March 13, 2006 from counsel for THCI is attached as Exhibit B to Mr. Seitz's letter (Docket No. 137). Although the Court clearly had instructed the parties to proceed with discovery, counsel for THCI nevertheless attempted to avoid a discovery dispute. Opposing counsel rejected any compromise

13

and instead elected to file a motion seeking the same relief that the Court already has denied and in a manner that the Court already has deemed improper. In addition to these procedural issues, the premise of the motion to quash – that THCI is prematurely seeking information that is not relevant absent the existence of a Master Lease – is rendered moot by this Court's recent Order affirming the April 2003 Order of the Bankruptcy Court which deemed the Master Lease to exist. Discovery concerning operation of the nursing homes pursuant to the Master Lease clearly is relevant, as is Plaintiffs' and Briarwood's efforts to avoid their financial obligations.

Finally, Rule 18(b) of the Federal Rules of Civil Procedure expressly contemplates the fraudulent conveyance claims brought by THCI against Briarwood, LTC, and the John Doe Defendants. *Graff v. Nieberg*, 233 F. 2d 860, 63-64 (7th Cir. 1956); *Combs v. Chambers*, 283 F. Supp. 295, 296-97 (N.D. Okla. 1968). Pursuant to the Federal Rules of Civil Procedure, THCI is permitted to engage in discovery relating to those claims. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."). Accordingly, the Motion to Quash should be denied.

## **CONCLUSION**

For all of the foregoing reasons, and for the reasons articulated by the Court during the parties' conference on February 28, 2006, THCI respectfully requests that the motion by Plaintiffs and Briarwood to dismiss and the motion by Messrs. Grunstein and Schron to quash be denied.

CONNOLLY BOVE LODGE & HUTZ LLP

_____
Collins J. Seitz, Jr. (Bar No. 2237)
Kevin F. Brady (Bar No. 2248)
P.O. Box 2207
1007 North Orange Street
Wilmington, DE 19899
(302) 658-9141

OF COUNSEL:

David S. Sager
Paul R. Marino
PITNEY HARDIN LLP
P.O. Box 1945
Morristown, NJ 07962
(973) 966-6300

*Attorneys for Defendant,*
*THCI Company LLC*

Dated:  March 27, 2006

## CERTIFICATE OF SERVICE

I certify that on March 27, 2006, copies of DEFENDANT'S BRIEF IN

OPPOSITION TO MOTION TO DISMISS AND QUASH were served on counsel of record as

follows:

By CM/ECF Service:

Richard William Riley, Esquire
Duane Morris LLP
100 North Market Street
Suite 1200
Wilmington, DE 19801

By E-mail:

Amos Alter, Esquire
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Amos.Alter@troutmansanders.com

Collins J. Seitz, Jr. (Bar No. 2237)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899