# UNREPORTED CASES

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2357797 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
ALLSTATE INSURANCE COMPANY, et al.,
Plaintiffs,
v.
DAVIDSON MEDICAL GROUP, et al., Defendants.
**No. Civ.A. 01-5938.**

Oct. 18, 2004.

Anthony R. Sherr, Joseph B. Mayers, Richard J.
Mennies, Mayers, Mennies & Sherr LLP, Blue Bell,
PA, for Plaintiffs.
Richard M. Meltzer, Schnader, Harrison, Segal &
Lewis, LLP, Andrew B. Shaw, Shaw and Roseman,
P.C., Mark E. Gottlieb, Rachel Volkman, Dilworth
Paxson, LLP, Philadelphia, PA, for Defendants.
Christopher Boucher, D.C., Norristown, PA, pro se.

MEMORANDUM AND ORDER
SCHILLER, J.
*1 Plaintiffs are twelve insurance companies who claim
that Defendants Joseph Davidson, Phyllis Davidson,
Christopher Boucher, Brian Torchin, and nine corporate
entities [FN1] conspired to defraud them by billing them
for excessive and unnecessary chiropractic services.
Presently before this Court is Plaintiffs' motion for
prejudgment disclosure of property and assets, an
equitable accounting, and a preliminary injunction
against Defendant Joseph Davidson. [FN2] Following a
hearing on September 30, 2004, and pursuant to Federal
Rule of Civil Procedure 52(a), the Court now enters the
following Findings of Fact and Conclusions of Law. For
the following reasons, Plaintiffs' motion is granted in
part and denied in part.

> FN1. The nine corporate Defendants are:
> Davidson Medical Group; Center City
> Medical, Inc.; North Philadelphia Medical,

Inc.; South Philadelphia Therapy; Strawberry
Mansion Medical, P.C.; West Philadelphia
Medical, Inc.; B.S.T. Enterprises, P.C.; Joseph
Davidson, P.C.; and Advanced Medical
Supply.

> FN2. Although Plaintiffs initially made their
> motion against all Defendants, Plaintiffs
> advised this Court on September 29, 2004 that
> they would be proceeding with their motion
> against Defendant Joseph Davidson only.

I. FINDINGS OF FACT

On November 28, 2001, Plaintiffs initiated this action
pursuant to the United States Racketeer Influenced and
Corrupt Organizations Act ("RICO"), Pennsylvania
statutory law, and federal and state common law.
Plaintiffs allege that Defendant Joseph Davidson
("Davidson") presided over and directed an enterprise
which engaged in fraudulent practices to obtain
payments from automobile insurance carriers. (Second
Am. Compl. ¶ 1.) Plaintiffs claim that Davidson, along
with the other named Defendants, created and submitted
medical documentation to Plaintiffs that contained, inter
alia, falsified examination reports, billing for
unnecessary treatment, and billing for treatment not
rendered. (Id. ¶ 4.) Plaintiffs further claim that, through
illegal money laundering and transaction structuring,
Davidson has systematically secreted and dissipated the
assets he fraudulently obtained from Plaintiffs. (Id. ¶
205-17.) In addition to equitable and injunctive relief,
Plaintiffs seek compensatory damages in excess of
$3,000,000 .00. (Id. ¶ 241.)

On August 5, 2004, Plaintiffs filed the instant motion
for prejudgment disclosure, an equitable accounting,
and a preliminary injunction freezing Davidson's assets.
Plaintiffs have produced documentary evidence in
support of their motion, including the affidavit of
Defendant Christopher Boucher and the expert report of
CPA Thomas Nihill. (Pls.' Mot. for Prejudgment
Disclosure of Property and Assets and for an Equitable
Accounting and Preliminary Injunction Ex. A (Boucher

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Aff.), Ex. B (Expert Rep.) [hereinafter "Pls.' Mot."].)
Plaintiffs have offered the Boucher affidavit and Nihill
report as evidence that Davidson engaged in the
fraudulent activities alleged in the complaint. (*Id.* at
6-7.) Davidson has failed to dispute any of this
evidence. Instead, because Davidson is currently under
investigation in a related criminal matter, he has
asserted his privilege against self-incrimination
pursuant to the Fifth Amendment of the United States
Constitution. (Ans. at 1.)

On September 30, 2004, the Court conducted a hearing
on Plaintiffs' motion. At that hearing, Davidson's
counsel indicated that Davidson is currently negotiating
a plea agreement with the Government, and as such, he
will continue to assert his Fifth Amendment privilege in
this action. The parties did stipulate, however, that for
purposes of the instant motion, the damages incurred by
Plaintiffs as a result of Davidson's allegedly wrongful
conduct are valued at $1,800,000.00. The parties also
agreed that should this Court decide to issue a
preliminary injunction freezing Davidson's assets, the
injunction need not apply to Davidson's ordinary living
expenses.

## II. CONCLUSIONS OF LAW

**\*2** Plaintiffs have moved for: (1) a preliminary
injunction freezing Davidson's assets; and (2) an order
compelling Davidson to disclose any property or assets
in which he has an interest and produce an equitable
accounting of the assets he has allegedly dissipated
since 1996. For the following reasons, Plaintiffs' request
for a preliminary injunction is granted, and Davidson is
hereby enjoined (either directly or through any other
persons, trustees, nominees, or assigns) from
concealing, dissipating, converting, conveying, selling,
transferring, gifting, destroying, disposing, assigning,
encumbering or secreting his assets, outside of ordinary
living expenses, up to the sum of $1,800,000.00. In all
other respects, Plaintiffs' motion is denied.

