UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THCI COMPANY LLC,<br><br>Defendant,<br><br>v.<br><br>ABE BRIARWOOD CORPORATION and JOHN DOES 1-10,<br><br>Additional Counterclaim Defendants. | Civil Action No. 04-910 (GMS) |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION</u>**

OF COUNSEL:
PITNEY HARDIN LLP
David S. Sager
P.O. Box 1945
Morristown, NJ 07962-1945
(973) 966-6300

DATED: April 3, 2006

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Kevin F. Brady (Bar No. 2248)
1007 North Orange Street
Wilmington, DE 19801
(302) 658-9141

*Attorneys for Defendant
THCI Company LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ................................................................. 2

ARGUMENT .................................................................................................................. 4

    THCI IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
    DECLARING THAT THE MASTER LEASE IS TERMINATED
    AND THAT THE NINE SUBSIDIARIES ARE REQUIRED TO
    VACATE THE FACILITIES ................................................................................ 4

CONCLUSION ............................................................................................................... 9

i

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................4

*Carrasco v. Klein*,
   381 F. Supp. 782 (E.D.N.Y. 1974) ............................................................................6

*Family Kingdom, Inc. v. EMIF New Jersey Ltd. Partnership*,
   225 B.R. 65 (Bankr. D.N.J. 1998) .............................................................................5

*Federal Trade Comm'n v. Engage-A-Car Servs., Inc.*,
   No. 86-3758, 1986 WL. 15066 (D.N.J. Dec. 18, 1986).............................................7

*Fireman's Ins. Co. of Newark, N.J. v. DuFresne*,
   676 F.2d 965 (3d Cir.1982)........................................................................................4

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
   279 F. Supp. 2d 526 (D. Del. 2003)...........................................................................8

*GFL Advantage Fund, Ltd. v. Colkitt*,
   272 F.3d 189 (3d Cir. 2001)...................................................................................4, 5

*Horowitz v. Fed. Kemper Life Assurance Co.*,
   57 F.3d 300 (3d Cir. 1995).....................................................................................4, 5

*Marsellis-Warner Corp. v. Rahens*,
   51 F. Supp. 2d 508 (D.N.J. 1999) ..............................................................................8

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..................................................................................................4

*Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*,
   721 F. Supp. 281 (S.D. Ala. 1989)........................................................................6, 7

*Olympic Junior, Inc. v. David Crystal, Inc.*,
   463 F.2d 1141 (3d Cir. 1972).....................................................................................5

*Quantum Corp. Funding, Ltd. v. Assist You Home
Health Care Services of Va., L.L.C.*,
   144 F. Supp. 2d 241 (S.D.N.Y. 2001)........................................................................8

*S. Park Assocs., L.L.C. v. Renzulli*,
   94 F. Supp. 2d 460 (S.D.N.Y. 2000).........................................................................6

*Tripoli Co., Inc. v. Wella Corp.*,
   425 F.2d 932 (3d Cir. 1970).......................................................................................5

## STATUTES

Fed. R. Civ. P. 56(c) ................................................................................................4

**PRELIMINARY STATEMENT**

Defendant THCI Company LLC ("THCI") respectfully submits this brief in support of its motion for partial summary judgment and a permanent injunction enjoining the continued occupancy by the Nine Subsidiaries[1] of nine nursing home facilities owned by THCI and located in six different states (the "Facilities"). Specifically, THCI seeks an Order requiring the Nine Subsidiaries to vacate the nursing homes within thirty (30) days in a manner appropriate to the continuation of patient care.

The relief requested by THCI is necessary and appropriate because the Nine Subsidiaries have not paid any rent since May 2005 and currently owe THCI approximately $9 million in base rent and back taxes. Furthermore, as Plaintiffs' counsel readily admitted during the parties' recent conference, Plaintiffs do not intend to cure their existing defaults or to comply with the terms of the Master Lease in the future: "[B]eginning April 1 we will be paying rent at a rate of approximately two-thirds, almost exactly two-thirds of this rent called for under the master lease. We are not paying any more simply because we can't. You can't squeeze blood from a stone." There simply is no dispute that there is a Master Lease governing the Nine Subsidiaries' occupancy of the Facilities, that the Nine Subsidiaries are in material breach of the Master Lease based on, among other defaults, their failure to pay rent, and that the Nine Subsidiaries have neither the ability nor the intention to satisfy their outstanding rent obligation or to pay full rent going forward. The Nine Subsidiaries have been squatting on THCI's property for long enough.

