# EXHIBIT A

50

# FACILITY LEASE

## AND

# SECURITY AGREEMENT

### MEDITRUST OF OHIO, INC.

Lessor/Secured Party

### AND

### ELM CREEK OF IHS, INC.

Lessee/Debtor

Dated December 7, 1990

For Premises Known as Elm Creek Nursing Center
Town of West Carrollton
Montgomery County, Ohio

TABLE OF CONTENTS

1.   LEASED PROPERTY; TERM..........................  1

     1.1   Leased Property..........................  1
     1.2   Term.....................................  2

2.   DEFINITIONS....................................  2

3.   RENT...........................................  16

     3.1   Rent for Land, Leased Improvements,
           Related Rights, Fixtures and
           Landlord's Personal Property.............  16
     3.2   Quarter Calculation and Payment of
           Additional Rent; Annual Reconciliation...  17
     3.3   Confirmation of Additional Rent..........  19
     3.4   Additional Charges.......................  20
     3.5   Equipment Reserves.......................  20
     3.6   Net Lease................................  21

4.   IMPOSITIONS; TAXES; UTILITIES;
     INSURANCE PAYMENTS.............................  21

     4.1   Payment of Impositions...................  21
     4.2   Notice of Impositions....................  22
     4.3   Adjustment of Impositions................  22
     4.4   Utility Charges..........................  22
     4.5   Insurance Premiums.......................  22
     4.6   Deposits.................................  22

5.   NO LESSEE TERMINATION; ABATEMENTS OF RENT.....  24

     5.1   No Lessee Termination....................  24
     5.2   Abatement of Rent Procedures.............  25

6.   OWNERSHIP OF LEASED PROPERTY;
     PERSONAL PROPERTY; SECURITY INTEREST; REMOVAL
     AND REPLACEMENT OF PERSONAL PROPERTY;
     EQUIPMENT RESERVES; ADDITIONAL SECURITY.......  25.

     6.1   Ownership of Leased Property.............  25
     6.2   Personal Property; Security Interest;
           Removal of Personal Property.............  25
     6.3   Equipment Reserves for Replacement
           of Personal Property.....................  27
     6.4   Letter of Credit; Certificate of Deposit.  27
     6.5   Pledge Agreement.........................  28

(i)

7.    CONDITION AND USE OF THE LEASED PROPERTY;
      MANAGEMENT AGREEMENTS; FINANCIAL COVENANTS....  29

      7.1   Condition of the Leased Property.........  29
      7.2   Use of the Leased Property...............  30
            7.2.1. Obligation to Operate............  30
            7.2.2. Permitted Uses; Compliance
                   With Insurance Requirements.......  31
      7.3   Management Agreements....................  31
      7.4   Financial Covenants......................  31
      7.5   No Default...............................  32

8.    LEGAL AND INSURANCE REQUIREMENTS.............  32

      8.1   Compliance with Legal and
            Insurance Requirements...................  32
      8.2   Legal Requirement Covenants.............  32
      8.3   Permitted Contest of Certain
            Legal Requirements.......................  32

9.    REPAIRS; RESTRICTIONS........................  33

      9.1   Maintenance and Repair...................  33
      9.2   Encroachments; Restrictions.............  34

10.   CAPITAL ADDITIONS............................  35

      10.1  Construction of Capital Additions........  35
      10.2  Capital Additions Financed by Lessee.....  36
      10.3  Capital Additions Financed by Lessor.....  37
      10.4  Non-Capital Additions....................  40
      10.5  Salvage..................................  40

11.   LIENS........................................  40

12.   PERMITTED CONTESTS...........................  41

13.   INSURANCE....................................  42

      13.1  General Insurance Requirements..........  42
      13.2  Replacement Cost.........................  43
      13.3  Additional Insurance.....................  44
      13.4  Waiver of Subrogation....................  44
      13.5  Form of Insurance........................  44
      13.6  Increase in Limits.......................  44
      13.7  Blanket Policy...........................  45
      13.8  No Separate Insurance....................  45

14.   FIRE AND CASUALTY............................  45

      14.1  Insurance Proceeds.......................  45

(ii)

14.2    Reconstruction in the Event of Damage
         or Destruction Covered by Insurance......   46
14.3    Reconstruction in the Event of Damage
         or Destruction Not Covered by Insurance..   47
14.4    Lessee's Property........................   47
14.5    Restoration of Lessee's Property.........   47
14.6    Abatement of Rent........................   48
14.7    Damage Near End of Term..................   48
14.8    Termination of First Refusal.............   48
14.9    Waiver...................................   48

15.    CONDEMNATION................................   48

15.1    Definitions..............................   48
15.2    Parties' Rights and Obligations..........   49
15.3    Total Taking.............................   49
15.4    Partial Taking...........................   49
15.5    Restoration..............................   50
15.6    Award Distribution.......................   50
15.7    Temporary Taking.........................   50

16.    DEFAULT.....................................   50

16.1    Events of Default........................   50
16.2    Certain Remedies.........................   54
16.3    Damages..................................   56
16.4    Waiver...................................   57
16.5    Application of Funds.....................   58
16.6    Failure to Conduct Business..............   58
16.7    Costs of Enforcement.....................   58

17.    LESSOR'S RIGHT TO CURE......................   58

18.    PURCHASE OF THE LEASED PROPERTY.............   59

19.    HOLDING OVER................................   60

20.    RISK OF LOSS................................   60

21.    INDEMNIFICATION AND ENVIRONMENTAL MATTERS.....   60

21.1    General..................................   60
21.2    Representations and Warranties...........   61
21.3    Maintenance of Leased Property...........   62
21.4    Notice of Environmental Conditions.......   63
21.5    Lessee's Agreement to Take
         Remedial Actions........................   63
21.6    Lessor's Rights to Inspect the Leased
         Property and Take Remedial Actions.......   64
21.7    Environmental Indemnification............   65

(iii)

22.    SUBLETTING AND ASSIGNMENT...................... 66

       22.1   Subletting and Assignment................ 66
       22.2   Attornment............................... 67

23.    OFFICER'S CERTIFICATES; FINANCIAL
       STATEMENTS AND OTHER INFORMATION.............. 67

       23.1   Officer's Certificates................... 67
       23.2   Financial Statements and Other
              Information.............................. 67

