# EXHIBIT A PART 1

3.6  Net Lease.  The Rent shall be paid absolutely net to Lessor, so that this Lease shall yield to Lessor the full amount of the installments of Minimum Rent, and the payments of Additional Rent and Additional Charges throughout the Term, all as more fully set forth in Article 4, but subject to any other provisions of this Lease which expressly provide for adjustment or abatement of Rent or other charges.

## ARTICLE 4

### IMPOSITIONS; TAXES, UTILITIES, INSURANCE PAYMENTS

4.1  Payment of Impositions.  Subject to Article 12 relating to permitted contests, Lessee will pay, or cause to be paid, all Impositions before any fine, penalty, interest or cost may be added for non-payment, such payments to be made directly to the taxing authorities where feasible, and Lessee will promptly, upon request, furnish to Lessor copies of official receipts or other satisfactory proof evidencing such payments.  Lessee's obligation to pay such Impositions shall be deemed absolutely fixed upon the date such Impositions become a lien upon the Leased Property or any part thereof.  If any such Imposition may, at the option of the taxpayer, lawfully be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Lessee may exercise the option to pay the same (and any accrued interest on the unpaid balance of such Imposition) in installments and, in such event, shall pay such installments during the Term hereof (subject to Lessee's right of contest pursuant to the provisions of Article 12) as the same respectively become due and before any fine, penalty, premium, further interest or cost may be added thereto.  Lessor, at its expense, shall, to the extent permitted by applicable law, prepare and file all tax returns and reports as may be required by governmental authorities in respect of Lessor's net income, gross receipts, franchise taxes and taxes on its capital stock, and Lessee, at its expense, shall, to the extent permitted by applicable laws and regulations, prepare and file all other tax returns and reports in respect of any Imposition as may be required by governmental authorities.  If no Event of Default shall have occurred hereunder and be continuing, any refund due from any taxing authority in respect of any Imposition paid by Lessee shall be paid over to or retained by Lessee.  If an Event of Default shall have occurred and be continuing, such funds shall be at Lessor's option paid over to Lessor and/or retained by Lessor and applied as provided in Article 16.  Lessor and Lessee shall, upon request of the other, provide such data as is maintained by the party to whom the request is made with respect to the Leased Property as may be necessary to prepare any required returns and reports.  In the event governmental authorities classify any property covered by this Lease as

-21-

personal property, Lessee shall file all personal property tax returns in such jurisdictions where it may legally so file. Lessor, to the extent it possesses the same, and Lessee, to the extent it possesses the same, will provide the other party, upon request, with cost and depreciation records necessary for filing returns for any property so classified as personal property.  Where Lessor is legally required to file personal property tax returns, Lessee will be provided with copies of assessment notices indicating a value in excess of the reported value in sufficient time for Lessee to file a protest.  Lessee may, upon giving notice to Lessor, at Lessee's option and at Lessee's sole cost and expense, protest, appeal, or institute such other proceedings as Lessee may deem appropriate to effect a reduction of real estate or personal property assessments and Lessor, at Lessee's expense as aforesaid, shall fully cooperate with Lessee in such protest, appeal, or other action.  Billings for reimbursement by Lessee to Lessor of personal property taxes shall be accompanied by copies of a bill therefor and payments thereof which identify the personal property with respect to which such payments are made.

4.2   Notice of Impositions.  Lessor shall give prompt notice to Lessee of all Impositions payable by Lessee hereunder of which Lessor at any time has knowledge, but Lessor's failure to give any such notice shall in no way diminish Lessee's obligations hereunder to pay such Impositions.

4.3   Adjustment of Impositions.  Impositions imposed in respect of the tax-fiscal period during which the Term terminates shall be adjusted and prorated between Lessor and Lessee, whether or not such Imposition is imposed before or after such termination, and Lessee's obligation to pay its prorated share thereof shall survive such termination.

4.4   Utility Charges.  Lessee will pay or cause to be paid all charges for electricity, power, gas, oil, water and other utilities used in the Leased Property during the Term.

4.5   Insurance Premiums.  Lessee will pay or cause to be paid all premiums for the insurance coverage required to be maintained pursuant to Article 13 during the Term.

4.6   Deposits.  At the option of Lessor, Lessee shall deposit with Lessor, on the first day of the calendar month immediately following the Commencement Date and on the first day of each calendar month thereafter (each of which dates is hereinafter referred to as a "Monthly Deposit Date") while this Lease is in effect, a sum equal to one-twelfth (1/12) of the Impositions to be levied, charged, filed, assessed or imposed upon or against the Leased Property within one (1) year after said Monthly Deposit Date and a sum equal to one-twelfth (1/12) of the premiums for the insurance policies required hereunder

-22-

which are payable within one (1) year after said Monthly Deposit Date. If the amount of the Impositions to be levied, charged, assessed or imposed or insurance premiums to be paid within the ensuing one (1) year period shall not be fixed upon any Monthly Deposit Date, such amount for the purpose of computing the deposit to be made by Lessee hereunder shall be estimated by Lessor, with an appropriate adjustment to be promptly made between Lessor and Lessee as soon as the fixed amount is determinable.

The sums deposited by Lessee under this Section 4.6 shall be held by Lessor and shall be applied in payment of the Impositions or insurance premiums, as the case may be, when due. No trust shall be created by such deposits and any such deposits may be commingled with other assets of Lessor, and in the discretion of Lessor, invested by Lessor and if so invested all interest earned thereon shall be paid to Lessee so long as no Event of Default shall exist hereunder. Lessee shall give thirty (30) days' prior written notice to Lessor in each instance when an Imposition or insurance premium is due, specifying the Imposition or premium to be paid and the amount thereof, the place of payment and the last day on which the same may be paid in order to be within the time limits specified in this Lease.

