# EXHIBIT A PART 2

## ARTICLE 12

### PERMITTED CONTESTS

Lessee, on its own or on Lessor's behalf (or in Lessor's name), but at Lessee's expense, may contest, by appropriate legal proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any Imposition, Legal Requirement, Insurance Requirement, lien, attachment, levy, encumbrance, charge or claim not otherwise permitted by Article 11, provided that (a) in the case of an unpaid Imposition, lien, attachment, levy, encumbrance, charge or claim, the commencement and continuation of such proceedings shall suspend the collection thereof from Lessor and from the Leased Property, (b) neither the Leased Property nor any Rent therefrom nor any part thereof or interest therein would be in any immediate danger of being sold, forfeited, attached or lost, (c) in the case of a Legal Requirement, Lessor would not be in any immediate danger of civil or criminal liability for failure to comply therewith pending the outcome of such proceedings, (d) in the event that any such contest shall involve a sum of money or potential loss in excess of Fifty Thousand ($50,000) Dollars, then, in any such event, Lessee shall deliver to Lessor an Officer's Certificate and opinion of counsel, if appropriate, to the effect set forth in clauses (a), (b) and (c), to the extent applicable, (e) in the case of a Legal Requirement and/or an Imposition, lien, encumbrance or charge, Lessee shall give such reasonable security as may be demanded by Lessor to insure ultimate payment of the same and to prevent any sale or forfeiture of the affected portion of the Leased Property or the Rent by reason of such non-payment or non-compliance; provided, however, the provisions of this Article 12 shall not be construed to permit Lessee to contest the payment of Rent (except as to contests concerning the method of computation or the basis of levy of any Imposition) or any other sums payable by Lessee to Lessor hereunder, (f) in the case of an Insurance Requirement, the coverage required by Article 13 shall be maintained, and (g) if such contest be finally resolved against Lessor or Lessee, Lessee shall, as Additional Charges due hereunder, promptly pay the amount required to be paid, together with all interest and penalties accrued thereon, and otherwise comply with the applicable Legal Requirement or Insurance Requirement. Lessor, at Lessee's expense, shall execute and deliver to Lessee such authorizations and other documents as may reasonably be required in any such contest and, if reasonably requested by Lessee or if Lessor so desires, Lessor shall join as a party therein. Lessee shall indemnify and save Lessor harmless against any liability, cost or expense of any kind that may be imposed upon Lessor in connection with any such contest and any loss resulting therefrom.

## ARTICLE 13

### INSURANCE

13.1 <u>General Insurance Requirements</u>. During the Term of this Lease, Lessee shall at all times keep the Leased Property, and all property located in or on the Leased Property insured with the kinds and amounts of insurance described below. This insurance shall be written by companies authorized to do insurance business in the State. The policies must name Lessor as an additional insured and losses shall be payable to Lessor and/or Lessee as provided in Article 14. In addition, the policies shall name as an additional insured the holder ("Facility Mortgagee") of any mortgage, deed of trust or other security agreement securing any Encumbrance placed on the Leased Property in accordance with the provisions of Article 36 ("Facility Mortgage") by way of a standard form of mortgagee's loss payable endorsement. Any loss adjustment shall require the written consent of Lessor, Lessee and each affected Facility Mortgagee. Evidence of insurance shall be deposited with Lessor and, if requested, with any Facility Mortgagee(s). If any provision of any Facility Mortgage requires deposits for insurance premiums to be made with such Facility Mortgagee, Lessee shall either pay to Lessor monthly the amounts required and Lessor shall transfer such amounts to such Facility Mortgagee or, pursuant to written direction by Lessor, Lessee shall make such deposits directly with such Facility Mortgagee. The policies on the Leased Property shall insure against the following risks:

    13.1.1 <u>Property Insurance</u>. Loss or damage by fire, vandalism and malicious mischief, extended coverage perils and all physical loss perils commonly known as "All Risk" including but not limited to sprinkler leakage in an amount not less than the greater of one hundred percent (100%) of the then full replacement cost thereof (as defined below in Section 13.2) or in such amount which is economically feasible and which is acceptable to Lessor;

    13.1.2 <u>Boiler Insurance</u>. Loss or damage by explosion of steam boilers, pressure vessels or similar apparatus, now or hereafter installed in the Facility, in such limits with respect to any one accident as may be reasonably requested by Lessor from time to time;

    13.1.3 <u>Rental Insurance</u>. Loss of rental under a rental value insurance policy and/or business interruption insurance covering Lessor's risk of loss during the first twelve (12) months of reconstruction necessitated by the occurrence of any of the hazards described in Sections 13.1.1 or 13.1.2 in an amount sufficient to prevent Lessor from becoming a co-insurer and to cover two (2) years Rent (including Additional Rent and Additional Charges);

