# EXHIBIT A PART 3

## ARTICLE 19

## HOLDING OVER

If Lessee shall for any reason remain in possession of the Leased Property after the expiration of the Term or any earlier termination of the Term hereof, such possession shall be as a month-to-month tenant during which time Lessee shall pay as rental each month, one and one-half times the aggregate of (i) one-twelfth of the aggregate Minimum Rent and Additional Rent payable with respect to the last complete Lease Year prior to the expiration of the Term; (ii) all Additional Charges accruing during the month and (iii) all other sums, if any, payable by Lessee pursuant to the provisions of this Lease with respect to the Leased Property.   During such period of month-to-month tenancy, Lessee shall be obligated to perform and observe all of the terms, covenants and conditions of this Lease, but shall have no rights hereunder other than the right, to the extent given by law to month-to-month tenants, to continue its occupancy and use of the Leased Property.   Nothing contained herein shall constitute the consent, express or implied, of Lessor to the holding over of Lessee after the expiration or earlier termination of these Lease.

## ARTICLE 20

## RISK OF LOSS

During the Term of this Lease, the risk of loss or of decrease in the enjoyment and beneficial use of the Leased Property in consequence of the damage or destruction thereof by fire, the elements, casualties, thefts, riots, wars or otherwise, or in consequence of foreclosures, attachments, levies or executions (other than by Lessor and those claiming from, through or under Lessor) is assumed by Lessee and, in the absence of the gross negligence, willful misconduct or default in the performance of Lessor's obligations pursuant to Section 16, Lessor shall in no event be answerable or accountable therefor nor shall any of the events mentioned in this Section entitle Lessee to any abatement of Rent except as specifically provided in this Lease.

## ARTICLE 21

## INDEMNIFICATION AND ENVIRONMENTAL MATTERS

21.1   <u>General</u>.  Notwithstanding the existence of any insurance provided for in Article 13, and without regard to the policy limits of any such insurance, Lessee will protect, indemnify, save harmless and defend Lessor from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation,

reasonable attorneys' fees and expenses), to the extent
permitted by law, imposed upon or incurred by or asserted
against Lessor by reason of:  (a) any accident, injury to or
death of persons or loss of or damage to property occurring on
or about the Leased Property or adjoining sidewalks, including
without limitation any claims of malpractice, (b) any use,
misuse, non-use, condition, maintenance or repair by Lessee of
the Leased Property, (c) any Impositions (which are the
obligations of Lessee to pay pursuant to the applicable
provisions of this Lease), (d) any failure on the part of
Lessee to perform or comply with any of the terms of this
Lease, and (e) the non-performance of any of the terms and
provisions of any and all existing and future subleases of the
Leased Property to be performed by the landlord (Lessee)
thereunder.  Any amounts which become payable by Lessee under
this Section shall be paid within ten (10) days after liability
therefor on the part of Lessor is determined by litigation or
otherwise, and if not timely paid, shall bear a late charge (to
the extent permitted by law) at the Overdue Rate from the date
of such determination to the date of payment.  Lessee, at its
expense, shall contest, resist and defend any such claim,
action or proceeding asserted or instituted against Lessor or
may compromise or otherwise dispose of the same as Lessee sees
fit.  Nothing herein shall be construed as indemnifying Lessor
against its own gross negligence or willful misconduct or
default of Lessor's performance of its obligations hereunder.

    Lessor shall indemnify, save harmless and defend Lessee
from and against all liabilities, obligations, claims, damages,
penalties, causes of action, costs and expenses imposed upon or
incurred by or asserted against Lessee as a result of the gross
negligence or willful misconduct of Lessor.

    Lessee's or Lessor's liability for a breach of the
provisions of this Article arising during the Term hereof shall
survive any termination of this Lease.

    21.2    Representations and Warranties:  Lessee represents and
warrants to Lessor, the same to be true as of the date hereof
and throughout the Lease Term, that:

        (i)    except as specifically disclosed in the
environmental site assessment report for the Facility prepared
by Geraghty & Miller dated August, 1990, no Hazardous Substance
has been or is currently generated, stored, transported,
utilized, disposed of, managed, treated, released or located
on, under or from the Leased Property (whether or not in
reportable quantities) except for de minimis releases typically
associated with the use of certain portions of the Leased
Property for driving and parking motor vehicles, or in any
manner introduced onto the Leased Property, including, without
limitation, the septic, sewage or other waste disposal systems
serving the Leased Property;

-61-

(ii)    Lessee has not received any notice from the United States Environmental Protection Agency, the United States Department of the Interior, the Ohio Environmental Protection Agency or any other Governmental Authority claiming that (a) the Leased Property or any use thereof violates any of the Environmental Laws or (b) Lessee or any of its employees or agents have violated any of the Environmental Laws;

(iii)    Lessee has not incurred any liability to the State, Montgomery County, West Carrollton Township, the United States of America or any other Governmental Authority under any of the Environmental Laws;

(iv)    no lien against the Leased Property has arisen under or related to any of the Environmental Laws;

(v)    there are no Environmental Enforcement Actions pending, or to the best of Lessee's information, knowledge and belief, threatened;

(vi)    Lessee has no knowledge that any Hazardous Substance has been or is currently generated, stored, transported, utilized, disposed of, managed, released or located on, under or from any Surrounding Property in violation of, or allegedly in violation of any of, the Environmental Laws;

(vii)    Lessee has no knowledge of any action or order instituted or threatened against any Person by any Governmental Authority arising out of or in connection with the Environmental Laws involving the assessment, monitoring, clean-up, containment, remediation or removal of or damages caused or alleged to be caused by, any Hazardous Substances generated, stored, transported, utilized, disposed of, managed, released or located on, under or from any Surrounding Property;

(viii)    there are no underground storage tanks on or under the Leased Property; and

(ix)    no environmental condition exists on the Leased Property which could cause degradation, damage or injury to the Leased Property, any Surrounding Property or any Person.

