IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>THCI COMPANY LLC,<br><br>        Defendant,<br><br>        v.<br><br>ABE BRIARWOOD CORPORATION and JOHN DOES 1-10,<br><br>        Additional Counterclaim Defendants, | Civil Action No. 04-910 |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS AND QUASH**

DUANE MORRIS, LLP
Michael R. Lastowski (DE I.D. 3892)
Richard W. Riley (DE I.D. 4052)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4900 Telephone:
Facsimile: (302) 657-4901 Facsimile:
E-mail:    mlastowski@duanemorris.com
E-mail:    rwriley@duanemorris.com

TROUTMAN SANDERS LLP
Amos Alter, Esquire
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 704-6000
(212) 704-6288
E-mail: Amos.Alter@troutmansanders.com

DM3\354150.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

A.  The Pleading Fails Adequately to Alleged That LTC Is Liable On Any Guaranty .................... 1

B.  The Pleading Improperly Combines Separate Claims ............................................................. 3

C.  The Second Counterclaim is Defective .................................................................................... 4

D.  The Third Counterclaim is Defective ....................................................................................... 6

E.  The Fourth Through Seventh Counterclaims are Defective ..................................................... 7

F.  The Subpoenae Should Be Quashed ......................................................................................... 8

Conclusion ....................................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

# TABLE OF AUTHORITIES

## CASES

*Allstate Insurance Co. v. Davidson Medical Group*, 2004 WL. 2357797 (E.D. Pa. 2004) ..........7

*Liafail, Inc. v. Learning 2000, Inc.*, 2002 U.S. Dist. LEXIS 22620 (D. Del. 2002, Sleet, D.J.) ..........8

*Marion v. Benistar, Ltd.*, 2005 WL. 563698 (E.D. Pa. 2005), cited by THCI ..........6

*Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*, 721 F. Supp. 281 (S.D. Ala. 1989) ..........5, 9

*Roberts v. Fleet Bank*, 342 F.3d 260 (3d Cir. 2003) ..........6

*Stevens v. Citigroup, Inc.*, 2000 U.S. Dist. LEXIS 18201 (E.D.Pa. 2000) ..........8

*United States v. Pisani*, 646 F.2d 83 (3d Cir. 1981) ..........7

This Reply Memorandum of Law is submitted on behalf of the plaintiffs, IHS Long Term Care Services, Inc. ("LTC"), and the nine other plaintiffs who are its subsidiaries; additional counterclaim defendant Abe Briarwood Corporation ("Briarwood"); and two nonparties, Leonard Grunstein and Rubin Schron (all collectively, the "Movants"). The Memorandum is (i) in reply to the Brief in Opposition submitted by defendant THCI Company LLC ("defendant" or "THCI"), and (ii) in further support of Movants' motion, which seeks (A) the dismissal of the Second through Seventh Counterclaims of the Third Amended Counterclaims asserted by defendant THCI Company LLC ("defendant" or "THCI"), and (B) the quashing of subpoenae addressed by THCI to non-parties Grunstein and Schron.[1]

A. **The Pleading Fails Adequately To Allege That LTC Is Liable On Any Guaranty.**

THCI's brief has failed adequately to address Movants' demonstration that THCI did not and cannot properly allege that there is any guaranty in existence. As Movants demonstrated, the documents cited (but not annexed) by THCI demonstrate that there is no guaranty. As the case law cited by Movants show (THCI does not dispute this point), the documents themselves, even if omitted from a pleading, may be considered on the motion addressed to the face of the pleading as if they were annexed.

It must be remembered that we are here concerned with a guaranty, which, under the laws of the six States in question (and every other common-law jurisdiction in the United States), must be in a writing signed by the party to be charged in order to satisfy the Statute of Frauds. Either the documents to which THCI points constitute a guaranty, or they do not. However, THCI has pointed to no writings signed either by LTC, or its alleged predecessor-in-

---

[1] The motion initially sought also to quash a third subpoena addressed to a third non-party, Uri Kaufman. Mr. Kaufman, represented by separate counsel, had also moved to quash the subpoena. THCI, in response to the motions to quash, has withdrawn the subpoena addressed to Mr. Kaufman, and that subpoena will not be discussed here further.

interest, IHS debtor-in-possession, which separately or together constitute a guaranty. To be sure, the <u>prepetition</u> IHS entity had guaranteed certain <u>prepetition</u> leases, but those guaranty obligations were discharged in the bankruptcy. For there to be guaranty liability on the part of LTC, there must have been an assumption by IHS, debtor-in-possession, of the guaranty obligations of the prepetition entity. THCI has not met its burden to plead, and the documents on their face refute, that any such assumption ever took place.

