UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THCI COMPANY LLC, <br><br> Defendant, <br><br> v. <br><br> ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, <br><br> Additional Counterclaim Defendants. | Civil Action No. 04-910 (GMS) |

**DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

OF COUNSEL:
PITNEY HARDIN LLP
David S. Sager
P.O. Box 1945
Morristown, NJ 07962-1945
(973) 966-6300

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Kevin F. Brady (Bar No. 2248)
1007 North Orange Street
Wilmington, DE 19801
(302) 658-9141

DATED: April 12, 2006

*Attorneys for Defendant
THCI Company LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

COUNTER-STATEMENT OF FACTS .................................................................................. 2

ARGUMENT ............................................................................................................................ 5

    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THIS CASE
    CONTINUES TO BE "RELATED TO" THE IHS BANKRUPTCY AND,
    EVEN IF IT WERE NOT, THIS COURT'S CONTINUED EXERCISE OF
    JURISDICTION IS WARRANTED BY CONSIDERATIONS OF JUDICIAL
    ECONOMY, CONVENIENCE, AND FAIRNESS. ........................................................... 5

        A. This Case Remains "Related To" The IHS Bankruptcy. .......................................... 5

        B. The Court's Resolution Of Plaintiffs' Appeal Of The Bankruptcy
           Court's Order Does Not Divest This Court Of Jurisdiction ...................................... 7

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*American Standard, Inc. v. Bendix Corp.*,
  487 F. Supp. 254 (W.D. Mo. 1980) .................................................................. 10

*Brown v. C.D. Smith Drug Co.*,
  No. 98-494-SLR, 1999 WL 709992 (D. Del. Aug. 18, 1999) ........................ 6

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ........................................................................................ 8

*In re Carraher*,
  971 F.2d 327 (9th Cir. 1992) .......................................................................... 9

*Carrasco v. Klein*,
  381 F. Supp. 782 (E.D.N.Y. 1974) ................................................................ 11

*In re Comdisco, Inc.*,
  270 B.R. 909 (Bankr. N.D. Ill. 2001) ............................................................. 7

*Doddy v. Oxy USA, Inc.*,
  101 F.3d 448 (5th Cir. 1996) .......................................................................... 8

*Freeport-McMoRan, Inc. v. KN Energy, Inc.*,
  498 U.S. 426 (1991) ........................................................................................ 5

*Growth Horizons, Inc. v. Delaware County*,
  983 F.2d 1277 (3d Cir. 1993) ................................................................... 8, 10

*Hudson United Bank v. LiTenda Mortgage Corp.*,
  142 F.3d 151 (3d Cir. 1998) ........................................................................... 8

*Integrated Health Servs. of Cliff Manor, Inc. v. THCI Company LLC*,
  417 F.3d 953 (8th Cir. 2005) ...................................................................... 4, 6

*Kocher v. Dow Chem. Co.*,
  132 F.3d 1225 (8th Cir. 1997) ........................................................................ 6

*Mutual First, Inc. v. O'Charleys Of Gulfport, Inc.*,
  721 F. Supp. 281 (S.D. Ala. 1989) ........................................................... 10, 11

*New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*,
  101 F.3d 1492 (3d Cir. 1996) .......................................................................... 9

*Pacor, Inc. v. Higgins*,
   743 F.2d 984 (3d Cir. 1984), *overruled on other grounds*,
   *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) .............................. 6

*Rosado v. Wyman*,
   397 U.S. 397 (1970) ................................................................................ 9

*South Park Assocs., L.L.C. v. Renzulli*,
   94 F. Supp. 2d 460 (S.D.N.Y. 2000) ................................................................ 11

*Tully v. Mott Supermarkets, Inc.*,
   540 F.2d 187 (3d Cir. 1976) ................................................................... 8, 9

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1966) ................................................................................ 8

**STATUTES**

28 U.S.C. § 1334(b) ................................................................................ 5

28 U.S.C. § 1367(c) ............................................................................ 7, 8

28 U.S.C. § 1404(a) ........................................................................... 4, 10

28 U.S.C. § 1447(c) ................................................................................ 8

28 U.S.C. § 1452(a) ......................................................................... 4, 5, 6

28 U.S.C.A. § 1447(c) ............................................................................... 8

## PRELIMINARY STATEMENT

THCI Company LLC ("THCI") submits this brief in opposition to the Motion to Remand filed by plaintiff IHS Long Term Care Services, Inc. ("LTC"), the nine other plaintiffs who are subsidiaries of LTC (the "Nine Subsidiaries"), and additional counterclaim defendant ABE Briarwood Corporation ("Briarwood" and collectively with LTC and the Nine Subsidiaries, "Plaintiffs"). Plaintiffs seek to avoid the consequences of their failure to pay rent to THCI, and their motion to remand is Plaintiffs' latest procedural ploy to avoid the inevitable eviction of the Nine Subsidiaries from the nine nursing homes located in six different states (the "Facilities").

