# EXHIBIT A

# F A C I L I T Y   L E A S E
# A N D   S E C U R I T Y   A G R E E M E N T

MEDITRUST OF ALABAMA, INC.

Lessor

AND

BRIARCLIFF NURSING HOME, INC.

Lessee

Dated August 13, 1987

For Premises Known as Briarcliff
Nursing Home, Alabaster, Alabama

# F A C I L I T Y   L E A S E
# A N D   S E C U R I T Y   A G R E E M E N T

MEDITRUST OF ALABAMA, INC.

Lessor

AND

BRIARCLIFF NURSING HOME, INC.

Lessee

Dated August 13, 1987

For Premises Known as Briarcliff
Nursing Home, Alabaster, Alabama

Any default under any other lease between Lessor and Lessee, any affiliate of Lessee, or any entities controlled by Lessee or Integrated Health Services, Inc., including the leases for the Alpine Manor, Mountain View and Somerset facilities, shall also be a default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2   Certain Remedies.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

16.3   Damages.  Neither (a) the termination of this Lease pursuant to Section 16.1, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, nor (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting.  In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination.  Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

(A) the sum of:

(i)  the worth, on the date of the award described below, of the unpaid Rent which has been earned at the time of termination,

(ii) the worth, on the date of award of the amount by which the unpaid Rent which would have been earned after termination until the date of the award exceeds the amount of

-39-

Any default under any other lease between Lessor and Lessee, any affiliate of Lessee, or any entities controlled by Lessee or Integrated Health Services, Inc., including the leases for the Alpine Manor, Mountain View and Somerset facilities, shall also be a default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2    Certain Remedies.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

16.3    Damages.  Neither (a) the termination of this Lease pursuant to Section 16.1, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, nor (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting.  In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination.  Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

    (A) the sum of:

        (i)  the worth, on the date of the award described below, of the unpaid Rent which has been earned at the time of termination,

        (ii) the worth, on the date of award of the amount by which the unpaid Rent which would have been earned after termination until the date of the award exceeds the amount of

-39-

# F A C I L I T Y   L E A S E

## MEDITRUST

A Massachusetts Business Trust

Lessor

AND

## INTEGRATED HEALTH SERVICES, INC.
A Delaware Corporation

Lessee

Dated December 30, 1986

For Premises Located In
Bound Brook, NJ

# F A C I L I T Y   L E A S E

## MEDITRUST

A Massachusetts Business Trust

Lessor

AND

## INTEGRATED HEALTH SERVICES, INC.
A Delaware Corporation

Lessee

Dated December 30, 1986

For Premises Located In
Bound Brook, NJ

(h)  if, except as a result of damage, destruction or a partial or complete Condemnation, Lessee voluntarily ceases operations on the Leased Property for a period in excess of two hundred seventy (270) days, or

(i)  if any of the representations or warranties made in Section 2.1 of the Purchase and Sale Agreement proves to be untrue when made in any material respect, which materially and adversely affects Lessor, and is not cured within twenty (20) days after receipt by Lessee of notice from Lessor thereof,

Then, in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination and upon the expiration of the time fixed in such notice, this Lease shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  <u>Certain Remedies.</u>  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate Lessee's damages.  If Lessee shall identify a new tenant which is financially sound and otherwise reasonably acceptable to Lessor, and is ready, willing and able to lease the Leased Property upon terms satisfactory to Lessor, Lessor shall lease the Leased Property to such new tenant provided Lessor has made no prior commitments to any other prospective tenant.

(h)  if, except as a result of damage, destruction or a partial or complete Condemnation, Lessee voluntarily ceases operations on the Leased Property for a period in excess of two hundred seventy (270) days, or

(i)  if any of the representations or warranties made in Section 2.1 of the Purchase and Sale Agreement proves to be untrue when made in any material respect, which materially and adversely affects Lessor, and is not cured within twenty (20) days after receipt by Lessee of notice from Lessor thereof,

Then, in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination and upon the expiration of the time fixed in such notice, this Lease shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  <u>Certain Remedies.</u>  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate Lessee's damages.  If Lessee shall identify a new tenant which is financially sound and otherwise reasonably acceptable to Lessor, and is ready, willing and able to lease the Leased Property upon terms satisfactory to Lessor, Lessor shall lease the Leased Property to such new tenant provided Lessor has made no prior commitments to any other prospective tenant.

