Westlaw.

Not Reported in A.2d                                                                                       Page 1
Not Reported in A.2d, 1988 WL 130641 (Del.Ch.)
**(Cite as: 1988 WL 130641 (Del.Ch.))**

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
JLF, Inc.
v.
**NJE Aircraft Corp.**, et al.
CIV. A. No. 9804.

Dec. 5, 1988.

On Plaintiff's Motion for Summary Judgment: Granted.

Vicki A. Hagel, Morris, Nichols, Arsht & Tunnell, Wilmington.

Edward M. McNally, Barbara J. MacDonald, Morris, James, Hitchens & Williams, Wilmington.

HARTNETT, Vice-Chancellor.

*1 In this suit plaintiff, JLF, Inc., seeks to have partitioned an **aircraft** owned by plaintiff and the two defendants, **NJE Aircraft Corp.** ( "NJE" ) and WWI, Inc. It has now moved for summary judgment.

I find that plaintiff, as a co-tenant, is entitled to a judicially ordered partition of the **aircraft**, as a matter of law, and that this Court has jurisdiction over all the parties. The plaintiff's motion for summary judgment must therefore be granted.

I

The facts are set forth in my prior opinion denying plaintiff's motion for a preliminary injunction. *JLF, Inc. v. NJE Aircraft Corp., et al*, Del.Ch., C.A.No. 9804-NC, Hartnett, V.C. (June 2, 1988).

As noted in that opinion, equity courts have historically upheld the right of a tenant in common to seek a partition of personal property. *Carridin v. Carridin,* Del.Ch., C.A.No. 5668-NC, Hartnett, V.C. (January 8, 1980); *Riley v. Whittier,* Neb.Supr., 158 N.W. 446 (1916); 4 POMEROY, *Equity Jurisprudence* § 1391 (1941).

The right to partition may, however, be impliedly removed or altered by an agreement giving a right of first refusal to another co-tenant. *Harrison v. Domergue,* Cal.App., 78 Cal.Rptr. 797, 798 (1965).

A right of first refusal, however, does not constitute a legal impediment to a partition until a third party presents a bona fide offer which triggers the first refusal right. *Smith v. Smith,* N.Y.Super., 497 N.Y.S.2d 192 (1986). Moreover, the right of a first refusal, in order to be effective and not void in violation of public policy, must be reasonable in its terms and duration. *Cochran v. Cochran,* Del.Ch., C.A.No. 4434-NC, Brown, C. (October 21, 1983). Where an agreement is silent as to duration of the right of first refusal, the right of first refusal is generally found to be unenforceable as restricting alienation for an unreasonable period of time. *Albin v. Albin,* N.Y.App., 212 N.Y.S.2d 725, *app. den.,* 217 N.Y.S.2d 505 (1960); *Roberts v. Jones,* Mass.Supr., 30 N.Y.S.2d 392 (1940).

Restrictions on alienation are strictly construed in favor of free alienation. *Edgemore Terrace Civic Assoc. v. The Spinning Wheel Inn,* Del.Ch., 256 A.2d 284 (1969); *1.77 Acres of Land v. State of Delaware,* Del.Supr., 241 A.2d 573 (1968); *Harrison v. Domergue,* Cal.App., 78 Cal.Rptr. 797 (1969); *Smith v. North,* Cal.App., 53 Cal.Rptr. 94 (1966); *Raisch v. Schuster,* Ohio App., 352 N.E.2d 657 (1975).

In the present case, paragraph eight of the Memorandum Agreement provides the defendants with a right of first refusal:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  Page 2
Not Reported in A.2d, 1988 WL 130641 (Del.Ch.)
**(Cite as: 1988 WL 130641 (Del.Ch.))**

"8. No owner may directly or indirectly sell his interest in the Aircraft without offering the other owners a right of first refusal."

Clearly, this paragraph imposes no limit on the duration of the right of first refusal.

Under the undisputed facts of this case, it would not be reasonable for the Court to hold the partition in abeyance indefinitely pending the receipt of an offer. This is so because the disputed property is an aircraft. Unlike real property, its perpetuity cannot be assumed, although a well maintained aircraft may be operable for up to fifty years. Although expert appraisals adduced by the parties indicate that this aircraft is in very good mechanical condition, its continued viability is always subject to the twists of fate and possible lack of repair. A reasonable estimate of its duration is therefore incalculable.

