# DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

MICHAEL R. LASTOWSKI
DIRECT DIAL: 302.657.4942
E-MAIL: mlastowski@duanemorris.com

www.duanemorris.com

July 28, 2006

**Via E-Filing**
Hon. Gregory M. Sleet, U.S.D.J.
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street - Room 4324
Wilmington, DE 19801

    RE:    **Integrated Health v. THCI Co.: 04-910 (GMS)**

Dear Judge Sleet;

    We are the attorneys for plaintiffs and additional counterclaim defendant Abe Briarwood Corporation (collectively, "Plaintiffs"). We write in response to the letter of the 27th from Collins J. Seitz, Esq., and to remove from contention an issue defendant has raised, in Mr. Seitz's most recent letter and elsewhere, to divert attention from the lack of merit in its position in the lawsuit, as is documented in the numerous motions presently under advisement.

    We respond to the question posed by Mr. Seitz, as to our clients' continued operation of the properties, in the hope that our response will not only shed light on the issue, but will help frame the matter in dispute, and the matter of process to facilitate the ultimate resolution thereof.

    The matter in dispute originated as a local landlord-tenant issue in State Court, after Judge Walrath decreed that the controversy did not belong in Bankruptcy Court. It was nonetheless brought before this Court by defendant landlord, on the ground that there was then an appeal pending from the Bankruptcy Court to this Court, as to whether there was a master lease in existence between the parties. The Bankruptcy Court had determined that there was such a master lease, and this Court eventually affirmed. Now that this has been determined, the matter reverts once again to being a landlord-tenant matter. In this regard, we note that our clients have done an excellent job of running the facilities -- the regulatory record is excellent, and indeed, we are happy to report that there are no outstanding violations. However, the net income from the properties is not sufficient to pay the rent charged by the landlord.

DuaneMorris

Hon. Gregory M. Sleet, U.S.D.J.
July 28, 2006
Page 2

It is landlord's contention that the lease was in default from its very inception. However, landlord did not object to Integrated Health Services' Chapter 11 Plan, or the transactions contemplated thereby, which included the creation of IHS Long Term Care Services, Inc. ("Long Term Care"), as the Debtor's subsidiary, for the purpose of ownership of the other subsidiaries operating nursing homes. Among these subsidiaries of Long Term Care were the nine entities which are the first nine plaintiffs in the action removed to Federal Court. The Chapter 11 Plan also included, among other things, the sale of fee title to certain facilities to entities owned by a holding company in which Mr. Rubin Schron is a controlling principal, subject to a net lease to THI of Baltimore Inc. All of these transactions were worked out within the bankruptcy and were an integral part of the transactions contemplated by the Plan, yet defendants did not object to the Plan or the consummation thereof. It was only upon the eve of consummation of the Plan that for the first time defendant sought to claim an enormous liability as a result of the asserted default by the Debtor under the master lease pursuant to the Stipulation of Settlement. The Bankruptcy Court dismissed defendant's claim, and no appeal was filed.

Plaintiffs have made a motion here for summary judgment on defendant's claims against them on the ground that there is no basis in fact or law to make such a claim. The only claim that defendant has is under the master lease against the tenants. There is no guaranty in any postpetition document, either directly or by adoption of any prepetition guaranty, nor can there be any guaranty under the Statute of Frauds without such a signed writing. A postpetition guaranty was just not part of the deal agreed to by the parties, and there is no document suggesting that the parties even ever considered the issuance of any postpetition guaranty. It is obvious why. After all, the Debtor-in-Possession was a bankrupt company. Perforce any guarantee issued by it would have been problematical, and would have caused liability that had to be disclosed in the Plan and resolved in order for the Plan to be confirmed. In point of fact, no such liability was scheduled. Defendant made no objection to the Plan to any "failure" to schedule such a liability, because there was no such liability, inasmuch as there was no guaranty. For defendant to create the spectre of such an issue at this point in time after its claim was dismissed by the Bankruptcy Court, and then somehow to contrive to contend that, even though the Debtor-in-Possession made no such guaranty, somehow parties who did not sign any guaranty magically assumed a guaranty that was never granted in the first instance, is just apocryphal.

Mr. Seitz questions the tenants' continued occupancy when rent is not being paid. Inasmuch as the premises do not, and are not projected to, yield sufficient income to pay the rent, the tenants are willing to vacate the premises and return them to the landlord. The tenants are also prepared to deliver the accounts receivable and cash in the bank account, in trust for the payment of any outstanding payroll and trade payables. Nothing in this letter, however, should be construed as an authorization for transfer of any regulatory licenses from any current licensees.

DM3\384506.1

DuaneMorris

Hon. Gregory M. Sleet, U.S.D.J.
July 28, 2006
Page 3

   Currently, there is a built-in working capital surplus that can be applied on account of accrued rent after the payments are made as required as described above. An estimated consolidated balance sheet as of August 31, 2006, accompanies this letter.

   In order to facilitate the foregoing, it is suggested that the turnover occur at the end of the day on August 31. All of the records relating to the business are at the respective premises, and the facilities are appropriately staffed, so that the landlord may take possession by agreeing to the foregoing, without any interruption or threat to patient care. We sincerely hope that landlord will accept this proposal in the spirit offered. It just makes no sense to argue about something as a pretense while defendants and its counsel have averred that it is defendant's intent to drag our clients' names through the mud.

   It is our intent to resolve the outstanding issues in a businesslike manner on a reasonable basis, and not to create issues that are not there. If, however, for whatever reason, defendant landlord is no longer interested in taking back the premises as it has previously indicated, it is just unfair under the circumstances to burden my clients with this responsibility. We therefore request that if landlord does not accept this proposal, that this Court promptly grant our motion for a remand, so that we may apply in State Court for appointment of one or more receivers to accomplish the foregoing in any event. In this manner, this red herring issue can be resolved once and for all.

   While the above eliminates defendant's argument, our motion to amend the scheduling order, and our request to consider that motion also as one for a protective order, remain a pressing concern. We reiterate our request for a conference, for the reasons set forth in my letter of the 25th.

                                                    Respectfully yours,

                                                    Michael R. Lastowski

MRL/ata
Enclosure
cc (w/ Encl., via Email):   Collins J. Seitz, Esq.
                            David S. Sager, Esq.
                            Aurora Cassirer, Esq.
                            Daniel J. DeFranceschi, Esq.

DM3\384506.1

CONSOLIDATED PROJECTED
CURRENT ASSETS AS OF 8/31/06 (In $000)

CASH                                                    $1,500

A/R                                      13,000
A/R ALLOWANCE                            (3,500)

NET A/R                                                 9,500 (1)

CURRENT ASSETS                                          $11,000

A/P                                                     $7,500

CURRENT ASSETS SURPLUS                                  $3,500


(1) Pharmerica has a UCC Lien on all A/R