## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC, INTEGRATED HEALTH SERVICES AT RIVERBEND, INC., INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC., and IHS LONG TERM CARE SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THCI COMPANY LLC, <br><br> Defendant, <br><br> ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, <br><br> Additional Counterclaim Defendants. | Civil Action No. 04-910 (GMS) |

## DECLARATION IN OPPOSITION

**AMOS ALTER,** declares:

1.    I am Of Counsel to Troutman Sanders LLP, cocounsel for plaintiffs

herein. I make this Declaration in opposition to the motion by defendant, THCI Company,

LLC ("THCI"), to enforce a Stipulation and Order of Settlement and Dismissal. Specifically,

this Declaration comes to rebut the affidavit of Robert W. Heyert in support of the motion. I

am personally familiar with the relevant facts, or have annexed the affidavit of one who is, as hereinafter appears.

2.     This action began as one in Missouri State Court, wherein plaintiffs, nine corporate tenants of health facilities located in six States, and their common corporate parent, plaintiff IHS Long Term Care Services, Inc. ("LTC"), sought a declaratory judgment that LTC was not liable as a guarantor of nine leases of the nine tenants to the common landlord, THCI. The action was removed by THCI to the United States District Court for the Western District of Missouri, and transferred to this Court, by an Order which was affirmed by the United States Court of Appeals for the Eighth Circuit. Plaintiffs had challenged the removal on jurisdictional grounds, asserting, contrary to THCI's contention, that the action was not "related" to a bankruptcy matter then on appeal from the Bankruptcy Court of this District to this Court, the ostensible basis for removal and transfer (There was no diversity). The Eighth Circuit noted that the question of "relatedness" was one for this Court to decide. During the pendency of the action in this Court, defendant amended to add counterclaims for allegedly unpaid rent and under fraudulent transfer theories, and to add parties assertedly liable on those counterclaims. Also during the pendency of the action in this Court, the bankruptcy appeal was disposed of by this Court, making any claim of bankruptcy relatedness even more attenuated. Plaintiff accordingly moved to remand.

3.     Prior to any decision on the motion, or the Court otherwise making any determination of the jurisdictional issues, or of the merits,[1] the parties reached a resolution of the issues, embodied in a formal, 22-page Settlement Agreement. In essence, the Settlement Agreement provided for plaintiffs to pay certain monies, and surrender the various premises to

---

[1] The Court also had under advisement a summary judgment motion by plaintiffs on the declaratory judgment issue, as well as a motion by them to dismiss the counterclaims for insufficiency or otherwise as a matter of law.

the landlord's nominees, who would take over possession and operation of the health care facilities. The tenants' obligations ended, and the new operators' obligations began, as of the transfer date, with provisions (and in some cases, escrows) dealing with continuing obligations, and with each side's responsibility to transmit funds collected relating to the other's period of operation.

4.    THCI, alleging breaches of the Settlement Agreement by plaintiffs, now brings this motion, supposedly to enforce the Settlement Agreement. For a wide variety of reasons, however, the motion cannot be granted.

5.    First: THCI is here seeking damages for alleged breach of a contract, namely the Settlement Agreement. Such relief is, under the circumstances here present, obtainable, if at all, only by plenary action. In any event, even if THCI expects to obtain the relief by motion, it must (i) show the claim belongs to it and not another, (ii) quantify its damages, (iii) show that claim arises from breach of a particular obligation of the Settlement Agreement, (iv) show which plaintiff or plaintiffs allegedly breached that obligation, and finally (v) prove entitlement to that number against that party as a matter of law. As will be demonstrated below, it has done none of these, and accordingly cannot obtain the relief it seeks in this manner, if at all.

