IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC. and IHS LONG TERM CARE SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THCI COMPANY LLC, <br><br> Defendant, <br><br> and, <br><br> ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, <br><br> Additional Counterclaim Defendants. | Case No. 1:04-910-GMS |

**OPENING BRIEF OF PHARMERICA, INC. IN SUPPORT OF ITS MOTION FOR INTERVENTION AND ANSWERING BRIEF IN OPPOSITION TO MOTION BY THCI COMPANY, LLC TO ENFORCE THE STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

**ARCHER & GREINER, P.C.**
Peter L. Frattarelli (No. 2871)
300 Delaware Avenue
Suite 1370
Wilmington, Delaware 19801
Tel: (302) 777-4350
Fax (302) 777-4352
*Attorneys for Non-Party Intervenor PharMerica, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
Parties ......................................................................................................................................... 1
STATEMENT OF FACTS ......................................................................................................... 3
    A.    Who is the Landlord and Who is the Tenant? ............................................................. 3
    B.    Enter Tristate Health Investors, LLC .......................................................................... 4
    C.    Tristate Enters into Agreements with PharMerica ..................................................... 5
    D.    The THCI/IHS Settlement Stipulation ....................................................................... 6
    E.    THCI'S Motion To Enforce the Settlement Stipulation ............................................ 8
ARGUMENT ............................................................................................................................... 8
I.    INTERVENTION SHOULD BE GRANTED TO PHARMERICA ............................... 8
    A.    Intervention as of right should be granted to PharMerica ........................................ 8
    B.    Permissive intervention also should be granted to PharMerica ............................. 10
CONCLUSION ......................................................................................................................... 13

-ii-

# TABLE OF AUTHORITIES

## Federal Cases

*Fuentes v. Shevin*, 407 U.S. 67 (1972) .................................................................................. 13

*In re Rapp*, 16 B.R. 575 (Bankr. S.D. Fla. 1981) ................................................................. 13

*Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) ......................... 10, 11

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ........................................... 10, 11

Error! Unknown document property name.

## PRELIMINARY STATEMENT

Non-Party Intervenor PharMerica, Inc. ("PharMerica") respectfully submits this opening brief in support of its Motion for Intervention ("Intervention Motion"). PharMerica's Intervention Motion should be granted. PharMerica has an interest relating to property at issue in this action – specifically, receivables (the "Collateral") of the Nursing Home Properties that the Plaintiffs ("LTC") have transferred to the Defendant ("THCI"). PharMerica's interest is decidedly not represented by any party now before this Court. Disposition of the action before this Court will cause irreparable damage to PharMerica and eviscerate PharMerica's rights in and to the receivables and PharMerica's Collateral. PharMerica will, as a practical matter, be impaired and impeded from protecting its perfected security interest in the receivables and PharMerica's Collateral unless intervention of PharMerica is granted.

PharMerica also submits this brief in opposition to the Motion by THCI Company, LLC ("THCI") to Enforce the Stipulation and Order of Settlement and Dismissal (the "Enforcement Motion") [Docket No. 206]. Enforcement of the Stipulation and Order of Settlement and Dismissal (the "Settlement Stipulation") poses an imminent threat to PharMerica's rights to its Collateral and security interest in the receivables. The Settlement Stipulation, which was obtained without any notice to PharMerica, expressly refers to the very property (the Collateral) that is subject to PharMerica's security interest and is at issue before the Circuit Court for the 11th Judicial Circuit, Miami-Dade County, Florida, in an action entitled PharMerica, Inc. v. Klein et al. (the "Florida Action").

## PARTIES

Non-Party Intervenor PharMerica, Inc. ("PharMerica"), a Delaware corporation with a principal place of business in Florida, provides pharmacy services to nursing homes and other healthcare facilities. (*See* Proposed Intervention Complaint (the "Complaint") ¶ 1.)

**Error! Unknown document property name.**

LTC, which refers to the Plaintiffs and Counterclaim Defendants, is a group of 12 entities that owned and operated nine nursing home properties as follows:

- Integrated Health Group, Inc. ("IHS of Greensburg") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 890 Weatherwood Lane in the city of Greensburg, Pennsylvania.

- Integrated Health Services of Cliff Manor, Inc. ("IHS of Cliff Manor") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 4700 Cliffview Drive in the city of Kansas City, Platte County, Missouri.

- Integrated health Services of Riverbend, Inc. ("IHS of Riverbend") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 1194 Belsay Road in the city of Grand Blanc, Michigan.

