## MANAGEMENT AGREEMENT

MANAGEMENT AGREEMENT dated as of September 1, 2003 (this "Agreement") between each of the entities set forth on Schedule A hereto which countersigns this Agreement (the "Manager"), each corporation set forth on Schedule B hereto which countersigns this Agreement as a facility owner (each an "Owner" and collectively, the "Owners"), TRI-STATE HEALTH INVESTORS, LLC, a Florida limited liability company ("THI"), and IHS INTERMEDIATE HOLDING CORP., a Delaware corporation ("IHC").

WHEREAS, Integrated Health Services, Inc. ("IHS") is in bankruptcy in proceedings before the US Bankruptcy Court for the District of Delaware (the "IHS Bankruptcy Court"). ABE BRIARWOOD CORP ("ABE" or "Purchaser") will acquire 100% of the shares of IHC pursuant to an agreement dated January 28, 2003 as amended by a stipulation dated July 21, 2003 ("ABE Contract") which ABE executed and delivered to IHS.

WHEREAS, IHC is to own all of the shares in a number of corporations, each of which leases a nursing home or other health related facilities including those set forth on Schedule 1 of the Agreement to Lease (as herein defined), collectively, "Nursing Homes", and individually, a "Nursing Home"), as set forth in the ABE Contract. IHC will, at the closing of the ABE Contract, cause these corporations (hereafter the "Lessors" and each individually, a "Lessor") to sublease the Nursing Homes to subsidiaries of THI.

WHEREAS, the THI and IHC, have entered into an Agreement to Lease dated as of August 11, 2003 (the "Agreement to Lease") providing, among other things, for THI (through subsidiaries thereof) to become the lessee and licensed operator of the Nursing Homes, and IHC to sublease such facilities to the THI subsidiaries such that subsidiaries of IHC retain the lessee's interest in the Underlying Lease of Leased Facilities and, in that connection, Lessors and subsidiaries of THI (as "Lessees" or "THI Lessees") to enter into long-term net leases for each of the Nursing Homes for a ten-year initial term and on the other terms and conditions specified in the Agreement to Lease (collectively, the "Leases") with terms commencing on the Closing of the ABE Contract (the "Closing" or the "Closing Date").

WHEREAS, as of the date of this Agreement ABE, IHC and THI have been unable to obtain regulatory licenses and/or landlord consents to the transfer of the tenants' rights under the leases and/or the sublease to the THI Lessees with respect to certain of the nursing homes that are the subject of the Agreement to Lease. The THI subsidiaries who are the tenants under the leases referred to in the preceding sentence are the "Owners" party to this Agreement.

WHEREAS, the Manager is a direct or indirect subsidiary of THI or is THI itself; and each Owner will, at the Closing, be a direct or indirect subsidiary of THI and is the licensed operator of the nursing home or other health related facility described on Schedule B to this Agreement (each of such facilities with respect to such Owner, an "Applicable Facility" and collectively with respect to all of the Owners, where the context so requires, the "Applicable Facilities") and is the tenant and lessee under the lease with respect to the Applicable Facility.

912106

WHEREAS, the Applicable Facilities would have been the subject of the Leases identified on Schedule B to this Agreement (the "Applicable Lease") with subsidiaries of IHC acting as Lessors thereunder and subsidiaries of THI acting as Lessee thereunder.

WHEREAS, each Owner desires to retain the services of the Manager to provide the Manager's experience, skills, supervision and certain personnel in the management and operation of the Applicable Facility on an interim basis pending the receipt of the applicable regulatory licenses or sublease approvals, in order to enable the commencement of the Applicable Lease, and the Manager desires to provide those services.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1. Appointment and Term.

(a) Pursuant and subject to the terms and conditions hereinafter set forth, during the Term (as hereinafter defined) each Owner hereby retains the services of the Manager to manage and operate the Applicable Facility, and the Manager hereby accepts that retention and shall provide the services described in Section 2 of this Agreement for the consideration specified in Section 3 of this Agreement. During the Term this Agreement is in effect as to an Applicable Facility, the Owner thereof shall not enter into any agreement with any other person or entity that provides the same or substantially similar services to be provided by the Manager hereunder.

