IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC. and IHS LONG TERM CARE SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THCI COMPANY LLC, <br><br> Defendant, <br><br> and, <br><br> ABE BRIARWOOD CORPORATION and JOHN DOES 1-10, <br><br> Additional Counterclaim Defendants. | Case No. 1:04-910-GMS |

## PROPOSED INTERVENTION COMPLAINT

Non-Party Intervenor PharMerica, Inc. ("Plaintiff" or "PharMerica"), by its undersigned counsel, as and for its proposed intervention complaint against defendant THCI Company, LLC ("THCI") and plaintiffs, IHS Long Term Care, Inc. ("LTC"), Integrated Health Group, Inc. ("IHS of Greensburg"), Integrated Health Services of Cliff Manor, Inc. ("IHS of Cliff Manor"), Integrated health Services of Riverbend, Inc. ("IHS of Riverbend"), Integrated Health Services at

Somerset Valley, Inc. ("IHS of Somerset Valley"), Alpine Manor, Inc. ("IHS of Alpine Manor"), Briarcliff Nursing Home, Inc. ("IHS of Briarcliff"), Spring Creek of IHS, Inc. ("IHS of Spring Creek") and Firelands of HIS, Inc. ("IHS of Firelands"),[1] alleges as follows:

## PARTIES

1.   PharMerica is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 3625 Queen Palm Drive, Tampa, Florida 33619.

2.   Upon information and belief, THCI is and was, at times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 4700 Cliffview Drive in the city of Kansas City, in Platte County, Missouri.

3.   Upon information and belief, IHS of Greensburg is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 890 Weatherwood Lane in the city of Greensburg, Pennsylvania.

4.   Upon information and belief, IHS of Cliff Manor is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 4700 Cliffview Drive in the city of Kansas City, Platte County, Missouri.

5.   Upon information and belief, IHS of Riverbend is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 1194 Belsay Road in the city of Grand Blanc, Michigan.

6.   Upon information and belief, IHS of Somerset Valley is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware,

---

[1] IHS of Cliff Manor, IHS of Riverbend, IHS of Somerset Valley, IHS of Alpine Manor, IHS of Briarcliff, IHS of Spring Creek, IHS of Firelands and IHS of Elm Creek shall hereinafter be collectively referred to as the "IHS Facilities".

doing business at 1621 Route 22 West in the city of Bound Brook, New Jersey.

7.  Upon information and belief, IHS of Alpine Manor is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 4144 Schaper Avenue in the city of Erie, Pennsylvania.

8.  Upon information and belief, IHS of Briarcliff is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania doing business at 850 N.W. 9th Street in the city of Alabaster, Alabama.

9.  Upon information and belief, IHS of Spring Creek is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 5440 Charlesgate Road in the city of Huber Heights, Ohio.

10. Upon information and belief, IHS of Firelands is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 204 West Main Street, Route 162 in the city of New London, Ohio.

11. Upon information and belief, IHS of Elm Creek is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Pennsylvania, doing business at 115 Elmwood Circle in the city of West Carrolton, Ohio.

12. Upon information and belief, LTC is and was, at all times material hereto, a corporation organized and existing under the laws of the state of Delaware, doing business at 901 Ridgebrook Road in the city of Sparks, Maryland. Upon information and belief, LTC is or was the parent corporation of all of the other plaintiffs herein.

13. Upon information and belief, each of the IHS Facilities operates a nursing home facility at its principal place of business.[2]

---

[2] The nine properties together shall hereinafter be collectively referred to as the "Nursing Home Properties".

## JURISDICTION AND VENUE

14.     Jurisdiction is premised upon 28 U.S.C. §1367(a), as the claims herein derive from a common nucleus of operative facts as the main claim as they arise from the same transaction or occurrence or series of transactions or occurrences as the main claim.

15.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(c).

## STATEMENT OF FACTS

A.      **Who is the Landlord and Who is the Tenant?**

16.     Upon information and belief, prior to February 2000, Integrated Health Services, Inc. ("IHS") was a major operator of numerous health care facilities throughout the country. Upon further information and belief, IHS conducted its operations through numerous subsidiary companies all of which operated a single health care facility.

