Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey 07052
973-325-1500
Attorneys for Defendant
THCI Company LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRATED HEALTH SERVICES OF CLIFF MANOR, INC., INTEGRATED HEALTH SERVICES AT RIVERBEND, INTEGRATED HEALTH SERVICES AT SOMERSET VALLEY, INC., ALPINE MANOR, INC., BRIARCLIFF NURSING HOME, INC., INTEGRATED HEALTH GROUP, INC., SPRING CREEK OF IHS, INC., FIRELANDS OF IHS, INC., ELM CREEK OF IHS, INC. and IHS LONG TERM CARE SERVICES, INC.<br><br>Plaintiffs,<br><br>v.<br><br>THCI COMPANY LLC,<br><br>Defendant,<br><br>and,<br><br>ABE BRIARWOOD CORPORATION and JOHN DOES 1-10,<br><br>Additional Counterclaim Defendant. | Civil Action No.: 04-910 (GMS)<br><br>**SUPPLEMENTAL AFFIDAVIT OF ROBERT W. HEYERT IN SUPPORT OF THE MOTION BY THCI COMPANY LLC TO ENFORCE THE STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL** |

Robert W. Heyert, of full age, being duly sworn upon his oath according to law, deposes and says:

1.  I am the Vice President and Controller of Healthbridge Management, LLC, a management company which manages the nine nursing homes that are the subject of the

1081034.1

Stipulation and Order of Settlement and Dismissal entered in this matter (the "Settlement Agreement"). The nine nursing homes are operated by subsidiaries of THCI Company, LLC ("THCI"), the Defendant in this matter. As such, I am fully familiar with the facts set forth herein. I make this Supplemental Affidavit to alert the Court to further breaches of duty by the LTC Plaintiffs, which, if not remedied immediately, will result in substantial financial harm to the New Operators.

2. As set forth in our original application, LTC and the LTC Plaintiffs have not complied with their obligations under Paragraph 6 of the Settlement Agreement, which requires LTC and the LTC Plaintiffs to provide Medicare Terminating Cost Reports to THCI for review and reasonable approval prior to filing.

3. As stated in my original Affidavit, we had a serious and legitimate concern that deadlines would be missed by the LTC Plaintiffs failure to file the Terminating Cost Reports.

4. In view of the failure to timely file these reports, Medicaid and Medicare can withhold payments for billings submitted by the New Operators, and those governmental entities can also levy penalties against the individual facilities for failing to timely file the Terminating Cost Reports.

5. It turns out that our concerns were not misguided.

6. We have learned that the Fiscal Intermediary for Medicare is going to suspend all Medicare payments to 8 of the 9 New Operators, beginning with payments for June, 2007 services, due to the failure by the LTC Plaintiffs to file Terminating Cost Reports for those facilities.

7. This suspension of payments will result in a substantial reduction of approximately $1,331,694 monthly cash for the 8 New Operators, based on June billings even though the services which earned the income were provided.

8. Moreover, we have been advised that interest will charged on all payments received since October 1, 2006 by the affected New Operators until those payments have been returned to Medicare.

9. Our demands to the LTC Plaintiffs to file the Terminating Cost Reports have been met with the excuse that we have not provided them with bad debt logs. First, it should be noted that bad debt information is not required to file the cost reports. It can be supplied at a later date by filing an amended cost report. (Section 2176.2 of the CMS Provider Reimbursement Manual 15-1 "Allowable Direct Administrative Cost Incurred After Final cost Report is filed" provides guidance for terminating providers related to filing an amended cost report for allowable bad debt expense.)

10. More importantly, however, we do not have access to the patient accounting records that are required to prepare the bad debt log information because the LTC Plaintiffs have removed our access to that information as of approximately October 31, 2006. After that date, the LTC Plaintiffs handled all billing and collecting.

11. However, we have supplied the relevant remittance information available to us, as well as other patient documentation in our possession which has been requested by the LTC Plaintiffs, from which the LTC Plaintiffs can reconstruct the bad debt information. Accordingly, the LTC Plaintiffs have no excuse to refuse or fail the terminating cost reports.

12. The only exception to the above is that the remittance information for 2005 for the Alabaster, Alabama facility has not yet been located. Remittances for the years 2003 and 2004 have been located and were sent to the LTC Plaintiffs on July 19, 2007. All other requested remittances have been supplied.

*Robert W. Heyer*
Robert W. Heyer

Sworn to and subscribed before me
this 04th date of July, 2007

*Jacquilini Elisberg*

JACQUELINE ELISBERG
Notary Public of New Jersey
I.D. #2356427
Commission Expires 2/26/2012

1081034.1    4