### A. Preliminary Injunctive Relief

#### 1. *Standard of Review*

A party seeking a preliminary injunction must show that
it is likely to succeed on the merits and that it will suffer
irreparable harm absent injunctive relief. *Doran v.
Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 45
L.Ed.2d 648 (1975). If relevant, a district court should
also take into account whether there will be greater
harm to the nonmoving party if the injunction is
granted, and whether granting the injunction is in the
public interest. *Adams v. Freedom Forge Corp.,* 204
F.3d 475, 484 (3d Cir.2000). As a threshold matter, a
court may only issue a preliminary injunction freezing
a defendant's assets if the plaintiff has: (1) asserted a
cognizable equitable claim; (2) demonstrated a
sufficient nexus between that claim and specific assets
of the defendant which are the target of the injunctive
relief; and (3) shown that the requested interim relief is
a reasonable measure to preserve the status quo in aid
of the ultimate equitable relief claimed. [FN3] *F.T. Int'l,
Ltd. v. Mason,* No. Civ. A 00-5004, 2000 U.S. Dist.
LEXIS 14979, at \*4, 2000 WL 1514881, at \*1 (E.D.Pa.
Oct.11, 2000) (citations omitted); *see also United
States ex rel. Rahman v. Oncology Assocs.,* 198 F.3d
489, 496-97 (4th Cir.1999).

FN3. There is some authority to suggest that
the civil RICO claims alleged by Plaintiffs are
also a proper basis upon which to grant a
prejudgment asset freeze. *See, e.g., Nat'l Org.
for Women, Inc. v. Scheidler,* 267 F.3d 687,
697 (7th Cir.2001) (holding that RICO statute
allows private plaintiffs to seek injunctive
relief), *rev'd on other grounds,* 537 U.S. 393,
123 S.Ct. 1057, 154 L.Ed.2d 991 (2003);
*Motorola Credit Corp. v. Uzan,* 202
F.Supp.2d 239, 244 (S.D.N.Y.2002) (same);
*but see Religious Tech. Ctr. v. Wollersheim,*
796 F.2d 1076, 1088 (9th Cir.1986) (holding
that only government has right to seek
equitable relief under RICO statute). Because
I find that injunctive relief is permissible
pursuant to Plaintiffs' unjust enrichment claim,
I decline to address the question of whether
Plaintiffs could also obtain injunctive relief
under RICO.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2357797 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

Plaintiffs have satisfied the three threshold requirements for freezing Davidson's assets before a final judgment. First, Plaintiffs have asserted a claim for unjust enrichment (Second Am. Compl. ¶ 223), which is a cognizable equitable claim. *Bunnion v. Consol. Rail Corp., 108 F.Supp.2d 403, 427 (E.D.Pa.1999).* Second, this equitable claim has a clear nexus to the assets Plaintiffs now move to freeze, for Plaintiffs have alleged that those very assets have unjustly enriched Davidson and ultimately seek to secure them through a constructive trust. (Second Am. Compl. ¶ 218-25); *see Mason, 2000 WL 1514881, at *2* ("Plaintiff seeks a constructive trust on the funds to be targeted by the injunctive relief, and thus a sufficient nexus exists."). Finally, the requested asset freeze is a reasonable measure to preserve the status quo, because it would further the Court's ability to grant a constructive trust over those assets at a later date. *Rahman, 198 F.3d at 498* ("To impose a constructive trust over assets obtained through fraud requires preservation of the assets, and to be able to void fraudulent transfers of assets obtained through fraud likewise requires that those assets be preserved."). Accordingly, Plaintiffs are entitled to a prejudgment freeze of Davidson's assets, provided they have also made "the traditional showing necessary to obtain preliminary injunctive relief." [FN4] *Mason, 2000 WL 1514881, at *1.*

FN4. Davidson's contention that there is no legal basis for an asset freeze is utterly without merit. Davidson maintains that the relief sought by Plaintiffs is "in its nature a request for a fraudulent debtor's attachment," which is no longer authorized under Pennsylvania law. (Def.'s Resp. to Pls.' Mot. at 2.) However, "[w]hile it is true that [an] asset freeze has an effect comparable to that of an attachment, it is not an attachment." *Fed. Trade Comm'n v. H.N. Singer, Inc., 668 F.2d 1107, 1112 (9th Cir.1982).* The mere fact that an attachment may be unavailable as a remedy does not mean that an equitable asset freeze is also unavailable. *Id.*

2. *Elements of a Preliminary Injunction* [FN5]

FN5. Davidson's assertion of his Fifth Amendment privilege in lieu of challenging Plaintiffs' evidence does not prevent this Court from considering whether Plaintiffs have met their burden on the elements of a preliminary injunction. *See, e.g., Singer, 668 F.2d at 1113-14* (upholding preliminary injunction freezing defendants' assets where defendants did not challenge evidence supporting freeze order and later asserted privilege against self-incrimination).

a. *Likelihood of Success on the Merits*

*3 Plaintiffs have established that they are likely to succeed on the merits on their claim for unjust enrichment. Under Pennsylvania law, the elements of unjust enrichment are that: (1) plaintiff conferred benefits upon defendant; (2) defendant realized those benefits; and (3) defendant accepted and retained the benefits under circumstances in which it would be inequitable for defendant to retain them without payment of value. *Bunnion, 108 F.Supp.2d at 427.* Inequitable circumstances include those where a defendant acts wrongly or fraudulently in appropriating a plaintiff's property. *Mason, 2000 WL 1514881, at *1* (citations omitted).