---

[1] The "Nine Subsidiaries" consist of plaintiffs Integrated Health Services of Cliff Manor, Inc., Integrated Health Services at Riverbend, Inc., Integrated Health Services at Somerset Valley, Inc., Alpine Manor, Inc., Briarcliff Nursing Home, Inc., Integrated Health Group, Inc., Spring Creek of IHS, Inc., Firelands of IHS, Inc., and Elm Creek of IHS, Inc.

The Nine Subsidiaries do not dispute any of these facts. Indeed, they stridently admit them. Nevertheless, the Nine Subsidiaries refuse to vacate the Facilities, thus necessitating this motion, based on a technical defense in a long series of attempts at delay. The Nine Subsidiaries now contend that this case "must" be remanded because this Court no longer has jurisdiction over this case. The Nine Subsidiaries' statement of the law is simply wrong. Even assuming that all of the issues "relating to" the bankruptcy had been resolved (which THCI disputes), this Court has the discretion to continue to exercise its jurisdiction and, more importantly, to redress the fundamental unfairness resulting from the Nine Subsidiaries' disregard for their rent obligation imposed by the parties' agreement and by order of the United States Bankruptcy Court as affirmed by this Court.[2]

## STATEMENT OF UNDISPUTED FACTS

The relevant facts are undisputed. The Nine Subsidiaries currently are occupying the Facilities pursuant to a master lease (the "Master Lease") deemed to exist by Order of the United States Bankruptcy Court for the District of Delaware entered on April 22, 2003 (the "April 2003 Order") and affirmed by the Court on March 21, 2006. Pursuant to its terms, the Master Lease shall, among other things:

(a) Be a single triple net lease.

(b) Provide that the base rent for all of the Leased Properties in the aggregate shall be $8,100,000 per annum.

(c) Provide for escalations of 2.5% per annum.

(Declaration of Warren D. Cole ("Cole Decl.") at ¶ 4). The monthly base rent for the Facilities, exclusive of taxes and other charges, is currently $709,171.88 ($8,510.062.50 annually), and the

---

[2] Plaintiffs rejected THCI's request to assert their jurisdiction defense by way of opposition to THCI's motion, thus necessitating two motions and six briefs.

2

Nine Subsidiaries also are responsible for all expenses, including real estate taxes. (Cole Decl. at ¶ 6). Despite these obligations, the Nine Subsidiaries have not paid any rent to THCI and currently owe at least $7.8 million in base rent (not including interest) and real estate taxes in the amount of at least $900,000 (not including interest). (Cole Decl. at ¶¶ 8-9).

THCI has provided written notice to the Nine Subsidiaries of their defaults under the Master Lease. (Cole Decl. at ¶ 13). In addition, THCI has demanded that the Nine Subsidiaries surrender the Facilities to THCI in accordance with the Master Lease on terms that would affect a smooth transition and ensure the health and well-being of the residents of the nursing home Facilities. (Cole Decl. at ¶ 13).[3] Despite demand from THCI, the Nine Subsidiaries failed to cure their defaults under the Master Lease, and failed to vacate the Facilities. (Cole Decl. at ¶ 14). The Nine Subsidiaries also have failed and refused to transfer the relevant licenses, permits, and contracts necessary for THCI to assume control of operations at the Facilities and have, in fact, attempted to prevent THCI from doing so, in breach of the Master Lease. (Cole Decl. at ¶ 14).

On February 9, 2006, THCI filed its Third Amended Counterclaims in this action seeking, among other things, (i) judgment against the Nine Subsidiaries granting amounts due and owing under the Master Lease, and (ii) an Order (a) declaring that the Nine Leases are terminated and that THCI is entitled to possession of the Facilities to be delivered in a manner appropriate to the continuation of patient care, (b) permanently restraining and enjoining the Nine Subsidiaries and all those who act in concert or participation with them from occupying the Facilities, and (c) granting a writ of eviction of the Nine Subsidiaries from the Facilities.

---

[3] Pursuant to the Master Lease, the Nine Subsidiaries are obligated to use their best efforts to transfer to THCI all licenses, operating permits, and other governmental authorizations which may assist THCI in operating each Facility upon a termination. (Cole Decl. at ¶ 14, Exhibit A (Elm Creek Lease at § 38.2)).