24.    INSPECTION..................................... 71

25.    NO WAIVER...................................... 71

26.    REMEDIES CUMULATIVE............................ 72

27.    SURRENDER OF LEASED PROPERTY OR LEASE........ 72

28.    NO MERGER OF TITLE............................. 72

29.    TRANSFERS BY LESSOR............................ 73

30.    QUIET ENJOYMENT................................ 73

31.    NOTICES........................................ 73

32.    PURCHASE RIGHTS................................ 74

       32.1   Lessor's Option to Purchase Lessee's
              Personal Property; Transfer of Licenses.. 74
       32.2   Lessee's Right of First Refusal to
              Purchase the Leased Property............. 75

33.    EXTENDED TERMS................................. 75

34.    APPRAISAL...................................... 76

35.    DEFAULT BY LESSOR.............................. 77

36.    FINANCING OF THE LEASED PROPERTY.............. 78

37.    SUBORDINATION AND NON-DISTURBANCE............. 78

38.    MISCELLANEOUS.................................. 79

       38.1   General.................................. 79
       38.2   Transfer of Licenses..................... 80

39.    MEMORANDUM OF LEASE............................ 80

40.    LIMITATION OF LIABILITY........................ 80

(iv)

LEASE AND SECURITY AGREEMENT

This Lease and Security Agreement (the "Lease") is dated as of the __7th__ day of December, 1990 and is between MEDITRUST OF OHIO, INC. ("Lessor"), a Delaware corporation having its principal office at 128 Technology Center, Waltham, Massachusetts 02154-8979, and ELM CREEK OF IHS, INC. ("Lessee"), a Pennsylvania corporation, having its principal office at c/o Integrated Health Systems, Inc., 11011 McCormick Road, Hunt Valley, Maryland 21031.

## ARTICLE 1

### LEASED PROPERTY; TERM

1.1   **Leased Property**.  Upon and subject to the terms and conditions hereinafter set forth, Lessor leases to Lessee and Lessee rents from Lessor all of Lessor's rights and interest in and to the following real and personal property (collectively, the "Leased Property"):

(i)   the real property described in Exhibit A attached hereto (the "Land"),

(ii)   all buildings, structures, fixtures (as hereinafter defined) and other improvements of every kind including, but not limited to, alleyways and connecting tunnels, sidewalks, utility pipes, conduits and lines (on-site and off-site), and parking areas and roadways appurtenant to such buildings and structures presently or hereafter situated upon the Land (collectively, the "Leased Improvements"),

(iii)   all easements, rights and appurtenances relating to the Land and the Leased Improvements (collectively, the "Related Rights"), and

(iv)   all equipment, machinery, fixtures, and other items of real and/or personal property, including all components thereof, now and hereafter located in, on or used in connection with, and permanently affixed to or incorporated into the Leased Improvements, including, without limitation, all furnaces, boilers, heaters, electrical equipment, heating, plumbing, lighting, ventilating, refrigerating, incineration, air and water pollution control, waste disposal, air-cooling and air-conditioning systems and apparatus, sprinkler systems and fire and theft protection equipment, and built-in oxygen and vacuum systems, all of which, to the greatest extent permitted by law, are hereby deemed by the parties hereto to constitute real estate, together with all replacements, modifications, alterations and additions thereto (collectively the "Fixtures"), together with all items included within the

category of Personal Property as defined below, to the extent such Personal Property is owned by Lessor ("Landlord's Personal Property").

The Leased Property is demised in its present condition without representation or warranty by Lessor and subject to the rights of parties in possession, and to the existing state of title including all covenants, conditions, restrictions, easements and other matters of record including all applicable laws, the lien of financing instruments, mortgages, deeds of trusts and including other matters which would be disclosed by an inspection of the Leased Property or by an accurate survey thereof. The Leased Property is leased subject to all covenants, conditions, restrictions, easements and other matters set forth in Exhibit B.

1.2  **Term**.  The term of the Lease (the "Term") shall be for an initial term commencing on December 7, 1990 (the "Commencement Date") and, unless this Lease is sooner terminated as hereinafter provided, ending at the later of (1) midnight on December 7, 2000, or (2) the expiration of the last Extended Term described in Article 33 for which Lessee exercises an available option in accordance with the provisions thereof.

## ARTICLE 2

## DEFINITIONS

2.1  **Definitions**.  For all purposes of this Lease, except as otherwise expressly provided or unless the context otherwise requires, (i) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular, (ii) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles as at the time applicable, (iii) all references in this Lease to designated "Articles", "Sections" and other subdivisions are to the designated Articles, Sections and other subdivisions of this Lease and (iv) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Lease as a whole and not to any particular Article, Section or other subdivision:

**Accreditation Body**:  CARF, JCAHO and all other Persons having or claiming jurisdiction over the accreditation, certification, evaluation or operation of the Facility.

**CARF**:  Commission on Accreditation of Rehabilitation Facilities.

**Additional Charges**:  As defined in Article 3.

**Additional Rent**:  As defined in Article 3.

**Affiliate**:  As used in this Lease the term "Affiliate" shall mean (i) any person which, directly or indirectly, controls or is controlled by or is under common control with such person, (ii) any other person that owns, beneficially, directly or indirectly, five percent (5%) of the outstanding capital stock, shares or equity interests of such person, or (iii) any officer, director, employee, general partner or trustee of such person or any person controlling, controlled by or under common control with such person (excluding trustees and persons serving in similar capacities who are not otherwise an Affiliate of such person).  The term "person" means and includes individuals, corporations, general and limited partnerships, stock companies or associations, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts, or other entities and governments and agencies and political subdivisions thereof.  For the purposes of this definition, "control" (including the correlative meanings of the terms "controlled by" and "under common control with"), as used with respect to any person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person, through the ownership of voting securities, partnership interests or other equity interests.

**Assumed Indebtedness**:  Any indebtedness or other obligations existing at the time of acquisition of the Leased Property by Lessor secured by a mortgage, deed of trust or other security agreement in or on the Leased Property and taken subject to or assumed by Lessor pursuant to the terms of the Purchase and Sale Agreement, and any indebtedness resulting from the refinancing thereof and/or any subsequent indebtedness resulting from Lessor's financing of, or Lessor's reimbursement of Lessee's financing of, any Capital Additions during the Term, but specifically excluding any indebtedness or other obligations of Lessee not assumed by Lessor prior to or during the Term.