If for any reason the sums on deposit with Lessor under this Section 4.6 shall not be sufficient to pay an Imposition or insurance premium within the time specified herein, then, within ten (10) days after demand by Lessor, Lessee shall deposit sufficient sums so that Lessor may pay such Imposition or premium in full, together with any penalty and interest thereon. Lessor may change its estimate of any Imposition or insurance premium for any period on the basis of a change in an assessment or tax rate or on the basis of a prior miscalculation or for any other reason; in which event, within ten (10) days after demand by Lessor, Lessee shall deposit with Lessor the amount in excess of the sums actually deposited which would theretofore have been payable under the revised estimate.

If any Imposition shall be levied, charged, filed, assessed or imposed upon or against the Leased Property and if such Imposition shall also be a levy, charge, assessment or imposition upon or for any other real or personal property not a part of the Leased Property, then the computation of the amounts to be deposited under this Section 4.6 shall be based upon the entire amount of such Imposition and Lessee shall not have the right to apportion any deposit with respect to such Imposition.

Upon an assignment of this Lease by Lessor, Lessor shall have the right to transfer all amounts deposited pursuant to

the provisions of this Section 4.6 and still in its possession to such assignee (as the subsequent holder of this Lease) and the original Lessor named herein shall thereupon be completely released from all liability with respect to such deposits and the Lessee shall look solely to said assignee (as the subsequent holder of this Lease) in reference thereto.

All amounts deposited with Lessor pursuant to the provisions of this Section 4.6 shall be held by Lessor as additional security for the payment and performance of Lessee's obligations under this Lease and upon the occurrence of any Event of Default hereunder Lessor may, in its sole and absolute discretion, apply said amounts toward payment or performance of such obligations. Upon the expiration or earlier termination of this Lease, so long as Lessee has paid and performed all of Lessee's obligations hereunder, any sums then held by Lessor under this Section 4.6 shall be refunded to Lessee.

Lessee shall deliver to Lessor copies of all notices, demands, claims, bills and receipts in relation to the Impositions and insurance premiums immediately upon the receipt thereof by Lessee.

## ARTICLE 5

### NO LESSEE TERMINATION; ABATEMENTS OF RENT

5.1   No Lessee Termination.  Except as otherwise specifically provided in this Lease, Lessee, to the extent permitted by law, shall remain bound by this Lease in accordance with its terms and shall neither take any action without the consent of Lessor to modify, surrender or terminate the same, nor seek nor be entitled to any abatement, deduction, deferment or reduction of Rent, or set-off against the Rent, nor shall the respective obligations of Lessor and Lessee be otherwise affected by reason of (a) any damage to, or destruction of, any Leased Property or any portion thereof from whatever cause or any Taking of the Leased Property or any portion thereof, (b) the lawful or unlawful prohibition of, or restriction upon, Lessee's use of the Leased Property, or any portion thereof, or the interference with such use by any person, corporation, partnership or other entity, or by reason of eviction by paramount title; (c) any claim which Lessee has or might have against Lessor or by reason of any default or breach of any warranty by Lessor under this Lease or any other agreement between Lessor and Lessee, or to which Lessor and Lessee are parties, (d) any bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding up or other proceedings affecting Lessor or any assignee or transferee of Lessor, or (e) for any other cause whether similar or dissimilar to any of the foregoing

-24-

other than a discharge of Lessee from any such obligations as a matter of law. Lessee hereby specifically waives all rights, arising from any occurrence whatsoever, which may now or hereafter be conferred upon it by law to (i) modify, surrender or terminate this Lease or quit or surrender the Leased Property or any portion thereof, or (ii) entitle Lessee to any abatement, reduction, suspension or deferment of the Rent or other sums payable by Lessee hereunder, except as otherwise specifically provided in this Lease. The obligations of Lessor and Lessee hereunder shall be separate and independent covenants and agreements and the Rent and all other sums payable by Lessee hereunder shall continue to be payable in all events unless the obligations to pay the same shall be terminated pursuant to the express provisions of this Lease or by termination of this Lease other than by reason of an Event of Default.

5.2    <u>Abatement of Rent Procedures</u>.  In the event of a partial Taking as described in Section 15.4, a temporary Taking as described in Section 15.7, or damage to or destruction of the Leased Property as described in Article 14, which Taking, damage or destruction does not render the Leased Property Unsuitable for its Primary Intended Use, the Lease shall not terminate, but the Minimum Rent and Additional Rent shall be abated (but only after twelve (12) months, in the case of damage or destruction) to the extent that is fair, just and equitable to both Lessee and Lessor, taking into consideration all relevant factors affecting the Facility resulting from such partial Taking or damage or destruction.  If Lessor and Lessee are unable to agree upon the amount of such abatement within ninety (90) days after such partial or temporary taking or within twelve (12) months after such damage or destruction, the matter shall be submitted to arbitration.

ARTICLE 6

<u>OWNERSHIP OF LEASED PROPERTY AND PERSONAL PROPERTY; SECURITY INTEREST; REMOVAL AND REPLACEMENT OF PERSONAL PROPERTY</u>

6.1    <u>Ownership of the Leased Property</u>.  Lessee acknowledges that the Leased Property is the property of Lessor and that Lessee has only the right to the exclusive possession and use of the Leased Property upon the terms and conditions of this Lease.