13.1.4 <u>Liability Insurance</u>. Claims for personal injury or property damage under a policy of comprehensive general public liability insurance including coverages commonly found in the Broad Form Comprehensive General Liability Endorsement with amounts not less than Five Million Dollars ($5,000,000) per occurrence in respect of bodily injury and death and Three Million Dollars ($3,000,000) for property damage;

13.1.5 <u>Malpractice Insurance</u>. Claims arising out of malpractice in an amount not less than Five Million Dollars ($5,000,000) for each person and Ten Million Dollars ($10,000,000) for each medical incident;

13.1.6 <u>Flood Insurance</u>. Flood (when the Leased Property is located in whole or in part within a designated flood plain area) and such other hazards and in such amounts as may be customary for comparable properties in the area and if available from insurance companies authorized to do business in the state in which the Leased Property is located at rates which are economically practicable in relation to the risks covered.

13.1.7 <u>Worker's Compensation and Employers Liability Insurance</u>. Claims arising out of injuries to all employees of Lessee in amounts equal, for Workers' Compensation, to the statutory benefits payable to employees in the State and, for Employers Liability, to limits of One Hundred Thousand Dollars ($100,000) for injury by accident, One Hundred Thousand Dollars ($100,000) per employee for disease and a Five Hundred Thousand Dollar ($500,000) disease policy limit.

13.2 <u>Replacement Cost</u>. The term "full replacement cost" as used herein, shall mean the actual replacement cost thereof from time to time, including increased cost of construction endorsement, less exclusions provided in the normal fire insurance policy. In the event either party believes that the full replacement cost has increased or decreased at any time during the Term, it shall have the right from time to time to have such full replacement cost redetermined by a competent, professional and impartial appraiser. The party desiring to have the full replacement cost so redetermined shall forthwith, on receipt of such determination by such impartial appraiser, give written notice thereof to the other party hereto. The determination of such impartial appraiser shall be final and binding on the parties hereto, and Lessee shall forthwith increase, or may decrease, the amount of the insurance carried pursuant to this Article, as the case may be, to the amount so determined by the impartial appraiser. Each party shall pay one-half (1/2) of the fee, if any, of the impartial appraiser.

-43-

13.3  <u>Additional Insurance</u>.  In addition to the insurance described above, Lessee shall maintain such additional insurance as may be required from time to time by any Facility Mortgagee and shall further at all times maintain adequate worker's compensation insurance coverage for all persons employed by Lessee on the Leased Property, in accordance with the requirements of applicable local, state and federal law.

13.4  <u>Waiver of Subrogation</u>.  All insurance policies carried by either party covering the Leased Property including without limitation, contents, fire and casualty insurance, shall expressly waive any right of subrogation on the part of the insurer against the other party so long as their policies will include such a waiver clause or endorsement and the same is obtainable without extra cost, and in the event of such an extra charge the other party, at its election, may pay the same, but shall not be obligated to do so.

13.5  <u>Form of Insurance</u>.  All of the policies of insurance referred to herein shall be written in form reasonably satisfactory to Lessor and by insurance companies reasonably satisfactory to Lessor and shall comply with the requirements imposed by any Facility Mortgagee.  Lessor agrees that it will not unreasonably withhold its approval as to the form of the policies of insurance or as to the insurance companies selected by Lessee.  Lessee shall pay all of the premiums therefor, and deliver such policies or certificates thereof to Lessor prior to their effective date (and, with respect to any renewal policy, at least ten (10) days prior to the expiration of the existing policy) and in the event of the failure of Lessee either to effect such insurance in the names herein called for or to pay the premiums therefor or to deliver such policies or certificates thereof to Lessor at the times required, Lessor shall be entitled, but shall have no obligation, to effect such insurance and pay the premiums therefor, which premiums shall be repayable to Lessor with interest at the Overdue Rate upon written demand therefor, and failure to repay the same with interest within thirty (30) days after such demand shall constitute an Event of Default within the meaning of Section 16.1(c).  Each insurer mentioned in this Section shall agree, by endorsement on the policy or policies issued by it, or by independent instrument furnished to Lessor, that it will give to Lessor thirty (30) days' written notice before the policy or policies in question shall be altered, allowed to expire or cancelled.

13.6  <u>Increase in Limits</u>.  In the event that either party shall at any time deem the limits of the personal injury or property damage public liability insurance then carried to be either excessive or insufficient, the parties shall endeavor to agree on the proper and reasonable limits for such insurance to be carried and such insurance shall thereafter be carried with

-44-

the limits thus agreed on until further change pursuant to the provisions of this Section. If the parties shall be unable to agree thereon, the proper and reasonable limits for such insurance to be carried and such insurance shall be determined by an impartial third party selected by the parties. Nothing herein shall permit the amount of insurance to be reduced below the amount or amounts required by any Facility Mortgage.