As used in this Section 21.2, the terms  "generated," "stored," "transported," "utilized," "disposed,"  "managed," "released" and "threat of release" (and all conjugates thereof) shall have the meanings and definitions set forth in the Environmental Laws.

21.3    Maintenance of Leased Property:  Lessee covenants that, as long as this Lease shall remain in force and effect, Lessee shall not:

-62-

(i) generate, store, transport, utilize, dispose of, manage, treat, release or locate, or permit the generation, storage, transportation, utilization, disposal, management, treatment, release or threat of release, or location of any Hazardous Substances on, under or from the Leased Property, except for de minimis releases typically associated with the use of certain portions of the Leased Property for driving and parking motor vehicles; or

(ii) permit any lien arising under or related to any of the Environmental Laws to attach to the Leased Property.

In addition to all other covenants contained herein, Lessee agrees that the Leased Property shall be maintained in compliance with the Environmental Laws.

21.4    Notice of Environmental Conditions:  Lessee shall provide Lessor with immediate written notice:  (i) upon Lessee becoming aware of (a) the presence of, any release or any threat of release of any Hazardous Substances on, under or from the Leased Property (whether or not caused by Lessee), (b) any Environmental Enforcement Action instituted or threatened, (c) any enforcement, assessment, monitoring, clean-up, containment, removal, remediation, restoration or other action or order instituted, threatened, required or completed by any Governmental Authority pursuant to any of the Environmental Laws with respect to the Leased Property or any Surrounding Property, (d) any condition or occurrence on the Leased Property or any Surrounding Property that may constitute a violation of any of the Environmental Laws and, with respect to any Surrounding Property, that may have an effect upon the Leased Property, and (e) any environmental condition on the Leased Property which could cause degradation, damage or injury to the Leased Property, any Surrounding Property or any Person, and (ii) the receipt by Lessee of any notice relating to the Leased Property or any Hazardous Substance allegedly originating on, under or from the Leased Property, from any Governmental Authority pursuant to any of the Environmental Laws.

21.5    Lessee's Agreement To Take Remedial Actions:  Upon Lessee becoming aware of the presence of, any release, or any threat of release of any Hazardous Substances on, under or from the Leased Property or any Surrounding Property (whether or not caused by Lessee or any Affiliate thereof), Lessee shall immediately take all such actions to arrange for the assessment, monitoring, clean-up, containment, removal, remediation or restoration of the Leased Property and the Surrounding Property, to the extent that the presence of any Hazardous Substances on the Surrounding Property originated on, under or from the Leased Property as (i) are required pursuant to any of the Environmental Laws or by any Governmental

-63-

Authority and (ii) may otherwise be advisable and requested by
Lessor.

Lessee shall provide Lessor, within thirty (30) days after
a demand by Lessor, with a bond, letter of credit or other
similar financial assurance, in form and substance satisfactory
to Lessor (in its sole and absolute discretion) evidencing to
Lessor's satisfaction that the necessary financial resources
are available to pay all costs associated with the
aforementioned actions, the release of any lien against the
Leased Property, the release or other satisfaction of the
liability, if any, of Lessee arising under or related to any of
the Environmental Laws and the satisfaction of any applicable
Environmental Enforcement Actions.

   21.6   <u>Lessor's Rights To Inspect The Leased Property and
Take Remedial Actions</u>:  So long as this Lease shall remain in
force and effect, Lessor shall have the right, but not the
obligation, to enter upon the Leased Property, to expend funds
to:

      (i) cause one or more environmental assessments of the
Leased Property to be undertaken.  Such environmental
assessments may include, without limitation, (a) detailed
visual inspections of the Leased Property, including, without
limitation, all storage areas, storage tanks, drains, dry wells
and leaching areas, (b) the taking of soil and surface water
samples, (c) the performance of soil and ground water analyses
and (d) the performance of such other investigations or
analyses as are necessary or appropriate and consistent with
sound professional environmental engineering practice in order
for Lessor to obtain a complete assessment of the compliance of
Leased Property and the use thereof with all Environmental Laws
and to make a determination as to whether there is any risk of
contamination (x) to the Leased Property resulting from
Hazardous Substances originating on, under or from any
Surrounding Property or (y) to any Surrounding Property
resulting from Hazardous Substances originating on, under or
from the Leased Property;

      (ii) cure any breach of the representations, warranties,
conditions and covenants hereunder including, without
limitation, any violation by Lessee or the Leased Property (or
any other occupant, prior occupant or prior owner thereof or
any Person) of any of the Environmental Laws;

      (iii) take any actions as are necessary to (a) prevent the
migration of Hazardous Substances on, under or from the Leased
Property to any other property, (b) clean-up, contain,
remediate or remove any Hazardous Substances on, under or from
any other property, which Hazardous Substances originated on,
under or from the Leased Property or (c) prevent the migration

-64-

of any Hazardous Substances on, under or from any other property to the Leased Property;

(iv) comply with, settle or otherwise satisfy any Environmental Enforcement Action (including, without limitation, the payment of any fines or penalties imposed by any Governmental Authority); and

(v) correct or abate any environmental condition which could cause degradation, damage or injury to the Leased Property, any Surrounding Property or any Person.