To reiterate: (i) The April 2003 Order (mentioned in but not annexed to the pleading, and supplied by Movants on this Motion) makes no mention of any guaranty (THCI had no response to this point). (ii) The April 2003 Order does not purport to direct the assumption of the prepetition leases, but simply imposes a new Master Lease, a postpetition obligation which incorporates by reference some but not all terms of the several prepetition leases. The old prepetition guaranties by their terms would not in any event have extended to such a new lease (THCI had no response to this point). (iii) The Confirmation Order makes no reference to any Guaranty, and in fact obligates only the "applicable Reorganized Debtor(s)" to perform in regard to the Master Lease after confirmation. The nine plaintiff tenants are Reorganized Debtors, but LTC, the purported guarantor, is not (THCI had no response to this point). (iv) THCI's claim (or, more precisely, that which THCI must claim, but has not articulated), that the IHS debtor-in-possession assumed the prepetition guaranties, is a contention which is meritless as a matter of law. A prepetition guaranty, not being an executory contract, is not subject to assumption or rejection under the Bankruptcy Code (THCI had no response to this point).

THCI has not satisfied its burden by pointing to (without annexing) a certain Stock Purchase Agreement ("SPA"), to which the debtor-in-possession was a party (Again,

2

Movants on this motion have supplied the missing material). As Movants have demonstrated, the reference in the SPA to IHS as a guarantor is clearly referring to the <u>prepetition</u> entity, and cannot possibly be understood as a guaranty by the debtor-in-possession (For one thing, the SPA predated any event by which THCI could possibly claim an assumption took place). THCI does not attempt to contradict this demonstration. It instead simply repeats the misleading allegation that "the Counterclaims clearly allege that the Guaranties were a liability of IHS" (Br. p. 7), ignoring the undisputed (and indisputable) fact that the reference is to a different IHS entity.

Insofar, therefore, as THCI's counterclaims assume that THCI has pleaded a guaranty of the Nine Tenants' obligations by LTC, or assume that such a contention could exist in the face of the documents referred to and deemed incorporated into the pleadings, the counterclaims fail as a matter of law.[2]

**B.  The Pleading Improperly Combines Separate Claims**.

THCI's response to the contention that it has improperly mingled different claims which must be separately stated is two-fold. First, THCI argues (Br. 8) that "[N]one of the cases cited by Plaintiffs and Briarwood stand for the proposition that a claim arising from the same facts against different defendants must be set forth separately." We need not be here concerned with whether THCI's assertion that the facts are the same in each case is even correct, because THCI is in any event misstating Movants' argument. That argument was (and is) that claims arising <u>under different laws</u> must be set forth separately. The cases Movants cited, as THCI's own description of them makes clear, do indeed stand for that proposition. THCI does not defeat

---

[2] THCI (Br. 6n) incorporates by reference its arguments on the motion and crossmotion for partial summary judgment which were pending before the Court at the time its brief was submitted. Since then, for technical reasons of which this Court is aware, the motion and crossmotion have both been withdrawn without prejudice to renewal. Of course, Movants submit that a conclusion different than that which THCI would draw flows from the arguments on those motions, but agree with THCI that the arguments there and here are intertwined. The motion (and presumably the crossmotion) for summary judgment are now being reinstated, and those motions should be read and decided together with this motion.

3

Movants' argument by misstating it, and then asserting that the cases Movants cite do not support the misstated argument.

THCI's other argument is that all that is required is a "short and plain" statement of claims. Whether that is correct with respect to any particular claim has nothing to do with whether that claim has to be set forth separately from a separate and distinct claim under another law. "Short and plain" is a Rule 8(a) issue; separately stating one's claims is a Rule 10(b) issue. It is no defense to a Rule 10(b) objection to assert that the pleading complies with Rule 8(a), even if the assertion had been correct.

THCI has thus failed to rebut Movants' showing that it must separately state its disparate claims under different State laws.

## C. **The Second Counterclaim Is Defective.**

The Second Counterclaim is one whose heading announces that it is for eviction, and whose prayer for relief seeks a writ of eviction. In the recent conference call with the Court, THCI effectively abandoned this contention, or at the very least, recognized it to be meritless.[3] This counterclaim should be dismissed for that reason alone.