Despite the existence of a Master Lease between the parties, as recently affirmed by this Court, Plaintiffs have not paid THCI any rent since May 2005, and, among other defaults, they currently owe THCI approximately $9 million in back rent and taxes. Moreover, Plaintiffs repeatedly have confirmed that they have neither the intention nor the ability to pay the back rent or the required rent going forward. Yet, despite these undisputed and material breaches, the Nine Subsidiaries refuse to leave the Facilities. They stridently state that they will do so only when at least six different state courts require them to leave because, they now argue, this Court no longer has jurisdiction and "must" remand the case to Missouri state court. Plaintiffs' statement of the law is simply wrong. Even assuming the issues "related to" the bankruptcy had been resolved (they have not), this Court's exercise of jurisdiction remains discretionary based on considerations of judicial economy, convenience, and fairness. THCI respectfully submits that these considerations warrant the Court's continued exercise of jurisdiction, that the Nine Subsidiaries should be ordered to vacate the Facilities, and that Plaintiffs' effort to avoid eviction and delay this action by moving to remand should be denied.

**COUNTER-STATEMENT OF FACTS**

As noted, this action involves nine health care facilities – three in Ohio, two in Pennsylvania, and one in each of New Jersey, Alabama, Michigan, and Missouri. (Counterclaims at ¶ 8). In or about 1988, the Nine Subsidiaries leased the Facilities pursuant to long-term leases, and Integrated Health Services, Inc. ("IHS"), formerly the parent company to each of the Nine Subsidiaries, guaranteed the Nine Subsidiaries' obligations under each lease (the "Guaranties"). (Counterclaims at ¶ 9). Pursuant to the Guaranties, IHS "absolutely and unconditionally" guaranteed "the full, faithful, and punctual performance, fulfillment, observance, and payment of all of the obligations and liabilities" of the Nine Subsidiaries under their leases. (Counterclaims at ¶¶ 9-10). The Guaranties specifically provide that IHS and its successors and assigns would be bound thereby. (Counterclaims at ¶ 11). IHS reaffirmed its Guaranties in a 1993 Lease Modification Agreement (the "Lease Modification Agreement"), in which IHS acknowledged that "all of its obligations under the Lease Guaranties shall remain in full force and effect and shall hereafter apply to the Leases as amended by this Agreement." (Counterclaims at ¶¶ 13-14).

In February 2000, IHS and its subsidiaries, including the Nine Subsidiaries (collectively, the "Debtors"), filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (Counterclaims at ¶ 17). During the course of the bankruptcy, the Debtors sought to assume the leases for certain of the Facilities and to reject others. (Counterclaims at ¶19). THCI opposed the Debtors' motion, and the parties subsequently reached a settlement that was approved by and entered as an Order of the Bankruptcy Court (the "March 2002 Stipulation and Order"). (Counterclaims at ¶ 21). The March 2002 Stipulation and Order directed IHS, the Nine Subsidiaries, and THCI to enter into a

"Master Lease" that would "amend and restate" the leases, the Lease Modification Agreement, the March 2002 Stipulation and Order, and such other terms as to which the parties might agree in a single document. (Counterclaims at ¶ 23).

By early 2003, IHS had prepared a Chapter 11 plan of reorganization pursuant to which all of the assets and liabilities associated with its long term care business, including the capital stock of all of its long term care subsidiaries, would be sold in a bid process. (Counterclaims at ¶ 26). Briarwood was the successful bidder for the IHS long-term care business, and Briarwood and IHS entered into a Stock Purchase Agreement dated January 28, 2003 (the "SPA"). (Counterclaims at ¶ 27). In accordance with section 5.9 of the SPA, IHS created a new subsidiary – LTC – to which IHS assigned its "assets and liabilities . . . including without limitation the capital stock of all of the Subsidiaries that conduct Seller's long-term care businesses . . ." The assets and liabilities of IHS that were transferred to and assumed by LTC pursuant to the SPA included the Nine Leases and the Guaranties, each of which is identified in the SPA or the schedules to the SPA. (Counterclaims at ¶¶ 28-30).