42

# F A C I L I T Y   L E A S E

## AND

# S E C U R I T Y   A G R E E M E N T

MEDITRUST AT MOUNTAINVIEW, INC.

Lessor/Secured Party

AND

INTEGRATED HEALTH GROUP

Lessee/Debtor

Dated December 17, 1991

For Premises Known as Laurel View Comprehensive Care Center
Hempfield Township,
Westmoreland County, Pennsylvania

42

# F A C I L I T Y   L E A S E

### AND

# S E C U R I T Y   A G R E E M E N T

### MEDITRUST AT MOUNTAINVIEW, INC.

Lessor/Secured Party

### AND

### INTEGRATED HEALTH GROUP

Lessee/Debtor

Dated December 17, 1991

For Premises Known as Laurel View Comprehensive Care Center
Hempfield Township,
Westmoreland County, Pennsylvania

judgment in a manner satisfactory to Lessor (in its sole and absolute discretion) and in either case such award or judgment shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q)  if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r)  if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' Notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2   Certain Remedies.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

judgment in a manner satisfactory to Lessor (in its sole and absolute discretion) and in either case such award or judgment shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q)  if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r)  if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' Notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  <u>Certain Remedies.</u>  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

If any installment of Rent, Additional Charges or other sums due from Lessee to Lessor hereunder is not paid when due then any prothonotary or attorney of any court of record may appear for Lessee in amicable actions for rent in arrears or treated as if in arrears and charges, whether or not payable as rent, and to sign for Lessee an agreement for entering in any competent court an amicable action or actions in assumpsit for the recovery of arrears of rent and rent treated as if in arrears, and the said charges, and in any suits or in said amicable actions to confess judgment against Lessee for all arrears of rent and rent treated as if in arrears and the said charges, and for interest and costs, together with an attorney's commission of 5%.  Such authority shall not be exhausted by one exercise thereof, but judgment may be confessed from time to time as often as any rent in arrears or rent treated as if in arrears or charges fall due and are not paid.  Such powers may be exercised during as well as after the expiration or termination of the Term.

In the event Lessor terminates this Lease pursuant to Section 16.1, and also after the Term shall have expired, it shall be lawful for any attorney as attorney for Lessee to file an agreement for entering in any competent court an amicable action for judgment in ejectment against Lessee and all persons claiming under Lessee for the recovery by Lessor of possession of the Leased Property, for which this Lease shall be his sufficient warrant, whereupon if Lessor so desires, a Writ of Possession may issue forthwith, without any prior writ or proceedings whatsoever, and if for any reason after such action shall have been commenced, it shall be cancelled or suspended and possession of the Leased Property remains in or is restored to Lessee, Lessor shall have the right upon any subsequent termination of this Lease or expiration of the Term, to bring one or more amicable actions in ejectment as hereinbefore set forth to recover possession of the Leased Property.

In any amicable action in ejectment, or in assumpsit for rent or charges, Lessor shall cause to be filed in such action an affidavit setting forth the facts necessary to authorize the entry of judgment and if a true copy of this Lease (and of the truth of the copy such affidavit shall be sufficient proof) be filed in such action, it shall not be necessary to file the original as a warrant of attorney, any law, rule of court,

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

If any installment of Rent, Additional Charges or other sums due from Lessee to Lessor hereunder is not paid when due then any prothonotary or attorney of any court of record may appear for Lessee in amicable actions for rent in arrears or treated as if in arrears and charges, whether or not payable as rent, and to sign for Lessee an agreement for entering in any competent court an amicable action or actions in assumpsit for the recovery of arrears of rent and rent treated as if in arrears, and the said charges, and in any suits or in said amicable actions to confess judgment against Lessee for all arrears of rent and rent treated as if in arrears and the said charges, and for interest and costs, together with an attorney's commission of 5%. Such authority shall not be exhausted by one exercise thereof, but judgment may be confessed from time to time as often as any rent in arrears or rent treated as if in arrears or charges fall due and are not paid. Such powers may be exercised during as well as after the expiration or termination of the Term.