*2 The suit was filed on April 5, 1988. Since that time neither of the defendants has made an offer to purchase the aircraft, although plaintiff has offered to sell its share to the other two co-tenants or to buy-out the other two co-tenants. Defendants, however, have rejected plaintiff's offers.

There is therefore no basis for the Court to delay a partition because of the first refusal clause. Defendants apparently concede as much.

II

Defendants in opposing summary judgment, however, assert that this Court lacks jurisdiction to order a partition of the aircraft because it is physically not now in Delaware. That contention is without merit.

Defendants do not claim that this Court does not have *in personam* jurisdiction over them. A court of equity has the power to order parties properly before it to dispose of property located in another jurisdiction. *Fall v. Eastin,* 215 U.S. 1 (1909); *Watkins v. Holman,* 41 U.S. 25 (19--); *Berl v. Brewster,* Del.Ch., C.A.No. 8514-NC, Allen, C. (October 28, 1986).

Aside from that rule, there are sufficient minimal contacts with Delaware in this matter to support jurisdiction over the defendants. Plaintiff, JLF, Inc. and defendant WWI, Inc. are Delaware corporations. Defendant, **NJE** sold the **aircraft** to two Delaware corporations and executed the Agreement of Sale in Delaware. The contract expressly provides that it is to be governed and construed under Delaware law, and the **aircraft** was delivered in Delaware. The **aircraft** is extremely mobile and there is no assurance that it will remain in Maryland--its apparent present location. See *Shaffer v. Heitner,* 433 U.S. 186 (1977); *Institute Bancarco Italiano v. Hunter Engineering Co.,* Del.Supr., 449 A.2d 210 (1981). *International Shoe v. Washington,* 326 U.S. 310 (1945); *Sternberg v. O'Neil,* Del.Supr., --- A.2d ----, No. 337 (1987) Holland, J. (Nov. 18, 1988).

Plaintiff's motion for summary judgment is, therefore, granted.

IT IS SO ORDERED.

Not Reported in A.2d, 1988 WL 130641 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                Page 1

Not Reported in F.Supp., 1986 WL 15066 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

C

Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.
FEDERAL TRADE COMMISSION, Plaintiff,
v.
ENGAGE-A-CAR SERVICES, INC.;
Engage-A-Car People, Inc.; Coastal Funding
Corporation; and David Kessler, Stanley Kessler,
David Tuchinsky, William Filandino, Defendants.
Civ. A. No. 86-3758.

Dec. 18, 1986.

Federal Trade Commission by Christopher Schwartz, Amy Donella, Leslie Levine, New York City, for plaintiff.
Rubin, Winston & Diercks by Walter E. Diercks, Washington, D.C., Wolf, Block, Schorr & Solis-Cohen by Brian P. Flaherty, Philadelphia, Pennsylvania, Tomar, Seliger, Simonoff, Adourian & O'Brien by Jerome J. Verlin, Haddonfield, New Jersey, for defendants.

OPINION
CLARKSON S. FISHER, Chief Judge.

*1 In this action, defendants David Kessler and Stanley Kessler move to dismiss plaintiff's Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2) and 12(b)(6).

For the reasons stated, defendants' motion to dismiss is denied.

The Federal Trade Commission ("FTC" or "Commission") conducted a civil investigation for more than one year into a car leasing franchise business known as "Engage-A-Car." Before filing bankruptcy under Chapter 7 of the Bankruptcy Code, Engage-A-Car Services ("Services") and Engage-A-Car People ("People") were in the business of selling franchises to individuals to lease automobiles.

The FTC alleges that defendant Stanley Kessler was the sole director, president and owner of Services until April 1981. Defendant David Kessler purchased Services in April 1981 from Kessler's corporation, Markon Services Inc. On January 2, 1985, David Kessler sold Services stock to Concorde Financial Services, Inc., a wholly-owned subsidiary of defendant Coastal Funding Corp. Defendant William Filandino is alleged to have been an officer and director for Services and People.

Defendants contend that they are no longer involved with Engage-A-Car and that the Government is merely guessing that they are still involved. Defendants also claim that the FTC has submitted no credible evidence that shows that at any time since shortly after January 2, 1985, either of the individual Kessler defendants has been involved in the management of Engage-A-Car.

Subsequent to the incidents stated, the FTC filed a Motion for an *Ex Parte* Temporary Restraining Order which imposes an asset freeze upon all of the defendants. The Court signed this Order on September 24, 1986. Pursuant to this Order, defendants were required to file with the FTC all of their personal financial records since 1981 and to prepare an accounting for all of their financial affairs. This Order was modified on October 7, 1986, and later converted by stipulation to a Preliminary Injunction encompassing most of the Temporary Restraining Order's terms which were approved by this Court. Defendants now seek dismissal of the Commission's Complaint for failure to state a claim.