6.    Second: There are indispensable parties to THCI's claim, who are not joined in this action. For example, the Heyert Affidavit asserts (Par. 9) that "THCI (or the New Operators) have been required to pay" various monies for which THCI seeks to hold plaintiffs liable. The Heyert Affidavit is attempting to blur the fact that it is the New Operators, not THCI, who apparently were "required to" pay. It is therefore the New Operators who would own these claims, not THCI. The New Operators are indispensable parties to such claims for

3

relief, but they are not parties to this action. Similarly, the Heyert Affidavit asserts (Par. 11) that "THCI or the New Operators" have been named in various lawsuits. Again, THCI is attempting to avoid directly admitting that it is the New Operators, or their new management company, rather than THCI, who have the supposed grievances arising out of those lawsuits. Indeed, in the two cases where the actual facts can be determined from the Heyert Affidavit, because it annexes the complaints in those lawsuits (Exhs. "C" and "D" to the Heyert Affidavit), THCI is <u>not</u> a party, but instead it is the New Operator in one, and the new management company in the other, who are the parties thereto. Clearly, if there are claims to be made, they, and not THCI, are the ones who have to make those claims. Their absence as parties to this action is fatal to THCI's motion.[2]

       7.   <u>Third</u>: Much of the matter of which the Heyert Affidavit complains would not in any event be a breach of the Settlement Agreement. Thus, the Heyert Affidavit (Par. 10) complains that, "In order to qualify for a group rate premium", "THCI was forced to pay" certain funds.[3] However, it is not asserted by the Heyert Affidavit, and it does not appear from a review of the Settlement Agreement, that this was an obligation provided for under the Settlement Agreement. Indeed, the Heyert Affidavit admits as much (<u>id</u>.), when it refers, in its standard obfuscatory language, that "LTC and the LTC Plaintiffs failed to live up to their obligations under the Settlement Agreement, <u>as well as other agreements with third parties</u>" (emphasis supplied). A violation of a contractual obligation to a third party would not <u>ipso facto</u> be a violation of the Settlement Agreement. Even assuming <u>arguendo</u> the allegations of

---

[2] That contentions are made in those lawsuits is of course not proof, or even evidence, that the allegations of liability are true. THCI, however, for the purposes of this motion, is proceeding as if these hearsay allegations must be accepted as established fact.

[3] Based on what has been noted above, the assertion that it was THCI which paid the funds is probably false, but that matter will be clarified upon discovery.

violation of a third party's contractual rights had merit, THCI's volunteering to cure any such violation does not give rise to a claim by it under the Settlement Agreement.

8. Fourth: Under the Settlement Agreement, certain of the parties undertake certain obligations but not others. For instance, the obligation of LTC under the Settlement Agreement is limited solely to one specific obligation, of which there is no claim here of breach. For Briarwood, there are no obligations at all imposed by the Settlement Agreement. The claims arising out of particular nursing homes could not possibly extend to those plaintiffs who were involved only with different nursing homes. The motion must clarify what relief it seeks against what party.

9. Fifth: THCI wishes to offset the LTC Receivables it has collected against the monies it contends (but has not established) it is owed (see Heyert Aff. Par. 18). That desire on its part, however, could not be fulfilled under any circumstances. The LTC Receivables are (and were prior to entry of the Settlement Agreement) subject to a perfected security interest in favor of Pharmerica Inc., a fact fully disclosed in the Settlement Agreement (Par. 12). See the annexed Affidavit in Opposition of Avi Klein. To the extent the Heyert Affidavit may be understood as seeking relief in this regard (and if not, the allegations are both immaterial and irrelevant), the relief may not be granted, because THCI does not have the substantive right it seeks. I am advised, and do believe, that if this matter continues, Pharmerica Inc. will seek to intervene.

10. Sixth: THCI is of course essentially asserting claims sounding in contract on the Settlement Agreement. A party may not enforce a contract when it itself is in breach. The complete failure to deliver remittance advices on the LTC Receivables as required by the Settlement Agreement (Par. 4[B][iv]), to say nothing of the failure to remit the

5

Remittances themselves, precludes contract relief to THCI or the New Operators. The Court is respectfully referred to the annexed Affidavit of Avi Klein for details.

11.    It is thus evident that THCI has not proved its entitlement as a matter of law to the relief it has requested, without even specifying what relief is requested of whom. The motion thus cannot be granted, and should be denied or dismissed. To the extent, however, that the motion is not denied or dismissed, but continued for an evidentiary hearing, plaintiffs hereby demand a trial by jury on all claims rightly so triable at such evidentiary hearing.

12.    I declare, under penalty of perjury, that the foregoing is true and correct. Executed on April 20, 2007.

_____
Amos Alter