- Integrated Health Services at Somerset Valley, Inc. ("IHS of Somerset Valley") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 1621 Route 22 West in the city of Bound Brook, New Jersey.

- Alpine Manor, Inc. ("IHS of Alpine Manor") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 4144 Schaper Avenue in the city of Erie, Pennsylvania.

- Briarcliff Nursing Home, Inc. ("IHS of Briarcliff") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania doing business at 850 N.W. 9th Street in the city of Alabaster, Alabama.

- Spring Creek of HIS, Inc. ("IHS of Spring Creek") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 5440 Charlesgate Road in the city of Huber Heights, Ohio.

- Firelands of HIS, Inc. ("IHS of Firelands") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 204 West Main Street, Route 162 in the city of New London, Ohio.

- Elm Creek of IHS, Inc. ("IHS of Elm Creek")[1] is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 115 Elmwood Circle in the city of West Carrolton, Ohio.

- IHS Long Term Care, Inc. ("LTC") is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 901 Ridgebrook Road in the city of Sparks, Maryland.

- Long Term Care itself is or was the parent corporation of all of the other plaintiffs herein.

- Abe Briarwood Corp. acquired Long Term Care and the other Plaintiffs.

Each of the IHS Facilities operates a nursing home facility at its principal place of business.[2] (*See* Complaint ¶¶ 3-13.)

THCI Company, LLC ("THCI") a Delaware corporation, doing business at 4700 Cliffview Drive in the city of Kansas City, in Platte County, Missouri. (*See* Complaint ¶ 2.)

## STATEMENT OF FACTS

### A. Who is the Landlord and Who is the Tenant?

Prior to February 2000, Integrated Health Services, Inc. ("IHS") was a major operator of numerous health care facilities throughout the country. IHS conducted its operations through numerous subsidiary companies all of which operated a single health care facility. Among IHS' subsidiaries were the IHS Facilities. The Nursing Home Properties were leased by the IHS Facilities from Meditrust Corporation ("Meditrust") or one or more of its subsidiaries. (*See* Complaint ¶¶ 16-17.)

In February 2000, IHS and the IHS Facilities filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of

---

[1] IHS of Cliff Manor, IHS of Riverbend, IHS of Somerset Valley, IHS of Alpine Manor, IHS of Briarcliff, IHS of Spring Creek, IHS of Firelands and IHS of Elm Creek shall hereinafter be collectively referred to as the "IHS Facilities".

[2] The nine properties together shall hereinafter be collectively referred to as the "Nursing Home Properties".

-3-

Delaware (the "IHS Bankruptcy Case"). During the course of IHS Bankruptcy Case, THCI succeeded to rights and interests of Meditrust with respect to the IHS Facilities.

On or about May 12, 2003 the Bankruptcy Court confirmed IHS' Amended Joint Plan Reorganization (the "Plan"). Pursuant to the Plan, all of the capital stock, assets and liabilities associated with the IHS Facilities, would be sold to Abe Briarwood Corp. ("Briarwood"). Upon information and belief, consistent with the Plan, IHS entered into a Stock Purchase Agreement (the "SPA") with Briarwood. Pursuant to the SPA, IHS was required to create a new subsidiary, IHS Long Term Care Services, Inc. ("LTC"). LTC was intended, inter alia, to be a vehicle for transferring ownership of the IHS Facilities to Briarwood.

As of the date the instant litigation commenced, upon information and belief, THCI was the fee simple owner of the Nursing Home Properties, Briarwood was the owner and parent company LTC, LTC was the owner and parent company of the IHS Facilities who ultimately rented the Nursing Home Properties from THCI. (*See* Complaint ¶¶ 20-23.)

**B.     Enter Tristate Health Investors, LLC**

Sometime after closing of the SPA, Briarwood and/or LTC negotiated with Tristate Health Investors, LLC. ("Tristate"), a Florida corporation, for the management of the day-to-day operations of the IHS Facilities. In order to facilitate the management of the IHS Facilities, beginning in or about August, 2003, Tristate created nine subsidiary companies to correspond to each of the nine IHS Facilities. These nine Tristate subsidiaries are Alabaster, LLC, Erie, LLC, Grand Banc, LLC, Greensburg, LLC, Huber Heights LLC, Kansas City, LLC, New London, LLC and West Carrolton, LLC (collectively, the "Tristate Entities" and singularly a "Tristate Entity"). The Tristate Entities were all limited liability companies organized and existing under the laws of the State of Florida.