(b) The term of this Agreement shall be for the period (the "Term") commencing on the date hereof and terminating, separately for each Applicable Facility, on the earlier to occur of (i) date on which the Necessary Approvals (as hereinafter defined) are obtained with respect to the Applicable Facility and the term of the Applicable Lease commences and (ii) the expiration of the Applicable Time Period (as hereinafter defined); *provided, however,* that this Agreement shall be terminated, separately for each Applicable Facility, prior to the expiration of the Term (A) by mutual written consent of the Owner and the Manager, (B) automatically upon the dissolution, liquidation or cessation of business of the Manager, (C) on the written notice by the terminating party to the other party after a material breach hereof by the other party and the failure of the other party to cure such breach within 30 days after written notice thereof from the terminating party to the other party ("Written Notice") or if it is reasonably possible to cure such breach but only in a period greater than 30 days, then if the other party is making diligent efforts reasonably calculated to cure such breach the other party shall have up to 90 days after the giving of Written Notice to cure such breach or (D) automatically upon the rejection or termination of this Agreement as the result of any bankruptcy or insolvency proceeding by or against the Manager. Upon the termination of this Agreement, all further obligations of the parties shall terminate, except that the indemnification obligations of the Manager set forth in Section 4 shall survive, and such termination shall be without prejudice to the rights and remedies that either may have against the other.

(c) "Necessary Approvals" shall mean the receipt of both of the following, as applicable, with respect to a THI Lessee's operation of the Applicable Facility as a licensed

operator thereof, in each case as determined to be necessary in the judgment of the Owner and in form and substance satisfactory to the Owner: (i) the licenses, consents and approvals contemplated under the Agreement to Lease permitting under all applicable and necessary provisions of law the THI Lessee's operation of the Applicable Facility as a licensed operator thereof pursuant to the Applicable Lease and (ii) the consent of the Prime Lessor of the Underlying Lease (each as defined in the Agreement to Lease), or court order in lieu thereof, with respect to the sublease of such Underlying Lease by the Lessor to the THI Lessee pursuant to the Applicable Lease

(d) "Applicable Time Period" shall mean (i) with respect to any Applicable Facility for which regulatory Licenses and Consents have not been obtained, the period ending on the first anniversary of the Closing or, at the option of each Owner (such option to be exercised by written notice to the Manager not later than 45 days prior to the then expiring term) for an extended term ending on the second anniversary of the Closing and, for eight additional extended terms ending, successively, on the third, fourth, fifth, sixth, seventh, eighth, ninth and tenth anniversaries of the Closing; provided, however, the Applicable Time Period may be extended month-to-month upon the mutual agreement of the Owner and the Manager, but nothing shall obligate the Owner to extend this Agreement beyond the initial one-year term; or (ii) at the option of the Manager, the Applicable Time Period may be extended for additional one-year terms if THI and each THI Lessee is not in default of any of the Applicable Leases, and THI and the THI Lessees have used their best efforts to obtain any and all required Licenses, Consents and Approvals; and (iii) with respect to any Applicable Facility for which approval by the applicable landlord of a transfer of the tenant's interest in the Applicable Lease has not been obtained, the period ending on the tenth anniversary of the date of this Agreement.

2. <u>Services to be Performed by the Manager</u>.

(a) The Manager shall provide total management services for each Applicable Facility, including but not limited to the services described below in this Section 2, all in a manner consistent with the highest professional standards and subject to the responsibilities of the Owner as owner of the Applicable Facility. The Manager shall have responsibility and commensurate authority to conduct, supervise and effectively manage the day-to-day operations of the Applicable Facility. The Manager shall exercise the reasonable judgment of an experienced healthcare management company in its management activities hereunder.