17.     Upon information and belief, among IHS' subsidiaries were the IHS Facilities. Upon further information and belief, the Nursing Home Properties were leased by the IHS facilities from Meditrust Corporation ("Meditrust") or one or more of its subsidiaries.

18.     In February 2000, IHS as well as the IHS Facilities, filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "IHS Bankruptcy Case").

19.     Upon information and belief, during the course of the IHS Bankruptcy Case, THCI succeeded to the rights and interests of Meditrust with respect to the IHS Facilities.

20.     On or about May 12, 2003, the Bankruptcy Court confirmed IHS' Amended Joint Plan Reorganization (the "Plan"). Pursuant to the Plan, all of the capital stock, assets and liabilities associated with the IHS Facilities, would be sold to Abe Briarwood Corp. ("Briarwood").

21.     Upon information and belief, consistent with the Plan, IHS entered into a Stock

4

Purchase Agreement (the "SPA") with Briarwood.

22. Upon information and belief, as a component to the SPA, IHS was required to create a new subsidiary, IHS Long Term Care Services, Inc. ("LTC"), which was intended, *inter alia*, to be a vehicle for transferring ownership of the IHS Facilities to Briarwood.

23. As of the date the instant litigation commenced, upon information and belief, THCI was the fee simple owner of the Nursing Home Properties, Briarwood was the owner and parent company LTC and LTC was the owner and parent company of the IHS Facilities who ultimately rented the Nursing Home Properties from THCI.

B. **Enter Tristate Health Investors, LLC**

24. Upon information and belief, sometime after closing of the SPA, Briarwood and/or LTC negotiated with Tristate Health Investors, LLC ("Tristate"), a Florida corporation, for management of the day-to-day operations of the IHS Facilities.

25. Upon information and belief, in order to facilitate management of the IHS Facilities, beginning in or about August, 2003, Tristate created nine subsidiary companies to correspond to each of the nine IHS Facilities. Upon further information and belief, these nine Tristate subsidiaries are Alabaster, LLC, Erie, LLC, Grand Banc, LLC, Greensburg, LLC, Huber Heights LLC, Kansas City, LLC, New London, LLC and West Carrolton, LLC (collectively, the "Tristate Entities" and singularly a "Tristate Entity"). The Tristate Entities were all limited liability companies organized and existing under the laws of the State of Florida.

26. Upon information and belief, in or about September, 2003, each of the Tristate Entities entered into a management agreement with the IHS Facilities (the "Management Agreement") pursuant to which the applicable Tristate Entity would act as manager for the corresponding IHS Facility. A true and correct copy of the Management Agreement is annexed

5

hereto as Exhibit "A".

27. The Management Agreement states in relevant part that "[t]the relationship created by this Agreement is one of principal and agent, and nothing to the contrary shall be inferred from this Agreement." (*See* paragraph 2(k) of the Management Agreement).

28. An additional provision of the Management Agreement states that "[th]e parties hereto shall be independent contractors and this agreement shall not be construed as establishing any joint venture, employment, partnership, license franchise or **agency relationship**." (*See* paragraph 9(i) of the Management Agreement (*emphasis added*)). Thus, it remains to be determined whether or not a principal agent relationship exists between the Tristate Entities and the IHS Facilities.

29. Upon information and belief, the Management Agreement provides the Tristate Entities with, *inter alia*, the full power and authority to contract for services with vendors such as PharMerica.

C. **Enter PharMerica, Inc.**

30. On or about June 30, 2004, the Tristate Entities each entered into nine separate pharmacy services agreements (each a "Pharmacy Services Agreement," and collectively, the "Pharmacy Services Agreements") with PharMerica. There is a separate Pharmacy Services Agreement with respect to each IHS Facility. True and correct copies of the Pharmacy services agreement are collectively annexed hereto as Exhibit "B".

31. Each Pharmacy Services Agreement is substantially the same with the exception of the inception date, the name and location of the Facility, the identity of the license owner and the corresponding contracting Tristate Entity.

32. Pursuant to the Pharmacy Services Agreements, PharMerica agreed to be "the

exclusive provider" of pharmacy related goods and services to the corresponding IHS Facility.