In this case, the affidavit of Defendant Christopher Boucher is undisputed evidence that Plaintiffs conferred benefits on Davidson which Davidson realized, accepted, and retained under inequitable, fraudulent circumstances. Boucher, the named treasurer of one of Davidson's chiropractic businesses (Boucher Aff. ¶ 6), affirms that he and Davidson conducted businesses "which systematically engaged in the submission through the United States Mail of false, fraudulent and exaggerated medical records, invoices and documentation to Plaintiff insurance companies which fraudulently induced Plaintiffs to pay medical bills" (*id.* ¶ 31). Boucher gives a detailed description of the manner in which he and Davidson carried out this scheme (*id.* ¶¶ 8-31), stating that "Davidson added services to patient bills and charged for the services although the services were not actually provided to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2357797 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

patients" (*id.* ¶ 13) and that "Davidson attempted to make treatment for each patient to last at least six months to maximize revenue obtained from the Plaintiff insurance companies" (*id.* ¶ 20). Boucher further affirms that "Davidson acted willingly and intentionally to deceive the Plaintiff insurance companies." (*Id.* ¶ 17.) This unchallenged affidavit is enough to establish a likelihood of success on the merits on Plaintiffs' equitable claim. *See Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 173 (3d Cir.2001) ( "[O]n an application for preliminary injunction, the plaintiff need only prove a prima facie case, not a certainty that he or she will win.").

### b. *Irreparable Injury*

Plaintiffs' undisputed documentary evidence also establishes that, absent injunctive relief, Plaintiffs are likely to suffer irreparable injury. The probability of an unsatisfied money judgment can constitute irreparable injury. *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 205-06 (3d Cir.1990). Plaintiffs have produced sufficient evidence to show that any money judgment entered against Davidson is likely to go unsatisfied because Davidson has been dissipating assets that he fraudulently obtained from Plaintiffs. In his affidavit, Boucher affirms that "Davidson engaged in illegal money laundering through the use of bank and brokerage accounts established in my name." (Boucher Aff. ¶ 32.) Boucher describes the money laundering scheme at length (*id.* ¶¶ 36-106), noting that "[b]etween August 1999 and June 2002 [,] Davidson transferred and converted to cash approximately $2,260,900 [,] mostly through numerous transactions of approximately $9,900 dollars" (*id.* ¶ 34). Boucher's statements are corroborated by the Nihill report, which examines the relevant bank and brokerage records and concludes that "there is substantial evidence that Dr. Davidson engaged in a scheme to convert funds generated from his chiropractic offices into cash." (Pls.' Mot. Ex. B at 4.) This undisputed expert report, along with Boucher's undisputed affidavit, establishes that a money judgment against Davidson is likely to go unsatisfied, and in turn, satisfies Plaintiffs' burden on the element of irreparable injury. *See Mason,* 2000 WL 1514881, at *2 (holding defendants' diversion and transfer of millions of dollars

sufficient to show irreparable injury to plaintiff).

### c. *Harm to the Defendant and the Public Interest*

*4 Consideration of the relative harm to the Defendant and the public interest also weighs heavily in favor of Plaintiffs. *See Adams,* 204 F.3d at 484 (noting district court should consider these two elements where relevant). First, the irreparable harm Plaintiffs would suffer in the absence of a preliminary injunction substantially outweighs the harm to Davidson from the preliminary injunction ordered today, which is narrowly tailored to reflect the value of Plaintiffs' damages and which grants Davidson an exception for ordinary living expenses. *See Hoxworth,* 903 F.2d at 207 ("Of course a preliminary injunction causing serious injury to defendants can be justified if it inflicts no more harm than reasonably necessary to prevent plaintiffs who are likely to prevail on the merits from suffering an irreparable injury."). Moreover, issuing a preliminary injunction against Davidson will not adversely affect the public interest. To the contrary, "the prevention of unjust enrichment by means of fraud or misappropriation, even that affecting only private entities, is in the general public interest." *Mason,* 2000 WL 1514881, at *2.

Therefore, Plaintiffs' request for a preliminary injunction is granted.

### B. Equitable Accounting and Disclosure of Assets

Plaintiffs have also moved for prejudgment disclosure and an equitable accounting of Davidson's assets. In general, parties may obtain discovery on any matter that is relevant to their claims or defenses. *See* Fed. R. Civ. P. 26(b)(1). Furthermore, a plaintiff may obtain an equitable accounting where the defendant possesses money or property which, because of some particular relationship between himself and the plaintiff, he is obliged to surrender. *Am. Air Filter Co. v. McNichol,* 527 F.2d 1297, 1300 (3d Cir.1975). Accordingly, Plaintiffs contend that they are entitled to an order compelling Davidson to disclose his assets and produce an equitable accounting of the assets which he has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2357797 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

allegedly dissipated.

Because Davidson has asserted his Fifth Amendment rights, however, the Court cannot issue such an order. Davidson's invocation of his Fifth Amendment privilege against self-incrimination is proper in this case, for the privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory, in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding." *United States v. Balsys,* 524 U.S. 666, 672, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998) (citations and quotations omitted). As a result, Davidson cannot be compelled to participate in the discovery process in a manner that would amount to self-incrimination.[FN6] *See Rogers Transp., Inc. v. Stern,* 763 F.2d 165, 166 (3d Cir.1985) ("Although the contents of a document may not be privileged under the fifth amendment, the act of producing or authenticating the document may be privileged."). Moreover, Davidson cannot be compelled to create an equitable accounting, as the process of making and producing an accounting would be testimonial and potentially self-incriminating. *See Hughes Tool Co. v. Meier,* 489 F.Supp. 354, 372-73 (D.Utah 1977) (holding defendant could not constitutionally be compelled to produce equitable accounting over invocation of Fifth Amendment privilege).

FN6. Notably, the Fifth Amendment does not excuse Davidson from the discovery process altogether. The parties have already been directed to engage in discovery (*see* Scheduling Order of June 25, 2004), and to the extent that doing so does not violate his Fifth Amendment rights, Davidson is expected to comply with that directive. For instance, Davidson may be able to produce records that have been created by third parties. *See Singer,* 668 F.2d at 1114 (upholding district court's order directing defendant to produce third party documents, as production under compulsion of order would not necessarily constitute privileged authentication of documents).

*5 Therefore, Plaintiffs' request for prejudgment disclosure and an equitable accounting is denied.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for prejudgment disclosure of property and assets, an equitable accounting, and a preliminary injunction against Defendant Joseph Davidson is granted in part and denied in part. An appropriate Order follows.