3

## ARGUMENT

### THCI IS ENTITLED TO PARTIAL SUMMARY JUDGMENT DECLARING THAT THE MASTER LEASE IS TERMINATED AND THAT THE NINE SUBSIDIARIES ARE REQUIRED TO VACATE THE FACILITIES.

A party seeking summary judgment bears the burden of proving that it has established all of the elements of its case entitling it to judgment in its favor and that there is no genuine issue of material fact in dispute. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment should be granted if, "after drawing all reasonable inferences from the record in the light most favorable to [the non-moving party], 'there is no genuine issue as to any material fact' and [the moving party] is 'entitled to judgment as a matter of law.'" *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(c)). "Facts that could alter the outcome are 'material,' . . . and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. *See Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982) ("Rule

56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions."); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment."); *Tripoli Co., Inc. v. Wella Corp.*, 425 F.2d 932, 935 (3d Cir. 1970) (holding that to defeat summary judgment motion, "a party must now come forward with affidavits setting forth specific facts showing that there is a genuine issue for trial").

The Nine Subsidiaries concede both their failure to pay rent for the past ten (10) months and their intention to pay only two-thirds of the required rent beginning in April 2006. Pursuant to the Master Lease and well-settled law, failure to pay rent, if not cured within seven (7) days of receipt of notice of default, constitutes a default under the lease. (Cole Decl. at ¶ 7). By failing and refusing to pay any rent since May 2005, the Nine Subsidiaries are in material breach of the Master Lease, and there can be no genuine issue of material fact that the Master Lease is terminated[4] *See GFL Advantage Fund*, 272 F. 3d at 198; *Horowitz*, 57 F.3d at 302, n. 1. *See also Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship*, 225 B.R. 65, 72 (Bankr. D.N.J. 1998) (holding that lessor was entitled to and did effectively terminate the lease due to the tenant's failure to pay rent); Restatement (Second) of Property (Landlord and Tenant) § 12.1 (1977) ("Except to the extent the parties to a lease validly agree otherwise, if there is a breach of the tenant's obligation to pay the rent reserved in the lease, the landlord may . . . terminate the lease if the rent that is due is not paid promptly after a demand on the tenant for the rent, unless equitable considerations justify extending the time for payment.").

---

[4] Elm Creek Lease at § 16.1 ("If any . . . 'Event of Default' occur[s] . . . [THCI] may terminate this lease by giving Lessee not less than ten (10) days' Notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease."). (Cole Decl., Exhibit A (Elm Creek Lease at § 16.1)).

The Nine Subsidiaries' breach is not in dispute, yet they refuse to vacate the Facilities and contend that "[i]f [THCI] doesn't wish to evict us, we are in the premises under a lease." (Transcript from March 29, 2006 Conference at 9). Although they do not offer any substantive defense, in yet another attempt at delay, Plaintiffs contend that having decided the related appeal, the Court has been divested of jurisdiction over this action and must remand it to Missouri state court. As THCI will demonstrate more fully in its response to Plaintiffs' motion to remand, this Court continues to have jurisdiction and the authority to enjoin the Nine Subsidiaries' continued occupancy. *S. Park Assocs., L.L.C. v. Renzulli*, 94 F. Supp. 2d 460, 462 (S.D.N.Y. 2000) (exercising jurisdiction over eviction action where diversity of citizenship and amount in controversy requirements were satisfied); *Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*, 721 F. Supp. 281, 282 (S.D. Ala. 1989) ("the rule has been firmly established that when the jurisdictional prerequisites provided by the Constitution and laws of the United States are present a state statute cannot place a limitation upon this jurisdiction . . . . A state court's jurisdiction to hear an unlawful detainer action has never been held to be exclusive") (citations and internal quotations omitted); *Carrasco v. Klein*, 381 F. Supp. 782, 786 (E.D.N.Y. 1974) (exercising pendent jurisdiction over wrongful eviction claim).

This Court has presided over the dispute for more than two years and recently affirmed the existence of the Master Lease on which THCI's remedies are based. Accordingly, this Court is in the best position to adjudicate the dispute. In addition, although the Facilities are located in six different states, all are subject to the Master Lease -- a Master Lease which the parties stipulated and agreed to during the Nine Subsidiaries' bankruptcy case in the Bankruptcy Court for the District of Delaware and which was deemed to exist by Order of that Court. Judicial efficiency and economy warrant a determination under the Master Lease as to all of the

Nine Subsidiaries in this Court. *See, e.g., Mutual First*, 721 F. Supp. at 283-84 (consolidating two eviction cases arising out of the same alleged breach of a commercial lease in order to prevent needless repetition or delay and promote judicial economy).