**Award**:  As defined in Article 15.

**Base Gross Revenues**:  Either:  (i) the aggregate Gross Revenues generated by operation of the Facility plus the Gross Revenues generated by operation of the Other Three Facilities during the twelve (12) months ending June 30, 1991, or (ii) in the event that prior to June 30, 1991, the aggregate Gross Revenues generated by operation of the Facility plus the Gross Revenues generated by operation of the Other Three Facilities equals or exceeds two million dollars ($2,000,000) during any Fiscal Quarter, eight million dollars ($8,000,000), both subject to adjustment as provided for in Section 3.1(b).

-3-

<u>Business Day</u>:  Each Monday, Tuesday, Wednesday, Thursday and Friday which is not a day on which national banks in the state where the Leased Property is located are authorized, or obligated, by law or executive order, to close.

<u>Capital Additions</u>:  One or more new buildings, or one or more additional structures annexed to any portion of any of the Leased Improvements, or the material expansion of existing improvements, which are constructed on any parcel or portion of the Land, during the Term, including the construction of a new wing or new story, or the renovation of existing improvements on the Leased Property in order to provide a functionally new facility needed to provide services not previously offered, or any expansion, construction, renovation or conversion in order to increase the bed capacity of a Facility, to change the purpose for which such beds are utilized or to improve the quality of the Facility.  Any structural or non-structural changes to the Facility which cost in excess of $10,000 in any fiscal year shall be deemed a Capital Addition.

<u>Capital Additions Cost</u>:  The term "Capital Additions Cost" shall mean the cost of any Capital Addition proposed to be made by Lessee whether paid for by Lessee or Lessor.  Such cost shall include (a) the cost of construction of the Capital Additions, including site preparation and improvement, materials, labor, supervision, developer and administrative fees, legal fees, and related design, engineering and architectural services, the cost of any fixtures, the cost of construction financing (including but not limited to capitalized interest) and other miscellaneous costs approved by Lessor, (b) if agreed to by Lessor in writing, in advance, the cost of any land contiguous to the Leased Property which is to become a part of the Leased Property purchased for the purpose of placing thereon the Capital Additions or any portion thereof or for providing means of access thereto, or parking facilities therefor, including the cost of surveying the same, (c) the cost of insurance, real estate taxes, water and sewage charges and other carrying charges for such Capital Additions during construction, (d) the cost of title insurance, (e) reasonable fees and expenses of legal counsel, (f) filing, registration and recording taxes and fees, (g) documentary stamp taxes, if any, and (h) all reasonable costs and expenses of Lessor and any Lending Institution which has committed to finance the Capital Additions, including, but not limited to, (i) the reasonable fees and expenses of their respective legal counsel, (ii) all printing expenses, if any, (iii) the amount of any filing, registration and recording taxes and fees, (iv) documentary stamp taxes, if any, (v) title insurance charges, appraisal fees, if any, (vi) rating agency fees, if any, and (vii) commitment fees, if any, charged by any Lending Institution advancing or offering to advance any portion of the financing for such Capital Additions.

-4-

<u>Cash Flow</u>:  The Consolidated Net Income (or Consolidated Net Loss) for any period plus the amount of the provision for depreciation and amortization actually deducted on the books of the applicable Person for the purposes of computing such Consolidated Net Income (or Consolidated Net Loss) for the period involved, plus (i) interest on all Indebtedness and (ii) subordinated management fees.

<u>Code</u>:  The Internal Revenue Code of 1986, as amended.

<u>Commencement Date</u>:  As defined in Article 1.

<u>Condemnation, Condemnor</u>:  As defined in Article 15.

<u>Consolidated and Consolidating</u>:  When used with reference to any term defined herein means that term as applied to the accounts of the relevant Person and its Subsidiaries consolidated in accordance with generally accepted accounting principles.

<u>Consolidated Financials</u>:  For any fiscal year or other accounting period for Lessee and/or Guarantor (as the case may be) and their Consolidated Subsidiaries, statements of earnings and retained earnings and of changes in financial position for such period and for the period from the beginning of the respective fiscal year to the end of such period and the related balance sheet as at the end of such period, together with the notes thereto, all in reasonable detail and setting forth in comparative form the corresponding figures for the corresponding period in the preceding fiscal year, and prepared in accordance with generally accepted accounting principles.

<u>Consolidated Net Worth</u>:  At any time, the sum of the following for Lessee and/or Guarantor (as the case may be) and its Consolidated Subsidiaries, on a Consolidated basis determined in accordance with generally accepted accounting principles:

    (1)   the amount of capital or stated capital (after deducting the cost of any treasury shares), plus

    (2)   the amount of capital surplus and retained earnings (or, in the case of a capital surplus or retained earnings deficit, minus the amount of such deficit), minus

    (3)   the sum of the following (without duplication of deductions in respect of items already deducted in arriving at surplus and retained earnings): (a) unamortized debt discount and expense and (b) any write-up in book value of assets resulting from a revaluation thereof subsequent to the most recent

-5-

Consolidated Financials prior to the date thereof, except any net write-up in value of foreign currency in accordance with generally accepted accounting principles; any write-up resulting from a reversal of a reserve for bad debts or depreciation; and any write-up resulting from a change in methods of accounting for inventory.

Contracts:  Agreements, including without limitation, Provider Agreements and Patient Admission Agreements, contracts, including without limitation construction contracts, subcontracts and architects' contracts, contract rights, warranties and representations, franchises and records and books of account, benefitting, relating to or affecting the Leased Property and the ownership, construction, development, maintenance, management, repair, use, occupancy, possession or operation thereof or the operation of any programs or services in conjunction with the Facility and all renewals, replacements and substitutions therefor, now or hereafter issued by or entered into with any Governmental Authority, Accreditation Body or Third Party Payor, or maintained or used by Lessee or entered into by Lessee with any third Person.