6.2    <u>Personal Property; Security Interest; Removal and Replacement of Personal Property</u>.  After the commencement of this Lease, Lessee may, at its expense, install, affix or assemble or place on the Leased Property, any items of Personal Property, and such Personal Property and replacements thereof, shall be at all times the property of Lessee.  Notwithstanding the foregoing sentence, in order to secure the payment and the

-25-

performance of all of Lessee's obligations under this Lease and any obligations in any lease between Lessee or any Affiliates of Lessee, on the one hand, and Lessor or any Affiliates of Lessor, on the other hand, Lessee hereby grants to Lessor a security interest in (and hereby pledges and collaterally assigns to Lessor) all of Lessee's rights, title and interest in and to Lessee's Personal Property, all whether now existing or hereafter acquired and Lessee hereby further agrees to execute and deliver to Lessor, forthwith after demand by Lessor from time to time, any security agreement in a form determined by Lessor and such additional writings and instruments, including without limitation financing statements, as may be required by Lessor for the purpose of effectuating the intent of this sentence, and Lessee agrees that Lessor shall have with respect to all Lessee's Personal Property (in addition to all other rights hereunder), all rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to the right to use or sell Lessee's Personal Property, and Lessor shall not be required to remove any of such Personal Property from the Leased Property and in no event shall Lessor be liable to Lessee for use of such Personal Property. This instrument shall be deemed to satisfy the requirements of a security agreement and financing statement under the Uniform Commercial Code. Lessee shall not permit the Personal Property or Leased Property to become subject to any liens or encumbrances of any kind without first obtaining the prior written consent of Lessor. Lessee shall maintain during the entire Lease Term all Personal Property and shall provide at its expense all necessary replacements thereof, as may be necessary in order to operate the Facility as it is presently operated and necessary to operate the Facility in compliance with all licensure and certification requirements, in compliance with all applicable Legal Requirements and Insurance Requirements and otherwise in accordance with customary practice in the industry for the Primary Intended Use. Lessee shall in addition furnish all necessary replacements of obsolete items of the Personal Property during the term of this Lease. Lessee agrees that as of the execution hereof and upon the subsequent acquisition of any additional items of Personal Property, Lessee shall, upon request by Lessor, provide Lessor with a precise inventory of the same, as and when acquired. All of Lessee's Personal Property not removed by Lessee within ten (10) days following the expiration or earlier termination of this Lease shall be considered abandoned by Lessee and may be appropriated, sold, destroyed or otherwise disposed of by Lessor without first giving notice thereof to Lessee, without any payment to Lessee and without any obligation to account therefor. Lessee will, at its expense, restore the Leased Property to the condition required by Section 9.1(a), including repair of all damage to the Leased Property caused by the removal of Lessee's Personal Property, whether effected by Lessee or Lessor. Notwithstanding the foregoing, Lessee shall

-26-

have no right to remove any Personal Property from the Leased Premises except if such Personal Property is simultaneously replaced by equivalent personal property or upon termination of this Lease for reasons other than default by Lessee. Lessor acknowledges that certain equipment and other items of Personal Property used by Lessee in the conduct of Lessee's business on the Leased Property will be leased by Lessee from third party suppliers rather than owned by Lessee ("Third Party Leased Equipment"). The provisions of this Section 6.2 shall not apply to any Third Party Leased Equipment.

6.3    Equipment Reserves for Replacement of Personal Property. Both Lessor and Lessee agree that, before Lessor shall incur any cost or expense for necessary replacements of the Personal Property, Lessor and Lessee shall first utilize Equipment Reserves, if any, that are available under any Facility Mortgage covering the Leased Property and/or Personal Property. To the extent that Lessor incurs any cost or expense in excess of such available reserves or escrows expended for the purchase of any replacement property, Lessee shall pay as an addition to the Minimum Rent, and on the same dates, a sum equal to the fair market rental value of the replacement property.

6.4    Letter of Credit or Certificate of Deposit. In order to further secure the payment and the performance of all of Lessee's obligations under this Lease, simultaneously with the execution hereof, Lessee shall provide, in form satisfactory to Lessor, an unconditional, irrevocable letter of credit in favor of Lessor (and satisfactory to Lessor in all respects), in an amount (the "Stated Amount") equal to the Minimum Rent due for the first (1st) Lease Year hereunder (hereinafter referred to as the "Original Letter of Credit"). Without limiting the foregoing, the Original Letter of Credit must provide that it shall inure to the benefit of Lessor's successors and assigns and may be successively transferred. Lessee covenants and agrees to take all necessary actions to maintain such Original Letter of Credit in effect until the "Expiration Date" which shall be defined as the later to occur of: (a) the third anniversary of the Commencement Date or (b) the date upon which Lessee and each of the Other Lessees, taken separately, have achieved for three (3) consecutive Fiscal Quarters a ratio (herein referred to as the "Debt Coverage Ratio") of (i) Cash Flow from the respective facility for each such Fiscal Quarter to (ii) the total of all amounts paid or payable during such Fiscal Quarter or accrued for such Fiscal Quarter under this Lease (in the case of Lessee), or under the lease applicable to the facility (in the case of the leases for the Other Three Facilities), equal to or greater than 1.5. The Original Letter of Credit may be drawn upon by Lessor upon an Event of Default hereunder. Notwithstanding anything to the contrary contained herein, the Original Letter of Credit shall also provide that

-27-

Lessee and Lessor shall receive ninety (90) days' prior notice of the termination of the same by the issuer thereof.  Within sixty (60) days after such notice Lessee shall provide Lessor a substitute letter of credit, in form substantially similar to the Original Letter of Credit, to replace the Original Letter of Credit, which substitute letter of credit shall thereafter also be referred to as the Original Letter of Credit; provided, however, that no such substitute letter of credit shall be required if the letter of credit it is intended to replace will terminate on or later than the Expiration Date.