13.7 <u>Blanket Policy</u>. Notwithstanding anything to the contrary contained herein, Lessee's obligations to carry the insurance provided for herein may be brought within the coverage of a so-called blanket policy or policies of insurance carried and maintained by Lessee; provided, however, that the coverage afforded Lessor will not be reduced or diminished or otherwise be different from that which would exist under a separate policy meeting all other requirements of this Lease by reason of the use of such blanket policy of insurance, and provided further that the requirements of this Article 13 are otherwise satisfied.

13.8 <u>No Separate Insurance</u>. Lessee shall not, on Lessee's own initiative or pursuant to the request or requirement of any third party, take out separate insurance concurrent in form or contributing in the event of loss with that required in this Article to be furnished by, or which may reasonably be required to be furnished by, Lessee, or increase the amounts of any then existing insurance by securing an additional policy or additional policies, unless all parties having an insurable interest in the subject matter of the insurance, including in all cases Lessor and all Facility Mortgagees, are included therein as additional insureds and the loss is payable under said insurance in the same manner as losses are required to be payable under this Lease. Lessee shall immediately notify Lessor of the taking out of any such separate insurance or of the increasing of any of the amounts of the then existing insurance by securing an additional policy or additional policies.

ARTICLE 14

FIRE AND CASUALTY

14.1 <u>Insurance Proceeds.</u> Except as otherwise required by a Facility Mortgagee, all proceeds payable by reason of any loss or damage to the Leased Property, or any portion thereof, and insured under any policy of insurance required by Article 13 of this Lease shall be paid to Lessor and held by Lessor in trust (subject to the provisions of Section 14.7) and shall be made available for reconstruction or repair, as the case may be, of any damage to or destruction of the Leased Property, or any portion thereof, and shall be paid out by Lessor from time to time subject to the provisions hereof for the reasonable cost

of such reconstruction or repair. Any excess proceeds of insurance remaining after the completion of the restoration or reconstruction of the Leased Property (or in the event neither Lessor nor Lessee is required or elects to repair and restore, all such insurance proceeds) shall be retained by Lessor free and clear upon completion of any such repair and restoration except as otherwise specifically provided below in this Article 14. All salvage resulting from any risk covered by insurance shall belong to Lessor except that any salvage relating to Lessee's Personal Property shall belong to Lessee.

    14.2    <u>Reconstruction in the Event of Damage or Destruction Covered by Insurance.</u>

    14.2.1    Except as provided in Section 14.7, if during the Term, the Leased Property is totally or substantially destroyed from a risk covered by the insurance described in Article 13 and the Facility thereby is rendered Unsuitable for Its Primary Intended Use, Lessee shall have the option, by giving notice to Lessor within sixty (60) days following the date of such destruction, to (a) restore the Facility to substantially the same condition as existed immediately before the damage or destruction, or (b) acquire the Leased Property from Lessor at the Fair Market Value to be determined as of the day immediately prior to such damage or destruction in which event Lessee shall be paid the insurance proceeds or (c) terminate this Lease, in which event Lessor shall be entitled to retain the insurance proceeds provided, however, that Lessee shall only have such right of termination effective upon recovery by Lessor of such insurance proceeds and, in the event such proceeds are in an amount less than the amount specified in Section 13.1.1 hereof, Lessee may only terminate upon payment of the amount of such short-fall in cash to Lessor at the time notice to terminate is given.

    14.2.2    Except as provided in Section 14.7, if during the Term, the Leased Improvements and/or the Fixtures are totally or partially destroyed from a risk covered by the insurance described in Article 13, but the Facility is not thereby rendered Unsuitable for its Primary Intended Use, Lessee shall restore the Facility to substantially the same condition as existed immediately before the damage or destruction. Such damage or destruction shall not terminate this Lease; provided, however, if Lessee, after exercise of diligent efforts, cannot within a reasonable time obtain all necessary governmental approvals, including building permits, licenses, conditional use permits and any certificates of need, after diligent efforts to do so, in order to be able to perform all required repair and restoration work and to operate the Facility for its Primary Intended Use in substantially the manner as immediately prior to such damage or destruction, Lessee may either (i) acquire the Leased Property from Lessor pursuant to Article 18

-46-

with the closing of such acquisition to take place no later than ninety (90) days and no earlier than thirty (30) days after notice of exercise of such purchase right given by Lessee to Lessor, at a purchase price equal to the Fair Market Value of the Leased Property determined as of immediately prior to such damage or destruction, in which event Lessee shall be paid the insurance proceeds at the closing of such acquisition, but such amounts shall be included in determining the fair market value of the purchase price, or (ii) terminate this Lease in which event Lessor shall be entitled to retain the insurance proceeds; provided, however, that Lessee shall only have such right of termination effective upon recovery by Lessor of such insurance proceeds and in the event such proceeds are in an amount less than the amount specified in Section 13.1.1 hereof plus the difference between Fair Market Value of the Leased Property and said insurance proceeds (less land value), Lessee may only terminate upon payment of the amount of such short-fall in cash to Lessor at the time notice to terminate is given.