Any amounts paid or advanced by Lessor and all costs and expenses incurred in connection with any action taken pursuant to the terms of this Section 21.6 (including, without limitation, environmental consultants' and experts' fees and expenses, attorneys' reasonable fees and expenses, court costs and all costs of assessment, monitoring, clean-up, containment, remediation, removal and restoration), with interest thereon at the Overdue Rate, shall be a demand obligation of Lessee to Lessor.

The exercise by Lessor of any of the rights and remedies set forth in this Section 21.6 shall not operate or be deemed (a) to place upon Lessor any responsibility for the operation, control, care, service, management, maintenance or repair of the Leased Property or (b) to make Lessor the "owner" or "operator" of the Leased Property or a "responsible party" within the meaning of any of the Environmental Laws. Furthermore, Lessor, by making any such payment or incurring any such costs, shall be subrogated to all rights of Lessee or any other occupant of the Leased Property to seek reimbursement from any Person, including, without limitation, any prior owner or operator of the Leased Property, who may be a "responsible party" under any of the Environmental Laws, in connection with the presence of Hazardous Substances on, under or from the Leased Property.

Any partial exercise by Lessor of any of the rights and remedies set forth in this Section 21.6, including, without limitation, any partial undertaking on the part of Lessor to cure any failure by Lessee or the Leased Property (or any other occupant, prior occupant or prior owner thereof) to comply with any of the Environmental Laws, shall not obligate Lessor to complete such actions taken or require Lessor to expend further sums to cure such non-compliance.

21.7    Environmental Indemnification:  Lessee shall and hereby agrees to indemnify, exonerate, defend (with counsel acceptable to Lessor) and hold Lessor harmless, except in the event of Lessor's gross negligence or willful misconduct, from and against any claim, liability, loss, cost, damage or expense

-65-

(including, without limitation, environmental consultants' and experts' fees and expenses, attorneys' reasonable fees and expenses, court costs and all costs of assessment, monitoring, clean-up, containment, removal, remediation and restoration) arising out of or in connection with (i) any breach of any of the representations, warranties, conditions and covenants hereunder, (ii) Lessor's exercise of any of its rights and remedies hereunder or (iii) the enforcement of the aforesaid indemnification agreement. Notwithstanding the foregoing, Lessor shall have the option of conducting its defense with counsel of Lessor's choice, but at the expense of Lessee as aforesaid.

The matters covered by the foregoing indemnity with respect to any property other than the Leased Property shall not include any costs incurred as a result of the clean-up, containment, remediation or removal of Hazardous Substances on, under or from such other property or the restoration thereof if such Hazardous Substances did not originate on, under or from the Leased Property, unless the clean-up, containment, remediation or removal thereof or the restoration of such other property is either required in connection with any Environmental Enforcement Action or is necessary to prevent the migration of Hazardous Substances from such other property to the Leased Property. Lessee acknowledges and agrees that its obligations pursuant to the provisions hereof are in addition to any and all other legal liabilities and responsibilities (at law or in equity) that Lessee may otherwise have as an "owner" or "operator" of the Leased Property or a "responsible party" within the meaning of any of the Environmental Laws, as the case may be.

The indemnity provisions of this Section 21 shall survive the expiration or earlier termination of this Lease.

ARTICLE 22

SUBLETTING AND ASSIGNMENT

22.1    <u>Subletting and Assignment.</u>  Lessee may not, without the prior written consent of Lessor, which consent shall be at Lessor's sole discretion, assign this Lease or sublet all or any part of the Leased Property. For purposes of this Section 22.1, the term "assign" shall be deemed to include any one or more sales, pledges or other transfers, by operation of law or otherwise, of any interest in Lessee including without limitation, any change in the Person(s) presently in control of Lessee and any change in the ownership of the stock of Lessee; provided, however, that the term "assign" shall not be deemed to include (a) any public offering of Guarantor's stock or subsequent transfers of such stock on the public market, or (b) transfers of the Guarantor's stock caused by the death of Robert N. Elkins or Timothy F. Nicholson, two stockholders of Guarantor as of the date hereof, to immediate family members

-66-

(which term shall include and be limited to the spouse, parents, descendents, sisters and brothers of the transferor), or to a trust for the benefit of such "immediate family members", but the term "assign" shall be deemed to include any other transfers of the Guarantor's stock including, without limitation, transfers by such "immediate family members".