Even were the counterclaim not abandoned (and we note that, in a subsequent motion, THCI seems to seek to resurrect it), it would have had to be dismissed. Again, THCI, in its brief, prefers to set up a straw man and knock it down, rather than to address the argument Movants actually made. Thus, THCI asserts (Br. 10) that "Plaintiffs do not provide any authority for the notion that state courts are vested with exclusive jurisdiction over ejectment claims and federal courts lack concurrent jurisdiction." Of course, Movants never made that argument, and

---

[3] See statement of THCI's attorney, Collins.J. Seitz, Jr., Esq., Tr. 10: "We are not saying this Court has the power to go to Missouri and boot them out of the nursing homes." A copy of the transcript of that March 29 telephone conference is annexed hereto as Exhibit "A".

4

indeed expressly noted in their brief (at 11), that this Court could, in the proper circumstance, issue a writ of eviction relating to property in the State of Delaware. However, none of the facilities here are in Delaware. What Movants did argue, which argument THCI ignores in favor of rebutting one that Movants never made, is that no out-of-State Court, be it State, Federal or foreign, can issue a writ of eviction affecting possession of property in, say, Michigan, Ohio or Alabama. THCI's sole case does not stand for the proposition that a Federal Court may issue a writ of eviction relating to property in a State other than the one in which it sits.[4]

Insofar as the Second Counterclaim seeks some sort of equitable remedy, THCI does not adequately address the contention that it has a plain, speedy, and completely adequate remedy at law, precluding equitable relief. That THCI apparently would prefer not to avail itself of an adequate and customary remedy at law for a claim of failure to pay rent, namely summary ejectment proceedings (by whatever name) in the jurisdictions where the real properties are located, does not create an inadequacy in its remedy at law justifying equitable relief, from this or any other Court. It should also be noted that where, as here, long and detailed commercial agreements have specific provisions dealing with the remedies of the parties, even a court of equity is not free simply to fashion whatever remedy one side wishes it would. A court of equity does not rewrite a contract to create remedies the parties did not bargain for.[5]

In defense of ignoring its speedy and adequate remedy at law, the only authority THCI cites is that same Alabama case, holding that a remand (which was there sought, the action having been removed from Alabama State Court) was not there required. Of course, Movants

---

[4] The sole case cited by THCI, Mutual First, Inc. v. O'Charleys of Gulfport, Inc., 721 F.Supp. 281 (S.D. Ala. 1989), dealt with an Alabama Federal Court hearing a claim with regard to Alabama property.

[5] That this may require a number of proceedings does not convert the claim into one in equity. The requirement of more than one proceeding is simply a consequence of having a single Master Lease covering nine locations in six different States. The Landlord is entitled to no procedural shortcuts because of such an arrangement, particularly when the Master Lease makes no such provision.

5

are not here arguing for a remand to the Court of the State in which the Federal Court sits, as was the Alabama defendant (who was the party that removed that case from State Court to begin with!).

The Second Counterclaim, which also suffers from confusion of claims (See Point B, supra), should therefore be dismissed.

### D. **The Third Counterclaim Is Defective**.

The Third Counterclaim purports to sound in unjust enrichment. It expressly assumes (Par. 81) that the Master Lease is <u>not</u> in force. Since it has now been definitively determined that the Master Lease is indeed in force, the counterclaim must be dismissed. A claim for unjust enrichment, sounding in quasi-contract, cannot exist when there is an express contract (See <u>Marion</u> v. <u>Benistar, Ltd.</u>, 2005 WL 563698, *1 (E.D. Pa. 2005), cited by THCI; see also <u>Roberts</u> v. <u>Fleet Bank</u>, 342 F.3d 260, 270-1 (3d Cir. 2003)).

Even if it were possible still to assume <u>arguendo</u> that the Master Lease were not in force, the claim would still have to be dismissed. THCI's claim that Movants are confusing the remedy of constructive trust with the claim of unjust enrichment is absurd. While there may indeed be cases where an unjust enrichment claim might be seeking, or might be entitled to, something other than a constructive trust, THCI has made no effort to establish that any particular exception applies – and it does not.[6] That a constructive trust makes no sense here, and never did, is indeed reason to dismiss THCI's claim for unjust enrichment.