Despite the March 2002 Stipulation and Order, Plaintiffs did not execute the "Master Lease." (Counterclaims at ¶ 31). Instead, at Briarwood's direction, IHS and the Nine Subsidiaries filed a motion to reject the nine leases. (Counterclaims at ¶ 32). In April 2003, however, the Bankruptcy Court determined that the Master Lease existed between THCI and the Nine Subsidiaries (the "April 2003 Order"). (Counterclaims at ¶¶ 34-35). The Bankruptcy Court subsequently confirmed IHS' plan of reorganization, which memorialized and confirmed the agreements resulting from Briarwood's successful bid and reaffirmed that the Debtors assumed the Leases pursuant to the March 2002 and April 2003 Orders. (Counterclaims at ¶¶ 39-41).

Under the plan and the SPA, LTC succeeded to and became bound by the Guaranties, thus guaranteeing performance by the Nine Subsidiaries under the leases. (Counterclaims at ¶ 42).

Plaintiffs commenced this action in April 2004 by filing a Petition for Declaratory Judgment (the "Petition") in Missouri State Court seeking, among other relief, a declaratory judgment as to whether LTC is a guarantor of the Master Lease, an issue that has not yet been resolved. The action was properly removed from the Circuit Court of Platte County, Missouri to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1452(a). In June 2004, the case was transferred to this Court pursuant to 28 U.S.C. § 1404(a), and both the removal and transfer were upheld by the Eighth Circuit Court of Appeals. *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Company LLC*, 417 F.3d 953, 958 (8th Cir. 2005). By Order dated March 21, 2006, this Court affirmed the April 2003 Order and, thereby, the existence of the Master Lease.

Despite orders by the Bankruptcy Court and this Court finding that there is a Master Lease between the parties, and in breach of that Master Lease, the Nine Subsidiaries continue to occupy the Facilities without paying rent, real estate taxes, or complying with any other obligations incident to their tenancy. (Counterclaims at ¶¶ 55-59). Indeed, Plaintiffs have not paid any rent since May 2005 and currently owe THCI more than $9,000,000. (Counterclaims at ¶ 55). Plaintiffs' counsel has advised the Court that Plaintiffs do not intend to cure their existing defaults or to comply with the terms of the Master Lease in the future and that the Nine Subsidiaries will not vacate the Facilities voluntarily. Rather, in an attempt to prolong their status as squatters, Plaintiffs are asking this Court to remand this action and require THCI to commence summary ejectment proceedings in six different states.

## ARGUMENT

### PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THIS CASE CONTINUES TO BE "RELATED TO" THE IHS BANKRUPTCY AND, EVEN IF IT WERE NOT, THIS COURT'S CONTINUED EXERCISE OF JURISDICTION IS WARRANTED BY CONSIDERATIONS OF JUDICIAL ECONOMY, CONVENIENCE, AND FAIRNESS.

As evidenced by Plaintiffs' own allegations, this case hinges on the interpretation of orders of the Bankruptcy Court which this Court is best equipped to resolve. Moreover, even assuming that the Court's "related to" jurisdiction was based solely on the recently decided appeal, the resolution of that appeal did not divest this Court of jurisdiction. *See, e.g., Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991) (holding that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). This Court has jurisdiction over this case and may continue to exercise that jurisdiction by ordering the Nine Subsidiaries to vacate the Facilities. Plaintiffs' contentions to the contrary, both during a recent status conference ("this case has to go back to Missouri state court") and in their Memorandum ("the case must be remanded"), are misstatements of the law.