In the event Lessor terminates this Lease pursuant to Section 16.1, and also after the Term shall have expired, it shall be lawful for any attorney as attorney for Lessee to file an agreement for entering in any competent court an amicable action for judgment in ejectment against Lessee and all persons claiming under Lessee for the recovery by Lessor of possession of the Leased Property, for which this Lease shall be his sufficient warrant, whereupon if Lessor so desires, a Writ of Possession may issue forthwith, without any prior writ or proceedings whatsoever, and if for any reason after such action shall have been commenced, it shall be cancelled or suspended and possession of the Leased Property remains in or is restored to Lessee, Lessor shall have the right upon any subsequent termination of this Lease or expiration of the Term, to bring one or more amicable actions in ejectment as hereinbefore set forth to recover possession of the Leased Property.

In any amicable action in ejectment, or in assumpsit for rent or charges, Lessor shall cause to be filed in such action an affidavit setting forth the facts necessary to authorize the entry of judgment and if a true copy of this Lease (and of the truth of the copy such affidavit shall be sufficient proof) be filed in such action, it shall not be necessary to file the original as a warrant of attorney, any law, rule of court,

# F A C I L I T Y   L E A S E

## AND

# S E C U R I T Y   A G R E E M E N T

### MEDITRUST OF OHIO, INC.

Lessor/Secured Party

### AND

### ELM CREEK OF IHS, INC.

Lessee/Debtor

Dated December 7, 1990

For Premises Known as Elm Creek Nursing Center
Town of West Carrollton
Montgomery County, Ohio

# F A C I L I T Y  L E A S E

## AND

# S E C U R I T Y  A G R E E M E N T

**MEDITRUST OF OHIO, INC.**

Lessor/Secured Party

**AND**

**ELM CREEK OF IHS, INC.**

Lessee/Debtor

Dated December 7, 1990

For Premises Known as Elm Creek Nursing Center
Town of West Carrollton
Montgomery County, Ohio

shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q)  if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r)  if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  Certain Remedies.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q)  if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r)  if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  Certain Remedies.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

In the event Lessor terminates this Lease pursuant to Section 16.1, Lessee agrees that, from and after the date of such termination until the fifth anniversary thereof, neither Lessee nor any Person holding or controlling, directly or indirectly, any interest in Lessee, shall be involved in any capacity in or lend any of their names to or engage in any capacity in any nursing home facility, center, unit or program (or in any partnership, firm, company, corporation or other entity engaged in any such activity or any related activity competitive therewith), whether such competitive activity shall be as an officer, director, owner, employee, agent, advisor, independent contractor, developer, lender, sponsor, venture capitalist, administrator, manager, investor, partner, joint venturer, consultant or other participant in any capacity whatsoever within a ten (10) mile radius of the Leased Property. Lessee acknowledges any such competition by Lessee would cause irreparable harm to Lessor. The within restriction on competition is given by Lessee to induce Lessor to enter into this Lease. Notwithstanding the foregoing, there are excluded from the foregoing restrictions (i) the Other Three Facilities, (ii) the Hickory Creek Nursing Home, Dayton, Ohio, the Brook Haven Nursing Home, Dayton, Ohio and the Brook Villas Nursing Home, Dayton, Ohio, each of which is managed by an Affiliate of Lessee, and (iii) so long as Lessee shall have obtained the prior written approval of Lessor to ownership or management of additional heath care facilities within the ten (10) mile radius, which approval may be withheld by Lessor in the exercise of Lessor's sole and absolute discretion, any other health care facility within the ten (10) mile radius so approved by Lessor and owned or managed by Lessee or any person holding or controlling, directly or indirectly, any interest in Lessee, so long as such facility or right to manage such facility was acquired prior to the Event of Default forming the basis for termination of this Lease.

Lessee hereby acknowledges and agrees that none of the time span, scope or area covered by the foregoing restrictive covenants is or are unreasonable and that it is the specific intent of Lessee that each and all of the restrictive covenants set forth hereinabove shall be valid and enforceable as specifically set forth herein. Lessee further agrees that these restrictions are special, unique, extraordinary and