Defendants set forth three grounds why the FTC's Complaint should be dismissed in its entirety: (1) the FTC has failed to allege that David Kessler or Stanley Kessler is violating or is about to violate any law enforced by the FTC in accordance with Section 13(b) of the Federal Trade Commission Act

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 2
Not Reported in F.Supp., 1986 WL 15066 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

("FTC Act"); (2) Section 13(b) does not authorize the FTC to seek or this Court to order the consumer redress (*e.g.*, restitution and recission of contracts) which is the principal relief requested by the FTC; and (3) the provisions of law under which the FTC initiated and is continuing this action against defendants in its own name or by its own attorney is unconstitutional because it purports to give powers vested solely in the President to Officers of the United States who do not serve at the pleasure of the President.

*2 The FTC brought this action under Section 13(b) of the FTC Act, alleging violations by David Kessler and Stanley Kessler of Section 5 of the FTC Act and seeking prohibitory injunctive relief.

Section 13(b) provides:

Temporary Restraining Orders; preliminary injunctions-

(b) Whenever the Commission has reason to believe-

(1) that any person, partnership, or corporation is violating, or is about to violate any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public-

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond:

Provided, however, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect;

Provided further, That in proper cases, the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit shall be brought in the district in which such person, partnership or corporation resides or transacts business.

The second proviso to § 13(b) which is at issue here permits the Commission in a proper case to seek a permanent injunction. Plaintiff is alleging authority under § 13(b) to pursue routing fraud and other conduct violative of § 5 of the FTC Act or other statutes enforced by the Commission. Plaintiff seeks relief in the form of restitution or notification of consumers, and preliminary relief to prevent interim dissipation of assets. "Section 13(b) gives the Commission the authority to seek, and gives the district court the authority to grant, permanent injunctions in proper cases even though the Commission does not contemplate any administrative proceedings. We further hold that a routine case is a proper case." *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir.1982). Defendants argue that the FTC's entire argument in *Singer* that the District court has the power to award restitution under § 13(b) is devoid of any additional reference to the extensive legislative history of § 13(b), and the ancillary relief sought, recision and restitution, has been recognized by several courts. *See, e.g., FTC. v. Evans Products Co.*, 775 F.2d 1084, 1086-88 (9th Cir.1985); *FTC v. Kitco of Nevada, Inc.*, 612 F.Supp. 1280, 1281 (D.C.Minn.1985). Additionally, in reviewing *Singer*, I find that the Court adequately considered the pertinent legislative history.

*3 A court may exercise inherent powers of a court of equity and order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible.

Unless otherwise provided by statute, all the inherent equitable powers of the District court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1986 WL 15066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. Power is thereby resident in the district Court, in exercising this jurisdiction, " to do equity and to mold each decree to the necessities of the particular case."

\* \* \* \*

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inference, or doubtful construction." (citations omitted)

*FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1433, 1434 (11th Cir.1984).

The court in *U.S. Oil & Gas corp., supra,* cites *FTC v. H.N. Singer, supra,* the only appellate decision to address the issue presEnted here, and states that the Court of Appeals concluded that § 13(b) did invest the district court with these traditional powers:

We hold that Congress, when it gave the district court authority to grant a permanent injunction against violations of any provisions of the law enforced by the Commission, also gave the district court authority to grant any ancillary relief necessary to accomplish complete justice because it did not limit the traditional equitable power explicitly or by necessary and inescapable inference. In particular, Congress thereby gave the district court power to order recision of contracts. Hence § 13(b) provides a basis for an order freezing assets.

*U.S. Oil & Gas Corp., supra,* at 1434.

Therefore, this Court finds that ancillary equitable relief is available in § 13(b) cases as established by the aforementioned case law. This court also agrees with the *Singer* interpretation of § 13(b) whereby Congress did not limit the Court's powers under the final proviso of § 13(b) and as a result, this Court's inherent equitable powers may be employed to issue a preliminary injunction, including a freeze of assets, during the pendency of an action for permanent injunctive relief.

Defendants argue that when the provisions of the FTC Act added by the Magnuson-Moses Act are considered together with the legislative history of the Magnuson-Moss Act, it is clear that the 93d Congress never had any intention that § 13(b) was to be used as a vehicle for providing remedial relief for past violations of law.