In or about September, 2003, each of the Tristate Entities entered into a management agreement with the IHS Facilities (the "Management Agreement"). Under the Management Agreement, a Tristate Entity would act as manager for the corresponding IHS Facility. A true and correct copy of the Management Agreement is annexed to the accompanying declaration of Peter L. Frattarelli (the "Frattarelli Decl.") as Exhibit "A". The precise scope of the powers and duties of the Tristate Entities under the Management Agreement remain to be determined.

As to the issue of whether the Tristate Entities were the agents of the LTC Facilities, the Management Agreement ¶ 2(k) states in relevant part that "[t]the relationship created by this Agreement is one of principal and agent, and nothing to the contrary shall be inferred from this Agreement." (*See* Management Agreement at ¶2(k)). But the Management Agreement ¶ 9(i) states that "the parties hereto shall be independent contractors and this Agreement shall not be construed as establishing any joint venture, employment, partnership, license, franchise or agency relationship." (*See* Management Agreement at ¶9(i)). The Management Agreement provides the Tristate Entities with, inter alia, the full power and authority to contract for services with vendors such as PharMerica.

## C. Tristate Enters into Agreements with PharMerica

On or about June 30, 2004, the Tristate Entities each entered into nine separate pharmacy services agreements (each a "Pharmacy Services Agreement," and collectively, the "Pharmacy Services Agreements") with PharMerica. There is a separate Pharmacy Services Agreement with respect to each IHS Facility.

Each Pharmacy Services Agreement is substantially the same with the exception of the inception date, the location of the Facility and the corresponding contracting Tristate Entity. True and correct copies of each Pharmacy Services Agreement are annexed to Frattarelli Decl. as Exhibits "A" through "J".

Pursuant to the Pharmacy Services Agreements, PharMerica agreed to be "the exclusive provider" of pharmacy related goods and services to the corresponding IHS Facility. In connection with the services and products provided under the Pharmacy Services Agreements, the Tristate Entities each granted PharMerica a security interest (the "Security Interest") in the respective IHS Facilities' accounts receivable (the "Collateral"). Specifically, each Pharmacy Services Agreement states in relevant part that

> [a]ll amounts owed to Provider shall be collateralized by License Owner with a blanket lien on all accounts receivable of the License Owner and Facility. The collateral will be perfected under the requirements set forth in the Uniform Commercial Code and the rules and regulations of the applicable jurisdiction.

(*See* Exhibits "A" through "J" to the Frattarelli Decl. each at ¶4(a)).

To perfect its Security Interest and to notify others of that Interest, PharMerica filed UCC-1 Financing Statements (the "UCCs") in accordance with the applicable provisions of the Uniform Commercial Code and applicable state law. True and correct copies of the UCCs are collectively annexed to the Frattarelli Decl. of as Exhibit "K".

### D. The THCI/IHS Settlement Stipulation

Prior to execution of the Pharmacy Services Agreement, upon information and belief, the IHS Facilities and THCI became involved in the instant litigation stemming from a dispute over certain real property leases relating to the Nursing Home Properties.

On or about September 25, 2006, the IHS Facilities and THCI executed a settlement agreement (the "Settlement Stipulation"), a true and correct copy of which is annexed to the Frattarelli Decl. as Exhibit "L". Pursuant to the Settlement Stipulation, and to resolve their claims amongst one another, the IHS Facilities agreed to pay to THCI the total sum of $14,000,000.00 (Fourteen Million Dollars) (the "Settlement Payment"). The first $10,000,000.00 (Ten Million Dollars) ("Initial Payment") of the Settlement Payment was to be

made on September 30, 2006 and the balance of $4,000,000.00 (Four Million Dollars) ("Final Payment") was to be made on the Transition Date as defined therein (the "Transition Date").

Under the terms of the Settlement Stipulation, LTC and the IHS Facilities agreed to vacate the Nursing Home Properties, surrender and transfer possession and control of the same and all the tangible items, including but not limited to outstanding "accounts receivable records, accounts payable records, employee records, and patient records" to the New Operators, as those entities were defined in the Settlement Stipulation. (*See* Settlement Stipulation and ¶1.)

Upon information and belief, all of the transfers were completed by October 1, 2006 and, therefore, pursuant to the Settlement Stipulation, the final Transition Date as defined therein (the "Transition Date") for all nine health care facilities was October 1, 2006.