(b) The Manager shall render, and as between the Owner and Manager shall be solely responsible for, all management, physician, medical and other professional health care (as applicable), nursing, staffing, administration, purchasing, financial assistance and all other management, operational, support and administrative services needed for the operation of the Applicable Facility. The Owner shall have the right to review the Manager's activities as manager of the Applicable Facility. The Owner will remain the owner (and, until receipt of the Necessary Approvals, the responsible licensee) of the Applicable Facility.

(c) Pursuant to its engagement hereunder, the Manager shall have sole responsibility for the operations of the Applicable Facility, including, but not limited to, delivery of all care and the oversight and staffing all non-medical aspects of the Applicable Facility's

departments, including, but not limited to, those departments performing the functions of nursing, personnel, purchasing, administration, planning, finance, reimbursement, credit, collection, housekeeping, maintenance, medical records, security, medical staff liaison, asset management, pharmacy, contract administration, dietary services, data processing, laboratory, marketing, outpatient clinics, medical library, and business office and administrative matters, all to the extent applicable to the Applicable Facility.

(d) In furtherance of its responsibilities hereunder (but without in any way limiting the generality of the Manager's duties hereunder), the Manager shall

(i) Establish, maintain, administer and modify as necessary the charge structure of the Applicable Facility and negotiate fee payment methods with any third party payor.

(ii) Recruit, hire, train, promote, assign, supervise, manage and discharge all personnel required in connection with the operations of the Applicable Facility.

(iii) Prepare invoices for services and collect accounts owed to the Owner in respect thereof. In this connection, the Manager shall submit all bills and necessary documentation required by patients or payors to obtain payment therefrom in connection with all charges. The Manager shall act as the agent of the Owner with respect to billing and collecting, and billing shall be in the name of the Owner. Accordingly, the Owner hereby appoints Manager, for the purposes of this Agreement, as its true and lawful attorney-in-fact:

(1) to bill patients or clients on the Owner's behalf,

(2) to collect accounts receivable on the Owner's behalf; and

(3) to receive all payments on behalf of the Owner from all payors, and to take possession of, and endorse in the name of the Owner, any notes, checks, money orders, insurance payments and other instruments received as payment in respect of such billings (except as prohibited by Medicare and Medicaid law and regulations).

(4) to assist the Owner in obtaining and maintaining in effect at all times during the term hereof all Licenses necessary and appropriate to operate the Applicable Facility as presently operated by the Owner as of the date of this Agreement.

(iv) Establish and administer accounting procedures and

-4-

912106

controls, in accordance with sound industry practice, and establish a system for the development, preparation and safekeeping of books and records relating to the business and financial affairs of the Owner as they relate to the Applicable Facility, including, but not limited to:

(1) preparation and filing, from time to time, of such forms and reports as may be required under federal or state laws or programs applicable to wages, hours and prices; and

(2) preparation and submission periodically to the Owner as required for timely payment of all returns relating to taxes imposed upon the operations of the Applicable Facility and all cost reports, supporting data and other applicable materials pertaining to reimbursement by or from Medicare, Medicaid and all other payors.

(v) Periodic evaluation of all quality assurance and risk management aspects of the operations of the Applicable Facility.

(vi) Supervision and organization of the medical records of the Applicable Facility, which shall be obtained and maintained with respect to all medical services rendered in or through the Applicable Facility.

(vii) Arrangement for the provision of such other services as may be required from time to time by federal, state and local law, the bylaws, rules and regulations of the governing bodies of the Applicable Facility and any accreditation or governmental agencies having jurisdiction over the Applicable Facility.

(viii) Procurement of such equipment, drugs, supplies, materials and services as the Manager deems, in the reasonable exercise of its discretion, necessary in connection with the operations of the Applicable Facility in a manner that is of a quality at least substantially equivalent to the manner in which the Applicable Facility was previously operated.

(ix) Payment of trade accounts, accrued expenses, all taxes, other current liabilities and leases of real and personal property and all other obligations incurred by the Owner or the Manager in connection with the operations of the Applicable Facility and liabilities assumed pursuant to the Assignment and Assumption Agreement (as defined in the Agreement to Lease).