33. Pursuant to the Pharmacy Services Agreements, the IHS Facilities were required to make payment to the PharMerica according the terms and conditions detailed therein.

34. In connection with the services and products provided under the Pharmacy Services Agreements, the Tristate Entities each granted PharMerica a security interest (the "Security Interest") in the respective IHS Facilities' accounts receivable (the "Collateral").

35. Specifically, each Pharmacy Services Agreement states in relevant part that

> "[a]ll amounts owed to Provider shall be collateralized by License Owner with a blanket lien on all accounts receivable of the License Owner and Facility. The collateral will be perfected under the requirements set forth in the Uniform Commercial Code and the rules and regulations of the applicable jurisdiction."

36. To perfect its Security Interest and to notify others of that Interest, PharMerica properly filed Article 9 UCC-1 Financing Statements (the "UCCs") in accordance with the applicable provisions of the Uniform Commercial Code and applicable state law. True and correct copies of the UCCs are collectively annexed hereto as Exhibit "C"

37. The HIS Entities breached the Pharmacy Services Agreement by failing to make payment to PharMerica when due..

**D.     The Florida Action**

On November 17, 2006, PharMerica filed an action against the Tristate Entities to, *inter alia,* enforce its Security Interest in the Collateral (receivables of each Facility). The action is pending in the Circuit Court for the 11th Judicial Circuit, Miami-Dade County, Florida, in an action entitled *PharMerica, Inc. v. Klein et al.* (the "Florida Action"). A true and correct copy of PharMerica's Complaint in the Florida Action is annexed hereto as Exhibit "D".

**E.     The THCI/IHS Settlement**

38. Prior to execution of the Pharmacy Services Agreement, upon information and

belief, the IHS Facilities and THCI became involved in the instant litigation stemming from a dispute over certain real property leases relating to the Nursing Home Properties.

39. On or about September 25, 2006, to resolve their claims amongst one another, the IHS Facilities and THCI executed a settlement agreement (the "Settlement Stipulation"). A true and correct copy of the Settlement Stipulation is annexed hereto as Exhibit "E".

40. Pursuant to the Settlement Stipulation, the IHS Facilities agreed to pay to THCI the total sum of $14,000,000.00 (Fourteen Million Dollars) (the "Settlement Payment"). The first $10,000,000.00 (Ten Million Dollars) ("Initial Payment") of the Settlement Payment was to be made on September 30, 2006 and the balance of $4,000,000.00 (Four Million Dollars) ("Final Payment") was to be made on the Transition Date as defined therein (the "Transition Date").

41. Under the terms of the Settlement Stipulation, LTC and the IHS Facilities agreed to vacate the Nursing Home Properties, surrender and transfer possession and control of the same and all the tangible items, including but not limited to outstanding "accounts receivable records, accounts payable records, employee records, and patient records" to the New Operators, as those entities were defined in the Settlement Stipulation.

42. Upon information and belief, all of the transfers were completed by October 1, 2006 and, therefore, pursuant to the Settlement Stipulation, the final Transition Date as defined therein (the "Transition Date") for all nine health care facilities was October 1, 2006.

43. Despite PharMerica's Security Interest, the Settlement Stipulation provides that the IHS Facilities pre-Transition Date receivables (the "Pre-Transition Date A/R") were to be collected by the New Operators, and the New Operators would hold the Pre-Transition Date A/R in trust for the IHS Facilities.

44. Also despite PharMerica's Security Interest, and pursuant to the Settlement

Stipulation, the New Operators were required to convey the LTC Receivables, as that term is defined therein, to LTC and the IHS Facilities "except if and to the extent that the IHS Facilities have failed to satisfy or defaulted under their financial obligations under paragraphs 4(a), 4(b)(i)(1), (2) of the Settlement Stipulation ."

45.   Moreover, the Settlement Stipulation (¶12) explicitly states that "[e]xcept as to any security interest that the LTC Plaintiffs [the IHS Facilities], LTC, and Briarwood shall terminate prior to the Settlement Date, the LTC Plaintiffs [the IHS Facilities], LTC, and/or Briarwood warrant and represent that they have not provided a security interest to any vendor or other third party, ***including Pharmerica,*** relating to the Facilities except with respect to receivables that are due and owing to the LTC Plaintiffs [the IHS Facilities] for services provided prior to the Transition Date." (*See* Settlement Stipulation ¶12.)