### ORDER

AND NOW, this 18th day of October, 2004, upon consideration of Plaintiffs' Motion for Prejudgment Disclosure of Property and Assets and For An Equitable Accounting and Preliminary Injunction (Document No. 52), Defendant Joseph Davidson's response thereto, and following a hearing on September 30, 2004, it is hereby ORDERED that Plaintiffs' Motion is GRANTED in part and DENIED in part, as follows:
1. Plaintiffs' request for a preliminary injunction is GRANTED as to Defendant Joseph Davidson only. Davidson is hereby enjoined (either directly or through any other persons, trustees, nominees, or assigns) from concealing, dissipating, converting, conveying, selling, transferring, gifting, destroying, disposing, assigning, encumbering or secreting his assets, outside of ordinary living expenses, up to the sum of $1,800,000.00. The term "assets" includes any personal property, real property, intangible property, rights under any insurance policy, investments, rights to any income, earnings or property pursuant to a will or trust, goods, credit, rights to receive income and/or any other thing of value in which Davidson possesses any ownership, legal interest or equitable interest.
2. In all other respects, Plaintiffs' motion is DENIED.

E.D.Pa.,2004.
Allstate Ins. Co. v. Davidson Medical Group
Not Reported in F.Supp.2d, 2004 WL 2357797 (E.D.Pa.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2357797 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents (Back to top)

• 2:01CV05938 (Docket) (Nov. 28, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2002 U.S. DIST. LEXIS 18993

**DIEBOLD INCORPORATED, Plaintiff, v. POSITRAN MANUFACTURING, INC., LARRY KEENEY, and JOSEPH UHL, Defendants.**

**C.A. No. 02-374 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 18993**

**October 4, 2002, Decided**

**DISPOSITION:** [*1] Defendant's renewed motion to dismiss denied.

**COUNSEL:** For Diebold Incorporated, PLAINTIFF: Frederick L Cottrell, III, Richards, Layton & Finger, Wilmington, DE USA.

For Positran Manufacturing, Inc, Larry Keeney, DEFENDANTS: William D Sullivan, Elzufon Austin Reardon Tarlov & Mondell, PA, Wilmington, DE USA. Charles J Brown, III, Elzufon Austin Reardon Tarlov & Mondell, PA, Wilmington, DE USA. Arthur G Connolly, Jr, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Joseph UHL, DEFENDANT: William D Sullivan, Elzufon Austin Reardon Tarlov & Mondell, PA, Wilmington, DE USA. Arthur G Connolly, Jr, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Positran Manufacturing, Inc, COUNTER-CLAIMANT: William D Sullivan, Elzufon Austin Reardon Tarlov & Mondell, PA, Wilmington, DE USA. Charles J Brown, III, Elzufon Austin Reardon Tarlov & Mondell, PA, Wilmington, DE USA. Arthur G Connolly, Jr, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Diebold Incorporated, COUNTER-DEFENDANT: Frederick L Cottrell, III, Richards, Layton & Finger, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

[*2] **I. INTRODUCTION**

The plaintiff, Diebold, Inc. ("Diebold"), filed the above-captioned action in the United States District Court for the Northern District of Ohio, alleging, *inter alia*, trademark infringement and trade secret misappropriation. In January 2002, the Ohio court transferred this action to the District of Delaware. Thereafter, Diebold amended its complaint to include a claim for patent infringement. Diebold also asserted that Larry Keeney ("Keeney") and Joseph Uhl ("Uhl"), as Positran's CEO, Treasurer and co-owners, were individually liable under each of the claims listed in its amended complaint.

Presently before the court is Positran Manufacturing, Inc.'s motion to dismiss Keeney and Uhl. For the reasons that follow, the court will deny this motion. n1

n1 On September 26, 2002, the court ruled that Positran held a valid license to produce Mosler products ordered under an agreement between the parties. The court was unable to determine on a motion for summary judgment what the scope of that license was. Thus, the present memorandum and order is relevant only insofar as a jury finds that Positran exceeded the scope of its license.

[*3]

**II. STANDARD OF REVIEW**

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993). Thus, in deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

2002 U.S. Dist. LEXIS 18993, *

Civil Procedure, the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir.1997). The court will only dismiss a complaint if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. [*4] '" *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

## III. DISCUSSION

Positran asks the court to dismiss the amended complaint against Keeney and Uhl because it maintains that conclusory allegations with respect to piercing the corporate veil are not sufficient to survive a motion to dismiss. Diebold responds that its third amended complaint pleads facts sufficient to pierce the corporate veil. Diebold alternatively argues that piercing the corporate veil is not necessary to find liability under any of its theories. At this early stage of the litigation, however, it is unnecessary for the court to make a determination as to whether piercing the corporate veil is indeed a prerequisite. This is so because the court concludes that, even [*5] were such a piercing required, Diebold has alleged sufficient facts to withstand a motion to dismiss.

The United States Court of Appeals for the Third Circuit has set forth several factors for a court to consider in determining whether to pierce a corporate veil. *See United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981). These consideration are as follows: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *See id.* Moreover, the situation must present an element of injustice or fundamental unfairness. *See id.* However, the *Pisani* list of factors is not conjunctive, nor is it an exclusive list. *See Galgay v. Gangloff*, 677 F. Supp. 295, 299-300 (M.D. Pa. 1987).

In the present case, Diebold has alleged that Positran is undercapitalized and that it is now near bankruptcy. To that end, Diebold alleges that Positran's [*6] now-defunct Manufacturing Agreements with Mosler accounted for roughly eighty percent of Positran's operating revenues. It further alleges that Keeney and Uhl were informed directly of their infringing activities. However, despite such information, they replied that they would "do what they had to do." Diebold further alleges that Keeney and Uhl directly and personally benefitted from decisions they made, as Positran's officers, to continue manufacturing and selling Mosler's patented products. According to Diebold, those decisions were to the detriment of Positran as a corporate entity, but solely in Keeney and Uhl's personal financial interests as the only stockholders.