As detailed above, the Nine Subsidiaries have breached the Master Lease by, among other things, failing to pay rent. Pursuant to Article 16 of each of the original leases, as incorporated by the Master Lease, a failure to pay rent when due, which remains uncured within seven days, constitutes an event of default. (Cole Decl. at ¶ 7, Exhibit A (Elm Creek Lease at § 16.1(b)). THCI provided written default notices to the Nine Subsidiaries in accordance with the Master Lease, but the Nine Subsidiaries have failed to cure their defaults. (Cole Decl. at ¶¶ 13-14). The Nine Subsidiaries are required to surrender the Facilities upon demand by THCI and ten (10) days prior notice. (Cole Decl. at ¶ 12, Exhibit A (Elm Creek Lease at § 16.2(c)).[5] By letter dated July 11, 2005 and in subsequent pleadings and motion, THCI has demanded that the Nine Subsidiaries vacate the Facilities in a manner that would affect a smooth transition and ensure the health and well-being of the residents, but the Nine Subsidiaries have refused.

This Court has the authority to evict the Nine Subsidiaries and require them to vacate the Facilities in a manner appropriate to the smooth transition of the Facilities and the well-being of the patients at the Facilities. *See Federal Trade Comm'n v. Engage-A-Car Servs., Inc.*, No. 86-3758, 1986 WL 15066, at *3 (D.N.J. Dec. 18, 1986) ("Unless otherwise provided by statute, all the inherent equitable powers of the District court are available for the proper and complete exercise of that jurisdiction. . . . Power is thereby resident in the district Court, in exercising this jurisdiction, 'to do equity and to mold each decree to the necessities of the

---

[5] Elm Creek Lease at § 27.1 ("Unless Lessor shall convey any of the Leased Property to Lessee, Lessee will, upon the expiration or prior termination of the Term, vacate and surrender the Leased Property to Lessor in the condition in which the Leased Property was originally received from Lessor. . . ."). Indeed, the Nine Subsidiaries have hindered THCI's ability to take over operation of the Facilities. (Cole Decl. at ¶ 14).

7

particular case.'") (quoting *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1433, 1434 (11th Cir. 1984)). Given the public interest in ensuring responsible operation of nursing home facilities and appropriate care for the elderly, and the irreparable harm THCI will suffer if the Nine Subsidiaries are allowed to continue to operate the facilities without paying rent (after admitting that they do not have the ability to pay monthly rent, let alone a multi-million dollar judgment) such an order is appropriate. *See Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003) (granting permanent injunction after considering "the adequacy of the legal remedy, irreparable injury, whether the public interest would be served, and the hardship on the parties and third parties.") (internal quotations omitted). *See also Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of Va., L.L.C.*, 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) (granting preliminary injunction and observing that "[p]reliminary injunctions are . . . appropriate to thwart a defendant from making a judgment uncollectible.") (citations omitted); *Marsellis-Warner Corp. v. Rahens*, 51 F. Supp. 2d 508, 531 (D.N.J. 1999) ("In this regard, a money judgment which is uncollectible is not an adequate remedy at law. . . This Circuit has recognized [that] the unsatisfiability of a money judgment can constitute irreparable injury.") (internal citations and quotations omitted).

## CONCLUSION

For the foregoing reasons, THCI respectfully requests that the Court enter an Order evicting the Nine Subsidiaries and requiring them to vacate the Facilities in a manner and providing such cooperation as is necessary to maintain proper patient care.

CONNOLLY BOVE LODGE & HUTZ LLP

_____
Collins J. Seitz, Jr. (Bar No. 2237)
Kevin F. Brady (Bar No. 2248)
1007 North Orange Street
Wilmington, DE 19801
Tel: (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant*
*THCI Company LLC*

OF COUNSEL:

David S. Sager
Paul R. Marino
PITNEY HARDIN LLP
P.O. Box 1945
Morristown, New Jersey  07962
Tel: (973) 966-6300
Fax: (973) 966-1015

DATED: April 3, 2006