Cost of Living Index:  The Consumer Price Index, Urban Wage Earners and Clerical Workers, All Items, Base 1967=100, published by the Bureau of Labor Statistics, U.S. Department of Labor, for the geographical area which includes the Leased Property, or if said Index is not available, then an available index for the state in which the Leased Property is located, or if not available, for the entire United States, published by said bureau or its successor, or if none, by any other instrumentality of the United States or of the state in which the Leased Property is located, in the order mentioned.

Current Assets:  All assets of any Person which would, in accordance with GAAP, be classified as current assets of a Person conducting a business the same as or similar to that of such Person, excluding, however, any and all advances to or Current Liabilities owed to such Person by its Subsidiaries.

Current Liabilities:  All liabilities of any Person which would, in accordance with GAAP, be classified as current liabilities of a Person conducting a business the same as or similar to that of such Person, including, without limitation, all lease rental payments and other payments under leases and fixed prepayments of, and sinking fund payments with respect to, Indebtedness required to be made within one year from the date of determination.

Date of Taking:  As defined in Article 15.

Debt Coverage Ratio:  As defined in Article 6.

-6-

<u>Encumbrance</u>:  As defined in Article 36.

<u>Environmental Enforcement Actions</u>:  Collectively, all actions, orders, requirements or liens instituted, threatened, required, completed, imposed or placed by any Governmental Authority and all claims made or threatened by any Person against Lessee, Guarantor, or the Leased Property (or any other occupant, prior occupant or prior owner thereof or any other Person), arising out of or in connection with any of the Environmental Laws, any environmental condition or the assessment, monitoring, clean-up, containment, remediation or removal of, or damages caused or alleged to be caused by, any Hazardous Substances (i) located on or under the Leased Property, (ii) emanating from the Leased Property or (iii) generated, stored, transported, utilized, disposed of, managed or released by Lessee (whether or not on, under or from the Leased Property).

<u>Environmental Laws</u>:  Collectively, all Legal Requirements applicable to (i) environmental conditions on, under or emanating from the Leased Property including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, the Superfund Amendment and Reauthorization Act, the Resource Conservation and Recovery Act, the Federal Water Pollution Control Act, the Federal Clean Air Act, the Toxic Substances and Control Act, the Federal Insecticide, Fungicide and Rodenticide Act, Ohio Revised Code Chapter 3704, Chapter 6111, Chapter 6109, Chapter 3734, Chapters 3750 and 3751, and all of the Regulations relating to these Chapters contained in the Ohio Administrative Code, together with Ohio Administrative Code Chapter 3745-35, Chapter 3745-27, Chapter 3745-54 and Chapter 3745-33, Ohio Administrative Code §1310:7-7-35, §1301:7-7-36, §3710 <u>et seq</u>. and §3701-34, and (ii) the generation, storage, transportation, utilization, disposal, management or release (whether or not on, under or from the Leased Property) of Hazardous Substances by Lessee.

<u>Event of Default</u>:  As defined in Article 16.

<u>Excess Gross Revenues</u>:  The aggregate of (i) annual Gross Revenues from the Facility plus annual Gross Revenues from each of the Other Three Facilities less (ii) Base Gross Revenues.

<u>Extended Terms</u>:  As defined in Article 33.

<u>Facility</u>:  The existing health care facility situated on the Leased Property on the Commencement Date, as such facility may be modified from time to time with the approval of Lessor. The Facility is a skilled nursing facility known as Elm Creek Nursing Center and is comprised of 101 licensed beds.

<u>Facility Mortgage</u>:  As defined in Article 13.

<u>Facility Mortgagee</u>:  As defined in Article 13.

<u>Fair Market Value</u>:  The fair market value of the Leased Property, including all Capital Additions, and (a) assuming the same is unencumbered by this Lease, (b) determined in accordance with the appraisal procedures set forth in Article 34 or in such other manner as shall be mutually acceptable to Lessor and Lessee, and (c) not taking into account any reduction in value resulting from any encumbrance to which the Leased Property is subject and which encumbrance Lessee or Lessor is otherwise required to remove at or prior to closing of the transaction.  In determining such Fair Market Value (i) the positive or negative effect on the value of the Leased Property attributable to the interest rate, amortization schedule, maturity date, prepayment penalty and other terms and conditions of any mortgage on the Leased Property which is not so required or agreed to be removed shall be taken into account in determining such Fair Market Value and (ii) the higher value based on either an income approach or a bricks and mortar approach shall be deemed the Fair Market Value.

<u>Fair Market Added Value</u>:  The Fair Market Value of the Leased Property (including all Capital Additions) less the Fair Market Value of the Leased Property determined as if no Capital Additions financed by Lessee had been constructed.

<u>Fair Market Value Purchase Price</u>:  The Fair Market Value of the Leased Property less the Fair Market Added Value.

<u>Fiscal Quarter</u>:  Each of the three (3) month periods commencing July, October, January and April.

<u>Fiscal Year</u>:  The twelve (12) month period from July 1 to June 30.

<u>Fixtures</u>:  As defined in Article 1.

<u>GAAP</u>:  Generally accepted accounting principles, consistently applied throughout the relevant period.

<u>Governmental Authority</u>:  All agencies, authorities, bodies, boards, commissions, courts, instrumentalities, legislatures and offices of any nature whatsoever for any government unit or political subdivision, whether federal, state, county, district, municipal, city or otherwise, and whether now or hereafter in existence.

<u>Gross Revenues:</u>  The term "Gross Revenues" shall mean all revenues received or receivable from or by reason of the operation of the Facility, or any other use of the Leased

-8-

Property, including without limitation, all patient revenues received or receivable for the use of or otherwise by reason of all rooms, beds and other facilities provided, meals served, services performed, space or facilities subleased or goods sold on the Leased Property, including without limitation, and except as provided below, any consideration received under any subletting, licensing, or other arrangements with third parties relating to the possession or use of any portion of the Leased Property and all revenues from all ancillary services; provided, however, that Gross Revenues shall not include non-operating revenues such as interest income or gain from the sale of assets not sold in the ordinary course of business; and provided, further, that there shall be deducted from such revenues:

(i)    contractual allowances (relating to any period during the Term of this Lease) for billings not paid by or received from the appropriate governmental agencies or third party providers,

(ii)    allowances according to generally accepted accounting principles for uncollectible accounts,

(iii)    all proper patient billing credits and adjustments according to generally accepted accounting principles relating to health care accounting,

(iv)    federal, state or local sales, use, gross receipts and excise taxes and any tax based upon or measured by said Gross Revenues which is added to or made a part of the amount billed to the patient or other recipient of such services or goods, whether included in the billing or stated separately,

(v)    provider discounts for hospital or other medical facility utilization contracts,

(vi)    the cost of any federal, state or local governmental program imposed specially to provide or finance indigent patient care, and

(vii)    revenues attributable to Capital Additions financed by Lessee as provided for in Section 10.2.