If, after the Expiration Date, the Debt Coverage Ratios of Lessee or any of the Other Lessees shall be less than 1.5 for any three (3) consecutive months at any time during the remainder of the Term of this Lease, Lessee and each Other Lessee shall deliver to Lessor, within thirty (30) days after the expiration of such consecutive months, an unconditional, irrevocable letter of credit in favor of Lessor in the Stated Amount, in substantially the same form as the Original Letter of Credit (each of which such additional letters of credit shall be referred to as an "Additional Letter of Credit"), which Additional Letter of Credit shall remain in effect until the achievement by Lessee and each of the Other Lessees, taken separately, of Debt Coverage Ratios of not less than 1.5 for three (3) consecutive Fiscal Quarters during the Term of this Lease.

At Lessee's option, in lieu of the Original Letter of Credit and Additional Letter of Credit, as additional security for Lessee's obligations under this Lease, Lessee shall obtain a certificate of deposit (the "CD"), in the Stated Amount from a bank or other financial institution acceptable to Lessor (in its sole and absolute discretion) and, simultaneously with the execution hereof, pledge the CD to Lessor by instruments (collectively referred to as the "Deposit Pledge Agreement") in form and substance satisfactory to Lessor and its attorneys. The Deposit Pledge Agreement shall remain in effect until the Expiration Date provided above for the Original Letter of Credit and, after the Expiration Date, another CD in the Stated Amount and otherwise conforming with the foregoing requirements shall be pledged to Lessor pursuant to the Deposit Pledge Agreement under the same conditions provided above for an Additional Letter of Credit.  Notwithstanding the foregoing, all interest under the CD shall accrue to the benefit of Lessee and shall not be subject to the security interest granted to Lessor pursuant to the Deposit Pledge Agreement, unless and until an Event of Default occurs under this Lease.

6.5.  <u>Pledge Agreement.</u>  In order to further secure the payment and performance of all of Lessee's obligations under this Lease, simultaneously with the execution hereof, Guarantor shall provide Lessor with a collateral pledge of stock

-28-

agreement, in form and substance satisfactory to Lessor, relating to all of the issued and outstanding capital stock of Lessee, which shall be subordinate only to a first priority collateral pledge of such stock given by Lessee to Guarantor's general line of credit lender, upon the terms and conditions set forth in an Intercreditor Agreement between Lessor's parent on behalf of Lessor and Guarantor's general line of credit lender.

## ARTICLE 7

### CONDITION AND USE OF LEASED PROPERTY

7.1  <u>Condition of the Leased Property</u>.  Lessee acknowledges receipt and delivery of possession of the Leased Property and that Lessee has examined and otherwise has acquired knowledge of the condition of the Leased Property prior to the execution and delivery of this Lease and has found the same to be in good order and repair and satisfactory for its purpose hereunder. Lessee is leasing the Leased Property "as is" in its present condition.  Lessee waives any claim or action against Lessor in respect of the condition of the Leased Property.  LESSOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, IN RESPECT OF THE LEASED PROPERTY OR ANY PART THEREOF, EITHER AS TO ITS FITNESS FOR USE, DESIGN OR CONDITION FOR ANY PARTICULAR USE OR PURPOSE OR OTHERWISE, AS TO QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, LATENT OR PATENT, IT BEING AGREED THAT ALL SUCH RISKS ARE TO BE BORNE BY LESSEE.  LESSEE ACKNOWLEDGES THAT THE LEASED PROPERTY HAS BEEN INSPECTED BY LESSEE AND IS SATISFACTORY TO IT.

Upon the request of Lessor, at any time and from time to time while this Lease remains in full force and effect, Lessee shall engage independent professional consultants, engineers and inspectors (qualified to do business in the State and acceptable to Lessor) to perform any environmental and structural investigations and other inspections of the Leased Property as Lessor may reasonably request in order to detect (A) any structural deficiencies in the Leased Property cr the utilities servicing the Leased Property or (B) the presence of any condition that may be harmful to the environment or present a health hazard to the patients and other occupants of the Facility.  In the event that Lessor determines that the results of such investigations and inspections are unsatisfactory, within thirty (30) days of notice from Lessor, Lessee shall undertake such appropriate remedial actions as may be reasonably requested by and acceptable to Lessor to correct any such unsatisfactory conditions, and shall thereafter diligently and continuously prosecute such remedial actions to completion.

7.2    <u>Use of the Leased Property</u>.

7.2.1    <u>Obligation to Operate</u>.  Lessee covenants that it will operate continuously the Leased Property in accordance with its Primary Intended Use and maintain its qualifications for licensure and accreditation as required by Legal Requirements.

7.2.2    <u>Permitted Uses; Compliance with Insurance Requirements</u>.  After the Commencement Date and during the entire Term, Lessee shall use or cause to be used the Leased Property and the improvements thereon in accordance with its Primary Intended Use and for such other uses as may be necessary in connection with or incidental to such use.  Lessee shall not use the Leased Property or any portion thereof for any other primary use without the prior written consent of Lessor [which consent shall not be unreasonably withheld or delayed].  The parties agree that consent will not be deemed to be unreasonably withheld if, in the reasonable opinion of Lessor, the proposed use will significantly alter the character or purpose or detract from the value or operating efficiency of the Leased Property, or significantly impair the revenue-producing capability of the Leased Property, or adversely affect the ability of Lessee to comply with this Lease.  No use shall be made or permitted to be made of the Leased Property and no acts shall be done which will cause the cancellation of any insurance policy covering the Leased Property or any part thereof, nor shall Lessee sell or otherwise provide to patients therein, or permit to be kept, used or sold in or about the Leased Property any article which may be prohibited by law or by the standard form of fire insurance policies, any other insurance policies required to be carried hereunder, or fire underwriters regulations.  Lessee shall, at its sole cost, comply with all of the requirements pertaining to the Leased Property or other improvements of any insurance board, association, organization or company necessary for the maintenance of the insurance, as herein provided, covering the Leased Property.