14.2.3   If the cost of the repair or restoration exceeds the amount of proceeds received by Lessor from the insurance required under Article 13, Lessee shall be obligated to contribute any excess amount needed to restore the Facility. Such amount shall be paid by Lessee to Lessor to be held in trust together with any other insurance proceeds for application to the cost of repair and restoration.

14.3   Reconstruction in the Event of Damage or Destruction Not Covered by Insurance.   Except as provided in Section 14.7 below, if during the Term, the Facility is totally or materially destroyed from a risk (including earthquake) not covered by the insurance described in Article 13, whether or not such damage or destruction renders the Facility Unsuitable for Its Primary Intended Use, Lessee shall restore the Facility to substantially the same condition as it was in immediately before such damage or destruction and such damage or destruction shall not terminate this Lease.

14.4   Lessee's Property.   All insurance proceeds payable by reason of any loss of or damage to any of Lessee's Personal Property or Capital Additions financed by Lessee shall be paid to Lessee or, if Lessee self-insures, allocated by Lessee to Lessee, and Lessee shall hold such insurance or self-insurance proceeds in trust to pay the cost of repairing or replacing damaged Lessee's Personal Property or Capital Additions paid for or financed by Lessee.

14.5   Restoration of Lessee's Property.   If Lessee is required or elects to restore the Facility as provided in Section 14.2 or 14.3, Lessee shall either (i) restore all alterations and improvements made by Lessee, Lessee's Personal

Property and all Capital Additions paid for or financed by Lessee, or (ii) replace such alterations and improvements, Lessee's Personal Property, and/or Capital Additions with improvements or items of the same or better quality and utility in the operation of the Leased Property.

14.6    <u>Abatement of Rent</u>.  This Lease shall remain in full force and effect and Lessee's obligation to make rental payments and to pay all other charges required by this Lease shall remain unabated during the first six (6) months of any period required for repair and restoration, unless such rental payments are being made from the proceeds of rental insurance as provided for in Section 13.1.3.  Thereafter, payments of Minimum Rent shall be abated as provided in Section 5.2.

14.7    <u>Damage Near End of Term</u>.  Notwithstanding any provisions of Sections 14.2 or 14.3 to the contrary, if damage to or destruction of the Facility occurs during the last twenty-four (24) months of the Term, and if such damage or destruction cannot be fully repaired and restored within six (6) months immediately following the date of loss, Lessor shall have the right to terminate this Lease by giving notice to Lessee within thirty (30) days after the date of damage or destruction in which event Lessor shall retain the insurance proceeds, Lessee shall pay to Lessor, in the event such proceeds are less than the amounts specified in Section 13.1.1 hereof, the difference between Fair Market Value of the Leased Property immediately prior to such damage or casualty and said insurance proceeds (less land value).

14.8    <u>Termination of First Refusal</u>.  Any termination of this Lease pursuant to this Article 14 shall cause Lessee's first refusal right under Article 32 of this Lease to be terminated and to be without further force or effect.

14.9    <u>Waiver</u>.  Lessee hereby waives any statutory rights of termination which may arise by reason of Lessee's damage or destruction of the Facility which Lessee is obligated to restore or may restore under any of the provisions of this Lease.

ARTICLE 15

CONDEMNATION

15.1    <u>Definitions</u>.

15.1.1 "Condemnation" means (a) the exercise of any governmental power, whether by legal proceedings or otherwise, by a Condemnor or (b) a voluntary sale or transfer by Lessor to any Condemnor, either under threat of Condemnation or while legal proceedings for Condemnation are pending.

-48-

15.1.2 "Date of Taking" means the date the Condemnor has the right to possession of the property being condemned.

15.1.3 "Award" means all compensation, sums or anything of value awarded, paid or received on a total or partial Condemnation.

15.1.4 "Condemnor" means any public or quasi-public authority, or private corporation or individual, having the power of condemnation.

15.2  Parties' Rights and Obligations.  If during the Term there is any Taking of all or any part of the Leased Property or any interest in this lease by Condemnation, the rights and obligations of the parties shall be determined by this Article 15.

15.3  Total Taking.  If there is a Taking of all of the Leased Property by Condemnation, this Lease shall terminate on the Date of Taking.