22.2    <u>Attornment.</u>   Lessee shall insert in each sublease permitted under Section 22.1, provisions to the effect that (a) such sublease is subject and subordinate to all of the terms and provisions of this Lease and to the rights of Lessor hereunder, (b) in the event this Lease shall terminate before the expiration of such sublease, the sublessee thereunder will, at Lessor's option, attorn to Lessor and waive any right the sublessee may have to terminate the sublease or to surrender possession thereunder, as a result of the termination of this Lease and (c) in the event the sublessee receives a written notice from Lessor or Lessor's assignees, if any, stating that Lessee is in default under this Lease, the sublessee shall thereafter be obligated to pay all rentals accruing under said sublease directly to the party giving such notice, or as such party may direct.  All rentals received from the sublessee by Lessor or Lessor's assignees, if any, as the case may be, shall be credited against the amounts owing by Lessee under this Lease.

**ARTICLE 23**

**OFFICER'S CERTIFICATES AND FINANCIAL STATEMENTS.**

23.1    <u>Officer's Certificates</u>.

At any time and from time to time upon Lessee's receipt of not less than twenty (20) days' prior written request by Lessor, Lessee will furnish to Lessor an Officer's.Certificate certifying that this Lease is unmodified and in full force and effect (or that this Lease is in full force and effect as modified and setting forth the modifications) and the dates to which the Rent has been paid.  Any such Officer's Certificate furnished pursuant to this Section shall be addressed to such prospective purchaser or mortgagor of the Leased Property as Lessor may request and may be relied upon by Lessor and any such prospective purchaser or mortgagee of the Leased Property.

23.2    <u>Financial Statements and Other Information</u>.

Lessee shall furnish or shall cause to be furnished to Lessor the following statements, information and other materials:

A.    within ninety (90) days after the end of each Fiscal Year:

-67-

(i) a copy of the Consolidated Financials for Lessee and Guarantor for the preceding Fiscal Year, certified by independent certified public accountants acceptable to Lessor and certified as true and correct by Lessee or Guarantor, as the case may be (and, without limiting anything else contained herein, the Consolidated Financials for Lessee shall contain a detailed balance sheet for the Leased Property as of the last day of such Fiscal Year and a statement of earnings from the Leased Property for such Fiscal Year showing, among other things, all rents and other income therefrom and all expenses paid or incurred in connection with the operation of the Leased Property);

(ii) statements certified as true and correct by Lessee and Guarantor stating that, to the best of the signer's knowledge and belief after making due inquiry, Lessee or Guarantor, as the case may be, is not in default in the performance or observance of any of the terms of the Lease, or if Lessee or Guarantor, as the case may be, shall be so in default to its knowledge, specifying all such defaults, the nature thereof and the steps being taken to immediately remedy the same;

B.    within thirty (30) days after the end of each calendar month:

(i) a statement certified as true and correct by Lessee setting forth the Gross Revenues of the Facility for the immediately preceding month;

(ii) the Additional Rent calculation for such month; and

(iii) an unaudited, detailed month and year to date income and expense statement for the Facility which shall include a comparison to corresponding budget figures, occupancy statistics (including the actual number of patients, the number of beds available and total patient days for such month) and patient mix breakdowns for each patient day during such month (classifying patients by the type of care required and source of payment);

C.    within forty-five (45) days after the end of each Fiscal Quarter, unaudited Consolidated Financials for Lessee certified as true and correct by Lessee;

D.    within forty-five (45) days after the end of each Fiscal Quarter, unaudited Consolidated Financials for Guarantor certified as true and correct by Guarantor;

E.    at least sixty (60) days prior to the end of each Fiscal Year, Lessee and any Manager shall submit a proposed annual budget for the Facility for the next Fiscal Year;

-68-

F.    upon the issuance or execution thereof, as the case may be, true and complete copies of all Permits and Contracts, including, without limitation, all Provider Agreements;

G.    upon receipt thereof, true and complete copies of any notices, consents, terminations or statements of any kind or nature relating to any of the Contracts (other than those issued in the ordinary course of business);

H.    upon receipt thereof, true and complete copies of all surveys, examinations, compliance certificates, inspection reports, statements, terminations and notices of any kind issued or provided to Lessee or any Manager by any Governmental Authority, Accreditation Body or Third Party Payor, including, without limitation, any notices pertaining to any delinquency in or proposed revision of Lessee's or the Manager's obligations under the terms and conditions of any Permits or Contracts now or hereafter issued by or entered into with any Governmental Authority, Accreditation Body or Third Party Payor and the response(s) thereto made by or on behalf of Lessee or the Manager;

I.    upon completion or filing thereof, complete copies of all applications, notices, statements, annual reports, cost reports and other reports or filings of any kind provided by Lessee to any Governmental Authority, Accreditation Body or Third Party Payor;

J.    upon the completion or filing, mailing or other delivery thereof, complete copies of all financial statements, reports, notices and proxy statements, if any, filed by Lessee or Guarantor with any securities exchange or with the Securities Exchange Commission;

K.    with reasonable promptness, such other information as Lessor may reasonably request from time to time respecting (i) the financial condition and affairs of Lessee and Guarantor and (ii) the licensing and the operation of the Facility; including, without limitation, audited financial statements, certificates and consents from accountants and any other financial and licensing or operational information as may be required or requested by any Governmental Authority;

L.    as soon as possible and in any event within five (5) days after the occurrence of each Event of Default under the Lease or each event or state of facts which, with the giving of notice or lapse of time or both, could constitute such an Event of Default, a written statement of Lessee setting forth details of such Event of Default, event, or state of facts and the action which Lessee proposes to take with respect thereto;