Nor has THCI refuted, or even attempted to refute, that the remedy is equitable, precluded by the plain adequacy here of its remedy at law. Indeed, one of the two cases THCI

---

[6] Since THCI does not suggest that its case fits within any exception, we need not here go through them. Briefly, however, generally speaking, a remedy for unjust enrichment other than constructive trust may exist if a <u>res</u> once existed and has since been destroyed, or has since become beyond the other party's power to restore. None of this, however, has anything to do with our case.

6

DM3\354150.1

cites, Allstate Ins. Co. v. Davidson Med. Group, 2004 WL 2357797 (E.D. Pa. 2004), is careful to note (at *2, emphasis supplied), that "Plaintiffs have asserted a claim for unjust enrichment ..., which is a cognizable equitable claim."

The Third Counterclaim, which also suffers from a confusion of claims (Point B, infra),[7] should therefore be dismissed.

E. **The Fourth Through Seventh Counterclaims Are Defective.**

THCI does not even attempt to defend the Fourth, Fifth or Sixth Counterclaims. In any event, they all assume, incorrectly, that THCI has adequately pleaded a claim that there exists a guaranty, and that such claim has not been refuted by the face of the very documents upon which the counterclaims rely (Point A, supra). These counterclaims, which also suffer from a confusion of claims (Point B, supra), should be dismissed.

THCI does attempt to defend the Seventh Counterclaim, but it, too, suffers from the incorrect assumption that a guaranty has been pleaded and is not refuted. The counterclaim also suffers from a confusion of claims, particularly important when the question (piercing the corporate veil) is one whose particulars differ from State to State (See United States v. Pisani, 646 F.2d 83, 87 (3d Cir. 1981), noting the multiplicity of State tests, and therefore creating a uniform test when the United States is the creditor seeking to pierce the veil).[8]

In their intial brief, Movants demonstrated, by way of illustration, the difficulties with THCI's conflated complaint under the laws of just two of the jurisdictions involved, Pennsylvania and Delaware. This does not, however, exhaust the problems, which, even

---

[7] As noted in Movants' main brief (at 12n), it is particularly important under this theory to require separate statements of the claims under the different laws, because, as appears there, different defenses may well exist under the different laws.

[8] The facts as to what happened with each corporation are also not going to be identical, which is yet another reason why separate statements of the various claims are required.

assuming arguendo the pleading could and did properly allege that a guaranty existed, would still have to await properly separately stated claims.

In any event, THCI has not adequately distinguished Movants' authorities (it only attempts to deal with some of them), which demonstrate that, just under the two laws considered, no claim for veil-piercing is stated by the counterclaim's conclusory allegations. Thus, under Pennsylvania law, an allegation that the dominant stockholder "exercises full dominion and control" "fails to allege sufficient fact to pierce the corporate veil" (Stevens v. Citigroup, Inc., 2000 U.S. Dist LEXIS 18201 (E.D.Pa. 2000)). And in Delaware, this Court is on record, in a case THCI does not attempt to distinguish, as holding that "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud" (Liafail, Inc. v. Learning 2000, Inc., 2002 U.S. Dist. LEXIS 22620, *34 (D. Del. 2002, Sleet, D.J.)). The pleading here does not come close to alleging such a state of affairs. The nexus to fraud also explains why a Court must be skeptical of conclusory allegations such as those here.

**F. The Subpoenae Should Be Quashed.**

THCI's response to that branch of the motion to quash the subpoenae addressed to Messrs. Grunstein and Schron does not even mention, much less try to refute, Movants' demonstration that neither of them was ever served. That ends the inquiry, and the subpoenae must be quashed.

If it were necessary to inquire further, THCI's argument centers around two points, one of which is flatly wrong, and the other of which is wholly irrelevant. The first is that somehow there was no right to make this motion. That is simply wrong. The parties stipulated, and this Court so-ordered the stipulation, to an agreed-upon schedule (still being followed by both parties) for precisely this motion. As this Court noted in the on-the-record telephone

conference of February 28 (Tr. 16), "[I]f I have acceded to a request previously, I will stand by that, so you need not worry in that regard."

THCI's other argument, which infuses its brief in many locations, is that somehow matters are changed because this Court recently affirmed the April 2003 Order imposing a Master Lease upon the parties. While it is true that this disposition of the appeal mandates a remand of this action to the Missouri Court from which it was removed, it does not change the issues, regardless of the Court in which they are to be determined. The premise of the complaint is that the April 2003 Order would be determined to be valid – it sought a declaratory judgment that there was in such a case no guaranty by LTC. The premise of the Counterclaims, other than the Third Counterclaim, was also the validity of the April 2003 Order. In that regard, except for the Third Counterclaim, nothing has changed. The affirmance of the April 2003 Order is irrelevant to this motion, other than constituting a separate and entirely sufficient reason mandating dismissal of the Third Counterclaim.