A. This Case Remains "Related To" The IHS Bankruptcy.

THCI removed Plaintiffs' Petition from state court because the Petition seeks resolution of issues relating to orders entered by the Bankruptcy Court and IHS' plan of reorganization, including the Master Lease and the Guaranties. Section 1452(a) provides that "[a] party may remove any . . . cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

Contrary to Plaintiffs' argument, Plaintiffs' Petition seeks relief based upon interpretation of bankruptcy law and orders of the Bankruptcy Court and, as stated in the Petition itself, was "brought to declare the rights of the Plaintiff Subsidiaries *and Plaintiff LTC* under the Master Lease." (Petition at ¶ 15 (emphasis added)). Plaintiffs' request for declaratory relief as to the application of the April 2003 Order to LTC as guarantor is necessarily "related to" the bankruptcy. *See Integrated Health Servs.*, 417 F.3d at 958 (finding that "related to" jurisdiction is present where there is "some nexus between the civil proceeding and the Title 11 case," or where the civil claims "'could conceivably have any effect' on the bankruptcy estate.") (citing *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230-31 (8th Cir. 1997)). Potential effects on the bankruptcy estate that trigger "related to" jurisdiction include any matter that "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds, Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). *See also Brown v. C.D. Smith Drug Co.*, No. 98-494-SLR, 1999 WL 709992, at *2 n.1 (D. Del. Aug. 18, 1999) (exercising jurisdiction over several Missouri state law claims that were "related to" the underlying bankruptcy proceeding).

Although the Court's recent Order resolved the pending appeal by affirming the existence of the Master Lease, issues concerning the rights of THCI against LTC under the Guaranties remain. Contrary to Plaintiffs' argument, the Bankruptcy Court did not make a determination as to whether the guaranty issues raised in Plaintiffs' Petition are "related to" the IHS bankruptcy. Plaintiffs' request for a declaratory judgment as to the meaning and application of the April 2003 Order, as it relates to LTC as guarantor, is "related to" the bankruptcy, and jurisdiction remains proper pursuant to 28 U.S.C. § 1452(a). Among other reasons, the

Guaranties are indivisible and inseparable from the Master Lease, which formed a single, integrated agreement, including the Guaranties. In assuming the Master Lease, LTC assumed those Guaranties. Plaintiffs' contention that they could segregate the Guaranties is contrary to the parties' agreement and applicable law. *See In re Comdisco, Inc.*, 270 B.R. 909, 911 (Bankr. N.D. Ill. 2001) ("[a] trustee or debtor in possession may not reject (*i.e.*, breach) one obligation under a contract and still enjoy the benefits of that same contract."). In addition, Plaintiffs' defenses to THCI's counterclaims against LTC as guarantor are premised (though incorrectly) upon (i) the language of the SPA, a document which was the cornerstone of IHS' bankruptcy plan of reorganization, and is, thus, necessarily related to the IHS bankruptcy, and (ii) Plaintiffs' interpretation of Section 365 of the Bankruptcy Code. (*See* Plaintiffs' Brief in Support of Motion to Dismiss (Docket No. 134) at 3-6).

        B.      <u>The Court's Resolution Of Plaintiffs' Appeal Of The Bankruptcy Court's Order Does Not Divest This Court Of Jurisdiction.</u>

Even if the Guaranties were not at issue and the appeal of the Master Lease had been the only basis for this Court's jurisdiction, Plaintiffs' argument that "the case must be remanded" and counsel's recent statements that "[t]his case has to go back to Missouri state court" and that this Court is not a court of "competent jurisdiction" misstate the law. (Plaintiffs' Mem. (Docket No. 145) at 6; Transcript from March 29, 2006 conference (Docket No. 154) at 6 & 9).[1] This Court has the discretion to retain jurisdiction. A district court's decision whether to remand a case that was related to bankruptcy proceedings when it was removed, but is no longer

---

[1] Plaintiffs' counsel raised the issue of remand during a telephone conference with the Court on March 29, 2006 in response to THCI's request for a procedure to address the Nine Subsidiaries' nonpayment of rent. In attempting to persuade the Court that it should not permit THCI's motion, Plaintiffs' counsel repeatedly argued that the remand issue divested the Court of jurisdiction. As stated by counsel, "[t]he remand is not technical. It goes to the question, of course, of the appropriateness of Federal Court jurisdiction." (Docket No. 154 at 8). Then, as now, Plaintiffs misstate the law by suggesting that remand is required. Plaintiffs' real purpose is delay.

bankruptcy-related, is governed by 28 U.S.C. § 1367(c), which enumerates four situations in which federal courts *may* decline to exercise supplemental jurisdiction. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 455 n.3 (5th Cir. 1996).