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

In the event Lessor terminates this Lease pursuant to Section 16.1, Lessee agrees that, from and after the date of such termination until the fifth anniversary thereof, neither Lessee nor any Person holding or controlling, directly or indirectly, any interest in Lessee, shall be involved in any capacity in or lend any of their names to or engage in any capacity in any nursing home facility, center, unit or program (or in any partnership, firm, company, corporation or other entity engaged in any such activity or any related activity competitive therewith), whether such competitive activity shall be as an officer, director, owner, employee, agent, advisor, independent contractor, developer, lender, sponsor, venture capitalist, administrator, manager, investor, partner, joint venturer, consultant or other participant in any capacity whatsoever within a ten (10) mile radius of the Leased Property. Lessee acknowledges any such competition by Lessee would cause irreparable harm to Lessor. The within restriction on competition is given by Lessee to induce Lessor to enter into this Lease. Notwithstanding the foregoing, there are excluded from the foregoing restrictions (i) the Other Three Facilities, (ii) the Hickory Creek Nursing Home, Dayton, Ohio, the Brook Haven Nursing Home, Dayton, Ohio and the Brook Villas Nursing Home, Dayton, Ohio, each of which is managed by an Affiliate of Lessee, and (iii) so long as Lessee shall have obtained the prior written approval of Lessor to ownership or management of additional heath care facilities within the ten (10) mile radius, which approval may be withheld by Lessor in the exercise of Lessor's sole and absolute discretion, any other health care facility within the ten (10) mile radius so approved by Lessor and owned or managed by Lessee or any person holding or controlling, directly or indirectly, any interest in Lessee, so long as such facility or right to manage such facility was acquired prior to the Event of Default forming the basis for termination of this Lease.

Lessee hereby acknowledges and agrees that none of the time span, scope or area covered by the foregoing restrictive covenants is or are unreasonable and that it is the specific intent of Lessee that each and all of the restrictive covenants set forth hereinabove shall be valid and enforceable as specifically set forth herein. Lessee further agrees that these restrictions are special, unique, extraordinary and

49

# F A C I L I T Y   L E A S E

## AND

# S E C U R I T Y   A G R E E M E N T

### MEDITRUST OF OHIO, INC.

Lessor/Secured Party

### AND

### FIRELANDS OF IHS, INC.

Lessee/Debtor

Dated December 7, 1990

For Premises Known as Firelands Nursing Center
Town of New London
Huron County, Ohio

49

# F A C I L I T Y   L E A S E

## AND

# S E C U R I T Y   A G R E E M E N T

## MEDITRUST OF OHIO, INC.

### Lessor/Secured Party

## AND

## FIRELANDS OF IHS, INC.

### Lessee/Debtor

Dated December 7, 1990

For Premises Known as Firelands Nursing Center
Town of New London
Huron County, Ohio

shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q)  if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r)  if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  <u>Certain Remedies.</u>  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q) if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r) if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease. Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2    Certain Remedies.    If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.   Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

In the event Lessor terminates this Lease pursuant to Section 16.1, Lessee agrees that, from and after the date of such termination until the fifth anniversary thereof, neither Lessee nor any Person holding or controlling, directly or indirectly, any interest in Lessee, shall be involved in any capacity in or lend any of their names to or engage in any capacity in any nursing home facility, center, unit or program (or in any partnership, firm, company, corporation or other entity engaged in any such activity or any related activity competitive therewith), whether such competitive activity shall be as an officer, director, owner, employee, agent, advisor, independent contractor, developer, lender, sponsor, venture capitalist, administrator, manager, investor, partner, joint venturer, consultant or other participant in any capacity whatsoever within a ten (10) mile radius of the Leased Property.   Lessee acknowledges any such competition by Lessee would cause irreparable harm to Lessor.   The within restriction on competition is given by Lessee to induce Lessor to enter into this Lease.   Notwithstanding the foregoing, there are excluded from the foregoing restrictions (i) the Other Three Facilities, (ii) the Hickory Creek Nursing Home, Dayton, Ohio, the Brook Haven Nursing Home, Dayton, Ohio and the Brook Villas Nursing Home, Dayton, Ohio, each of which is managed by an Affiliate of Lessee, and (iii) so long as Lessee shall have obtained the prior written approval of Lessor to ownership or management of additional heath care facilities within the ten (10) mile radius, which approval may be withheld by Lessor in the exercise of Lessor's sole and absolute discretion, any other health care facility within the ten (10) mile radius so approved by Lessor and owned or managed by Lessee or any person holding or controlling, directly or indirectly, any interest in Lessee, so long as such facility or right to manage such facility was acquired prior to the Event of Default forming the basis for termination of this Lease.