Section 13(b) was enacted as part of the Trans-Alaska Pipeline Act, P.L. 93-153, but was originally a part of the Senate bill for the Federal Trade Improvement Act of 1973, P.L. 93-637. In the Senate Report on that bill, the intent of the final clause of 13(b) was explained:

\*4 This section would permit the Commission to obtain either a preliminary or permanent injunction through court procedures initiated by its own attorneys against any act or practice which is unfair or deceptive to a consumer, and thus prohibited by section 5 of the Federal Trade Commission Act. The purpose of section 210 is to permit the Commission to bring an immediate halt to unfair or deceptive acts or practices when to do so would be in the public interest. At the present time such practices might continue for several years until agency action is completed. Victimization of American consumers should not be so shielded.

Furthermore, the courts make it abundantly clear that the Commission has power to shape remedies which go beyond those expressly delegated by Congress. *FTC v. Virginia Homes Mfg. Corp.,* 509 F.Supp. 51, 54 (D.Md.1981). The Court finds the defendants' contentions as to the legislative history of § 13(b) unpersuasive.

Defendants also contend that § 19 of the FTC Act, " Consumer Redress," was enacted in 1974 to be the first and only source of the Commission's authority to seek consumer redress from the courts. Plaintiff cites the express language of § 19(e), which states that:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1986 WL 15066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

Remedies provided in this section are in addition to, and not in lieu of any other remedy or right of action provided by State or Federal law. *Nothing in this section shall be construed to affect any authority of the Commission under any other provision of law.* (emphasis added) 15 U.S.C. 57b(e).

Thus, there is no necessary or inescapable inference, or indeed, any inference, that Congress intended to restrict the broad equitable jurisdiction apparently granted to the District Court by § 13(b). *FTC v. H.N. Singer, Inc., supra,* at 1113.

Defendants contend that this action should be dismissed because the Commission's authorization to institute enforcement proceedings under the FTC Act is unconstitutional. I find defendants' arguments on this issue to be controlled by *Humphrey's Executor v. U.S.,* 295 U.S. 602 (1935), and completely devoid of merit.

Finally, defendants claim that plaintiffs' Complaint is technically deficient in its failure to plead that violations are ongoing or likely to recur and that because defendants sold their business 20 months ago, the Commission cannot meet the legal standard for demonstrating likelihood of recurrence and the motion should therefore be dismissed for failure to state a claim.

The material allegations of a complaint under Fed.R.Civ.P. 12(b)(6) attack are taken as true, *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969), and liberally construed in plaintiff's favor, *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Dismissal is warranted only if it appears beyond doubt that plaintiff cannot prove a set of facts permitting relief in support of his or her claim. *Scheuer v. Rhodes, supra,* at 236. "[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* at 236. Even legal doubts and novel or farfetched hypotheses resolve in plaintiff's favor since the thrust of the 12(b) motion is far removed from the merits of the claim. *Shull v. Pilot Life Ins. Co.,* 313 F.2d 445, 447 (5th Cir.1963).

*5 Generally, the allegations in a complaint are construed liberally. When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Hence, in passing on a motion to dismiss, either on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the Complaint should be construed favorable to the pleader. *Scheuer v. Rhodes, supra,* at 236.

This Court finds that the facts pleaded by plaintiff are sufficient to justify a cause of action under § 13(b) and would support an inference that defendants' § 5 violations are likely to recur. Plaintiff argues in its brief that regardless of whether defendants are presently engaged in § 5 violations, the protracted and systematic nature of their past conduct and the degree of harm consumers suffered from it would certainly permit an inference of future misconduct and likelihood of recurrent bad acts. Plaintiff further contends that defendants' conduct was protracted, lasting for a period of years during which over 8500 consumers were defrauded of more than $24 million. "Section 13 serves a public purpose by authorizing the Commission to seek redress on behalf of injured consumers." *FTC v. Kitco of Nevada, supra,* at 1293.

Defendant David Tuchinsky requests to be joined in this Motion to Dismiss. He filed no formal motion, however, and his application will not be considered in this opinion.

Based on the above and all the files, records and proceedings herein, it is hereby ordered that defendants' motion to dismiss is denied.

Plaintiff will submit an order.

No costs.

D.N.J.,1986.
F.T.C. v. Engage-A-Car Services, Inc.
Not Reported in F.Supp., 1986 WL 15066 (D.N.J.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.