Despite PharMerica's Security Interest, the Settlement Stipulation provides that the IHS Facilities pre-Transition Date receivables (the "Pre-Transition Date A/R") were to be collected by the New Operators, and the New Operators would hold the Pre-Transition Date A/R in trust for the IHS Facilities. Also despite PharMerica's Security Interest, and pursuant to the Settlement Stipulation, the New Operators were required to pay the LTC Receivables, as that term is defined therein, to LTC and the IHS Facilities "against payment of the LTC Receivables collected by the New Operators except if and to the extent that the IHS Facilities have failed to satisfy or defaulted under their financial obligations under paragraphs 4(a), 4(b)(i)(1), (2) of the Settlement Agreement." (*See* Settlement Stipulation at ¶4(b)(iv).)

Moreover, the Settlement Stipulation explicitly states that "[e]xcept as to any security interest that the LTC Plaintiffs [the IHS Facilities], LTC, and Briarwood shall terminate prior to the Settlement Date, the LTC Plaintiffs [the IHS Facilities], LTC, and/or Briarwood warrant and represent that they have not provided a security interest to any vendor or other third party,

*including **PharMerica**,* relating to the Facilities except with respect to receivables that are due and owing to the LTC Plaintiffs [the IHS Facilities] for services provided prior to the Transition Date." (*See* the Settlement Stipulation at ¶12 (emphasis added).)

E.  **THCI'S Motion To Enforce the Settlement Stipulation**

In the instant action, THCI claims that the IHS Facilities have, in a number of ways, breached the Settlement Stipulation. Specifically, THCI argues that, in violation of the Settlement Stipulation, it has been made to pay certain pre-Transfer Date debts of the IHS Facilities (the "Pre-Transition Date A/P"). As a result, THCI has filed a motion (the "THCI Motion") seeking to enforce section 4(b)(iv) of the Settlement Stipulation by, inter alia, authorizing the New Operators to offset the Pre-Transition Date A/P it has paid against the Pre-Transition Date A/R it has collected. (*See* Complaint ¶ 46.)

**ARGUMENT**

**I.**

**INTERVENTION SHOULD BE GRANTED TO PHARMERICA**

PharMerica moves for intervention as of right pursuant to Rule 24(a) of the Federal Rules and permissive intervention pursuant to Rule 24(b). Intervention by PharMerica is warranted under either rule.

A.  **Intervention as of right should be granted to PharMerica**

Rule 24(a)(2) of the Federal Rules applies to intervention as of right and provides as follows:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect their interest, unless the applicant's interest is adequately represented by existing parties.

-8-

Fed. R. Civ. P. 24(a).

To establish grounds for intervention of right, the intervenor must show four elements: (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the litigation"; (3) "a threat that the interest will be impaired or affected, as a practical mater, by the disposition of the action"; and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *See Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (reversing District Court and holding that intervention as of right should have been granted). PharMerica establishes each of these elements and therefore intervention as of right is warranted here.

First, PharMerica promptly moved before this Court upon learning through discovery in the Florida Action that its security interest in its Collateral was affected by the Settlement Stipulation. PharMerica' prompt action satisfies the requirement for a timely application for leave to intervene. *See Kleissler*, 157 F.3d at 964, 969 (3d Cir. 1998) (holding that intervention as of right should have been granted).

Significantly, the fact that the Settlement Stipulation was reached before the filing of the Intervention Motion does not change this result. Courts grant motions to intervene even after a case is closed and settlement has been entered. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) (reversing District Court holding that intervention should have been granted even though settlement was reached and a dismissal order was entered more than six months before intervention motion was filed).

Second, PharMerica establishes a sufficient interest in the litigation because PharMerica has and claims a security interest in the Collateral, which is included in the Settlement

Stipulation's reference to Receivables (¶ 12). *See Kleissler*, 157 F.3d at 964 (holding that intervenor established sufficient interest).

Third, PharMerica shows that the Settlement Stipulation poses a threat that PharMerica's interest will be impaired or affected, as a practical mater, by the disposition of this action. Indeed, the Florida Action may become an exercise in futility if PharMerica's Collateral is transferred without PharMerica's knowledge or participation.

Fourth, neither THCI nor LTC provides any protection or representation of PharMerica's interest because THCI and LTC are directly adverse to PharMerica about the only issue that matters: which party has a properly perfected security interest in the Collateral. Thus, none of the existing parties to the litigation adequately represent PharMerica's interest.

### B. Permissive intervention also should be granted to PharMerica

Rule 24(b)(2) of the Federal Rules, which governs permissive intervention, provides as follows:

> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . .

Fed. R. Civ. P. 24(b).