(e) The Manager shall use its best efforts to assist the Owner in obtaining and maintaining in effect at all times during the term hereof all Licenses necessary and appropriate to operate the Applicable Facility as presently operated by the Owner as of the date of this

912106

Agreement. The Owner shall provide to the Manager such authorizations and instruments necessary to obtain and maintain the Licenses on behalf of the Owner. Manager shall refrain from any and all conduct which has the effect of jeopardizing any License of the Applicable Facility or the Applicable Facility's status as a licensed, accredited health care facility which provides services to Medicare or Medicaid beneficiaries.

(f) The Manager shall act in good faith in the performance of its obligations hereunder. The Manager shall, at all times, operate the Applicable Facility in conformity with (i) the standards of performance of all regulatory and accrediting agencies and authorities which exercise jurisdiction over the Applicable Facility, and (ii) in a manner consistent with good and ethical business practices in the communities served by the Applicable Facility and the health care industry.

(g) Except as may be otherwise required by law, all personnel employed in connection with the operations of the Applicable Facility shall be employees of, or independent contractors in privity with, the Manager. The Manager shall determine in its reasonable discretion from time to time, and after such determination shall promptly retain, the number and qualification of employees required to operate the Applicable Facilities or in a manner that is of a quality at least substantially equivalent to the manner in which each Applicable Facility was previously operated, establish, revise and administer all wage scales, compensation rates, employee benefits and conditions of employment, administer in-service training, seminars and conferences and establish staff schedules and job descriptions. The Manager shall reimburse the Owner for all expense incurred in connection with such employees.

(h) Subject to and conditioned upon the Manager's full compliance with its obligations hereunder, the Owner shall hold and maintain the necessary and appropriate Licenses to operate the Applicable Facility as presently operated by the Owner. The Manager shall, no less than 30 days prior to the due date, prepare and deliver to the Owner all routine applications, extensions and other filings necessary to maintain such Licenses for the Owner's execution of the same and shall timely file such applications, extensions and other filings, together with any filing fees or other charges (all of which shall be paid for by the Manager), with the appropriate governmental or accreditation agencies.

(i) The medical staff shall be organized and function according to the laws and regulations of the State where the Applicable Facility is located, as they may be amended from time to time, and the Manager shall consult with the medical staff and the Owner, as may from time to time be appropriate. All clinical, patient care quality and professional matters of the Applicable Facility shall be the responsibility of the Manager and the medical staff of the Applicable Facility.

(j) Any powers, and any duties and obligations, that are not specifically and expressly retained by the Owner under this Agreement shall be delegated to, and promptly paid and performed by, the Manager.

(k) The relationship created by this Agreement is one of principal and agent, and nothing to the contrary shall be inferred from this Agreement.

912106

(l)  Without duplication of anything set forth above, the Manager shall be responsible for paying all costs, expenses and expenditures of any kind or nature whatsoever incurred in connection with the operation of the Applicable Facility during the Term. All financial risk of operating the Applicable Facility during the Term shall be borne entirely by the Manager and the Owner shall not have any liability or obligation therefor. Accordingly, the Manager shall provide the working capital needs of the Applicable Facility during the Term even if the Applicable Facility is being operated by the Manager at a loss. The Owner shall have no financial obligations hereunder with respect to the operations of the Applicable Facility or the payment to Manager of any fees or reimbursement of any costs incurred by the Manager. The Manager shall acquire, at its own cost, all equipment and other personal property reasonably necessary to operate of the Applicable Facility and all such equipment and other personal property so acquired by the Manager shall be the property of the Manager, except that Manager shall be fully entitled to utilize all equipment and personal property on the Premises on the Closing Date ("Existing Personal Property") and all Existing Personal Property and any replacement thereof shall belong to Owner.

(m)  Without limiting the generality of the foregoing responsibilities of the Manager, the Manager shall, during the Term, undertake and carry out all responsibilities and obligations for which the THI Lessee under the Applicable Lease for each Applicable Facility would be responsible as if the term of such Applicable Lease had commenced and as if the "Commencement Date" thereunder shall have occurred.