F.   **THCI'S Motion to Enforce the Settlement Stipulation**

46.   In the instant action, THCI claims that the IHS Facilities have, in a number of ways, breached the Settlement Stipulation. Specifically, THCI argues that, in violation of the Settlement Stipulation, it has been made to pay certain pre-Transfer Date debts of the IHS Facilities (the "Pre-Transition Date A/P"). As a result, THCI has filed a motion (the "THCI Motion") seeking to enforce section 4(b)(iv) of the Settlement Stipulation by, *inter alia,* authorizing the New Operators to offset the Pre-Transition Date A/P it has paid against the Pre-Transition Date A/R it has collected.

**FIRST CAUSE OF ACTION**
(Declaratory Judgment)

47.   PharMerica refers to and realleges each of the foregoing allegations of this Complaint as though more fully set forth herein.

48.   Each Pharmacy Services Agreement states in relevant part that

> "License Owner represents and warrants that, if License Owner is not the actual licensee for the health care facility ('Facility') identified below, License Owner has the legal power and authority to, and by executing this Agreement intends to, enter into a legal, valid and binding obligation on behalf of, and enforceable against, both License Owner and the actual licensee of the Facility.

(*See* Exhibit "A" each at ¶2).

49. Upon information and belief, at the time PharMerica and the Tristate Entities entered into the Pharmacy Services Agreements, the Tristate Entities were not the actual "licensees" of each respective Facility.

50. Upon information and belief, at the time PharMerica and the Tristate Entities entered into the Pharmacy Services Agreements, the IHS Facilities were the actual "licensees" of the Facilities.

51. Upon information and belief, pursuant to the terms of the management agreement, the Tristate Entities, as agent for the IHS Facilities, had authority to enter into the Pharmacy Services Agreements on their behaves.

52. Upon information and belief, the Tristate Entities managed and operated the Nursing Homes on behalf of the IHS Facilities up to and including September 28, 2006.

53. Upon information and belief, the Tristate Entities entered into the Management Agreement with the IHS Facilities.

54. The Tristate Entities' obligations under the Pharmacy Services Agreements were secured by the Security Interest.

55. Included in the Collateral is the accounts receivable of the Tristate Entities and the IHS Facilities.

56. Pursuant to the terms of the Settlement Stipulation, upon information and belief, the IHS Facilities have already paid ten million dollars to THCI and placed an additional four

million dollars in escrow to be paid to THCI. Portions of these funds have been pledged to PharMerica as Collateral pursuant to the Security Interest.

57. Thus, an actual dispute exists as to (i) the IHS Facilities' liability to PharMerica under the Pharmacy Services Agreements; (ii) whether or not PharMerica holds a valid security interest in all or part of the Settlement Payments paid by the IHS Facilities to THCI pursuant to the Settlement Stipulation.

## SECOND CAUSE OF ACTION
(Foreclosure of Security Interest)

58. PharMerica refers to and realleges each of the foregoing allegations of this Complaint as though more fully set forth herein.

59. Payment obligations under the Pharmacy Services Agreements were secured by the Security Interest granted to PharMerica.

60. Included in the Collateral under the Security Interest are and the IHS Facilities' accounts receivable.

61. The IHS Facilities have breached the Pharmacy Services Agreements by failing to make payment to PharMerica when due.

62. The Settlement Stipulation between THCI, LTC and the IHS Facilities has placed PharMerica's Security Interests in the Collateral in immediate and irreparable jeopardy.

63. Upon information and belief, the Collateral is currently being dissipated.

64. Under the terms of the Settlement Stipulation, the IHS Defendants have already paid ten million dollars to THCI and placed an additional four million dollars in escrow to be paid to THCI.

65. Upon information and belief, the IHS Facilities are using the Collateral to fund their obligations under the Settlement Stipulation to THCI.

66. All conditions precedent to the perfection of the Security Interests in the Collateral, to PharMerica's right of recovery as alleged, and to the foreclosure of PharMerica's Security Interests have occurred.