The court concludes that these allegations suffice to withstand a motion to dismiss for failure to state a claim. In so holding, however, the court expresses no opinion as to the ultimate merits of Diebold's claims.

## IV. CONCLUSION

Because Diebold has alleged sufficient facts to withstand a motion to dismiss, Positran's motion must be denied.

1. Positran's Renewed Motion to Dismiss (D.I. 27) is DENIED.

2. Positran's Motion to Dismiss (D.I. 9) is declared MOOT.

Dated: October 4, 2002

Gregory M. Sleet [*7]

UNITED STATES DISTRICT JUDGE

Westlaw.

Not Reported in F.Supp.2d                                                                                  Page 1
Not Reported in F.Supp.2d, 2005 WL 563698 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
David H. MARION, Receiver for Robert L. Bentley,
Bentley Financial Services, Inc. and Entrust Group
v.
BENISTAR, LTD., Benistar 419 Plan Services, Inc.,
Benistar 419 Advantage Benefit Plan and Trust and
Benistar Administrative Services, Inc.
**No. Civ.A. 03-4700.**

March 10, 2005.

David D. Langfitt, Jeanne L. Bakker, Montgomery
McCracken Walker & Rhoads, LLP, Philadelphia, PA,
for Plaintiffs.
Aaron C.F. Finkbiner, III, Francis Gregory Lastowka,
Robert C. Heim, Dechert LLP, Ira B. Silverstein,
Thorp, Reed & Armstrong, LLP, Philadelphia, PA, for
Defendants.

*MEMORANDUM AND ORDER*

FULLAM, J.

**\*1** Plaintiff is the appointed Receiver for the Bentley
entities, that were involved in an extensive Ponzi
scheme. Plaintiff has been charged with the recovery of
assets transferred by the Bentley entities to others prior
to the Receivership order.

Defendants are a multi-employer welfare benefit plan
and the entities that run it. The Second Amended
Complaint alleges that the Bentley entities transferred
over $195,000 to defendants for insurance coverage,
and asserts that those funds should be returned. The
complaint alleges four counts: Count I, Unjust
Enrichment; Count II, Constructive Trust; Count III,
Fraudulent Conveyance; Count IV, Rescission.
Defendants have now moved to dismiss the complaint
in its entirety. For the reasons that follow, that motion
will be granted in part and denied in part.

The unjust enrichment claim asserted in Count I will be
dismissed, since that doctrine is not applicable when the
relationship between the parties is based upon a written
agreement. *See Roberts v. Fleet Bank,* 432 F.3d 260,
270-71 (3d Cir.2003).

The claim based upon the assertion of a constructive
trust, in Count II, will also be dismissed. A constructive
trust is a remedy, not an independent cause of action.
*Kaiser v. Stewart,* 1997 WL 476455 (E.D.Pa. Aug.19,
1997).

Count III asserts claims based upon the Pennsylvania
Fraudulent Transfer Act, 12 Pa.C.S. § 5104. Plaintiff
alleges that the Bentley entities were insolvent, and that
the transfers to defendant were made with intent to
defraud, and were not supported by reasonably
equivalent value. Since it is undisputed that the Bentley
entities were operating a Ponzi scheme, Mr. Bentley's
intent to defraud can be presumed. *Missal v.
Washington,* 1998 U.S. Dist. LEXIS 6016 (D.D.C.
April 17, 1998) ("Because a Ponzi scheme is, by
definition, unable to repay all creditors, any transfer
from the scheme to a creditor is necessarily made with
intent to hinder the rights of some other creditor ...").
Count III will not be dismissed.

In Count IV, plaintiff asserts a claim for rescission.
Plaintiff has adequately alleged the essential elements
of such a claim. Count IV will not be dismissed.

An Order follows.

*ORDER*

AND NOW, this 10th day of March, 2005, upon
consideration of defendant's motion to dismiss the
second amended complaint and the responses thereto,
IT is ORDERED:
1. Counts I and II are dismissed.
2. In all other respects the motion is DENIED.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 563698 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**


E.D.Pa.,2005.
Marion v. Benistar, Ltd.
Not Reported in F.Supp.2d, 2005 WL 563698 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:03cv04700 (Docket) (Aug. 14, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2000 U.S. DIST. LEXIS 18201

**OTIS STEVENS, JR. INDIVIDUALLY, AND AS REPRESENTATIVE OF A
CLASS OF PERSONS SIMILARLY SITUATED Plaintiff, v. CITIGROUP, INC.
CITICORP CITIMORTGAGE, INC., and DOES ONE THROUGH FIFTY Defen-
dants.**

**CIVIL ACTION NO. 00-3815**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

**2000 U.S. Dist. LEXIS 18201**

**December 15, 2000, Filed**

**DISPOSITION:** [*1] Motion Denied.

**COUNSEL:** For OTIS STEVENS, JR., PLAINTIFF:
STUART A. EISENBERG, MCCULLOUGH &
EISENBERG, P.C., WARMINSTER, PA USA.

For CITIGROUP, INC., CITICORP, CITIMORTGAGE,
INC., DEFENDANTS: BARRY L. COHEN, THROP
REED & ARMSTRONG, PHILA, PA USA. ANDREW
J. PETRIE, PETRIE, BAUER, ET AL., DENVER, CO
USA. SCOTT R. BAUER, M. SHANE EDGINGTON,
DENVER, CO USA.

**JUDGES:** Clarence C. Newcomer, S.J.

**OPINIONBY:** Clarence C. Newcomer

**OPINION:**

**MEMORANDUM**

Newcomer, S.J.