To the extent that the Leased Property is subleased by Lessee to an Affiliate, Gross Revenues shall be calculated for all purposes of this Lease by including the Gross Revenues of such sublessees with respect to the subleased property, i.e., the Gross Revenues generated from the operations conducted on such subleased portion of the Leased Property shall be included directly in the Gross Revenues for the purpose of determining Additional Rent payable under this Lease and the rent received or receivable by such Affiliate lessee from or under such

subleases shall be excluded from Gross Revenues for such purpose. As to any lease of a portion of the Leased Property to a non-Affiliate of Lessee, only the rental actually received by Lessee from such non-Affiliate shall be included in Gross Revenues.

Where the words Gross Revenues are used in reference to one or more of the Other Three Facilities, the same definition shall apply, except the appropriate (1) other facility, (2) leased property of which such facility is a part and (3) lessee thereof shall be substituted for the (1) "Facility", the (2) "Leased Property" and the (3) "Lessee", respectively, used in the above definition.

<u>Guarantor</u>: Integrated Health Services, Inc., a Delaware corporation.

<u>Guaranty</u>: The guaranty of the Lease executed by Guarantor to Lessor.

<u>Hazardous Substances</u>: Collectively, (i) any "hazardous material," "hazardous substance," "hazardous waste," "oil," "regulated substance," "toxic substance," "restricted hazardous waste", "special waste" or words of similar import as defined under any of the Environmental Laws; (ii) asbestos in any form; (iii) urea formaldehyde foam insulation; (iv) polychlorinated biphenyls; (v) radon gas; (vi) flammable explosives; (vii) radioactive materials; (viii) any chemical, contaminant, solvent, material, pollutant or substance that may be dangerous or detrimental to the Leased Property, the environment, or the health and safety of the patients and other occupants of the Leased Property or of the owners or occupants of any other real property nearby the Leased Property and (ix) any substance, the generation, storage, transportation, utilization, disposal, management, release or location of which, on, under or from the Leased Property is prohibited or otherwise regulated pursuant to any of the Environmental Laws.

Notwithstanding the foregoing, the term Hazardous Substances as defined herein shall not include pharmaceuticals and cleaning agents of the types and in the quantities and concentrations normally stocked by health care providers similar to the Facility that are used, stored, transported and disposed of in accordance with all Legal Requirements.

<u>Impositions</u>: Collectively, all taxes (including, without limitation, all capital stock and franchise taxes of Lessor, all ad valorem, sales and use, single business, gross receipts, transaction privilege, rent or similar taxes), assessments (including, without limitation, all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not to be completed within the Term), ground rents, water, sewer or other rents and

charges, excises, tax levies, fees (including, without
limitation, license, permit, inspection, authorization and
similar fees), and all other governmental charges, in each case
whether general or special, ordinary or extraordinary, or
foreseen or unforeseen, of every character in respect of the
Leased Property and/or the Rent (including all interest and
penalties thereon due to any failure in payment by Lessee),
which at any time prior to, during or in respect of the Term
hereof may be assessed or imposed on or in respect of or be a
lien upon (a) Lessor or Lessor's interest in the Leased
Property, (b) the Leased Property or any part thereof or any
rent therefrom or any estate, right, title or interest therein,
or (c) any occupancy, operation, use or possession of, sales
from, or activity conducted on, or in connection with, the
Leased Property or the leasing or use of the Leased Property or
any part thereof; provided, however, nothing contained in this
Lease shall be construed to require Lessee to pay (1) any tax
based on net income (whether denominated as a franchise or
capital stock or other tax) imposed on Lessor or any other
Person or (2) any transfer or net revenue tax of Lessor or any
other Person except Lessee and its successors or (3) any tax
imposed with respect to the sale, exchange or other disposition
by Lessor of any portion of the Leased Property or the proceeds
thereof, or (4) except as expressly provided elsewhere in this
Lease, any principal or interest on any Encumbrance on the
Leased Property; however, the provisos set forth in this
sentence shall not be applicable to the extent that any tax,
assessment, tax levy or charge which Lessee is obligated to pay
pursuant to the first sentence of this definition and which is
in effect at any time during the Term hereof is totally or
partially repealed, and a tax, assessment, tax levy or charge
set forth in clause (1) or (2) is levied, assessed or imposed
expressly in lieu thereof.

   Indebtedness:  The total of all obligations of a Person,
whether current or long-term, which in accordance with GAAP
would be included as liabilities upon such Person's balance
sheet at the date as of which Indebtedness is to be determined,
and shall also include (i) all capital lease obligations and
(ii) all guaranties, endorsements (other than for collection of
instruments in the ordinary course of business) or other
arrangements whereby responsibility is assumed for the
obligations of others, whether by agreement to purchase or
otherwise acquire the obligations of others, including any
agreement, contingent or otherwise, to furnish funds through
the purchase of goods, supplies or services for the purpose of
payment of the obligations of others.

   Insurance Requirements:  All terms of any insurance policy
required by this Lease and all requirements of the issuer of
any such Policy.

-11-

Land:  As defined in Article 1.

Lease:  As defined in the preamble.

Lease Year:  A twelve (12) month period commencing on the Commencement Date or on each anniversary date thereof, as the case may be.

Leased Improvements; Leased Property:  Each as defined in Article 1.