7.2.3    Lessee shall not commit or suffer to be committed any waste on the Leased Property, or in the Facility, nor shall Lessee cause or permit any nuisance thereon.

7.2.4    Lessee shall neither suffer nor permit the Leased Property or any portion thereof to be used in such a manner as (i) might reasonably tend to impair Lessor's title thereto or to any portion thereof, or (ii) may reasonably make possible a claim or claims of adverse usage or adverse possession by the public, as such, or of implied dedication of the Leased Property or any portion thereof.

7.2.5    During the Term, Lessee shall engage in no business activity other than the leasing, operation and management of the Leased Property.

7.2.6    At the Commencement Date and upon expiration or earlier termination of the Term, Lessee shall execute and deliver to Lessor on demand a letter of responsibility addressed to the Ohio Department of Health, Division of Licensure and Certification, Quality Control Program, for use by Lessor if and when Lessor takes possession of the Leased Property pursuant to the terms of this Lease pending action on Lessor's (or Lessor's nominee or assignee) application for transfer of health care licenses.

7.3    Management Agreements. Lessee shall not enter into any Management Agreement unless the terms thereof have been previously approved in writing by Lessor, and such approval shall be in Lessor's sole discretion. All management fees, payments in connection with any extension of credit and fees for services provided in connection with the operation of the Facility, payable by Lessee, to (a) Guarantor (or any of its Affiliates) or (b) any Affiliates of Lessee, shall be subordinated to all of the obligations of Lessee due under this Lease. Lessee shall not agree to any change in the manager of the Leased Property and/or the Facility, to any change in the Management Agreement, to terminate any Management Agreement or to permit the manager to assign the Management Agreement without the prior written approval of Lessor in each instance, which approval shall be subject to Lessor's sole and absolute discretion. The Management Agreement shall provide that Lessor shall be provided notice of any defaults thereunder and, at Lessor's option, an opportunity to cure such default; all in form and substance satisfactory to Lessor in its sole and absolute discretion. If Lessor shall cure any of Lessee's defaults under the Management Agreement, the cost of such cure shall be payable upon demand by Lessee to Lessor with interest accruing from the demand date at the Overdue Rate and the Lessor shall have the same rights and remedies for failure to pay such costs on demand as for Lessee's failure to pay Minimum Rent or Percentage Rent. Lessee shall deliver to Lessor any instrument requested by Lessor to implement the intent of the foregoing provision.

7.4.    Financial Covenants. At all times during the Term, Lessee shall maintain and conform with, and cause Guarantor to maintain and conform with, and Guarantor shall maintain and conform with, and cause Lessee to maintain and conform with, any and all financial covenants that are contained in the documents evidencing, securing or otherwise given in connection with Guarantor's general line of credit, as such financial covenants exist on the Commencement Date and as the same may be changed from time to time during the Term. Lessee shall provide Lessor with a detailed description of any such changes from time to time promptly after the same become effective.

-31-

In addition to and not in limitation of the foregoing, at all times during the Term Lessee shall cause Guarantor to maintain and Guarantor shall maintain:  (a) a Net Worth of not less than fifteen million dollars ($15,000,000), (b) a ratio of Consolidated Current Assets to Consolidated Current Liabilities of not less than 1 to 1, and (c) a ratio of Consolidated Indebtedness to Net Worth of no greater than 5 to 1.  Also in addition to and not in limitation of the foregoing, during the Term the Facility shall maintain a Debt Coverage Ratio of no less than 1.3 to 1 for each Fiscal Quarter.

7.5    No Default.  Lessee shall not commit any default or breach under this Lease.

## ARTICLE 8

### LEGAL AND INSURANCE REQUIREMENTS

8.1    Compliance with Legal and Insurance Requirements.  Lessee, at its expense, will promptly (a) comply with all Legal Requirements and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased Property, whether or not compliance therewith shall require structural change in any of the Leased Improvements or interfere with the use and enjoyment of the Leased Property and (b) procure, maintain and comply with all licenses, qualifications, accreditations, certificates of need, provider agreements and other authorizations required for any use of the Leased Property for the Primary Intended Use or other permitted uses then being made, and for the proper erection, installation, operation and maintenance of the Leased Property or any part thereof.

8.2    Legal Requirement Covenants.  Lessee covenants and agrees that the Leased Property shall not be used for any unlawful purpose, and Lessee shall acquire and maintain all licenses, certificates, permits, provider agreements and other authorizations and approvals needed to operate the Leased Property in its customary manner for the Primary Intended Use and any other use conducted on the Leased Property as may be permitted from time to time hereunder.  Lessee further covenants and agrees that Lessee's use of the Leased Property and maintenance, alteration, and operation of the same, and all parts thereof, shall at all times conform to all applicable local, state and federal laws, ordinances, rules and regulations and the requirements imposed upon the Land owner under the instruments referred to in Exhibit B, unless any of the same are held by a court of competent jurisdiction to be unlawful.