15.4  Partial Taking.  If there is a Taking of a portion of the Leased Property by Condemnation, this Lease shall remain in effect if the Facility is not thereby rendered Unsuitable for Its Primary Intended Use.  If, however, the Facility is thereby rendered Unsuitable for its Primary Intended Use, Lessor may, at Lessor's option, terminate this Lease as of the date when Lessee is required to surrender possession of the portion of the Leased Property so taken.  If Lessor does not exercise this option, Lessee shall, at Lessee's option, either (a) promptly restore the Facility, at its own expense, to the extent possible, to substantially the same condition as existed immediately before the partial Taking, or (b) acquire the Leased Property from Lessor pursuant to Article 18 with the closing of such acquisition to take place no later than ninety (90) days and no earlier than thirty (30) days after notice of exercise of such purchase right given by Lessee to Lessor, at a purchase price equal to the Fair Market Value of the Leased Property determined as of the day immediately prior to such partial Taking, in which event this Lease shall terminate upon payment of the purchase price.  Lessor shall exercise its option to terminate by giving Lessee notice thereof within sixty (60) days after Lessor receives notice of the Taking.  If this Lease is not so terminated, Lessee shall notify Lessor, within ninety (90) days after Lessor receives notice of the Taking, of Lessee's decision as to which option, (a) or (b) above, Lessee will pursue, and Lessee shall be entitled to abatement of Rent as provided in Section 5.2, effective as of the date upon which the Leased Property is rendered Unsuitable for its Primary Intended Use.

15.5   **Restoration.**  If there is a partial Taking of the Leased Property and this Lease remains in full force and effect pursuant to Section 15.4, Lessee shall accomplish all necessary restoration.  If the cost of the restoration exceeds the amount of the Award, Lessee shall be obligated to contribute any excess amount needed to restore the Facility.

15.6   **Award Distribution.**  In the event Lessee purchases the Leased Property, as described in Section 15.4, the entire Award shall belong to Lessee and Lessor agrees to assign to Lessee all of its rights thereto.  In any other event, the entire Award shall belong to and be paid to Lessor, except that, if this Lease is terminated, and subject to the rights of any Facility Mortgagee, Lessee shall be entitled to receive from the Award, if and to the extent such Award specifically includes such items, the following:

15.6.1   A sum attributable to the value, if any, of the leasehold interest of Lessee under this Lease; and

15.6.2   A sum attributable to the value of any personal property placed on the Leased Property by and belonging to Lessee and any reasonable removal and relocation costs included in the Award.

If Lessee is required or elects to restore the Facility, Lessor agrees that, subject to the rights of any Facility Mortgagee, its portion of the Award shall be used for such restoration and it shall hold such portion of the Award in trust, for application to the cost of the restoration.

15.7   **Temporary Taking.**  The Taking of the Leased Property, or any part thereof, by military or other public authority shall constitute a Taking by Condemnation only when the use and occupancy by the Taking authority has continued for longer than six (6) months.  During any such six (6) month period all the provisions of this Lease shall remain in full force and effect except that the Minimum Rent and Additional Rent shall be abated or reduced during such period of Taking as provided in Section 5.2.

ARTICLE 16

DEFAULT

16.1   **Events of Default.**  If any one or more of the following events (individually, an "Event of Default") shall occur:

(a)   an Event of Default shall occur under any other lease transaction, loan transaction or other agreement between Lessor (or any Affiliate of Lessor), on the one hand, and Lessee (or

-50-

any Affiliate of Lessee) and/or Guarantor (or any Affiliate of Guarantor), on the other hand, including without limitation, the three (3) lease transactions of even date herewith between Lessor and Affiliates of Lessee relating to the Other Three Facilities and those lease or loan transactions identified in Exhibit C attached hereto, or

(b) if Lessee shall fail to make a payment of the Rent payable by Lessee under this Lease when the same becomes due and payable or to maintain the letter of credit required under Section 6.5 and such failure is not cured by Lessee within a period of seven (7) days after receipt by Lessee of notice thereof from Lessor, or

(c) if Lessee shall fail to observe or perform any other term, covenant or condition of this Lease and such failure is not cured by Lessee within a period of thirty (30) days after receipt by Lessee of notice thereof from Lessor, unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if Lessee proceeds promptly and with due diligence to cure the failure and diligently completes the curing thereof, or

(d) the estate created hereby shall be taken by execution or by process of law, or

(e) the filing by or against Lessee or Guarantor of any petition under Federal or state law pertaining to bankruptcy or insolvency or for a reorganization or other relief; provided, however, that it shall not be an Event of Default if, in the case of such filing against Lessee or Guarantor, the action is dismissed within sixty (60) days of such filing, or

(f) a receiver, trustee or similar officers' or creditors' committee shall be appointed to take charge of any property of or to operate or wind up the affairs of Lessee or Guarantor, or

(g) if Lessee or Guarantor shall:

    (i) admit in writing its inability to pay its debts generally as they become due,

    (ii) file a petition in bankruptcy or a petition to take advantage of any insolvency act,