M.    promptly after the commencement thereof, notice of all actions, suits and proceedings before any Governmental Authority or Accreditation Body affecting Lessee or the Facility;

-69-

N.    promptly after receipt, a copy of all audits or reports submitted to Lessee by independent public accountants in connection with any annual, special or interim audits of the books of Lessee and, if requested by Lessor, any letter of comments directed by such accountants to the management of Lessee;

O.    promptly after Lessee acquires knowledge thereof, written notice of:

(i) the potential termination of any Permit or Provider Agreement necessary for the operation of the Facility;

(ii) any loss, damage or destruction to or of the Leased Property (regardless of whether the same is covered by insurance) other than de minimis matters;

(iii) any controversy with employees of Lessee (other than de minimis matters) or any controversy with any labor organization;

(iv) any controversy that calls into question the eligibility of Lessee or the Facility for participation in any Third Party Program;

(v) any refusal of reimbursement by any Third Party Payor which, singly or together with all other such refusals by any Third Party Payors, could have a materially adverse effect on the financial condition of Lessee; and

(vi) any other development materially and adversely affecting or which may materially and adversely affect the condition, financial or otherwise, of Lessee or Guarantor or the Leased Property; and

P.    within ten (10) days after becoming aware of a claim by any Person that Lessee or Guarantor is in default of the line of credit arrangement referred to in Section 16.1(m) or any other agreement in connection with the borrowing of money which may be allowed hereunder, notice of any such claim or default.

Any certificate, instrument, notice or other document to be provided to Lessor hereunder by Lessee or Guarantor shall be signed by an officer of Lessee or Guarantor, as the case may be and with respect to financial matters, any such certificate, instrument notice or other document shall be signed by the chief financial officer of such Person.

No certificate, instrument, notice or other document including, without limitation, any financial statements, furnished to Lessor pursuant to the terms hereof shall contain any untrue statement of a material fact or shall omit to state a material fact necessary in order to prevent all statements contained therein from being misleading.

Lessor shall afford any information received pursuant hereto the same degree of confidentiality that Lessor affords similar information proprietary to Lessor, provided, however, that Lessor does not in any way warrant or represent that such information received from Lessee shall remain confidential, and, provided further, that Lessor shall have the unconditional right to disclose, as necessary, any such information in the event Lessor sells, transfers, conveys, participates or assigns the Lease. Without limiting the foregoing, Lessor may also utilize any information furnished to it hereunder as and to the extent (1) counsel to Lessor determines that such utilization is necessary pursuant to 15 U.S.C. 77a–77aa or 15 U.S.C. 78a–78jj and the rules and regulations promulgated thereunder and (2) Lessor is required or requested by any Governmental Authority to disclose any such information.

## ARTICLE 24

### INSPECTION

Lessee shall permit Lessor and its authorized representatives to inspect the Leased Property during usual business hours subject to any security, health, safety or confidentiality requirements of Lessee, any governmental agency, any Insurance Requirements relating to the Leased Property, or imposed by law or applicable regulations, and to make any on–site surveys including soil testing, structural testing, etc.

## ARTICLE 25

### NO WAIVER

No failure by Lessor or Lessee to insist upon the strict performance of any term hereof or to exercise any right, power or remedy consequent upon a breach thereof, and no acceptance of full or partial payment of Rent during the continuance of any such breach, shall constitute a waiver of any such breach or any such term. To the extent permitted by law, no waiver of any breach shall affect or alter this Lease, which shall continue in full force and effect with respect to any other then existing or subsequent breach.

-71-

## ARTICLE 26

### REMEDIES CUMULATIVE

To the extent permitted by law, each legal, equitable or contractual right, power and remedy of Lessor or Lessee now or hereafter provided either in this Lease or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power and remedy and the exercise or beginning of the exercise by Lessor or Lessee of any one or more of such rights, powers and remedies shall not preclude the simultaneous or subsequent exercise by Lessor or Lessee of any or all of such other rights, powers and remedies.

## ARTICLE 27

### SURRENDER OF LEASED PROPERTY OR LEASE

(a) Unless Lessor shall convey any of the Leased Property to Lessee, Lessee will, upon the expiration or prior termination of the Term, vacate and surrender the Leased Property to Lessor in the condition in which the Leased Property was originally received from Lessor, except as repaired, rebuilt, restored, altered or added to as permitted or required by the provisions of this Lease and except for ordinary wear and tear (subject to the obligation of Lessee to maintain the Leased Property in good order and repair during the entire Term of the Lease), damage caused by the gross negligence or willful acts of Lessor and damage or destruction described in Article 14 or resulting from a Taking described in Article 15 which Lessee is not required by the terms of this Lease to repair or restore.

(b) No surrender to Lessor of this Lease or of the Leased Property or any part of any thereof, or of any interest therein, shall be valid or effective unless agreed to and accepted in writing by Lessor and no act by Lessor or any representative or agent of Lessor, other than such a written acceptance by Lessor, shall constitute an acceptance of any such surrender.

## ARTICLE 28

### NO MERGER OF TITLE

There shall be no merger of this Lease or of the leasehold estate created hereby by reason of the fact that the same person, firm, corporation or other entity may acquire, own or hold, directly or indirectly, (a) this Lease or the leasehold

estate created hereby or any interest in this Lease or such
leasehold estate and (b) the fee estate in the Leased Property.