THCI ignores a number of points, which would mandate granting the motion to quash even had there been service. <u>First</u>: Virtually all of the counterclaims must be dismissed for failure to state claims upon which relief can be granted – and, to the extent the problem is not just the failure, but the inability, to plead that there ever was a guaranty, most of its counterclaims cannot even be repleaded. THCI cannot base its "right" to discovery on claims which must be dismissed as a matter of law (See Points A-E, <u>supra</u>, and Movants' main brief herein).

<u>Second</u>: It is important to note just what THCI is and is not seeking in its discovery requests and in the oral testimony it wishes to obtain by these subpoenae.[9] THCI is

---

[9] In this regard, it is significant that, in the pre-motion discussions (which, incidentally, THCI wholly mischaracterizes in its brief), THCI expressly refused to identify the areas of inquiry to which the subpoenae were

9

<u>not</u> seeking to prove its contention that LTC is the guarantor of the obligations of the nine tenants. Both sides consider that a question of law, both having moved for partial summary judgment on that issue. Indeed, considering that the question is governed by the Statute of Frauds – either the documents THCI proffers constitute a guaranty or they do not – it is difficult to perceive how oral testimony would be relevant in any event.[10]

What THCI is seeking discovery upon are issues, all of which assume that there is a guaranty in effect.[11] Thus, THCI is seeking discovery on whether that putative guarantor, TLC, against whom it has not pleaded, and as a matter of law cannot plead, an obligation of guaranty, committed fraudulent transfers (although it has not pleaded, even conclusorily, that TLC was insolvent or thereby rendered insolvent). It is seeking discovery on whether to pierce the corporate veil of that putative guarantor, to its parent, Briarcliff. It is seeking to prove fraudulent transfers by Briarcliff, the parent of the putative guarantor, although it has not pleaded, even conclusorily, that Briarwood was insolvent or was thereby rendered insolvent. It is seeking to pierce Briarwood's corporate veil as well, to its shareholders.

All these claims are many steps removed from the present state of the judgment docket. They are extremely premature, and should be reserved for enforcement of judgment proceedings, should THCI ever get that far (which is, on the present state of the pleadings, highly to be doubted).[12]

---

directed. The characterizations of this paragraph therefore come from an analysis of the schedule to the subpoenae.

[10] We do not even consider here that neither of these "witnesses" had any involvement at any time THCI might be claiming a guaranty somehow arose.

[11] The sole exception is financial information from the nine tenants, which THCI is indeed obtaining, albeit not by these subpoenae on these non-parties, who have no knowledge.

[12] THCI's authorities do not stand for the proposition that a plaintiff may have inquiry by discovery of a claim so many steps removed. Nor, indeed, does there exist any case standing for such a proposition.

DM3\354150.1

One is strongly led to the conclusion that THCI is merely trying to harass nonparties who it believes might pressure a settlement. Requests such as "All documents identifying any entity in which [Rubin Schron/Leonard Grunstein] serves or served as an officer, director or was/is an Affiliate thereof" (Items 42/44 of the Rider to the subpoenae) do nothing to dispel that conclusion.

The subpoenae, even if they had been properly served, would thus have had to be quashed.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## Conclusion

As has been demonstrated, hereinabove and in Movants' main brief, the Counterclaims, to the extent moved against, should be dismissed, and the subpoenae to Messrs. Grunstein and Schron quashed. Movants' motion must accordingly be in all respects granted.

DATED: April 10, 2006

**DUANE MORRIS LLP**

Michael R. Lastowski (DE I.D. 3892)
Richard W. Riley (DE I.D. 4052)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail:     mlastowski@duanemorris.com
            cmwinter@duanemorris.com

-and-

TROUTMAN SANDERS LLP
Amos Alter, Esquire
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone:  (212) 704-6000
Facsimile:  (212) 704-6288
E-mail:     Amos.Alter@troutmansanders.com

*Attorneys for Plaintiff Integrated Health Services of Cliff Manor, Inc. et al. and Counterclaim Defendant Abe Briarwood Corp. and non-parties Leonard Grunstein and Rubin Schron*