Plaintiffs do not offer any authority for their contention that this Court is divested of jurisdiction and required to remand upon resolution of the bankruptcy issues. To the contrary, section 1367(c) grants federal courts the discretion to decline to exercise supplemental jurisdiction in certain circumstances and, even in such circumstances, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284-85 (3d Cir. 1993) (remanding to the federal district court with instructions that it exercise its discretion as to whether it should hear plaintiff's state law claims, taking into account the factors of judicial economy, convenience, and fairness to the litigants) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). *See also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *Gibbs*).[2]

Plaintiffs rely on *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976) for the proposition that "courts should ordinarily refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances." (Plaintiffs' Mem. at 7-8). Plaintiffs'

---

[2] To the extent Plaintiffs rely upon section 1447(c) for the proposition that the case must be remanded, such reliance is misplaced. Section 1447(c) does not apply to cases involving supplemental jurisdiction or "related to" jurisdiction. It applies only to cases that were removed improperly or where the court lacks subject matter jurisdiction. *Carnegie-Mellon*, 484 U.S. at 355 n.11 (Section 1447 . . . "do[es] not apply to cases over which a federal court has pendent jurisdiction. Thus, the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all."); *Hudson United Bank v. LiTenda Mortgage Corp.*, 142 F.3d 151, 156 (3d Cir. 1998) (finding that remands under § 1447(c) are only warranted when the federal court has no rightful authority to adjudicate a state case); 28 U.S.C.A. § 1447(c), commentary ("Determining whether to remand a supplemental claim after the merits disposition of the main claim doesn't fall under either category addressed by § 1447(c).").

- 8 -

contention is based on a selective and incomplete reading of that case, which actually states as follows: "[i]f it appears that the federal claim is subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." 540 F.2d at 196. Unlike the circumstances in this case, *Tully* addressed the situation in which plaintiffs lacked the ability to assert a legitimate federal claim in the first place, thereby precluding any analysis of supplemental jurisdiction.

Resolution of an issue providing the basis for original jurisdiction does not divest a federal court of its jurisdiction to hear pendent state law claims. *Rosado v. Wyman*, 397 U.S. 397, 405 (1970) (stating that "[w]e are not willing to defeat the commonsense policy of pendent jurisdiction - the conservation of judicial energy and the avoidance of multiplicity of litigation - by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim."); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (stating that "[o]nce a court has decided to exercise jurisdiction over the state claim, however, elimination of the federal claim does not deprive the court of the constitutional power to adjudicate the pendent claim."). This rule holds true for cases in which the claim giving rise to original jurisdiction was a bankruptcy claim. *In re Carraher*, 971 F.2d 327, 328 (9th Cir. 1992).

In this case, the factors of judicial economy, convenience, and fairness all weigh heavily in favor of this Court's continued exercise of jurisdiction. Indeed, the United States District Court for the Western District of Missouri concluded nearly two years ago that that this case should be transferred to the District of Delaware (*see* Docket No. 46) after considering similar factors. *See American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 260 (W.D. Mo.

1980) (stating that a transfer pursuant to 28 U.S.C. § 1404(a) is in the sound discretion of the district court and should be ordered based on considerations of convenience, fairness, and the interests of justice). Although Plaintiffs attempt to minimize the Court's involvement and the stage of the litigation, the fact is that a Scheduling Order has been entered (Docket No. 141), discovery has been propounded, depositions have been noticed, and a trial date of April 9, 2007 has been set.[3] Plaintiffs' statement that "discovery has only just begun" (Plaintiffs' Mem. at 8) is a function of Plaintiffs' stonewalling and is not a fair reflection of THCI's efforts to proceed with discovery. This case has been before the Court for two years. The Court is familiar with the relevant facts and legal issues, including the underlying IHS bankruptcy case. The Court is well positioned to efficiently resolve the remaining issues, including THCI's pending motion seeking an order requiring the Nine Subsidiaries to vacate the Facilities, and Plaintiffs have not established that the Court lacks such authority.