Lessee hereby acknowledges and agrees that none of the time span, scope or area covered by the foregoing restrictive covenants is or are unreasonable and that it is the specific intent of Lessee that each and all of the restrictive covenants set forth hereinabove shall be valid and enforceable as specifically set forth herein.   Lessee further agrees that these restrictions are special, unique, extraordinary and

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

In the event Lessor terminates this Lease pursuant to Section 16.1, Lessee agrees that, from and after the date of such termination until the fifth anniversary thereof, neither Lessee nor any Person holding or controlling, directly or indirectly, any interest in Lessee, shall be involved in any capacity in or lend any of their names to or engage in any capacity in any nursing home facility, center, unit or program (or in any partnership, firm, company, corporation or other entity engaged in any such activity or any related activity competitive therewith), whether such competitive activity shall be as an officer, director, owner, employee, agent, advisor, independent contractor, developer, lender, sponsor, venture capitalist, administrator, manager, investor, partner, joint venturer, consultant or other participant in any capacity whatsoever within a ten (10) mile radius of the Leased Property. Lessor acknowledges any such competition by Lessee would cause irreparable harm to Lessor. The within restriction on competition is given by Lessee to induce Lessor to enter into this Lease. Notwithstanding the foregoing, there are excluded from the foregoing restrictions (i) the Other Three Facilities, (ii) the Hickory Creek Nursing Home, Dayton, Ohio, the Brook Haven Nursing Home, Dayton, Ohio and the Brook Villas Nursing Home, Dayton, Ohio, each of which is managed by an Affiliate of Lessee, and (iii) so long as Lessee shall have obtained the prior written approval of Lessor to ownership or management of additional heath care facilities within the ten (10) mile radius, which approval may be withheld by Lessor in the exercise of Lessor's sole and absolute discretion, any other health care facility within the ten (10) mile radius so approved by Lessor and owned or managed by Lessee or any person holding or controlling, directly or indirectly, any interest in Lessee, so long as such facility or right to manage such facility was acquired prior to the Event of Default forming the basis for termination of this Lease.

Lessee hereby acknowledges and agrees that none of the time span, scope or area covered by the foregoing restrictive covenants is or are unreasonable and that it is the specific intent of Lessee that each and all of the restrictive covenants set forth hereinabove shall be valid and enforceable as specifically set forth herein. Lessee further agrees that these restrictions are special, unique, extraordinary and

FACILITY LEASE AND SECURITY AGREEMENT

by and between

MEDITRUST OF MISSOURI, INC.,

Lessor

and

INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC.,

Lessee

Dated as of March 24, 1988

For Premises Located At
Riverside, Platte County, Missouri

FACILITY LEASE AND SECURITY AGREEMENT

by and between

MEDITRUST OF MISSOURI, INC.,

Lessor

and

INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC.,

Lessee

Dated as of March 24, 1988

For Premises Located At
Riverside, Platte County, Missouri

(c)  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Paragraph (a) of this Section, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all of Lessee's Personal Property from the Leased Property subject to the rights of any residents or patients and to any requirement of law, or Lessor may claim ownership of Lessee's Personal Property as set forth in Article 32 hereof.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

(d)  In addition to all of the rights and remedies of Lessor set forth in this lease, if Lessee shall fail to pay any rental due hereunder (whether denominated as Minimum Rent, Additional Rent or otherwise) within ten days after same shall have become due and payable, then and in such event the Lessee shall also pay to the Lessor a late payment service charge (in order to partially defray the Lessor's administrative and other overhead expenses) of two hundred fifty dollars ($250) plus interest on such unpaid sum per day for each day or part thereof after the Payment Date thereof during which such payment shall not have been received by Lessor at the greater of (i) 18% or (ii) the Overdue Rate, but in no event in excess of any maximum interest rate (if such sum shall be denominated as interest by any court or competent jurisdiction) permissible under applicable law, it being understood that nothing herein shall be deemed to extend the due date for payment of any sums required to be paid by Lessee hereunder or to relieve Lessee of its obligation to pay such sums at the time or times required by this Lease.