The Third Circuit, in considering an intervention motion filed after a settlement agreement was reached and involving confidentiality orders in the action, held that permissive intervention is the appropriate device to enable a litigant who was not an original party to the litigation to challenge terms of an order. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994). The Third Circuit held the intervenors established "a question of law or fact in common" with the main action by challenging the validity of a provision in an order entered in the main action. *Id.*

Here, PharMerica challenges the validity of ¶ 12 of the Settlement Stipulation, which was entered as an Order of this Court. This provision is invalid for the following three independent reasons.

First, to the extent that it there are no security interests as to the Nursing Home Properties "[e]xcept as to any security interest that the LTC Plaintiffs, LTC, and Briarwood shall terminate prior to the Settlement Date . . . ." applies to Collateral, this statement is false. This is invalid because, as THCI and LTC well knew, PharMerica possessed properly perfected security interests in Collateral that attach to the Nursing Home Properties and continue to the present. Thus, PharMerica's security interests were not terminated and ¶ 12 of the Settlement Stipulation is invalid on this basis alone.

Second, the LTC Plaintiffs, LTC, and Briarwood warranted and represented "that they have not provided a security interest to any vendor or other third party, including PharMerica . . . ." (emphasis added). This representation is false. PharMerica's security interest runs with each of the Nursing Home Properties and continues long after the Settlement Date, another fact that was well known to THCI and LTC. Moreover, the fact that ¶ 12 of the Settlement Stipulation expressly mentions PharMerica, asserting that PharMerica has no security interest, underscores the consciousness and intent of THCI and LTC to deprive PharMerica of its property. For this additional reason, the Settlement Stipulation must be vacated.

Third, ¶ 12 of the Settlement Stipulation states an exception for "services provided prior to the Transition date," but the Collateral is not subject to any such exception or limitation. To the contrary, PharMerica's Collateral and security interest in each Nursing Home Property's Receivables attaches to all Receivables unless and until PharMerica is paid in full. Neither THCI

nor LTC have the power to terminate PharMerica's validly-perfected security interests. For this reason as well, the Settlement Stipulation is invalid.

PharMerica properly perfected its security interests under the applicable state law (Article 9 of the Uniform Commercial Code as applicable under the law of each state at issue). Intervention is therefore necessary, warranted and appropriate given PharMerica's substantial interest at stake.

Denying intervention to PharMerica would be tantamount to denying due process to PharMerica. There are two elements of due process which courts consider, procedural and substantive. Procedural due process relates to the notice necessary to provide a property owner an opportunity to contest the validity of an action which seeks to deprive him of that inertest. *In re Rapp*, 16 B.R. 575 (Bankr. S.D. Fla. 1981), citing *Fuentes v. Shevin*, 407 U.S. 67 (1972).

When considering substantive due process, the inquiry focuses on whether the challenged act is unreasonable, arbitrary or capricious and whether it bears a real and substantial relationship to a permissible legislative objective. *Id.* PharMerica was not named in this action, nor was it consulted during the negotiations of the Settlement Stipulation.

Should PharMerica not be permitted to intervene in the instant action, the elements of due process would clearly be called into question. The TriState Entities' obligations under the Pharmacy Services Agreements were secured by the Security Interest granted to PharMerica. PharMerica relied on the Security Interest when it agreed to enter into the Pharmacy Services Agreements.

Pursuant to the Settlement Stipulation, the IHS Facilities have agreed to and already have, paid substantial sums of money to THCI. Upon information and belief, most if not all of these sums of money are or were subject to PharMerica's Security Interest. Moreover, in the

THCI Motion, THCI asks this Court to allow it to setoff Pre-Transition Date A/RP it has paid against the Pre-Transition Date A/R it has collected. There is no dispute that these funds are subject to PharMerica's Security Interest.

Accordingly, PharMerica respectfully requests that the Court grant intervention pending a determination of PharMerica's rights to the Receivable now before this Court.

## CONCLUSION

For the reasons set forth above, Non-Party Intervenor PharMerica, Inc. respectfully requests that the Court enter an order granting intervention pending the outcome of the action pending before the Circuit Court for the 11th Judicial Circuit, Miami-Dade County, Florida, entitled *PharMerica, Inc. v. Klein et al.*

Dated: April 20, 2007
       Wilmington, Delaware

**ARCHER & GREINER, P.C.**

By:     s/ Peter L. Frattarelli
    Peter L. Frattarelli (No. 2871)
    300 Delaware Avenue
    Suite 1370
    Wilmington, Delaware 19801
    Tel: (302) 777-4350
    Fax (302) 777-4352

*Attorneys for Non-Party Intervenor PharMerica, Inc.*

2625219v1