3.  Compensation.  In full consideration of all the services to be provided by Manager hereunder, the Manager shall be entitled to receive the compensation described on Schedule C to this Agreement.

4.  Indemnification.  In addition to the rights of any of the parties hereto to indemnification under Section 26 of the Agreement to Lease, (i) the Manager shall indemnify each Owner and hold each Owner and its equity owners, directors, officers, members, managers, employees, attorneys, agents and representative, harmless from and against any and all Losses that they may sustain or suffer or to which they may become subject as a result of: (A) the non-performance or breach of any covenant or agreement made or undertaken by Manager in this Agreement, or (B) the ongoing operations of the Applicable Facility during the term of this Agreement, and (C) each and every obligation for which the THI Lessee would be required to provide indemnification under Section 11.3 of the Applicable Lease, as if the Applicable Lease were in effect.

5.  Obligations Under Certain Other Agreements.  Anything to the contrary notwithstanding, the Manager shall be fully bound by all of the terms, conditions and provisions of the Applicable Lease and each and every one of the other agreements being executed and delivered by the Manager concurrent herewith pursuant to the Agreement to Lease, including but not limited to the Cross Default Guaranty and the Assignment and Assumption Agreements (the Applicable Lease, together with such other agreements, the "Concurrent Agreements"). Without limiting the generality of the foregoing, the Manager shall pay to each Owner and Lessor, as applicable, all amounts that the THI Lessee would be obligated to pay under the Applicable Lease and the Agreement to Lease (including Aggregate Rent) as if the Commencement Date

-7-

under the Applicable Lease had occurred and as if the Applicable Lease were in effect and the Manager shall pay to the Owner, Lessor and any of their affiliates, as applicable, all amounts that the THI Lessee of the Applicable Lease would be obligated to pay under the Cross Default Guaranty regardless of the fact that the Commencement Date under the Applicable Lease has not occurred.

6. **Limitations on Authority of Manager.** Notwithstanding the rights and powers of the Manager pursuant to Section 2, the Manager shall have no right or authority to do any of the following without the prior written consent of the Owner:

(a) Act for the Owner with respect to any business that is not directly related to the management or operation of the Applicable Facility.

(b) Sell, lease, sublease, license, transfer, assign, surrender, liquidate or abandon the Applicable Facility or any real or personal property relating thereto, any Underlying Lease, any Certificate of Need ("CON"), the Nursing Home business conducted at the Applicable Facility, or any License, Permit or Approval relating thereto.

(c) Enter into or terminate any contract on behalf of the Owner without the prior written approval of the Owner; provided, however, that (1) the Manager shall have the authority on behalf of the Owner, as applicable, to enter into any such contract that is terminable by the Owner at any time upon not more than 60 days' notice without penalty and (2) the Owner shall not unreasonably withhold its consent to termination of contracts on behalf of Owner where Manager can demonstrate efficiencies to be achieved by such termination and where Manager and the THI Lessees will take responsibility for termination costs.

7. **Responsibilities and Rights of Owner.**

(a) During the term of this Agreement, upon reasonable prior written notice and during normal business hours, (i) each Owner shall have the right to inspect the Applicable Facility, to inspect and/or audit all books and records of the Manager pertaining to the operation of the Applicable Facility and to meet with the executive officers of the Manager and the Applicable Facility to discuss the Manager's compliance with its obligations under this Agreement, and (ii) the Manager shall have the right to review such information and records that pertain to the Applicable Facility and which are in the possession of the Owner as the Manager may reasonably require in connection with the performance of its duties hereunder.

(b) Each Owner shall have full right of access to, and the Manager shall preserve and provide the Owner with such access to, all financial and other records of the Applicable Facility for the period during the term of this Agreement.