67. Accordingly, PharMerica should be granted judgment against the IHS Facilities ordering that the Collateral described in the Security Agreements be Foreclosed upon and in furtherance of such foreclosure, the interest of the IHS Defendants, THCI and all other persons and entities making claim to the Collateral since the perfection of the Security Interests be foreclosed; and that this Court reserve any and all rights to which PharMerica would be entitled, including a deficiency judgment, and such further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
(Unjust Enrichment against LTC and the IHS Facilities)

68. PharMerica refers to and realleges each of the foregoing allegations of this Complaint as though more fully set forth herein.

69. PharMerica conferred benefits on the LTC and the IHS Facilities and by providing goods and services to the IHS Facilities that directly benefited the IHS Facilities and enabled the IHS Facilities to obtain payments for the goods and services provided to patients of the Facilities.

70. The LTC and the IHS Facilities have voluntarily accepted and retained the benefits conferred upon them by PharMerica.

71. The circumstances are such that it would be inequitable for LTC and IHS Facilities to retain the benefits provided without paying the value thereof to PharMerica.

72. By reason of the foregoing, LTC and the IHS Facilities should be made to pay PharMerica the reasonable vale of the goods and services in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
(Conversion against Plaintiffs and Defendants)

73. PharMerica refers to and realleges each of the foregoing allegations of this Complaint as though more fully set forth herein.

74. Upon information and belief, prior to and following the execution of the Settlement Stipulation, and at all times relevant, LTC, the IHS Facilities and THCI conspired to, and did appropriate and convert the Collateral rightfully pledged to PharMerica ("Converted Property").

75. The taking and retention of the Converted Property properly belonging to PharMerica constitutes an unlawful acquisition of PharMerica's property LTC, the IHS Facilities and THCI.

76. LTC, the IHS Facilities and THCI's unlawful acquisition was made in conscious disregard of PharMerica's rights and constitutes willful and/or wanton negligence.

77. By reason of the foregoing, PharMerica has been defrauded and is entitled to a judgment (i) ordering LTC, the IHS Facilities and THCI to return the Converted Property to the Tristate Entities; and (ii) a constructive trust be established over the Converted Property.

## PRAYER FOR RELIEF

**WHEREFORE**, PharMerica respectfully requests this Court to enter judgment in its favor and grant the following relief:

(a) **On the First Cause of Action:**

A declaratory judgment holding that, an actual dispute exists as to (i) the IHS Facilities' liability to PharMerica under the Pharmacy Services Agreements; (ii) whether or not PharMerica holds a valid security interest in all or part of the Settlement Payments paid by the IHS Facilities to THCI pursuant to the Settlement Stipulation.

**(b)** **On the Second Cause of Action:**

Judgment should be entered in favor of PharMerica and against the IHS Facilities ordering that the Collateral described in the Security Agreements be Foreclosed upon and in furtherance of such foreclosure, the interest of the IHS Defendants, THCI and all other persons and entities making claim to the Collateral since the perfection of the Security Interests be foreclosed; and that this Court reserve any and all rights to which PharMerica would be entitled, including a deficiency judgment, and such further relief as this Court deems just and proper.

**(c)** **On the Third Cause of Action:**

A money judgment in favor of PharMerica and against LTC and the IHS Facilities for the reasonable vale of the goods and services provided by PharMerica to the IHS Facilities in an amount to be determined at trial.

**(d)** **On the Fourth Cause of Action:**

Judgment in favor of PharMerica and against LTC, the IHS Facilities and THCI ordering that LTC, the IHS Facilities and THCI shall return the Converted Property to the Tristate Entities; and (ii) that a constructive trust be established over the Converted Property.

**(e)** Any additional and further relief as may be deemed just and appropriate.

Dated:  April 20, 2007        **ARCHER & GREINER, P.C.**
        Wilmington, Delaware

By:   s/ Peter L. Frattarelli
      Peter L. Frattarelli (No. 2871)
      300 Delaware Avenue
      Suite 1370
      Wilmington, Delaware 19801
      Tel: (302) 777-4350
      Fax (302) 777-4352

*Attorneys for Non-Party Intervenor PharMerica, Inc.*

2625215v1