**I. BACKGROUND**

The Court now considers defendants' Motion to
Dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6), Motion to Dismiss All Class Allegations, and
Motion for Award of Attorney's Fees and Costs. The
Court recites the following facts based upon plaintiffs'
Complaint, facts which this Court accepts as true for the
purposes of its decision today.

Plaintiff Otis Stevens, Jr. ("Stevens") is a citizen of
the Commonwealth of Pennsylvania, and resident of the
Borough of Darby, Delaware County. Stevens is a mort-
gager of the defendants.

Defendant Citigroup, Inc. ("Citigroup") is a financial
holding company and parent and sole shareholder of de-
fendant Citicorp. Additionally, Citigroup allegedly [*2]
exercises full dominion and control over defendant Citi-
mortgage, Inc., as well as Citicorp. As part of its "Citi-
banking North America" operation, Citigroup finances
and services mortgages. Citigroup is a Delaware corpora-
tion with its principal place of business in New York.

Defendants Does are persons plaintiffs believe are
involved in the scheme the Court now describes.

Plaintiff claims that defendants are liable for 1) vio-
lation of 12 U.S.C. § 2605, the Real Estate Settlement
Procedures Act ("RESPA"); 2) breach of contract; 3)
breaching its obligations of good faith and fair dealing;
4) unjust enrichment; 5) constructive fraud; 6) misrepre-
sentation; 7) fraudulent misrepresentation; and 8) unfair
trade practices.

To support those claims, plaintiff alleges that defen-
dants failed and or refused to continue making payments
for hazard insurance, chosen by its customers, from an
escrow account established by Citigroup with mortgagor
funds paid by the mortgagor. Instead, defendants pur-
chased "Forced Order" hazard insurance financed and/or
serviced by defendants at a higher cost, and higher com-
mission for self benefit. Defendants allegedly purchased
the forced [*3] order insurance even though the cus-
tomer purchased policies were still in effect and current.

Plaintiff further contends that the mortgage instru-
ments require that the mortgagor provide sufficient in-
surance coverage, and defendants are only authorized to
purchase reasonable forced placed coverage if the mort-
gagor fails to do so. Accordingly, plaintiff claims that
defendants purchased forced placed coverage at exces-
sive premium cost despite the availability of suitable,

lower priced insurance, and even though it was aware of former or existing policies on the mortgaged properties. In return for these purchases, defendants obtained higher percentage commissions, and services, such as clerical work involved in tracking insurance coverage on all of defendants' mortgagors, from the insurers and their agents. These services were funded out of the proceeds of the forced order policies.

Additionally, when defendants' purportedly purchased the forced order insurance, they failed to first release the escrowed accounts to the customer placed insurer. They further failed to notify the mortgagor of the exact reason that it force placed the hazard insurance, and did not inform the insured that [*4] the existing insurance had been terminated or jeopardized because of defendants' failure to release the escrow to the mortgagor's carrier.

Plaintiff has filed its case on behalf of the following class: all of defendants' mortgagors who have been charged forced order insurance premiums in the United States during the six years preceding the filing of the Complaint in this action, and who have not received a full refund.

Plaintiff alleges that defendants employed practices that coerced the class members into making forced order insurance payments. The plaintiff further claims that the class numbers in the tens of thousands and that there are substantial questions of law and fact common to the class. Plaintiff's Complaint also articulates seven questions of law and fact that are common to the class, while explaining that plaintiff's claims are typical of those belonging to the class. Plaintiff's Complaint asserts that the plaintiff would adequately and fairly represent the interests of the class, and argues that plaintiff's case is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b).

With respect to defendants' actions directed toward Stevens, [*5] Stevens alleges the following: On January 31, 1986, plaintiff gave a mortgage to Residential Financial Corp. in return for a loan to purchase his residence at 442 Darby Terrace, Darby, Pa., 19023. On that same day, Residential Financial Corp. assigned the mortgage to Citicorp, with Citigroup as the mortgage servicer.

Paragraph four of the mortgage requires the mortgagor to maintain hazard insurance naming the mortgagee as a loss payee. Accordingly, plaintiff maintained his own purchased insurance, and defendants paid the hazard insurance premiums from plaintiff's escrow from 1986 to 1991. The annual premium for this insurance ranged from $ 159.00 to $ 242.00.

Thereafter, on February 10, 1992, plaintiff filed for relief under 11 U.S.C. chapter 13. From the date plaintiff

filed for bankruptcy, defendants ceased communication with plaintiff. Consequently, defendants did not notify plaintiff of changes in his current mortgage, mortgage requirements, any denial of acceptance of Stevens' mortgagor-purchased hazard insurance, and any other matter disaffecting plaintiff. Additionally, in 1992, defendants failed to make any payment on behalf of Stevens' to pay for his [*6] placed hazard insurance.

Beginning in 1993, defendants then began paying for force-placed, mortgagee purchased, hazard insurance ranging from $ 957.00 in 1994 to $ 1,779.00 in 1993. Defendants allegedly never advised plaintiff of its payment for such insurance, nor did it provide him with notice that it was no longer paying his purchased insurance from his account.

On July 28, 1997, defendants transferred and assigned its right, title and interest in Steven's mortgage to Union Planters Mortgage Corporation. However, defendants did not notify plaintiff of this transfer.

In light of the foregoing facts, the Court now considers defendants' motions.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss

#### 1. Legal Standard

When evaluating a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept each allegation in a well pleaded complaint as true. See Albright v. Oliver, 510 U.S. 266, 268, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994). Additionally, a Motion to Dismiss should only be granted if the Court finds that no proven set of facts would entitle the plaintiff to recovery under the filed pleadings. [*7] See Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Finally, under a motion to dismiss pursuant to 12(b)(6), the defendant carries the burden of establishing that no claim has been presented. See Curry v. Huyett, 1994 U.S. Dist. LEXIS 3976, *2, NO. CIV.A. 93-6649, 1994 WL 111357, at *1 (E.D.Pa., Mar 30, 1994).