Legal Requirements:  All statutes, ordinances, by-laws, codes, rules, rulings, regulations, restrictions, orders, judgments, decrees, writs, judicial or administrative interpretations and injunctions (including, without limitation, all applicable building, health code, zoning, subdivision and other land use and health-care licensing statutes, ordinances, by-laws, codes, rules and regulations), whether now or hereafter enacted, promulgated or issued by any Governmental Authority affecting Lessee, the Leased Property or the ownership, construction, development, maintenance, management, repair, use, occupancy, possession or operation thereof, including, without limitation, any of the foregoing which may (i) require repairs, modifications or alterations in or to the Leased Property, (ii) in any way affect (adversely or otherwise) the use and enjoyment of the Leased Property or (iii) require the assessment, monitoring, clean-up, containment or removal of any Hazardous Substances on, under or from the Leased Property.  Without limiting the foregoing, the term Legal Requirements includes all Environmental Laws and shall also include all Permits and Contracts issued by or entered into with any Governmental Authority, Accreditation Body or Third Party Payor.

Lending Institution:  Any insurance company, federally insured commercial or savings bank, national banking association, savings and loan association, employees' welfare, pension or retirement fund or system, corporate profit-sharing or pension trust, college or university, or real estate investment trust, including any corporation qualified to be treated for federal tax purposes as a real estate investment trust, having a net worth of at least $50,000,000.

Lessee:  Elm Creek of IHS, Inc. a Pennsylvania corporation.

Lessor:  Meditrust of Ohio, Inc., a Delaware corporation.

Managed Care Plans:  All health maintenance organizations, preferred provider organizations, individual practice associations, competitive medical plans and similar arrangements.

**Management Agreement**:  Any agreement, whether written or oral, between Lessee and any other party (including but not limited to an Affiliate of Lessee) to manage or operate the Facility on behalf of Lessee.

**Manager**:  The managing party under any Management Agreement.

**Minimum Rent**:  As defined in Article 3.

**Net Income (or Net Loss)** - The net income (or net loss, expressed as a negative number) of a Person for any period, after all taxes actually paid or accrued and all expenses and other charges determined in accordance with generally accepted accounting principles consistently applied.

**Net Worth**:  An amount equal to the total assets of any Person minus the total liabilities of such Person.

**Officer's Certificate**:  A certificate of Lessee signed by the Chairman of the Board of Directors, the President, any Vice President or the Treasurer of Lessee or another officer authorized to so sign by the Board of Directors or By-Laws of Lessee, or any other person whose power and authority to act has been authorized by delegation in writing by any of the persons holding the foregoing offices.

**Other Lessees**:  The lessees of the Other Three Facilities.

**Other Three Facilities**:  The three other skilled nursing facilities owned by Lessor which are, simultaneously with the execution and delivery of this Lease, being leased to Affiliates of Lessee, briefly described as (1) Spring Creek Nursing Center, Huber Heights, Montgomery County, Ohio, (2) Carriage-By-The-Lake Nursing Center, Sugarcreek, Greene County, Ohio, and (3) Firelands Nursing Center, New London, Huron County, Ohio.

**Overdue Rate**:  On any date, a rate per annum equal to one hundred and twenty percent (120%) of the Prime Rate, but in no event greater than the maximum rate then permitted under applicable law.

**Patient Admission Agreements**:  All contracts, agreements and consents executed by, or on behalf of, any patient or other Person seeking services at the Facility, including, without limitation, assignments of benefits and guaranties.

**Payment Date**:  Any due date for the payment of the installments of Minimum Rent, Additional Rent or any other sums payable under this Lease.

**Permits**:  Licenses, approvals, qualifications, variances, permissive uses, certificates of need, franchises, accreditations, certificates, certifications, consents, permits

-13-

and other authorizations, including without limitation building permits, subdivision approvals and subdivision plans, benefitting, relating to or affecting the Leased Property and the ownership, construction, development, maintenance, management, repair, use, occupancy, possession or operation thereof or the operation of any programs or services in conjunction with the Facility and all renewals, replacements and substitutions therefor, now or hereafter issued by or entered into with any Governmental Authority, Accreditation Body or Third Party Payor or maintained or used by Lessee or entered into by Lessee with any third Person.

    <u>Person</u>:  All individuals, corporations, general partnerships, limited partnerships, joint ventures, stock companies or associations, companies, banks, trusts, trust companies, land trusts, business trusts, unincorporated organizations, Governmental Authorities and other entities of any kind or nature whatsoever.

    <u>Personal Property</u>:  All machinery, equipment, furniture, furnishings, movable walls or partitions, computers or trade fixtures or other tangible personal property, used or useful in Lessee's business on the Leased Property and removable without causing material damage to the Leased Property, including without limitation all items of furniture, furnishings, equipment and vehicles, together with all replacements, modifications, alterations, and additions thereto, except items, if any, included within the definition of Fixtures.

    <u>Primary Intended Use</u>:  Use of the Facility as a health care facility licensed for 101 skilled nursing beds, and such changes to the Facility approved from time to time by Lessor.

    <u>Prime Rate</u>:  The annual rate publicly announced by The First National Bank of Boston to be its base rate for 90-day unsecured loans to its United States corporate borrowers of the highest credit standing, as in effect from time to time.

    <u>Provider Agreements</u>:  All participation, provider and reimbursement agreements or arrangements now or hereafter in effect for the benefit of Lessee in connection with the operation of the Facility relating to any right of payment or other claim arising out of or in connection with Lessee's participation in any Third Party Payor Program.

    <u>Purchase and Sale Agreement</u>:  The Agreement dated December __†__, 1990 between Lessor and Guarantor relating to the acquisition by Lessor of the Leased Property and the Other Three Facilities.

-14-

Rent: Collectively, the Minimum Rent, the Additional Rent, the Personal Property Rent and the Additional Charges.

Rent Adjustment Date: The fifth anniversary of the Commencement Date and each fifth anniversary thereafter.

Rent Adjustment Rate: 400 basis points over the rate of interest of actively traded marketable United States Treasury Securities bearing a fixed rate of interest adjusted for a constant maturity of five (5) years as calculated by the Federal Reserve Board (the "Index") using the Index in effect on the Rent Adjustment Date. In the event that the Index is no longer published or announced or becomes unascertainable for any reason, Lessor shall designate a comparable reference rate which shall be deemed to be the Index.

State: The state or commonwealth in which the Leased Property is located.

Subsidiary or Subsidiaries: Any corporation or other entity of any Person and/or any of its Subsidiaries, which directly or indirectly, owns, or has the right to control or direct the voting of, fifty percent (50%) or more of the outstanding capital stock or other ownership interest having general voting power (under ordinary circumstances).