8.3    Permitted Contest of Certain Legal Requirements.  Unless there is a default under this Lease, Lessee may, upon

-32-

prior written notice to Lessor, contest the legality or
applicability of any law, ordinance, rule or regulation, or any
licensure or notification decision related to the operation of
the Leased Property for the Primary Intended Use or other uses
conducted thereon which are permitted by Lessor, if Lessee
maintains such action in good faith, with due diligence,
without prejudice to Lessor's rights hereunder, and at Lessee's
own expense.  If, by the terms of any such law, ordinance, rule
or regulation, compliance therewith pending the prosecution of
any such proceeding may legally be delayed without the
occurrence of any lien, charge or liability of any kind against
the Facility or Lessee's leasehold interest therein and without
subjecting Lessee or Lessor to any liability, civil or
criminal, for failure so to comply therewith, Lessee may delay
compliance therewith until the final determination of such
proceeding.  If any lien, charge or civil or criminal liability
would be incurred by reason of any such delay, Lessee, on
obtaining the prior written consent of Lessor, may nonetheless
contest as aforesaid any delay as aforesaid provided that such
delay would not subject Lessor to criminal liability and Lessee
both (a) furnishes to Lessor security reasonably satisfactory
to Lessor against any loss or injury by reason of such contest
or delay and (b) prosecutes the contest with due diligence and
in good faith.

## ARTICLE 9

### REPAIRS; RESTRICTIONS

9.1   Maintenance and Repair.

   (a)  Lessee, at its expense, will keep the Leased Property
and all private roadways, sidewalks and curbs appurtenant
thereto which are under Lessee's control in good order and
repair (whether or not the need for such repairs occurs as a
result of Lessee's use, any prior use, the elements or the age
of the Leased Property or any portion thereof) and, except as
otherwise provided in Articles 14 and 15, with reasonable
promptness, will make all necessary and appropriate repairs
thereto of every kind and nature, whether interior or exterior,
structural or non-structural, ordinary or extraordinary,
foreseen or unforeseen or arising by reason of a condition
existing prior to the commencement of the Term of this Lease
(concealed or otherwise).  Lessee shall also be obligated at
its expense to make all repairs, modifications, and renovations
necessary to comply with all licensing, safety, health and
building codes, and regulations applicable to the Leased
Property so that it can be legally operated for its Primary
Intended Use.  All repairs shall, to the extent reasonably
achievable, be at least equivalent in quality to the original
work.  Lessee will not take or omit to take any action the
taking or omission of which might materially impair the value

-33-

or the usefulness of the Leased Property or any part thereof for the Primary Intended Use.

(b)  Except to the extent provided in Articles 14 and 15 hereof, Lessor shall not under any circumstances be required to build or rebuild any improvements on the Leased Property, or to make any repairs, replacements, alterations, restorations, or renewals of any nature or description to the Leased Property, whether ordinary or extraordinary, structural or non-structural, foreseen or unforeseen, or to make any expenditure whatsoever with respect thereto in connection with this Lease, or to maintain the Leased Property in any way.

(c)  Nothing contained in this Lease and no action or inaction by Lessor shall be construed as (i) constituting the consent or request of Lessor, express or implied, to any contractor, subcontractor, laborer, materialman or vendor to or for the performance of any labor or services for the construction, alteration, addition, repair or demolition of or to the Leased Property or any part thereof, or (ii) giving Lessee any right, power or permission to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would permit the making of any claim against Lessor in respect thereof or to make any agreement that may create, or in any way be the basis for, any right, title, interest, lien, claim or other encumbrance upon the estate of Lessor in the Leased Property or any portion thereof.

9.2  Encroachments; Restrictions.  If any of the Leased Improvements shall, at any time, encroach upon any property, street or right-of-way adjacent to the Leased Property, or shall violate the agreements or conditions contained in any lawful restrictive covenant or other agreement affecting the Leased Property, or any part thereof, or shall impair the rights of others under any easement or right-of-way to which the Leased Property is subject, then promptly upon the request of Lessor, Lessee shall, at its expense, subject to its right to contest the existence of any encroachment, violation or impairment, (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation or impairment, whether the same shall affect Lessor or Lessee or (ii) make such changes in the Leased Improvements, and take such other actions, as Lessee in the good faith exercise of its judgment deems reasonably practicable, to remove such encroachment, or to end such violation or impairment, including, if necessary, the alteration of any of the Leased Improvements and in any event take all such actions as may be necessary in order to be able to continue the operation of the Leased Improvements for the Primary Intended Use substantially in the manner and to the extent the Leased Improvements were operated prior to the

assertion of such violation of encroachment. Any such alteration shall be made in conformity with the applicable requirements of Article 10. Lessee's obligations under this Section 9.2 shall be in addition to and shall in no way discharge or diminish any obligation of any insurer under any policy of title or other insurance and Lessee shall be entitled to a credit for any sums recovered by Lessor under any such policy of title or other insurance.

## ARTICLE 10

### CAPITAL ADDITIONS

10.1  Construction of Capital Additions.

(a) If no Event of Default shall have occurred and be continuing, Lessee may, subject to the terms and conditions set forth below, construct or install Capital Additions on the Leased Property with the prior written approval of Lessor, which approval shall be at Lessor's sole discretion. Lessee shall not be permitted to create any Encumbrance on the Leased Property in connection with such Capital Addition. Prior to commencing construction of any Capital Addition, Lessee shall submit to Lessor in writing a proposal setting forth in reasonable detail any proposed Capital Addition and shall provide to Lessor such plans and specifications, permits, licenses, contracts and other information concerning the proposed Capital Addition as Lessor may reasonably request. Without limiting the generality of the foregoing, such proposal shall indicate the approximate projected cost of constructing such Capital Addition, the use or uses to which it will be put and a good faith estimate of the change, if any, in the Gross Revenues that Lessee anticipates will be caused by the addition of such Capital Addition to the Leased Property.