    (iii) make an assignment, trust, mortgage or other transfer in trust or otherwise for the benefit of its creditors,

-51-

  (iv)  consent to the appointment of a receiver of itself or of the whole or any substantial part of its property, or

  (v)  file a petition or answer seeking reorganization or arrangement under the Federal bankruptcy laws or any other applicable law or statue of the United States of America or any state thereof, or

  (vi)  commit any act which would permit the entry of an order for relief under the Bankruptcy Reform Act of 1978 (or any successor thereto), or

  (vii)  make or offer a composition of Lessee's or Guarantor's debts, as the case may be, with its creditors, or

(h) if Lessee or Guarantor shall be liquidated or dissolved, or shall begin proceedings toward such liquidation or dissolution, or shall, in any manner, permit the sale or divestiture of substantially all of its assets other than in connection with a merger or consolidation of Lessee into, or a sale of Lessee or substantially all of Lessee's assets to, another corporation, provided that if the survivor of such merger or the purchaser of such assets shall assume all of Lessee's obligations under this Lease by a written instrument, in form and substance reasonably satisfactory to Lessor, accompanied by an opinion of counsel, reasonably satisfactory to Lessor and addressed to Lessor stating that such instrument of assumption is valid, binding and enforceable against the parties thereto in accordance with its terms (subject to usual bankruptcy and other creditors' rights exceptions), and provided, further, that if, immediately after giving effect to any such merger, consolidation or sale, Lessee or such other corporation (if not the Lessee) surviving the same, together with Guarantor, shall have a Consolidated Net Worth not less than the Consolidated Net Worth of Lessee and Guarantor immediately prior to such merger, consolidation of sale, all as to be set forth in an Officer's Certificate delivered to Lessor within a reasonable period of time after such merger, consolidation or sale and provide Lessor an estoppel certificate from the Guarantor recognizing full liability under the Guaranty notwithstanding the sale or merger and such other sufficient security for the obligations under this Lease as Lessor may request (including further guaranties), an Event of Default shall not be deemed to have occurred, or

(i) if the estate or interest of Lessee in the Leased Property or any part thereof shall be levied upon or attached in any proceeding and the same shall not be vacated or

-52-

discharged within the later of (i) one hundred and twenty (120) days after commencement thereof, unless the amount in dispute is less than $5,000, in which case Lessee shall give notice to Lessor of the dispute but Lessee may defend in any suitable way, and (ii) thirty (30) days after receipt by Lessee of notice thereof from Lessor (unless Lessee shall be contesting such lien or attachment in good faith in accordance with Article 12 hereof), or

    (j)  if, except as a result of damage, destruction or a partial or complete Condemnation, Lessee voluntarily ceases operations on the Leased Property for a period in excess of two hundred seventy (270) days, or

    (k)  if any of the representations or warranties made in Article 6 of the Purchase and Sale Agreement proves to be untrue when made in any material respect, which circumstance materially and adversely affects Lessor, and is not cured within thirty (30) days after receipt by Lessee of notice from Lessor thereof, or

    (l)  if Guarantor fails to make any payment when due under the Guaranty or if any other default shall occur under the Guaranty which is not cured within thirty (30) days after notice, or

    (m)  upon the occurrence of any default by Lessee or Guarantor under any credit or other financing agreement in connection with Lessee's or Guarantor's major lines of credit, which is not cured within five (5) days, or

    (n)  an error in excess of one percent (1%) in the amount of Lessee's Gross Revenues used to calculate payments of Additional Rent shall be disclosed for any Lease Year as a result of any inspection and/or audit described in Section 3.3, unless such error is attributable to incorrect estimates of contractual adjustments under Medicare cost reports, or

    (o)  Lessee shall vacate or abandon the Leased Property, or

    (p)  if any malpractice award or judgment exceeding any applicable malpractice insurance coverage by more than **FIVE HUNDRED THOUSAND DOLLARS ($500,000)** shall be rendered against Lessee and either (i) enforcement proceedings shall have been commenced by any creditor upon such award or judgment or (ii) such award or judgment shall continue unsatisfied and in effect for a period of ten (10) consecutive days without an insurance company satisfactory to Lessor (in its sole and absolute discretion) having agreed to fund such award or judgment in a manner satisfactory to Lessor (in its sole and absolute discretion) and in either case such award or judgment

shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q) if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r) if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease. Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2   Certain Remedies.   If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