## ARTICLE 29

### TRANSFERS BY LESSOR

If Lessor or any successor owner of the Leased Property
shall convey the Leased Property in accordance with the terms
hereof, other than as security for a debt, and the grantee or
transferee of the Leased Property shall expressly assume all
obligations of Lessor hereunder arising or accruing from and
after the date of such conveyance or transfer, and shall be
reasonably capable of performing the obligations of Lessor
hereunder, Lessor or such successor owner, as the case may be,
shall thereupon be released from all future liabilities and
obligations of the Lessor under this Lease arising or accruing
from and after the date of such conveyance or other transfer as
to the Leased Property and all such future liabilities and
obligations shall thereupon be binding upon the new owner.

## ARTICLE 30

### QUIET ENJOYMENT

So long as Lessee shall pay all Rent as the same becomes
due and shall fully comply with all of the terms of this Lease
and fully perform its obligations hereunder, Lessee shall
peaceably and quietly have, hold and enjoy the Leased Property
for the Term hereof, free of any claim or other action by
Lessor or anyone claiming by, through or under Lessor, but
subject to all liens and encumbrances of record as of the date
hereof or hereafter permitted or granted by Lessor in
accordance with the provisions hereof or consented to by
Lessee.  No failure by Lessor to comply with the foregoing
covenant shall give Lessee any right to cancel or terminate
this Lease, or to fail to perform any other sum payable under
this Lease, or to fail to perform any other obligation of
Lessee hereunder.  Notwithstanding the foregoing, Lessee shall
have the right by separate and independent action to pursue any
claim it may have against Lessor as a result of a breach by
Lessor of the covenant of quiet enjoyment contained in this
Article.

## ARTICLE 31

### NOTICES

31.1   All notices, demands, requests, consents, approvals
and other communications hereunder shall be in writing and
delivered or mailed (by registered or certified mail, return

-73-

receipt requested and postage prepaid), or delivered by
reputable commercial overnight delivery service with provision
for a receipt, with delivery charges prepaid, addressed to the
respective parties, as follows:

    (a)   if to Lessee:

            Integrated Health Services, Inc.
            11011 McCormick Road
            Hunt Valley, MD 21031
            Attention:  Stephen A. Drury, V.P. - Finance

        with a copy to:

            Duane, Morris & Heckscher
            240 North Third Street
            P.O. Box 1003
            Harrisburg, PA 17108-1003
            Attention:  Scott C. Penwell, Esq.

    (b)   if to Lessor:

            Meditrust of Ohio, Inc.
            128 Technology Center
            Waltham, MA  02154-8979
            Attention: Jonathan S. Sherwin, President

        with copies to:

            A.M.A. Advisory Corp.
            128 Technology Center
            Waltham, MA  02154-8979
            Attention:  Richard S. Mann, Esq.

            Nutter, McClennen & Fish
            One International Place
             Boston, MA  02110-2699
            Attention:  Michael J. Bohnen, Esquire

or to such other address as either party may hereafter
designate, and shall be effective upon receipt.

ARTICLE 32

PURCHASE RIGHTS

    32.1   <u>Lessor's Option to Purchase the Lessee's Personal
Property; Transfer of Licenses</u>.  Effective on not less than
ninety (90) days' prior notice given at any time after the date
which is one hundred eighty (180) days prior to the expiration
of the Term of this Lease, as the same may have been extended,

-74-

but not later than ninety (90) days prior to such expiration, or such shorter Notice as shall be appropriate if this Lease is terminated prior to its expiration date, Lessor shall have the option to purchase all (but not less than all) of Lessee's Personal Property, if any, at the expiration or termination of this Lease, for an amount equal to the then net market value thereof (current replacement cost as determined by appraisal less accumulated depreciation on the books of Lessee pertaining thereto), subject to, and with appropriate price adjustments for, all equipment leases, conditional sale contracts, UCC-1 financing statements and other encumbrances to which such Lessee's Personal Property is subject. Upon the expiration or termination of the Lease, Lessee shall use its best efforts to transfer and assign to Lessor or its designee, or assist Lessor or its designee in obtaining, any contracts, licenses, and certificates required for the then operation of the Facility.

32.2    <u>Lessee's Right of First Refusal to Purchase the Leased Property</u>. Effective from and after the fourth (4th) anniversary of the Commencement Date, so long as there is no Event of Default which has not been cured within applicable grace periods under this Lease at the time of exercise and on the date of closing, and this Lease is then in full force and effect, Lessee shall have a right of first refusal as hereinafter described. If Lessor receives a bona fide written offer to purchase the Leased Property from a party which is not an Affiliate of Lessee or Guarantor (the "Offer"), acceptable to Lessor in Lessor's sole and absolute discretion and Lessor elects, in Lessor's sole and absolute discretion, to sell the Leased Property, Lessee shall have thirty (30) days following notice of the Offer to elect to purchase the Leased Property on the same terms and conditions as specified in the Offer. Lessee's right of first refusal shall not apply to any sale or transfer of the Leased Property or any portion thereof to any Affiliate of Lessor or to any sale or transfer occasioned by the exercise of any rights or remedies of any Facility Mortgagee or other mortgagee of the Leased Property or any portion thereof.