The existence of specific, state procedures for bringing eviction actions does not preclude a federal district court from issuing orders of eviction where the requisite elements of jurisdiction are met. *Mutual First, Inc. v. O'Charleys Of Gulfport, Inc.*, 721 F. Supp. 281, 282 (S.D. Ala. 1989). The *Mutual First* Court concluded that it was not required to remand due to state procedural rules regarding eviction because a state statute cannot place limitations upon a federal court's authority to hear a case. *Id.* The Court rejected the plaintiff's argument that state courts retained exclusive jurisdiction over the eviction action stating, "[a] state court's jurisdiction to hear an unlawful detainer action has never been held to be exclusive." *Id. See*

---

[3] Plaintiffs improperly rely on *Growth Horizons v. Delaware County, supra,* for the proposition that district courts should remand cases that are not yet ready for trial. (Plaintiffs' Mem. at 7). In *Growth Horizons*, the district court dismissed, for lack of subject matter jurisdiction, claims arising under the Fair Housing Act Amendments and state law claims for breach of contract. 983 F.2d at 1279. The Third Circuit reversed, finding that "the district court has both jurisdiction over the state claim and discretion to either exercise or not exercise that jurisdiction . . ." *Id.* at 1284.

*also South Park Assocs., L.L.C. v. Renzulli*, 94 F. Supp. 2d 460, 461-62 (S.D.N.Y. 2000) (finding that district court had jurisdiction under the diversity statute to issue declaratory judgment permitting landlord to evict tenant); *Carrasco v. Klein*, 381 F. Supp. 782, 786 (E.D.N.Y. 1974) (holding that district court had pendent jurisdiction over wrongful eviction claim where it and plaintiff's civil rights claim arose from "a common nucleus of operative fact."). This Court has properly exercised jurisdiction over the civil claims in this action as "related to" the underlying bankruptcy issues. Because all jurisdictional prerequisites have been met, this Court has the power to issue an order requiring all Nine Subsidiaries to vacate the Facilities.[4]

Most importantly, the Court should continue to exercise jurisdiction to address the fundamental unfairness resulting from Plaintiffs' disregard for their rent obligation and other financial requirements under the Master Lease. Despite the Bankruptcy Court's April 2003 Order determining that a Master Lease exists and this Court's recent Order affirming the Master Lease, Plaintiffs have not paid rent since May 2005 and owe millions of dollars in back rent and taxes with no intention of paying. Plaintiffs also have stated their intention to pay only two-thirds of the rent commencing on April 1, 2006, which they have not done and which, in any event, is an unacceptable breach. The only reason Plaintiffs seek remand is to delay THCI's relief while they continue to occupy the Facilities without paying rent, without paying taxes, and without submitting the required financial information. Plaintiffs' motion for remand is a procedural ploy that should be rejected.

---

[4] In a recently submitted memorandum, Plaintiffs argue that THCI has abandoned its request for the remedy of eviction because this Court may not have the authority to order a local authority to physically remove the Nine Subsidiaries from the Facilities. To be clear, THCI has not abandoned any of its available remedies relating to the Nine Subsidiaries' non-payment of rent. At a minimum, this Court has the authority to issue an order requiring the Nine Subsidiaries to vacate and to hold them in contempt should they not comply.

## CONCLUSION

For all of the foregoing reasons, THCI respectfully requests that Plaintiffs' motion to remand be denied.

        CONNOLLY BOVE LODGE & HUTZ LLP

        _/s/ Collins J. Seitz, Jr._
        Collins J. Seitz, Jr. (Bar No. 2237)
        Kevin F. Brady (Bar No. 2248)
        1007 North Orange Street
        Wilmington, DE 19801
        Tel: (302) 658-9141
        Fax: (302) 658-5614

        *Attorneys for Defendant*
        *THCI Company LLC*

OF COUNSEL:

David S. Sager
Paul R. Marino
PITNEY HARDIN LLP
P.O. Box 1945
Morristown, New Jersey 07962
Tel: (973) 966-6300
Fax: (973) 966-1015

DATED: April 12, 2006

## CERTIFICATE OF SERVICE

I certify that on April 12, 2006, copies of Defendant's Brief in Opposition to Plaintiffs' Motion to Remand was served by electronic mail to the following counsel:

    Richard William Riley, Esquire
    Duane Morris LLP
    100 North Market Street
    Suite 1200
    Wilmington, DE

    Amos Alter, Esquire
    Troutman Sanders LLP
    The Chrysler Building
    405 Lexington Avenue
    New York, NY 10174

                              Collins J. Seitz, Jr. (Bar No. 2237)
                              Connolly Bove Lodge & Hutz LLP
                              1007 North Orange Street
                              P.O. Box 2207
                              Wilmington, DE 19899

Dated: April 12, 2006