16.3  <u>Damages.</u>  None of (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, or (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting.  In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination.  Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

(c)  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Paragraph (a) of this Section, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all of Lessee's Personal Property from the Leased Property subject to the rights of any residents or patients and to any requirement of law, or Lessor may claim ownership of Lessee's Personal Property as set forth in Article 32 hereof.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

(d)  In addition to all of the rights and remedies of Lessor set forth in this lease, if Lessee shall fail to pay any rental due hereunder (whether denominated as Minimum Rent, Additional Rent or otherwise) within ten days after same shall have become due and payable, then and in such event the Lessee shall also pay to the Lessor a late payment service charge (in order to partially defray the Lessor's administrative and other overhead expenses) of two hundred fifty dollars ($250) plus interest on such unpaid sum per day for each day or part thereof after the Payment Date thereof during which such payment shall not have been received by Lessor at the greater of (i) 18% or (ii) the Overdue Rate, but in no event in excess of any maximum interest rate (if such sum shall be denominated as interest by any court or competent jurisdiction) permissible under applicable law, it being understood that nothing herein shall be deemed to extend the due date for payment of any sums required to be paid by Lessee hereunder or to relieve Lessee of its obligation to pay such sums at the time or times required by this Lease.

16.3  Damages.  None of (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, or (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting.  In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination.  Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

# FACILITY LEASE AND SECURITY AGREEMENT

MEDITRUST AT ALPINE, INC.

Lessor

AND

ALPINE MANOR, INC.

Lessee

Dated December 30 , 1987

For Premises Known as Alpine Manor
Nursing Home, Erie, Pennsylvania

# FACILITY LEASE
# AND SECURITY AGREEMENT

MEDITRUST AT ALPINE, INC.

Lessor

AND

ALPINE MANOR, INC.

Lessee

Dated December 30 , 1987

For Premises Known as Alpine Manor
Nursing Home, Erie, Pennsylvania

(k)  any default by Lessee or Guarantor under any provider agreements with the Commonwealth of Pennsylvania, or

(l)  any default by Lessee under the terms of the Renovation and Closing Expense Escrow Agreement.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  Remedies.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.2:

(a)  Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  At the same time Lessor gives Lessee notice of such termination, Lessor also shall give Fidelity Bank, N.A. notice of such termination.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

(b)  Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

(c)  Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

16.3  Damages.  Neither (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, nor (e) the failure of Lessor to collect or receive any rentals due upon any such

-40-

(k)  any default by Lessee or Guarantor under any provider agreements with the Commonwealth of Pennsylvania, or

(1)  any default by Lessee under the terms of the Renovation and Closing Expense Escrow Agreement,

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  Remedies.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.2:

(a)  Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  At the same time Lessor gives Lessee notice of such termination, Lessor also shall give Fidelity Bank, N.A. notice of such termination.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

(b)  Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

(c)  Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

16.3  Damages.  Neither (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, nor (e) the failure of Lessor to collect or receive any rentals due upon any such

FACILITY LEASE AND SECURITY AGREEMENT

by and between

MEDITRUST OF MICHIGAN, INC.,

Lessor

AND

INTEGRATED HEALTH SERVICES OF RIVERBEND, INC.,

Lessee

Dated as of May 5, 1988

For Premises Located At
Grand Blanc, Michigan

FACILITY LEASE AND SECURITY AGREEMENT

by and between

MEDITRUST OF MICHIGAN, INC.,

Lessor

AND

INTEGRATED HEALTH SERVICES OF RIVERBEND, INC.,

Lessee

Dated as of May 5, 1988

For Premises Located At
Grand Blanc, Michigan

(c) If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Paragraph (a) of this Section, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all of Lessee's Personal Property from the Leased Property subject to the rights of any residents or patients and to any requirement of law, or Lessor may claim ownership of Lessee's Personal Property as set forth in Article 32 hereof. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

(d) In addition to all of the rights and remedies of Lessor set forth in this lease, if Lessee shall fail to pay any rental due hereunder (whether denominated as Minimum Rent, Additional Rent or otherwise) within ten days after same shall have become due and payable, then and in such event the Lessee shall also pay to the Lessor a late payment service charge (in order to partially defray the Lessor's administrative and other overhead expenses) of two hundred fifty dollars ($250) plus interest on such unpaid sum per day for each day or part thereof after the Payment Date thereof during which such payment shall not have been received by Lessor at the greater of (i) 18% or (ii) the Overdue Rate, but in no event in excess of any maximum interest rate (if such sum shall be denominated as interest by any court or competent jurisdiction) permissible under applicable law, it being understood that nothing herein shall be deemed to extend the due date for payment of any sums required to be paid by Lessee hereunder or to relieve Lessee of its obligation to pay such sums at the time or times required by this Lease.