8. **Insurance.** The Manager, at its sole cost, shall maintain insurance coverage during the term of this Agreement with respect to each Applicable Facility (naming the Owner as an additional insured) to the same extent as set forth in Section 9 of the Agreement to Lease. A certificate of such insurance coverage shall be provided as evidence of insurance by the Manager to the Owner.

912106

9. <u>General Provisions</u>.

(a) <u>Further Assurances</u>. If, at any time after the date hereof, either party shall consider or be advised that any further assignments, conveyances, certificates, filings, instruments or documents or any other things are necessary or desirable to consummate any of the transactions contemplated by this Agreement (including but not limited to the execution and delivery of all certificates, affidavits, and other documents reasonably necessary for the operation of each Applicable Facility), the other parties shall, upon request, promptly execute and deliver all such proper instruments and do all things reasonably necessary and proper to carry out the purposes of this Agreement.

(b) <u>Survival</u>. All representations, warranties and agreements made by the parties hereto shall survive the execution and delivery of this Agreement and the Closing Date. No representations or warranties are made by any party hereto except as expressly set forth in this Agreement or in documents required to be delivered hereunder.

(c) <u>Binding Agreements; No Assignment; No Waiver</u>. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective personal representatives, heirs, successors and permitted assigns; *provided, however,* that this Agreement cannot be assigned or amended without the express written consent of each party hereto; *provided, however,* that the Corporation, the Owners, the Lessors and their subsidiaries shall, be entitled to assign the Owner's interest in the Applicable Facilities and such Owner's interest in this Agreement to designees of the Owner, in which event such designees shall succeed to the rights of the Owner, as set forth in this Agreement. This Agreement shall be binding upon any successor to the business, operations or assets of the Manager or THI, whether by merger, consolidation, reorganization, or sale of all or substantially all of the Manager or THI's assets, or by any other business combination transaction. No waiver of any breach of any of the terms herein shall be effective unless made in writing, signed by the party against whom enforcement of the waiver is sought, and no such waiver shall be construed as a waiver of any subsequent breach of that term or of any other term of the same or different nature.

(d) <u>Notices</u>. Any notice request, demand or consent required or permitted to be given hereunder shall be given in writing to the party and his or her attorney by:

(i) registered mail, postage prepaid, return receipt requested; or

(ii) in lieu thereof, by prepaid courier service (Federal Express), etc., guaranteeing overnight delivery, *provided that* the courier service produces a receipt evidencing delivery of the notice to the party to be notified; and

(iii) in addition thereto, regular mail addressed to the party for whom intended at the following addresses with a copy to the respective attorneys:

912106

If to the Manager or THI:

    Tri-State Health Investors, LLC
    c/o Elite Management
    1111 Kane Concourse, Suite 301
    Bay Harbor, Florida 33154
    Attn: Avi Klein
    Tel: (305) 864-9197
    Fax: (305) 532-1825

If to any Owner or IHC :

    IHS INTERMEDIATE HOLDING CORP.
    c/o Kaufman Group
    321 Fifth Avenue Third Floor
    New York, NY 10016
    Attention: Uri Kaufman
    Tel:  (212) 683-5927
    Fax:  (212) 889-0003

with copies to:

    Abraham Backenroth, Esq.
    Backenroth Frankel & Krinsky LLP
    489 Fifth Avenue
    New York, New York 10017

    (e)    <u>Entire Agreement</u>. This Agreement (together with the Agreement to Lease, the Leases and Exhibits hereto) sets forth the entire understanding of the parties with respect to the subject matter hereof and supercedes and replaces all discussions, term sheets, proposals and letters of intent between the parties with respect to the interim management of the Nursing Homes.

    (f)    <u>Expenses</u>. Each party shall bear its own costs, fees and expenses in connection with this Agreement.

    (g)    <u>Counterparts</u>. This Agreement may be executed in counterpart copies and each of which shall be an original but all of which shall constitute a single instrument.

    (h)    <u>Third Party Beneficiaries</u>. Except as expressly set forth herein, the provisions and covenants set forth in this Agreement are for the benefit of the parties to this Agreement and not for the benefit of any creditor or other person, and no creditor or other person shall have any right to enforce the provisions and covenants against any party hereto.