#### 2. Plaintiff's Claims

Defendants first argue that all of plaintiff's claims, except his RESPA claim, are barred by the filed rate doctrine. Under the filed rate doctrine, where regulated companies are required by federal or state law to file proposed rates or charges with a regulatory agency, any rate approved by the agency "is per se reasonable and unassailable in judicial proceedings brought by ratepayers." Wegoland Ltd. v. NYNEX Co., 27 F.3d 17, 18 (2d Cir. 1994); see also, Taffet v. Southern Co., 967 F.2d 1483, 1490 (11th Cir. 1992)(en banc)("The filed rate doctrine recognizes that where a legislature has estab-

lished a scheme for. . . rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme.").

Pennsylvania law requires that all rates for policies of property [*8] and casualty insurance be filed with the Department of Insurance. See 40 PA. CONS. STAT. § 710-5(a)(1999). One purpose of this rate filing requirement is to address the possibility that an insurer might charge "excessive rates". See id. § 710-5(c)(2)(I).

Defendants characterize plaintiff's Complaint as one that alleges that defendants purchased insurance on plaintiff's behalf at "excessive rates". However, the Court cannot conclude that defendants' characterization of plaintiff's Complaint is an accurate one. Upon a review of the facts plaintiff has alleged, it appears to the Court that plaintiff does not challenge the mortgagee purchased, hazard insurance as excessive. Rather, plaintiff alleges that the defendants' decision to purchase mortgagee purchased hazard insurance at a rate that far exceeded the mortgagor purchased hazard insurance without notice to the plaintiff was a breach of the mortgage contract, and was an action taken in violation of defendants' obligation to proceed with good faith and fair dealing.

In support of their Motion, defendants rely upon this Court's decision in Stevens v. Union Planter's Corporation et al., No. Civ. 00-1695, (E.D.Pa. August 20, 2000) [*9] to support their Motion to Dismiss in this case. In that case, the plaintiff n1 argued that the force placed insurance premium defendants charged plaintiff was excessive. Thus, when examining plaintiff's Complaint it was clear that plaintiff challenged the excessiveness of the insurance premiums. However, in this case, plaintiff does not appear to challenge the excessiveness of any one rate of insurance. Instead, plaintiff challenges the way in which the defendants' chose the insurance at issue. Thus, the Court will not dismiss all of plaintiff's claims except his RESPA claim at this time. n2

n1 The plaintiff in that case was the same plaintiff as in this case.

n2 While the Court will not dismiss plaintiff's Complaint at this juncture, should it become more clear that plaintiff's merely challenge the excessiveness of the mortgagee placed hazard insurance, the parties may confront this issue again on summary judgment.

Next, defendants seek to dismiss plaintiffs RESPA claims. First, plaintiff claims that [*10] defendants' failure to notify Stevens that defendants transferred his mortgage on July 28, 1997 violated 12 U.S.C. §

2605(b)(2)(A). n3 Second, plaintiff claims that when Citigroup did not make timely payments of insurance premiums from Stevens' funded escrow account, it violated 12 U.S.C. § 2605 (g) n4 .

n3 12 U.S.C. § 2605(b)(2)(A) provides that:

Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

n4 12 U.S.C. § 2605(g) provides that:

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

[*11]

Defendants contend that plaintiff's RESPA claims fail to plead the existence of actual damages. As this Court has previously held, and other Courts in this district have held, a plaintiff cannot proceed on RESPA claims without alleging some actual damage attributable to defendant's violation of the statute. See Stevens v. Union Planter's Corporation et al., No. Civ. 00-1695, at 10 (E.D.Pa. August 20, 2000); Cortez v. Keystone Bank, Inc., 2000 U.S. Dist. LEXIS 5705, No. 98-2457, 2000 WL 536666, at *1 (E.D.Pa., May 03, 2000). Here, plaintiff fails to explain the damages he incurred flowed directly from defendants' alleged nondisclosure.

Plaintiff moves the Court to grant him leave to amend his Complaint for a second time if the Court finds that he has not pled his RESPA damages with sufficient particularity. A party may amend a "pleading once as a matter of course at any time before a responsive pleading

is served...otherwise a party may amend the party's pleading only by leave of court." FED.R.CIV.P. 15(a). Additionally, "leave shall be freely given when justice so requires." Id. The Third Circuit has explained that "prejudice to the non-moving party is the touchstone for the denial [*12] of an amendment." Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). If no prejudice exists, denial must be based upon bad faith, dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment. See Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981), cert. denied, 455 U.S. 1018, 72 L. Ed. 2d 136, 102 S. Ct. 1714 (1982).

There is no question that plaintiff knew that he had to plead actual damages under RESPA. Indeed this Court dismissed plaintiff's RESPA's Complaint in Stevens v. Union Planter's Corporation et al., for this very reason, and gave plaintiff fifteen days to properly amend his Complaint in that case. See Stevens v. Union Planter's Corporation et al., No. Civ. 00-1695, at 10 (E.D.Pa. August 20, 2000). Plaintiff never amended his Complaint, and this Court subsequently dismissed plaintiff's Complaint. Here, after defendants' originally moved to dismiss plaintiff's Complaint on September 25, 2000, plaintiff amended his Complaint [*13] instead of answering defendants' motion. Defendants made the same "actual damages" argument in their September 25, 2000 motion, but plaintiff seemingly ignored defendants' argument, and this Court's prior holdings, yet now seeks to amend his Complaint for a second time. Under the circumstances, the Court will not permit plaintiff to amend his Complaint to cure his RESPA claims.

Defendants further seek to dismiss plaintiff's claims against Citigroup and Citicorp because they argue plaintiff's Complaint does not allege facts to support piercing the corporate veil of Citimortgage. Plaintiff does not respond to this portion of defendants motion.