Surrounding Property: Any real property that is located within a one-half (1/2) mile radius of the Leased Property.

Taking: A taking or voluntary conveyance during the Term hereof of all or part of the Leased Property, or any interest therein or right accruing thereto or use thereof, as the result of, or in settlement of any Condemnation or other eminent domain proceeding affecting the Leased Property whether or not the same shall have actually been commenced.

Term: As defined in Section 1.2.

Third Party Payor Programs: All third party payor programs in which Lessee presently or in the future may participate, including, without limitation, Medicare, Medicaid, CHAMPUS, Blue Cross and/or Blue Shield, Managed Care Plans, other private insurance programs and employees assistance programs.

Third Party Payors: Medicare, Medicaid, CHAMPUS, Blue Cross and/or Blue Shield, private insurers and any other Person which presently or in the future maintains Third Party Payor Programs.

Unsuitable for Its Primary Intended Use: As used anywhere in this Lease, the term "Unsuitable for its Primary Intended Use" shall mean that, by reason of damage or destruction, or a

-15-

partial Taking by Condemnation, in the good faith judgment of Lessee, reasonably exercised, the Facility cannot be operated on a commercially practicable basis for its Primary Intended Use, taking into account, among other relevant factors, the number of usable beds affected by such damage or destruction or partial Taking.

Unavoidable Delays:  Delays due to strikes, lockouts, inability to procure materials, power failure, acts of God, governmental restrictions, enemy action, civil commotion, fire, unavoidable casualty or other causes beyond the control of the party responsible for performing an obligation hereunder, provided that lack of funds shall not be deemed a cause beyond the control of either party hereto.

ARTICLE 3

RENT

3.1   Rent for Land, Leased Improvements, Related Rights, Fixtures and Landlord's Personal Property.  Lessee will pay to Lessor, in lawful money of the United States of America, at Lessor's address set forth herein or at such other place or to such other person, firms or corporations as Lessor from time to time may designate in writing, rent for the Leased Property, as follows:

(a)  Minimum Rent:

(i)    A base rent ("Base Rent") of $462,508.63 per annum ($1.00 being rent for Landlord's Personal Property) payable in advance in equal, consecutive monthly installments due on the first day of each calendar month; provided, however, that the first monthly payment of such Base Rent shall be payable on the Commencement Date (prorated as to any partial month at the beginning of the Term); and

(ii)    On each Rent Adjustment Date, the Base Rent shall be adjusted so that the same shall equal the greater of (x) the then current Base Rent or (y) an amount equal to $3,700,069.00 multiplied by the Rent Adjustment Rate, and from that Rent Adjustment Date until the next Rent Adjustment Date, the Base Rent shall be the Base Rent as so adjusted; and

(iii)    An amount equal to the monthly sum of all principal, interest and other payments of any kind payable in connection with any Assumed Indebtedness, which portion of the Minimum Rent shall be due and payable to Lessor no less than ten (10) days in advance of the due dates of such payments to the respective holders of the Assumed Indebtedness.

-16-

(b) <u>Additional Rent</u>:  In addition to the Minimum Rent, Lessee and the Other Lessees shall pay to Lessor an amount equal to five percent (5%) of Excess Gross Revenues (the "Additional Rent").  Additional Rent shall accrue commencing on the earlier to occur of (i) July 1, 1991 or (ii) the first day of the first Fiscal Quarter during which the aggregate of Gross Revenues from the Facility and Gross Revenues from the Other Three Facilities equal or exceed two million dollars ($2,000,000).  Additional Rent shall be payable quarterly in arrears during the Term, on the first Business Day after the close of the Fiscal Quarter during which such Additional Rent accrued and there shall be an annual reconciliation, as provided in Section 3.2 below.  Each of the leases of the Other Three Facilities contains this same paragraph regarding Additional Rent and it is the intention of the parties that five percent (5%) of Excess Gross Revenues be the aggregate amount of Additional Rent payable under this Lease and the leases of the Other Three Facilities taken together.

If any one or more of the leases of the Other Three Facilities should be terminated, as the result of damage or destruction, as described in Article 14 hereof, or a Condemnation, as described in Article 15 hereof, and Base Gross Revenues had been established as the aggregate of Gross Revenues generated by the operation of the Facility plus Gross Revenues generated by the operation of the Other Three Facilities during the twelve (12) months ending June 30, 1991 (the "Base Year"), then Base Gross Revenues shall be reduced by the amount of Gross Revenues generated during the Base Year by the operation of the facility which was leased pursuant to the terminated lease and thereafter the aggregate Gross Revenues utilized for the purposes of computing Excess Gross Revenues will no longer include the Gross Revenues from such facility. If, however, Base Gross Revenues had been established at eight million dollars ($8,000,000), the amount which will be subtracted from Base Gross Revenues, after the termination of a facility lease, will be $2,500,000, in the case of the facility located at Elm Creek, $2,400,000, in the case of the facility located at Spring Creek, $1,900,000, in the case of the facility located at Carriage By-The-Lake and $1,200,000 in the case of the facility located at Firelands.

3.2    Quarterly Calculation and Payment of Additional Rent; Annual Reconciliation.

(a)  For the prior Fiscal Quarter, Lessee shall calculate and pay estimated Additional Rent, in an amount equal to one quarter of the Excess Gross Revenues, as estimated in Lessee's annual budget in conjunction with the annual budgets of the Other Lessees, each as amended from time to time, for the Fiscal Year of which such prior Fiscal Quarter is a part.

(b)  [intentionally deleted].

-17-

(c)  On or before the last day of the first Fiscal Quarter in each Fiscal Year, Lessee shall deliver to Lessor an Officer's Certificate reasonably acceptable to Lessor and certified by the chief financial officer of Lessee, setting forth the Gross Revenues for the Facility and the Other Three Facilities for the immediately preceding Fiscal Year.  The first annual reconciliation and adjustment of Additional Rent shall be made as of June 30, 1991 and will reflect any Additional Rent payable with respect to the pro rata portion of the Excess Gross Revenues for the period commencing on the first day of the Fiscal Quarter during which Additional Rent first accrued and ending June 30, 1991.