(b) Prior to commencing construction of any Capital Addition, Lessee shall first request Lessor to provide funds to pay for such Capital Addition in accordance with the provisions of Section 10.3. If Lessor declines to provide such financing on terms acceptable to Lessee, the provisions of Section 10.2 shall apply. The parties agree that consent will not be deemed to be unreasonably withheld if such Capital Addition will significantly alter the character or purpose or detract from the value or operating efficiency of the Leased Property, or significantly impair the revenue-producing capability of the Leased Property, or adversely affect the ability of Lessee to comply with this Lease. No Capital Addition shall be made which would tie in or connect any Leased Improvements on the Leased Property with any other improvements on property adjacent to the Leased Property (and not part of the land covered by this Lease) including, without limitation, tie-ins of buildings or other structures or utilities, unless Lessee

-35-

shall have obtained the prior written approval of Lessor, which approval shall be subject to lessor's sole and absolute discretion. All proposed Capital Additions shall be architecturally integrated and consistent with the Leased Property.

10.2    Capital Additions Financed by Lessee. If Lessee provides or arranges such financing other than with Lessor or its Affiliates, this Lease shall be and hereby is amended to provide as follows:

(a)  Upon completion of any Capital Addition, Gross Revenues attributable to any and all Capital Additions paid for by Lessee shall be excluded from Gross Revenues of the Leased Property for purposes of calculating Additional Rent. The Gross Revenues attributable to such Capital Addition and all other Capital Additions, if any, financed by Lessee, shall be deemed to be an amount which bears the same proportion to the total Gross Revenues from the entire Leased Property (including all Capital Additions) as the Fair Market Added Value of all said Capital Additions financed by Lessee bears to the Fair Market Value of the entire Leased Property (including all Capital Additions) immediately after completion of the most recent such Capital Addition. The above referenced proportion of the Fair Market Added Value of Capital Additions paid for by Lessee to the Fair Market Value of the entire Leased Property expressed as a percentage is referred to herein as the "Added Value Percentage." The Added Value Percentage determined as provided above for all Capital Additions financed or paid for by Lessee shall remain in effect until any subsequent Capital Addition financed or paid for by Lessee is completed.

(b)  There shall be no adjustment in the Minimum Rent by reason of any such Capital Addition.

(c)  Upon expiration or earlier termination of this Lease (but if this Lease is terminated by reason of the uncured default of Lessee hereunder, only after Lessor is fully compensated for all damages suffered by it by reason of such default), Lessor shall compensate Lessee for all Capital Additions financed by Lessee in any of the following ways determined in the sole discretion of Lessor:

(i)    By purchasing such Capital Additions from Lessee for cash in the amount of the then Fair Market Added Value of such Capital Additions; or

(ii)   By purchasing such Capital Additions from Lessee by delivering to Lessee Lessor's purchase money promissory note in the amount of said Fair Market Added Value, all due and payable not later than five (5) years after the date of termination of

-36-

this Lease, bearing interest at the Prime Rate, interest only payable monthly in arrears, which note shall be secured by a mortgage on such Capital Additions subject to all existing mortgages and encumbrances on the Leased Property or such Capital Additions at the time of such purchase; or

(iii)     Such other arrangement regarding such compensation as shall be mutually acceptable to Lessor and Lessee.

Any Capital Additions financed by Lessee upon expiration or earlier termination of this Lease shall pass to and become the property of Lessor, free and clear of all encumbrances, subject to the obligation of Lessor hereunder to compensate Lessee for the cost of such Capital Addition as provided above.

10.3     Capital Additions Financed by Lessor.

(a)     Lessee shall request that Lessor provide or arrange financing for a Capital Addition by providing to Lessor such information about the Capital Addition as Lessor may reasonably request, including without limitation all information referred to in Section 10.1 above.  Lessor may, but shall be under no obligation to, meet the request, and within thirty (30) days of receipt of such information, Lessor shall notify Lessee as to whether it will finance the proposed Capital Addition and, if so, the terms and conditions upon which it would do so, including the terms of any amendment to this Lease (including, without limitation, an increase in Minimum Rent based on the Lessor's or its Affiliates then existing terms and prevailing conditions to compensate Lessor for the additional funds advanced by it).  In no event shall the portion of the materials, labor charges and fixtures be less than ninety percent (90%) of the total amount of such cost.  Lessee may withdraw its request by notice to Lessor at any time before or after receipt of Lessor's terms and conditions, until such time as Lessee accepts Lessor's terms and conditions.