-54-

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

In the event Lessor terminates this Lease pursuant to Section 16.1, Lessee agrees that, from and after the date of such termination until the fifth anniversary thereof, neither Lessee nor any Person holding or controlling, directly or indirectly, any interest in Lessee, shall be involved in any capacity in or lend any of their names to or engage in any capacity in any nursing home facility, center, unit or program (or in any partnership, firm, company, corporation or other entity engaged in any such activity or any related activity competitive therewith), whether such competitive activity shall be as an officer, director, owner, employee, agent, advisor, independent contractor, developer, lender, sponsor, venture capitalist, administrator, manager, investor, partner, joint venturer, consultant or other participant in any capacity whatsoever within a ten (10) mile radius of the Leased Property. Lessee acknowledges any such competition by Lessee would cause irreparable harm to Lessor. The within restriction on competition is given by Lessee to induce Lessor to enter into this Lease. Notwithstanding the foregoing, there are excluded from the foregoing restrictions (i) the Other Three Facilities, (ii) the Hickory Creek Nursing Home, Dayton, Ohio, the Brook Haven Nursing Home, Dayton, Ohio and the Brook Villas Nursing Home, Dayton, Ohio, each of which is managed by an Affiliate of Lessee, and (iii) so long as Lessee shall have obtained the prior written approval of Lessor to ownership or management of additional heath care facilities within the ten (10) mile radius, which approval may be withheld by Lessor in the exercise of Lessor's sole and absolute discretion, any other health care facility within the ten (10) mile radius so approved by Lessor and owned or managed by Lessee or any person holding or controlling, directly or indirectly, any interest in Lessee, so long as such facility or right to manage such facility was acquired prior to the Event of Default forming the basis for termination of this Lease.

Lessee hereby acknowledges and agrees that none of the time span, scope or area covered by the foregoing restrictive covenants is or are unreasonable and that it is the specific intent of Lessee that each and all of the restrictive covenants set forth hereinabove shall be valid and enforceable as specifically set forth herein. Lessee further agrees that these restrictions are special, unique, extraordinary and

-55-

reasonably necessary for the protection of Lessor and that the violation of any such covenant by Lessee would cause irreparable damage to the Lessor for which a legal remedy alone would not be sufficient to fully protect Lessor.

Therefore, in addition to and without limiting any other remedies available at law or hereunder, in the event that Lessee breaches any of its restrictive covenants hereunder or shall threaten breach of any of such covenants, then Lessor shall be entitled to obtain equitable remedies, including specific performance and injunctive relief, to prevent or otherwise restrain a breach of this Subsection 16.2 (without the necessity of posting a bond) and to recover any and all costs and expenses (including, without limitation, attorneys' reasonable fees and expenses and court costs) incurred in enforcing the provisions of this Subsection 16.2 against Lessee. The existence of any claim or cause of action of Lessee against Lessor, whether predicated on this Lease or otherwise, shall not constitute a defense to the enforcement by Lessor of the foregoing restrictive covenants and Lessee shall not defend on the basis that there is an adequate remedy at law.

Without limiting any other provision of this Lease, the parties hereto acknowledge that the foregoing restrictive covenants are severable and separate. If at any time any of the foregoing restrictive covenants shall be deemed invalid or unenforceable by a court having jurisdiction over this Lease, by reason of being vague or unreasonable as to duration, or geographic scope or scope of activities restricted, or for any other reason, such covenants shall be considered divisible as to such portion and such covenants shall be immediately amended and reformed to include only such covenants as are deemed reasonable and enforceable by the court having jurisdiction over this Lease to the full duration, geographic scope and scope of restrictive activities deemed reasonable and thus enforceable by said court; and the parties agree that such covenants as so amended and reformed, shall be valid and binding as through the invalid or unenforceable portion has not been included therein.

The provisions of this Subsection 16.2 shall survive the termination of this Lease.

16.3  <u>Damages.</u>  Neither (a) the termination of this Lease pursuant to Section 16.1, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, nor (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting. In the event of any

such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination. Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

(A) the sum of:

   (i) the worth, on the date of the award described below, of the unpaid Rent which has been earned at the time of termination,

   (ii) the worth, on the date of the award, of the amount by which the Rent that would have been earned after termination until the date of the award exceeds the amount of such rental loss that Lessee proves could have been reasonably avoided,

   (iii) the worth, on the date of the award, of the amount by which the unpaid Rent for the balance of the Term after the date of the award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided, and

   (iv) any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom.

   In making the above determinations, the worth on the date of the award shall be determined by a court having jurisdiction thereof using the lowest rate of capitalization (highest present worth) reasonably applicable at the time of such determination and allowed by applicable law and the Additional Rent shall be deemed to be the same as for the then current Fiscal Year or, if not determinable, the immediately preceding Fiscal Year, for the remainder of the Term, or such other amount as either party shall prove reasonably could have been earned during the remainder of the Term or any portion thereof,

or (B) without termination of the Lessee's right to possession of the Leased Property, each installment of said Rent and other sums payable by Lessee to Lessor under this Lease as the same becomes due and payable, which Rent and other sums shall bear interest at 18% per annum or the Overdue Rate, whichever is greater, from the date when due until paid, but in no event shall such rate of interest be greater than the maximum permitted under Ohio law, and Lessor may enforce, by action or otherwise, any other term or covenant of this Lease.