ARTICLE 33

EXTENDED TERMS

If no Event of Default shall have occurred and be continuing, Lessee is hereby granted the right to extend the Term of this Lease for three (3) consecutive 5-year periods ("Extended Terms") for a maximum Term if all such options are exercised of fifteen (15) years after the expiration of the initial 10-year term, upon giving written notice to Lessor of each such extension at least one hundred eighty (180) days, but not more than three hundred sixty (360) days, prior to the termination of the then current Term, subject, however, to the

provisions of Section 14.7 hereof.  Lessee may not exercise its option for more than one Extended Term at a time.  During each Extended Term, all of the terms and conditions of this Lease shall continue in full force and effect.  Lessee's options to extend shall be subject to the further requirement that all of the options to extend contained in the leases for the Other Three Facilities be exercised simultaneously and uniformly with the exercise of Lessee's options to extend under this Lease so that, at any time after the exercise by Lessee of Lessee's extension options under this Lease and the leases for the Other Three Facilities, the expiration date of the Term of this Lease and the respective terms of the leases for the Other Three Facilities shall be the same day.

## ARTICLE 34

### APPRAISAL

In the event that it becomes necessary to determine the Fair Market Value of the Leased Property for any purpose of this Lease, the party required or permitted to give notice of such required determination shall include in the notice the name of a person selected to act as appraiser on its behalf. Within 10 days after receipt of any such notice, Lessor (or Lessee, as the case may be) shall by notice to Lessee (or Lessor, as the case may be) appoint a second person as appraiser on its behalf.  The appraisers thus appointed, each of whom must be a member of the American Institute of Real Estate Appraisers (or any successor organization thereto), shall, within 45 days after the date of the notice appointing the first appraiser, proceed to appraise the Leased Property to determine the Fair Market Value thereof as of the relevant date (giving effect to the impact, if any, of inflation from the date of their decision to the relevant date); provided, however, that if only one appraiser shall have been so appointed, or if two appraisers shall have been so appointed but only one such appraiser shall have made such determination within 50 days after the making of Lessee's or Lessor's request, then the determination of such appraiser shall be final and binding upon the parties.  To the extent consistent with sound appraisal, such appraisal shall be made on a basis consistent with the basis on which the Leased Property was appraised for purposes of determining its Fair Market Value at the time the Leased Property was acquired by Lessor.  If two appraisers shall have been appointed and shall have made their determinations within the respective requisite periods set forth above and if the difference between the amounts so determined shall not exceed ten per cent (10%) of the lesser of such amounts, then the Fair Market Value shall be an amount equal to 50% of the sum of the amounts so determined.  If the difference between the amounts so determined shall exceed ten

-76-

percent (10%) of the lesser of such amounts, then such two appraisers shall have 20 days to appoint a third appraiser, but if such appraisers fail to do so, then either party may request the American Arbitration Association or any successor organization thereto to appoint an appraiser within 20 days of such request, and both parties shall be bound by any appointment so made within such 20 day period. If no such appraiser shall have been appointed within such 20 days or within 90 days of the original request for a determination of Fair Market Value, whichever is earlier, either Lessor or Lessee may apply to any court having jurisdiction to have such appointment made by such court. Any appraiser appointed by the original appraisers, by the American Arbitration Association or by such court shall be instructed to determine the Fair Market Value within 30 days after appointment of such Appraiser. The determination of the appraiser which differs most in terms of dollar amount from the determinations of the other two appraisers shall be excluded, and 50% of the sum of the remaining two determinations shall be final and binding upon Lessor and Lessee as the Fair Market Value for such interest. This provision for determination by appraisal shall be specifically enforceable to the extent such remedy is available under applicable law, and any determination hereunder shall be final and binding upon the parties except as otherwise provided by applicable law. Lessor and Lessee shall each pay the fees and expenses of the appraiser appointed by it and each shall pay one-half of the fees and expenses of the third appraiser and one-half of all other cost and expenses incurred in connection with each appraisal.

## ARTICLE 35

### DEFAULT BY LESSOR

Lessor shall be in default of its obligations under this Lease if Lessor shall fail to observe or perform any term, covenant or condition of this Lease on its part to be performed and such failure shall continue for a period of thirty (30) days after notice thereof from Lessee (or such shorter time as may be necessary in order to protect the health or welfare of any patients of the Facility), unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if Lessor, within said thirty (30) day period, proceeds promptly and with due diligence to cure the failure and diligently completes the curing thereof. The time within which Lessor shall be obligated to cure any such failure shall also be subject to extension of time due to the occurrence of any Unavoidable Delay.

## ARTICLE 36

## FINANCING OF THE LEASED PROPERTY

Without the consent of Lessee, Lessor may, in its sole and absolute discretion, subject only to the terms and conditions set forth below in this Article 36, from time to time, directly or indirectly, create or otherwise cause to exist any lien, encumbrance or title retention agreement ("Encumbrance") upon the Leased Property, or any portion thereof or interest therein, whether to secure any borrowing or other means of financing or refinancing. Any such Encumbrance shall provide that it is subject to the rights of Lessee under this Lease, including the rights of Lessee to acquire the Leased Property pursuant to the applicable provisions of this Lease, except that Lessee's right of first refusal shall not be applicable upon a foreclosure sale or transfer in lieu thereof (provided, however, that any such purchaser or transferee shall take title subject to Lessee's rights to acquire the Leased Property pursuant to Article 32), and the holder of any such Encumbrance (a) shall agree to give Lessee the same notice, if any, given to Lessor of any default or acceleration of any obligation underlying any such Encumbrance or any sale in foreclosure thereunder, and (b) shall agree to permit Lessee to appear by its representative and to bid at any sale in foreclosure made with respect to any such Encumbrance. Upon the reasonable request of Lessor, Lessee shall subordinate this Lease to such Encumbrance, on the condition that the beneficiary or holder thereof executes a non-disturbance agreement in conformity with Article 37.