16.3  <u>Damages.</u>  None of (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, or (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting. In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination. Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

(c)  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Paragraph (a) of this Section, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor, immediately surrender to Lessor the Leased Property pursuant to the provisions of Paragraph (a) of this Section and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all of Lessee's Personal Property from the Leased Property subject to the rights of any residents or patients and to any requirement of law, or Lessor may claim ownership of Lessee's Personal Property as set forth in Article 32 hereof.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

(d)  In addition to all of the rights and remedies of Lessor set forth in this lease, if Lessee shall fail to pay any rental due hereunder (whether denominated as Minimum Rent, Additional Rent or otherwise) within ten days after same shall have become due and payable, then and in such event the Lessee shall also pay to the Lessor a late payment service charge (in order to partially defray the Lessor's administrative and other overhead expenses) of two hundred fifty dollars ($250) plus interest on such unpaid sum per day for each day or part thereof after the Payment Date thereof during which such payment shall not have been received by Lessor at the greater of (i) 18% or (ii) the Overdue Rate, but in no event in excess of any maximum interest rate (if such sum shall be denominated as interest by any court or competent jurisdiction) permissible under applicable law, it being understood that nothing herein shall be deemed to extend the due date for payment of any sums required to be paid by Lessee hereunder or to relieve Lessee of its obligation to pay such sums at the time or times required by this Lease.

16.3  <u>Damages.</u>  None of (a) the termination of this Lease pursuant to Section 16.2, (b) the repossession of the Leased Property, (c) the failure of Lessor, notwithstanding reasonable good faith efforts, to relet the Leased Property, (d) the reletting of all or any portion thereof, or (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting.  In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable with respect to the Leased Property to and including the date of such termination.  Thereafter, Lessee shall forthwith pay to Lessor, at Lessor's option, either:

F.A C I L I T Y   L E A S E

AND

S E C U R I T Y   A G R E E M E N T

MEDITRUST OF OHIO, INC.

Lessor/Secured Party

AND

SPRING CREEK OF IHS, INC.

Lessee/Debtor

Dated December 7, 1990

For Premises Known as Spring Creek Nursing Center
Town of Huber Heights
Montgomery County, Ohio

# F A C I L I T Y   L E A S E

## AND

# S E C U R I T Y   A G R E E M E N T

MEDITRUST OF OHIO, INC.

Lessor/Secured Party

AND

SPRING CREEK OF IHS, INC.

Lessee/Debtor

Dated December 7, 1990

For Premises Known as Spring Creek Nursing Center
Town of Huber Heights
Montgomery County, Ohio

shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q) if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r) if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease. Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  **Certain Remedies.** If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

shall, in the reasonable opinion of Lessor, have a material adverse affect on the ability of Lessee to operate the Facility; or

(q) if any Provider Agreement material to the operation or financial condition of Lessee or the Facility shall be terminated prior to the expiration of the term thereof or, without the prior written consent of Lessor in each instance (which consent may be withheld in Lessor's sole and absolute discretion), shall not be renewed or extended upon the expiration of the stated term thereof; or

(r) if, after Lessee has obtained approval for Medicare and/or Medicaid funding, a final unappealable determination is made by the applicable Governmental Authority that Lessee shall have failed to comply with applicable Medicare and/or Medicaid regulations in the operation of the Facility, as a result of which failure Lessee is declared ineligible to receive reimbursements under the Medicare and/or Medicaid programs, unless such determination is the result of a business decision of Lessee, communicated in advance in writing to Lessor, to operate the Facility on a one hundred percent (100%) non-Medicare and/or non-Medicaid basis, as the case may be,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination, during which time Lessee shall have the opportunity to cure any such default, and upon the expiration of the time fixed in such Notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

Lessee will, to the extent permitted by law, pay as Additional Charges all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorney's fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (c) during any time the curing thereof is prevented by an Unavoidable Delay provided that, upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

16.2  _Certain Remedies_.  If any Event of Default shall have occurred and be continuing, whether or not this Lease has been terminated pursuant to Section 16.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, upon not less than ten (10) days' prior notice from Lessor,

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law. Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