(i) <u>Independent Contractors</u>. The parties hereto shall be independent contractors and this Agreement shall not be construed as establishing any joint venture, employment, partnership, license, franchise or agency relationship.

(j) <u>Governing Law; Jurisdiction; Venue</u>. Irrespective of the place of execution and/or delivery of this Agreement or the location of the premises of the Applicable Facilities or the Applicable Leases, this Agreement shall be governed by and shall be construed in accordance with, the laws of the State of New York applicable to agreements entered into and to be performed entirely within New York without regarding to conflicts of law principles. IHC, the Corporation, the Owners, the Lessors and their subsidiaries and THI, the Manager and the THI Lessees hereby consent and submit to the exclusive jurisdiction of the state and Federal courts located in New York with respect to any claim or litigation arising hereunder or any alleged breach of the covenants or provisions contained herein and acknowledge that proper venue in any matter so claimed or litigated shall be in the state and Federal courts located in New York; *provided, however,* that the Owners shall be permitted, in addition, if required by local law in the jurisdiction where the premises covered by the Applicable Facilities or the Applicable Leases are located, to bring any action against the Manager to enforce this Agreement in the jurisdictions where such premises are located.

(k) <u>Conflicts with Agreement to Lease</u>. In the case of a conflict between any term or provision of this Agreement and any term or provision of the Agreement to Lease, the term or provision of the Agreement to Lease shall govern.

(l) <u>Waiver of Jury Trial</u>. EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY OTHER AGREEMENT OR INSTRUMENT DELIVERED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

(m) <u>Severability</u>. If any provision of this Agreement shall be invalid or unenforceable, in whole or in part, or as to any jurisdiction, such provision shall be deemed to be modified or restricted to the extent and in the manner necessary to render the same valid and enforceable, or shall be deemed excised from this Agreement, as the case may require, and this Agreement shall be construed and enforced to the maximum extent permitted by law as if such provision had been originally incorporated herein as so modified or restricted, or as if such provision had not been originally incorporated herein, as the case may be.

(n) <u>Amendments</u>. This Agreement may be amended only by a written instrument executed by the parties hereto.

(o) <u>Exclusion of Personal Liability</u>. Notwithstanding any other provision of this Agreement, none of the officers, directors, principals, members, managers, shareholders or Affiliates of THI, the THI Lessees, the Manager, IHC, the Corporation, the Owners, the Lessors, or subsidiaries, except those entities which are actual signatories to this Agreement shall have any personal liability for any of the obligations under this Agreement.

912106

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first written above.

MANAGERS:

TRI-STATE HEALTHCARE OF ALABASTER, LLC

By: *Barry Shissel*
Name: Barry Shissul
Title: Pres

TRI-STATE HEALTHCARE OF KANSAS CITY, LLC

By: *Barry Shissel*
Name: Barry Shissul
Title: Pres

TRI-STATE HEALTHCARE OF GRAND BLANC, LLC

By: *Barry Shissel*
Name: Barry Shissul
Title: Pres

TRI-STATE HEALTHCARE OF ERIE, LLC

By: *Barry Shissel*
Name: Barry Shissul
Title: Pres

TRI-STATE HEALTHCARE OF BOUND BROOK, LLC

By: *Barry Shissel*
Name: Barry Shissul
Title: Pres

TRI-STATE HEALTHCARE OF GREENBURG, LLC

By: *Barry Shissel*
Name: Barry Shissul
Title: Pres

912106

TRI-STATE HEALTHCARE OF HUBER
HEIGHTS, LLC

By: *Barry Shisgal*
    Name: Barry Shisgal
    Title: Pres

TRI-STATE HEALTHCARE OF NEW LONDON,
LLC

By: *Barry Shisgal*
    Name: Barry Shisgal
    Title: Pres

TRI-STATE HEALTHCARE OF WEST
CARROLTON, LLC

By: *Barry Shisgal*
    Name: Barry Shisgal
    Title: Pres

TRI-STATE HEALTH INVESTORS, LLC

By: *Avi Klein*
    Name: Avi Klein
    Title: Manager

IHS INTERMEDIATE HOLDING CORP.