Generally, courts recognize and uphold the corporate entity unless specific, unusual circumstances call for an exception. See Arch v. American Tobacco Co., Inc., 984 F. Supp. 830, 839 (E.D.Pa. 1997). To warrant piercing the veil, a plaintiff must demonstrate "complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988). [*14] The factors that must be considered to determine if the corporate veil should be pierced include: gross under-capitalization, failure to observe corporate formalities, non-payment of dividends, siphoning of funds of the corporation by the dominant stockholder,

non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade. See id. (citing American Bell Inc. v. Federation of Telephone Workers, 736 F.2d 879, 886 (3d Cir. 1984)).

As defendants correctly note, plaintiff does not allege any of the above factors in his Complaint. Instead, plaintiff merely claims that:

> CITIGROUP exercises full dominion and control over CITICORP AND CITIMORTGAGE, INC., with common officers, directors and integrated operations over the activities of the various "segments" and "units", including, but not limited to, the mortgage financing and servicing divisions of CITIGROUP.

Accordingly, after reviewing plaintiff's Complaint, the relevant law, and defendants' contention that plaintiff's Complaint fails to allege sufficient fact to pierce the corporate veil, this Court shall dismiss plaintiff's claims against [*15] Citigroup and Citicorp. n5

> n5 Moreover, because plaintiff failed to timely respond to this portion of defendants' motion, the Court further grants defendants motion to dismiss Citigroup and Citicorp as uncontested pursuant to Local Rule of Civil Procedure 7.1.

Finally, defendants argue that plaintiff's claim of fraud should be dismissed because those allegations do not satisfy Federal Rule of Civil Procedure 9(b), which provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

FED.R.CIV.P. 9(b). Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage. See Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992) (citing Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983). [*16]

Plaintiff apparently concedes, and this Court finds, that his Complaint does not set forth the elements of fraud with sufficient particularity. Instead, plaintiff requests that the Court grant him leave to amend his Com-

plaint to clarify his fraud claim. Unlike plaintiff's request to amend his RESPA claim, this Court has not previously dismissed one of plaintiff's Complaints for failing to plead fraud with particularity. Nonetheless, the fact remains that plaintiff has already amended his Complaint once in the face of a motion to dismiss plaintiff's fraud allegations. Because plaintiff has already amended his Complaint in response to defendants' motion to dismiss plaintiff's fraud allegations, plaintiff's attempt to now admit his Complaint is still deficient and to amend his Complaint for a second time, is unwarranted. Thus, the Court will dismiss plaintiff's fraud claims, and deny plaintiff leave to amend his fraud claims.

## B. Defendants' Motion to Dismiss All Class Allegations

Defendants also move the Court to dismiss plaintiff's class allegations because plaintiff has not yet filed a motion to certify a class, nor has plaintiff moved for more time to file a motion [*17] to certify a class.

Pursuant to Federal Rule of Civil Procedure 23(c)(1):

> As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

FED.R.CIV.P. 23(c)(1).

In accordance with the Federal Rules of Civil Procedure, this District's Local Rules of Civil Procedure provide:

> Within ninety (90) days after the filing of a complaint in a class action, unless this period is extended on motion for good cause appearing, the plaintiff shall move for a determination under subdivision (c)(1) of Fed.R.Civ.P. 23, as to whether the case is to be maintained as a class action.

LOC.R.CIV.P. 23.1 (c).

Defendants argue that because Stevens filed his Complaint on July 27, 2000, his motion to certify a class was due by October 25, 2000. Thus, defendants claim that Stevens class allegations should be dismissed as untimely.

As plaintiff correctly notes, numerous courts have held that failure to comply with the Local Rule in and of itself does not constitute grounds for denying [*18] a motion to certify a class action. See McHenry v. Bell Atlantic Corp., 1998 U.S. Dist. LEXIS 12733, *22, NO. CIV. A. 97-6556, 1998 WL 512942, at *8 (E.D.Pa., Aug 19, 1998); Robert Alan Insurance Agency v. Girard Bank, 107 F.R.D. 271, 274 (E.D.Pa.1985); Pabon v. McIntosh, 546 F. Supp. 1328, 1331-32 (E.D.Pa. 1982); Muth v. Dechert, Price & Rhoads, 70 F.R.D. 602, 606 (E.D.Pa. 1976). Instead, there must also be a showing of prejudice to the defendants or members of the class. See Herskowitz v. Nutri/System, Inc., 1986 U.S. Dist. LEXIS 17104, *8, 1986 WL 13546, at *2 (E.D.Pa., Dec 02, 1986); Muth, 70 F.R.D. at 606.

Here, defendants have not demonstrated any prejudice to themselves or to the class members. Indeed, defendants have not even filed an answer in response to plaintiff's Complaint. Plaintiff filed its Amended Complaint on October 26, 2000 pursuant to Federal Rule of Civil Procedure 15(a). Thus, arguably, plaintiff has until about January 26, 2000 to certify his case as a class action.

Next, the Court finds defendants' argument  -that plaintiff's counsel is inadequate as class counsel   - unpersuasive.

## C. Defendants' Motion for Award  [*19]   of Attorney's Fees and Costs

Defendants' final motion is for an award of attorney's fees and costs incurred in moving to dismiss plaintiff's Complaint pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (West 2000).

Under that section, a finding of willful bad faith on the part of the offending lawyer is a prerequisite for imposing attorney's fees. See Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1190 (3d Cir. 1989); Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers, 1997 U.S. Dist. LEXIS 4845, *14, NO. CIV.A. 96-1381, 1997 WL 185935, at *5 (E.D.Pa. Apr

2000 U.S. Dist. LEXIS 18201, *

09, 1997). In this case, and especially because the Court has not dismissed plaintiff's Complaint in its entirety, the Court does not find that plaintiff's counsel has acted in willful bad faith. [*20] Consequently, the Court will not grant defendants' Motion for Attorney's Fees.

An appropriate Order will follow.

Clarence C. Newcomer, S.J.