(d)  If the Additional Rent as finally determined for any Fiscal Year exceeds the sum of the quarterly payments of Additional Rent previously paid by Lessee with respect to said Fiscal Year, Lessee shall, simultaneously with the delivery of the annual reconciliation, pay such deficit to Lessor plus interest at the Prime Rate plus two (2) percentage points.

(e)  If the Additional Rent for any year is less than the amount previously paid with respect thereto by Lessee, Lessee shall notify Lessor either (i) to pay to Lessee an amount equal to such difference (less any portion thereof paid to the Other Lessees), or (ii) to grant Lessee a credit against Additional Rent next coming due in the amount of such difference (less any portion thereof paid to the Other Lessees).

(f)  The obligation to pay Additional Rent shall survive the expiration or earlier termination of the Term, and a final reconciliation, taking into account, among other relevant adjustments, any contractual allowances which related to Gross Revenues accrued prior to such termination date but which have been determined to be not payable after such termination date, and Lessee's good faith best estimate of the amount of any unresolved contractual allowances, shall be made not later than two (2) years after said expiration or termination date. Lessee shall advise Lessor within sixty (60) days after such expiration or termination date of Lessee's best estimate at that time of the approximate amount of such adjustments, which estimate shall not be binding on Lessee or have any legal effect whatsoever.

(g)  Lessee further covenants that the operation of the Facility shall be conducted in a manner consistent with the highest standards and practices recognized in the health care industry as those customarily utilized by first class business operations.  Subject to any applicable Legal Requirements, Lessee shall use its best efforts to maximize the Facility's

-18-

Gross Revenues and to that end (i) Lessee shall maintain a full staff of employees and (ii) a maximum amount of space in the Facility shall be devoted to patient care and only such part thereof shall be devoted for storage, office and other ancillary purposes as shall be reasonably necessary.

   3.3   Confirmation of Additional Rent.  Lessee shall utilize, or cause to be utilized, an accounting system for the Leased Property in accordance with its usual and customary practices and in accordance with generally accepted accounting principles which will accurately record all Gross Revenues. Lessee shall retain, for at least three (3) years after the expiration of each Fiscal Year (and in any event until the final reconciliation described in Section 3.2 above has been made), reasonably adequate records conforming to such accounting system showing all Gross Revenues for such Fiscal Year.  Lessor, at its own expense except as provided hereinbelow, shall have the right from time to time to have its accountants or representatives audit the information set forth in the Officer's Certificate referred to in Section 3.2 and in connection with such audits to examine Lessee's records with respect thereto (including supporting data and sales tax returns), subject to any prohibitions or limitations on disclosure of any such data under applicable law or regulations, including without limitation, any duly enacted "Patients' Bill of Rights" or similar legislation, including such limitations as may be necessary to preserve the confidentiality of the Facility-patient relationship and the physician-patient privilege.  If any such audit discloses a deficiency in the reporting of Gross Revenues and either Lessee agrees with the result of such audit or the matter is compromised, Lessee shall forthwith pay to Lessor the amount of the deficiency in Additional Rent which would have been payable by it had such deficiency in reporting not occurred, as finally agreed or determined, together with interest on the Additional Rent which should have been payable by it, at the Overdue Rate from the date when said payment should have been made by Lessee to the date of payment thereof; provided, however, that as to any audit that is commenced more than two (2) years after the date Gross Revenues for any Fiscal Year are reported by Lessee to Lessor, the deficiency, if any, with respect to Additional Rent shall bear interest as permitted herein only from the date such determination of deficiency is made, unless such deficiency is the result of gross negligence or willful misconduct on the part of Lessee.  If any such audit discloses that the Gross Revenues actually received by Lessee for any Fiscal Year exceed those reported by Lessee by more than 3%, Lessee shall pay the reasonable cost of such audit and examination.  Any proprietary information obtained by Lessor pursuant to the provisions of this Section shall be treated as

-19-

confidential, except that such information may be used in any litigation or arbitration proceedings between the parties and except, further, that Lessor may disclose such information to prospective lenders, subject in each case to appropriate confidentiality safeguards.  The obligations of Lessor and Lessee contained in this Section shall survive the expiration or earlier termination of this Lease.

3.4.  <u>Additional Charges</u>.  In addition to the Minimum Rent and Additional Rent, (1) Lessee will also pay and discharge as and when due and payable all Impositions and other amounts, liabilities and obligations which Lessee assumes or agrees to pay under this Lease, and (2) in the event of any failure on the part of Lessee to pay any of those items referred to in clause (1) above, Lessee will also promptly pay and discharge every fine, penalty, interest and cost which may be added for non-payment or late payment of such items (the items referred to in clauses (1) and (2) above being referred to herein collectively as the "Additional Charges"), and Lessor shall have all legal, equitable and contractual rights, powers and remedies provided in this Lease, by statute or otherwise, in the case of non-payment of the Additional Charges, as well as the Minimum Rent and Additional Rent.  If any installment of Minimum Rent, Additional Rent or Additional Charges (but only as to those Additional Charges which are payable directly to Lessor) shall not be paid within ten (10) days after its due date, Lessee will pay Lessor on demand, as Additional Charges, a late charge (to the extent permitted by law) equal to $250 plus interest on the delinquent payment calculated from the date it was due until the date it is received by Lessor at the rate which is the greater of (x) eighteen percent (18%) per annum or (y) the Overdue Rate.  To the extent that Lessee pays any Additional Charges to Lessor pursuant to any requirement of this Lease, Lessee shall be relieved of its obligation to pay such Additional Charges to the entity to which they would otherwise be due.

3.5  <u>Equipment and Renovation Reserves</u>.  In addition to all other payments required of Lessee under this Lease, Lessee shall pay directly to the Lessor, under any separate reserve or escrow agreement between Lessor and Lessee, or to the holder of any mortgage indebtedness existing against the Leased Property, as and when due and as its own independent obligation to the mortgage lender or Lessor, as the case may be, all sums required under the terms of such escrow or reserve agreement for equipment, renovation, refurbishment or similar reserves ("Equipment Reserves"); provided, however, that Lessee shall have the right to use such reserve funds which are payable to Lessor, subject to the terms of any escrow or reserve agreement, so long as Lessee is not in default hereunder.

-20-