(b)     If Lessor agrees to finance the proposed Capital Addition, Lessee shall provide Lessor with the following:

(i)     prior to any advance of funds, any information, certificates, licenses, permits or documents reasonably requested by either Lessor or any third party lender with whom Lessor has agreed or may agree to provide financing which are necessary to confirm that Lessee will be able to use the Capital Addition upon completion thereof in accordance with the Primary Intended Use,

-37-

including all required federal, state or local government licenses and approvals;

(ii)    prior to any advance of funds, an Officer's Certificate and, if requested, a certificate from Lessee's architect, setting forth in reasonable detail the projected (or actual, if available) Capital Addition Cost;

(iii)    following the advance of funds and the completion of the Capital Additions, an amendment to this Lease, duly executed and acknowledged, in form and substance reasonably satisfactory to Lessor, providing for any change in the Minimum Rent, the legal description of the Land, the Fair Market Value Purchase Price and other provisions as may be necessary or appropriate, including but not limited to an increase in the Rent and the Fair Market Value Purchase Price by an amount equal to the principal and interest on the debt incurred by Lessor to finance the Capital Addition;

(iv)    upon payment therefor, a deed conveying to Lessor title to any land acquired for the purpose of constructing the Capital Additions free and clear of any liens or encumbrances except those approved by Lessor, and, upon completion of the Capital Addition, a final as-built survey thereof reasonably satisfactory to Lessor if required by Lessor;

(v)    during and following the advance of funds and the completion of the Capital Addition, endorsements to any outstanding policy of title insurance covering the Leased Property or commitments therefor satisfactory in form and substance to Lessor (A) updating the same without any additional exception except as may be reasonably permitted by Lessor; and (B) increasing the coverage thereof by an amount equal to the Fair Market Value of the Capital Addition (except to the extent covered by the owner's policy of title insurance referred to in subparagraph (vi) below);

(vi)    following the advance of funds, if appropriate, (A) an owner's policy of title insurance insuring fee simple title to any land conveyed to Lessor pursuant to subparagraph (iv) free and clear of all liens and encumbrances except those approved by Lessor and (B) a lender's policy of title insurance reasonably satisfactory in form and

-38-

substance to Lessor and the Lending Institution advancing any portion of the Capital Additions Cost;

(vii)   following the completion of the Capital Addition, if reasonably deemed necessary by Lessor, an appraisal by Valuation Counselors, or any other M.A.I. appraiser, of the Leased Property, or an Officer's Certificate stating that the value of the Leased Property upon completion of the Capital Additions exceeds the Fair Market Value thereof prior to the commencement of such Capital Addition by an amount not less than 80% of the Capital Addition Cost.

(viii)  during or following the advancement of funds, prints of architectural and engineering drawings relating to the Capital Additions and such other certificates (including, but not limited to, endorsements increasing the insurance coverage, if any, at the time required by Section 13.1), documents, opinions of counsel, appraisals, surveys, certified copies of duly adopted resolutions of the board of directors of Lessee authorizing the execution and delivery of the lease amendment and any other instruments as may be reasonably required by Lessor and any Lending Institution advancing or reimbursing Lessee for any portion of the Capital Additions Cost.

(c)  Any new mortgage or supplement to any existing mortgage entered into by Lessor with any Lending Institution covering the Leased Property or any land referred to in subparagraph (b)(iv) above shall be subject to the rights of Lessee under this Lease, as this Lease may be amended by the lease amendment.

(d)  Upon making a request to finance a Capital Addition, whether or not such financing is actually consummated, Lessee shall pay or agree to pay when done all reasonable costs and expenses of Lessor and any Lending Institution which has committed to finance such Capital Addition paid or incurred by them in connection with the financing of the Capital Addition, including, but not limited to, (i) the reasonable fees and expenses of their respective counsel, (ii) all printing expenses, if any, (iii) the amount of any filing, registration and recording taxes and fees, if any, (iv) documentary stamp taxes, if any, (v) title insurance charges, appraisal fees, if any, and rating agency fees, if any, and (vi) commitment fees, if any.

10.4   <u>Non-Capital Additions</u>.  Lessee shall have the right and obligation to make additions, modifications or improvements to the Leased Property which are not Capital Additions from time to time as it may deem to be desirable or necessary for its uses and purposes, provided that such action will not significantly alter the character or purpose or detract from the value or operating efficiency thereof and will not significantly impair the revenue-producing capability of the Leased Property or adversely affect the ability of the Lessee to comply with the provisions of this Lease.   The cost of such Non-Capital Additions, modifications or improvements to the Leased Property shall be paid by Lessee, and all such Non-Capital Additions, modifications and improvements shall, without payment by Lessor at any time, be included under the terms of this Lease and upon expiration or earlier termination of this Lease shall pass to and become the property of Lessor.

10.5   <u>Salvage</u>.  All materials which are scrapped or removed in connection with the making of either Capital Additions permitted by Section 10.1 or repairs required by Article 9 shall be or become the property of Lessor or Lessee depending on which party is paying for such work.

ARTICLE 11

<u>LIENS</u>

Subject to the provisions of Article 12 relating to permitted contests, Lessee will not directly or indirectly create or allow to remain and will promptly discharge at its expense any lien, encumbrance, attachment, title retention agreement or claim upon the Leased Property or any attachment, levy, claim or encumbrance in respect of the Rent, not including, however, (a) this Lease, (b) the matters, if any, set forth in Exhibit B, (c) restrictions, liens and other encumbrances which are consented to in writing by Lessor, (d) liens for those taxes of Lessor which Lessee is not required to pay hereunder, (e) subleases permitted with Article 22, (f) liens for Impositions or for sums resulting from noncompliance with Legal Requirements so long as the same are not yet payable or are payable without the addition of any fine or penalty and are in the process of being contested in accordance by Article 12, (g) liens of mechanics, laborers, materialmen, suppliers or vendors for sums either disputed or not yet due, provided that (1) the payment of such sums shall not be postponed for more than sixty (60) days after the completion of the action giving rise to such lien and such reserve or other appropriate provisions as shall be required by law or generally accepted accounting principles shall have been made therefor or (2) any such liens are in the process of being contested in accordance with Article 12, and (h) any liens which are the responsibility of Lessor pursuant to the provisions of Section 36.1 of this Lease.

-40-