16.4 Waiver. If this Lease is terminated pursuant to Section 16.1, Lessee waives, to the extent permitted by applicable law, (a) any right of redemption, re-entry or

-57-

repossession, (b) any right to a trial by jury in the event of summary proceedings to enforce the remedies set forth in this Article 16, and (c) the benefit of any laws now or hereafter in force exempting property from liability for rent or for debt. If Lessor shall commence proceedings for non-payment of Rent, or any other payment of any kind to which Lessor may be entitled or which Lessor may claim hereunder, Lessee shall not interpose any counterclaim or setoff of whatever nature or description (other than compulsory counterclaims) in any such proceeding; the parties hereto specifically agreeing that Lessee's covenants to pay Rent and other sums hereunder are independent of all other covenants herein contained.

16.5  **Application of Funds.**  Any payments otherwise payable to Lessee which are received by Lessor under any of the provisions of this Lease during the existence or continuance of any Event of Default shall be applied to Lessee's obligations in the order which Lessor may reasonably determine or as may be prescribed by the laws of the state in which the Facility is located.

16.6  **Failure to Conduct Business.**  For the purpose of determining rental loss damages or Additional Rent, in the event Lessee fails to conduct business upon the Leased Property, exact damages or the amount of Additional Rent being therefore unascertainable, it shall be deemed that the Additional Rent for such period would be equal to the highest annual Percentage Rent during the five (5) preceding Fiscal Years or such shorter period of time as the Lease is in force.

16.7  **Costs of Enforcement.**  If an Event of Default shall have occurred and Lessor places the enforcement of this Lease or any part thereof or the collection of any Rent due or to become due hereunder, or recovery of the possession of the Leased Property, in the hands of an attorney, or files suit upon the same, Lessee agrees to pay Lessor reasonable attorneys' fees and costs, whether or not suit is instituted. If suit is instituted, Lessee agrees to pay Lessor's reasonable attorney's fees and costs incurred at the trial level and at all levels of appeal.

## ARTICLE 17

## LESSOR'S RIGHT TO CURE

If Lessee shall fail to make any payment, or to perform any act required to be made or performed under this Lease and to cure the same within the relevant time periods provided in Section 16.1, Lessor, after notice to and demand upon Lessee, and without waiving or releasing any obligation or Event of Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for

-58-

the account and at the expense of Lessee, and may, to the extent permitted by law, enter upon the Leased Property for such purpose and take all such action thereon as, in Lessor's opinion, may be necessary or appropriate therefor. No such entry shall be deemed an eviction of Lessee. All sums so paid by Lessor and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses, in each case, to the extent permitted by law) so incurred, together with a late charge thereon (to the extent permitted by law) at the Overdue Rate from the date on which such sums or expenses are paid or incurred by Lessor, shall be paid by Lessee to Lessor on demand. The obligations of Lessee and rights of Lessor contained in this Article shall survive the expiration or earlier termination of this Lease.

## ARTICLE 18

## PURCHASE OF THE LEASED PROPERTY

In the event Lessee purchases the Leased Property from Lessor pursuant to any of the terms of this Lease, Lessor shall, upon receipt from Lessee of the applicable purchase price, together with full payment of any unpaid Rent due and payable with respect to any period ending on or before the date of the purchase, deliver to Lessee an appropriate special warranty deed or other instrument of conveyance conveying the entire interest of Lessor in and to the Leased Property to Lessee free and clear of all encumbrances other than (i) those that Lessee has agreed hereunder to pay or discharge, (ii) mortgage liens, if any, which Lessee has agreed in writing to accept and to take title subject to, and (iii) any other encumbrances permitted to be imposed on the Leased Property under the provisions of Article 36 which are assumable at no cost to Lessee or to which Lessee may take subject without cost to Lessee. The difference between the applicable purchase price and the total of the encumbrances assigned or taken subject to shall be paid in cash to Lessor, or as Lessor may direct, in federal or other immediately available funds except as otherwise mutually agreed by Lessor and Lessee. The closing of any such sale shall be contingent upon and subject to Lessee obtaining all required governmental consents and approvals for such transfer and if such sale shall fail to be consummated by reason of the inability of Lessee to obtain all such approvals and consents, then this Lease shall remain in effect on a month-to-month basis until the consummation of the purchase or until Lessee's inability to obtain the approvals and consents is confirmed. All expenses of such conveyance, including, without limitation, the cost of title examination or standard coverage title insurance, attorneys' fees incurred by Lessor in connection with such conveyance, and transfer taxes, shall be paid by Lessee. Recording fees and similar charges shall be paid for by Lessee.