## ARTICLE 37

## SUBORDINATION AND NON-DISTURBANCE

Upon Lessee's request, Lessor will use reasonable efforts to obtain and deliver to Lessee agreements, in form and substance reasonably satisfactory to Lessee, by the holder of any Encumbrances entered into during the Term (a) consenting to this Lease and agreeing that, notwithstanding any such overlease, mortgage, deed of trust, right, title or interest, or any default, expiration, termination, foreclosure, sale, entry or other act or omission under, pursuant to or affecting any of the foregoing, Lessee shall not be disturbed in peaceful enjoyment of the Leased Property nor shall this Lease be terminated or cancelled at any time, except in the event Lessor shall have the right to terminate this Lease under the terms and provisions expressly set forth herein; (b) agreeing that for any period while it may be Lessor hereunder, it will perform, fulfill and observe all of Lessor's representations, warranties and agreements set forth herein; and (c) agreeing that all proceeds of the casualty insurance described in

-78-

Article 14 of this Lease and all Awards described in Article 15 will be made available to Lessor for restoration of the Leased Property as and to the extent required by this Lease, subject only to reasonable regulation regarding the disbursement and application thereof; provided, however, that Lessee delivers an agreement of the type described in the following paragraph if so requested by the holder of an Encumbrance.

At the request from time to time by one or more holders of any Encumbrance that may hereafter be placed upon the Leased Property or any part thereof by Lessor, and any and all renewals, replacements, modifications, consolidations, spreaders and extensions thereof, Lessee will subordinate this Lease and all of Lessee's rights and estate hereunder to each such Encumbrance and agree with each such holder that Lessee will attorn to and recognize such holder or the purchaser at any foreclosure sale or any sale under a power of sale contained in any such Encumbrance as Lessor under this Lease for the balance of the Term then remaining, subject to all of the terms and provisions of this Lease; provided, however, that each such holder simultaneously executes, delivers and records a written agreement as provided in the preceding paragraph.

## ARTICLE 38

## MISCELLANEOUS

38.1  General.  Anything contained in this Lease to the contrary notwithstanding, all claims against, and liabilities of, Lessee or Lessor arising prior to any date of termination of this Lease shall survive such termination.  If any term or provision of this Lease or any application thereof shall be invalid or unenforceable, the remainder of this Lease and any other application of such term or provision shall not be affected thereby.  If any late charges provided for in any provision of this Lease are based upon a rate in excess of the maximum rate permitted by applicable law, the parties agree that such charges shall be fixed at the maximum permissible rate.  Neither this Lease nor any provision hereof may be changed, waived, discharged or terminated except by an instrument in writing and in recordable form signed by Lessor and Lessee.  All the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  The headings in this Lease are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.  This Lease shall be governed by and construed in accordance with the laws of the state in which Leased Property is located.  Lessee waives all presentments, demands for performance, notices of non-performance, protests, notices of protest, notices of

dishonor, and notices of acceptance and waives all notices of the existence, creation, or incurring of new or additional obligations, except as expressly granted herein.

38.2  <u>Transfer of Licenses.</u>  Upon the expiration of earlier termination of the Term, Lessee shall use its best efforts to transfer to Lessor or Lessor's nominee all licenses, operating permits and other governmental authorizations and all contracts, including contracts with governmental or quasi-governmental entities which may be necessary or useful in the operation of the Facility.

## ARTICLE 39

### MEMORANDUM OF LEASE

Lessor and Lessee shall, promptly upon the request of either, enter into a short form memorandum of this Lease, in form suitable for recording under the laws of the state in which the Leased Property is located in which reference to this Lease, and all options contained herein, shall be made.

## ARTICLE 40

### LIMITATION OF LIABILITY

The Declaration of Trust establishing Meditrust, the sole shareholder of Lessor, dated August 6, 1985 (the "Declaration"), as amended, a copy of which is duly filed in the office of the Secretary of State of the Commonwealth of Massachusetts, provides that the name "Meditrust" refers to the trustees under the Declaration collectively as trustees, but not individually or personally; and that no trustee, officer, shareholder, employee or agent of Meditrust or its subsidiaries shall be held to any personal liability, jointly, or severally, for any obligation of, or claim against Meditrust or its Subsidiaries.  All Persons dealing with Meditrust, in any way, shall look only to the assets of Lessor for the payment of any sum or the performance of any obligations.  Notwithstanding the foregoing, Lessee hereby acknowledges and agrees that Meditrust is not a party to this Lease and that Lessee shall look only to the assets of Lessor for the payment of any sum or performance of any obligations due by or from Lessor pursuant to the terms and provisions hereof.  Furthermore, except as otherwise expressly provided herein, in no event shall Lessor (original or successor) ever be liable to Lessee for any indirect or consequential damages suffered by Lessee from whatever cause.