In the event Lessor terminates this Lease pursuant to Section 16.1, Lessee agrees that, from and after the date of such termination until the fifth anniversary thereof, neither Lessee nor any Person holding or controlling, directly or indirectly, any interest in Lessee, shall be involved in any capacity in or lend any of their names to or engage in any capacity in any nursing home facility, center, unit or program (or in any partnership, firm, company, corporation or other entity engaged in any such activity or any related activity competitive therewith), whether such competitive activity shall be as an officer, director, owner, employee, agent, advisor, independent contractor, developer, lender, sponsor, venture capitalist, administrator, manager, investor, partner, joint venturer, consultant or other participant in any capacity whatsoever within a ten (10) mile radius of the Leased Property. Lessee acknowledges any such competition by Lessee would cause irreparable harm to Lessor. The within restriction on competition is given by Lessee to induce Lessor to enter into this Lease. Notwithstanding the foregoing, there are excluded from the foregoing restrictions (i) the Other Three Facilities, (ii) the Hickory Creek Nursing Home, Dayton, Ohio, the Brook Haven Nursing Home, Dayton, Ohio and the Brook Villas Nursing Home, Dayton, Ohio, each of which is managed by an Affiliate of Lessee, and (iii) so long as Lessee shall have obtained the prior written approval of Lessor to ownership or management of additional heath care facilities within the ten (10) mile radius, which approval may be withheld by Lessor in the exercise of Lessor's sole and absolute discretion, any other health care facility within the ten (10) mile radius so approved by Lessor and owned or managed by Lessee or any person holding or controlling, directly or indirectly, any interest in Lessee, so long as such facility or right to manage such facility was acquired prior to the Event of Default forming the basis for termination of this Lease.

Lessee hereby acknowledges and agrees that none of the time span, scope or area covered by the foregoing restrictive covenants is or are unreasonable and that it is the specific intent of Lessee that each and all of the restrictive covenants set forth hereinabove shall be valid and enforceable as specifically set forth herein. Lessee further agrees that these restrictions are special, unique, extraordinary and

immediately surrender to Lessor the Leased Property pursuant to the provisions of Section 16.1 and quit the same, and Lessor may enter upon and repossess the Leased Property by reasonable force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property of Lessee from the Leased Property subject to the rights of any residents or patients and to any requirement of law.  Lessor shall use reasonable, good faith efforts to relet the Leased Property or otherwise mitigate damages suffered by Lessor as a result of Lessee's breach of this Lease.

In the event Lessor terminates this Lease pursuant to Section 16.1, Lessee agrees that, from and after the date of such termination until the fifth anniversary thereof, neither Lessee nor any Person holding or controlling, directly or indirectly, any interest in Lessee, shall be involved in any capacity in or lend any of their names to or engage in any capacity in any nursing home facility, center, unit or program (or in any partnership, firm, company, corporation or other entity engaged in any such activity or any related activity competitive therewith), whether such competitive activity shall be as an officer, director, owner, employee, agent, advisor, independent contractor, developer, lender, sponsor, venture capitalist, administrator, manager, investor, partner, joint venturer, consultant or other participant in any capacity whatsoever within a ten (10) mile radius of the Leased Property.  Lessee acknowledges any such competition by Lessee would cause irreparable harm to Lessor.  The within restriction on competition is given by Lessee to induce Lessor to enter into this Lease.  Notwithstanding the foregoing, there are excluded from the foregoing restrictions (i) the Other Three Facilities, (ii) the Hickory Creek Nursing Home, Dayton, Ohio, the Brook Haven Nursing Home, Dayton, Ohio and the Brook Villas Nursing Home, Dayton, Ohio, each of which is managed by an Affiliate of Lessee, and (iii) so long as Lessee shall have obtained the prior written approval of Lessor to ownership or management of additional heath care facilities within the ten (10) mile radius, which approval may be withheld by Lessor in the exercise of Lessor's sole and absolute discretion, any other health care facility within the ten (10) mile radius so approved by Lessor and owned or managed by Lessee or any person holding or controlling, directly or indirectly, any interest in Lessee, so long as such facility or right to manage such facility was acquired prior to the Event of Default forming the basis for termination of this Lease.

Lessee hereby acknowledges and agrees that none of the time span, scope or area covered by the foregoing restrictive covenants is or are unreasonable and that it is the specific intent of Lessee that each and all of the restrictive covenants set forth hereinabove shall be valid and enforceable as specifically set forth herein.  Lessee further agrees that these restrictions are special, unique, extraordinary and