By: _____
    Name:
    Title:

TRI-STATE HEALTHCARE OF HUBER HEIGHTS, LLC

By:_____
     Name:
     Title:

TRI-STATE HEALTHCARE OF NEW LONDON, LLC

By:_____
     Name:
     Title:

TRI-STATE HEALTHCARE OF WEST CARROLTON, LLC

By:_____
     Name:
     Title:

TRI-STATE HEALTH INVESTORS, LLC

By:_____
     Name:
     Title:

IHS INTERMEDIATE HOLDING CORP.

By: /s/ Uri Kaufman
     Name: Uri Kaufman
     Title: President

*Owner Entities:*

BRIARCLIFF NURSING HOME, INC.:

By: _____
    Name: Uri Kaufman
    Title: President

INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC.:

By: _____
    Name: Uri Kaufman
    Title: President

INTEGRATED HEALTH SERVICES AT RIVERBEND, INC.:

By: _____
    Name: Uri Kaufman
    Title: President

ALPINE MANOR, INC.:

By: _____
    Name: Uri Kaufman
    Title: President

INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC.:

By: _____
    Name: Uri Kaufman
    Title: President

INTEGRATED HEALTH GROUP, INC.:

By: _____
    Name: Uri Kaufman
    Title: President

SPRING CREEK OF IHS, INC.:

By: _____
    Name: Uri Kaufman
    Title: President

912106

FIRELANDS OF IHS, INC.:

By: _____
Name: Uri Kaufman
Title:  President

ELM CREEK OF IHS, INC.:

By: _____
Name: Uri Kaufman
Title:  President

912106

SCHEDULE A

## List of Managers

| IHS Facility No. | Facility Manager |
|---|---|
| 20110 | Tri-State Healthcare of Alabaster, LLC |
| 20122 | Tri-State Healthcare of Kansas City, LLC |
| 20123 | Tri-State Healthcare of Grand Blanc, LLC |
| 20130 | Tri-State Healthcare of Erie, LLC |
| 20132 | Tri-State Healthcare of Bound Brook, LLC |
| 20141 | Tri-State Healthcare of Greenburg, LLC |
| 20170 | Tri-State Healthcare of Huber Heights, LLC |
| 20171 | Tri-State Healthcare of New London, LLC |
| 20173 | Tri-State Healthcare of West Carrolton, LLC |

-16-

912106

SCHEDULE B

## Identification of Applicable Facilities, Owners and Applicable Leases

| IHS Facility No. | Owner | Prime Lessor |
|---|---|---|
| 20110 | Briarclift Nursing Home, Inc. | Meditrust |
| 20122 | Integrated Health Services of Cliff Manor, Inc. | Meditrust |
| 20123 | Integrated Health Services of Riverbend, Inc. | Meditrust |
| 20130 | Alpine Manor, Inc. | Meditrust |
| 20132 | Integrated Health Services of Somerset Valley, Inc. | Meditrust |
| 20141 | Integrated Health Group, Inc. | Meditrust |
| 20170 | Spring Creek of IHS, Inc. | Meditrust |
| 20171 | Firelands of IHS, Inc. | Meditrust |
| 20173 | ELM Creek of IHS, Inc. | Meditrust |

-17-

912106

SCHEDULE C

## Description of Compensation
## To the Manager

The Manager shall retain, as its full compensation under this Agreement for each Applicable Facility, an amount equal to the amount that the THI Lessee would have been entitled to retain with respect to the operation of the Applicable Facility under the Applicable Lease during each period specified in the Applicable Lease for measurement of such amount, after payment to the Owner, Lessors and their affiliates of all amounts of rent (including the Aggregate Rent) and all other monetary obligations payable under the Applicable Lease, the Agreement to Lease and the other Concurrent Agreements arising during such period.

912106